Civil Case No. 4:20-cv-1256-P

Adv Case No. 20-4078
Bankruptcy Case No. 20-43204-mxm11

Appellant – 2999TC, LLC, et

Appellees – L. Allen Hodges III, et al

Volume 2 – Appellant Record

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Defendants

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC, LLC,** | § | |
| | § | **CASE NO. 20-43204-MXM11** |
| **Debtor.** | § | |
| | § | |
| | § | |
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD. AND BLACKFOOT INTEREST, LTD.** | § § § § § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078** |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON** | § § | **CIVIL CASE NO. 4:20-CV-01256-P** |
| | § | |
| **Defendants.** | § | |

# INDEX

## DESIGNATION OF RECORD ON APPEAL AND STATEMENT OF ISSUES

**TO THE UNITED STATES BANKRUPTCY CLERK**:

COME NOW **2999TC, LLC**, **JMJ Development, LLC** and **Tim Barton** ("Appellants"), Appellants herein, and pursuant to Federal Rules of Bankruptcy Procedure 8009(a)(1), Appellants hereby designate the following items for inclusion in the record on appeal. Such designation of

pleadings and matters of record include all exhibits attached or referred to in the pleadings or matters of record:

| Vol 2 | **Filing Date** | **Docket No.** | **Docket Text** |
|---|---|---|---|
| Page 36 | 10/16/2020 | 1 | Notice of Removal and all attachments: |
| Vol 4 Pg 687 | 10/16/2020 | 2 | Adversary Proceeding Cover Sheet |
| Pg 689 | 10/16/2020 | 3 | Support/Supplemental Document/Exhibit A |
| Pg 697 | 10/16/2020 | 5 | Counterclaim by 2999TC LP, LLC, Tim Barton, JMJ Development, LLC against all plaintiffs. |
| Pg 704 | 10/23/2020 | 12 | Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court and Brief in Support filed by Plaintiffs Blackfoot Interest, Ltd., L. Allen Hodges III, LAH III Family Specific Interest, Ltd., Tejas Group, Ltd. |
| Pg 723 | 10/23/2020 | 30 | Motion for remand filed by Plaintiffs Blackfoot Interest, Ltd. , L. Allen Hodges III, LAH III Family Specific Interest, Ltd. , Tejas Group, Ltd |
| Pg 739 | 10/25/2020 | 13 | Objection to Motion to dismiss 2999TC LP, LLC ONLY filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC. |
| Pg 753 | 10/30/2020 | 19 | Objection to Motion to dismiss 2999TC LP, LLC ONLY filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC. |
| Pg 774 | 11/11/2020 | 26 | Brief in support filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC |
| Pg 788 | 11/16/2020 | 35 | Court admitted exhibits date of hearing 11/16/2020 (with all exhibits) |
| Pg 789 | 11/18/2020 | 31 | Order Granting Second Amended Motion To Dismiss Defendant 2999TC LP, LLC Only And Abstain And Remand To State Court. |
| Pg 792 | 11/18/2020 | 33 | Notice of Appeal |
| Pg 802 | 11/19/2020 | 36 | Amended Notice of Appeal |
| Pg 809 | 12/2/2020 | | Transcript of Proceedings on 11/16/2020 |

**Statement of Issues on Appeal**

1. Did the Bankruptcy Court err in remanding the Adversary Case to the state court?

2. Did the Bankruptcy Court err in granting Plaintiffs' Motion to Dismiss Defendant 2999TC LP, LLC under Federal Rules of Civil Procedure 41(a)(2 while counterclaims were pending against the Plaintiffs.

3. Did the Bankruptcy Court err in dismissing claims against 2999TC in the Adversary Case?

4. Did the Bankruptcy Court err in abstaining from hearing the claims in the Adversary Case?

5. Did the Bankruptcy Court err in abstaining from hearing the claims in the Adversary Case under equitable abstention?

6. Did the Bankruptcy Court err in concluding that issues presented in the Adversary Case were non-core?

7. Did the Bankruptcy Court err in concluding that issues presented in the Adversary case were not core?

8. Did the Bankruptcy Court err in concluding that issues presented in the Adversary Case were not related to?

9. Did the Bankruptcy Court err in finding that equitable remand was proper under §1452(b)

Dated: December 2, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
**ATTORNEYS FOR APPELLANTS**
**2999TC, LLC, JMJ Development, LLC**
**and Tim Barton**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr., Tejas Group, Ltd.,LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd
c/o Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD. LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **ADVERSARY NO. ______________** |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON** | § | |
| **Defendants.** | § | |

**NOTICE OF REMOVAL**

COMES NOW 2999TC LP, LLC, a Defendant in the above-referenced case and a Debtor in the recently filed bankruptcy case of 2999TC LP, LLC now pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Debtor") and files this its Notice of Removal and would respectfully show this Court as follows:

**I.
The Removed Proceeding**

1. The underlying proceeding was filed in the 141ST Judicial District Court, Tarrant County, Texas, entitled, *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*. Plaintiffs' attorney-of-record is Dee J. Kelly, Jr. and Joakim G. Soederbaum of Kelly, Hart & Hallman, 201 Main Street, Suite 2500, Fort Worth, Texas 76102. Debtors attorney-of-record is Mark S. Dugan of Decker Jones, P.C., 801 Cherry Street, Unit #46, Burnett Plaza, Suite 2000, Fort Worth, Texas 76102. All current

pleadings, process, orders, and other filings in the state court action are attached to the Appendix to this notice as required by 28 U.S.C. §1446(a).

## II.
## Grounds For Removal

2. This proceeding is removed pursuant to 28 U.S.C. §1441. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1334 in that Debtor has filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, Case No.20-43204-mxm. The federal courts have original and exclusive jurisdiction over bankruptcy matters. 28 U.S.C. §1334. As such, this proceeding is removable pursuant to 28 U.S.C. § 1452. Moreover, Debtor contends that certain of the claims and causes of action may constitute "core proceedings" in the bankruptcy court and may fall within the purview of the Chapter 11 to either act upon or abandon. For example, the determination of the Plaintiff's claim is a core proceeding as to the Debtor. Further, claims and causes of action may constitute property of the bankruptcy estate. The state court suit involves claims and causes of action removable under 28 U.S.C. §1452(a). This is a civil proceeding arising under and related to a case under Title 11 of the United States Code, over which this Court has jurisdiction under 28 U.S.C. §1334(b). This is a core proceeding under 28 U.S.C. §157(b)(2), including, without limitation, under 28 U.S.C. §157(b)(2)(A), (B), (K), (M), and (O).

3. Defendant will promptly file a copy of this notice of removal with the clerk of the state court proceeding.

4. Deciding the issues raised by the state court suit will directly impact upon the Debtor's bankruptcy case. Determining what debtor-creditor relationship exists, the debt owed to the Plaintiff, and the value of its collateral are in large part the crux of the bankruptcy case.

5. This notice of removal (a) concerns a civil action pending when the Debtor's bankruptcy case was commenced, (b) is filed within the time provided by the Bankruptcy Rules, and (c) is, therefore, timely under Federal Rule of Bankruptcy Procedure 9027(a)(2).

6. Pursuant to Local Rule 81.1, attached to this notice as Exhibits A- D, respectively, are the following documents:

- Exhibit A — A copy of the docket sheet in the state court action;
- Exhibit B — A copy of each document filed in the state court action, except discovery material.

WHEREFORE, PREMISES CONSIDERED, 2999TC LP,, LLC, respectfully requests that the state court proceeding be removed to the United States District Court for the Northern District of Texas, Fort Worth Division, and for such other and further relief to which it may be justly entitled.

Dated: October 16, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
ATTORNEYS FOR 2999TC LP, LLC

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been delivered via email and certified mail to the below counsel of record, on this the 16th day of October, 2020.

Dee J. Kelly, Jr.
Kelly, Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Email: dee.kelly@kellyhart.com

Joakim G. Soederbaum
Kelly, Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Email: joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

FILED
TARRANT COUNTY
4/22/2020 12:24 PM
THOMAS A. WILDER
DISTRICT CLERK

141-316567-20
**CAUSE NO. _______**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **______ JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "**Plaintiffs**") file their *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* against Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton (all collectively, "**Defendants**") and would respectfully show the Court as follows:

## I.
## NATURE OF THE ACTION

1. Defendants have failed to make *any* payments towards the $180,000.00 interest payment that was due on March 16, 2020, in connection with the total $4,000,000.00 defendant

2999TC LP, LLC ("**2999TC**") borrowed from Plaintiffs (the "**Loan**")—which Loan is evidenced by two promissory notes executed by 2999TC (the "**Notes**") and guaranteed by both JMJ Development, LLC ("**JMJ**") and Tim Barton ("**Barton**"). As a result of Defendants' failure to pay as agreed, the Loan was accelerated on or about April 14, 2020. Worse yet, despite agreeing and representing in writing, as a condition to Plaintiffs making the Loan, that he would grant or cause to be granted first priority liens and securities in the unencumbered value of the collateral pledged as security for the Loan, it now appears that Defendant Barton has violated this covenant, thereby reducing Plaintiffs' ability to be made whole from Defendants' defaults. Accordingly, Plaintiffs bring this suit to recover the more than $4,000,000 owed pursuant to the Loan and pray for immediate injunctive relief preventing Defendants from interfering with Plaintiffs' security interests.

## II.
## DISCOVERY CONTROL PLAN

2. Discovery in this case is intended to be conducted under level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## III.
## PARTIES

3. Executor, who resides in Tarrant County, Texas, is one of two duly qualified and acting independent executors under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1.

4. Plaintiff Tejas Group, Ltd. is a Texas limited partnership.

5. Plaintiff LAH III Family Specific Interest, Ltd. is a Texas limited partnership.

6. Plaintiff Blackfoot Interest, Ltd is a Texas limited partnership.

7. Defendant 2999TC is a Delaware limited liability company doing business in the State of Texas and maintains its principal office at 1755 Wittington Place, Suite 340, Dallas, Texas 75234. Although 2999TC conducts business in the State of Texas pursuant to Tex. Civ. Prac. & Rem. Code § 17.042, it has neither registered to do business in Texas, as required by Chapter 9 of the Tex. Bus. Orgs. Code nor has it designated or maintained a registered agent or office in Texas as required by Tex. Bus. Orgs. Code § 5.201. Moreover, Plaintiffs' claims arise from business 2999TC conducted in Texas. Accordingly, the Texas Secretary of State is 2999TC's agent for service of process under Tex. Bus. Orgs. Code § 5.201 and Tex. Civ. Prac. & Rem. Code § 17.044. In accordance with the Tex. Bus Orgs. Code §§ 5.252-.255 and Tex. Civ. Prac. & Rem. Code § 17.045, the Texas Secretary of State should forward process to 2999TC at the address for its members, Tim Barton and Five Star MM, LLC, at 1755 Wittington Place, Suite 340, Dallas, Texas 75234.

8. Defendant 2999TC can also be served by the clerk of the Court or other person authorized by law pursuant to Tex. R. Civ. P. 103-108 by serving its registered agent on file with the Delaware Secretary of State at Incorp Services, Inc., 919 North Market Street, Suite 950, Wilmington, Delaware 19801.

9. Defendant JMJ is a Texas limited liability company and may be served with process by serving its registered agent at ONE Agent Texas, LLC, 13901 Midway Road, Suite 102, Dallas, Texas 75244.

10. Defendant Barton is an individual residing in the State of Texas. Barton may be served with process at 1755 Wittington Place, Suite 340, Dallas, Texas 75234 or wherever he is found.

## IV.
## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this case because the amount in controversy is within the jurisdictional limits of this Court. Pursuant to Texas Rule of Civil Procedure 47, Plaintiffs state that they seek monetary relief over $1,000,000 and non-monetary relief.

12. This Court has personal jurisdiction over 2999TC and JMJ because they systematically conduct business in Texas, maintain a regular place of business in Texas, and entered into contracts with Texas residents to be performed in whole or in part in this state. *See* Tex. Civ. Prac. & Rem. Code § 17.042. This Court has personal jurisdiction over Barton because he resides in Texas and entered into contracts with Texas residents to be performed in whole or in part in this state. *See id.*

13. Venue in this matter is proper in this County because a substantial part of the activities, events, and damages giving rise to this lawsuit occurred in this County. *See* Tex. Civ. Prac. & Rem. Code § 15.002. Venue is further proper in this County because the Notes provide that venue for any dispute involving the Notes or any other instruments executed in connection with the Notes shall lie exclusively in Tarrant County, Texas. *See* Notes as amended.

## V.
## FACTS

14. On or around September 16, 2019, defendant 2999TC borrowed from Plaintiffs, and Plaintiffs loaned to 2999TC, the total amount of $4,000,000.00 (the "**Loan**") in connection with a project involving the acquisition of property located at 2999 Turtle Creek Boulevard, Dallas, Texas (the "**Property**"), for the purpose of development of a luxury hotel and residences.

The Loan is evidenced by the promissory notes executed by defendant Barton on behalf of 2999TC (the "**Notes**").

15. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020 (the "**Maturity Date**").

16. Defendants Barton, individually, and JMJ guaranteed the Loan and 2999TC's performance under the Notes (the "**Guaranties**"). In addition, in connection with his personal Guaranties (the "**Barton Guaranties**"), Barton personally agreed within thirty (30) days of Plaintiffs' request to grant or cause to be granted a first-priority security interest in certain assets. More specifically, Barton agreed to grant Plaintiffs a first-priority lien on the unencumbered value of a statue and certain real estate (hereinafter collectively referred to as the "**Guaranty Collateral**"):

| **Collateral** | **Acres** | **Lots** |
|---|---|---|
| Art: Michelangelo Bacchus statue, 1938 bronze replica, #3 of 8 total editions | n/a | n/a |
| Real Property Development known as North Star | 63.75 | 302 |
| Real Property Development known as Griffin | 201 | 870 |
| Real Property Development known as Rogers Ranch | 100 | 40 |
| Real Property Development known as Killeen | 16.2 | 1 |
| Real Property Development known as Ridgeview | 15 | 54 |

17. Pursuant to the terms of the Barton Guaranties, on or about September 17, 2019, Plaintiffs requested that Barton provide the documentation necessary to establish the agreed-upon security interests within thirty days—by October 17, 2019—so that Plaintiffs could promptly perfect their security interests in the Guaranty Collateral.

18. Barton, however, failed to comply with Plaintiffs' September 17, 2019 request to provide all documentation necessary to allow Plaintiffs to fully perfect their security interest in the Guaranty Collateral. Instead, he pledged membership interests in (i) entities holding the real estate from which the unencumbered value of the Guaranty Collateral was derived and (ii) one of the entities in the ownership chain of the company holding legal title to the Property (the "**Property Collateral**") (the Guaranty Collateral and the Property Collateral hereinafter collectively, the "**Collateral**"). In addition, among other things:

- 2999TC failed to pay the first interest-only payment when due on December 16, 2019;
- Plaintiffs learned that entities granting a security interest in certain of Barton's real estate holding companies made a material misrepresentations that they were organized in Texas; and
- 2999TC failed to pay Plaintiffs' out-of-pocket expenses incurred incidental to the Loan as agreed.

Ultimately, only after Plaintiffs threatened to accelerate the Loan did 2999TC pay the outstanding interest payment and Plaintiffs' out-of-pocket expenses incurred incidental to the Loan creation, but it failed to fully cure the other defaults.

19. When the second interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. In addition to 2999TC failing to make the $180,000.00 interest-only payment, among other things, Plaintiffs learned that Barton purportedly had allowed the granting of first-priority liens on the real estate owned by holding companies serving as Guaranty

Collateral. By doing so, Barton potentially diluted the unencumbered value in which he agreed to grant Plaintiffs a first-priority lien as set forth in the Barton Guaranties. Accordingly, on March 27, 2020, Plaintiffs sent a second notice of default demanding that Defendants cure the defaults by April 6, 2020.

20. On or about March 31, 2020, Defendant 2999TC, rather than pay the amount due, requested an initial 120-day payment forbearance—acknowledging to Plaintiffs that it does not have the financial means to perform under the Notes.

21. When Defendants failed to cure its defaults as demanded in Plaintiffs' March 27, 2020, notice, Plaintiffs accelerated the Loan and demanded payment in full from Defendants of all amounts due and owing. To date, however, Defendants have failed to pay as agreed, the Notes remain unpaid, and the principal is currently due and owing in full. Interest and attorney's fees are accruing daily. Accordingly, Plaintiffs have filed the instant lawsuit to recover the amounts due and to protect its security interest in the Collateral.

## VI.
## CAUSES OF ACTION

### BREACH OF PROMISSORY NOTES

22. Plaintiffs incorporate herein by reference the foregoing allegations.

23. 2999TC executed two enforceable Notes. Plaintiffs are the beneficiaries and holders of the Notes.

24. Plaintiffs performed their obligations under the Notes and loaned the total amount of $4,000,000.00 to 2999TC. 2999TC, in contrast, breached the Notes, among other things, through its failure to make the March 2020 interest-only payment as agreed and to make payment in full upon acceleration of the Loan.

25. As a proximate and foreseeable result of 2999TC's breach of the Notes, Plaintiffs have been damaged in a sum in excess of the minimum jurisdictional limits of the Court, for which sums Plaintiffs hereby sue, together with cost, attorney's fees, and pre-judgment and post-judgment interest at the contractually agreed rate of 18% to the greatest extent allowed by applicable law.

26. All conditions precedent to Plaintiffs' right to recover have been performed, have occurred, or have been excused.

## BREACH OF GUARANTIES

27. Plaintiffs incorporate herein by reference the foregoing allegations.

28. As consideration for Plaintiffs making the Loan to 2999TC, Barton and JMJ executed enforceable Guaranties for the benefit of Plaintiffs, securing 2999TC's performance under the Notes.

29. Plaintiffs performed their obligations by making the $4,000,000.00 Loan as contemplated by the Notes and the Guaranties. Barton and JMJ, in contrast, breached the Guaranties by failing to pay the amounts due to Plaintiffs under the Notes upon demand when 2999TC failed to pay as agreed and required. Barton further breached the Barton Guaranties by virtue of his failure to deliver all documents necessary for Plaintiffs' to perfect the agreed-upon security interests in, and by allegedly diluting the unencumbered value of, Plaintiffs' Guaranty Collateral.

30. As a proximate and foreseeable result of Barton's and JMJ's breach of their Guaranties, Plaintiffs have been damaged in a sum in excess of the minimum jurisdictional limits of the Court, for which sums Plaintiffs hereby sue, together with costs, attorney's fees, and pre-

judgment and post-judgment interest at the contractually agreed rate of 18% to the greatest extent allowed by applicable law.

31. All conditions precedent to Plaintiffs' right to recover have been performed or have occurred.

## VII.
## REQUEST FOR INJUNCTIVE RELIEF

32. Plaintiffs incorporate herein by reference the foregoing allegations.

33. Plaintiffs agreed to make the Loan to 2999TC based on the security interests pledged to secure the Loan. Defendants have failed to pay the Loan as agreed. In addition, Defendant Barton has both prevented Plaintiff from perfecting the promised first-priority security interest and, worse yet, potentially diluted the unencumbered value of Plaintiffs' security interest in the Guaranty Collateral by purportedly granting first-priority liens on the underlying real estate to third parties. Any dilution of such security interests have caused imminent, irreparable injury to Plaintiffs for which there is no adequate remedy at law. Accordingly, Plaintiffs seek a temporary restraining order and, after a hearing, a temporary injunction to be made permanent upon a final hearing. Injunctive relief is proper under the principles of equity because Plaintiffs have a probable right of recovery and, absent injunctive relief, will suffer imminent, irreparable injury for which there is no adequate remedy at law. *See Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968) (listing the equitable grounds for injunctive relief).

### A. Plaintiffs have a probable right to recover.

34. The term "probable right to recover" is "a term of art" and does not require the Court to make a determination of the facts based upon "probabilities." *183/620 Group Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1999, writ dism'd,

w.o.j.). Rather, the movant is "only required to show that a bona fide issue exists as to his right to ultimate relief." *Id.* In other words, the movant must simply "adduce evidence that *tends to support* his right to recover on the merits." *Id*. (citing *Camp v. Shannon*, 348 S.W.2 517, 519 (Tex. 1961) (emphasis in original)).

35. As the verified facts herein establish, the Notes made payable by 2999TC to Plaintiffs were made by 2999TC, are held by Plaintiffs, were properly accelerated, and became due and payable in full, on April 14, 2020. Despite Plaintiffs' demand for payment, Defendants have failed since that date to make *any* payments towards the indebtedness owed in connection with the Notes, which are currently due and payable in full, and 2999TC recently admitted that it does not have the financial means to make even the most-recent interest-only payment. Further, Barton, in violation of the Barton Guaranties, has potentially diluted the unencumbered value of Plaintiff's security interest in the Collateral by purportedly granting subsequent first-priority liens on the assets owned by the Collateral to third parties and has failed to provide Plaintiffs with the documents necessary to fully perfect its security interest in the Collateral. Accordingly, there can be no question that Plaintiffs have demonstrated a probable right to recover on their claim for breach of contract based on breach of both the Notes and the Guaranties. *See e.g.*, *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (holding that the plaintiff was entitled to a temporary injunction in connection with his breach of contract claim).

**B. Without injunctive relief, Plaintiffs will suffer immediate, irreparable injury for which there is no adequate remedy at law.**

36. Absent injunctive relief protecting the unencumbered value of the Collateral from encumbrances and dilution, Plaintiffs will suffer immediate, irreparable injury for which there is no adequate remedy at law. Plaintiffs made the Loan to 2999TC based on Defendants'

agreements and representations and the promise of a first-priority lien on the unencumbered value of the Collateral. Barton has already potentially diluted that value by allegedly granting first-priority liens on the assets of the Collateral to third parties, and has failed to provide Plaintiffs with the documents required to fully perfect Plaintiffs' security interest in the Collateral. Defendants have failed to pay the Loan as agreed. Indeed, Defendants have failed to make *any* payments towards the amounts due under the Notes since January 2020, and the entire indebtedness is currently due and payable in full. Defendants' failure to make even interest-only payments coupled with 2999TC's recent acknowledgement that it does not have the means to make payments as they become due demonstrates that Defendants are incapable of satisfying a multi-million dollar money judgment in Plaintiffs' favor. Accordingly, any dilution of the unencumbered value of Plaintiffs' security interest in the Collateral will leave Plaintiffs with little or no security for, and ability to recover, the millions of dollars they loaned to 2999TC.

37. Furthermore, the harm that will result to Plaintiffs is imminent. All efforts to address Defendants' defaults without Court involvement have proven futile. Defendants' purportedly granting third parties security interests and potentially diluting the unencumbered value of Plaintiffs' security interest in the Collateral coupled with 2999TC's recent admission that it does not have the financial ability to make even the interest-only payment due on March 16, 2020 shows that Defendants are in immediate financial hardship. Moreover, despite repeated requests by Plaintiffs since September of 2019, to date, Barton has failed to deliver to Plaintiffs all the documents required under the Barton Guaranties, only further reducing Plaintiffs' prospect of being made whole. In short, the verified facts herein demonstrate that, absent injunctive relief, Plaintiffs will suffer immediate irreparable injury for which there is no adequate remedy at law. *See Tex. Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529,

533 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding that the trial court abused its discretion in denying temporary injunction because the plaintiff demonstrated the defendant would be unable to satisfy a money judgment in the plaintiff's favor); *Surko Enters. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ) (affirming temporary injunction to preserve collateral on the grounds that the defendant was unable to satisfy the total amount alleged to be owed to plaintiff).

