Civil Case No. 4:20-cv-1256-P

Adv Case No. 20-4078
Bankruptcy Case No. 20-43204-mxm11

Appellant – 2999TC, LLC, et

Appellees – L. Allen Hodges III, et al

Volume 3 – Appellant Record

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Defendants

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC, LLC,** | § | |
| | § | **CASE NO. 20-43204-MXM11** |
| **Debtor.** | § | |
| | § | |
| | § | |
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD. AND BLACKFOOT INTEREST, LTD.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078** |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON** | § | **CIVIL CASE NO. 4:20-CV-01256-P** |
| | § | |
| **Defendants.** | § | |

# INDEX

## DESIGNATION OF RECORD ON APPEAL AND STATEMENT OF ISSUES

**TO THE UNITED STATES BANKRUPTCY CLERK**:

COME NOW **2999TC, LLC**, **JMJ Development, LLC** and **Tim Barton** ("Appellants"), Appellants herein, and pursuant to Federal Rules of Bankruptcy Procedure 8009(a)(1), Appellants hereby designate the following items for inclusion in the record on appeal. Such designation of

pleadings and matters of record include all exhibits attached or referred to in the pleadings or matters of record:

| Vol 2 | **Filing Date** | **Docket No.** | **Docket Text** |
|---|---|---|---|
| Page 36 | 10/16/2020 | 1 | Notice of Removal and all attachments: |
| Vol 4 Pg 687 | 10/16/2020 | 2 | Adversary Proceeding Cover Sheet |
| Pg 689 | 10/16/2020 | 3 | Support/Supplemental Document/Exhibit A |
| Pg 697 | 10/16/2020 | 5 | Counterclaim by 2999TC LP, LLC, Tim Barton, JMJ Development, LLC against all plaintiffs. |
| Pg 704 | 10/23/2020 | 12 | Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court and Brief in Support filed by Plaintiffs Blackfoot Interest, Ltd., L. Allen Hodges III, LAH III Family Specific Interest, Ltd., Tejas Group, Ltd. |
| Pg 723 | 10/23/2020 | 30 | Motion for remand filed by Plaintiffs Blackfoot Interest, Ltd. , L. Allen Hodges III, LAH III Family Specific Interest, Ltd. , Tejas Group, Ltd |
| Pg 739 | 10/25/2020 | 13 | Objection to Motion to dismiss 2999TC LP, LLC ONLY filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC. |
| Pg 753 | 10/30/2020 | 19 | Objection to Motion to dismiss 2999TC LP, LLC ONLY filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC. |
| Pg 774 | 11/11/2020 | 26 | Brief in support filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC |
| Pg 788 | 11/16/2020 | 35 | Court admitted exhibits date of hearing 11/16/2020 (with all exhibits) |
| Pg 789 | 11/18/2020 | 31 | Order Granting Second Amended Motion To Dismiss Defendant 2999TC LP, LLC Only And Abstain And Remand To State Court. |
| Pg 792 | 11/18/2020 | 33 | Notice of Appeal |
| Pg 802 | 11/19/2020 | 36 | Amended Notice of Appeal |
| Pg 809 | 12/2/2020 | | Transcript of Proceedings on 11/16/2020 |

**Statement of Issues on Appeal**

1. Did the Bankruptcy Court err in remanding the Adversary Case to the state court?

2. Did the Bankruptcy Court err in granting Plaintiffs' Motion to Dismiss Defendant 2999TC LP, LLC under Federal Rules of Civil Procedure 41(a)(2 while counterclaims were pending against the Plaintiffs.

3. Did the Bankruptcy Court err in dismissing claims against 2999TC in the Adversary Case?

4. Did the Bankruptcy Court err in abstaining from hearing the claims in the Adversary Case?

5. Did the Bankruptcy Court err in abstaining from hearing the claims in the Adversary Case under equitable abstention?

6. Did the Bankruptcy Court err in concluding that issues presented in the Adversary Case were non-core?

7. Did the Bankruptcy Court err in concluding that issues presented in the Adversary case were not core?

8. Did the Bankruptcy Court err in concluding that issues presented in the Adversary Case were not related to?

9. Did the Bankruptcy Court err in finding that equitable remand was proper under §1452(b)

Dated: December 2, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
**ATTORNEYS FOR APPELLANTS**
**2999TC, LLC, JMJ Development, LLC**
**and Tim Barton**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 2, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr., Tejas Group, Ltd.,LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd
c/o Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

FILED
TARRANT COUNTY
6/18/2020 7:37 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| | § | **TARRANT COUNTY, TEXAS** |
| ***Defendants.*** | § | |

**JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON'S MOTION TO TRANSFER VENUE AND ORIGINAL ANSWER SUBJECT THERETO**

Defendants JMJ Development, LLC ("***JMJ***") and Timothy Barton ("***Barton***" together with JMJ, "***Defendants***") file this *Motion to Transfer Venue and Original Answer Subject Thereto*. In support hereof, Defendants respectfully state as follows:

**MOTION TO TRANSFER VENUE**

1. Pursuant to Chapter 15 of the Texas Civil Practice and Remedies Code and Rules 86, 87, 88, and 89 of the Texas Rules of Civil Procedure, Defendants hereby objects to venue in Tarrant County, Texas, and specifically deny the allegation by Plaintiffs L. Allen Hodges III, as independent executor of the Estate of Leland A. Hodges Jr. ("***Hodges***") and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. ("***Tejas***" and together with Hodges, "***Plaintiffs***") that venue is proper in Tarrant County, Texas. This is so because all events giving rise to the claims against Defendants occurred in Dallas County (Tex. Civ. Prac. & Rem. Code § 15.002(1)), it is the county of Barton's residence (Tex. Civ. Prac. & Rem. Code § 15.002(2)), and it is the county of JMJ's principal office (Tex. Civ. Prac. & Rem. Code §

EXHIBIT "B-10"

15.002(3)). *See* Declaration of Timothy Barton attached hereto as **Exhibit 1** and incorporated herein by reference.

2. All of Plaintiffs claims against Defendants arise from four (4) Guaranty agreements (the "***Guaranties***") in which Defendants guaranteed the repayment of certain loans between Plaintiffs and 2999 TC LP, LLC. Attached hereto as **Exhibits 2-5** are true and correct copies of the Guaranties that are incorporated herein by reference. The Guaranties do not contain a venue clause. However, they expressly state that they are "executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas." *See* Guaranties ¶ 8. Thus, the contracts on which Plaintiffs have sued Defendants relate only to Dallas County.

3. Moreover, both Defendants are based entirely in Dallas County. Timothy Barton is a resident of Dallas County and JMJ has its principal place of business at 1755 Wittington Place, Suite 340, Dallas, Texas 75234. *See* Declaration of Timothy Barton.

4. Here, a mandatory venue provision governs the proper venue of this lawsuit. Section 15.002 of the Texas Civil Practice and Remedies Code provides as follows.

> (a) Except as otherwise provided by this subchapter or Subchapter B or C, all lawsuits **shall be brought**:
>
> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
>
> (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
>
> (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

Tex. Civ. Prac. & Rem. Code § 15.002 (emphasis added).

5. Here, venue is only proper in one county, Dallas County. Dallas County is the place where **all** events giving rise to Plaintiffs' claims against Defendants arise. As provided expressly in the Guaranties, the Guaranties were "executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas." *See* Guaranties ¶ 8.

6. Likewise, Dallas County is the only county in which Defendants reside (for natural person Timothy Barton) and have their principal place of business (entity JMJ). *See* Barton Declaration). As such, Dallas County is the only venue in which claims against Defendants arising from the Guaranties is appropriate.

7. Accordingly, venue in this Court is improper. Defendants file this Motion to Transfer Venue concurrently with or prior to the filing of Defendants' first responsive pleading or appearance in this case. Defendants respectfully request that the Court grant the Motion to Transfer Venue and sign an order transferring venue in the above-numbered and styled cause to a court of proper venue in Dallas County.

## GENERAL DENIAL[1]

1. Subject to and without waiving the foregoing, Defendants deny each and every allegation in Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction and First Amended Petition (and any amendments thereto, as well as in any other petitions and/or interventions filed by any parties) and enters this, their general denial, in accordance with Rule 92 of the Texas Rules of Civil Procedure. Defendants demand strict proof of all allegations made by Plaintiffs as required by law and reserves the right to amend or supplement this answer in accordance with the applicable procedural rules.

## AFFIRMATIVE DEFENSES[2]

To the extent required, Defendants hereby asserts the following additional and affirmative defenses:

1. Plaintiffs' claims are barred, in whole or in part, by waiver.

2. Plaintiffs' claims are barred, in whole or in part, by ratification.

3. Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, including equitable estoppel, promissory estoppel, and quasi-estoppel.

---

[1] This General Denial is subject to the Motion to Transfer Venue.

[2] These Affirmative Defenses are subject to the Motion to Transfer Venue.

4. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' prior material breach of the contract.

5. Plaintiffs' claims are barred, in whole or in part, by the doctrines of impossibility of performance and frustration of purpose

6. Plaintiffs' claims are barred, in whole or in part, by illegality.

7. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate its alleged damages.

8. Any recovery against Defendants are barred or limited under the principles of assumption of the risk and informed consent.

9. Plaintiffs' claim for attorneys' fees is improper because, amount other reasons, Plaintiffs are not entitled to recover attorneys' fees from Defendants under applicable law, including Chapter 38 of the Texas Civil Practice & Remedies Code.

10. Defendants reserve the right to assert additional defenses.

**REQUEST FOR DISCLOSURES**

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs are requested to disclose, within 30 days of service of this request, the information described in Rule 194.2.

Dated: June 18, 2020.

Respectfully submitted,

/s/ Robert F. Kemp
Robert F. Kemp
SBN 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
lawyerkemp@cs.com
**ATTORNEY FOR PLAINTIFF**

*Attorneys for Defendants JMJ Development, LLC and Timothy Barton*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the above pleading was served on all counsel of record via electronic mail on this 18th day of June 2020.

*/s/ Robert Kemp*
Robert Kemp

# EXHIBIT 1

**<u>Unsworn Declaration§ 132.001 Tex. Civ. Prac. & Rem. Code</u>**

"My name is Timothy Barton. My date of birth is August 17,1963 and my business address is 1755 Wittington Place, Suite 340 Dallas, Texas 75234 and my personal address is 3926 Vista Woods Carrollton, TX 75007. I am an authorized representative for JMJ Development, LLC ("***JMJ***"). I declare under the penalty of perjury that in my capacity as authorized representative for JMJ and on my own behalf, I have personal knowledge that facts stated in paragraphs 2, 3, 5, and 6 of JMJ Development, LLC and Timothy Barton's Motion to Transfer Venue and Original Answer Subject Thereto and that those facts are true and correct and are within my personal knowledge.

Executed in Dallas County, State of Texas, on this 16th day of June, 2020.

____________________________

Timothy Barton

# EXHIBIT 2

**GUARANTY**

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

# EXHIBIT 3

**GUARANTY**

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

# EXHIBIT 4

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and The Estate of Leland A. Hodges Jr. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT 5

# GUARANTY

WHEREAS , **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., Blackfoot Interest, Ltd. (Collectively the "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of September 16, 2019.

GUARANTOR

______________________________
Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § § § § § § § | **IN THE DISTRICT COURT** <br> **141ST DISTRICT COURT** |
| | § | |
| **v.** <br> **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § § § § | **TARRANT COUNTY, TEXAS** |

**ORDER DENYING MOTION TO TRANSFER VENUE**

On July 10, 2020, this Court heard JMJ Development, LLC and Tim Barton's Motion to Transfer Venue. After reviewing the documents on file and hearing arguments of counsel, this Court finds that the motion should be DENIED.

IT IS THEREFORE ORDERED that JMJ Development, LLC and Tim Barton's Motion to Transfer Venue is DENIED.

**SIGNED on July 10, 2020.**

**JUDGE PRESIDING**

FILED
TARRANT COUNTY
2020 JUL 10 AM 11:30
THOMAS A. WILDER
DISTRICT CLERK

E-MAILED
7-10-20 VO

EXHIBIT "B-11"

**From:** Victoria G. Olivo
**To:** dee.kelly@kellyhart.com; joakim.soederbaum@kellyhart.com; ebrandon@reedsmith.com; lawyerkemp@cs.com
**Subject:** 141-316567-20 Order Denying Motion to Transfer Venue & Order Granting Leave of Court
**Date:** Friday, July 10, 2020 2:41:00 PM
**Attachments:** 316567 Order Denying Mtn to Transfer Venue.pdf
316567 Order Granting Leave of Court.pdf
image001.png

---

Good Afternoon,

Please see the attached order signed by the court and call or email with any questions.

Thank you,

*Victoria Olivo*
141st Associate Clerk
100 N. Calhoun St
Fort Worth, Texas 76196
817-884-1198
vgolivo@tarrantcounty.com

TARRANT COUNTY
THOMAS A. WILDER
DISTRICT CLERK - CIVIL
100 N. CALHOUN ST., 2ND FLOOR
FORT WORTH, TEXAS 76196-0402

141ST

BANK OF AMERICA NA
B/S REG AGENT-C T CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS TX 75201-3136

FILED
TARRANT COUNTY
6/29/2020 1:58 PM
THOMAS A. WILDER
DISTRICT CLERK

141-316567-20

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED
TARRANT COUNTY
2020 JUL 10 AM 11:30
THOMAS A. WILDER
DISTRICT CLERK

**ORDER GRANTING LEAVE OF COURT**

During the hearing on June 29, 2020 attended by all parties to this case, the Court considered Plaintiffs' request for leave of Court under Texas Rule of Civil Procedure 87 to hear Defendant Tim Barton and JMJ Development, LLC's Motion to Transfer Venue (the "Motion") on less than 45 days notice. Based on the pleadings, papers, and arguments of counsel, the Court finds that good cause exists to grant Plaintiffs' request for leave and it therefore has scheduled the Motion to be heard on July 10, 2020 at 10:00 a.m.

It is therefore ORDERED, ADJUDGED, and DECREED that Plaintiffs' request for leave is hereby GRANTED; and

It is further ORDERED that good cause exists to hear the Defendants' Motion to Transfer Venue at 10:00 a.m. on July 10, 2020.

SIGNED this 10 day of July, 2020.

[signature]

The Honorable John P. Chupp, Judge Presiding

E-MAILED
7-10-20 VG

EXHIBIT "B-12"

TARRANT COUNTY
THOMAS A. WILDER
DISTRICT CLERK - CIVIL
100 N. CALHOUN ST., 2ND FLOOR
FORT WORTH, TEXAS 76196-0402

141ST

BANK OF AMERICA NA
B/S REG AGENT-C T CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS TX 75201-3136

141-316567-20

FILED
TARRANT COUNTY
7/23/2020 4:51 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW, L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. (the "**Estate**"), Tejas Group, Ltd. ("**Tejas Group**"), LAH III Family Specific Interest, Ltd. ("**LAH**"), and Blackfoot Interest, Ltd. ("**Blackfoot**") (all collectively, "**Plaintiffs**"), Plaintiffs in the above-entitled and numbered cause, and file this their *Motion for Summary Judgment* ("**Motion**") against Defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**") and respectfully show the Court as follows:

## I.
## INTRODUCTION

This lawsuit arises from Defendants' failure to honor their contractual commitments to Plaintiffs. The relevant facts are simple and undisputed. In September 2019, Plaintiffs advanced a loan totaling $4,000,000.00 to Defendant 2999TC as evidenced by two promissory notes. Defendants Barton and JMJ guaranteed payment under the notes. The undisputed summary judgment evidence demonstrates that (i) 2999TC breached the promissory notes by failing to

make the required interest-only payment due on March 16, 2020; (ii) the notes have been accelerated, making the entire $4,000,000.00 plus the accrued and unpaid interest immediately due and owing in full; and (iii) Barton and JMJ have breached their guaranties by failing to pay the amounts due and owing under the notes despite Plaintiffs' requests for payment.