**C. Relief Requested.**

38. For the foregoing reasons, Plaintiffs request a temporary restraining order and, after a hearing, a temporary injunction to be made permanent upon a final hearing, enjoining and restraining Defendants and their agents, servants, employees, attorneys, and those persons and entities in active concert or participation with them and/or under their ownership and/or control who receive actual notice of the order, including but not limited to, the entities through which the Collateral or any asset of the Collateral is held and/or owned, whether directly or indirectly, in whole or in part, and any entity pledging a security interest to Plaintiffs in connection with the Loan, from engaging in the following acts or practices:

(i) directly or indirectly encumbering, diluting, or making inferior Plaintiffs' security interest in the unencumbered value of the Collateral, or allowing the encumbrance, dilution, or making inferior of Plaintiffs' security interest in the unencumbered value of the Collateral;

(ii) directly or indirectly granting to any party a security interest in the Collateral or any assets of the Collateral, or allowing the granting to any other party a security interest in the Collateral or any assets of the Collateral;

(iii) directly or indirectly selling, transferring, disposing, destroying, unwinding, or altering the Collateral or any assets of the Collateral, or any portion thereof, or allowing the transfer, disposal, destruction, unwinding, or alteration of the Collateral or any assets of the Collateral, or any portion thereof;

(iv) transferring, concealing, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any records, documents, and/or communications relating to the Collateral or the assets of the Collateral, or allowing the transfer, concealment, destruction, mutilation alteration, falsification, or removal of the same; and

(v) continuing to interfere with Plaintiffs perfecting their security interest in the Collateral by requiring Defendants to within five business days deliver to Plaintiffs the documents necessary for all Collateral to immediately be properly and fully perfected.

39. Furthermore, because the Defendants are in financial hardship and have ignored Plaintiffs' repeated requests to protect Plaintiffs' security interest in the unencumbered value of the Collateral, Plaintiffs request that the temporary restraining order requested above be entered *ex parte*. Absent *ex parte* relief, it is likely that Defendants will encumber and dilute Plaintiffs' security interests in the unencumbered value of the Collateral prior to the hearing on Plaintiffs' application for a temporary injunction.

40. Plaintiffs are willing to post a reasonable bond to secure injunctive relief.

## VIII.
## ATTORNEY'S FEES

41. Plaintiffs have been required to retain the undersigned legal counsel to institute and prosecute this action. In accordance with the loan documents (including the Notes and the Guaranties), and Tex. Civ. Prac. & Rem. Code § 38.001, Plaintiffs are entitled to recover their reasonable and necessary attorney's fees in bringing and prosecuting this action, and for any and all appeals enforcing the requested judgment.

## IX.
## JURY DEMAND

42. Plaintiffs demand a jury trial and tender the appropriate fee with this *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*.

## X.
## REQUEST FOR DISCLOSURE

43. Pursuant to Texas Rule of Civil Procedure 194, Defendants are requested to disclose, within the time required by Rule 194.3, the information or material described in Rule 194.2.

## XI.
## PRAYER

For the reasons set forth above, the Plaintiffs respectfully request that Defendants be cited to appear and answer, and that the Court render judgment against Defendants and in favor of Plaintiffs, awarding Plaintiffs the following relief:

(a) any and all actual damages suffered in an amount within the jurisdictional limits of the Court;

(b) a temporary restraining order enjoining and restraining Defendants and their agents, servants, employees, attorneys, and those persons and entities in active concert or participation with them and/or under their ownership and/or control who receive actual notice of the order, including but not limited to, the entities through which the Collateral or any asset of the Collateral is held and/or owned, whether directly or indirectly, in whole or in part, and any entity pledging a security interest to Plaintiffs in connection with the Loan, from engaging in the following acts or practices:

(i) directly or indirectly encumbering, diluting, or making inferior Plaintiffs' security interest in the unencumbered value of the Collateral, or allowing the encumbrance, dilution, or making inferior of Plaintiffs' security interest in the unencumbered value of the Collateral;

(ii) directly or indirectly granting to any party a security interest in the Collateral or any assets of the Collateral, or allowing the granting to any other party a security interest in the Collateral or any assets of the Collateral;

(iii) directly or indirectly selling, transferring, disposing, destroying, unwinding, or altering the Collateral or any assets of the Collateral, or any portion thereof, or allowing the transfer, disposal, destruction, unwinding, or alteration of the Collateral or any assets of the Collateral, or any portion thereof;

(iv) transferring, concealing, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any records, documents, and/or communications relating to the Collateral or the assets of the Collateral, or allowing the transfer, concealment, destruction, mutilation alteration, falsification, or removal of the same; and

(v) continuing to interfere with Plaintiffs perfecting their security interest in the Collateral by requiring Defendants to within five business days deliver to Plaintiffs the documents necessary for all Collateral to immediately be properly and fully perfected;

(c) temporary injunctive relief;

(d) permanent injunctive relief;

(e) pre-judgment interest at the contractually-agreed upon rate of 18%;

(f) post-judgment interest at the contractually-agreed upon rate of 18%;

(g) attorney’s fees;

(h) costs of suit; and

(i) such other and further relief to which Plaintiffs show themselves to be justly entitled whether at law or in equity.

Respectfully submitted,

***/s/ Dee J. Kelly, Jr.***

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.30

Diligent attempts to notify counsel for the parties against whom ex parte relief is sought have been unsuccessful, and the circumstances do not permit additional efforts to give notice.

***/s/ Joakim G. Soederbaum***

Joakim G. Soederbaum

# VERIFICATION

STATE OF TEXAS §
§
COUNTY OF TARRANT §

Before me, the undersigned authority, on this day personally appeared L. Allen Hodges III, who is personally known to me, and being first duly sworn according to law, upon his oath deposed and said:

1. "My name is L. Allen Hodges III. I am over twenty-one (21) years of age, of sound mind, and have never been convicted of a felony. I am fully competent to testify to, and have personal knowledge of, the facts stated within this verification, and every statement of fact contained herein is true and correct. I am the independent executor of The Estate of Leland A. Hodges Jr., one of the plaintiffs in the above-referenced lawsuit. I obtained personal knowledge of the facts stated herein by and through, among other things, my review of the documents referenced in Plaintiffs' *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*, my personal involvement in the Loan transaction, and my personal interactions with the persons and entities at issue in the above-referenced lawsuit, including but not limited to my interactions with Defendant Tim Barton."

2. "I have read Plaintiffs' *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* in the above-referenced lawsuit. The statements of fact contained in paragraphs 14-21 therein are within my personal knowledge and are true and correct."

3. "Further, affiant sayeth not."

L. Allen Hodges III

SUBSCRIBED AND SWORN to before me, the undersigned notary, on the 21st day of April, 2020.

Notary in and for the State of Texas

(Personalized Seal)

NOTARY PUBLIC STATE OF TEXAS
TRACEE FRANKLIN
Notary ID #130322587
My Commission Expires
August 5, 2023

141-316567-20

FILED
TARRANT COUNTY
4/29/2020 3:58 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED
TARRANT COUNTY
2020 APR 30 AM 9:54
THOMAS A. WILDER
DISTRICT CLERK

**ORDER AUTHORIZING SUBSTITUTED SERVICE**
**AND EXTENDING TEMPORARY RESTRAINING ORDER**

On this date came on to be considered L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "Plaintiffs") Emergency Motion for Substitute Service and Ex Parte Motion to Extend Restraining Order (the "Motion"). Having considered the Motion and the supporting affidavits, the Court finds that Plaintiffs have made sufficient effort to serve defendants JMJ Development, LLC ("JMJ") and Tim Barton ("Barton"), that service has been attempted by delivery to JMJ's registered agent on record with the Texas Secretary of State and to Barton in person pursuant to the Texas Rules of Civil Procedure, and that such attempted service has been unsuccessful due to Barton's unwillingness to accept service and JMJ filing an incorrect address for its registered agent. Further, this Court finds that the manner of service ordered will be reasonably effective to give JMJ and Barton notice of this suit, the temporary restraining order entered by the Court, and the hearing set for temporary orders



E-MAILED ʻYg, VB
4/30/20

EXHIBIT "B-2"

In addition, pursuant to Texas Rule of Civil Procedure 680, the Court has determined that good cause exists to extend the Temporary Restraining Order entered in this case on April 22, 2020, and originally effective through May 6, 2020, to and through May 20, 2020. The Court finds that good cause exists in light of Plaintiffs' diligent, yet unsuccessful attempts to execute service on the defendants and the defendants apparently intentional and active avoidance of service in order to allow Plaintiffs an opportunity to effectuate substituted service and for the parties to fully prepare for the hearing on Plaintiffs' application for temporary injunctive relief, and present a complete record as to why injunctive relief should or should not issue.

THEREFORE, IT IS ORDERED that service on Defendant JMJ be made by delivering a true copy of the Citation, *Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction*, and Temporary Restraining Order and Order Setting Hearing for Temporary Orders (collectively, "Petition and Temporary Restraining Order"), and this Order, (1) to any employee over sixteen years of age at JMJ's business location listed below; or (2) by attaching a true copy of the Petition and Temporary Restraining Order, and this Order to the front door, or alternatively, the locked front entry gate or door at such address and sending a copy of such documents (i) via First Class U.S. Mail and by certified mail, return receipt requested, addressed to JMJ at JMJ's last known business address: 1755 Wittington Place, Suite 340, Dallas, Texas 75234; and (ii) to its Board Chairman and CEO, Tim Barton, at tbarton@jmjdevelopment.com.

THEREFORE, IT IS ORDERED that service on Defendant Barton be made by delivering a true copy of the Petition and Temporary Restraining Order, and this Order, (1) to any person over sixteen years of age at Barton's usual place of abode at 3525 Arrowhead Drive, Dallas, Texas 75204-1605; or (2) by attaching a true copy of the Petition and Temporary Restraining

Order, and this Order to the front door, or alternatively, the locked front entry gate or door at such address and sending a copy of such documents (i) via First Class U.S. Mail and by certified mail, return receipt requested, addressed to Barton at 3525 Arrowhead Drive, Dallas, Texas 75204-1605; and (ii) to tbarton@jmjdevelopment.com.

IT IS FURTHER ORDERED that service shall be complete and effective immediately upon transmission of the Petition and Temporary Restraining Order and this Order by the means set forth herein, and the served party shall be immediately bound by the terms of the Temporary Restraining Order at that time.

IT IS FURTHER ORDERED that Plaintiffs shall file a return of service with the clerk in the form of a certificate stating that service was accomplished via the method set forth in this Order.

IT IS FURTHER ORDERED that the Temporary Restraining Order previously issued on April 22, 2020 (and attached hereto as Exhibit A) shall remain in place and effect until May 12, 2020, at 10:00 a.m. when the Court will commence hearing on Plaintiffs' Application for Temporary Injunction.

IT IS FURTHER ORDERED that the bond previously posted by Plaintiffs shall act as a deposit for this Order and that the Temporary Restraining Order shall be extended until the temporary injunction hearing has concluded.

IT IS FURTHER ORDERED that all defendants shall be cited to appear at the Temporary Injunction hearing to show cause, if any, as to why a temporary injunction should not be issued as requested by Plaintiffs. The Clerk of this Court is directed to issue a show cause notice to Defendants to appear at the temporary injunction hearing.

SIGNED this 30 day of April, 2020.

JUDGE PRESIDING

# EXHIBIT A

CAUSE NO. 141-316567-20

| | | |
|---|---|---|
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD., | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| 2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON, | § | |
| Defendants. | § | TARRANT COUNTY, TEXAS |

FILED
TARRANT COUNTY
2020 APR 22 PM 2:10
THOMAS A. WILDER
DISTRICT CLERK

**TEMPORARY RESTRAINING ORDER**

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "**Plaintiffs**") have filed a verified Original Petition, Application for Injunctive Relief, and Request for Disclosure (the "**Application**"), and in connection with that Application have presented to the Court a request for a temporary restraining order against defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**").

From the facts set forth in the Application and attached verification, it clearly appears, and the Court finds as follows:

1. In September of 2019, Plaintiffs made a $4,000,000.00 loan to defendant 2999TC (the "**Loan**") in connection with a real estate development project involving the acquisition of property located at 2999 Turtle Creek Boulevard, Dallas, Texas (the "**Property**");
2. Defendants Barton, individually, and JMJ guaranteed the Loan (the "**Guaranties**");



E-MAILED
4-22-20 [illegible]

3. In connection with his personal Guaranties (the "**Barton Guaranties**") Barton personally agreed to grant or cause to be granted a first-priority lien on the unencumbered value of a statue and certain real estate (hereinafter collectively referred to as the "**Guaranty Collateral**"):

| Collateral | Acres | Lots |
|---|---|---|
| Art: Michelangelo Bacchus statue, 1938 bronze replica, #3 of 8 total editions | n/a | n/a |
| Real Property Development known as North Star | 63.75 | 302 |
| Real Property Development known as Griffin | 201 | 870 |
| Real Property Development known as Rogers Ranch | 100 | 40 |
| Real Property Development known as Killeen | 16.2 | 1 |
| Real Property Development known as Ridgeview | 15 | 54 |

4. Several of Barton's holding companies made material misrepresentations to Plaintiffs that they were organized in Texas;

5. Barton failed to provide all the documents necessary to allow Plaintiffs to fully perfect their security interest in the Guaranty Collateral; instead, he pledged membership interests in (i) entities holding the real estate from which the unencumbered value of the Guaranty Collateral was derived and (ii) one of the entities in the ownership chain of the company holding legal title to the Property (the "**Property Collateral**") (the Guaranty Collateral and the Property Collateral hereinafter collectively, the "**Collateral**");

6. 2999TC failed to pay the $180,000.00 interest-only payment due on March 16, 2020;

7. Barton potentially diluted the unencumbered value of Plaintiffs' first-priority security interest in the Collateral by allowed the granting of liens to third parties on the real estate owned by the holding companies serving as Guaranty Collateral;

8. Defendants failed to cure the defaults after receiving notice of the same from Plaintiffs;

9. 2999TC does not have the financial means to perform its obligations in connection with the Loan;

10. Plaintiffs properly accelerated the Loan on or about April 14, 2020, making the Loan immediately due and payable in full;

11. Plaintiffs have demanded that 2999TC as the borrower, as well as Barton and JMJ as Guarantors, pay the amounts due and owing in connection with the Loan;

**From:** Victoria G. Olivo
**To:** dee.kelly@kellyhart.com
**Subject:** 141-316567-20 Order Authorizing Sub Service & TRO
**Date:** Thursday, April 30, 2020 9:57:00 AM
**Attachments:** 316567 Order Authorizing Sub Service & Extending TRO.pdf
image001.png

---

Good Morning,

Please see the attached order signed by the court and call or email with any questions.

Thank you,

*Victoria Olivo*
141st Associate Clerk
100 N. Calhoun St
Fort Worth, Texas 76196
817-884-1198
vgolivo@tarrantcounty.com

TARRANT COUNTY
5/11/2020 6:13 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 141-316567-20

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED
TARRANT COUNTY
2020 MAY 12 AM 9: 57
THOMAS A. WILDER
DISTRICT CLERK

## ORDER EXTENDING TEMPORARY RESTRAINING ORDER AND RESETTING HEARING ON APPLICATION FOR TEMPORARY INJUNCTION

Came on to be considered the unopposed motion to extend the temporary restraining order originally entered on April 22, 2020 in this case, and subsequently extended until May 12, 2020, such motion having been filed by Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "Plaintiffs") and the relief sought in such motion being agreed to, and unopposed, by Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton (all collectively, "Defendants"). The Court finds that such motion should be granted.

It is therefore **ORDERED, ADJUDGED AND DECREED** that the ex parte Temporary Restraining Order attached hereto as Exhibit A and originally issued in this case on April 22, 2020, and subsequently extended until May 12, 2020, is hereby further extended and shall remain in full force and effect through May 26, 2020.

E-MAILED
5-11-20 NO

It is further **ORDERED, ADJUDGED AND DECREED** that Plaintiffs' Application for Temporary Injunction shall be heard beginning at 9:30 a.m. on May 26, 2020.

SIGNED this 12 day of MAY, 2020.

HON. JOHN P. CHUPP

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **_____ JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED
TARRANT COUNTY
2020 APR 22 PM 2:10
THOMAS A. WILDER
DISTRICT CLERK

**TEMPORARY RESTRAINING ORDER**

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "**Plaintiffs**") have filed a verified Original Petition, Application for Injunctive Relief, and Request for Disclosure (the "**Application**"), and in connection with that Application have presented to the Court a request for a temporary restraining order against defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**").

From the facts set forth in the Application and attached verification, it clearly appears, and the Court finds as follows:

1. In September of 2019, Plaintiffs made a $4,000,000.00 loan to defendant 2999TC (the "**Loan**") in connection with a real estate development project involving the acquisition of property located at 2999 Turtle Creek Boulevard, Dallas, Texas (the "**Property**");
2. Defendants Barton, individually, and JMJ guaranteed the Loan (the "**Guaranties**");

EXHIBIT
A



E-MAILED
4-22-20

3. In connection with his personal Guaranties (the "**Barton Guaranties**") Barton personally agreed to grant or cause to be granted a first-priority lien on the unencumbered value of a statue and certain real estate (hereinafter collectively referred to as the "**Guaranty Collateral**"):

| Collateral | Acres | Lots |
|---|---|---|
| Art: Michelangelo Bacchus statue, 1938 bronze replica, #3 of 8 total editions | n/a | n/a |
| Real Property Development known as North Star | 63.75 | 302 |
| Real Property Development known as Griffin | 201 | 870 |
| Real Property Development known as Rogers Ranch | 100 | 40 |
| Real Property Development known as Killeen | 16.2 | 1 |
| Real Property Development known as Ridgeview | 15 | 54 |

4. Several of Barton's holding companies made material misrepresentations to Plaintiffs that they were organized in Texas;

5. Barton failed to provide all the documents necessary to allow Plaintiffs to fully perfect their security interest in the Guaranty Collateral; instead, he pledged membership interests in (i) entities holding the real estate from which the unencumbered value of the Guaranty Collateral was derived and (ii) one of the entities in the ownership chain of the company holding legal title to the Property (the "**Property Collateral**") (the Guaranty Collateral and the Property Collateral hereinafter collectively, the "**Collateral**");

6. 2999TC failed to pay the $180,000.00 interest-only payment due on March 16, 2020;

7. Barton potentially diluted the unencumbered value of Plaintiffs' first-priority security interest in the Collateral by allowed the granting of liens to third parties on the real estate owned by the holding companies serving as Guaranty Collateral;

8. Defendants failed to cure the defaults after receiving notice of the same from Plaintiffs;

9. 2999TC does not have the financial means to perform its obligations in connection with the Loan;

10. Plaintiffs properly accelerated the Loan on or about April 14, 2020, making the Loan immediately due and payable in full;

11. Plaintiffs have demanded that 2999TC as the borrower, as well as Barton and JMJ as Guarantors, pay the amounts due and owing in connection with the Loan;

12. Despite Plaintiffs' demands for payment, to date, Defendants have failed to make any payments to Plaintiffs in connection with the Loan since the very first interest-only payment due in December of 2019;

13. The Loan is accruing interest daily at the annual rate of 18%;

14. Absent an immediate restraining order, Defendants will dilute the unencumbered value of Plaintiffs' security interest in the Collateral and diminish Plaintiffs' prospects of being made whole while the Loan debt only continues to increase;

15. Plaintiffs have a probable right of recovery on the claims set forth in its Application;

16. Unless Defendants are immediately enjoined and restrained from the acts set forth in this temporary restraining order, Plaintiffs will suffer immediate, irreparable injury for which there is no adequate remedy at law because, absent an immediate restraining order, Defendants will allow the debt owed to Plaintiffs in connection with the Loan to increase while diluting the unencumbered value of Plaintiffs' security interest in the Collateral, making Defendants unable to satisfy a judgment in Plaintiffs' favor; and

17. This order should be granted on an ex parte basis because the unencumbered value of Plaintiffs' security interests in the Collateral will suffer dilution should the Court delay in issuing this order.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants and their agents, servants, employees, attorneys, and those persons and entities in active concert or participation with them and/or under their ownership and/or control who receive actual notice of the order, including but not limited to, the entities through which the Collateral or any asset of the Collateral is held and/or owned, whether directly or indirectly, in whole or in part, and any entity pledging a security interest to Plaintiffs in connection with the Loan, are hereby enjoined and restrained from engaging in the following acts or practices:

(a) directly or indirectly encumbering, diluting, or making inferior Plaintiffs' security interest in the unencumbered value of the Collateral, or allowing the encumbrance, dilution, or making inferior of Plaintiffs' security interest in the unencumbered value of the Collateral;

(b) directly or indirectly granting to any party a security interest in the Collateral or any assets of the Collateral, or allowing the granting to any other party a security interest in the Collateral or any assets of the Collateral;

(c) directly or indirectly selling, transferring, disposing, destroying, unwinding, or altering the Collateral or any assets of the Collateral, or any portion thereof, or allowing the transfer, disposal, destruction, unwinding, or alteration of the Collateral or any assets of the Collateral, or any portion thereof;

(d) transferring, concealing, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any records, documents, and/or communications relating to the Collateral or the assets of the Collateral, or allowing the transfer, concealment, destruction, mutilation alteration, falsification, or removal of the same; and

(e) continuing to interfere with Plaintiffs perfecting their security interest in the Collateral by requiring Defendants to within five business days deliver to Plaintiffs the documents necessary for all Collateral to immediately be properly and fully perfected.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' application for a temporary injunction shall be heard before this Court on the 6th day of May, 2020 at 10 o'clock a.m., in the Courtroom of the 141st Judicial District of Tarrant County, Texas, and that Defendants be cited to appear to show cause, if any, why a temporary injunction should not be issued as requested by Plaintiffs. The Clerk of this Court is directed to issue a show cause notice to Defendants to appear at the temporary injunction hearing.

The Clerk of this Court shall forthwith, on the filing by Plaintiffs of a bond in the amount of $1000.00, and on approving the same according to law, issue this temporary restraining order and any necessary writ(s) in conformity with the law and the terms of this order. The bond requirement may be satisfied by the tender of a firm check in the required amount.

This order shall expire on 5/6, 2020. @ 10 am

SIGNED this 22 day of April, 2020 at 1:51 o'clock, p.m.

[signature]

JUDGE PRESIDING

**From:** Victoria G. Olivo
**To:** "dee.kelly@kellyhart.com"; "ebrandon@reedsmith.com"
**Subject:** 141-316567-20 Order Extending TRO
**Date:** Tuesday, May 12, 2020 10:35:00 AM
**Attachments:** 316567 Order Extending TRO.pdf
image001.png

---

Good Morning,

Please see the attached order signed by the court and call or email with any questions.