Accordingly, Plaintiffs are entitled to summary judgment against Defendants on their claims for breach of the promissory notes and the guaranties, as well as on their claim for attorney's fees and costs of suit.

## II.
## Summary Judgment Evidence

In support of its Motion, Plaintiffs rely upon the pleadings and papers on file with the Court and the following evidence:

**Exhibit A:** Affidavit of L. Allen Hodges III

**Exhibit A-1:** Estate Note

**Exhibit A-2:** Company Note

**Exhibit A-3:** Barton Guaranty of Estate Note

**Exhibit A-4:** Barton Guaranty of Company Note

**Exhibit A-5:** JMJ Guaranty of Estate Note

**Exhibit A-6:** JMJ Guaranty of Company Note

**Exhibit A-7:** February 20, 2020, Notice of Call Election

**Exhibit A-8:** Barton Notice of Call Election Receipt

**Exhibit A-9:** March 27, 2020, Demand

**Exhibit A-10:** Notice of Acceleration

**Exhibit A-11:** June 24-25, 2020, Email String

**Exhibit B:** Affidavit of Dee J. Kelly, Jr.

## III.
## THE UNDISPUTED FACTS

### A. On or about September 16, 2019, Plaintiffs funded a $4,000,000.00 bridge loan to 2999TC with quarterly interest-only payments and a one-year maturity.

In September of 2019, Plaintiffs were contacted by a deal broker who was looking for investors on behalf of Barton to provide a bridge loan to close a real estate transaction.[1] Within about a week of Plaintiffs being approached about the bridge loan, on or about September 16, 2019, the loan closed and Plaintiffs loaned and delivered to 2999TC the total sum of $4,000,000.00 (the "**Loan**").[2]

The Loan is reflected by two promissory notes made and executed by Barton on behalf of 2999TC: one to the Estate for $1,000,000.00 (the "**Estate Note**") and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (the "**Company Note**") (the Estate Note and Company Note collectively, the "**Notes**").[3] Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually calculated on a 360-day year, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020.[4] Moreover, the Notes expressly give Plaintiffs the option to call the Notes, making all amounts owed under the Notes due in full sixty days after Plaintiffs giving notice they are exercising this option.[5]

---

[1] **Ex. A-1** (Hodges Aff.), at ¶ 4.

[2] ***Id.*** at ¶ 5.

[3] ***Id.***; **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note). Each Plaintiff advanced ¼ of the total Loan amount, or $1,000,000.00. *See* **Ex. A-1** (Hodges Aff.), at ¶ 5.

[4] **Ex. A-1** (Hodges Aff.), at ¶ 5; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

[5] **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

**B. Barton and JMJ unconditionally guaranteed all payments due under the notes made in connection with the loan.**

Barton, individually, and JMJ agreed to guarantee the Loan.[6] Barton and JMJ guaranteeing the Loan was a material condition to Plaintiffs agreeing to fund the Loan.[7] Accordingly, in connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes—one for each of the Notes in his individual capacity and one for each of the Notes on behalf of JMJ (the "**Guaranties**").[8]

**C. Plaintiffs exercised their right to call the loan due and owing in full.**

2999TC failed to timely make the first interest-only payment when it was due on December 16, 2019.[9] Ultimately, only after Plaintiffs made demand on 2999TC, Barton, and JMJ and threatened to accelerate the Loan did Plaintiffs receive the overdue interest payment on or about January 29, 2020.[10]

On or about February 20, 2020, the Plaintiffs notified 2999TC that they chose to exercise their option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later—on April 20, 2020 ("**Notice of Call Election**").[11] The very next day, on February 21, 2020, Plaintiffs met with

[6] **Ex. A-1** (Hodges Aff.), at ¶ 6; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

[7] **Ex. A-1** (Hodges Aff.), at ¶ 6.

[8] ***Id.***; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

[9] **Ex. A-1** (Hodges Aff.), at ¶ 7.

[10] ***Id.*** Notably, the late payment was not made by 2999TC, Barton, or JMJ; rather it was made by a separate entity named JMJ CMGR, LLC. *See id.*

[11] **Ex. A-1** (Hodges Aff.), at ¶ 8; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1; **Ex. A-7** (Notice of Call Election).

Barton.[12] During that meeting, Plaintiffs hand delivered a copy of the Notice of Call Election to Barton, who acknowledged receipt of the notice in writing.[13]

**D. After 2999TC failed to make the second interest-only payment and Defendants failed to cure the default upon Plaintiffs' written demand, Plaintiffs accelerated the notes effective on or about April 14, 2020.**

When the second interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed.[14] Accordingly, on March 27, 2020, Plaintiffs made a written demand on 2999TC, Barton, and JMJ that they make the overdue payment by April 6, 2020.[15] After 2999TC, Barton, and JMJ failed to cure the payment defaults as demanded in Plaintiffs' March 27, 2020, demand, on or about April 14, 2020, Plaintiffs accelerated the Loan and demanded payment in full from 2999TC, Barton, and JMJ of all amounts due and owing.[16]

**E. Defendants have not made any payments under the Loan since January of 2020.**

To date, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed and Plaintiffs have received no payment in connection with the Loan since the past-due December 2019 payment was made in late January of 2020, the Notes remain unpaid, and the principal balance is currently due and owing in full.[17] As further set forth in the Notes, interest accrues on the outstanding principal balance of the Loan at the rate of 18% per year (calculated on a 360-day year basis).[18] As of the date before this lawsuit was filed, April 21, 2020, the total amount owed under the Loan was $4,250,000.00, consisting of the original Loan balance of $4,000,000.00 and

---

[12] **Ex. A-1** (Hodges Aff.), at ¶ 8.

[13] ***Id.***; **Ex. A-8** (Barton Notice of Call Election Receipt).

[14] **Ex. A-1** (Hodges Aff.), at ¶ 9.

[15] ***Id.***; **Ex. A-9** (March 27, 2020, Demand).

[16] **Ex. A-1** (Hodges Aff.), at ¶ 10; **Ex. A-10** (Notice of Acceleration).

[17] **Ex. A-1** (Hodges Aff.), at ¶ 11.

[18] ***Id.*** at ¶ 12; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

$250,000.00 in accrued interest.[19] Interest continues to accrue at the annual rate of 18% calculated on a 360-day basis on the outstanding principal balance of the Loan.[20]

Plaintiffs are the sole owners and holders of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.[21] Plaintiffs are presently in possession of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.[22] Accordingly, Plaintiffs filed this lawsuit asserting claims against 2999TC for breach of the Notes and against Barton and JMJ for breach of the Guaranties. Because Barton has expressly admitted that the money is due and owing and the undisputed facts set forth herein establish Plaintiffs' claims against Defendants as a matter of law, Plaintiffs are entitled to summary judgment on their claims against Defendants.[23]

## IV.
## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the evidence establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of a claimant's cause of action. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 443 (Tex. 1982). A movant who conclusively establishes all essential elements of his claim is entitled to a summary judgment. *MMP, Ltd. v. Jones*, 701 S.W.2d 59, 60 (Tex. 1986) (citing *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)).

---

[19] **Ex. A-1** (Hodges Aff.), at ¶ 13.

[20] ***Id.*** at ¶ 14.

[21] ***Id.*** at ¶ 15.

[22] ***Id.*** at ¶ 16.

[23] *See* **Ex. A-11** (June 24-25, 2020, Email String).

## V.
## ARGUMENT & AUTHORITIES

### A. Plaintiffs are entitled to summary judgment on their claim for breach of the promissory notes against 2999TC.

To be entitled to summary judgment on their claim against 2999TC for breach of the Notes, Plaintiffs do not need to prove all the elements for breach of contract. *See, e.g.*, *Rey v. Lara*, No. 02-11-00002-CV, 2011 WL 6260871, at *2-4 (Tex. App.—Fort Worth Dec. 15, 2011, no pet.) (mem. op.) (citing *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 505 (Tex. App.—El Paso 2010, no pet.). Rather, Plaintiffs must establish only that: (1) the Notes exist; (2) Plaintiffs are the legal owners and holders of the Notes; (3) 2999TC is the maker of the Notes; and (4) a certain balance is due and owing on the Notes. *See, e.g.*, *Commercial Servs. of Perry v. Wooldridge*, 968 S.W.2d 560, 564 (Tex. App.—Fort Worth 1998, no pet.); *Rey*, 2011 WL 6260871, at *2-4; *Energico Prod., Inc. v. Frost Nat'l Bank*, No. 02-11-148-CV, 2012 WL 254093, *5 (Tex. App.—Fort Worth Jan. 26, 2012, pet. denied) (mem. op.); *Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 520 (Tex. App.—Dallas 2011, pet. denied); *Rockwall Commons Assocs.*, 331 S.W.3d at 505. Because the summary judgment evidence conclusively establishes each of these elements, Plaintiffs are entitled to summary judgment on their claim against 2999TC for breach of the Notes.

#### 1. The summary judgment evidence conclusively establishes the existence of the Notes.

"A photocopy of a promissory note, attached to an affidavit in which the affiant swears that the photocopy is a true and correct copy of the original note, is proper summary judgment proof which establishes the existence of the note." *Wheeler v. Sec. State Bank, N.A.*, 159 S.W.3d 754, 757 (Tex. App.—Texarkana 2005, no pet.); *see also Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 216 (Tex. App.—Dallas 2015, no pet.).

Plaintiffs have attached true and correct photocopies of the original Notes.[24] Accordingly, Plaintiffs have satisfied the first element of its claim for breach of the Notes as a matter of law. *See Wheeler*, 159 S.W.3d at 757; *Compass Bank*, 460 S.W.3d at 216.

**2. The summary judgment evidence conclusively establishes that Plaintiffs are the legal owners and holders of the Notes.**

A movant may satisfy the second element by attaching a sworn affidavit to its motion for summary judgment stating that it is the owner and holder of the note. *See Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983) (holding that photocopy of note, together with affidavit stating that copy was "true and correct" copy of original, was sufficient to show status as owner and holder of note in summary judgment); *Compass Bank*, 460 S.W.3d at 214 (same); *see also Ecurie Cerveza Racing Team, Inc. v. Texas Commerce Bank-Se.*, 633 S.W.2d 574, 575 (Tex. App.—Houston [14th Dist.] 1982, no writ) (holding that a sworn affidavit stating that movant was "owner and holder of each of the promissory notes" and was "presently in possession of the notes" was sufficient to establish that ownership and possession). Likewise, a movant may establish ownership and possession of a note through sworn testimony that the defendant executed and delivered the promissory note to the movant. *See Wheeler*, 159 S.W.3d at 757.

The Notes themselves clearly identify Plaintiffs as the lenders of the $3,000,000.00 and $1,000,000.00 loans, respectively.[25] Moreover, Plaintiffs' status as the sole owners and holders of the Notes for these loans is confirmed by the following undisputed evidence: (a) 2999TC "executed and delivered" the Notes to Plaintiffs; (b) Plaintiffs are the sole owners and holders of the Notes; and (c) Plaintiffs are presently in possession of the Notes.[26] Accordingly, Plaintiffs have satisfied the second element of their claim against 2999TC for breach of the Notes as a

---

[24] *See* **Ex. A** (Hodges Aff.), at ¶ 5; **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note).

[25] **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note).

[26] *See* **Ex. A** (Hodges Aff.), at ¶¶ 5, 15-16.

matter of law. *See Zarges*, 652 S.W.2d at 369; *Compass Bank*, 460 S.W.3d at 214; *Texas Commerce Bank-Se*., 633 S.W.2d at 575; *Wheeler*, 159 S.W.3d at 757.

**3. The summary judgment evidence conclusively establishes that 2999TC is the maker of the Notes.**

"[T]o prove that the defendant is the maker of the note, the plaintiff must present summary judgment evidence indicating that the defendant's signature appears on the note or that a representative of the defendant signed the note on the defendant's behalf." *Wheeler*, 159 S.W.3d at 757–58. Further, if the defendant did not deny the authenticity of the signature by verified answer, it is deemed fully proven that the defendant signed the notes. *See id.* (citing Tex. R. Civ. P. 93(7)).

It is undisputed that Barton signed the Notes dated September 16, 2019, for $3,000,000.00 and $1,000,000.00, respectively, on behalf of 2999TC.[27] 2999TC signed the Notes, promising timely payment to Plaintiffs of the principal balance plus interest accrued thereon and Plaintiffs reasonable costs and expenses, including attorney's fees, which may be incurred in enforcing or protecting Plaintiffs' rights or interests.[28] Accordingly, the third element of Plaintiffs' claim for breach of the Notes has been proven as a matter of law. *See Wheeler*, 159 S.W.3d at 757–58 (citing Tex. R. Civ. P. 93(7)).

**4. The summary judgment evidence conclusively establishes that an unpaid balance is due and owing on the Notes.**

Unambiguous language is construed as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). "[A]n affidavit, based on personal knowledge, which identifies an attached copy of the actual note as being true and correct, the amount of the principal and interest owing on the date of default, and the interest rate accruing from the date of default is considered

[27] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A** (Hodges Aff.), at ¶ 8.

[28] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A** (Hodges Aff.), at ¶¶ 5, 8.

sufficient proof of the amount owing on the note." *Gooden v. First Nat'l Bank*, No. 04-10-00023-CV, 2010 WL 3582391, at *1 (Tex. App.—San Antonio Sept. 15, 2010, no pet.); *see also Wheeler*, 159 S.W.3d at 758 (holding summary judgment proof sufficient where affidavit stated outstanding balance due and per diem amount at which interest continued to accrue); *Loomis v. Rep. Nat'l Bank of Dall.*, 653 S.W.2d 75, 78 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (same).

Pursuant to the unambiguous terms of the Notes, 2999TC promised to pay to Plaintiffs four quarterly interest-only payments at 18% (calculated on a 360-day year) and the principal balance of $4,000,000.00 on the anniversary of the Notes.[29] In the event of default, the Notes stipulate that Plaintiffs may accelerate the Loan and make the entire outstanding principal immediately due and owing in full.[30] Plaintiffs accelerated the Notes on or about April 14, 2020.[31]

The evidence conclusively establishes that 2999TC defaulted under the Notes by failing to make the March 16, 2020, payment.[32] Since January 29, 2020, Plaintiffs have received no payments whatsoever in connection with the Loan despite Plaintiffs' written demands.[33] As of April 21, 2020, the total amount owed under the Notes, including interest at the agreed-upon rate of 18% annual rate of 18% based on a 360-day year (but excluding costs and expenses, including attorney's fees, incurred by Plaintiffs in connection with their efforts to protect their rights and interests in connection with the Loan), totaled $4,250,000.00, with interest continuing to accrue

[29] *See* **Ex. A** (Hodges Aff.), at ¶ 5; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

[30] **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

[31] **Ex. A** (Hodges Aff.), at ¶ 10; **Ex. A-10** (Notice of Acceleration). Moreover, already on or about February 20, 2020, Plaintiffs exercised their right to call the Notes in full effective April 20, 2020. *See* **Ex. A-1** (Hodges Aff.), at ¶ 8; **Ex. A-8** (Notice of Call Election).