Thank you,

*Victoria Olivo*
141st Associate Clerk
100 N. Calhoun St
Fort Worth, Texas 76196
817-884-1198
vgolivo@tarrantcounty.com

FILED
TARRANT COUNTY
5/19/2020 10:28 AM
THOMAS A. WILDER
DISTRICT CLERK

141-316567-20

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED
TARRANT COUNTY
2020 MAY 19 PM 2:51
THOMAS A. WILDER
DISTRICT CLERK

**ORDER EXTENDING TEMPORARY RESTRAINING ORDER AND RESETTING HEARING ON APPLICATION FOR TEMPORARY INJUNCTION**

Came on to be considered the unopposed motion to extend the temporary restraining order originally entered on April 22, 2020 in this case, and subsequently extended first until May 12, 2020, and later until May 26, 2020, such motion having been filed by Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "Plaintiffs") and the relief sought in such motion being agreed to, and unopposed, by Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton (all collectively, "Defendants"). The Court finds that such motion should be granted.

It is therefore **ORDERED, ADJUDGED AND DECREED** that the *ex parte* Temporary Restraining Order attached hereto as Exhibit A and originally issued in this case on April 22, 2020, and subsequently extended first until May 12, 2020, and later until May 26, 2020, is hereby further extended and shall remain in full force and effect through June 16, 2020.



E-MAILED
5-19-20VO

EXHIBIT "B-4"

It is further **ORDERED, ADJUDGED AND DECREED** that Plaintiffs' Application for Temporary Injunction shall be heard beginning at 9:30 a.m. on June 16, 2020.

SIGNED this 19 day of MAY, 2020.

HON. JOHN P. CHUPP

CAUSE NO. 141-316567-20

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **_____ JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED TARRANT COUNTY
2020 APR 22 PM 2:10
THOMAS A. WILDER DISTRICT CLERK

**TEMPORARY RESTRAINING ORDER**

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "**Plaintiffs**") have filed a verified Original Petition, Application for Injunctive Relief, and Request for Disclosure (the "**Application**"), and in connection with that Application have presented to the Court a request for a temporary restraining order against defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**").

From the facts set forth in the Application and attached verification, it clearly appears, and the Court finds as follows:

1. In September of 2019, Plaintiffs made a $4,000,000.00 loan to defendant 2999TC (the "**Loan**") in connection with a real estate development project involving the acquisition of property located at 2999 Turtle Creek Boulevard, Dallas, Texas (the "**Property**");
2. Defendants Barton, individually, and JMJ guaranteed the Loan (the "**Guaranties**");



E-MAILED 4-22-20 vb

3. In connection with his personal Guaranties (the "**Barton Guaranties**") Barton personally agreed to grant or cause to be granted a first-priority lien on the unencumbered value of a statue and certain real estate (hereinafter collectively referred to as the "**Guaranty Collateral**"):

| Collateral | Acres | Lots |
|---|---|---|
| Art: Michelangelo Bacchus statue, 1938 bronze replica, #3 of 8 total editions | n/a | n/a |
| Real Property Development known as North Star | 63.75 | 302 |
| Real Property Development known as Griffin | 201 | 870 |
| Real Property Development known as Rogers Ranch | 100 | 40 |
| Real Property Development known as Killeen | 16.2 | 1 |
| Real Property Development known as Ridgeview | 15 | 54 |

4. Several of Barton's holding companies made material misrepresentations to Plaintiffs that they were organized in Texas;

5. Barton failed to provide all the documents necessary to allow Plaintiffs to fully perfect their security interest in the Guaranty Collateral; instead, he pledged membership interests in (i) entities holding the real estate from which the unencumbered value of the Guaranty Collateral was derived and (ii) one of the entities in the ownership chain of the company holding legal title to the Property (the "**Property Collateral**") (the Guaranty Collateral and the Property Collateral hereinafter collectively, the "**Collateral**");

6. 2999TC failed to pay the $180,000.00 interest-only payment due on March 16, 2020;

7. Barton potentially diluted the unencumbered value of Plaintiffs' first-priority security interest in the Collateral by allowed the granting of liens to third parties on the real estate owned by the holding companies serving as Guaranty Collateral;

8. Defendants failed to cure the defaults after receiving notice of the same from Plaintiffs;

9. 2999TC does not have the financial means to perform its obligations in connection with the Loan;

10. Plaintiffs properly accelerated the Loan on or about April 14, 2020, making the Loan immediately due and payable in full;

11. Plaintiffs have demanded that 2999TC as the borrower, as well as Barton and JMJ as Guarantors, pay the amounts due and owing in connection with the Loan;

12. Despite Plaintiffs' demands for payment, to date, Defendants have failed to make any payments to Plaintiffs in connection with the Loan since the very first interest-only payment due in December of 2019;

13. The Loan is accruing interest daily at the annual rate of 18%;

14. Absent an immediate restraining order, Defendants will dilute the unencumbered value of Plaintiffs' security interest in the Collateral and diminish Plaintiffs' prospects of being made whole while the Loan debt only continues to increase;

15. Plaintiffs have a probable right of recovery on the claims set forth in its Application;

16. Unless Defendants are immediately enjoined and restrained from the acts set forth in this temporary restraining order, Plaintiffs will suffer immediate, irreparable injury for which there is no adequate remedy at law because, absent an immediate restraining order, Defendants will allow the debt owed to Plaintiffs in connection with the Loan to increase while diluting the unencumbered value of Plaintiffs' security interest in the Collateral, making Defendants unable to satisfy a judgment in Plaintiffs' favor; and

17. This order should be granted on an ex parte basis because the unencumbered value of Plaintiffs' security interests in the Collateral will suffer dilution should the Court delay in issuing this order.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants and their agents, servants, employees, attorneys, and those persons and entities in active concert or participation with them and/or under their ownership and/or control who receive actual notice of the order, including but not limited to, the entities through which the Collateral or any asset of the Collateral is held and/or owned, whether directly or indirectly, in whole or in part, and any entity pledging a security interest to Plaintiffs in connection with the Loan, are hereby enjoined and restrained from engaging in the following acts or practices:

(a) directly or indirectly encumbering, diluting, or making inferior Plaintiffs' security interest in the unencumbered value of the Collateral, or allowing the encumbrance, dilution, or making inferior of Plaintiffs' security interest in the unencumbered value of the Collateral;

(b) directly or indirectly granting to any party a security interest in the Collateral or any assets of the Collateral, or allowing the granting to any other party a security interest in the Collateral or any assets of the Collateral;

(c) directly or indirectly selling, transferring, disposing, destroying, unwinding, or altering the Collateral or any assets of the Collateral, or any portion thereof, or allowing the transfer, disposal, destruction, unwinding, or alteration of the Collateral or any assets of the Collateral, or any portion thereof;

(d) transferring, concealing, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any records, documents, and/or communications relating to the Collateral or the assets of the Collateral, or allowing the transfer, concealment, destruction, mutilation alteration, falsification, or removal of the same; and

(e) continuing to interfere with Plaintiffs perfecting their security interest in the Collateral by requiring Defendants to within five business days deliver to Plaintiffs the documents necessary for all Collateral to immediately be properly and fully perfected.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' application for a temporary injunction shall be heard before this Court on the 6th day of May, 2020 at 10 o'clock a.m., in the Courtroom of the 141st Judicial District of Tarrant County, Texas, and that Defendants be cited to appear to show cause, if any, why a temporary injunction should not be issued as requested by Plaintiffs. The Clerk of this Court is directed to issue a show cause notice to Defendants to appear at the temporary injunction hearing.

The Clerk of this Court shall forthwith, on the filing by Plaintiffs of a bond in the amount of $ 1000.00, and on approving the same according to law, issue this temporary restraining order and any necessary writ(s) in conformity with the law and the terms of this order. The bond requirement may be satisfied by the tender of a firm check in the required amount.

This order shall expire on 5/6, 2020. @ 10 am

SIGNED this 22 day of April, 2020 at 1:51 o'clock, p.m.

[signature]
JUDGE PRESIDING

**From:** Victoria G. Olivo
**To:** dee.kelly@kellyhart.com; joakim.soederbaum@kellyhart.com; ebrandon@reedsmith.com
**Subject:** 141-316567-20 Order Extending TRO & Resetting Hearing
**Date:** Tuesday, May 19, 2020 2:59:00 PM
**Attachments:** 316567 Order Extending TRO & Resetting Hearing.pdf
image001.png

---

Good Afternoon,

Please see the attached order signed by the court and call or email with any questions.

Thank you,

*Victoria Olivo*
141st Associate Clerk
100 N. Calhoun St
Fort Worth, Texas 76196
817-884-1198
vgolivo@tarrantcounty.com

141-316567-20

FILED
TARRANT COUNTY
6/5/2020 5:43 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's MOTION TO DISMISS FOR LACK OF JURISDICTION AND SPECIAL EXCEPTIONS**

Pursuant to Rules 85 and 91 of the Texas Rules of Civil Procedure, Defendant 2999TC LP, LLC ("***2999TC***"), files this Motion to Dismiss for Lack of Jurisdiction (i.e., Plea to the Jurisdiction) and Special Exceptions to Plaintiffs' Original Petition, and respectfully shows:

## I. Applicable Legal Standards

1. Standing is a question of law that is a prerequisite for this Court's subject-matter jurisdiction and focuses on whether the plaintiff may bring the lawsuit pled in his petition. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553-54 (Tex. 2000); *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex. 1998). A plaintiff has standing if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the defendant's wrongful act; (2) he has a direct relationship between the alleged injury and the claim being adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an

appropriate party to assert the public's interest in the matter, as well as his own. *Id*. at 249. Only the person whose primary legal right has been breached may seek redress for an injury, and "[w]ithout breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit." *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976); *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249 (Tex. App.—Dallas 2005, no pet.). When a plaintiff lacks standing, the trial court lacks subject-matter jurisdiction to address his causes of action and must dismiss them. *Douglas v. Delp*, 987 S.W.2d 879 (Tex. 1999) ("Without subject matter jurisdiction, courts may not address the merits of a case."); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."); *Lapiner v. Maimon*, 429 S.W.3d 816, 825–26 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (When a court determines that there is a lack of standing in a shareholder derivative action, it must dismiss for lack of subject-matter jurisdiction.).

2. A plea to the jurisdiction is the proper method of raising the absence of subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). The plea can challenge standing and subject-matter jurisdiction by pointing to a petition's failure to plead facts establishing standing or, if such "jurisdictional facts" were properly pled, by disproving them. *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). To assess a defendant's challenge to jurisdictional facts (here, those required for standing), courts may consider evidence beyond the petition's four corners. *Id.*; *Bland Indep. Sch. Dist*. at 555. Upon determining that the defendant has disproved the requisite jurisdictional facts, they must dismiss the plaintiff's claims as a matter of law. *Miranda* at 227.

3. Standing may also be raised in connection with special exceptions. "The purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or

sufficiently specific or fail to plead a cause of action." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (citing *Friesenhahn v. Ryan,* 960 S.W.2d 656, 658 (Tex. 1998)). "In making this determination, the . . . court accepts as true all factual allegations in the plaintiff's pleadings." *LaRue v. GeneScreen, Inc.,* 957 S.W.2d 958, 961 (Tex. App.—Beaumont 1997, pet. denied) (citing *Thompson v. El Centro Del Barrio,* 905 S.W.2d 356, 358 (Tex. App.—San Antonio 1995, writ denied)). "Generally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading, unless the pleading defect is of a type that amendment cannot cure." *Id; see also In re XTO Energy Inc.*, 471 S.W.3d 126, 137 (Tex. App.—Dallas 2015, orig. proceeding). "If a pleading defect cannot be cured by amendment, dismissal may be with prejudice." *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 141 n.16 (Tex. App.—Texarkana 2000, no pet.) (citing *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 386 (Tex. 1991)); *see also Zaremba v. Cliburn*, 949 S.W.2d 822, 829 (Tex. App.—Fort Worth 1997, writ denied) ("[W]hen there is a defect in the pleadings that cannot be cured by an amendment, the trial court may dismiss claims without providing an opportunity to amend the defect.").

## II. Plaintiffs Fail to Plead Facts Sufficient to Establish Their Standing or Sufficient Facts to Support the Claims Asserted.

4. The Original Petition pleads that Plaintiff L. Allen Hodges III serves as the as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), and "is one of two duly qualified and acting independent executors under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1." Orig. Pet.¶ 3. The Original Petition does not, however, explain the relationship among the remaining plaintiffs (Tejas Group, Ltd., LAH III Family

Specific Interest, Ltd., and Blackfoot Interest, Ltd.) and the capacity to which they assert claims against any of the defendants—either individually or together.

5. Instead, the Original Petition lumps all the plaintiffs together and generally asserts a claim for breach of promissory notes against 2999TC and breach of guarantees against individual Tim Barton. "Plaintiffs" then claim to be seeking an unspecified amount of damages arising from a purported loan to 2999TC for a principal amount $4,000,000 (the "***Loan***") that was evidenced by two promissory notes (the "***Notes***"). Orig. Pet. ¶ 15. While "Plaintiffs" concede that execution of the Notes was conditioned on obtaining underlying security for the Loan, the Original Petition pleads that this condition precedent has not occurred. *See, e.g.*, Orig. Pet.¶ 1, 18, 33 (pleading that "security interests pledged to secure the Loan" have not been effected). The Original Petition does plead facts to establish why conditions *precedent* to execution of the Notes did not occur, what role each plaintiff had in the circumstances involving the failure to satisfy the conditions precedent, and sufficient facts to support "Plaintiffs" basis to assert the claims they are seeking.

6. Instead, "Plaintiffs" makes ex post facto allegations about events occurring months after the Notes purportedly were executed. But the after-the-fact allegations fail to plead whether or how the Note was secured by certain real and/or other property pursuant to a deed of trust, pledge agreement, or any other form of security. And to the extent such security was executed as a condition precedent, the Original Petition fails to plead such fact. Without pleading the predicate facts to establish their right to bring the claims that they seek or the existence of a properly executed promissory note, Plaintiffs have failed to properly plead a claim for breach of promissory notes and breach of personal guaranties for the notes.

7. As a result, Plaintiffs' pleading fails to establish their standing to bring this lawsuit and the claims asserted must be dismissed. As such, 2999TC prays the Court sustain this Special Exception and strike Plaintiffs' allegations from Paragraphs 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of Plaintiffs' Original Petition because they fail to assert sufficient facts to establish compliance with predicate facts. 2999TC requests the Court order Plaintiffs to properly replead with specificity, or otherwise omit their claims against 2999TC within 20 days of the Court's order.

8. In addition, 2999TC specially excepts to Paragraphs 13, 15, and 30 of Plaintiffs' Original Petition because they fail to specify the maximum amount of damages claimed. Pursuant to TEXAS RULES OF CIVIL PROCEDURE 47, 2999TC requests the Court require Plaintiffs to replead specifying the maximum amount of damages claimed within 20 days of the Court's order.

## V. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant 2999TC LP, LLC respectfully requests that the Court dismiss Plaintiffs' claims for lack of standing. Defendant 2999TC LP, LLC further requests that the Court that Plaintiffs take nothing by their claims, that Defendant's Special Exceptions are sustained, and for any other further relief at law or in equity to which 2999TC LP, LLC may be justly entitled.

Dated: June 5, 2020. Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: +1 469 680 4212
F: +1 469 680 4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on June 5, 2020, counsel for Defendant emailed counsel for Plaintiffs to confer regarding the above referenced motion. As of the filing of this motion, counsel for Plaintiffs has not responded and, therefore, Defendant will presume that Plaintiffs oppose the relief requested in the foregoing.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

## CERTIFICATE OF SERVICE

I certify that, on June 5, 2020, a true and correct copy of the above and foregoing document was served by electronic mail to:

Joakim Soederbaum
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
joakim.soederbaum@kellyhart.com

*/s/ Elizabeth Brandon*
Elizabeth Brandon

141-316567-20

FILED
TARRANT COUNTY
6/5/2020 5:57 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND MOTION TO STAY CASE**

COMES NOW Defendant 2999TC LP, LLC ("***Defendant***"), and, in support of its Motion to Dissolve Temporary Restraining Order and Motion to Stay Case, respectfully shows the Court as follows:

## I. SUMMARY

1. Plaintiffs have obtained a Temporary Restraining Order ("***TRO***") that violates the automatic stay provided in 11 U.S.C. § 362(a). Further, Plaintiffs have failed to provide any evidence of imminent or irreparable harm that would necessitate an emergency TRO or any form of injunctive relief. As such, the TRO should be immediately dissolved.

2. Further, this matter should be stayed pending resolution of the Wall Bankruptcy (defined below) because it interferes with the automatic stay. In their Petition (defined below), Plaintiffs allege to have unperfected liens in certain property owned by a bankruptcy debtor. As such, Plaintiffs seek temporary and permanent injunctions that would provide them with liens on the property of a bankruptcy debtor and that restrict the bankruptcy debtor's ability to exercise



EXHIBIT "B-6"

control over its property. Because the requested relief would impair the property of a bankruptcy debtor and would restrict a bankruptcy debtor from exercising control over property of its estate, it is a violation of the automatic stay. Accordingly, this case should be stayed until stay relief is obtained or the bankruptcy case is dismissed.

## II. FACTUAL BACKGROUND

### A. The Petition and TRO

3. On April 22, 2020, Plaintiffs L. Allen Hodges III, as independent executor of the Estate of Leland A. Hodges Jr. ("***Hodges***") and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. ("***Tejas***" and together with Hodges, "***Plaintiffs***") filed their Original Petition, Requests for Disclosure, and Verified *Ex Parte* Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "***Petition***") against Defendant, JMJ Development, LLC ("***JMJ***") and Tim Barton ("***Barton***" and together with Defendant and JMJ, "***Defendants***").

4. In the Petition Plaintiffs allege that the Defendants failed to pay quarterly interest payments on two promissory notes executed in Plaintiffs' favor (the "***Loans***") and that those Loans have now been accelerated and are due in full. Plaintiffs further allege that as a condition to making the Loans, Defendants agreed they "would grant or cause to be granted first priority liens and securities in the unencumbered value of the collateral pledged as security for the Loan." *See* Petition ¶ 1.

5. The "Collateral" identified in the Petition consists of:

- A replica of Michelangelo's Bacchus;
- 63.75 acres of real property known as "North Star;"
- 201 acres of real property known as "Griffin;"

- 100 acres of real property known as "Rogers Ranch;"
- 16.2 acres of real property known as "Killeen;" and
- 15 acres of real property known as "Ridgeview."

Petition ¶ 16.

6. Although the Petition makes clear that the aforementioned parcels of real estate and the statue are the "Collateral," it also alleges that Mr. Barton provided pledges of certain membership rights to Plaintiffs. It is not clear whether the pledges were allegedly additional collateral or replacement collateral to secure the Loans. It is clear, however, that Plaintiffs allege that the pledges are for membership interests in the entities that own the Collateral (called "***Property Collateral***" in the Petition). *See* Petition ¶ 18.

7. Defendant has identified a portion of the Collateral (63.75 acres of real property known as "North Star") that is owned by Wall009, LLC ("***Wall009***") and that a portion of the "Property Collateral" consists of a pledge of membership interest in Wall009. *See* Membership Pledge Agreement between Carnegie Development, LLC, Hodges, Wall009 and Defendant, a true and correct copy of which is attached as **Exhibit 1**.

**B. The Wall009 Bankruptcy**

8. On or about April 8, 2020, an involuntary bankruptcy petition was filed for Wall009. The bankruptcy petition was not filed by Mr. Barton or Defendant or even by Wall009. The bankruptcy petition was filed by a number of Chinese nationals that are allegedly creditors of Wall009. *See* Involuntary Petition Against a Non-Individual, *In re Wall009, LLC*, Cause No. 20-31133-7, pending in the United States Bankruptcy Court for the Northern District of Texas (the "***Wall Bankruptcy***"), a true and correct copy of which is attached as **Exhibit 2**. At this time, the Wall Bankruptcy remains pending.

9. Further, at this time, Wall009 and other Wall Bankruptcy Debtors[1] are conducting discovery and tracing analysis to determine whether, at to what extent, they have an interest in the remaining Collateral identified in the Petition. Although their analysis is not complete, the one or more Wall Bankruptcy Debtors have determined that they hold a security interest in Rogers Ranch, Griffin, Killeen, and Ridgeview – each if which is identified as Collateral in the Petition.

## III. ARGUMENT AND AUTHORITIES

### A. The Automatic Stay

10. Section 362(a)(3) of title 11 provides that the filing of a bankruptcy petition (whether voluntary or involuntary) "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate … [or to] any act to create, perfect, or enforce any lien against property of the estate" 11 U.S.C. § 362(a)(3)-(4).

11. "[T]he automatic stay has broad application." *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). "The purposes of the stay are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution of the bankruptcy estate." *Dugas v. Claron Corp*., No. 1:09-CV-990, 2010 U.S. Dist. LEXIS 86834, at *10 (E.D. Tex. 2010) (citing *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003)). "This breadth suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of ***arguable property***." *In re Chesnut*, 422 F.3d at 301 (emphasis added).

---

[1] The Wall Bankruptcy is a jointly administered case in which involuntary chapter 7 bankruptcy petition have been filed against Wall007, LLC; Wall009, LLC; Wall010, LLC; Wall011, LLC; Wall012, LLC; Wall016, LLC; and Wall017, LLC (collectively, the "***Wall Bankruptcy Debtors***").

**B. The TRO Violates the Automatic Stay**

12. Here, the TRO violates the automatic stay because it constitutes an act to exercise control over property of a bankruptcy debtor and because it operates in furtherance of an attempt to create or perfect a lien on property of a bankruptcy debtor.

13. The TRO provides that Defendants are enjoined from:

- directly **or indirectly** encumbering, diluting, or making inferior Plaintiffs' security interest in the unencumbered value of the Collateral, or allowing the encumbrance, dilution, or making inferior of Plaintiffs' security interest in the unencumbered value of the Collateral;
- directly **or indirectly** granting to any party a security interest in the Collateral or any assets of the Collateral, or allowing the granting to any other party a security interest in the Collateral or any assets of the Collateral;
- directly **or indirectly selling, transferring, disposing, destroying, unwinding, or altering the Collateral** or any assets of the Collateral, or any portion thereof, or allowing the transfer, disposal, destruction, unwinding, or alteration of the Collateral or any assets of the Collateral, or any portion thereof;
- transferring, concealing, destroying, mutilating, altering, falsifying, or removing from the jurisdiction of this Court any records, documents, and/or communications relating to the Collateral or the assets of the Collateral, or allowing the transfer, concealment, destruction, mutilation alteration, falsification, or removal of the same; and
- continuing to interfere with P**laintiffs perfecting their security interest in the Collateral** by requiring Defendants to within five business days deliver to Plaintiffs the documents necessary for all Collateral to immediately be properly and fully perfected.

14. The TRO, thus, prevents the Defendants from "directly or indirectly" selling, transferring, disposing, destroying, or altering the Collateral. Certain of the Collateral is owned by Wall009. As such, the TRO violates 11 U.S.C. § 362(a)(3) because it interferes with Wall009's ability to exercise control over its property, including its ability to encumber, sell, or transfer property.

15. Additionally, the TRO violates 11 U.S.C. § 362(a)(4) because it mandates that Defendants assist Plaintiffs in "perfecting their security interest" in the Collateral, which is

property of bankruptcy debtor Wall009. *See* 11 U.S.C. § 362(a)(4) (providing that the automatic stay precludes "any act to create, perfect, or enforce any lien against property of the estate"). Moreover, because the other Collateral identified in the Petition may serve as collateral for the Wall Bankruptcy Debtors, there may be additional stay violations. Accordingly, the TRO must be dissolved because it violates the automatic stay.