[32] **Ex. A** (Hodges Aff.), at ¶ 10.

[33] **Ex. A** (Hodges Aff.), at ¶ 11; **Ex. A-9** (March 27, 2020, Demand); **Ex. A-10** (Notice of Acceleration).

at the agreed-upon rate.[34] In addition, Barton has admitted that the money is owed to Plaintiffs.[35] In other words, the incontrovertible evidence demonstrates as a matter of law that an unpaid balance of $4,250,000.00 (plus pre- and post-judgment interest, costs, and fees) is due and owing on the Notes.[36] *See*, *e.g.*, *Gooden*, at *1; *Wheeler*, 159 S.W.3d at 758; *Loomis*, 653 S.W.2d at 78.

Accordingly, also the fourth and final element of Plaintiffs' claim for breach of the Notes has been proven as a matter of law and Plaintiffs, therefore, are entitled to summary judgment on their claim for 2999TC's breach of the Notes.

### B. Plaintiffs are entitled to summary judgment on their claim for breach of the guaranties against JMJ and Barton.

A guaranty agreement is a person's promise to perform the same act that another person is contractually bound to perform. *Shin v. Sharif*, No. 2-08-347-CV, 2009 WL 1565028, at *2 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.). A guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of the primary obligor if the primary obligor fails to perform. *Id.* To be entitled to summary judgment on their claim against JMJ and Barton for breach of the Guaranties, Plaintiffs must establish only: (1) the existence and ownership of the Guaranties; (2) the terms of the underlying contract; (3) the occurrence of the conditions upon which liability is based; and (4) JMJ's and Barton's failure to perform the obligations required by their Guaranties. *See*, *e.g.*, *Shin*, 2009 WL 1565028, at *2; *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ); *Escalante v. Luckie*, 77 S.W.3d 410, 416 (Tex. App.—Eastland 2002, pet. denied). Because the summary judgment evidence conclusively establishes each of these elements, Plaintiffs are entitled to summary judgment on their claim against JMJ and Barton for breach of the Guaranties.

---

[34] **Ex. A** (Hodges Aff.), at ¶ 13.

[35] *See* **Ex. A-11** (June 24-25, 2020, Email String).

[36] See **Ex. A** (Hodges Aff.), at ¶¶ 11, 13; **Ex. A-11** (June 24-25, 2020, Email String).

**1. The summary judgment evidence conclusively establishes the existence and Plaintiffs' ownership of the Guaranties.**

The existence and ownership of a guaranty may be established by proof that the plaintiff is the named obligee, that plaintiff had possession of the note and produced it in court, and that the court admitted it into evidence. *See, e.g.*, *Corley v. Am. Well Ctrl., Inc.*, No. 09–11–00147–CV, 2012 WL 4466361, at *6 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.) *Escalante v. Luckie*, 77 S.W.3d 410, 416 (Tex. App.—Eastland 2002, pet. denied); *see also Just Fondue It, L.L.C. v. Comerica Bank*, No. 03-18-00066-CV, 2019 WL 1372018, at *2 (Tex. App.—Austin Mar. 27, 2019, no pet.) (mem. op.) (noting that a plaintiff can establish that it is owner and holder of a guaranty by providing true and correct copies and testimony) (citing *Garza v. Evans*, No. 01-11-00666-CV, 2012 WL 1893731, at *8 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op.) ("Evans testified that he received the original of the guaranty, he was the owner and holder of the guaranty, and the copy he produced at trial was a true and accurate copy of the original. This testimony was sufficient to prove his status as the legal owner and holder of the guaranty.")).

It is undisputed that Plaintiffs are the owners and holders of the Guaranties that JMJ and Barton executed as a material condition precedent to Plaintiffs extending the Loan to 2999TC.[37] Plaintiffs have attached true and correct photocopies of the original Guaranties, of which Plaintiffs are the owners and holders and in possession.[38] Accordingly, Plaintiffs have conclusively established the first element of its claim for breach of the Guaranties as a matter of law. *See, e.g.*, *Corley*, 2012 WL 4466361, at *6; *Escalante*, 77 S.W.3d at 416; *Just Fondue It*, WL 1372018, at *2; *Garza*, 2012 WL 1893731, at *8.

[37] **Ex. A** (Hodges Aff.), at ¶¶ 6. 15-16; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

[38] **Ex. A** (Hodges Aff.), at ¶¶ 6. 15-16; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

**2. The unambiguous terms of the Guaranties state that JMJ and Barton are absolute and unconditional guarantors and are jointly and severally liable for all payments due and owing under the Notes.**

There are two types of guaranties: payment (or unconditional) guaranties and collection (or conditional) guaranties. *423 Colony, Ltd. v. Independent Executors of Estate of Kern*, No. 02-18-00032-CV, 2019 WL 2223579, at *2 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (mem. op.). The primary difference is whether the guaranty requires the creditor to pursue the principal debtor before it pursues the guarantor for collection of the debt. *Id.* A guaranty of payment does not require the creditor to pursue the principal debtor before pursuing the guarantor. *Id.* The interpretation of guaranties, like other written contracts, is a question of law. *See, e.g.*, *Jamshed v. McLane Exp. Inc.*, 449 S.W.3d 871, 877 (Tex. App.—El Paso 2014, no pet.) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000)).

Here, the Guaranties make clear that JMJ and Barton "guarantee to [Plaintiffs] the prompt payment when due, and at all times thereafter, of [all amounts owing by 2999TC under the Notes."[39] The Guaranties further state: "Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to [Plaintiffs]. It shall not be necessary for [Plaintiffs], in order to enforce such payment by Guarantor, first to institute suit or exhaust [their] remedies against [2999TC] or any other person liable of the Guaranteed Indebtedness . . . ."[40] Moreover, the Notes outline 2999TC's (and by extension, Barton's and JMJ's) payment obligations under the Notes.[41] In other words, it is undisputed that Barton and JMJ unconditionally guaranteed payment of all amounts due and owing under the Notes. *See 423 Colony, Ltd. v.*, 2019 WL 2223579, at *2; *Jamshed*, 449 S.W.3d

[39] **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[40] **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[41] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note).

at 877. Accordingly, Plaintiffs have conclusively established the second element of its claim for breach of the Guaranties as a matter of law.

**3. 2999TC's failure to pay as agreed under the Notes triggered JMJ's and Barton's liability.**

It is undisputed that Plaintiffs performed under the Notes and the Guaranties by advancing the $4,000,000.00 to 2999TC.[42] It is further undisputed that 2999TC defaulted under the Notes by failing to make the March 16, 2020, interest-only payment to Plaintiffs as agreed.[43] It is also undisputed that the Notes were accelerated, making the entire $4,000,000.00 principal balance plus accrued interest immediately due and owing to Plaintiffs, thereby triggering Barton's and JMJ's liability to pay to Plaintiffs all outstanding principal and accrued interest.[44] *See 423 Colony, Ltd. v.*, 2019 WL 2223579, at *2; *Jamshed*, 449 S.W.3d at 877. In other words, Plaintiffs have conclusively established the third element of its claim for breach of the Guaranties as a matter of law.

**4. The summary judgment evidence conclusively establishes that JMJ and Barton have failed and/or refused to perform their obligations under the Guaranties.**

It is undisputed that Barton and JMJ have failed and/or refused to perform their obligations under the Guaranties.[45] Specifically, Plaintiffs have not received any payment in connection with the Loan from 2999TC, Barton, JMJ, or any other person or entity except for the late December 2019 interest-only payment made in January of 2020, leaving the entire principal balance of $4,000,000.00 plus all interest accrued on or after December 17, 2019 immediately

---

[42] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A** (Hodges Aff.), at ¶ 5; **Ex. A-11** (June 24-25, 2020, Email String).

[43] *See, e.g.*, **Ex. A** (Hodges Aff.), at ¶¶ 9-12.

[44] ***Id.*** at ¶¶ 10-11; **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[45] **Ex. A** (Hodges Aff.), at ¶¶ 9-12; **Ex. A-11** (June 24-25, 2020, Email String).

due and owing despite Barton's and JMJ's obligations under the Guaranties to pay such amounts to Plaintiffs.[46] Further, Barton recently expressly admitted that he owes the money to Plaintiffs.[47] In other words, Plaintiffs have conclusively established the fourth element of its claim for breach of the Guaranties as a matter of law. *See Shin*, 2009 WL 1565028, at *3 (holding plaintiff entitled to summary judgment on claim for breach of guaranty based on affidavit testimony that he had not received a single payment under the notes or guaranty, and that he has suffered damages in the amount of $200,000 under the first promissory note and of $1.7 million under the second promissory note).

### C. Plaintiffs are entitled to an award of their reasonable and necessary attorney's fees and their costs.

Texas Civil Practice and Remedies Code Section 38.001 allows a party to recover its reasonable attorney's fees when the party prevails on a breach of a contract claim. TEX. CIV. PRAC. & REM. CODE § 38.001(8); *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 2 (Tex. 2000). Moreover, the Notes require that 2999TC pay all of Plaintiffs' costs and expenses, including attorney's fees and legal expenses, incurred in enforcing and/or protecting Plaintiffs' rights or interests.[48] Similarly, in addition to the Guaranties requiring Barton and JMJ to pay all amounts that become due and owing under the Notes (without exception for legal fees), the Guaranties require that, in the event they fail to perform their obligations under the Guaranties, Barton and JMJ pay all of Plaintiffs' reasonable costs of enforcement, including but

[46] **Ex. A** (Hodges Aff.), at ¶¶ 7, 11-14; **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[47] *See* **Ex. A-11** (June 24-25, 2020, Email String).

[48] **Ex. A-1** (Estate Note), at p. 2; **Ex. A-2** (Company Note), at p. 2.

not limited to attorney's fees.[49] In fact, Barton recently expressly acknowledged he is obligated to pay Plaintiffs' fees.[50]

It is undisputed that, through July 20, 2020, Motion, Plaintiffs have incurred $124,757.00 in reasonable and necessary attorney's fees and expenses in connection with the protection of their rights and interests relating to the Loan, including the litigation of their claims against Defendants in this lawsuit.[51] In addition, Plaintiffs will incur additional attorney's fees in the event of an appeal.[52] Crediting a payment of $12,795.00 by Defendants toward Plaintiffs' fees, Plaintiffs are therefore entitled to recover its remaining reasonable and necessary attorney's fees and expenses in the amount of $111,962.00, plus its reasonable and necessary attorney's fees in the event of an appeal, as follows: (a) at least $20,000.00 to respond to an appeal to the Second Court of Appeals of Texas and to prepare for and present oral argument; (b) at least $10,000.00 to respond to or file a petition for review with the Texas Supreme Court; and (c) at least $20,000.00 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument.[53]

## VI.
## PRAYER

For the foregoing reasons, Plaintiffs pray that the Court grant Plaintiffs' Motion for Summary Judgment in its entirety and enter a final judgment disposing of all claims and parties, awarding Plaintiffs the following relief against Defendants, jointly and severally:

(a) Actual damages in the amount of $4,250,000.00 as of April 21, 2020;

---

[49] **Ex. A-3** (Barton Guaranty of Estate Note), at p. 3; **Ex. A-4** (Barton Guaranty of Company Note), at p. 3; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 3; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 3.

[50] *See* **Ex. A-11** (June 24-25, 2020, Email String).

[51] **Ex. B** (Kelly Aff.), ¶¶ 2–4, 10-12.

[52] **Ex. B** (Kelly Aff.), ¶¶ 5, 11.

[53] ***Id.*** at ¶¶ 2–5, 10-12

(b) Prejudgment interest on the outstanding $4,000,000.00 principal balance at the contractually agreed-upon rate of 18% calculated on a 360-day-year basis beginning on April 22, 2020 and continuing until the day before the final judgment is signed;

(c) Post-judgment interest on the above amounts at the contractually agreed-upon rate of 18% calculated on a 360-day-year basis from the date the final judgment is entered until such judgment is paid in full;

(d) Attorney's fees and expenses in the amount of $111,962.00, with post-judgment interest thereon at the annual rate of 5% from the date of the final judgment until such fees are paid in full;

(e) Conditional appellate attorney's fees as follows:

  i. at least $20,000.00 to respond to an appeal to the Second Court of Appeals of Texas (or any transferee court assigned to hear the appeal by the Texas Supreme Court) and to prepare for and present oral argument;

  ii. at least $10,000.00 to respond to or file a petition for review with the Texas Supreme Court;

  iii. at least $20,000.00 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument; and

  iv. post-judgment interest on the conditional appellate attorney's fees at the annual rate of 5% from the date of each such respective final appellate adjudication until such fees are paid in full;

(f) Costs of suit; and

(g) Such other and further relief to which Plaintiffs may be justly entitled, whether at law or in equity.

Respectfully submitted,

***_/s/ Joakim G. Soederbaum______***

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2020, a true and correct copy of the foregoing document was served electronically upon all counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT**
**2999TC LP, LLC**

Robert F. Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
lawyerkemp@cs.com
**ATTORNEY FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum

# EXHIBIT A

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**<u>AFFIDAVIT OF L. ALLEN HODGES III</u>**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned authority, personally appeared L. Allen Hodges III who, being by me duly sworn, deposed as follows:

1. "My name is L. Allen Hodges III. I am over twenty-one (21) years of age, of sound mind, and have never been convicted of a felony. I am fully competent to testify to, and have personal knowledge of, the facts stated within this affidavit, and every statement of fact contained herein is true and correct.

2. "I am one of two duly qualified and acting independent executors for the Estate of Leland A. Hodges Jr. (the '**Estate**'), appointed under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1. I am also the managing member of North Texas Investments,

LLC (‘**NTI**’), which is the general partner of Tejas Group, Ltd. (‘**Tejas Group’**), a Texas limited partnership; LAH III Family Specific Interest, Ltd. (‘**LAH’**), a Texas limited partnership; and Blackfoot Interest, Ltd. (‘**Blackfoot’**), a Texas limited partnership (the Estate, Tejas Group, LAH, and Blackfoot collectively, the ‘**Plaintiffs**’).

3. “I obtained personal knowledge of the facts stated herein by and through, among other things, my duties as an independent executor for the Estate and as the managing member of NTI, including but not limited to managing the Plaintiffs’ financial affairs and investments on a continuing basis; my personal involvement with the loan Plaintiffs made to 2999TC LP, LLC (‘**2999TC**’), and my review of the documents executed in connection with that loan. I have reviewed Plaintiffs’ Motion for Summary Judgment (the ‘**Motion**’), and the exhibits attached thereto.

4. “Tejas Group, LAH, and Blackfoot are investment holding companies. In September of 2019, I was contacted by a deal broker named Jared Sturdivant (‘**Sturdivant’**), who informed me he was looking for investors on behalf of Tim Barton (‘**Barton**’) to provide a bridge loan to close a real estate transaction.