**C. This Case Should be Stayed Pending the Resolution of the Wall009 Bankruptcy**

16. This matter should be stayed pending resolution of the Wall009 Bankruptcy because Wall009 is a necessary party to this matter. Under Texas Rule of Civil Procedure 39, a party should be joined in an action if feasible and if that party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest." Tex. R. Civ. P. 39.

17. Here, Wall009 is a necessary party because Plaintiffs seek a permanent injunction providing them with a lien on property owned by Wall00. As such, Wall009 has an interest in this matter and its absence would necessarily impair or impede its ability to protect its interest in the property. Although Wall009 may not be joined in this matter ***at this time*** because it is a bankruptcy debtor, it may feasibly be joined as a party to this action. *See* Tex. R. Civ. P. 39(b); 11 U.S.C. § 362(a)(1)-(2). Plaintiffs may seek for relief from the automatic stay to join Wall009 to this matter or may wait for the conclusion of the Wall Bankruptcy. *See, e.g., In re Chesnut*, 422 F.3d 298, 301 5th Cir. 2005) ("[B]y providing bankruptcy courts broad discretion to lift stays, Congress has evinced an intent to constitute the bankruptcy courts as the proper forum for the vindication of creditor rights"). Indeed, Wall009 has filed two motions to dismiss the Wall Bankruptcy that are currently pending. Thus, Wall009's joinder is feasible by obtaining stay relief or abating this proceeding until the Wall Bankruptcy is dismissed.

18. Accordingly, this matter can be and should be stayed until such time as Plaintiffs obtain stay relief in the Wall Bankruptcy or until the Wall Bankruptcy has concluded.

**D. The TRO Should be Dissolved because there is No Emergency**

19. Additionally, the TRO should be dissolved because Plaintiffs have has not demonstrated an irreparable injury. Indeed, Plaintiffs fail to even clearly allege an irreparable injury. At best Plaintiffs alleges that "Barton has already ***potentially*** diluted" the value of Plaintiffs' Collateral. Plaintiffs lack any evidence supporting the conclusory and admittedly speculative assertion that their Collateral has been impaired. Plaintiffs fail to even allege how Mr. Barton allegedly impaired their collateral. Further, Plaintiffs have failed to even allege that the unknown impairment to their Collateral will result in Plaintiffs being under-secured.

20. Moreover, even assuming Plaintiffs could provide such evidence, Plaintiffs fail to identify how such dilution would cause irreparable harm. At worst, Plaintiffs may lose the principal of their Loans. Unfortunately for Plaintiffs, that argument undercuts the "irreparable" nature of its alleged harm. Money damages are precisely compensable (and thus not irreparable).

21. Furthermore, the TRO should be dissolved because it is a mandatory injunction and Plaintiffs have not shown extreme hardship. A mandatory injunction requires some conduct on the part of the defendant, rather than prohibiting it. *Tri-Star*, 101 S.W.3d at 592 (citing *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.) and *LeFaucheur v. Williams*, 807 S.W.2d 20, 22 (Tex. App.—Austin 1991, no writ)). While worded as a prohibitive order, the TRO is, in fact, mandatory. The TRO provides that Defendants must cooperate in Plaintiffs filing liens on their Collateral. Because the TRO requires action by Defendants, it is a mandatory order and "should be denied absent a **clear and compelling presentation of extreme necessity or hardship**." *Tri Star Petroleum*, 101 S.W.3d at 592 (emphasis added) (citing *Rhodia, Inc. v. Harris County*, 470 S.W.2d 415, 419 (Tex. Civ. App.—

Houston [1st Dist.] 1971, no writ)); *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 883 (Tex. App.—El Paso 2011, no pet.). Plaintiffs do not come close to demonstrating an extreme necessity or hardship. Accordingly, the TRO should be dissolved.

## V. CONCLUSION

Defendant respectfully request that the Court enter an order dissolving the TRO and staying this case until stay relief is granted in the Wall Bankruptcy or the Wall Bankruptcy is dismissed.

Dated: June 5, 2020. Respectfully submitted,

By: */s/ Elizabeth Brandon*
Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2501 N. Harwood St, Ste. 1700
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on June 5, 2020, counsel for Defendant emailed counsel for Plaintiffs to confer regarding the above referenced motion. As of the filing of this motion, counsel for Plaintiffs has not responded and, therefore, Defendant will presume that Plaintiffs oppose the relief requested in the foregoing.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

**CERTIFICATE OF SERVICE**

I certify that, on June 5, 2020, a true and correct copy of the above and foregoing document was served by electronic mail to:

Joakim Soederbaum
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
joakim.soederbaum@kellyhart.com

*/s/ Elizabeth Brandon*

Elizabeth Brandon

# EXHIBIT 1

**Fill in this information to identify the case:**

United States Bankruptcy Court for the: Northern District of Texas (State)

Case number (*If known*): ____________ Chapter 7

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

**12/15**

**Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).**

## Part 1: Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

**1. Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter 7

☐ Chapter 11

## Part 2: Identify the Debtor

**2. Debtor's name**

WALL009 LLC

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

____________

**4. Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

___ ___ – ___ ___ ___ ___ ___ ___ ___
EIN

**5. Debtor's address**

**Principal place of business**

13901 Midway Rd., Ste. 102
Number Street

Dallas TX 75244
City State ZIP Code

Dallas
County

**Mailing address, if different**

Number Street

P.O. Box

City State ZIP Code

**Location of principal assets, if different from principal place of business**

Number Street

City State ZIP Code

Debtor WALL009 LLC
Name
Case number (if known)________________

**6. Debtor's website** (URL) N/A

**7. Type of debtor**

- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other type of debtor. Specify: ________________

**8. Type of debtor's business**

*Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☒ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☐ None of the types of business listed.
- ☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

- ☒ No
- ☐ Yes. Debtor ________________ Relationship ________________

District ________________ Date filed ________ MM / DD / YYYY Case number, if known________________

Debtor ________________ Relationship ________________

District ________________ Date filed ________ MM / DD / YYYY Case number, if known________________

## Part 3: Report About the Case

**10. Venue**

*Check one:*

- ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked*:

- ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

- ☒ No
- ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

Debtor WALL009 LLC
Name

Case number (if known) ____________________

| 13. Each petitioner's claim | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Yijing Wu | Loan Debt | $ 460,000.00 |
| | Xuegeng Gong | Loan Debt | $ 224,000.00 |
| | Jin Wang | Loan Debt | $ 204,000.00 |
| | | Total of petitioners' claims | $ 2,005,000.00* |

**If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.**

**See attached list of additional Petitioning Creditors*

## Part 4: Request for Relief

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**

**Name and mailing address of petitioner**

Yijing Wu
Name

8-2607, Xuante Jiayuan, No. 1 Shilibao, Chaoyang District
Number Street

Beijing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

DocuSigned by:
✘ Yijing Wu
4018D14BC4804EC...
Signature of petitioner or representative, including representative's title

**Attorneys**

Jiangang Ou, Esquire
Printed name

Nguyen & Chen, LLP
Firm name, if any

11200 Westheimer, Ste. 120
Number Street

Houston TX 77042
City State ZIP Code

Contact phone 832-767-0339 Email jou@nguyen-chen.com

Bar number 5451133

State NY

✘ /s/ Jiangang Ou
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

Debtor WALL009 LLC
Name

Case number (if known)

**Name and mailing address of petitioner**

Xuegeng Gong
Name

Rm. 1801, Building C, Shengshijiayuan, No. 98 Jianguo Rd.
Number Street

Chaoyang District, Bejing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/22/2020
MM / DD / YYYY

DocuSigned by:
✘ Xuegeng Gong
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

✘ /s/ Stephen M. Packman
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

**Name and mailing address of petitioner**

Jin Wang
Name

Room 2-202, Building No. 4, Huanxixincun, Hangzhou
Number Street

China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
MM / DD / YYYY

✘
Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone Email

Bar number

State

✘
Signature of attorney

Date signed
MM / DD / YYYY

Debtor WALL009 LLC
Name

Case number (if known)

**Name and mailing address of petitioner**

Xuegeng Gong
Name

Rm. 1801, Building C, Shengshijiayuan, No. 98 Jianguo Rd.
Number Street

Chaoyang District, Bejing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
MM / DD / YYYY

✘
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

✘
Signature of attorney

Date signed
MM / DD / YYYY

**Name and mailing address of petitioner**

Jin Wang
Name

Room 2-202, Building No. 4, Huanxixincun, Hangzhou
Number Street

China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4/2/2020
MM / DD / YYYY

DocuSigned by:
✘ Wang Jin
Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone Email

Bar number

State

✘
Signature of attorney

Date signed
MM / DD / YYYY

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Weijia Kong | Loan Debt | $166,500.00 |
| Heng Zhang | Loan Debt | $114,000.00 |
| Hong Guo | Loan Debt | $114,000.00 |
| Pei Guan | Loan Debt | $112,000.00 |
| Yue Xu | Loan Debt | $112,000.00 |
| Mai Ye | Loan Debt | $111,000.00 |
| Chenchen Jiang | Loan Debt | $110,000.00 |
| Qiuying Li | Loan Debt | $110,000.00 |
| Ruinian Wu | Loan Debt | $110,000.00 |
| Lin Zhou | Loan Debt | $57,500.00 |

**Name and mailing address of petitioner**
Weijia Kong
No. 615, Building 28, Guanyingyuan West,
Xicheng District,
Beijing, China

DocuSigned by:
X Weijia Kong 3/21/2020
213B9409FBED46E...

**Name and mailing address of petitioner**
Heng Zhang
Rm 503, Building 10, Yichengmingyuan,
BDA, Daxing District, Beijing 100176, China

X___________________________________

**Name and mailing address of petitioner**
Hong Guo
Room 6-902, No.500, Gubei Central Garden,
South Yili Rd. Changning District, Shanghai,
China

X___________________________________

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

X___________________________________

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Weijia Kong | Loan Debt | $166,500.00 |
| Heng Zhang | Loan Debt | $114,000.00 |
| Hong Guo | Loan Debt | $114,000.00 |
| Pei Guan | Loan Debt | $112,000.00 |
| Yue Xu | Loan Debt | $112,000.00 |
| Mai Ye | Loan Debt | $111,000.00 |
| Chenchen Jiang | Loan Debt | $110,000.00 |
| Qiuying Li | Loan Debt | $110,000.00 |
| Ruinian Wu | Loan Debt | $110,000.00 |
| Lin Zhou | Loan Debt | $57,500.00 |

**Name and mailing address of petitioner**
Weijia Kong
No. 615, Building 28, Guanyingyuan West,
Xicheng District,
Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Heng Zhang
Rm 503, Building 10, Yichengmingyuan,
BDA, Daxing District, Beijing 100176, China

DocuSigned by:
X Heng Zhang 3/21/2020
0D9EFF2ABD7948B...

**Name and mailing address of petitioner**
Hong Guo
Room 6-902, No.500, Gubei Central Garden,
South Yili Rd. Changning District, Shanghai,
China

X____________________________________

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

X____________________________________

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Weijia Kong | Loan Debt | $166,500.00 |
| Heng Zhang | Loan Debt | $114,000.00 |
| Hong Guo | Loan Debt | $114,000.00 |
| Pei Guan | Loan Debt | $112,000.00 |
| Yue Xu | Loan Debt | $112,000.00 |
| Mai Ye | Loan Debt | $111,000.00 |
| Chenchen Jiang | Loan Debt | $110,000.00 |
| Qiuying Li | Loan Debt | $110,000.00 |
| Ruinian Wu | Loan Debt | $110,000.00 |
| Lin Zhou | Loan Debt | $57,500.00 |

**Name and mailing address of petitioner**
Weijia Kong
No. 615, Building 28, Guanyingyuan West,
Xicheng District,
Beijing, China

X___________________________________

**Name and mailing address of petitioner**
Heng Zhang
Rm 503, Building 10, Yichengmingyuan,
BDA, Daxing District, Beijing 100176, China

X___________________________________

**Name and mailing address of petitioner**
Hong Guo
Room 6-902, No.500, Gubei Central Garden,
South Yili Rd. Changning District, Shanghai,
China

X DocuSigned by: Guo Hong E3A17D1C3F7C415... 3/23/2020

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

X___________________________________

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Weijia Kong | Loan Debt | $166,500.00 |
| Heng Zhang | Loan Debt | $114,000.00 |
| Hong Guo | Loan Debt | $114,000.00 |
| Pei Guan | Loan Debt | $112,000.00 |
| Yue Xu | Loan Debt | $112,000.00 |
| Mai Ye | Loan Debt | $111,000.00 |
| Chenchen Jiang | Loan Debt | $110,000.00 |
| Qiuying Li | Loan Debt | $110,000.00 |
| Ruinian Wu | Loan Debt | $110,000.00 |
| Lin Zhou | Loan Debt | $57,500.00 |

**Name and mailing address of petitioner**
Weijia Kong
No. 615, Building 28, Guanyingyuan West,
Xicheng District,
Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Heng Zhang
Rm 503, Building 10, Yichengmingyuan,
BDA, Daxing District, Beijing 100176, China

X____________________________________

**Name and mailing address of petitioner**
Hong Guo
Room 6-902, No.500, Gubei Central Garden,
South Yili Rd. Changning District, Shanghai,
China

X____________________________________

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

DocuSigned by:
Pei Guan
X 48E869D934834A4... 3/22/2020

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Yue Xu
1401, Block C, Shengshijiayuan, No. 98
Jianguo Road, Chaoyang District, Beijing,
China

DocuSigned by:
X Yue Xu 3/22/2020
6810F269F1164F9...

**Name and mailing address of petitioner**
Mai Ye
1-101,No.14 Dongshan Lane, Xihu District,
Hangzhou, China

X___________________________________

**Name and mailing address of petitioner**
Chenchen Jiang
3395 Michelson Dr., Apt. 4460
Irvine, CA 92612

X___________________________________

**Name and mailing address of petitioner**
Qiuying Li
Rm. 703, Building 101, Xuanwumen West
Street, Xicheng District, Beijing, China

X___________________________________

**Name and mailing address of petitioner**
Ruinian Wu
2-4, No.221 Building,No.57 Yongding Road,
Haidian District, Beijing, China

X___________________________________

WALL009 LLC

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Yue Xu
1401, Block C, Shengshijiayuan, No. 98
Jianguo Road, Chaoyang District, Beijing,
China

X___________________________________

**Name and mailing address of petitioner**
Mai Ye
1-101,No.14 Dongshan Lane, Xihu District,
Hangzhou, China

DocuSigned by:
X Mai Ye 3/21/2020
361FA6EE16C842A...

**Name and mailing address of petitioner**
Chenchen Jiang
3395 Michelson Dr., Apt. 4460
Irvine, CA 92612

X___________________________________

**Name and mailing address of petitioner**
Qiuying Li
Rm. 703, Building 101, Xuanwumen West
Street, Xicheng District, Beijing, China

X___________________________________

**Name and mailing address of petitioner**
Ruinian Wu
2-4, No.221 Building,No.57 Yongding Road,
Haidian District, Beijing, China

X___________________________________

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Yue Xu
1401, Block C, Shengshijiayuan, No. 98
Jianguo Road, Chaoyang District, Beijing,
China

X_________________________________

**Name and mailing address of petitioner**
Mai Ye
1-101,No.14 Dongshan Lane, Xihu District,
Hangzhou, China

X_________________________________

**Name and mailing address of petitioner**
Chenchen Jiang
3395 Michelson Dr., Apt. 4460
Irvine, CA 92612

DocuSigned by:
X Chenchen Jiang 3/21/2020
1BBB9B6B8A23423...

**Name and mailing address of petitioner**
Qiuying Li
Rm. 703, Building 101, Xuanwumen West
Street, Xicheng District, Beijing, China

X_________________________________

**Name and mailing address of petitioner**
Ruinian Wu
2-4, No.221 Building,No.57 Yongding Road,
Haidian District, Beijing, China

X_________________________________

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Yue Xu
1401, Block C, Shengshijiayuan, No. 98
Jianguo Road, Chaoyang District, Beijing,
China

X____________________________________

**Name and mailing address of petitioner**
Mai Ye
1-101,No.14 Dongshan Lane, Xihu District,
Hangzhou, China

X____________________________________

**Name and mailing address of petitioner**
Chenchen Jiang
3395 Michelson Dr., Apt. 4460
Irvine, CA 92612

X____________________________________

**Name and mailing address of petitioner**
Qiuying Li
Rm. 703, Building 101, Xuanwumen West
Street, Xicheng District, Beijing, China

DocuSigned by:
X Qiuying Li ____________________ 3/24/2020
53A143F779524F2...

**Name and mailing address of petitioner**
Ruinian Wu
2-4, No.221 Building,No.57 Yongding Road,
Haidian District, Beijing, China

X____________________________________

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Yue Xu
1401, Block C, Shengshijiayuan, No. 98
Jianguo Road, Chaoyang District, Beijing,
China

X____________________________________

**Name and mailing address of petitioner**
Mai Ye
1-101,No.14 Dongshan Lane, Xihu District,
Hangzhou, China

X____________________________________

**Name and mailing address of petitioner**
Chenchen Jiang
3395 Michelson Dr., Apt. 4460
Irvine, CA 92612

X____________________________________

**Name and mailing address of petitioner**
Qiuying Li
Rm. 703, Building 101, Xuanwumen West
Street, Xicheng District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Ruinian Wu
2-4, No.221 Building,No.57 Yongding Road,
Haidian District, Beijing, China

X DocuSigned by: Wu Ruinian D1F82564363A468... 3/22/2020

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Lin Zhou
Room 1-406, No.1058, Lianhua Road,
Shanghai, China

DocuSigned by:
X Lin Zhou 3/23/2020
2A4A08F3E3B9470...

218147861v1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YIJING WU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020`

DocuSigned by:
Yijing Wu
4018D14BC4804EC...
YIJING WU

218180324v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___May 31___, 2017, and is between __Wu Yijing ___ (Passport No_G45202760_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 400,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $400,000.00 – Four Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to fifteen percent (15%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Wu Yijing
4-4-1403, Huafangyicheng, No.29 Qingnian Rd, Chaoyang Dist., Beijing, China
110041228@qq.com
(86)13811055575

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Yijing Wu
4018D14BC4804EC...
______________________
Wu Yijing

"**BORROWER"**

WALL 009, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...
______________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...
______________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF XUEGENG GONG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
Xuegeng Gong
XUEGENG GONG

218180333v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 15__, 2017, and is between __Gong Xuegeng___ (Passport No_E01308176_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 200,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $200,000.00 – Two Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to twelve percent (12%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:
Gong Xuegeng
Rm 1801, Building C, Shengshijiayuan, No.98 Jianguo Rd., Chaoyang District, Beijing, China
31474012@qq.com
（86） 15510751978

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Gong Xuegeng
C6090333F58F48C...
______________________
Gong Xuegeng

"**BORROWER"**

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F... ______________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423... ______________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**<u>DECLARATION OF JIN WANG IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 4/2/2020

DocuSigned by:
Wang Jin
6C94743B35874A0...
JIN WANG

218180343v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___July 14___, 2017, and is between __Wang Jin___ (Passport No_G41726873_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 170,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $170,000.00 – One Hundred and Seventy Thousand and No/100 Dollars

Interest: Interest amount equal to twenty percent (20%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Wang Jin
Room 2-202, Builidng No.4,
Huanxixincun, Hangzhou
tina@yding.cn
(86) 18605718018

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Wang Jin
6494743B35874A0...
______________________________
Wang Jin

"**BORROWER**"

WALL 009, LLC

DocuSigned by:
Tim Barton
55E2C214E42B42F...
By: ______________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
86EE266F063C423...
By: ______________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL009, LLC, | Case No. |
| Alleged Debtor. | |

**DECLARATION OF WEIJIA KONG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Weijia Kong
213B9409FBED46E...
WEIJIA KONG

218180357v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 23___, 2017, and is between __Kong Weijia ___ (Passport No_G43015013_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 150,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $150,000.00 – One Hundred and Fifty Thousand and No/100 Dollars

Interest: Interest amount equal to eleven percent (11%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Kong Weijia
Room 615, Building No.28, West Area, Guanyingyuan, Xicheng District, Beijing, China
kwj80@163.com
(86) 13671262320

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Kong Weijia
213B9409FBED46E...
______________________
Kong Weijia

"**BORROWER"**

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F... ______________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266E063C423... ______________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF HENG ZHANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Heng Zhang
0D9EFF2ABD7948B...
HENG ZHANG

218180358v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 15__, 2017, and is between __Zhang Heng___ (Passport No_G44750509_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to fourteen percent (14%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 009, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Zhang Heng<br>Rm 503, Building 10, Yichengmingyuan, BDA, Daxing District, Beijing 100176<br>allen.zhang@yding.cn<br>(86） 13810429210 |

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Zhang Heng
0D9EFF2ABD7948B...
________________________
Zhang Heng

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F... ________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423... ________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF HONG GUO IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Guo Hong
E3A17D1C3F7C415...
HONG GUO

218180361v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 23___, 2017, and is between __Guo Hong___ (Passport No_G38054256_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to fourteen percent (14%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Guo Hong
Room 6-902, No.500, Gubei Central Garden, South Yili Rd. Changning District, Shanghai, China
michelle@yding.cn
(86) 18621972720

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Guo Hong
E3A17D1C3F7C415...
Guo Hong

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF PEI GUAN IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
Pei Guan
48E869D934834A4...
PEI GUAN

218180364v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 15__, 2017, and is between __Guan Pei___ (Passport No_G27500096_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to twelve percent (12%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:
Guan Pei
#6101 Building 1, No.36 Zengguang Road, Beijing, China
2875823@qq.com
(86) 13671039097

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Guan Pei
48E869D934834A4...
______________________________
Guan Pei

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...
______________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...
______________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YUE XU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
Yue Xu
6810F269F1164F9...
YUE XU

218180365v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 15__, 2017, and is between __Xu Yue___ (Passport No_G51025650_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to twelve percent (12%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 009, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Xu Yue<br>Rm 1801, Building C, Shengshijiayuan, No.98 Jianguo Rd.,<br>Chaoyang District, Beijing, China<br>13801115632@139.com<br>(86) 13801115632 |

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Xu Yue
6810F269F1164F9...
Xu Yue

"**BORROWER"**

WALL 009, LLC

By: DocuSigned by: Tim Barton
55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu
86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF MAI YE IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Mai Ye
361FA6EE16C842A...
MAI YE

218180366v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated 20th May, 2017, and is between Ye Mai (Passport No G48953534), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend US$100,000 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $ 100,000 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to eleven percent (11%) per annum commencing on July 1st, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1st, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1st, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent ( 14 %) per annum from the dates payments were due.

(c) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower ("Note") in the original amount of Two Million Three Hundred Twenty Thousand and No/100 Dollars ($2,320,000.00), which shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible under the Note, then to interest and then to principal. Prepayments shall be applied to payments next due under the Note.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly

authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall 009, LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness

owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 009, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
No. 391 Wen Er Road, Xi Hu District
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Ye Mai
Tower 31B, Taizi Yuan, Hupan Garden, Wenyi Rd,
Hangzhou, China
Yemai00247 @hotmail.com
(86)13606803617

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Ye Mai
361FA6EE16C842A...

Ye Mai

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...