5. “Within about a week of me first being approached about the bridge loan, on or about September 16, 2019, the loan closed and Plaintiffs loaned and delivered to 2999TC the total sum of $4,000,000.00 (the ‘**Loan**’). The Loan is reflected by two promissory notes made, executed, and delivered by Barton on behalf of 2999TC: one to the Estate for $1,000,000.00 (the ‘**Estate Note**’) and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (the ‘**Company Note**’) (the Estate Note and Company Note collectively, the ‘**Notes**’). True and correct copies of the Notes along with their corresponding subsequent amendments are attached as **Exhibit A-1** and **Exhibit A-2**, respectively, to the Motion and incorporated herein fully by reference. Each of the Plaintiffs advanced one fourth of the total Loan amount. Pursuant to the

terms of the Notes, the Loan accrues interest at the rate of 18% annually calculated on a 360-day year, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020.

6. "Barton, individually, and JMJ Development, LLC ('**JMJ'**) agreed to guarantee the Loan. These guaranties were a material condition to Plaintiffs agreeing to fund the Loan. In connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes (the '**Guaranties**'). True and correct copies of the Guaranties are attached as **Exhibits A-3** through **Exhibit A-6**, respectively, to the Motion and incorporated herein fully by reference.

7. "2999TC failed to pay the first interest-only payment in the amount of $180,000.00 when due on December 16, 2019. Ultimately, only after Plaintiffs made demand on 2999TC, Barton, and JMJ and threatened to accelerate the Loan did Plaintiffs receive the overdue interest-only payment on or about January 29, 2020. The payment was made by an entity named JMJ CMGR, LLC.

8. "On or about February 20, 2020, the Plaintiffs notified 2999TC that they chose to exercise their option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later—on April 20, 2020 ('**Notice of Call Election**'). A true and correct copy of the February 20, 2020, Notice of Call Election is attached as **Exhibit A-7** to the Motion and incorporated herein fully by reference. The very next day, on February 21, 2020, I met with Barton, Andrew Crum, and Judson Sturdivant, Jared Sturdivant's brother who also was involved in the transaction as a broker, in Dallas. During that meeting, I hand delivered a copy of the Notice of Call Election to Barton, who acknowledged receiving the notice by signing a receipt. I witnessed Barton sign the

receipt, and his signature on the receipt matches the signature on the Notes and the Guaranties. A true and correct copy of Barton's signed confirmation of his receipt of the Notice of Call Election is attached as **Exhibit A-8** to the Motion and incorporated herein fully by reference.

9. "When the second quarterly interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. Accordingly, on March 27, 2020, Plaintiffs made a written demand on 2999TC, Barton, and JMJ that they make the overdue payment by April 6, 2020. A true and correct copy of Plaintiffs' March 27, 2020, demand is attached as **Exhibit A-9** to the Motion and incorporated herein fully by reference.

10. "After 2999TC, Barton, and JMJ failed to cure the payment defaults as demanded in Plaintiffs' March 27, 2020, demand, on or about April 14, 2020, Plaintiffs accelerated the Loan and demanded payment in full from 2999TC, Barton, and JMJ of all amounts due and owing. A true and correct copy of the Notice of Acceleration is attached as **Exhibit A-10** to the Motion and incorporated herein fully by reference.

11. "To date, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed; Plaintiffs have received no payment in connection with the Loan since the December 2019 payment was made in late January of 2020; the Notes remain unpaid; the Loan remains accelerated; and the $4,000,000.00 principal balance is currently due and owing in full along with all interest accrued after December 16, 2019.

12. "As set forth in the Notes, interest accrues on the outstanding principal balance of the Loan at the rate of 18% per year calculated on a 360-day-year basis. I have calculated the amounts due and owing under the Loan as of April 21, 2020. In doing so, I reviewed and relied upon the language of the Notes and any payments received by Plaintiffs in connection with the Loan. My interest calculations include both the first and last day of the indicated time period.

13. "Applying the 18% annual interest rate calculated on a 360-day-year basis, interest accrues at the rate of $2,000.00 per day: ($4,000,000.00 x 0.18) / 360 = $2,000.00. Based on the currently outstanding principal balance and a 360-day year, each quarter consists of 90 days and each quarterly interest payment due amounts to $180,000.00: $2,000.00 x 90 = $180,000.00. As of April 21, 2020, the total amount owed under the Loan was $4,250,000.00, consisting of the original Loan balance of $4,000,000.00 and $250,000.00 in interest accrued for the period beginning on December 17, 2019, and ending on April 21, 2020. The $250,000.00 in interest accrued as of April 21, 2020, consists of the $180,000.00 second quarterly payment due on March 16, 2020, and $70,000.00 for the period March 17, 2020, through April 21, 2020. The $70,000.00 partial third quarterly payment was calculated by taking the number of days from March 17, 2020, through March 30, 2020 (14), add the number of days from April 1 through April 21, 2020 (21), which adds up to a total of 35, and multiplying that number of days (35) by the daily interest rate ($2,000.00): 35 days x $2,000.00 = $70,000.00. These calculations intentionally omit the day of March 31, as including March 31 would make the quarter exceed 90 days (and thereby, the year would exceed 360 days). These calculations take into account and fully credit the fact that Plaintiffs ultimately received payment of the interest accrued for the first quarterly period beginning on September 17, 2019, and ending on December 16, 2019.

14. "Pursuant to the terms of the Notes, interest continues to accrue on the outstanding principal balance of the Loan after April 21, 2020, at the 18% annual interest rate calculated on a 360-day-yearly and 90-day-quarterly basis for as long as a principal balance remains outstanding and owing in connection with the Loan.

15. "Plaintiffs are the sole owners and holders of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

16. "Plaintiffs are presently in possession of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

17. "On or about June 24 and June 25, 2020, Barton initiated, and he and I exchanged, a string of emails regarding the money owed to Plaintiffs. A true and correct copy of that email string is attached as **Exhibit A-11** to the Motion and incorporated herein fully by reference.

18. "The records kept by Plaintiffs relating to the Notes were made and kept in the ordinary course of Plaintiffs' business; it is the regular practice of Plaintiffs to make and keep such records; such records were made on or about the time of the recorded transactions; such records were made by a person with knowledge of the information recorded who was acting in the regular course of Plaintiffs' business; and I am presently the custodian of such records, which include Exhibits 'A-1' through 'A-11' to Plaintiffs' Motion. Such exhibits are true and correct copies of the instruments and documents that are in Plaintiffs' files and are incorporated herein by reference.

"FURTHER AFFIANT SAYETH NOT."

L. Allen Hodges III

SUBSCRIBED AND SWORN to before me, the undersigned notary, on the 21 day of July, 2020.

TARA LEE EDLAND
NOTARY PUBLIC
STATE OF TEXAS
ID# 128204469
EXPIRES 3-11-2022

Tara Lee Edland
Notary in and for the State of Texas

# EXHIBIT A-1

# PROMISSORY NOTE

$1,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, ("**Maker**") promises to pay to **The Estate of Leland A. Hodges Jr.** ("**Lender**"), or order, the stated principal sum of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**"), unless sooner called by Lender as set forth below.

3. This note is related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**").

4. This Note shall not be prepayable. Beginning on December 15, 2019, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive,

collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ____________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **THE ESTATE OF LELAND A. HODGES JR.** ("Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $1,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS FIRST AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the First Amendment Effective Date.

**MAKER:**

**2999TC LP, LLC,**
a Delaware limited liability company

By: ____________________
Name: Tim Barton
Its: President

**LENDER:**

**THE ESTATE OF LELAND A. HODGES JR.**

By: ____________________
Name: L. Allen Hodges III
Title: Executor

# EXHIBIT A-2

# PROMISSORY NOTE

$3,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, (“**Maker**”) promises to pay ratably to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively the “**Lender**”), or order, the stated principal sum of Three Million Dollars and 00/100 Dollars ($3,000,000.00) (“**Principal**”), advanced to Maker as of the date hereof plus interest (the “**Loan**”) in accordance with the terms of this promissory note (the “**Note**”). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the “**Interest Rate**”) from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the “**Maturity Date**”), unless sooner called by Lender as set forth below.

3. Notwithstanding the foregoing, the Lender shall have the option to convert the outstanding principal balance and any accrued but unpaid interest into a capital contribution for the purchase of membership interests in the Maker, (the “**Option**”) as further defined in the Membership Interest Option Purchase Agreement (“**Option Agreement**”) executed by and between Maker and Lender related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas (“**Property**”) and development of a luxury hotel and residences mixed use project on such property (“**Project**”). Upon the Lender exercising the Option, the Principal and all related interest, costs, fees, and any other amounts whether due or not yet due related to this Note shall be deemed paid in full and all current and remaining obligations of the Maker and any guarantor shall automatically terminate.

4. This Note shall not be prepayable. Beginning on February 16, 2020, Lender, at Lender’s option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following “**Events of Default**” occur, the balance of all principal and interest under this Note shall, at the Lender’s option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an “**Other Obligated Party**”) fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD.**, and **BLACKFOOT INTEREST, LTD.** (collectively "Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $3,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS FIRST AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the First Amendment Effective Date.

**MAKER:**

**2999TC LP, LLC,**
a Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

**LENDER:**

**TEJAS GROUP, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

**LAH III FAMILY SPECIFIC INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

**BLACKFOOT INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

# EXHIBIT A-3

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT A-4

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and The Estate of Leland A. Hodges Jr. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



Initials

## Exhibit A

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT A-5

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



Initials

# EXHIBIT A-6

**GUARANTY**

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



Initials

# EXHIBIT A-7

File

**L. Allen Hodges III**
**306 W. 7th Street, Suite 701**
**Fort Worth, Texas 76102**

February 20, 2020

2999TC LP, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Re: ***Notice of Call Election*** — 2999TC LP, LLC's (the "**Borrower**") September 16, 2019, loan from The Estate of Leland A. Hodges, Jr. in the amount of $1,000,000.00 (the "**$1M Loan**") and September 16, 2019, loan from Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. in the amount of $3,000,000.00 (the "**$3M Loan**") (both loans collectively, the "**Loans**").

Dear Mr. Barton:

This notice is given on behalf of each of The Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, the "**Lenders**") in connection with the Loans. This letter constitutes formal notice to the Borrower that, in accordance with the notes evidencing the Loans (the "**Notes**"), Lender has elected to exercise its option to call all amounts due under each of the Notes. As a result of such election, the full principal amount of the Notes and all interest accrued to the time of repayment shall be due and payable on April 20, 2020 (the "**Call Date**"), which is the date that is sixty (60) days from the date of this notice.

As you know, the next quarterly installment of interest is due on March 16, 2020 in the amount of **$180,000.00**. If the quarterly interest payment is made when due, the total amount due on the Call Date will be **$4,070,000.00**, which represents the full principal amount of the Notes plus interest accrued from the March 16, 2020 payment date to the Call Date.

To make arrangements for payment or if you wish to discuss repaying the Notes prior to the Call Date, please contact Allen Hodges at (817) 877-4646.

Please be advised that this letter does not constitute a waiver of any defaults that exists with respect to the Notes, notice of which has previously been given to the Borrower on behalf of the Lenders.

Sincerely,

**$3M Loan Lenders**

**Tejas Group, Ltd.**

By: North Texas Investments, L.L.C.

By: ______________________________
Name: L. Allen Hodges III
Title: Manager

**LAH III Family Specific Interest, Ltd.**

By: North Texas Investments, L.L.C.

By: ______________________________
Name: L. Allen Hodges III
Title: Manager

**Blackfoot Interest, Ltd.**

By: North Texas Investments, L.L.C.

By: ______________________________
Name: L. Allen Hodges III
Title: Manager

**$1M Loan Lender**

**The Estate of Leland A. Hodges Jr.**

By: ______________________________
Name: L. Allen Hodges III
Title: Executor

cc: Mark Adams, JMJ Development, LLC
(*via email: madams@jmjdevelopment.net*)

# EXHIBIT A-8

# Receipt of "Notice of Call Election" Letter

February 21, 2020

Tim Barton
Re: Notice of Call Election

I, Tim Barton, do hereby agree that I have received by hand delivery on 2-21-2020 the written "Notice of Call Election" from L. Allen Hodges III, dated February 20, 2020.

Tim Barton

Witness – ~~Mark Adams~~ Andrew Crum

Witness – Judson ~~Sturidvant~~ Sturdivant

# EXHIBIT A-9

KELLY HART

BRANDON HILL
*brandon..hill@kellyhart.com*

TELEPHONE: (817) 878-3544
FAX: (817) 878-9280

March 27, 2020

2999TC LP, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

JMJ Development, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Re: ***Notice of Default, Demand for Payment, and Notice of Intent to Accelerate*** — 2999TC LP, LLC's (the "**Borrower**") September 16, 2019, loan from The Estate of Leland A. Hodges, Jr. in the amount of $1,000,000.00 (the "**$1M Loan**") and September 16, 2019, loan from Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. in the amount of $3,000,000.00 (the "**$3M Loan**") (both loans collectively, the "**Loans**").

Dear Mr. Barton:

This law firm represents The Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, the "**Lenders**") in connection with the Loans. This letter constitutes formal notice that Borrower is in default under the notes evidencing the Loans (the "**Notes**"). More specifically, the following "Events of Default" have occurred under the Notes:

1. An Event of Default has occurred under paragraph 6(a) of both Notes, as Borrower failed to make the quarterly payment of accrued interest to Lenders on March 16, 2020, in accordance with paragraph 1 of the Notes, and failed to cure that failure within ten (10) days of such failure; and

2. Our letter to you dated January 14, 2020 outlines certain other Events of Default that have not been waived by the Lenders.

In addition, Lenders hereby give formal notice that the following items, unless timely cured, will constitute additional Events of Default under both Notes:

1. Borrower has failed to pay Lender's out-of-pocket costs and expenses incurred incidental to the Loans, as agreed in the September 13, 2019, Terms Sheet. Pursuant to paragraph 6(c) of each Note, Borrower's failure to do so will constitute an additional Event of Default under both Notes unless cured within thirty (30) days of this letter.

2. Each Guaranty dated September 16, 2019 executed by Tim Barton described "Additional Collateral" on which first priority liens were to be granted on a post-closing basis. A large portion of the Additional Collateral consists of the unencumbered value of certain development properties. It has come to the Lenders' attention that an additional lien has been placed on the Killeen property, thereby reducing the value of the Additional Collateral on which a first priority lien is required to be granted pursuant to each Guaranty executed by Mr. Barton. The granting of such lien is in violation of each Guaranty. Pursuant to paragraph 6(b) of each Note, the granting of such lien will constitute an additional Event of Default under both Notes unless cured within thirty (30) days of this letter.

Demand is hereby made for payment of the entire balance of the March 16, 2020 interest payment referenced above in the amount of **$180,000.00**, in full to Lenders, which amount must be paid to the Lenders via cash, wire transfer, cashier's check, or money order.

**In the event that <u>on or before 10:00 a.m., Fort Worth, Texas, local time, on April 6, 2020</u>, the delinquent amount, as specified above, is not paid to Lenders by cash, wire transfer, or other readily available funds acceptable to Lenders, then <u>the maturity date of both Loans may be accelerated and the entire unpaid principal balance of both Loans, along with all accrued and unpaid interest and other fees owing under the loan documents, will be immediately fully due and payable</u>.**

Demand is further made that (1) Borrower pay Lender's costs and expenses incurred incidental to the creation and execution of the Loans and preparation of necessary documentation and lien filings in the amount of **$7,285.00**, and (2) the lien granted on the Killeen property or any other Additional Collateral after September 16, 2019 be removed. **<u>Unless cured within thirty (30) days of this letter, each of these failures will constitute an additional and separate Event of Default under both Notes.</u>** *See* Notes, ¶ 6(c).