Michael Fu
Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF CHENCHEN JIANG**
**IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Chenchen Jiang
1BBB9B6B8A23423...
CHENCHEN JIANG

218180367v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 27___, 2017, and is between __Jiang Chenchen__ (Passport No_G47916008_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to ten percent (10%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:
Jiang Chenchen
3395 Michelson Dr. Apt. 4460, Irvine, CA 92612
chenchej@uci.edu
(949) 447-7492

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Chenchen Jiang
46B24A454B1C44B...
Jiang Chenchen

"**BORROWER"**

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F... ________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423... ________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF QIUYING LI IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/24/2020

DocuSigned by:
Qiuying Li
53A143F779524F2...
QIUYING LI

218180371v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 15__, 2017, and is between __Li Qiuying___ (Passport No_G39643292_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to ten percent (10%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Li Qiuying
Room 703, No.101 Xidajie, Xuanwumen, Xicheng District, Beijing, China
qiuying_li@126.com
(86) 13910515520

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Li Qiuying
53A143F779524F2...
Li Qiuying

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 88EE288F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF RUINIAN WU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
Wu Ruinian
D1F82564363A468...
RUINIAN WU

218180372v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___May 31___, 2017, and is between __Wu Ruinian ___ (Passport No_E77502901_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to ten percent (10%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 009, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Wu Ruinian
5-2-401, Xisihuan, Meiliyuan
Beijing, China
wurn68@sina.cn
(86)13501015887

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Wu Ruinian
D1F82564363A468... ____________________
Wu Ruinian

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F... ____________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423... ____________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL009, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF LIN ZHOU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Lin Zhou
2A4A08E3E3B9470...
LIN ZHOU

218180373v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___June 23___, 2017, and is between __Zhou Lin ___ (Passport No_E13211404_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 009, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 50,000.00 of the total loan amount of $2,320,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $50,000.00 – Fifty Thousand and No/100 Dollars

Interest: Interest amount equal to fifteen percent (15%) per annum commencing on July 1, 2017, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after July 1, 2018. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of July 1, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property"). The Property has a purchase price of $2,900,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 009, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Zhou Lin<br>Room 1-406, No.1058, Lianhua Road, Shanghai， China<br>lynn@yding.cn<br>(86) 18019765208 |

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Lynn Zhou
2A4A08F3E3B9470...
Zhou Lin

"**BORROWER**"

WALL 009, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 009, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

# EXHIBIT 2

# MEMBERSHIP INTEREST PLEDGE AGREEMENT

This is a **MEMBERSHIP INTEREST PLEDGE AGREEMENT** (this "**Agreement**") by and between Carnegie Development, LLC ("**Pledgor**"), The Estate of Leland A. Hodges Jr. ("**Lender**"), **Wall009, LLC**, (the "**Company**"), and 2999TC LP, LLC, Delaware limited liability company, (the "**Borrower**") effective as of October _____, 2019. Collectively, Pledgor, Lender, and Company are referred to herein as the "Parties."

## Recitals

Lender has loaned One Million and 00/100 Dollars ($1,000,000.00) ("**Loan Amount**") to Company pursuant to a Promissory Note ("**Note**") executed by the Borrower.

Pledgor owns 99.75% of the beneficial interests in 63.75 acres of undeveloped land in Johnson County, Texas further described in Exhibit "A" (the "**Property**") through the Project Owner.

This Agreement evidences terms on which Pledgor grants to Lender a security interest in and to the Pledged Membership Interests as security for the Note on behalf of the Borrower for which Borrower has received a benefit.

The Note, guaranty, along with any other related documents are collectively referred to as the "Transaction Documents."

## Agreement

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Recitals**. The Recitals are hereby incorporated into the terms of this Agreement.
2. **Grant of Security Interest**. To secure prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) and performance of Borrower's obligations under the Note and other Transaction Documents, Pledgor pledges and grants to Lender a security interest in all of Pledgor's right, title and interest in and to the Pledged Membership Interests, whether now owned by Pledgor or hereafter acquired and whether now existing or hereafter coming into existence ("**Pledged Collateral**"). "**Pledged Membership Interests**" means such membership interests owned by Pledgor in the Company and all proceeds thereof.
3. **Representations and Warranties**. The Pledgor and the Company jointly and severally represent and warrant the following, both on execution of this Agreement and continuously during its term:
    a. **Ownership of Pledged Collateral**. Pledgor owns 100% of the membership interests in the Company and is the sole legal and equitable owner of and has good and marketable title to the Pledged Collateral.

b. **Creation, Perfection, and Priority**. The parties' execution of this Agreement and Pledgor's delivery to Lender of any existing certificates evidencing the Pledged Membership Interests create in favor of Lender a perfected security interest in the Pledged Membership Interests. Except for this security interest, no person or entity has (or, in the case of after-acquired Pledged Collateral, at the time the Pledgor acquires rights therein, will have) any security interest in the Pledged Collateral.

c. **Organization and Good Standing**. The Company is duly organized, validly existing and in good standing under the laws of the state of Texas and has all requisite corporate power and authority to consent to this Agreement.

d. **Authorization**. All action necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations hereunder and consummation of the transactions contemplated hereby has been taken or will be taken prior to the Closing. This Agreement constitutes valid and legally binding obligation of the Pledgor as consented to by the Company.

e. **No Conflict**. The execution and delivery by the Company and the Pledgor of this Agreement will not (i) violate or conflict with its respective governing documents, (ii) violate, conflict with, or give rise to any right of termination, cancellation, rescission or acceleration under any agreement, lease, security, license, permit, or instrument to which it is a party, or to which it or any of its assets is subject, (iii) result in the imposition of any encumbrance on any its assets (except for the security interest granted pursuant to this Agreement), (iv) violate or conflict with any laws, or (v) require any consent, approval or other action of, notice to, or filing with any person, except for those that have been obtained upon execution of this Agreement.

4. **Covenants and Agreements of Pledgor**.

a. **Preserve Pledged Collateral**. Pledgor shall do all acts necessary to maintain, preserve, and protect the Pledged Collateral.

b. **Use of Pledged Collateral**. Pledgor shall not use and shall not permit any Pledged Collateral to be used unlawfully or in violation of any provision of this Agreement, the Transaction Documents, any other agreement with Lender related to the Pledged Collateral, or any applicable statute, regulation, or ordinance or any policy of insurance covering the Pledged Collateral.

c. **Pay Taxes**. Pledgor shall pay promptly when due all taxes, assessments, charges, encumbrances and liens imposed upon or affecting any Pledged Collateral. The Company shall pay promptly when due all taxes, assessments, charges, encumbrances and liens imposed upon or affecting its assets.

d. **Defend Litigation**. Pledgor shall appear in and defend any action or proceeding that might affect the Pledgor's title to or Lender's interest in the Pledged Collateral.

e. **Possession of Pledged Collateral**. Pledgor shall not surrender or lose possession of (other than to Lender), sell, encumber, lease, rent, or otherwise dispose of or transfer any Pledged Collateral, and shall keep the Pledged Collateral free of all levies and security interests or other liens or charges (including, but not limited to junior liens), except those that Lender approves in writing.

f. **Comply with Law**. Pledgor shall comply with all laws, regulations, and ordinances relating to possession, maintenance, and control of the Pledged Collateral.

g. **Maintain Records; Notify of Changes**. Pledgor shall keep separate, accurate, and complete records of the Pledged Collateral at its principal place of business and provide to Lender the records, reports, and information relating to the Pledged Collateral that Lenders request from time to time. Pledgor shall give Lender thirty (30) days' prior written notice of any change in the Pledgor's principal place of business or legal name or trade name(s).

h. **Amend Governing Documents**. Pledgor shall not vote the Pledged Membership Interests to amend the Governing Documents or to dissolve the Company, except with Lender's prior consent.

5. **Term of Pledge; Release; Appointment as Agent for Pledged Collateral**.

   a. Except as otherwise provided in this Agreement, equitable title to the Pledged Membership Interests remains vested in Pledgor. Lender holds the Pledged Membership Interests only as security for the repayment of the indebtedness under the Note. Lender shall not encumber or dispose of the Pledged Membership Interests, except in accordance with the provisions of this Agreement. The Pledged Collateral shall remain pledged to Lender until all sums due under the Note and the other Transaction Documents have been paid in full and all obligations of Borrower thereunder and hereunder have been performed or until Lender exercises any right of first refusal or option granted to Lender to acquire or convert the Loan into certain ownership interests in any direct or indirect ownership interests in the Project Owner.

   b. Any release of the Pledged Collateral from this Agreement will not release Pledgors from continuing obligations under the Note or the other Transaction Documents. Upon the payment and performance in full of all of the obligations under the Note, the other Transaction Documents and this Agreement by Pledgor, Lender shall release the Pledged Membership Interests.

6. **Event of Default**. An "Event of Default" under this Agreement means an event of default under any of the Transaction Documents following a thirty (30) day cure period.

7. **Remedies Upon Default**. Upon the occurrence of an Event of Default, Lender shall have, and may exercise any one or more of, the following rights so long as such default is continuing and Lender has agreed to be bound by the applicable organizational documents of the Company:

   a. Lender may vote the Pledged Membership Interests on all Company matters and sign written consents in lieu of meeting as owner of the Pledged Membership Interests;

   b. Lender may take absolute title to the Pledged Membership Interests by completing the assignment with respect to the Pledged Membership Interests, and after this transfer Lender will solely own the Pledged Membership Interests;

   c. Lender may, at its option, exercise any and all rights, privileges, options or powers pertaining or relating to the Pledged Membership Interests.

8. **Application of Proceeds**. Lender shall apply the proceeds received from any distributions related to the Pledged Membership Interests to the payment of all amounts due and payable under the Note and all other liabilities of Borrower to Lender (collectively, "**Total Debt**"). Upon full payment of the Total Debt to Lender, all of Lender's right and title to the Pledged Membership Interests shall terminate and shall automatically transfer back to the Pledgor.

9. **Miscellaneous**.

   a. **Notices**. All demands, notices and other communications to Lender or Pledgor provided for under this Agreement shall be provided as set forth in the Transaction Documents. All demands, notices and other communications to the Company shall be sent to the same address as the Pledgor, as set forth in the Transaction Documents.

   b. **Governing Law**. The validity, construction, interpretation, and enforceability of this Agreement shall be governed by the laws of the State of Texas without giving effect to the choice of laws rules thereof.

   c. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which when so executed will be deemed to be an original and all of which when taken together will constitute one and the same agreement.

   d. **Successors and Assigns.** This Agreement nor any of the rights or obligations herein may be assignable by either party without the written consent of the other parties and any attempted assignment without such prior written consent shall be invalid and unenforceable. This Agreement is binding upon, and inures to the benefit of the authorized assignees and successors of the parties to it.

   e. **Headings, Captions and Pronouns**. The Section headings, captions or abbreviations are included solely for convenient reference and shall not control the meanings or interpretation of any of the provisions of this Agreement. As used herein, words in the singular include the plural and the words in the masculine include the feminine and neuter gender, and vice versa whenever the context so requires.

   f. **Waiver**. No waiver of any breach or default under this Agreement shall be deemed to be a waiver of any subsequent breach or default. Pledgor waives any right to require Lender to proceed against any person or entity to exhaust any Pledged Collateral or to pursue any remedy in Lender's power.

   g. **Entire Agreement; Severability**. This Agreement contains the entire pledge agreement between the Pledgor and Lender. This Agreement shall not be severable in any way, but if any provision shall be held to be invalid, the invalidity shall not affect the validity of the remainder of this Agreement and the remainder of this Agreement shall continue in full force and effect.

   h. **Amendment**. This Agreement may not be amended or modified except in writing signed by each of the parties.

   i. **Cumulative Rights**. Except as otherwise agreed, the rights, powers, and remedies of Lender under this Agreement shall be in addition to all rights, powers, and remedies given to Lender by virtue of any statute or rule of law, the Note or any

Transaction Document, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's security interest in the Pledged Collateral.

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned executes the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interest Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**PLEDGOR**

Carnegie Development, LLC

______________________________
Tim Barton, President

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned executes the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interests Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**LENDER**

The Estate of Leland A. Hodges Jr

______________________________
______________________________
______________________________

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned consents the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interests Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**COMPANY**

Wall009, LLC

By: ______________________
Name: Tim Barton
Its: President

# Exhibit "A"


B.B.B. & C.R.R. SURVEY
ABSTRACT No. 92
PROJECT LOCATION
LEGEND
ABSALOM WILLIAMS SURVEY
ABSTRACT No. 857
JOHN HAIGLER SURVEY
ABSTRACT No. 857
SOFT SHELL DRIVE
PEGASUS CRT.
PISCES DRIVE
PHASE III
PHASE I
DRAINAGE DITCH
ORACLE DRIVE
ORION DRIVE
DRACO DRIVE
POLARIS DRIVE
CONSTELLATION DRIVE
SCORPIUS DRIVE
CYGNUS DRIVE
FUTURE
DEVELOPMENT
TEMPORARY
DETENTION
POND FOR
NORTHSTAR
B.B.B. & C.R.R. SURVEY
ABSTRACT No. 93
SANDS SURVEYING CORPORATION
PRELIMINARY PLAT
NORTHSTAR
280 RESIDENTIAL LOTS

141-316567-20

FILED
TARRANT COUNTY
6/5/2020 4:56 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT AND RESPONSE TO DEFENDANTS' MOTIONS TO QUASH**

***To the Honorable John P. Chupp, Judge:***

COME NOW, L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. (the "**Estate**"), Tejas Group, Ltd. ("**Tejas Group**"), LAH III Family Specific Interest, Ltd. ("**LAH**"), and Blackfoot Interest, Ltd. ("**Blackfoot**") (all collectively, "**Plaintiffs**"), Plaintiffs in the above-entitled and numbered cause, and file this their Motion for Final Default Judgment and Response to the Motions to Quash Service ("**Motions**") filed by Defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**") on June 1, 2020,[1] and respectfully show the Court as follows:

[1] While 2999TC filed one motion to quash and Barton and JMJ jointly filed a separate motion pro se, Plaintiffs note that the two motions are remarkably similar and were filed immediately after one another.

## I. INTRODUCTION

In September 2019, Plaintiffs made a $4,000,000.00 loan to 2999TC. Barton and JMJ guaranteed the loan. When Defendants defaulted under the loan by failing to pay as agreed, Plaintiffs accelerated the loan in April of 2020. As a result of Defendants failing to pay the amounts due and owing, Plaintiffs filed the instant lawsuit.

2999TC was properly served with process on April 26, 2020, and its answer was due on May 18, 2020. Barton and JMJ were properly served with process on April 30, 2020, and May 1, 2020, respectively, and their answers were due on May 25, 2020. To date, however, Defendants have not answered this suit or otherwise disputed the allegations set forth in Plaintiffs' pleadings. Accordingly, a default judgment in Plaintiffs' favor is warranted.

## II. FACTUAL BACKGROUND

On or around September 16, 2019, 2999TC borrowed from Plaintiffs, and Plaintiffs loaned to 2999TC, the total amount of $4,000,000.00 (the "**Loan**"). [*See* Petition, at ¶ 14].[2] The Loan is evidenced by the promissory notes executed by defendant Barton on behalf of 2999TC (the "**Notes**"). [*See* Petition, at ¶ 14; Exs. A-1 through A-2]. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually calculated on a 360-day-year basis, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversaries of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020. [*See* Petition, at ¶ 15; Exs. A-1 through A-2].

[2] Plaintiffs respectfully asks the Court to take judicial notice of all previous filings and orders in this cause.

Defendants Barton, individually, and JMJ guaranteed the Loan and 2999TC's performance under the Notes (the "**Guaranties**"). [*See* Petition, at ¶ 16; Exs. A-3 through A-6]. After curing a payment default in connection with the first interest-only payment, when the second quarterly $180,000.00 interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. [*See* Petition, at ¶¶ 18-19]. When Plaintiffs' demand for payment was ignored, Plaintiffs accelerated the Loan and demanded payment in full from Defendants of all amounts due and owing. [*See* Petition, at ¶¶ 19, 21]. To date, however, Defendants have failed to pay as agreed, the Notes remain unpaid, and the principal is currently due and owing in full. [*See* Petition, at ¶ 21]. Interest and attorney's fees are accruing daily. [*See* Petition, at ¶ 21]. Accordingly, Plaintiffs filed the instant lawsuit to recover the amounts due and owing under the Notes and the Guaranties. Because Defendants were properly served, the returns of service have been on file with the Court for at least ten days, and Defendants have chosen not to answer the suit, a final default judgment in Plaintiffs' favor is appropriate.

## III.
## ARGUMENT & AUTHORITIES

### A. A default judgment on liability is proper against defendant 2999TC because 2999TC was properly served with process, the return of service has been on file with the Court for at least ten (10) days, and 2999TC has not answered this suit.

Plaintiffs filed their Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction on April 22, 2020 ("**Original Petition**"). Defendant 2999TC, a limited liability company existing under the laws of the State of Delaware, was served with process on April 26, 2020, by and through its registered agent in Delaware in accordance with Texas Rules of Civil Procedure 103-108 and Texas Business Organizations Code Sections 5.200, *et seq.* [*See* **Exhibit B**, a true and correct copy of the file-stamped return of service; *see also* **Exhibit C**, a true and correct

Certified copy of Defendant's Certificate of Formation (demonstrating that InCorp Services, Inc. ("**InCorp**"), 919 North Market Street, Suite 950, Wilmington, Delaware 19801 is 2999TC's registered agent in Delaware); **Exhibit I-5**, a true and correct copy of a screen shot of the information on file with the Delaware Secretary of State as of June 2, 2020]; *see also* 6 Del. C. § 18-104 -105 (providing that a limited liability company has obligation to provide registered agent with information necessary to effectuate service of process).[3] The return of service has been on file with the Clerk of the Court since May 4, 2020, which is at least ten (10) days from the date judgment will be entered, excluding the day of filing and today. [*See* **Exhibit B**]; *see also* Tex. R. Civ. P. 107. 2999TC's last known address is c/o Elizabeth Brandon, REED SMITH LLP, 2501 N. Harwood St, Ste. 1700, Dallas, TX 75201. [*See* **Exhibit D**, Certificate of Last Known Address].

2999TC has moved to quash service solely based on the notion that its registered agent in Delaware, InCorp, "does not have any records indicating that it is the registered agent for [2999TC]."[4] This novel position is wholly without legal support and directly defeated by both Delaware and Texas law, as it is undisputed that InCorp is the registered agent on file for 2999TC, and that InCorp was properly served with process in this matter. *See* Tex. R. Civ. P. 103-108; 6 Del. C. § 18-104 -105; Tex. Bus. Orgs. Code §§ 5.200, *et seq.*; [*See* **Exhibits B** and **C**]. Accordingly, because 2999TC does not dispute that it made InCorp its registered agent[5] and

---

[3] As displayed by **Exhibit** I-1, 2999TC has failed to comply with its obligation to maintain a registered agent in Texas. *See* Petition, at ¶ 7.

[4] *See* 2999TC's Motion to Quash, at p. 2. 2999TC's also appears to suggest—without any support—that its registered agent did not receive copies of all relevant documents. Notably absent from InCorp's letter to the Court is any statement that InCorp allegedly received ***only*** the document attached to the letter.

[5] Plaintiffs note that also InCorp's letters attached to 2999TC's motion (which Plaintiffs were shown for the first time by virtue of the filing of 2999TC's motion) fail to deny that InCorp is in fact 2999TC's registered agent—they, at best, state that InCorp's records are not accurate ***and confirm that InCorp was in fact served***. Plaintiffs, however, object to these vague, unsworn hearsay statements and respectfully asks the Court to disregard the same.

because the state of InCorp's internal records are not the correct standard, 2999TC's motion to quash is without merit and should be denied.[6]

The deadline for 2999TC to file an answer was 10:00 a.m. on May 18, 2020. *See* Tex. R. Civ. P. 99. To date, however, 2999TC has not filed an answer or any other responsive pleading with the Court disputing Plaintiffs' allegations. 2999TC is therefore in default and has admitted all allegations of fact in Plaintiffs' Original Petition. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.). Accordingly, a default judgment on liability against 2999TC is proper.

**B. A default judgment on liability is proper against defendant JMJ because JMJ was properly served with process, the return of service has been on file with the Court for at least ten (10) days, and JMJ has not answered this suit.**

Plaintiffs filed their Original Petition on April 22, 2020. Defendant JMJ, a limited liability company existing under the laws of the State of Texas, was served with process on May 1, 2020, by way of substitute service by taping the process to the door of, and via certified mail and first class mail to, JMJ's offices at 1755 Wittington Pl., Ste. 340, Dallas, Texas 75234, and by email to tbarton@jmjdevelopment.com in accordance with Texas Rules of Civil Procedure 103-108 and the Court's April 30, 2020, order (the "**April Order**"). [*See* **Exhibit E**, true and correct copies of the file-stamped returns of service. The returns of service have been on file with the Clerk of the Court since May 4, 2020, which is at least ten (10) days from the date judgment will be entered, excluding the day of filing and today. [*See* **Exhibit E**]; *see also* Tex. R. Civ. P. 107. JMJ's last known address is 1755 Wittington Pl., Ste. 340, Dallas, Texas 75234. [*See* **Exhibit D**, Certificate of Last Known Address].

[6] Moreover, it is worth noting that counsel for 2999TC received copies of Plaintiffs' Petition and the TRO on the same day she informed Plaintiffs' counsel that she represented 2999TC, and that 2999TC has admitted more than once that its answer deadline has now passed. [*See* **Exhibits I-2** and **I-3**].

On June 1, 2020, JMJ filed a motion to quash service based on the notion that Plaintiffs' should have known that JMJ's offices were closed due to COVID-19.[7] JMJ's motion ignores the fact that the address it reports for its purported registered agent leads to a UPS store and that there is no registered agent to be served at that location. [*See* **Exhibit F**, a true and correct Certified copy of JMJ's Statement of Change of Registered Office/Agent (representing that JMJ's registered agent, ONE Agent Texas, LLC, is located at 13901 Midway Rd., Ste. 102, Dallas, Texas 75244); *see also* Plaintiffs' Motion for Substitute Service, ¶ 3[8] & Ex. A, p. 3]. Further, JMJ's motion disputes neither that the Court had authority to grant substitute service by the means set forth in its April Order, that the method of service was reasonably effective to give notice of the suit, that Plaintiffs' properly executed such substitute service in compliance with the Court's April Order, or that JMJ indeed received service. *See* Tex. R. Civ. P. 106. Accordingly, JMJ's motion to quash should be denied.

The deadline for JMJ to file an answer was 10:00 a.m. on May 25, 2020. *See* Tex. R. Civ. P. 99. To date, however, JMJ has not filed an answer or any other responsive pleading with the Court disputing Plaintiffs' allegations. JMJ is therefore in default and has admitted all allegations of fact in Plaintiffs' Original Petition. *See Morgan*, 675 S.W.2d at 731; *Argyle Mech., Inc.*, 156 S.W.3d at 687. Accordingly, a default judgment on liability against JMJ is proper.

[7] *See* Barton and JMJ's Motion to Quash.

[8] Plaintiffs' Motion for Substitute Service is incorpated herein by referenced.