Moreover, under paragraph 10 of the Notes, Lenders are also entitled to recover reasonable costs and expenses, including attorney's fees, which may be incurred in enforcing or protecting their rights or interests in this matter as permitted by law. As of the date of this letter, pursuant to paragraph 10 of the Notes Lenders' have incurred an additional **$3,000.00** in reasonable and necessary costs and expenses in connection with Borrower's failure to perform as agreed, which amount is immediately due and owing. **<u>Accordingly, demand is hereby made that, in addition to the $180,000.00 in past-due interest and $7,285.00 demanded above,</u>**

**payment of the additional sum of $3,000.00 for additional fees incurred within ten (10) days of this letter. Failure to timely make this additional payment will constitute an additional and separate Event of Default under both Notes**. *See* Notes, ¶ 6(a).

Accordingly, the total amount demanded in this letter is **$190,285.00**.

**Demand is hereby made on the Borrower and the Guarantors to cease permitting any additional liens being granted on any collateral for the Loans**.

Please note that, pursuant to the guaranties executed by JMJ Development, LLC and by you individually (collectively, the "**Guarantors**") in connection with the Loan (the "**Guaranties**"), Lenders are under no obligation to exhaust their remedies against Borrower before enforcing the Guaranties. Accordingly, **the demands made in this letter are made both against Borrower and against the Guarantors**. In the event the demands set forth herein are not timely satisfied, then Lenders may choose to enforce their rights and exercise their remedies as provided under the agreements executed in connection with the Loans and applicable law. *See, e.g.*, the Notes, Security Agreement, Membership Interest Pledge Agreements, Guaranties, Tex. Civ. Prac. & Rem. Code §§ 38.001, *et seq*., & Tex. Bus. & Com. Code §§ 9.601, *et seq*. Any payments received for less than the full amount demanded (*i.e.*, a partial payment) may be applied to the delinquent amount but will not satisfy this demand. Despite any past or implied forbearance of any nature, if any, by Lenders in connection with the indebtedness owed under the Loans, time is hereby declared to be of the essence with respect to this Notice of Default, Demand for Payment, and Notice of Intent to Accelerate. Lenders' exercise of any particular right or remedy available to them shall not constitute a waiver of any other rights and remedies held by Lenders, which rights and remedies are expressly reserved.

The amount of **$180,000.00** owing to Lender in past-due interest may be paid to it by delivery to the following address:

c/o L. Allen Hodges, III
306 W. 7th Street, Suite 701
Fort Worth, Texas 76102

The total amount of **$10,285.00** owing to Lender by way of legal expenses may be paid to Lenders' legal representative, Kelly Hart & Hallman LLP by delivery to the following address:

Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102

To obtain an accounting of the amounts owing in connection with the indebtedness owed under the Loans, please contact me, Brandon Hill, at Kelly Hart & Hallman LLP by phone at (817) 878-3544.

This letter is being sent in an attempt by the undersigned to collect the amounts due and owing in connection with the Loans and any information obtained will be used for that purpose. If you have any questions, please do not hesitate to contact me. If you are represented by counsel, please have your counsel contact me.

Sincerely,

Brandon Hill

Brandon Hill

Cc Via Email:
L. Allen Hodges III

# EXHIBIT A-10

KELLY HART

BRANDON HILL
brandon.hill@kellyhart.com

TELEPHONE: (817) 878-3544
FAX: (817) 878-9280

April 14, 2020

2999TC LP, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

JMJ Development, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Re: ***Notice of Acceleration*** — 2999TC LP, LLC's (the "**Borrower**") September 16, 2019 loan from The Estate of Leland A. Hodges, Jr. in the amount of $1,000,000.00 (the "**$1M Loan**") and September 16, 2019 loan from Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. in the amount of $3,000,000.00 (the "**$3M Loan**") (both loans collectively, the "**Loans**").

Dear Mr. Barton:

This law firm represents The Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, the "**Lenders**") in connection with the Loans. By letter dated March 27, 2020, the Lenders provided you with formal notice that Borrower is in default under the notes evidencing the Loans (the "**Notes**"). Among other things, that letter notified you that:

1. Borrower failed to make the quarterly payment of accrued interest to Lenders by March 16, 2020, in accordance with paragraph 1 of the Notes, and failed to cure that failure within ten (10) days of such failure; and

2. Lenders have not waived other defaults previously outlined in a letter to you dated January 14, 2020.

The March 27, 2020, letter made clear that unless the entire balance of the March 16, 2020, interest payment in the amount of $180,000.00 was paid in full to Lenders via cash, wire transfer, cashier's check, or money order by 10:00 a.m., Fort Worth, Texas, local time on

April 6, 2020, then the Lenders may exercise their right to accelerate the maturity date of both Loans, making the entire unpaid principal balance of both Loans, along with accrued and unpaid interest and other fees owing under the loan documents, immediately fully due and payable.

As set forth in the March 27, 2020, letter, pursuant to the guaranties executed by JMJ Development, LLC and by you individually (collectively, the "**Guarantors**") in connection with the Loans (the "**Guaranties**"), Lenders are under no obligation to exhaust their remedies against Borrower before enforcing the Guaranties. Accordingly, the demands made in that letter were made both against Borrower and against the Guarantors. The letter further demanded that Borrower and Guarantors pay certain additional amounts and take certain actions necessary to remedy several other specified failures in order to avoid additional Events of Default to occur under the Notes.

The delinquent amounts have not been provided to Lenders as requested. **Therefore, this letter constitutes formal notice that the maturity date of both Loans has been accelerated and the entire unpaid principal balance of both Loans is now due and payable in full, together with any and all other amounts that are due and owing in connection with the Loans.** Demand is hereby made against Borrower and Guarantors for payment in full to Lenders of the entire unpaid principal balance of the Loans, together with any and all other amounts that are due and owing in connection with the Loans, which amounts include any and all accrued but unpaid interest, and any attorney's fees, expenses, and costs incurred by Lenders in connection with this matter.

**Nothing in this notice or any prior communication, act, or omission by Lender shall be interpreted as a waiver or relinquishment of any of Lenders' rights and/or remedies available and/or created under any agreement or instrument executed in connection with the Loans or under applicable law.** Pursuant to the terms of the agreements executed in connection with the Loans and applicable law, Lenders expressly reserve all their rights and remedies, whether or not yet exercised or identified, and whether or not created by law or agreement, including but not limited to the right to initiate legal proceedings against Borrower and Guarantors and to initiate foreclosure proceedings to recover against the collateral securing the Loans. In the event one or more foreclosure sales are held and the property foreclosed upon is not sold for an amount sufficient to satisfy the entire unpaid principal balance of the Loans together with all other amounts owed or incurred in connection with the Loans, including, but not limited to, the accrued and earned but unpaid interest owing thereon, any other unpaid sums advanced by Lenders pursuant to the loan documents and the accrued, unpaid interest thereon, and any attorney's fees, expenses, and costs incurred by Lenders in connection with the Loans, Borrower and Guarantors will be liable for the deficiency, which deficiency will be calculated and determined in accordance with applicable state law. **Only payment in full of the entire unpaid principal balance of the Loans along with all other amounts due and owing to Lenders in connection with the Loans will prevent Lenders from taking further action, including but not limited to initiating legal proceedings and seeking to foreclose on the collateral securing the Loans.**

The amounts of principal and interest owing to Lenders in connection with the Loans may be paid to it by delivery to the following address:

c/o L. Allen Hodges, III
306 W. 7th Street, Suite 701
Fort Worth, Texas 76102

The legal expenses owing to Lenders may be paid to Lenders' legal representative, Kelly Hart & Hallman LLP by delivery to the following address:

Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102

To obtain an accounting of the amounts owing in connection with the indebtedness and legal expenses owed under the Loans, you should contact me, Brandon Hill, at Kelly Hart & Hallman LLP by phone at (817) 878-3544. ***Please contact me prior to making any payment to confirm the correct amount owed in connection with the Loans***.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

This letter is being sent in an attempt by the undersigned to collect the amounts due and owing in connection with the Loans and any information obtained will be used for that purpose. If you have any questions, please do not hesitate to contact me. If you are represented by counsel, please have your counsel contact me.

Sincerely,

Brandon Hill

Brandon Hill

cc: Vance McMurry
McMurry Law, PLLC
508 W. Lookout Dr., Ste. 14-74
Richardson, Texas 75080

L. Allen Hodges III (via e-mail: ahodges@hodgesco.net)

# EXHIBIT A-11

[redacted]

**From:** Tim Barton <tbarton@jmjdevelopment.com>
**Date:** June 25, 2020 at 2:27:04 PM MDT
**To:** Allen Hodges <ahodges@hodgesco.net>, Tim Barton <tbarton@jmjdevelopment.com>
**Subject: Re: what number can i call**

Allen

There is no doubt you are owed the money and I will pay you

This Pandemic has obviously broken many of the options we had.

In addition getting stuck in NY delayed alot.

In addition having a involuntary bad faith Bankruptcy created even more of a mess. To top it off the Chinese sent it to the papers and not only you have been alarmed but all lenders and investors. Even thou it's not me or JMJ

I would like to discuss a solution and process to get you paid the lawyer will of course only make my bill that I owe you bigger

Please advise when we can talk

Thank you
Tim

Sent from my BlackBerry 10 smartphone.

---

**From:** Allen Hodges
**Sent:** Thursday, June 25, 2020 11:57 AM
**To:** Tim Barton
**Subject:** Re: what number can i call

Tim, are you ready to pay us everything you owe us, including Atty fees? Only actions, not words will make us stop and go away and all the games that you continue to play do not help matters.

L. Allen Hodges III
306 W. 7th St. Ste. 701
Ft. Worth, TX 76102

On Jun 24, 2020, at 4:12 PM, Tim Barton <tbarton@jmjdevelopment.com> wrote:

> Allan
>
> What number can I reach you at. We are finally starting to dig out of the mess that Mark Adams left me and would like to update you where we are and what we might be able to do.
> I am back in Dallas and of course the lawyers are busy but I am sure we will be more productive if we can have time to meet
>
> Thanks
>
> Tim Barton
> 2146738714

# EXHIBIT B

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT OF DEE J. KELLY, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Dee J. Kelly, Jr., a person known to me who after being duly sworn, deposed as follows:

1. "My name is Dee J. Kelly, Jr. I am over twenty-one (21) years of age, have never been convicted of a felony, and am fully competent to testify to, and have personal knowledge of the matters stated in this Affidavit. Every statement of fact contained herein is within my personal knowledge and true and correct. I am a licensed attorney in the State of Texas and a partner at the law firm of Kelly Hart & Hallman LLP ('KHH'). My personal knowledge of the facts stated herein has been derived from the performance of my duties as the lead attorney for L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, 'Plaintiffs'), and my review of the file, pleadings, motions, fee statements, and other papers associated with this matter.

2. "Plaintiffs employed KHH's services in connection with their efforts to protect their rights and interests in connection with a loan they made to 2999TC LP, LLC ('2999TC') in or around September of 2019, including but not limited to the litigation of the claims asserted in the above-styled cause against 2999TC, JMJ Development, LLC ('JMJ'), and Tim Barton ('Barton') (all collectively, 'Defendants'). I have reviewed the file, pleadings, motions, fee

statements, and other papers associated with this matter, including but not limited to Plaintiffs' Motion for Summary Judgment and the exhibits attached thereto (the 'Motion'). The 368.7 hours which were expended for the purpose of protecting Plaintiffs' rights and interests in this matter as of July 20, 2020 included, but were not limited to, the following procedures:

i) Fact gathering;

ii) Preparation and review of loan documents;

iii) Documentation of loan collateral;

iv) Preparation of several notices to Defendants concerning their various defaults in connection with the loan;

v) Drafting of pleadings;

vi) Legal research;

vii) Review of relevant documents;

viii) Applying for and obtaining a temporary restraining order against Defendants;

ix) Prepare and file a motion for substitute service and extension of the temporary restraining order;

x) Prepare and file two unopposed motions to extend the temporary restraining order;

xi) Conferring with the client and opposing counsel;

xii) Respond to Defendants' motions to quash;

xiii) Prepare and file Plaintiffs' motion for default judgment and supporting documents;

xiv) Prepare for and attend a hearing on Defendants' motions to quash and 2999TC's motion to dismiss for lack of jurisdiction, special exceptions, motion to stay, and motion to dissolve;

xv) Prepare for an attend hearings on Barton and JMJ's motion to transfer venue and objection to hearing on such motion;

xvi) Prepare proposed orders;

xvii) Respond to filings in bankruptcy court seeking to stay the above-styled cause; and

xviii) Preparing Plaintiffs' Motion and supporting documents..

3. "The aforementioned 368.7 hours were expended by the following time keepers at their specified billing rates, as follows

| Name | Hours Billed | Hourly Billing Rate | Total Fees |
|---|---|---|---|
| Dee Kelly | 16.7 | $595.00 | $9,936.50 |
| Brandon Hill | 42.7 | $450.00 | $19,215.00 |
| Katherine Hopkins | 23.2 | $350.00 | $8,120.00 |
| Joakim G. Soederbaum | 238.3 | $325.00 | $77,447.50 |
| Judy Collins | 47.8 | $210.00 | $10,038.00 |
| TOTAL | 368.7 | *** | $124,757.00 |

4. "Defendants previously submitted payment of $12,795.00 toward the fees incurred by Plaintiffs. Crediting that payment toward the fees incurred by Plaintiffs through July 20, 2020, leaves an outstanding balance of $111,962.00. Defendants have made no further payments to KHH or Plaintiffs toward these fees and are entitled to no other offsets or credits.

5. "In the event of an appeal by one or more of the Defendants of a judgment rendered in Plaintiffs' favor, Plaintiffs will incur reasonable and necessary attorney's fees as follows: (1) at least $20,000 to respond to an appeal to the Second Court of Appeals of Texas and to prepare for and present oral argument; (2) at least $10,000 to respond to or file a petition for review with the Texas Supreme Court; and (3) at least $20,000 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument.

6. "Brandon Hill is a partner at KHH. He graduated from the Texas Tech University School of Law in 2006 and has been a licensed attorney in the State of Texas since that time. Mr. Hill has experience representing corporate and individual clients in a wide variety of transactional matters, including different forms of both secured and unsecured transactions and real estate developments.

7. "Katherine Hopkins is a partner at KHH. She graduated from St. Mary's University School of Law in 2009 and has been a licensed attorney in the State of Texas since that time. Ms. Hopkins has experience representing corporate and individual clients various debtor, creditor, and bankruptcy matters. Ms. Hopkins has been voted by her peers as among the city's best bankruptcy attorneys in *Fort Worth, Texas* magazine and *360 West*.

8. "Joakim Soederbaum is an associate attorney with KHH. He graduated from the Texas A&M University School of Law in 2014 and has been a licensed attorney in the State of Texas since that time. Mr. Soederbaum has experience representing corporate and individual clients in a wide variety of business litigation in state and federal courts, including throughout Texas. Prior to joining KHH, Mr. Soederbaum spent one year clerking for the Honorable Justice

Debra Lehrmann at the Supreme Court of Texas, working on a broad variety of complex legal issues.