**C. A default judgment on liability is proper against defendant Barton because Barton was properly served with process, the return of service have been on file with the Court for at least ten (10) days, and Barton has not answered this suit.**

Plaintiffs filed their Original Petition on April 22, 2020. Defendant Barton was served with process on April 30, 2020, by way of substitute service executed by delivering the process to a person at least 16 years of age at Barton's residence at 3525 Arrowhead Drive, Dallas, Texas 75204 in accordance with Texas Rules of Civil Procedure 103-108 and the Court's April Order.[9] [*See* **Exhibit G**, a true and correct copy of the file-stamped return of service]. The return of service has been on file with the Clerk of the Court since May 1, 2020, which is at least ten (10) days from the date judgment will be entered, excluding the day of filing and today. [*See* **Exhibit G**]; *see also* Tex. R. Civ. P. 107. Barton's last known address is 3525 Arrowhead Drive, Dallas, Texas 75204. [*See* **Exhibit D**, Certificate of Last Known Address]. Further, at no time since this suit was filed has Barton been a member of the United States armed services for purposes of the Servicemembers Civil Relief Act. *See* 50 App. U.S.C.A.§ 501; [**Ex. H** ( Service Members' Aff.)].

On June 1, 2020, Barton filed a motion to quash service, appearing to argue that service was not proper because (1) Barton was out of state, (2) Plaintiffs attempted to serve Barton at addresses that were closed due to COVID-19 and/or incorrect residential addresses, and (3) Plaintiffs improperly attempted to serve Barton by email.[10] In other words, Barton's motion seeks to quash service solely based upon some of the grounds *upon which the Court granted substitute service*.[11] Significantly, Barton does not deny receiving the substitute service or residing at 3525 Arrowhead Drive, Dallas, Texas 75204. Barton's motion also conveniently

[9] Plaintiffs' respectfully asks the Court to take judicial notice of all prior filings and orders in the above-styled lawsuit.

[10] *See* Barton and JMJ's Motion to Quash.

[11] *See* Plaintiffs' Motion for Substitute Service.

leaves out the fact that Plaintiffs repeatedly tried to coordinate service with Barton (on his own behalf and on behalf of JMJ), but Barton stubbornly refused to acknowledge Plaintiffs' communications.[12] In light of Plaintiffs' diligent (but ignored) attempts to establish contact with Barton and JMJ, his after-the-fact attempt to now create the misleading appearance that Plaintiffs "pulled a fast one" on him and JMJ is disingenuous at best, especially since the motion disputes neither that the Court had authority to grant substitute service by the means set forth in its April Order, that the method of service was reasonably effective to give Barton notice of the suit, nor that Plaintiffs' properly executed such substitute service in compliance with the Court's April Order.[13] *See* Tex. R. Civ. P. 106. Accordingly, Barton's motion to quash should be denied.

The deadline for Barton to file an answer was 10:00 a.m. on May 25, 2020. *See* Tex. R. Civ. P. 99. To date, however, Barton has not filed an answer or any other responsive pleading with the Court disputing Plaintiffs' allegations. Barton is therefore in default and has admitted all allegations of fact in Plaintiffs' Original Petition. *See Morgan*, 675 S.W.2d at 731; *Argyle Mech., Inc.*, 156 S.W.3d 687. Accordingly, a default judgment on liability against Barton is proper.

**D. Plaintiffs are entitled to a final judgment for their actual damages, interest, costs, and attorney's fees.**

A plaintiff who prevails on its breach-of-note or breach-of-guaranty claim is entitled to recover its benefit-of-the-bargain damages, pre-judgment and post-judgment interest, costs, and attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (authorizing recovery of attorney's fees); Tex. Fin. Code §§ 302.002 (providing pre-judgment interest at the rate agreed to by the

[12] *See, e.g., id.* at ¶¶ 2-8.

[13] That Barton and JMJ have had plenty of notice of this suit is only underlined by the fact that Barton has been communicating with Plaintiffs' counsel regarding the same on both his own and JMJ's behalf since May 11, 2020—coincidentally from the same email address to which Plaintiff reached out to Barton to coordinate service but received no response. *See* **Ex. I-4**; *see also* Plaintiffs' Motion for Substitute Service, at ¶¶ 4-9 & Ex. B at ¶¶ 2-5.

parties), 304.002 (providing post-judgment interest as specified in contract); Tex. R. Civ. P. 131 (authorizing recovery of court costs for prevailing party); *Ventling v. Johnson*, 466 S.W.3d 143, 149 (Tex. 2015) (providing that pre-judgment interest accrues from the date the suit is filed until the date before judgment, and that post-judgment interest accrues from the date of the judgment until the judgment is paid in full); *Microlaser Therapy Corp.*, No. 05-17-00761-CV, 2018 WL 6845242, at *6 (Tex. App.—Dallas Nov. 16, 2018, pet. denied) (mem. op.) (holding that plaintiff establishing breach of guaranty claim is entitled to recover attorney's fees); *Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d 508, 513-14 (Tex. App.—El Paso 2014, no pet.) (holding that plaintiff suing on breach of note is entitled to recover attorney's fees); *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888-89 (Tex. App.—Dallas 2004, pet. denied) (holding that benefit-of-the bargain damages are proper for breach of contract); *Pineda v. PMI Mortg. Ins. Co.*, 843 S.W.2d 660, 670–71 (Tex. App.—Corpus Christi 1992, pet. denied) (holding that parties' agreement controls).

Here, Defendants agreed to pay back the Loan of $4,000,000.00 to Plaintiffs along with 18 percent (18%) interest-only quarterly payments, calculated on a 360-day-year basis. Accordingly, the benefit-of-the bargain damages Plaintiffs sustained as a result of Defendants' breach of the Notes and Guaranties are $4,000,000.00, plus any unpaid interest that accrued prior to the filing of this lawsuit. [*See* **Exhibit A** ¶¶ 2-12; *see also* **Exs. A-1** through **A-6**].

In addition, Defendants owe interest on Plaintiffs' actual damages pursuant to their contractual obligations to Plaintiffs, as follows:

| Loan Date | Amount | Daily Interest Charge[14] | Interest owed for the second quarter (December 17, 2019-March 16, 2020[15] | Amount of interest accruing for the period beginning on March 17, 2020, and ending on April 21, 2020[16] | Total Interest Owed as of April 21, 2020[17] |
|---|---|---|---|---|---|
| September 16, 2019 | $4,000,000 | $2,000 | $180,000.00 | $70,000.00 | $250,000 |

Because the amount of damages sought by Plaintiffs may be accurately calculated by the Court from the factual allegations in Plaintiffs' Petition and from the Notes and Guaranties, Plaintiffs' damages are liquidated, and no hearing on actual damages is required. *See* Tex. R. Civ. P. 241 (providing that if a claim is liquidated and proved by an instrument in writing, the damages shall be assessed by the court); *Abcon Paving, Inc. v. Crissup*, 820 S.W.2d 951, 953 (Tex. App.—Fort Worth 1991, no writ) ("A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual as opposed to the conclusory allegations in the plaintiff's petition and the instrument in writing."); *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 845-46 (Tex. App.—Dallas 2014, no pet.); [*see also* Petition, at ¶¶ 14-21; **Exs. A** and **A-1** through **A-6**].

Furthermore, the total reasonable and necessary attorney's fees and costs owed by Defendants pursuant to Texas Civil Practice & Remedies Code Section 38.001, Texas Rule of

[14] Calculated as follows: (Amount Owed ($4,000,000 x 0.18) / 360 = $2,000). [*See* **Exhibit A** ¶¶ 8-10].

[15] Calculated as follows: (Amount Owed ($4,000,000 x 0.18) / 360 = $2,000) x 90 = $180,000.00. [*See* **Exhibit A** ¶¶ 8-10].

[16] Calculated beginning on the first day after the second quarterly payment was due (which was March 16, 2020) and purposefully (1) ignore March 31, as including March 31 would make the quarter exceed 90 days, and (2) does not address the interest accrued for the period beginning with the funding of the Loan through the date the first quarterly payment was due, as Plaintiffs ultimately received payment for that period. [*See* **Exhibit A** ¶¶ 8-10].

[17] Calculated as follows: (Daily Interest Charge ($2,000) x Number of Days Outstanding as of April 21, 2020 (December 17, 2019 – April 21, 2020 = 127 days)).

Civil Procedure 131, the Notes, and the Guaranties is $58,167.50. [*See* **Exhibit I** (Affidavit of Joakim G. Soederbaum) ¶¶ 2-5; **Exs. A-1** through **A-6**].

Accordingly, a final judgment should be rendered is $4,250,000.00 in actual damages, $58,167.50 in attorney's fees, costs, plus prejudgment interest on the outstanding principal balance of the Loan at the annual rate of 18% calculated on a 360-day-year basis starting on April 22, 2020, and until the date before the judgment is entered, and post-judgment interest at the annual rate of 18% calculated on a 360-day-year basis beginning on the day of the judgment until the judgment is paid in full.

## IV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court deny Defendants' Motion to Quash in their entirety, grant Plaintiffs' Motion for Final Default Judgment, and enter a final judgment in Plaintiffs' favor and against Defendants 2999TC, Barton, and JMJ, jointly and severally, awarding Plaintiffs the following relief:

(a) Actual damages of $4,250,000.00;

(b) Prejudgment interest at the annual rate of 18% calculated on a 360-day-year basis on the outstanding principal balance of the Loan ;

(c) Post-judgment interest at the annual rate of 18% calculated on a 360-day-year basis, beginning on the date of the judgment until paid in full;

(d) Reasonable and necessary attorney's fees of $58,167.50, plus additional attorney's fees in the event of an appeal by either Defendant;

(e) Costs of Court; and

(f) Such other and further relief to which Plaintiffs are justly entitled, whether at law or in equity.

Respectfully submitted,

***_/s/ Joakim G. Soederbaum______***

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2020, a true and correct copy of the foregoing document was served electronically upon all pro se Parties and counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT 2999TC LP, LLC**

Tim Barton, Individually
tbarton@jmjdevelopment.com
**PRO SE**

JMJ Development, LLC
By: Tim Barton
Its: Chief Executive Officer
tbarton@jmjdevelopment.com
**PRO SE**

Vance McMurry
508 W. Lookout #14-74
Richardson, Texas 75080
vance@mcmurrylegal.com
**AS FILING ATTORNEY[18] FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum

[18] Plaintiffs note that Defendants Barton and JMJ did not provide any contact information on their motion to quash (although they appear to have served themselves via the email address indicated above). Accordingly, out of an abundance of caution, Plaintiffs are also serving a copy of this filing on the attorney assisting these pro se Defendants with their filing.

# EXHIBIT A

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT OF L. ALLEN HODGES III**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned authority, personally appeared L. Allen Hodges III who, being by me duly sworn, deposed as follows:

1. "My name is L. Allen Hodges III. I am over twenty-one (21) years of age, of sound mind, and have never been convicted of a felony. I am fully competent to testify to, and have personal knowledge of, the facts stated within this affidavit, and every statement of fact contained herein is true and correct.

2. "I am one of two duly qualified and acting independent executors for the Estate of Leland A. Hodges Jr. (the '**Estate**'), appointed under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1. I am also the managing member of North Texas Investments,

LLC ('**NTI**'), which is the general partner of Tejas Group, Ltd. ('**Tejas Group'**), a Texas limited partnership; LAH III Family Specific Interest, Ltd. ('**LAH'**), a Texas limited partnership; and Blackfoot Interest, Ltd. ('**Blackfoot'**), a Texas limited partnership (the Estate, Tejas Group, LAH, and Blackfoot collectively, the '**Plaintiffs**').

3. "I obtained personal knowledge of the facts stated herein by and through, among other things, my duties as an independent executor for the Estate and as the managing member of NTI, including but not limited to managing the Plaintiffs' financial affairs and investments on a continuing basis; my personal involvement with the loan Plaintiffs made to 2999TC LP, LLC ('**2999TC**'), and my review and understanding of documents that were executed in connection with that loan. I have reviewed Plaintiffs' Motion for Default Judgment and the exhibits attached thereto (the '**Motion**').

4. "On or about September 16, 2019, Plaintiffs loaned and delivered to 2999TC LP, LLC ('**2999TC**') the total sum of $4,000,000.00 (the '**Loan'**). The funds were advanced on September 17, 2019. The Loan is reflected by two promissory notes made, executed, and delivered by Tim Barton ('**Barton**') on behalf of 2999TC: one to the Estate for $1,000,000.00 and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (both notes collectively, the '**Notes**'). True and correct copies of the Notes along with their corresponding subsequent amendments are attached as **Exhibit A-1** and **Exhibit A-2**, respectively, to the Motion and incorporated herein fully by reference. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020.

5. "Barton, individually, and JMJ Development, LLC ('**JMJ**') agreed to guarantee the Loan. In connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes (the '**Guaranties**'). True and correct copies of these Guaranties are attached as **Exhibits A-3** through **Exhibit A-6**, respectively, to the Motion and incorporated herein fully by reference.

6. "2999TC, failed to pay the first quarterly interest-only payment in the amount of $180,000.00 when due on December 16, 2019, and Plaintiffs did not receive that payment until on or about January 29, 2020.

7. "When the second quarterly interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. To date, despite Plaintiffs' demands for payment, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed; Plaintiffs have received no payment in connection with the Loan since the payment due in December 2019 was made in late January of 2020; the Notes remain unpaid; the Loan has been accelerated; and the $4,000,000.00 principal balance is currently due and owing in full along with all interest accrued after December 16, 2019.

8. "As set forth in the Notes, interest accrues on the outstanding principal balance of the Loan at the rate of 18% per year calculated on a 360-day-year basis. I have calculated the amounts due and owing under the Loan as of April 21, 2020. In doing so, I reviewed and relied upon the language of the Notes and any payments received by Plaintiffs in connection with the Loan. My interest calculations include both the first and last day of the indicated time period.

9. "Applying the 18% annual interest rate calculated on a 360-day-year basis, interest accrues at the rate of $2,000.00 per day: $4,000,000.00 x 0.18) / 360 = $2,000.00. Based on the currently outstanding principal balance and a 360-day year, each quarter consists of 90

days and each quarterly interest payment due amounts to $180,000.00: $2,000.00 x 90 = $180,000.00. As of April 21, 2020, the total amount owed under the Loan was $4,250,000.00, consisting of the original Loan balance of $4,000,000.00 and $250,000.00 in interest accrued for the period beginning on December 17, 2019, and ending on April 21, 2020. The $250,000.00 in interest accrued as of April 21, 2020, consists of the $180,000.00 second quarterly payment due on March 16, 2020, and $70,000.00 for the period March 17, 2020, through April 21, 2020. The $70,000.00 partial third quarterly payment was calculated by taking the number of days from March 17, 2020, through March 30, 2020 (14), add the number of days from April 1 through April 21, 2020 (21), which adds up to a total of 35, and multiplying that number of days (35) by the daily interest rate ($2,000.00): 35 days x $2,000.00 = $70,000.00. These calculations purposefully ignore the day of March 31, as including March 31 would make the quarter exceed 90 days (and thereby, the year would exceed 360 days). These calculations take into account and fully credit the fact that Plaintiffs ultimately received payment of the interest accrued for the first quarterly period beginning on September 17, 2019, and ending on December 16, 2019.

10. "Pursuant to the terms of the Notes, interest continues to accrue on the outstanding principal balance of the Loan after April 21, 2020, at the 18% annual interest rate calculated on a 360-day-yearly and 90-day-quarterly basis for as long as a principal balance remains outstanding and owing in connection with the Loan.

11. "Plaintiffs are the sole owners and holders of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

12. "Plaintiffs are presently in possession of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

13. "The records kept by Plaintiffs relating to the Notes were made and kept in the ordinary course of Plaintiffs' business; it is the regular practice of Plaintiffs to make and keep

such records; such records were made on or about the time of the recorded transactions; such records were made by a person with knowledge of the information recorded who was acting in the regular course of Plaintiffs' business; and I am presently the custodian of such records, which include Exhibits 'A-1' through 'A-6' to Plaintiffs' Motion. Such exhibits are true and correct copies of the instruments and documents that are in Plaintiffs' files and are incorporated herein by reference.

"FURTHER AFFIANT SAYETH NOT."

L. Allen Hodges III

SUBSCRIBED AND SWORN to before me, the undersigned notary, on the 5th day of June, 2020.

Tara Lee Edland
Notary in and for the State of Texas

TARA LEE EDLAND
NOTARY PUBLIC
STATE OF TEXAS
ID# 128204469
EXPIRES 3-11-2022

# EXHIBIT A-1

**PROMISSORY NOTE**

$1,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, ("**Maker**") promises to pay to **The Estate of Leland A. Hodges Jr.** ("**Lender**"), or order, the stated principal sum of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**"), unless sooner called by Lender as set forth below.

3. This note is related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**").

4. This Note shall not be prepayable. Beginning on December 15, 2019, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive,

collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **THE ESTATE OF LELAND A. HODGES JR.** ("Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $1,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS FIRST AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the First Amendment Effective Date.

**MAKER:**

**2999TC LP, LLC,**
a Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

**LENDER:**

**THE ESTATE OF LELAND A. HODGES JR.**

By: ______________________
Name: L. Allen Hodges III
Title: Executor

# EXHIBIT A-2

# PROMISSORY NOTE

$3,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, (“**Maker**”) promises to pay ratably to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively the “**Lender**”), or order, the stated principal sum of Three Million Dollars and 00/100 Dollars ($3,000,000.00) (“**Principal**”), advanced to Maker as of the date hereof plus interest (the “**Loan**”) in accordance with the terms of this promissory note (the “**Note**”). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the “**Interest Rate**”) from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the “**Maturity Date**”), unless sooner called by Lender as set forth below.

3. Notwithstanding the foregoing, the Lender shall have the option to convert the outstanding principal balance and any accrued but unpaid interest into a capital contribution for the purchase of membership interests in the Maker, (the “**Option**”) as further defined in the Membership Interest Option Purchase Agreement (“**Option Agreement**”) executed by and between Maker and Lender related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas (“**Property**”) and development of a luxury hotel and residences mixed use project on such property (“**Project**”). Upon the Lender exercising the Option, the Principal and all related interest, costs, fees, and any other amounts whether due or not yet due related to this Note shall be deemed paid in full and all current and remaining obligations of the Maker and any guarantor shall automatically terminate.

4. This Note shall not be prepayable. Beginning on February 16, 2020, Lender, at Lender’s option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following “**Events of Default**” occur, the balance of all principal and interest under this Note shall, at the Lender’s option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an “**Other Obligated Party**”) fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD.**, and **BLACKFOOT INTEREST, LTD.** (collectively "Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $3,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS FIRST AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the First Amendment Effective Date.

**MAKER:**

**2999TC LP, LLC,**
a Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

**LENDER:**

**TEJAS GROUP, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

**LAH III FAMILY SPECIFIC INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

**BLACKFOOT INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

# EXHIBIT A-3

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

# EXHIBIT A-4

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________

Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



_______________
Initials

# EXHIBIT A-5

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

______________________________
Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT A-6

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and The Estate of Leland A. Hodges Jr. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | --- | --- | --- | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | --- | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT B

Cause Number 141-316567-20

L. ALLEN HODGES III, ET AL VS 2999TC LP, LLC, ET AL

# OFFICER'S RETURN

Received this Citation By Certified Mail on the 23rd day of April, 2020 at 8:04 AM ; and executed at B/S MEMBER-TIM BARTON 1755 WITTINGTON PL STE 340 DALLAS TX 75234

within the county of ______ State of TX on the 28th day of April, 2020 by mailing to the within named 2999TC LP LLC a true copy of this Citation By Certified Mail together with the accompanying copy of: PLAINTIFF'S ORIGINAL PETITION

Authorized Person/Constable/Sheriff: Thomas A. Wilder
100 N CALHOUN
FORT WORTH TX 76196-0402

County of Tarrant, State of Texas

By Yolanda E. Garza Deputy
YOLANDA GARZA

Fees $ 75.00

(Must be verified if served outside the State of Texas)
State of ______ County of ______
Signed and sworn to by the said ______ before me this ______
to certify which witness my hand and seal of office

(Seal) E-MAILED

TARRANT COUNTY, TEXAS DISTRICT COURT OF TARRANT

Victoria Diaz
County of Tarrant, State of Texas

*14131656720000009*

ORIGINAL

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 141-316567-20*

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: 2999TC LP LLC

B/S REG AGENT-INCORP SERVICES INC 919 N MARKET ST STE 950 WILMINGTON, DE 198

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD.

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

FILED TARRANT COUNTY 2020 MAY -4 PM 4:00 THOMAS A. WILDER DISTRICT CLERK

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino Deputy
TAMARA COLACINO

DISTRICT COURT OF TARRANT COUNTY, TEXAS

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000009*

Received this Citation on the ______ day of ______________, ______ at ______ o'clock ___M; and executed at ______________ within the county of ______________, State of ________ at ______ o'clock ___M on the ______ day of ______________, ______ by mailing to the within named ______________

a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION having first endorsed on same the date of delivery.

Deputy/Constable/Sheriff: ______________

County of ______________ State of ______________ By ______________ Deputy

Fees $ ________

State of ______________ County of ______________ (Must be verified if served outside the State of Texas)

Signed and sworn to by the said ______________ before me this ____ day of ________, ____

to certify which witness my hand and seal of office

(Seal)

County of ______________, State of ______________

7019 0160 0001 0222 0779

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

CLIENT PRODUCTION

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$ 7.35
Sent To
Street and Apt. No.
City, State, ZIP+4®

Postmark Here: DALLAS TX APR 23 2020

2999TC LP LLC
B/S REG AGENT-INCORP SERVICES INC
919 N MARKET ST STE 950
WILMINGTON, DE 19801

141-316567-20 DP/TJC/CM

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7019 0160 0001 0222 0779

FILED
TARRANT COUNTY
2020 MAY -4 PM 4:00
THOMAS A. WILDER
DISTRICT CLERK

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

2999TC LP LLC
B/S REG AGENT-INCORP SERVICES INC
919 N MARKET ST STE 950
WILMINGTON, DE 19801

141-316567-20 DP/TJC/CM

9590 9402 4878 9032 3450 65

2. Article Number (Transfer from service label)

7019 0160 0001 0222 0779

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X C119
☒ Agent
☐ Addressee

B. Received by (Printed Name)
AA

C. Date of Delivery
4-28-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

*CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000009*

ORIGINAL

# EXHIBIT C

# Delaware

The First State



*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "2999TC LP, LLC" AS RECEIVED AND FILED IN THIS OFFICE.*

*THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:*

*CERTIFICATE OF FORMATION, FILED THE TENTH DAY OF SEPTEMBER, A.D. 2019, AT 2:45 O`CLOCK P.M.*

*AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "2999TC LP, LLC".*

Jeffrey W. Bullock, Secretary of State

7602115 8100H
SR# 20205435314

Authentication: 203030110
Date: 06-02-20

# STATE OF DELAWARE
# CERTIFICATE OF FORMATION
# OF LIMITED LIABILITY COMPANY

The undersigned authorized person, desiring to form a limited liability company pursuant to the Limited Liability Company Act of the State of Delaware, hereby certifies as follows:

1. The name of the limited liability company is 2999TC LP, LLC.

2. The Registered Office of the limited liability company in the State of Delaware is located at 919 North Market Street, Suite 950 (street), in the City of Wilmington, Zip Code 19801. The name of the Registered Agent at such address upon whom process against this limited liability company may be served is Incorp Services, Inc..