9. "Judy Collins has an Associate's Degree in paralegal studies from an ABA approved college and has been performing substantive legal work as a litigation legal assistant with Kelly Hart & Hallman LLP for more than 11 years. Her education and 20 years of experience as a legal assistant qualify her to perform substantive legal work. The aforementioned hours that Ms. Collins spent on this case were spent performing substantive legal work under the direction and supervision of an attorney, including research and preparation of court documents.

10. "I am a partner at KHH. I graduated from The University of Texas Law School in 1985 and have been a licensed attorney, and practicing law, in the State of Texas since that time in a wide variety of business litigation in state and federal courts across Texas, including in and around Tarrant County. In my practice, I have become personally familiar with the reasonable and customary rates of fees charged in the Tarrant County legal market, particularly the fees charged in litigation. The fees that have been charged in this case are customarily charged in this area for the same or similar services for attorneys that have worked on this case considering their experience, reputation, and ability, as well as the type of controversy, the time limitations imposed, and the nature and length of the firm's relationship with Plaintiffs.

11. "The fees set forth in Paragraphs 2 through 5 above are reasonable and necessary in protecting Plaintiffs' rights and interests in this matter, including prosecuting Plaintiffs' claims against Defendants. In reaching my conclusions and opinions, I have considered each of the factors set out in TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, (STATE BAR RULES, art. X, § 9). Specifically, I have considered the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

I have also considered the decisions of the Texas Supreme Court in *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (dealing with segregation in multi-claim cases); *Arthur Anderson & Co. v. Perry Equipment*, 925 S.W.2d 812 (1997) (relating to fee shifting in general); and *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991), modified on other grounds, *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299 (Tex. 2006). My conclusions and opinions regarding the reasonableness and necessity of the attorney's fees incurred by Plaintiffs in connection with the prosecution of their claims against Defendants take into account Plaintiffs' obligation to segregate the fees incurred to the extent required by law and allowed by the circumstances. It is my opinion that all legal services provided to Plaintiffs in connection with these matters as summarized above have been incurred for the purpose of protecting Plaintiffs' rights and interests in this matter, including but not limited to Plaintiffs' claims against Defendants for breach of the promissory notes and guaranties. Because the notes and guaranties at issue expressly provide for Plaintiffs' recovery of such fees, Plaintiffs are under no obligation to segregate their fees and are seeking 100% of the attorney's and paralegal's fees identified above.

12. "My conclusions and opinions regarding the reasonableness and necessity of the attorney's fees incurred by Plaintiffs in connection with the protection of Plaintiffs' rights and interests in this matter also take into account the actions by Defendants. Such actions include but are not limited to Defendants filing motions to quash service, and Barton and JMJ filing a motion to transfer venue, and the efforts by parties related to Defendants to stay this litigation by trying to invoke the automatic stay in Case No. 20-31131, pending in the Northern District of Texas.

"FURTHER AFFIANT SAYETH NOT."

________________________________

DEE J. KELLY, JR.

SWORN TO and SUBSCRIBED before me by Dee J. Kelly, Jr. on the 23rd day of July, 2020, to certify which witness my hand and official seal.

MELISSA KAY MATEJ
Notary Public
STATE OF TEXAS
Notary ID # 10051276
My Comm. Exp. June 18, 2022

________________________________

Notary Public in and for the State of Texas

141-316567-20

FILED
TARRANT COUNTY
8/10/2020 3:57 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT JMJ DEVELOPMENT, LLC**
**AND TIM BARTON'S MOTION FOR CONTINUANCE**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW, COME** Defendants, **JMJ DEVELOPMENT, LLC** and **TIM BARTON**, and moves this their Motion for a Continuance of the Summary Judgment hearing filed by Plaintiff in this cause, and in support thereof would respectfully show the Court as follows:

1. This matter is set for hearing on August 20, 2020 at 11:00 a.m. on a Motion for Summary Judgment filed by Plaintiff. The issues involve guaranty agreements of a promissory note and collateral issues.

2. Plaintiff originally filed suit on April 22, 2020 but amended it on June 15th, 2020. Shortly before Defendants JMJ Development and Tim Barton filed their answer on June 18, 2020, which included Defendants' motion to transfer venue and which the court denied on July 10, 2020.

4. Movants served request for production and interrogatories on August 7, 2020, which are relative to the claims which are involved tin this lawsuit and detailed in Plaintiff's First Amended

Petition and Responses to Disclosure. The response to interrogatories and requests for production are not due until September 6, 2020, which is after the summary judgment hearing.

5. Defendants assert the discovery questions, responses and documents are germane to the issues asserted by Plaintiff's in the amended petition and responses to disclosure.

6. Additionally, Defendants' are currently at a distinct disadvantage and are not able to obtain either affidavits or testimony of Mark Adams a former employee who handled all of the lender contacts, up to and including the closing of the loan from Plaintiff to Defendant 2999TC LP, LLC, JMJ.

7. Movants submit that the testimony of Mark Adams is material. Adams was in charge of and handled all of the financial planning, procurement of the loans, negotiations, collateral pledges and representations with Plaintiff. Defendants JMJ Development, LLC and that Tim Barton had no dealings with, never met with or even spoke to Plaintiff until after the loan was closed. Movants do not even know if Plaintiff is even the true holder of the promissory note in and guaranties.

8. Discovery has only just recently begun to get underway. Movants need the testimony of Mark Adams and answers to interrogatories and production to defend themselves.

9. Movants respectfully request the court to continue the summary judgment hearing until a later date to give all parties enough time to conduct reasonable discovery so they can be adequately prepared. Movant assert the motion for summary judgment was prematurely filed because it does not allow them adequate time to conduct meaningful discovery. *Levinthal v. Kelsey-Seybold Clinic*, *PA.*, 902 SW 2nd 508, 512 (Tex. App-Houston, 1st Dist.) 1994, no writ.

10. Movants submit that this case is moving faster than the law allows with procedural safeguards having been abandoned or neglected altogether. For example, there appears s to be no compliance with the mandatory provisions of Rule 1901.1, which provides "Every case must be

governed by a discovery control plan as provided by this Rule." Tex. R. Civ. P.190.1. When Hodges plead Level 3 discovery under Rule 190.4 the law requires the court to enter a schedule tailored for complex, Level 3 discovery. Plaintiffs have not conferred with defendants on a proposed schedule, have not moved the court for a schedule, and the court has not, "on its own initiative", entered a schedule. As there is no discovery control plan in place, as expressly required by the Texas Rules, the discovery period has not even commenced, and Plaintiffs are not entitled to summary judgment where defendants need discovery on their pleaded defenses. This request is not made for purposes of delay, but so that justice may be done.

**WHEREFORE, PREMISES CONSIDERED,** Defendants pray that the Court grant this motion for continuance, and for all such other and further relief, at law or in equity, to which Defendants may show themselves justly entitled.

Respectfully submitted,

__/s/ Robert F. Kemp_______

Robert F. Kemp
SBN 11256400
Law Office of Robert F. Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
Office: (214) 526-9601
Facsimile: (214) 526-2156
E-mail: lawyerkemp@cs.com

**ATTORNEY FOR DEFENDANTS**
**JMJ DEVELOPMENT, LLC AND TIM BARTON**

**CERTIFICATE OF CONFERENCE**

This is to certify that I conferred/did not confer with counsel for Plaintiff on 10th day of August, 2020 and he indicated he could not agree to the relief requested..

_/s/ Robert F. Kemp___________________
ROBERT F. KEMP

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served upon all counsel of record listed hereinbelow, in accordance with the Texas Rules of Civil Procedure this 10th day of August, 2020.

_/s/ Robert F. Kemp___________________
ROBERT F. KEMP

FILED
TARRANT COUNTY
8/11/2020 9:42 AM
THOMAS A. WILDER
DISTRICT CLERK



CAUSE NO. 141-316567-20

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT JMJ DEVELOPMENT, LLC**
**AND TIM BARTON'S FIRST AMENDED MOTION**
**FOR CONTINUANCE**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW, COME** Defendants, **JMJ DEVELOPMENT, LLC** and **TIM BARTON**, and moves this their Motion for a Continuance of the Summary Judgment hearing filed by Plaintiff in this cause, and in support thereof would respectfully show the Court as follows:

1. This matter is set for hearing on August 20, 2020 at 11:00 a.m. on a Motion for Summary Judgment filed by Plaintiff. The issues involve guaranty agreements of a promissory note and collateral issues.

2. Plaintiff originally filed suit on April 22, 2020 but amended it on June 15th, 2020. Shortly before Defendants JMJ Development and Tim Barton filed their answer on June 18, 2020, which included Defendants' motion to transfer venue and which the court denied on July 10, 2020.

4. Movants served request for production and interrogatories on August 7, 2020, which are relative to the claims which are involved tin this lawsuit and detailed in Plaintiff's First Amended

Petition and Responses to Disclosure. The response to interrogatories and requests for production are not due until September 6, 2020, which is after the summary judgment hearing.

5. Defendants assert the discovery questions, responses and documents are germane to the issues asserted by Plaintiff's in the amended petition and responses to disclosure.

6. Additionally, Defendants' are currently at a distinct disadvantage and are not able to obtain either affidavits or testimony of Mark Adams a former employee who handled all of the lender contacts, up to and including the closing of the loan from Plaintiff to Defendant 2999TC LP, LLC, JMJ.

7. Movants submit that the testimony of Mark Adams is material. Adams was in charge of and handled all of the financial planning, procurement of the loans, negotiations, collateral pledges and representations with Plaintiff. Defendants JMJ Development, LLC and that Tim Barton had no dealings with, never met with or even spoke to Plaintiff until after the loan was closed. Movants do not even know if Plaintiff is even the true holder of the promissory note in and guaranties.

8. Discovery has only just recently begun to get underway. Movants need the testimony of Mark Adams and answers to interrogatories and production to defend themselves.

9. Movants respectfully request the court to continue the summary judgment hearing until a later date to give all parties enough time to conduct reasonable discovery so they can be adequately prepared. Movant assert the motion for summary judgment was prematurely filed because it does not allow them adequate time to conduct meaningful discovery. *Levinthal v. Kelsey-Seybold Clinic, PA.*, 902 SW 2nd 508, 512 (Tex. App-Houston, 1st Dist.) 1994, no writ.

10. Movants submit that this case is moving faster than the law allows with procedural safeguards having been abandoned or neglected altogether. For example, there appears s to be no compliance with the mandatory provisions of Rule 1901.1, which provides "Every case must be

governed by a discovery control plan as provided by this Rule." Tex. R. Civ. P.190.1. When Hodges plead Level 3 discovery under Rule 190.4 the law requires the court to enter a schedule tailored for complex, Level 3 discovery. Plaintiffs have not conferred with defendants on a proposed schedule, have not moved the court for a schedule, and the court has not, "on its own initiative", entered a schedule. As there is no discovery control plan in place, as expressly required by the Texas Rules, the discovery period has not even commenced, and Plaintiffs are not entitled to summary judgment where defendants need discovery on their pleaded defenses. This request is not made for purposes of delay, but so that justice may be done.

**WHEREFORE, PREMISES CONSIDERED,** Defendants pray that the Court grant this motion for continuance, and for all such other and further relief, at law or in equity, to which Defendants may show themselves justly entitled.

Respectfully submitted,

/s/ Robert F. Kemp

Robert F. Kemp
SBN 11256400
Law Office of Robert F. Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
Office: (214) 526-9601
Facsimile: (214) 526-2156
E-mail: lawyerkemp@cs.com

**ATTORNEY FOR DEFENDANTS**
**JMJ DEVELOPMENT, LLC AND TIM BARTON**

## VERIFICATION

I do hereby swear and affirm that I have read the above and foregoing Motion for Continuance and the factual statements contained therein are within my personal knowledge and are true and correct

TIM BARTON

Subscribed and sworn to before me, the undersigned notary public, on this 10 day of August 2020.

Notary Public in and for State of Texas

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

## CERTIFICATE OF CONFERENCE

This is to certify that I conferred/did not confer with counsel for Plaintiff this 7th day of August, 2020 and he indicated he could not agree to the relief requested..

/s/ Robert F. Kemp
ROBERT F. KEMP

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served upon all counsel of record listed hereinbelow, in accordance with the Texas Rules of Civil Procedure this 10h day of August, 2020.

/s/ Robert F. Kemp
ROBERT F. KEMP

141-316567-20

FILED
TARRANT COUNTY
8/12/2020 1:53 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC'S MOTION TO CONTINUE HEARING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant 2999TC LP, LLP ("***Defendant***") and files this Motion to Continue Hearing on Plaintiffs' Motion for Summary Judgment, and in support thereof respectfully shows the Court as follows:

## I. SUMMARY

1. Defendant filed its Original Answer in this case on June 10, 2020 (the "***Answer***"). A mere six (6) weeks later, Plaintiffs filed their Motion for Summary Judgment on July 23, 2020 (the "***MSJ***"). The MSJ is currently set for hearing on August 20, 2020 at 11:00 a.m. (the "***Hearing***"). Plaintiffs' MSJ is premature, and the Hearing should be continued for at least sixty (60) days to allow Defendant to properly defend against the MSJ.

2. Defendant asserted a number of affirmative defenses in its Original Answer that preclude judgment in Plaintiffs' favor. As this case is in its infancy, Defendant has not been afforded sufficient time to conduct discovery to develop these defenses. No depositions have been

taken in this case, and the deadline has not yet passed for Plaintiffs to respond to written discovery requests Defendant propounded on July 21, 2020. Without any meaningful discovery in this case, Defendant would be unduly prejudiced by being forced to defend against the MSJ. For these reasons, the Court should continue the Hearing until such time that sufficient discovery has been conducted.

## II. FACTUAL BACKGROUND

3. Plaintiffs filed their Original Petition in this case on April 22, 2020. As set forth in Defendant's *Motion to Quash Service*, however, Plaintiffs did not immediately effect service of process on Defendant. *See Motion to Quash Service* at 1-2.

4. Defendant filed its Answer on June 10, 2020. Defendant's Answer sets forth several affirmative defenses against the claims asserted by Plaintiffs, including waiver, ratification, prior material breach, illegality, usury, and the doctrines of impossibility of performance and frustration of purpose. *See Defendant's Original Answer and Request for Disclosure* at 2.

5. Plaintiffs filed their MSJ on July 23, 2020. The MSJ seeks a summary judgment on Plaintiffs' claim for breach of the promissory note against Defendant, as well as their claim for breach of the guaranties against co-defendants JMJ Development, LLC ("***JMJ***") and Tim Barton ("***Barton***").

6. Defendant then promptly served both its First Set of Requests for Production and First Set of Interrogatories to Plaintiff I. Allen Hodges, III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***") on August 7, 2020 (collectively, the "***Discovery Requests***"). The deadline for Hodges to respond to the Discovery Requests is September 6, 2020.

7. The Discovery Requests seek, *inter alia*, information and documents relating to (1) the negotiation of the promissory note and guaranty agreements which are the subject of this suit,

(2) the *force majeure* provision contained in the promissory note, (3) the anticipated source of funds that would be used to repay the promissory note prior to the events caused by the word-wide COVID-19 pandemic, and (4) the collateral securing the guaranty agreements at issue in this case. A true and correct copy of the Discovery Requests is attached hereto as **Exhibit A**.

8. The Hearing on the MSJ is currently set for August 20, 2020—before the day Hodges is required to respond to the Discovery Requests. Further, no depositions have been taken or scheduled in this case.