By: [signature]
Authorized Person

Name: Vance McMurry
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:45 PM 09/10/2019
FILED 02:45 PM 09/10/2019
SR 20196961406 - File Number 7602115

# EXHIBIT D

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**CERTIFICATE OF LAST KNOWN ADDRESSES**

TO THE CLERK OF THE COURT:

Plaintiff certifies to the Clerk of this Court that the last known addresses of Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton in the above-entitled and numbered cause against whom a default judgment is requested to be rendered, are as follows:

1. 2999TC LP, LLC
   c/o Elizabeth Brandon
   **REED SMITH LLP**
   2501 N. Harwood St, Ste. 1700
   Dallas, TX 75201

2. JMJ Development, LLC
   Attn: Tim Barton, CEO
   1755 Wittington Place, Suite 340
   Dallas, Texas 75234

3. Tim Barton
   3525 Arrowhead Drive.
   Dallas, Texas 75204

Respectfully submitted,

**_/s/ *Joakim G. Soederbaum*______**
Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

# EXHIBIT E

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 141-316567-20*

FILED
TARRANT COUNTY
5/1/2020 1:09 PM
THOMAS A. WILDER
DISTRICT CLERK

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: JMJ DEVELOPMENT LLC

B/S REG AGENT-ONE AGENT TEXAS LLC 13901 MIDWAY RD STE 102 DALLAS, TX 75244-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino
TAMARA COLACINO

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000005*

Received this Citation on the 23rd day of April, 2020 at 5:00 o'clock P M; and executed at 1755 Wittington Pl. Ste 340 Dallas, TX 75234 within the county of Dallas, State of Texas at 3:00 o'clock P M on the 30th day of April, 2020 by delivering to the within named (Def.): JMJ Development LLC defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION, having first endorsed on same the date of delivery. by taping to the door of the office pursuant to Rule 106(b), with order for Substitute Service attached.

Authorized Person/Constable/Sheriff: Christopher LaFountain PSC: 16473 (3-31-21)
County of Tarrant State of Texas By Christopher LaFountain Deputy

Fees $______

State of TX County of Tarrant (Must be verified if served outside the State of Texas)
Signed and sworn to by the said C. LaFountain before me this 1st day of May, 2020
to certify which witness my hand and seal of office

(Seal) CHRISTOPHER J. FIORE
ID #11826697
My Commission Expires
December 22, 2023

County of Tarr, State of TX

*CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

FILED
TARRANT COUNTY
5/4/2020 12:27 PM
THOMAS A. WILDER
DISTRICT CLERK

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

## CITATION

*Cause No. 141-316567-20*

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: JMJ DEVELOPMENT LLC

B/S REG AGENT-ONE AGENT TEXAS LLC 13901 MIDWAY RD STE 102 DALLAS, TX 75244-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino
TAMARA COLACINO

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000005*

Received this Citation on the 24th day of April, 2020 at 1 o'clock P M; and executed at 7117 Wittington Place (#340) Dallas TX 75234 within the county of Dallas, State of TX at 2:00 o'clock P M on the 1st day of May 2020 by delivering to the within named (Def.) JMJ Development LLC defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION, having first endorsed on same the date of delivery. *VIA CERTIFIED MAIL, FIRST CLASS MAIL AND EMAIL TO TBARTON@JMJDEVELOPMENT.COM PER RULE 106 ORDER (WITH ORDER ATTACHED) TO EACH TO BOARD CHAIRMAN AND CEO TIM BARTON

Authorized Person/Constable/Sheriff: C.O. Fiore PSC#488 (7-31-20)
County of Tarrant State of TX By ______ Deputy

Fees $______

State of TX County of Tarrant (Must be verified if served outside the State of Texas)
Signed and sworn to by the said C.O. Fiore before me this 4th day of May, 2020
to certify which witness my hand and seal of office
(Seal)
Tammy Berryman
County of Tarrant, State of TX

TAMMY JO BERRYMAN
Notary Public, State of Texas
Comm. Expires 05-23-2023
Notary ID 11905245

*CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

# EXHIBIT F

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Ruth R. Hughs
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

JMJ DEVELOPMENT, LLC
Filing Number: 801578251

Change of Registered Agent/Office — March 05, 2020

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on June 02, 2020.

Ruth R. Hughs
Secretary of State

Form 401

Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

**Filing Fee: See Instructions**

**Statement of Change of Registered Office/Agent**

**Filed in the Office of the Secretary of State of Texas**
**Filing #: 801578251 03/05/2020**
**Document #: 953095000003**
**Image Generated Electronically for Web Filing**

**Entity Information**

The name of the entity is :

**JMJ DEVELOPMENT, LLC**

The file number issued to the entity by the secretary of state is: **801578251**

The registered agent and registered office of the entity as currently shown on the records of the secretary of state are:

**Tim Barton**

**13901 Midway Rd, Ste 102, LB 243, Dallas, TX, USA 75244**

**Change to Registered Agent/Registered Office**

The following changes are made to the registered agent and/or office information of the named entity:

Registered Agent Change

☑ A. The new registered agent is an organization by the name of:

**ONE Agent Texas, LLC**

OR

☐ B. The new registered agent is an individual resident of the state whose name is:

Registered Office Change

☑ C. The business address of the registered agent and the registered office address is changed to:

**13901 Midway Rd, Ste 102, Dallas, TX, USA 75244**

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

☑ B. The consent of the registered agent is maintained by the entity.

**Statement of Approval**

The change specified in this statement has been authorized by the entity in the manner required by the BOC or in the manner required by the law governing the filing entity, as applicable.

**Effectiveness of Filing**

☑ A. This document becomes effective when the document is filed by the secretary of state.

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: **March 5, 2020** **Saskya Bedoya**

Signature of authorized person(s)

FILING OFFICE COPY

# EXHIBIT G

FILED
TARRANT COUNTY
5/1/2020 1:09 PM
THOMAS A. WILDER
DISTRICT CLERK

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 141-316567-20*

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: TIM BARTON

1755 WITTINGTON PL STE 340 DALLAS, TX 75234-
OR WHEREVER HE IS FOUND

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino
TAMARA COLACINO

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000006*

Received this Citation on the 23rd day of April, 2020 at 5:00 o'clock P M; and executed at 3525 Arrowhead Dr. Dallas, Tx 75204 within the county of Dallas, State of Texas at 3:50 o'clock P M on the 30th day of April, 2020 by delivering to the within named (Def.): Tim Barton defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION, having first endorsed on same the date of delivery. by delivering to Jeremy, who is at least 16 years of Age, pursuant to Rule 106(b) with Order for Substitute Service attached

Authorized Person/Constable/Sheriff: Christopher LaFountain PSC:16473
County of Tarrant State of Texas By [signature] ~~Deputy~~ (3-31-21)

Fees $______
State of TX County of Tarrant (Must be verified if served outside the State of Texas)
Signed and sworn to by the said C LaFountain before me this 1st day of May, 2020
to certify which witness my hand and seal of office
(Seal)

CHRISTOPHER J. FIORE
ID #11826697
My Commission Expires
December 22, 2023

[signature]
County of Tarrant, State of TX

*CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000006*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

# EXHIBIT H

CAUSE NO. 141-316567-20

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**SERVICE MEMBERS' AFFIDAVIT OF JOAKIM G. SOEDERBAUM**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned authority, on this day appeared Joakim G. Soederbaum, who is personally known by me, and after first being duly sworn according to law, upon his oath deposed and said:

1. "My name is Joakim G. Soederbaum. I am over eighteen years of age, of sound mind, and am legally competent to make this Affidavit. I have personal knowledge of the facts stated within this Affidavit, and each fact is true and correct.

2. "I am an attorney licensed to practice law in the state of Texas, and am an associated with the firm of Kelly Hart & Hallman LLP, which was retained by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd.,

LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd., to provide legal representation in the above-referenced matter.

3. "Defendant, Tim Barton, is not in military service as defined in the Service Members Civil Relief Act (formerly known as the Soldier's and Sailor's Civil Relief Act of 1940). Attached as **Exhibit H-1** to this Affidavit are the original verifications that I obtained from the Defense Manpower Data Center website confirming such fact.

4. "Defendant, JMJ Development, LLC, is not in military service as defined in the Service Members Civil Relief Act (formerly known as the Soldier's and Sailor's Civil Relief Act of 1940).

5. "Defendant, 2999TC LP, LLC, is not in military service as defined in the Service Members Civil Relief Act (formerly known as the Soldier's and Sailor's Civil Relief Act of 1940).

"FURTHER, AFFIANT SAYETH NOT."

Joakim G. Soederbaum

SUBSCRIBED AND SWORN TO BEFORE ME on the 5th day of June, 2020 to certify which witness my hand and official seal.

Notary Public in and for the State of Texas

JOHN R. LEWIS
Notary Public
STATE OF TEXAS
Notary ID # 124717271
My Comm. Exp. March 29, 2024

Department of Defense Manpower Data Center

Results as of : Jun-03-2020 03:40:39 PM

SCRA 5.4

# Status Report
# Pursuant to Servicemembers Civil Relief Act

SSN:
Birth Date: Aug-XX-1963
Last Name: BARTON
First Name: TIM
Middle Name: L
Status As Of: Jun-03-2020
Certificate ID: 4HGVXM9YMFJPV9G

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Jun-03-2020 03:46:40 PM

SCRA 5.4

# Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:

Birth Date: Aug-XX-1963

Last Name: BARTON

First Name: TIMOTHY

Middle Name: L

Status As Of: Jun-03-2020

Certificate ID: GWGKJ6G44TT4X7G

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

# EXHIBIT I

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| v. | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT OF JOAKIM SOEDERBAUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Joakim Soederbaum, a person known to me who after being duly sworn, deposed as follows:

1. "My name is Joakim Soederbaum. I am over twenty-one (21) years of age, have never been convicted of a felony, and am fully competent to testify to, and have personal knowledge of the matters stated in this Affidavit. Every statement of fact contained herein is within my personal knowledge and true and correct. I am a licensed attorney in the State of Texas and currently work at the law firm of Kelly Hart & Hallman LLP ('KHH'). My personal knowledge of the facts stated herein has been derived from the performance of my duties as one of the attorneys for L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, 'Plaintiffs'), and my review of the file, pleadings, motions, fee statements, and other papers associated with this cause.

2. "Plaintiffs employed KHH's services in connection with their efforts to protect their rights and interests in connection with a loan they made to 2999TC LP, LLC ('2999TC') in or around September of 2019, including but not limited to the litigation of the claims asserted in

the above-styled cause against 2999TC, JMJ Development, LLC ('JMJ'), and Tim Barton ('Barton') (all collectively, 'Defendants'). I have reviewed the file, pleadings, motions, fee statements, and other papers associated with this matter, including but not limited to Plaintiffs' Motion for Default Judgment and the exhibits attached thereto (the 'Motion'). The 204.5 hours which were expended for the purpose of protecting Plaintiffs' rights and interests in this matter as of June 4, 2020 included, but were not limited to, the following procedures

i) Fact gathering;

ii) Preparation and review of loan documents;

iii) Documentation of loan collateral;

iv) Preparation of several notices to Defendants concerning their various defaults in connection with the loan;

v) Drafting of pleadings;

vi) Legal research;

vii) Review of relevant documents;

viii) Applying for and obtaining a temporary restraining order against Defendants;

ix) Prepare and file a motion for substitute service and extension of the temporary restraining order;

x) Preparing for the hearing on Plaintiffs' application for a temporary injunction;

xi) Communications with Defendants' transactional counsel;

xii) Communications with counsel for 2999TC;

xiii) Communications with Barton and JMJ;

xiv) Prepare and file two unopposed motions to extend the temporary restraining order;

xv) Conferring with the client;

xvi) Reviewing time records and fee statements;

xvii) Preparing Plaintiffs' Motion and supporting documents; and

xviii) Pursuing settlement efforts and negotiations.

3. "The aforementioned 204.5 hours were expended by the following attorneys at their specified billing rates, as follows:

| Name | Hours Billed | Hourly Billing Rate | Total Fees |
|---|---|---|---|
| Dee Kelly | 7.8 | $595.00 | $4,641.00 |
| Brandon Hill | 41.6 | $450.00 | $18,720.00 |
| Joakim G. Soederbaum | 130.7 | $325.00 | $42,477.50 |
| Judy Collins | 24.4 | $210.00 | $5,124.00 |
| TOTAL | 204.5 | *** | $70,962.50 |

4. "Defendants previously submitted payment of $12,795.00 toward the fees incurred by Plaintiffs. Crediting that payment toward the fees incurred by Plaintiffs through June 4, 2020, leaves an outstanding balance of $58,167.50. Defendants have made no further payments toward these fees and are entitled to no other offsets or credits.

5. "In the event of an appeal by one or more of the Defendants of a judgment rendered in Plaintiffs' favor, Plaintiffs will incur reasonable and necessary attorney's fees as follows: (1) at least $20,000 to respond to an appeal to the Second Court of Appeals of Texas and to prepare for and present oral argument; (2) at least $10,000 to respond to or file a petition for review with the Texas Supreme Court; and (3) at least $20,000 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument.

6. "Dee Kelly is a partner at KHH. He graduated from The University of Texas Law School in 1985 and has been a licensed attorney in the State of Texas since that time. Mr. Kelly has experience representing corporate and individual clients in a wide variety of business litigation in state and federal courts, including throughout Texas.

7. "Brandon Hill is a partner at KHH. He graduated from the Texas Tech University School of Law in 2006 and has been a licensed attorney in the State of Texas since that time. Mr. Hill has experience representing corporate and individual clients in a wide variety of transactional matters, including different forms of both secured and unsecured transactions and real estate developments.

8. "Judy Collins has an Associate's Degree in paralegal studies from an ABA approved college and has been performing substantive legal work as a litigation legal assistant with Kelly Hart & Hallman LLP for more than 11 years. Her education and 20 years of experience as a legal assistant qualify her to perform substantive legal work. The aforementioned hours that Ms. Collins spent on this case were spent performing substantive legal work under the direction and supervision of an attorney, including research and preparation of court documents.

9. "I am an associate attorney with KHH. I have been licensed to practice in Texas since 2014 and have been practicing law in Texas, including in and around Travis County and

Tarrant County, Texas, since 2014, primarily in the area of complex commercial litigation. Prior to joining KHH, I spent one year clerking for the Honorable Justice Debra Lehrmann at the Supreme Court of Texas, working on a broad variety of complex legal issues. In my practice, I have become personally familiar with the reasonable and customary rates of fees charged in the Tarrant County legal market, particularly the fees charged in litigation. The fees that have been charged in this case are customarily charged in this area for the same or similar services for attorneys that have worked on this case considering their experience, reputation, and ability, as well as the type of controversy, the time limitations imposed, and the nature and length of the firm's relationship with Plaintiffs.

10. "The fees set forth in Paragraphs 2 through 5 above are reasonable and necessary in protecting Plaintiffs' rights and interests in this matter, including prosecuting Plaintiffs' claims against Defendants. In reaching my conclusions and opinions, I have considered each of the factors set out in TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, (STATE BAR RULES, art. X, § 9). Specifically, I have considered the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

I have also considered the decisions of the Texas Supreme Court in *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (dealing with segregation in multi-claim cases); *Arthur Anderson & Co. v. Perry Equipment*, 925 S.W.2d 812 (1997) (relating to fee shifting in general); and *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991), modified on other grounds, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). My conclusions and opinions regarding the reasonableness and necessity of the attorney's fees incurred by Plaintiffs in connection with the prosecution of their claims against Defendants take into account Plaintiffs' obligation to segregate the fees incurred to the extent required by law and allowed by the circumstances. It is my opinion that all legal services provided to Plaintiffs in connection with these matters as summarized above have been incurred for the purpose of protecting Plaintiffs' rights and interests in this matter, including but not limited to Plaintiffs' claims against

Defendants for breach of the promissory notes and guaranties. Because the notes and guaranties at issue expressly provide for Plaintiffs' recovery of such fees, Plaintiffs are under no obligation to segregate their fees and are seeking 100% of the attorney's and paralegal's fees identified above. Even assuming Plaintiffs would otherwise have an obligation to segregate the fees incurred against 2999TC from those incurred against Barton and JMJ, the guaranties at issue make expressly clear that Barton and JMJ are liable for all amounts owed by 2999TC under the notes, and the factual circumstances giving rise to the claims against JMJ and Barton are so intertwined with the factual circumstances giving rise to the claims against 2999TC that segregation would be impossible. Despite my opinions on these matters, the hours and fees set forth in paragraphs 2-4 above reflect a discount of $3,598.00 worth of additional work on this matter.

11. "Attached as Exhibit I-1 to Plaintiffs' Motion is a true and correct copy of a printout from website for the Texas Secretary of State obtained by KHH on June 5, 2020. Attached as Exhibits I-2 through I-4 to Plaintiffs' Motion are true and correct copies of emails I sent and received in connection with this matter. Finally, attached as Exhibit I-5 to Plaintiffs' Motion is a true and correct copy of a screen shot from website for the Delaware Secretary of State obtained by KHH on June 2, 2020.

"FURTHER AFFIANT SAYETH NOT."

JOAKIM SOEDERBAUM

SWORN TO and SUBSCRIBED before me by Joakim Soederbaum on the 5th day of June, 2020, to certify which witness my hand and official seal.

Notary Public in and for the State of Texas

JOHN R. LEWIS
Notary Public
STATE OF TEXAS
Notary ID # 124717271
My Comm. Exp. March 29, 2024

# EXHIBIT I-1

# TEXAS SECRETARY of STATE
## RUTH R. HUGHS

### FIND ENTITY NAME SEARCH

This search was performed with the following search parameter:
**ENTITY NAME :** 2999TC LP

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|---|---|---|---|---|---|---|
| | 803327854 | 2999TC JMJ LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| | 803387209 | 2999TC Acquisitions, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | In use |
| | 803387231 | 2999TC Acquisitions MZ, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | In use |
| | 803387209 | MO 2999TC, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | Prior |
| | 803387231 | MO 2999TC MZ, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | Prior |

Return to Order New Search

---

Instructions:
- To view additional information pertaining to a particular filing select the number associated with the name.
- To place an order for additional information about a filing select the radial button listed under 'Mark' that is associated with the entity and press the 'Order' button.

000335

# EXHIBIT I-2

**Judy Collins**

**From:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Sent:** Wednesday, May 27, 2020 6:03 PM
**To:** Joakim Soederbaum; Tim Barton
**Cc:** Purcell, Bradley
**Subject:** RE: Re:

Thanks, Joakim. For the company, we construe the Supreme Court's Emergency order to modify the service and related answer deadlines. We intend to file an answer on June 1.

**Elizabeth C. Brandon**
Partner
email@reedsmith.com
Direct: +1 469 680 4212

**Reed Smith LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: +1 469 680 4200
F: +1 469 680 4299
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Wednesday, May 27, 2020 5:49 PM
**To:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>; Tim Barton <tbarton@jmjdevelopment.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>
**Subject:** RE: Re:

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

Elizabeth,

Here is what I have:

2999TC LP, LLC was mailed out via CMRRR by the clerk on 4/23/20. Adding three additional days to the 20 makes it 5/16/20 and the first following Monday 5/18/20.

JMJ Development was sub served via posting on the door on 4/30/20 and going out in the mail on 5/1/20. Adding 20 days, the first following Monday was 5/25/20.

Mr. Barton was served via hand delivery to someone over 16 years of age on 4/30/20. Adding 20 days, the first following Monday was 5/25/20 (which was Memorial Day).

If I am missing something, please let me know.

Joakim

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Wednesday, May 27, 2020 4:29 PM
**To:** Joakim Soederbaum; Tim Barton
**Cc:** Purcell, Bradley
**Subject:** RE: Re:

Joakim,

We have the answer deadline to be June 1, not last week. How are you calculating?

**Elizabeth C. Brandon**
Partner
email@reedsmith.com
Direct: +1 469 680 4212

**Reed Smith LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: +1 469 680 4200
F: +1 469 680 4299
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Wednesday, May 27, 2020 4:26 PM
**To:** Tim Barton <tbarton@jmjdevelopment.com>; Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Subject:** RE: Re:

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

Good afternoon,

Our records indicate that the deadline for 2999TC to file an answer was last Monday, May 18, and the deadline for Mr. Barton and JMJ was yesterday, May 26. Please advise as to whether the various defendants will be filing their answers this week.

Thank you,

Joakim

**Joakim Soederbaum**
*Attorney*

KELLY HART
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
*joakim.soederbaum@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Tuesday, May 19, 2020 8:59 AM
**To:** Joakim Soederbaum; Brandon, Elizabeth C.
**Subject:** Re:

I affirmative state that myself on my own behalf and on behalf of JMJ Development, LLC agree to the request as set forth in the attached motion (1) for the extension of the existing temporary restraining order, and (2) that the hearing on the request for a temporary injunction be moved to 9:30 a.m. on June 16, 2020

Agreed
Tim Barton
Sent from my BlackBerry 10 smartphone.

**From:** Joakim Soederbaum
**Sent:** Tuesday, 19 May 2020 8:33 AM
**To:** Tim Barton; Brandon, Elizabeth C.
**Subject:** RE: Re:

Thank you both. I will get this finalized and presented to the Court. Mr. Barton, I am assuming that the question mark at the end of your affirmation was inadvertently included from copying the below language, but just to be clear, can you please confirm real quick that's the case?

Thank you,

Joakim

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Monday, May 18, 2020 10:34 PM
**To:** Joakim Soederbaum; Brandon, Elizabeth C.; Tim Barton
**Subject:** Re:

I affirmative state that myself on my own behalf and on behalf of JMJ Development, LLC agree to the request as set forth in the attached motion (1) for the extension of the existing temporary restraining order, and (2) that the hearing on the request for a temporary injunction be moved to 9:30 a.m. on June 16, 2020?

Sent from my BlackBerry 10 smartphone.

**From:** Joakim Soederbaum
**Sent:** Monday, 18 May 2020 11:07 PM
**To:** Brandon, Elizabeth C.; Tim Barton
**Subject:** RE: Re:

Thank you both for your prompt responses.

I see no reason to change things up from our previous extension and have attached a substantially similar motion and proposed order. Can you both please review and let me know if you have any changes?

Ms. Brandon, would you please also let me know if I have you permission to add your electronic signature?

Mr. Barton, if everything is acceptable to you, would you please respond to this email and affirmatively state that you on your own behalf and on behalf of JMJ Development, LLC agree to the request as set forth in the attached motion (1) for the extension of the existing temporary restraining order, and (2) that the hearing on the request for a temporary injunction be moved to 9:30 a.m. on June 16, 2020?

As soon as I have everyone's express agreement, I will get this filed and bring it to the Court's attention.

Thank you,

Joakim

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Monday, May 18, 2020 2:22 PM
**To:** Tim Barton; Joakim Soederbaum
**Subject:** RE: Re:

Thanks, Joakim. The company agrees as well. Please circulate a draft of the revised paperwork.

Best,

Elizabeth

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Tim Barton <tbarton@jmjdevelopment.com>
**Sent:** Monday, May 18, 2020 1:34 PM
**To:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>; Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Subject:** Re:

EXTERNAL E-MAIL - From tbarton@jmjdevelopment.com

I agree

Tim Barton

Sent from my BlackBerry 10 smartphone.