## III. ARGUMENT AND AUTHORITIES

9. The Court should continue the Hearing until Defendant has been afforded sufficient time to conduct discovery in this case. Where a party establishes that it cannot present facts essential to justify opposition to a motion for summary judgment, courts "may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had and may make such other order as is just." Tex. R. Civ. P. 166a(g). The decision to grant a request for a continuance under Tex. R. Civ. P. 166a(g) is within the trial court's discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). Among the factors courts consider when determining if a continuance is proper are: (1) the length of time the case has been on file, (2) the materiality and purpose of the discovery sought, and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 161 (Tex. 2004) (citing cases).

### A. The Length of Time the Case Has Been On File Warrants a Continuance

10. Here, this case has been on file for fewer than four (4) months, and Defendant appeared only two (2) months ago. The Houston Court of Appeals found that it was abuse of discretion to deny a motion for continuance where the case in question had only been on file for

(3) months and no discovery had yet been conducted. *Levinthal v. Kelsey-Seybold Clinic, P.A.*, 902 S.W.2d 508, 512 (Tex. App.—Houston [1st Dist.] 1994, no writ) (holding that, although Tex. R. Civ. P. 166a(1) permits a party to move for summary judgment at any time after the adverse party has appeared or answered, trial courts may abuse their discretion by denying a motion for continuance upon a proper showing that one is proper).

11. The *Levinthal* court reviewed the denial of a motion for continuance of a summary judgment hearing where the movant filed its motion for summary judgment before the time it was required to respond to written discovery requests. *Id*. The court noted that the rules governing traditional motions for summary judgment provide that summary judgment shall be rendered if "the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response," in addition to other summary judgment evidence, show that no genuine issues exist as to any material fact. *Id*. (citing Tex. R. Civ. P. 166a(c)). The court explained that "[t]his rule clearly contemplates that the trial court will allow the parties a reasonable opportunity to conduct discovery before granting a summary judgment." *Id*. Because no discovery had been conducted, the court held that the trial court abused its discretion by not continuing the summary judgment hearing and allowing time for discovery. *Id*.

12. Similarly, because this case is in its infancy, no discovery has been completed. The deadline for Plaintiffs to respond to the Discovery Requests will not pass before the date of the Hearing. While the Hearing is set for August 20, 2020, the deadline for Hodges to respond to the Discovery Requests is September 6, 2020, meaning that Hodges need not respond to any written discovery prior to a hearing on its MSJ absent a continuance.[1]

[1] In addition to discovery requests from Defendant, JMJ and Barton served discovery requests to Plaintiffs on August 7, 2020. *See Defendant JMJ Development, LLC and Tim Barton's Motion for Continuance*, on file with this Court. Accordingly, Plaintiffs have not yet answered those discovery requests or produced any documents in response.

13. For this reason alone, the Court should conclude that the case has not been on file long enough to allow adequate discovery and should continue the Hearing for a period of at least sixty (60) days.

**B. The Discovery Defendant Seeks is Material**

14. "[W]hen facts are necessary for the resolution of a motion for summary judgment, a [party] generally has the right to engage in necessary discovery of fact-specific issues." *In re Greater McAllen Star Props.*, 444 S.W.3d 743, 750 (Tex. App.—Corpus Christi – Edinburg 2014, orig. proceeding) (citing *Levinthal*, 902 S.W.2d at 511).

15. Plaintiffs' claims against Defendant center around two Promissory Note between Defendant and Plaintiffs dated September 16, 2019 for $1,000,000.00 and $3,000,000.00 (collectively, as amended, the "***Note***"). Hodges executed the Notes on behalf of Plaintiffs. Hodges also acknowledged in his Affidavit attached as Exhibit "A" to the MSJ that he was personally involved with the loan reflected in the Notes. *See* Exhibit A to *Motion for Summary Judgment* at 2, ¶ 3. For these reasons, Hodges is a key witness in this case.

16. Defendant's Answer asserts several affirmative defenses that preclude summary judgment in Plaintiffs' favor, including the doctrines of impossibility of performance and frustration of purpose. *See Defendant's Original Answer and Request for Disclosures* at 2. In its Responses to Plaintiffs' Request for Disclosure (the "***Disclosures***"), Defendant identified Hodges as a person with knowledge of "the request for forbearance made by Defendant and the world-wide COVID-19 pandemic has made performance of Defendant's obligations impossible and has otherwise frustrated performance." A true and correct copy of the Disclosures is attached hereto as **<u>Exhibit B</u>**.

17. The doctrines of impossibility, impracticability, and frustration of purpose generally apply to excuse performance where, after a contract is made, a party's performance is made impracticable by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made. *See*, *e.g*, *Hollis v. Gallagher*, 2012 Tex. App. LEXIS 7547 (Tex. App.—Austin 2012, pet. denied) (citing Restatement (Second) of Contracts § 261). The parties' assumptions when entering into the Notes are therefore relevant and material to establishing Defendant's affirmative defenses. The Discovery Requests to Hodges seek information on this very topic. *See generally*, <u>Exhibit A</u>. For example, Interrogatory No. 1 seeks information concerning the facts and circumstances surrounding the Notes, including negotiations of the terms of the Notes. *Id*. Interrogatory No. 5 seeks facts concerning whether the COVID-19 pandemic constitutes a *force majeure* event under the Notes. *Id*. Requests for Production Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, and 13 similarly seek production of documents related to the formation of the Notes and the performance thereunder, including internal communications between Plaintiffs that Defendant cannot otherwise obtain.

18. Defendant anticipates that Hodges' testimony will reveal that the world-wide impact of COVID-19, including but not limited to government mandates impacting the global economy, constitutes an event that rendered Defendant's performance impossible and/or impracticable and the non-occurrence of which was a basic assumption during the parties' negotiations. Defendant further expects that Hodges' testimony will indicate that the aforementioned circumstances frustrated the purpose of the Notes, given that the funds which are the subject of the Notes were intended to be used to procure additional financing to acquire property. These facts will establish that any alleged delay in performance under the Notes is excused.

19. Without—at a minimum—responses to the Discovery Requests identified above and production of relevant documents, Defendant would be severely prejudiced by having to defend itself against the MSJ without evidence that is both relevant and otherwise unobtainable. Defendant should also be able to depose Hodges, as well as other parties with knowledge of facts that can support Defendant's affirmative defenses discussed herein.

20. Because the discovery Defendant seeks is material to supporting affirmative defenses to defeat the MSJ, the Court should grant this Motion and continue the Hearing for a period of at least sixty (60) days.

**C. Defendant Has Diligently Pursued the Discovery It Seeks**

21. A continuance of the Hearing is also warranted because Defendant has been diligent in its pursuit of discovery.

22. Defendant served its Request for Disclosures along with its Answer in this case on June 10, 2020. *See Defendant's Original Answer and Request for Disclosure* at 3. Defendant also served the Discovery Requests on August 7, 2020—less than two (2) months after entering its appearance in this case. *See* Exhibit A.

23. No depositions have been taken in this case. Defendant expects to take the deposition of Hodges, as well as other persons revealed through discovery to have material information pertaining to Defendant's affirmative defenses. In order for such depositions to be effective, Defendant should be afforded a reasonable time to review Hodges' responses to the Discovery Requests and documents Hodges produces in discovery.

24. Defendant's efforts at this stage of the case to obtain discovery have been diligent. Courts have found that a party was not diligent in seeking discovery when the case at issue had been on file for ample time without significant discovery efforts. *See, e.g., State v. Wood Oil*

*Distributing, Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (finding lack of diligence where the lawsuit was pending for nearly two years and the party seeking continuance did not conduct any discovery). Here, Defendant has already issued discovery requests to Hodges and intends to promptly conduct additional discovery once it is able to review the initial responses to the Discovery Requests and corresponding production of documents. The history of this case clearly indicates that Defendant has diligently pursued the discovery it seeks, and the Court should permit additional time to complete these efforts before ruling on the merits of this case.

## IV. CONCLUSION

25. The Court should continue the Hearing for a period of at least sixty (60) days to permit adequate time for discovery. This case has been on file for less than four (4) months, and Defendant entered its appearance only two (2) months ago. In that time, Defendant has diligently sought discovery to establish its affirmative defenses to the Plaintiffs' claims, but without a continuance, Defendant will not have the benefit of any responses to its Discovery Requests or even a single document produced by Plaintiff in discovery. The Court should afford Defendant an adequate opportunity to defend itself against Plaintiffs' claims, and this opportunity can only come through discovery which has yet to be completed.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests the Court grant this Motion for Continuance of Hearing on Plaintiffs' Motion for Summary Judgment and continue the hearing for a period of not less than sixty (60) days. Defendant further prays for any other or further relief to which it may show itself entitled, either at law or in equity.

Dated: August 12, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on August 12, 2020, a true and correct copy of the above and foregoing document was served by electronic mail to:

Dee J. Kelly, Jr.
Joakim Soederbaum
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
dee.kelly@kellyhart.com
joakim.soederbaum@kellyhart.com

Robert F. Kemp
2815 VALLEY VEIW LANE, SUITE 202
DALLAS, TEXAS 75234
lawyerkemp@cs.com

*/s/ Elizabeth Brandon*
Elizabeth Brandon

# EXHIBIT A

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's FIRST SET OF REQUESTS FOR PRODUCTION TO I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR.**

TO: I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., by and through its attorney of record Joakim Soederbaum, 201 Main Street, Suite 2500, Fort Worth, Texas 76102, joakim.soederbaum@kellyhart.com

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, 2999TC LP, LLC ("***Defendant***") serves this, its First Set of Requests for Production to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***"). The responses and requested documents to such requests for production shall be served upon Defendant within thirty (30) days of the service of these requests.

Dated: July 21, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Managing Member*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the above pleading was served on all counsel of record via electronic mail on this 21st day of July 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

## I.
## INSTRUCTIONS

1. For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, job title, and address of the person to whom it was addressed, to whom it was circulated, or who saw it; the name, job title, and address of the person now in possession of the document; the description of the subject matter of the document; and the present location and custodian of the document.

2. For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located, and the reason(s) for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

3. These Requests are continuing in nature. If further information comes into your possession or is brought to your attention, or the attention of your agents, employees, officers, directors, representatives or attorneys in the court of trial or prior to trial, then supplementation of your responses is required pursuant to the Texas Rules of Civil Procedure.

4. To the extent any capitalized term used in these Requests is not specifically defined herein, such term shall have the same meaning as in Plaintiff's Original Petition.

5. Except as otherwise stated, the relevant time period with regard to these Requests is from January 1, 2019 through the present.

## II.
## DEFINITIONS

As used herein, the following terms shall have, in addition to the common usage of the word, the meanings indicated below:

A. "**Defendant**" shall mean 2999TC LP, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

B. "**Tejas Group**" shall mean Tejas Group, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

C. "**LAH**" shall mean LAH III Family Specific Interest, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

D. "**Blackfoot**" shall mean Blackfoot Interest Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

E. "**JMJ**" shall mean JMJ Development, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

F. "**Hodges**," "**you**," and "**your**" refers to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. and to each person who, with respect to the subject matter in the Requests below, was or is acting or was or is purporting to act on Hodges' behalf, including Hodges' agents, representatives, or other persons acting, or purporting to act, on Hodges' behalf.

G. "**Document**" or "**documents**" are used herein in their broadest sense, and mean all tangible items, and all writings, drawings, graphs, charts, photographs, sounds recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This definition includes originals, copies, or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

H. "**Statement(s)**" means any written statement signed, adopted or approved in writing by the person making it; any stenographic, mechanical, electrical, audio, video, or other

type of recording of an individual's oral statement; or any substantially verbatim transcription of such recording.

I. "**Communication**" means any transmission of thoughts, opinions, or information by speech, writing, or signs.

J. "**Relate to**" or "**relating to**" means, whether directly or indirectly: reflecting, referring to, pertaining to, constituting, containing, leading to, concerning, discussing, describing, commenting upon, mentioning, evidencing, showing, embodying, quoting, describing, bearing upon, supporting, corroborating, proving, refuting, disproving, contradicting, regarding, containing information regarding, made in connection with or by reason of, or deriving or arising from. These terms mean, without limitation, any reference or relationship that either (a) provides information with respect to the subject inquiry and necessarily includes information that is in opposition to as well as in support of any position(s) and claim(s) of Palisades, or (b) might lead to individuals who, or documents which, might possess or contain information with respect to the subject of inquiry.

K. The singular form of a word shall be construed to mean the plural, and the plural to mean the singular, when doing so would ensure the provision of additional information or more complete answers and would avoid questions from being considered ambiguous, inaccurate, or confusing.

L. "**And**" and "**or**" shall be construed as conjunctive or disjunctive to ensure the provision of additional information or more complete answers and to avoid the questions from being considered ambiguous, inaccurate, or confusing.

M. "**Person**" shall mean natural persons, individuals, proprietorships, partnerships, firms, corporations, institutions, bodies, joint ventures, estates, trusts, receivers, public

corporations, other forms of legal entity, municipal corporations, federal, state, and local governments, all departments and agencies thereof, and any other governmental agencies, political subdivisions, groups, associations, or organizations, or any other group or combination acting as an entity.

N. “**Date**” means the exact date, month, and year, if ascertainable; otherwise, the term “date” means the best available approximation, including by relationship to other events.

O. “**Including**” means “**including without limitation**.”

P. “**Any**” includes “**all**,” “**every**,” and “**each**,” and vice versa.

Q. The “**Project**” shall mean the 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas and any structures thereon.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All documents and communications relating to the $3 million Promissory Note between Tejas Group, LAH, and Blackfoot and Defendant.

**RESPONSE:**

**REQUEST NO. 2:** All documents and communications relating to the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 3:** All documents related to “Collateral Security” as described in paragraph 6(e) of the Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 4:** All documents related to any collateral securing the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 5:** All documents and communications between you and Timothy Barton regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 6:** All documents and communications between you and JMJ regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 7:** All documents and communications between you and Tejas Group regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 8:** All documents and communications between you and LAH regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 9:** All documents and communications between you and Blackfoot regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 10:** All documents and communications between you and any real estate developer regarding the Project.

**RESPONSE:**

**REQUEST NO. 11:** Any documents or communications between you and any broker, real estate agent, or real estate marketing firm related to the Project.

**RESPONSE:**

**REQUEST NO. 12:** All documents and communications between you and any real estate investor related to the Project.

**RESPONSE:**

**REQUEST NO. 13:** All documents and communications relating to the $3 million Promissory Note between Tejas Group, LAH, and Blackfoot and Defendant.

**RESPONSE:**

**REQUEST NO. 14:** All documents and communications relating to the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 15:** All documents and communications related to the "first priority lien and or security interest" as described in paragraph 14 of the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 16:** All documents and communications related to any collateral securing the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 17:** All documents and communications between you and Timothy Barton regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 18:** All documents and communications between you and JMJ regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 19:** All documents and communications between you and Tejas Group regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 20:** All documents and communications between you and LAH regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 21:** All documents and communications between you and Blackfoot regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 22:** All documents and communications between you and any real estate developer regarding the collateral securing the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 23:** Any documents or communications between you and any broker, real estate agent, or real estate marketing firm related to the collateral securing the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 24:** All documents and communications relating to the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 25:** All documents and communications between you and Timothy Barton regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 26:** All documents and communications between you and JMJ regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 27:** All documents and communications between you and Tejas Group regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 28:** All documents and communications between you and LAH regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 29:** All documents and communications between you and Blackfoot regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 30:** All documents and communications related to any Membership Interest Pledge Agreements related to the $3 million Promissory Note between Tejas Group, LAH, and Blackfoot and Defendant.