**From:** Joakim Soederbaum
**Sent:** Monday, 18 May 2020 2:21 PM
**To:** Tim Barton; Brandon, Elizabeth C.
**Subject:** RE:

Good afternoon,

It is my understanding that nothing has yet been resolved on the transactional side and that Mr. Barton may still be out of state. In light of Memorial Day Weekend coming up it is highly unlikely that everything would be sorted out before Tuesday's hearing. Accordingly, to save the parties time and expense in preparing for that hearing, I am reaching out to see whether 2999TC, JMJ, and Mr. Barton would all agree to another extension of the current temporary restraining order and to further push the temporary injunction hearing. Please respond to this email at your earliest convenience and let me know if you agree to extend the TRO and push the TI hearing until June 16. If so, I'll prepare the necessary paperwork and circulate for approval.

Thank you,

Joakim

**Joakim Soederbaum**
*Attorney*

KELLY HART
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
*joakim.soederbaum@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Monday, May 11, 2020 3:58 PM
**To:** Joakim Soederbaum
**Cc:** Brandon, Elizabeth C.
**Subject:**

Joakim

Hope this does it for you

Tim

Sent from my BlackBerry 10 smartphone.

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this

message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# EXHIBIT I-3

**Judy Collins**

**From:** Joakim Soederbaum
**Sent:** Thursday, April 30, 2020 7:50 PM
**To:** Brandon, Elizabeth C.
**Cc:** Purcell, Bradley; Judy Collins
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20
**Attachments:** Original Petition and Request for Injunctive Relief.pdf; 316567 TRO.PDF; 14131656720000005 Citation.pdf; 14131656720000006 Citation.pdf; 14131656720000015 TRO.PDF; 14131656720000014 TRO.PDF; 316567 Order Authorizing Sub Service & Extending TRO.PDF

Elizabeth and Brad,

Pleasure talking to you both today. As a quick follow up to our conversation, it turns out that service on JMJ Development and Mr. Barton was completed before we spoke. While I know that you currently represent only 2999TC and will get back with me tomorrow regarding whether you will represent Mr. Barton and/or JMJ Development as well, I have gone ahead and attached copies of the petition, TRO, citations for JMJ and Barton (just in case you end up representing them as well), and order authorizing substitute service and extending the TRO for your records. If you need any additional documents for purposes of getting caught up to speed, please do not hesitate to let me know.

I look forward to working with both of you in connection with this matter.

Best,

Joakim

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Thursday, April 30, 2020 4:05 PM
**To:** Joakim Soederbaum
**Cc:** Purcell, Bradley; Judy Collins
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

Thank you.

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Thursday, April 30, 2020 4:00 PM
**To:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>; Judy Collins <judy.collins@kellyhart.com>
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

That shouldn't be a problem. Got somewhat held up myself, so no worries.

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Thursday, April 30, 2020 3:30 PM
**To:** Joakim Soederbaum
**Cc:** Purcell, Bradley; Judy Collins
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

Joakim, I'm on a call that is running long. Will you be available after 5 or 5:30 today?

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Brandon, Elizabeth C.
**Sent:** Thursday, April 30, 2020 1:57 PM
**To:** 'Joakim Soederbaum' <Joakim.Soederbaum@kellyhart.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>; Judy Collins <judy.collins@kellyhart.com>
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

Thanks, Joakim. We can give you a call around 3:30.

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Thursday, April 30, 2020 12:18 PM
**To:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>; Judy Collins <judy.collins@kellyhart.com>
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

Elizabeth,

Thank you for reaching out. To put your mind somewhat at ease while you get up to speed, I can let you know that this morning the Court signed the attached order authorizing substitute service on the other two defendants, JMJ Development, LLC and Mr. Barton, and extending the TRO until May 20 (and pushing the TI hearing as well). That said, I'd still be more than happy to get on a call with you this afternoon. I am working from home since childcare is closed, so please feel free to try my cell at any time that is convenient for you: (903) 257-8195.

Also, can you please let me know if your involvement in this matter is strictly limited to 2999TC or if you represent JMJ Development and Mr. Barton as well and, if so, if you will accept service on their behalf?

And just to let you know: we filed our motion yesterday (at which time we were unaware that any defendant had legal representation) and it is my understanding that the court has issued service directly to your client of the attached order by mail – so your client may still receive formal receive through those channels.

Thank you. I look forward to visiting with you this afternoon.

Best,

Joakim

**Joakim Soederbaum**
*Attorney*

KELLY HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
*joakim.soederbaum@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Thursday, April 30, 2020 9:03 AM
**To:** Joakim Soederbaum
**Cc:** Purcell, Bradley
**Subject:** Hodges v 2999TC, Cause No. 141-316567-20

Good morning, Joakim. Our firm has just been retained to represent 2999TC in this matter and in connection with the TRO and upcoming TI hearing. We understand there has been some communications with the company directly, but we are still trying to get up to speed on background. In light of the upcoming TI hearing, we would appreciate a chance to discuss the issues and, at the very least, push out the hearing date. Are you available this afternoon to discuss?

Best,

Elizabeth Brandon

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

* * *
This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# EXHIBIT I-4

**Judy Collins**

**From:** Tim Barton <tbarton@jmjdevelopment.com>
**Sent:** Monday, May 11, 2020 3:58 PM
**To:** Joakim Soederbaum
**Cc:** Brandon, Elizabeth C.
**Attachments:** IMG_20200511_165718.jpg

Joakim

Hope this does it for you

Tim

Sent from my BlackBerry 10 smartphone.

# EXHIBIT I-5

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies




Department of State: Division of Corporations

Allowable Characters

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

SERVICES
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

Loading...

Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 7602115 | Incorporation Date / Formation Date: | 9/10/2019 (mm/dd/yyyy) |
| Entity Name: | 2999TC LP, LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | INCORP SERVICES, INC. | | |
| Address: | 919 NORTH MARKET STREET, SUITE 950 | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | 800-246-2677 | | |

100%

Desktop 3:24 PM 6/2/2020

FILED
TARRANT COUNTY
6/10/2020 3:55 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

## DEFENDANT 2999TC LP, LLC'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURES

Subject to its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Plea to the Jurisdiction) and Special Exceptions, and Motion to Dissolve Temporary Restraining Order and Motion to Stay Case, and without waiver of arguments set forth therein, Defendant 2999 TC LP, LLP ("**Defendant**") files this Original Answer and Request for Disclosures in response to Plaintiffs' Original Petition as follows:

## GENERAL DENIAL

1. In accordance with Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained in Plaintiffs' Original Petition, and demands strict proof thereof. Defendant further reserves the right to amend its Original Answer at a future date in accordance with the Texas Rules of Civil Procedure.

## SPECIFIC DENIAL

2. Defendant specifically denies Plaintiffs' allegations that all conditions precedent have been performed or have occurred.

## AFFIRMATIVE DEFENSES

3. Subject to and without waiving the foregoing general and specific denials, Defendant asserts the following affirmative defenses:

4. Plaintiffs fail to plead adequate facts to establish standing to assert claims against Defendant

5. Plaintiffs fail to state facts sufficient to constitute a claim upon which an relief may be granted.

6. Plaintiffs' claims are barred, in whole or in part, by waiver.

7. Plaintiffs' claims are barred, in whole or in part, by ratification.

8. Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, including equitable estoppel, promissory estoppel, and quasi-estoppel.

9. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' prior material breach of the contracts.

10. Plaintiffs' claims are barred, in whole or in part, by the doctrines of impossibility of performance and frustration of purpose.

11. Plaintiffs' claims are barred, in whole or in part, by illegality.

12. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate its alleged damages.

13. Plaintiffs' claims are barred, in whole or in part, because the money lent included usurious interest.

14. Any recovery against Defendant is barred or limited under the principles of assumption of the risk and informed consent.

15. Plaintiffs' claim for attorneys' fees is improper because, amount other reasons, Plaintiff is not entitled to recover attorneys' fees from Defendant under applicable law, including Chapter 38 of the Texas Civil Practice & Remedies Code.

**REQUEST FOR DISCLOSURES**

16. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs are requested to disclose, within 30 days of service of this request, the information described in Rule 194.2.

Dated: June 10, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant 2999 TC LP, LLP*

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on June 10, 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

FILED
TARRANT COUNTY
6/5/2020 8:04 AM
THOMAS A. WILDER
DISTRICT CLERK
141-316567-20

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' FIRST AMENDED PETITION**

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "**Plaintiffs**") file their *First Amended Petition* against Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton (all collectively, "**Defendants**") and would respectfully show the Court as follows:

**I.**
**NATURE OF THE ACTION**

1. In September of 2019 defendant 2999TC LP, LLC ("**2999TC**") borrowed $4,000,000.00 from Plaintiffs (the "**Loan**")—which Loan is evidenced by two promissory notes executed by 2999TC (the "**Notes**") and guaranteed by both JMJ Development, LLC ("**JMJ**") and Tim Barton ("**Barton**"). 2999TC soon defaulted on its obligations under the Note, Barton failed to perform as agreed in his guaranties, and the Loan was accelerated on or about April 14, 2020. To date, however, Defendants have failed to make *any* payments towards the more than

$4,000,000 due and owing since Plaintiffs received the December 2019 interest-only payment on January 29, 2020—a month and a half late. Accordingly, Plaintiffs brought this suit to recover the more than $4,000,000.00 owed by Defendants in connection with the Loan.

## II.
## DISCOVERY CONTROL PLAN

2. Discovery in this case is intended to be conducted under level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## III.
## PARTIES

3. Executor, who resides in Tarrant County, Texas, is one of two duly qualified and acting independent executors under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1.

4. Plaintiff Tejas Group, Ltd. is a Texas limited partnership.

5. Plaintiff LAH III Family Specific Interest, Ltd. is a Texas limited partnership.

6. Plaintiff Blackfoot Interest, Ltd is a Texas limited partnership.

7. Defendant 2999TC is a Delaware limited liability company. 2999TC has appeared and filed an answer in this suit and may be served with this Petition pursuant to Texas Rule of Civil Procedure 21a.

8. Defendant JMJ is a Texas limited liability company. JMJ has appeared in this suit but not yet filed an answer, and may be served with this Petition pursuant to Texas Rule of Civil Procedure 21a.

9. Defendant Barton is an individual residing in the State of Texas. Barton has appeared in this suit but not yet filed an answer, and may be served with this Petition pursuant to Texas Rule of Civil Procedure 21a.[1]

**IV.**
**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over this case because the amount in controversy is within the jurisdictional limits of this Court. Pursuant to Texas Rule of Civil Procedure 47, Plaintiffs state that they seek monetary relief over $1,000,000.00 but less than $5,000,000.00, plus attorney's fees, costs, and pre- and post-judgment interest.

11. This Court has personal jurisdiction over 2999TC and JMJ because they systematically conduct business in Texas, maintain a regular place of business in Texas, and entered into contracts with Texas residents to be performed in whole or in part in this state. *See* Tex. Civ. Prac. & Rem. Code § 17.042. This Court has personal jurisdiction over Barton because he resides in Texas and entered into contracts with Texas residents to be performed in whole or in part in this state. *See id.* This Court further have personal jurisdiction over 2999TC, JMJ, and Barton because they have appeared in this matter.

12. Venue in this matter is proper in this County because a substantial part of the activities, events, and damages giving rise to this lawsuit occurred in this County. *See* Tex. Civ. Prac. & Rem. Code § 15.002. Venue is further proper in this County because the Notes provide that venue for any dispute involving the Notes or any other instruments executed in connection with the Notes shall lie exclusively in Tarrant County, Texas. *See* Notes as amended.

[1] Plaintiffs note that Defendants Barton and JMJ did not provide any contact information on their motion to quash (although they appear to have served themselves a copy of that motion via tbarton@jmjdevelopment.com). Accordingly, until these two Defendants instruct the Court and the parties otherwise, in line with their previous filings and notices and out of an abundance of caution, Plaintiffs will serve a copy of all their filings on Barton and JMJ (1) via tbarton@jmjdevelopment.com, and (2) through the attorney filing these Defendants' motion to quash, Vance McMurry, at vance@mcmurrylegal.com.

## V.
## FACTS

13. On or around September 16, 2019, defendant 2999TC borrowed from Plaintiffs, and Plaintiffs loaned to 2999TC, the total amount of $4,000,000.00 (the "**Loan**") in connection with a project involving the acquisition of property located at 2999 Turtle Creek Boulevard, Dallas, Texas (the "**Property**"), for the purpose of development of a luxury hotel and residences. The Loan is evidenced by two promissory notes executed by defendant Barton on behalf of 2999TC (the "**Notes**").[2]

14. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020 (the "**Maturity Date**").[3]

15. Defendants Barton, individually, and JMJ guaranteed the Loan and 2999TC's performance under the Notes (the "**Guaranties**").[4] In addition, in connection with his personal Guaranties (the "**Barton Guaranties**"), Barton personally agreed within thirty (30) days of Plaintiffs' request to grant or cause to be granted a first-priority security interest in certain assets. More specifically, Barton agreed to grant Plaintiffs a first-priority lien in the unencumbered value of certain real estate (hereinafter collectively referred to as the "**Guaranty Collateral**"):

---

[2] Each Plaintiff advanced ¼ of the Loan, or $1,000,000.00. One Note, in the amount of $1,000,000.00, was made out to the Estate of Leland Allen Hodges, Jr., while the other Note, in the total amount of $3,000,000.00, was made out to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd, collectively.

[3] The accrued interest is calculated on a 360-day-year basis, making each quarter 90 days and each full quarterly interest-only payment $180,000.00 (360 / 90 = 90; $4,000,000.00 x .18 / 360 x 90 = $180,000.00).

[4] More specifically, Barton and JMJ each executed one Guaranty for each of the $1,000,000 Note and the $3,000,000 Note, respectively, for a total of 4 Guaranties.

| Collateral | Acres | Lots |
|---|---|---|
| Real Property Development known as North Star | 63.75 | 302 |
| Real Property Development known as Griffin | 201 | 870 |
| Real Property Development known as Rogers Ranch | 100 | 40 |
| Real Property Development known as Killeen | 16.2 | 1 |
| Real Property Development known as Ridgeview | 15 | 54 |

16. Pursuant to the terms of the Barton Guaranties, on or about September 17, 2019, Plaintiffs requested that Barton provide the documentation necessary to establish the agreed-upon security interests within thirty days—by October 17, 2019—so that Plaintiffs could promptly perfect their security interests in the Guaranty Collateral.

17. Barton, however, failed to comply with Plaintiffs' September 17, 2019 request. Instead, he—directly or through other non-party entities owned by him—provided Plaintiffs with pledges of membership interests in entities holding title to the real estate at issue. In other words, Plaintiffs have not received liens directly on the real estate referenced in the Barton Guaranties and do not have an ownership interest in the holding companies; rather, Plaintiffs merely holds a security interest in certain holding companies.[5]

[5] Barton ultimately caused membership interest in the following entities to be pledged as security of the Loan: Wall009, LLC, Ridgeview Addition, LLC, LDG001, LLC, JMR100, LLC, D4KL, LLC, BM318, LLC, and 2999TC LP, LLC. With respect to the pledge of interest in Ridgeview Addition LLC, the entity through which Barton pledged that interest, Carnegie Development, LLC, falsely represented to Plaintiffs that Ridgeview Addition, LLC owns the Guaranty Collateral identified as Ridgeview. To be clear, Plaintiffs do not assert any claim, and do not seek any relief from this Court, arising from and/or based on (i) their security interest in the membership interest of these entities or (ii) their attenuated interest in the real estate owned by these entities and/or identified in the Barton Guaranties. Rather, the only relief Plaintiffs seek herein is directly against Defendants based on their respective breaches of the Notes and Guaranties: actual damages, pre- and post-judgment interest, attorney's fees, and costs.

By way of specific example, with respect to the pledge of membership interest in Wall009 LLC, this entity is an alleged debtor subject to an involuntary chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 20-31131. Plaintiffs are not seeking any relief as to Wall009 LLC or the membership interests in Wall009 LLC, and will not seek any such relief without prior Bankruptcy Court approval.

18. In addition, among other things, 2999TC failed to pay (i) the first interest-only payment in the amount of $180,000.00 when due on December 16, 2019; and (ii) Plaintiffs' out-of-pocket expenses incurred incidental to the Loan as agreed. Ultimately, only after Plaintiffs threatened to accelerate the Loan, on or about January 29, 2020, did 2999TC pay the overdue December 16, 2019, interest-only payment and Plaintiffs' out-of-pocket expenses incurred incidental to the Loan creation. Barton, however, failed to provide Plaintiffs' first-priority liens on the Guaranty Collateral as agreed, leaving Plaintiffs with the various membership pledges.

19. When the second interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. In addition to 2999TC failing to make the $180,000.00 interest-only payment, among other things, Plaintiffs learned that Barton purportedly had allowed the granting of a first-priority lien on some of the real estate supposed to serve as Guaranty Collateral. By doing so, Barton potentially diluted the unencumbered value in which he agreed to grant Plaintiffs a first-priority lien as set forth in the Barton Guaranties. Accordingly, on March 27, 2020, Plaintiffs sent a second notice of default demanding that Defendants cure the defaults by April 6, 2020.

20. When Defendants failed to cure its defaults as demanded in Plaintiffs' March 27, 2020, notice, Plaintiffs accelerated the Loan and demanded payment in full from Defendants of all amounts due and owing. To date, however, Defendants have failed to pay as agreed, the Notes remain unpaid, and the principal is currently due and owing in full. As of April 21, 2020, a total of approximately $4,250,000.00 was immediately due and owing in the form of outstanding principal balance and accrued but unpaid interest.[6] Interest and attorney's fees

---

[6] This amount takes into account and credits the fact that Plaintiffs, albeit late, ultimately received the first $180,000.00 interest-only payment.

continue to accrue. Accordingly, Plaintiffs have filed the instant lawsuit to recover the amounts owed by Defendants.

## VI.
## CAUSES OF ACTION

### BREACH OF PROMISSORY NOTES

21. Plaintiffs incorporate herein by reference the foregoing allegations.

22. As set forth above, 2999TC is the maker of two enforceable Notes, which it executed and delivered to Plaintiffs. Plaintiffs are the beneficiaries and legal holders and owners of the Notes.

23. Plaintiffs performed their obligations under the Notes and loaned the total amount of $4,000,000.00 to 2999TC. 2999TC, in contrast, breached the Notes, among other things, through its failure to make the March 2020 interest-only payment as agreed and to make payment in full upon acceleration of the Loan. The entire principal balances of $1,000,000.00 and $3,000,000.00 remains due and owing under each Note, respectively and, as of April 21, 2020, a total of approximately $250,000.00 in accrued but unpaid interest was due and owing between the two Notes,[7] and remains unpaid to date.

24. As a proximate and foreseeable result of 2999TC's breach of the Notes, Plaintiffs have been damaged in a sum in excess of the minimum jurisdictional limits of the Court, for which sums Plaintiffs hereby sue, together with cost, attorney's fees, and pre-judgment and post-judgment interest at the contractually agreed rate of 18% to the greatest extent allowed by applicable law.

---

[7] The interest, while referred to collectively because it accrues on identical terms for each Note, accrues separately for the two Notes, with ¾ of the referenced interest accruing in connection with the $3,000,000.00 Note and ¼ of the interest accruing in connection with the $1,000,000.00 Note (based on the amount of each Note in proportion to the Loan). Plaintiffs refer to the interest as of April 21, 2020, the date before this suit was filed, as pre-judgment interest begins to accrue on April 22, 2020.

25. All conditions precedent to Plaintiffs' right to recover under the Notes have been performed, have occurred, or have been excused.

**BREACH OF GUARANTIES**

26. Plaintiffs incorporate herein by reference the foregoing allegations.

27. As set forth above, as consideration for Plaintiffs making the Loan to 2999TC, Barton and JMJ executed and delivered to Plaintiffs enforceable Guaranties for the benefit of Plaintiffs, securing 2999TC's performance under the Notes. Plaintiffs are the legal owners and holders of the Guaranties.

28. Pursuant to the Guaranties, Barton and JMJ must make any payments that become due and owing under the Notes. Plaintiffs performed their obligations by making the $4,000,000.00 Loan as contemplated by the Notes and the Guaranties. Thus, the Notes obligated 2999TC to pay Plaintiffs as amounts became due and owing. 2999TC defaulted under the Notes, among other things, by failing to make the March 2020 interest-only payment as agreed and to make payment in full upon acceleration of the Loan, thereby triggering Barton and JMJ's obligation to pay these amounts to Plaintiffs. Barton and JMJ, however, breached their respective Guaranties by failing to pay the amounts due to Plaintiffs under the Notes upon demand when 2999TC failed to pay as agreed and required. Barton further breached the Barton Guaranties by virtue of his failure to deliver the agreed-upon first-priority liens on the Guaranty Collateral.

29. As a proximate and foreseeable result of Barton's and JMJ's breach of their respective Guaranties, Plaintiffs have been damaged in a sum in excess of the minimum jurisdictional limits of the Court, for which sums Plaintiffs hereby sue, together with costs, attorney's fees, and pre-judgment and post-judgment interest at the contractually agreed rate of 18% to the greatest extent allowed by applicable law.

30. All conditions precedent to Plaintiffs' right to recover under the Guaranties have been performed, have occurred, or have been excused.

**VII.**
**ATTORNEY'S FEES**

31. Plaintiffs have been required to retain the undersigned legal counsel to institute and prosecute this action. In accordance with the loan documents (including the Notes and the Guaranties), and Tex. Civ. Prac. & Rem. Code § 38.001, Plaintiffs are entitled to recover their reasonable and necessary attorney's fees in bringing and prosecuting this action, and for any and all appeals enforcing the requested judgment.

**VIII.**
**JURY DEMAND**

32. Plaintiffs demand a jury trial and have previously tendered the appropriate fee along with the filing of their Original Petition.

**IX.**
**REQUEST FOR DISCLOSURE**

33. Pursuant to Texas Rule of Civil Procedure 194, Defendants are requested to disclose, within the time required by Rule 194.3 and based on the service of Plaintiffs' Original Petition,[8] the information or material described in Rule 194.2.

**X.**
**PRAYER**

For the reasons set forth above, the Plaintiffs respectfully request that the Court render judgment against Defendants, jointly and severally, and in favor of Plaintiffs, awarding Plaintiffs the following relief:

[8] Plaintiffs are including its request for disclosure to avoid creating the appearance that they have withdrawn their original request for disclosure. Plaintiffs' inclusion of the request for disclosure should not be interpreted as an extension of Defendants' deadline to respond to the same based on Plaintiffs' original request.

(a) any and all actual damages suffered in an amount within the jurisdictional limits of the Court;

(b) pre-judgment interest at the contractually-agreed upon rate of 18%;

(c) post-judgment interest at the contractually-agreed upon rate of 18%;

(d) attorney's fees;

(e) costs of suit; and

(f) such other and further relief to which Plaintiffs show themselves to be justly entitled whether at law or in equity.

Respectfully submitted,

***/s/ Dee J. Kelly, Jr.***

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2020, a true and correct copy of the foregoing document was served electronically upon all pro se Parties and counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT**
**2999TC LP, LLC**

Tim Barton, Individually
tbarton@jmjdevelopment.com
**PRO SE**

JMJ Development, LLC
By: Tim Barton
Its: Chief Executive Officer
tbarton@jmjdevelopment.com
**PRO SE**

Vance McMurry
508 W. Lookout #14-74
Richardson, Texas 75080
vance@mcmurrylegal.com
**AS FILING ATTORNEY FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.