**RESPONSE:**

**REQUEST NO. 31:** All documents and communications related to any Membership Interest Pledge Agreements related to the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 32:** All documents and communications related to any Membership Interest Pledge Agreements related to the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 33:** All documents and communications related to any Membership Interest Pledge Agreements related to the Guaranty between Tejas Group, LAH, and Blackfoot and Timothy Barton.

**RESPONSE:**

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's FIRST SET OF INTERROGATORIES TO I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR.**

TO: I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., by and through its attorney of record Joakim Soederbaum, 201 Main Street, Suite 2500, Fort Worth, Texas 76102, joakim.soederbaum@kellyhart.com

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, 2999TC LP, LLC ("***Defendant***") serves this, its First Set of Interrogatories to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***"). Each interrogatory shall be answered separately and fully in writing, under oath, and signed/verified by the person providing the answer(s). The answers to such interrogatories shall be served upon Defendant within thirty (30) days of service of these interrogatories.

Dated: July 21, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*
Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Managing Member*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above pleading was served on all counsel of record via electronic mail on this 21st day of July 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

## I.
## INSTRUCTIONS

1. Each Interrogatory is to be answered separately and specifically. No answer is to be left blank. If the answer to an Interrogatory or subparagraph of an Interrogatory is "none" or "unknown," such statement must be written in the answer. If the answer to the entire question is not known, so state and answer the part known. If an exact date is not known, state the closest approximate date.

2. In responding to these Interrogatories, provide all information available to you, including information in the possession of your attorneys (if any), investigators or experts, and not merely information in your own personal possession. If you or any of your agents are aware of the existence of any information within the scope of these Interrogatories that is not within the custody, possession or control of you or your agents, please identify any such information in a written response and provide information about who has the information.

3. If you object to any part of any Interrogatory, you must answer all parts of that Interrogatory to which you do not object, and state the specific bases for your objection to any part to which you do object.

4. If you object to any part of any Interrogatory because of a privilege, provide the following information:

   i. the nature of the documents, communications, or tangible things not produced or disclosed, which will enable Plaintiff to assess the claim of privilege, including: (1) the general subject of the privileged material; (2) the relevant dates of the privileged material; and (3) the identity of the persons who have knowledge of the privileged material; and

   ii. the basis asserted for your claim of privilege.

5. Each of the following Interrogatories is continuing in nature. If subsequent to serving answers and documents, Palisades, or any other person on Palisades' behalf, obtains or becomes aware of additional information pertaining to these Interrogatories, Palisades is required to timely provide supplemental answers and documents that will augment or otherwise modify the previous answers.

6. In the event you produce documents in lieu of identifying them herein, must produce documents, as they are kept in the usual course of business or organize and label them to correspond to the categories in the Interrogatory.

7. Unless otherwise noted, the time-period covered by these Interrogatories is from January 1, 2019 through the present.

**II.**
**DEFINITIONS**

As used herein, the following terms shall have, in addition to the common usage of the word, the meanings indicated below:

A. "**Defendant**" shall mean 2999TC LP, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

B. "**Tejas Group**" shall mean Tejas Group, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

C. "**LAH**" shall mean LAH III Family Specific Interest, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

D. "**Blackfoot**" shall mean Blackfoot Interest Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

E. "**JMJ**" shall mean JMJ Development, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

F. "**Hodges**," "**you**," and "**your**" refers to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. and to each person who, with respect to the subject matter in the Requests below, was or is acting or was or is purporting to act on Hodges' behalf, including Hodges' agents, representatives, or other persons acting, or purporting to act, on Hodges' behalf.

G. "**Document**" or "**documents**" are used herein in their broadest sense, and mean all tangible items, and all writings, drawings, graphs, charts, photographs, sounds recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This definition includes originals, copies, or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

H. "**Statement(s)**" means any written statement signed, adopted or approved in writing by the person making it; any stenographic, mechanical, electrical, audio, video, or other type of recording of an individual's oral statement; or any substantially verbatim transcription of such recording.

I. "**Communication**" means any transmission of thoughts, opinions, or information by speech, writing, or signs.

J. "**Relate to**" or "**relating to**" means, whether directly or indirectly: reflecting, referring to, pertaining to, constituting, containing, leading to, concerning, discussing, describing, commenting upon, mentioning, evidencing, showing, embodying, quoting, describing, bearing upon, supporting, corroborating, proving, refuting, disproving, contradicting, regarding, containing information regarding, made in connection with or by reason of, or deriving or arising from. These terms mean, without limitation, any reference or relationship that either (a) provides information with respect to the subject inquiry and necessarily includes information that is in opposition to as well as in support of any position(s) and claim(s) of Palisades, or (b) might lead to individuals who, or documents which, might possess or contain information with respect to the subject of inquiry.

K. The singular form of a word shall be construed to mean the plural, and the plural to mean the singular, when doing so would ensure the provision of additional information or more complete answers and would avoid questions from being considered ambiguous, inaccurate, or confusing.

L. "**And**" and "**or**" shall be construed as conjunctive or disjunctive to ensure the provision of additional information or more complete answers and to avoid the questions from being considered ambiguous, inaccurate, or confusing.

M. "**Person**" shall mean natural persons, individuals, proprietorships, partnerships, firms, corporations, institutions, bodies, joint ventures, estates, trusts, receivers, public corporations, other forms of legal entity, municipal corporations, federal, state, and local governments, all departments and agencies thereof, and any other governmental agencies, political subdivisions, groups, associations, or organizations, or any other group or combination acting as an entity.

N. "**Identify**" or "**identification**" means, when used in reference to:

i. A natural person: (1) full name; (2) present or last known residence, business address (including street name and number, city or town, and state or country), and telephone number; and (3) position, business affiliation, and job description at the time in question, with respect to the inquiry involved.

ii. A document: (1) its description (e.g., letter, memorandum, report, etc.); (2) its title, date, and the number of pages thereof; (3) its subject matter; (4) its author's identity; (5) its addressee's identity; and (6) its present location and its custodian's identity (if such document was, but is no longer, in the possession of or subject to control of Palisades).

iii. An oral communication: (1) date and the place where it occurred; (2) substance of the communication; (3) the identity of each person to whom such communication was made; and (4) the identity of each person who was present when such communication was made.

O. "**Describe**" means describe fully by reference to underlying facts rather than to ultimate facts or conclusions of fact or law, including time, place, manner, and identification of persons involved or related thereto.

P. The "**Project**" shall mean the 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas and any structures thereon.

Q. "**Including**" means "**including without limitation**."

R. "**Any**" includes "**all**," "**every**," and "**each**," and vice versa.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and describe the facts and circumstances surrounding the $1 million Promissory Note between Hodges and Defendant, including all negotiations of the terms of the Promissory Note and any expectations of collateral allegedly securing the Promissory Note.

**RESPONSE:**

**INTERROGATORY NO. 2:** Identify and describe the facts and circumstances surrounding the Guaranty between Hodges and Timothy Barton, including all negotiations of the terms of the Guaranty and any expectations of collateral allegedly securing the Promissory Note.

**INTERROGATORY NO. 3:** Identify and describe any efforts to execute on any Membership Interest Pledge Agreements related to the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**INTERROGATORY NO. 4:** Identify and describe any efforts to sell, transfer, dispose of, foreclose, or otherwise exercise control over any collateral allegedly securing the Promissory Note or Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**INTERROGATORY NO. 5:** If you believe that the world-wide COVID-19 pandemic is not a *force majeure* event under the $1 million Promissory Note between Hodges and Defendant, please describe why.

**RESPONSE:**

**INTERROGATORY NO. 6:** Identify and describe your understanding of the proposed use of the funds provided in the $1 million Promissory Note between Hodges and Defendant at the time the note was executed.

**RESPONSE:**

**INTERROGATORY NO. 7:** Identify and describe your understanding of the anticipated source of funds that would be used to repay the $1 million Promissory Note between Hodges and Defendant at the time the note was executed.

**RESPONSE:**

# EXHIBIT B

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's RESPONSES TO PLAINTIFFS' REQUEST FOR DISCLOSURE**

NOW COMES Defendant 2999TC LP, LLP ("**Defendant**") and, pursuant to Rule 194 of the Texas Rules of Civil Procedure, files its Responses to Plaintiffs' Request for Disclosure.

Dated: June 29, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that, on June 29, 2020, a true and correct copy of the above and foregoing document was served by electronic mail to:

Joakim Soederbaum
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
joakim.soederbaum@kellyhart.com

*/s/ Elizabeth Brandon*
Elizabeth Brandon

**RESPONSES TO REQUESTS FOR DISCLOSURE**

(a) The correct names of the parties to the lawsuit.

**RESPONSE:**

Timothy Barton is named as “Tim Barton.” Defendant believes that all other parties to the lawsuit are correctly named.

(b) The name, address, and telephone number of any potential parties.

**RESPONSE:**

At this time, Defendant is not aware of any potential parties.

(c) The legal theories and, in general, the factual bases of the responding party’s claims or defenses (the responding party need not marshal all evidence that may be offered at trial).

**RESPONSE:**

Defendant asserts that it is not liable on any claims or causes of action asserted by Plaintiffs because a *force majure* event has prevented or made impossible performance. Specifically, the world-wide COVID-19 pandemic has made performance of their obligations impossible and has otherwise frustrated performance. Defendant further asserts that the loans and liens arising therefrom are not perfected and may not be enforceable.

(d) The amount and method of calculating economic damages.

**RESPONSE:**

At this time Defendant has not asserted any claims that would entitle them to economic damages. However, Defendant intends to seek the recovery of all expenses of litigation, including reasonable attorneys’ fees from Plaintiffs.

(e) The name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each person’s connection with the case.

**<u>RESPONSE:</u>**

- Timothy Barton
  c/o Robert F. Kemp
  2815 Valley View Lane, STE 202
  Dallas, TX 75234
  T: 214-526-2156
  F: 214-526-2156
  lawyerkemp@cs.com

Mr. Barton is a named defendant, guarantor, and principal of the other named defendants. He has knowledge of the facts alleged in Plaintiffs' First Amended Petition and the facts related to any defenses.

- JMJ Development, LLC
  c/o Robert F. Kemp
  2815 Valley View Lane, STE 202
  Dallas, TX 75234
  T: 214-526-2156
  F: 214-526-2156
  lawyerkemp@cs.com

JMJ Development, LLC is a named defendant. A corporate representative of JMJ Development, LLC has knowledge of the facts alleged in Plaintiffs' First Amended Petition and facts related to any defenses.

- Mark Adams
  c/o Robert F. Kemp
  2815 Valley View Lane, STE 202
  Dallas, TX 75234
  T: 214-526-2156
  F: 214-526-2156
  lawyerkemp@cs.com

Mr. Adams is an employee of JMJ Development, LLC and has knowledge of the facts alleged in Plaintiffs' First Amended Petition and the facts underlying Defendants defenses.

- Vance McMurry
  Attorney at Law
  McMurry Law, PLLC
  508 W. Lookout Dr., Ste. 14-74

Richardson, Texas 75080
972-746-9656
888-388-0561 Fax
vance@mcmurrylegal.com

Mr. McMurry has knowledge of the facts alleged in Plaintiffs' First Amended Petition and the facts underlying Defendants defenses.

- L. Allen Hodges III
  c/o Joakim Soederbaum
  201 MAIN STREET, SUITE 2500
  FORT WORTH, TEXAS 76102
  TELEPHONE (817) 878-9369
  FAX (817) 878-9876
  joakim.soederbaum@kellyhart.com

Mr. Hodges has knowledge of the payment made to Defendant, the request for forbearance made by Defendant and the world-wide COVID-19 pandemic has made performance of Defendant's obligations impossible and has otherwise frustrated performance.

- Tejas Group, Ltd.
  c/o Joakim Soederbaum
  201 MAIN STREET, SUITE 2500
  FORT WORTH, TEXAS 76102
  TELEPHONE (817) 878-9369
  FAX (817) 878-9876
  joakim.soederbaum@kellyhart.com

A corporate representative of Tejas Group, Ltd. has knowledge of the payment made to Defendant, the request for forbearance made by Defendant and the world-wide COVID-19 pandemic has made performance of Defendant's obligations impossible and has otherwise frustrated performance.

- LAH III Family Specific Interest, Ltd.
  c/o Joakim Soederbaum
  201 MAIN STREET, SUITE 2500
  FORT WORTH, TEXAS 76102
  TELEPHONE (817) 878-9369
  FAX (817) 878-9876
  joakim.soederbaum@kellyhart.com

A corporate representative of LAH III Family Specific Interest, Ltd. has knowledge of the payment made to Defendant, the request for forbearance made by Defendant and the world-wide COVID-19 pandemic has made performance of Defendant's obligations impossible and has otherwise frustrated performance.

- Blackfoot Interest, Ltd.
  c/o Joakim Soederbaum
  201 MAIN STREET, SUITE 2500
  FORT WORTH, TEXAS 76102
  TELEPHONE (817) 878-9369
  FAX (817) 878-9876
  joakim.soederbaum@kellyhart.com

A corporate representative of Blackfoot Interest, Ltd. has knowledge of the payment made to Defendant, the request for forbearance made by Defendant and the world-wide COVID-19 pandemic has made performance of Defendant's obligations impossible and has otherwise frustrated performance.

(f) For any testifying expert:
(1) The expert's name, address, and telephone number;
(2) The subject matter on which the expert will testify;
(3) The general substance of the expert's mental impression and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;
(4) If the expert is retained by, employed by, or otherwise subject to the control of the responding party:
(A) All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
(B) The expert's current resume and bibliography.

**RESPONSE:**

At this time Defendant has only identified an expert on attorneys' fees. Defendant reserves the right to supplement these disclosures with additional experts as the case develops.

Keith Aurzada is an attorney in Dallas, Texas. He may testify regarding the reasonable and necessary attorney's fees incurred by the parties in this action. Mr. Aurzada may also provide rebuttal testimony to any opinions offered regarding attorney's fees by any other party in this action. Because this case is still pending, Mr. Aurzada does not provide a written report at this time, but will do so if necessary. Mr. Aurzada's professional biography may be found at: https://www.reedsmith.com/en/professionals/a/aurzada-keith

(g) Any indemnity and insuring agreements described in Rule 192.3(f).

**RESPONSE:**

At this time Defendant is not aware of any indemnity or insuring agreements relevant to this matter. Defendant reserves the right to supplement these disclosures with additional information as the case develops.

(h) Any settlement agreements described in Rule 192.3(g).

**RESPONSE:**

At this time Defendant is not aware of any settlement agreements relevant to this matter. Defendant reserves the right to supplement these disclosures with additional information as the case develops.

(i) Any witness statements described in Rule 192.3(h).

**RESPONSE:**

At this time Defendant is not aware of any witness statements relevant to this matter. Defendant reserves the right to supplement these disclosures with additional information as the case develops.

(j) In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

**RESPONSE:**

None at this time.

(k) In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

**RESPONSE:**

None at this time.

(l) The name, address, and telephone number of any person who may be designated as a responsible third party.

**RESPONSE:**

None at this time.