Civil Case No. 4:20-cv-1256-P

Adv Case No. 20-4078
Bankruptcy Case No. 20-43204-mxm11

Appellant – 2999TC, LLC, et

Appellees – L. Allen Hodges III, et al

Volume 4 – Appellant Record

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Defendants

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC, LLC,** | § | |
| | § | **CASE NO. 20-43204-MXM11** |
| **Debtor.** | § | |
| | § | |
| | § | |
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD. AND BLACKFOOT INTEREST, LTD.** | §<br>§<br>§<br>§<br>§ | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078** |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON** | §<br>§ | **CIVIL CASE NO. 4:20-CV-01256-P** |
| | § | |
| **Defendants.** | § | |

# INDEX

## DESIGNATION OF RECORD ON APPEAL AND STATEMENT OF ISSUES

**TO THE UNITED STATES BANKRUPTCY CLERK**:

COME NOW **2999TC, LLC**, **JMJ Development, LLC** and **Tim Barton** ("Appellants"), Appellants herein, and pursuant to Federal Rules of Bankruptcy Procedure 8009(a)(1), Appellants hereby designate the following items for inclusion in the record on appeal. Such designation of

pleadings and matters of record include all exhibits attached or referred to in the pleadings or matters of record:

| Vol 2 | Filing Date | Docket No. | Docket Text |
|---|---|---|---|
| Page 36 | 10/16/2020 | 1 | Notice of Removal and all attachments: |
| Vol 4 Pg 687 | 10/16/2020 | 2 | Adversary Proceeding Cover Sheet |
| Pg 689 | 10/16/2020 | 3 | Support/Supplemental Document/Exhibit A |
| Pg 697 | 10/16/2020 | 5 | Counterclaim by 2999TC LP, LLC, Tim Barton, JMJ Development, LLC against all plaintiffs. |
| Pg 704 | 10/23/2020 | 12 | Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court and Brief in Support filed by Plaintiffs Blackfoot Interest, Ltd., L. Allen Hodges III, LAH III Family Specific Interest, Ltd., Tejas Group, Ltd. |
| Pg 723 | 10/23/2020 | 30 | Motion for remand filed by Plaintiffs Blackfoot Interest, Ltd. , L. Allen Hodges III, LAH III Family Specific Interest, Ltd. , Tejas Group, Ltd |
| Pg 739 | 10/25/2020 | 13 | Objection to Motion to dismiss 2999TC LP, LLC ONLY filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC. |
| Pg 753 | 10/30/2020 | 19 | Objection to Motion to dismiss 2999TC LP, LLC ONLY filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC. |
| Pg 774 | 11/11/2020 | 26 | Brief in support filed by Defendants 2999TC LP, LLC, Tim Barton, JMJ Development, LLC |
| Pg 788 | 11/16/2020 | 35 | Court admitted exhibits date of hearing 11/16/2020 (with all exhibits) |
| Pg 789 | 11/18/2020 | 31 | Order Granting Second Amended Motion To Dismiss Defendant 2999TC LP, LLC Only And Abstain And Remand To State Court. |
| Pg 792 | 11/18/2020 | 33 | Notice of Appeal |
| Pg 802 | 11/19/2020 | 36 | Amended Notice of Appeal |
| Pg 809 | 12/2/2020 | | Transcript of Proceedings on 11/16/2020 |

**Statement of Issues on Appeal**

1. Did the Bankruptcy Court err in remanding the Adversary Case to the state court?

2. Did the Bankruptcy Court err in granting Plaintiffs' Motion to Dismiss Defendant 2999TC LP, LLC under Federal Rules of Civil Procedure 41(a)(2 while counterclaims were pending against the Plaintiffs.

3. Did the Bankruptcy Court err in dismissing claims against 2999TC in the Adversary Case?

4. Did the Bankruptcy Court err in abstaining from hearing the claims in the Adversary Case?

5. Did the Bankruptcy Court err in abstaining from hearing the claims in the Adversary Case under equitable abstention?

6. Did the Bankruptcy Court err in concluding that issues presented in the Adversary Case were non-core?

7. Did the Bankruptcy Court err in concluding that issues presented in the Adversary case were not core?

8. Did the Bankruptcy Court err in concluding that issues presented in the Adversary Case were not related to?

9. Did the Bankruptcy Court err in finding that equitable remand was proper under §1452(b)

Dated: December 2, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
**ATTORNEYS FOR APPELLANTS**
**2999TC, LLC, JMJ Development, LLC**
**and Tim Barton**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 2, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr., Tejas Group, Ltd.,LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd
c/o Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

141-316567-20

FILED
TARRANT COUNTY
8/14/2020 12:01 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendants 2999TC LP, LLC ("***Defendant***"), JMJ Development, LLC, and Timothy Barton and file this Response to Plaintiffs' Motion for Summary Judgment, and in support thereof respectfully shows the Court as follows:

## I. SUMMARY

1. Plaintiffs seek a judgment from this Court for over $4,250,000 without allowing the Defendant to conduct discovery. Defendant, for its part, has consistently alleged that it has affirmative defenses that excuse its performance – namely, impossibility of performance and frustration of purpose. Defendant asserted such defenses in its Original Answer, included such defenses in response to Requests for Disclosures, and has propounded discovery to support its allegations.

2. Despite consistently asserting its affirmative defenses, Defendant has not been afforded the opportunity to conduct discovery to support its defenses. Defendant served discovery



EXHIBIT "B-17" 000520

requests on Plaintiffs on July 21, 2020. Plaintiffs have not yet responded or produced documents. As a result, Defendant is forced to rely only on the evidence it currently has in its possession. That evidence, limited as it has been by a lack of discovery, at a minimum establishes a factual dispute regarding the affirmative defenses of impossibility of performance and frustration of purpose.

## II. BACKGROUND

### A. Procedural Background

3. Plaintiffs filed their Original Petition in this case on April 22, 2020. As set forth in Defendant's *Motion to Quash Service*, however, Plaintiffs did not immediately effect service of process on Defendant. *See Motion to Quash Service* at 1-2.

4. Defendant filed its Original Answer (the "***Answer***") on June 10, 2020. Defendant's Answer sets forth several affirmative defenses against the claims asserted by Plaintiffs, including waiver, ratification, prior material breach, illegality, usury, and the doctrines of **impossibility of performance and frustration of purpose**. *See Defendant's Original Answer and Request for Disclosure* at 2, a true and correct copy of the Disclosures is attached hereto as **Exhibit A**.

5. Plaintiffs filed their Motion for Summary Judgment ("***MSJ***") on July 23, 2020. The MSJ seeks a summary judgment on Plaintiffs' claim for breach of the promissory note against Defendant, as well as their claim for breach of the guaranties against co-defendants JMJ Development, LLC ("***JMJ***") and Tim Barton ("***Barton***").

6. Defendant then promptly served both its First Set of Requests for Production and First Set of Interrogatories to Plaintiff I. Allen Hodges, III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***") on August 7, 2020 (collectively, the "***Discovery Requests***"). The deadline for Hodges to respond to the Discovery Requests is September 6, 2020.

7. The Discovery Requests seek, *inter alia*, information and documents relating to (1) the negotiation of the promissory note and guaranty agreements which are the subject of this suit, (2) the *force majeure* provision contained in the promissory note, (3) the anticipated source of funds that would be used to repay the promissory note prior to the events caused by the word-wide COVID-19 pandemic, and (4) the collateral securing the guaranty agreements at issue in this case. A true and correct copy of the Discovery Requests is attached hereto as **Exhibit B**.

8. The Hearing on the MSJ is currently set for August 20, 2020—before the day Hodges is required to respond to the Discovery Requests. Further, no depositions have been taken or scheduled in this case. Indeed, there is not a scheduling order in place, nor have Plaintiffs proposed a scheduling order.

**B. Factual Background**

9. On or about September 16, 2019, Defendant executed two documents each entitled "Promissory Note" (the "***Notes***") to pay (1) in the amount of $1,000,000 "to The Estate of Leland A. Hodges Jr." ("***Hodges***") and (2) and $3,000,000 "ratably to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd." (collectively, "***Tejas***" and together with Hodges, "***Plaintiffs***") (the "***Notes***"): one to Hodges n the amount of $1,000,000 and one with Tejas in the amount of $3,000,000. *See* Declaration of Timothy Barton attached hereto as **Exhibit C**. At all times Plaintiffs were informed of the purpose of the Notes – to facilitate the acquisition of real estate in Dallas, Texas to be developed into a five star hotel and resort (the "***Project***"). *See id.*; *see also* Affidavit of L. Allen Hodges III attached to the MSJ, at ¶ 4. Further, at all times Plaintiff were informed that the Notes would be paid back from take-out financing acquired for the development of the Project.

10. Contemporaneously with the Notes, Defendant and Tejas executed the Conversion Option Agreement" ("***Conversion Option***") attached hereto as **Exhibit D** on September 16, 2019 as referenced in the Note to Tejas which granted to Tejas an option to convert the amounts owed to Tejas to membership interests in the Defendant entity in exchange for cancellation of the Note along with any related costs and fees.

11. Contemporaneously with the Notes and the Conversion Option, two Membership Interest Pledge Agreements were executed by (1) Tim Barton as the Pledgor, the Defendant, and Hodges and (2) Tim Barton as Pledgor, Defendant, and Tejas (collectively, "***2999TC Pledges***") both of which are attached hereto as **Exhibits E & F** respectively.

12. Although dated September 16, 2019 the Notes were not actually executed in their final form until September 18, 2020 after they were revised by Plaintiffs' counsel.

13. Against this backdrop, Defendant began informing Plaintiffs that the pandemic was making performance under the Notes impossible and was otherwise preventing Defendant from operating or developing the Project as anticipated. *See* Barton Declaration at ¶ 8, 11.

14. Despite Defendant's best efforts, the pandemic has made performance under the Notes impossible and was otherwise prevented Defendant from operating or developing the Project as anticipated. *See* Barton Declaration at ¶ 11.

## III. ARGUMENT AND AUTHORITIES

### A. Legal Standard

15. "The purpose of summary judgment is to 'provide a method for summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact." *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). For this reason, the movant has the burden of showing there is no genuine issue of material fact and it is

entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In resolving Plaintiffs' MSJ, the Court must not weigh the evidence—it may only determine if a material question of fact exists. *Huckabee v. Time Warner Entm't Co., L.P.*, 19 S.W.3d 413, 422 (Tex. 2000). All evidence favorable to Defendant, including the evidence cited in this Response, must be taken as true. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Additionally, every reasonable inference must be afforded to Defendant and any doubt resolved in its favor. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995). In short, unless Plaintiffs can prove to absolute certainty that their claims must prevail, the MSJ must be denied. As shown below, Plaintiffs cannot meet this high burden.

16. Further, where a party establishes that it cannot present facts essential to justify opposition to a motion for summary judgment, courts "may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had and may make such other order as is just." Tex. R. Civ. P. 166a(g); *see also Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 161 (Tex. 2004) (citing cases); *Levinthal v. Kelsey-Seybold Clinic, P.A.*, 902 S.W.2d 508, 512 (Tex. App.—Houston [1st Dist.] 1994, no writ).

**B. Performance Under the Notes has been Frustrated and is Impossible**

17. The MSJ should be denied because performance under the Notes has been frustrated and rendered impossible. Texas courts have referred to the impossibility defense as impossibility of performance, commercial impracticability, and frustration of purpose. *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 339 (Tex. App.—Eastland 2009, no pet.). Texas courts have typically applied the defense in three instances: (1) the death or incapacity of a person who

is necessary for performance; (2) the destruction or deterioration of a thing that is necessary for performance; or (3) prevention by governmental regulation. *See id*. at 340.

18. Under Texas law, the defense of impossibility of performance is based upon Section 261 of the Restatement (Second) of Contracts, which provides: "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." *Tractebel Energy Mktg., Inc. v. E.I. Du Pont de Nemours & Co*., 118 S.W.3d 60, 64 n. 6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); s*ee also FP Stores, Inc. v. Tramontina US, Inc*., 513 S.W.3d 684, 693 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

19. For the purposes of Texas law, frustration of purpose is the functional equivalent of the impossibility defense. "Texas courts refer to the impossibility defense as "impossibility of performance, commercial impracticality, and frustration of purpose." *Hollis v. Gallagher*, No. 03-11-00278-CV, 2012 Tex. App. LEXIS 7547, 2012 WL 3793288, at *7 (Tex. App.—Austin Aug. 28, 2012, no pet.) (mem. op.).

20. Here, the MSJ should be denied because Defendant's performance under the Notes has been rendered impossible, thereby frustrating the purpose of the Notes. Specifically, government regulation has prevented Defendant from operating and developing the Project as anticipate, a global pandemic has deteriorated the thing necessary for performance, and performance has otherwise been rendered impracticable through no fault of Defendant.

21. Against this backdrop, Defendant began informing Plaintiffs that the pandemic was making performance under the Notes impossible and was otherwise preventing Defendant from operating or developing the Project as anticipated. *See* Barton Declaration at ¶ 8, 11.

22. Despite Defendant's best efforts, the pandemic has made performance under the Notes impossible and was otherwise prevented Defendant from operating or developing the Project as anticipated. *See* Barton Declaration at ¶ 11.

23. As a result, the global COVID-19 pandemic has made Defendant's performance under the Notes impossible, thereby frustrating the purpose of the Notes.

**B. Key Employee of Defendant is No Longer Employed**

24. The transactions that are the subject of this suit were primarily and often exclusively handled by Mark Adams ("***Adams***") on behalf of the Defendants who recently left the employment of the Defendants in June of 2020 with little notice. As a result, Defendants are unable to access or obtain all documents that were under the control or maintained by Adams including but not limited to emails and other written communications and executed documents. For instance, certain exhibits attached hereto were discovered the day before this Response was filed. A related entity of Defendant has actually filed suit against Adams for breach of fiduciary duties and other matters related to the work performed on transactions unrelated to this case during his employment. Given such an adversarial relationship between Adams and Defendant, Adams is not going to be cooperative in Defendant's efforts to obtain the necessary documents and emails in order to present its defense in this matter.

**C. Defendant should be Afforded Time to Bolster its Evidence**

25. "[W]hen facts are necessary for the resolution of a motion for summary judgment, a [party] generally has the right to engage in necessary discovery of fact-specific issues." *In re Greater McAllen Star Props.*, 444 S.W.3d 743, 750 (Tex. App.—Corpus Christi – Edinburg 2014, orig. proceeding) (citing *Levinthal*, 902 S.W.2d at 511).

26. Defendant's Answer asserts several affirmative defenses that preclude summary judgment in Plaintiffs' favor, including the doctrines of impossibility of performance and frustration of purpose. The parties' assumptions when entering into the Notes are therefore relevant and material to establishing Defendant's affirmative defenses. The Discovery Requests to Hodges seek information on this very topic. *See generally*, **Exhibit B**. For example, Interrogatory No. 1 seeks information concerning the facts and circumstances surrounding the Notes, including negotiations of the terms of the Notes. *Id*. Interrogatory No. 5 seeks facts concerning whether the COVID-19 pandemic constitutes a *force majeure* event under the Notes. *Id*. Requests for Production Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, and 13 similarly seek production of documents related to the formation of the Notes and the performance thereunder, including internal communications between Plaintiffs that Defendant cannot otherwise obtain.

27. Defendant anticipates that Hodges' testimony will reveal that the world-wide impact of COVID-19, including but not limited to government mandates impacting the global economy, constitutes an event that rendered Defendant's performance impossible and/or impracticable and the non-occurrence of which was a basic assumption during the parties' negotiations. Defendant further expects that Hodges' testimony will indicate that the aforementioned circumstances frustrated the purpose of the Notes, given that the funds which are the subject of the Notes were intended to be used to procure additional financing to acquire property. These facts will establish that any alleged delay in performance under the Notes is excused.

28. Without—at a minimum—responses to the Discovery Requests identified above and production of relevant documents, Defendant would be severely prejudiced by having to defend itself against the MSJ without evidence that is both relevant and otherwise unobtainable.

Defendant should also be able to depose Hodges, as well as other parties with knowledge of facts that can support Defendant's affirmative defenses discussed herein.

**C. Plaintiffs have Failed to Prove its Entitled to Summary Judgment on their Claims**

29. Assuming Plaintiffs are correct in stating that "Plaintiffs must establish only that: (1) the Notes exist; (2) Plaintiffs are the legal owners and holders of the Notes; (3) 2999TC is the maker of the Notes; and (4) a certain balance is due and owing on the Notes" ("***Plaintiffs' Test***") Plaintiffs have nonetheless failed to carry their burden as to each of these elements.

**i. Existence of the Notes**

30. Plaintiffs' have failed to prove the existence of the Notes. Although the Notes are each executed and dated September 16, 2020, the Notes were revised by either Adams or Plaintiffs' counsel and the first pages of each of the Notes were slip sheeted into the Notes after execution and funding without consent of Tim Barton as the signer on behalf of the Defendants on both Notes as evidenced by the email exchange between Adams and Brandon Hill, Plaintiffs' transaction counsel attached hereto as **Exhibit G.** At a minimum, such revision removed the right to prepay the Notes which was a material provision and which was specified in the Term Sheet. This resulted in a prepayment penalty. In the event the Plaintiffs chose to call the Notes early, it became unclear whether or not the prepayment penalty would apply if the Plaintiffs chose to call the notes prior to maturity which they ended up doing as evidenced by Mr. Hodges affidavit. Although Defendants attempted to clarify the application of the prepayment penalty in a proposed second amendment as evidenced by the emails and proposed amendment attached as **Exhibit H,** such amendment was not ever finalized and executed by the parties. Because of such a prepayment penalty, refinancing the Notes become too expensive even for certain hard money investors who Defendant intended to use to refinance the Notes until such penalties were discovered. As such, the amended Notes as

attached to Plaintiffs' motion are not enforceable obligations against the Defendant as they lacked consideration and were not authorized.

31. Additionally, Defendants have uncovered multiple versions of each of the two Notes which are attached as **Exhibit I** which are inconsistent with the Notes attached by Plaintiff to its Motion including the signatures on the Notes. As such, further discovery is necessary to resolve these issues especially where Defendant is not able to physically examine the original executed Notes which Plaintiff claims to possess. Moreover, certain discrepancies exist between the Notes and even the signatures on the Notes, which appear to not match that of Mr. Barton, as compared to the Guarantees and even when compared to the receipt of the Notice of Call Election as referenced in section 8 of Mr. Allen Hodges' ("***Mr. Hodges***") Affidavit (attached to Plaintiffs' Motion as Exhibit A). Because of Adam's departure, these documents and discrepancies were just discovered the day before the filing of this Response.

32. Not only did the slip sheet amendment to the Notes described above lack consideration, each First Amendment to Promissory Note (collectively, "***Amendments***") attached as Exhibit A-1 to Plaintiffs' Motion lacked consideration. Mr. Hodges fails to mention in his Affidavit describing his meeting on February 21, 2020 with Mr. Barton that both Amendments were executed at his demand and at a meeting where he would not allow any person associated with Mr. Barton to participate, including Mr. Barton's counsel who was actually available and located a few offices away from the meeting even though Mr. Hodges brought multiple witnesses as stated in his Affidavit. (see section 8 of the Affidavit attach to Plaintiffs' Motion as Exhibit A). Mr. Barton only executed the documents presented including the Receipt under duress of Mr. Hodges and received no benefit or other consideration from executing the Amendment or the receipt. As a result, such amended Notes are not enforceable.

33. For each reason described above, Plaintiffs have failed to show that the existence of the Notes and are further reasons why Defendants need discovery in order to approve certain defenses to the extent described above.

**ii. Legal Owners and Holders of the Notes**

34. Plaintiffs have further failed to prove that they are "holders and legal owners of the Notes" under the third element of the Plaintiff's Test. According to section 1.201 of the Texas Business and Commerce Code, a "holder" means (A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; (B) the person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or (C) a person in control of a negotiable electronic document of title.

35. The Hodges Note states that the maker will pay the amount of $1,000,000 "to The Estate of Leland A. Hodges Jr." as requested by Mr. Hodges. However, an estate is not a "person" or legal entity which can enter into any sort of transaction or be the payee on a note as stated. Rather, only the executor or in this case, the "independent executor" (as alleged in section 2 of Mr. Hodges' Affidavit) on behalf of an estate would need to be the party to whom the Note was to be paid especially for the purposes of summary judgment. For the purpose of establishing the Hodges Plaintiff is the holder and

36. legal owner, the Note would need to be payable to the Hodges Plaintiff, which is "L. Allen Hodges III, As Independent Executor of the Estate of Leland A. Hodges Jr." and not "The Estate of Leland A. Hodges Jr." which is not the same – only the executor (or similar authorized representative acting on behalf of an estate) can be a holder which such person does on behalf of the estate. This issue is further exacerbated by the fact that there are two executors as

stated by Mr. Hodges in section 2 of his Affidavit. Finally, the Hodges Plaintiff apparently does not even have the necessary authority to enter into any transaction (especially where the lender on the Note is just the estate) and resulting litigation on behalf the estate where there are 2 executors and which requires authorization by the Court including under sec. 351.051 of the Texas Estates Code.

37. Likewise, Plaintiffs have failed to prove it is the "holder" of the Tejas Note under the same test as described above. The Tejas Note specified three different lenders consisting of all of the Plaintiffs other than Hodges. Only one person can physically possess a note and be a "holder" just like one person can only possess a personal check. There cannot be multiple version of the same Note that can be physically possessed and held by three separate "holders." And in this case, Mr. Allen Hodges claims in section 5 of his Affidavit that "[e]ach of the Plaintiffs advanced one fourth of the total Loan amount." However, such a breakdown is not contained within the Tejas Note or allocated between separate Notes.

**iii. Maker of the Note**

38. As previously stated, the amendment to the Notes resulting from slip-sheeting the first page after execution that was not authorized or performed by 2999TC LP, LLC causes 2999TC LP, LLC to not be the maker on the Notes that were attached by Plaintiffs to their Motion.

**iv. Certain Balance Due**

39. Finally, Plaintiffs have failed to prove the final element of the Plaintiffs' Test that a "a certain balance is due and owing on the note."

40. Plaintiffs trough their counsel misrepresented certain defaults against the Defendant including the obligation to pay fees of $12,795.00 consisting of (i) legal fees of $6,795 related to the preparation of the Notes and other transaction documents and (ii) $6,000 for

"additional fees" which were never defined. Plaintiffs' counsel in its default letter sent on January 14, 2020 (attached as **Exhibit J**) misrepresented the following neither of which was ever agreed to:

> "[T]hat the following items, unless timely cured, will constitute additional Events of Default under both Notes:
>
> 1. You, individually, failed to comply with Lenders' request for copies of the organizational documents for the pledgors owning the assets referenced in, and described in Exhibit A to, the personal guaranties you executed in connection with the Loans. Pursuant to paragraph 6(c), your failure to timely comply with the Lenders' reasonable request for such documents will constitute an Event of Default under both Notes unless cured within thirty (30) days of this letter; and
>
> 2. Borrower failed to pay Lender's out-of-pocket costs and expenses incurred incidental to the Loans, as agreed in the September 13, 2019, Terms Sheet. Pursuant to paragraph 6(c), Borrower's failure to do so will constitute an additional Event of Default under both Notes unless cured within thirty (30) days of this letter.

41. Such notice was sent to Mr. Adams and Mr. Barton without copying Defendant's transaction counsel whom Plaintiffs knew represented the Defendants.

42. The "Terms Sheet" which is attached as **Exhibit K** was non-binding and states in the first paragraph that "this term sheet is intended solely as a basis for further discussion amongst [2999 TC LP LLC] and Lender" and also includes a "Non-Binding" section stating that only the Governing Law section was intended to be binding.

43. Neither the Notes nor any other document or agreement executed by the Defendants contains any obligation for the Defendant to pay such legal fees or "other fees." In fact, Plaintiffs attempted to remedy that issue by sending to Mr. Adams without any discussion or notice, an executed second amendment to the Notes which contained an obligation to pay such fees. (Such email and second amendment are attached hereto as **Exhibit L**) At that point, such amendment was forwarded to Defendant's transaction counsel and was never executed.

44. Nonetheless, Defendants paid $12,795.00 as evidenced by Mr. Hodges' Affidavit and financial documents attached hereto as **Exhibit M** is to be treated as a payment towards the principal or interest on the Notes. The calculation of the amount owed as asserted by Plaintiff is not correct and disputed by the Defendants and thus Plaintiffs are unable to meet the fourth element of the test to prove up a note that "a certain balance is due and owing on the note." Given that the Defendant paid an additional $12,795.00 resulting from misrepresentations made by Plaintiffs' counsel such amounts should be deemed an application either to principal or interest and if to principal, such would reduce the calculation of interest on the Notes. Such amount should be applied proportionately or split evenly between the Notes.

45. Furthermore, the funds defined in the Notes were not transmitted nor released to the Defendants until after September 16, 2019. As a result, any due dates and calculation of interest should be modified according to the date such funds were transmitted or released to the Borrower. Further discovery is necessary to determine the proper calculation of such interest.

46. Likewise, the method of calculation was ambiguous and cause of confusion as demonstrated by the email exchange between Adams and Plaintiffs' counsel prior to the first quarterly interest payment being made attached hereto as **Exhibit N**. Such issue was not resolved.

47. Defendant was informed that Plaintiff Tejas had decided to exercise the Conversion Option by Mark Adams but is unable to obtain or access the relevant documents and as such, further discovery is necessary. If the Conversion Option was exercised, then the Plaintiff Tejas cannot show that "a certain balance is due and owing on the Tejas Note" as required to prevail on its Motion as all debt under the Tejas Note would be cancelled. This would also result in cancelling all related costs and fees Defendant was obligated to pay for the Tejas Notes which would require bifurcating all required costs and fees between the two Notes in order to allocate such to the Tejas Note only which is not possible given the failure of Plaintiffs to allocate any costs and fees between the two Notes. Plaintiff has not asserted in its Affidavit or provided any evidence that the Conversion Option was not exercised.

48. Plaintiff has also asserted in its Motion as referenced in section 8 of by Mr. Hodges' Affidavit that the Plaintiffs exercised their option under the Notes to "call all amounts due option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later." However, section 4 of both Notes simply state, "[u]pon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option." Contrary to Mr. Hodges' Affidavit, the call option does not require the payment of accrued interest including after the date the Plaintiffs exercised the call option. As a result of Plaintiffs including such interest in its claims, the calculation of the amounts claimed by Plaintiffs is in dispute.

49. The Tejas Note states that is to "pay ratably" to the Tejas Plaintiffs. "Ratably" means that the amount is paid pro-rata to each of the Lenders, and thus is to be paid proportionately between the Tejas Plaintiffs according to some methodology that is not defined in the Note. The "certain amount due" has to be determined on the face of the Note without reference to other

documents such as Hodges' Affidavit. (see Resolution Trust Corp. v. Oaks Apartments Joint Venture, 966 F.2d 1001-1002 (5th Cir. 1992))

50. Finally, the remedies on the Tejas Note for a default is in conflict with the remedies provided in the 2999TC Pledges. The 299TC Pledges describes the remedies for an Event of Default under the "Transaction Documents," which are defined as "the [Tejas] Note, guaranty, along with any other related documents", which are limited to the following: "(a) Lender may vote the Pledged Membership Interests on all Company matters and sign written consents in lieu of meeting as owner of the Pledged Membership Interests; (b) Lender may take absolute title to the Pledged Membership Interests by completing the assignment with respect to the Pledged Membership Interests, and after this transfer Lender will solely own the Pledged Membership Interests; (c) Lender may, at its option, exercise any and all rights, privileges, options or powers pertaining or relating to the Pledged Membership Interests." The remedies are not cumulative and do not provide for an election of remedies between the 2999TC Pledge and the Note (which does not reference the 2999TC Pledge). As a result, such remedies do not provide for collection of monetary payment and Plaintiffs from showing a "certain balance due." Even if an election of remedies was permitted, Plaintiff Tejas have provided no evidence that they have not elected such a remedy or otherwise disclaimed the remedies. Furthermore such a remedy would cause the amounts due under the Hodges Note, which allegedly include required costs and fees, to be miscalculated resulting in all Plaintiffs not being able to show a "certain balance due."

**D. Plaintiffs are Required to Prove the Elements of a Breach of Contract and not just a Note.**

51. The Plaintiff's Test first assumes that the document in question is actually a Promissory Note. Just because the Notes are labeled as "Promissory Notes" does not necessary

mean that they are "notes" for the purposes of Plaintiff's Test. Plaintiff's Test is used in situation where the Promissory Notes are negotiable instruments. However, the Notes that are the subject of this case would be considered non-negotiable. Plaintiffs would also have to prove breach of contract. Both Notes contain provisions which are not typical in a promissory notes and create contingencies. For instance, the "balance is due and owing on the Notes" is contingent upon whether or not the Conversion Option is exercised, whether the Call Notices are exercised and when, and exercising of the remedies under the 299TC Pledge – all of which are "transaction documents" and contracts that require proving up the elements to a breach of contract claim and exist together with the Notes. Additionally, the Tejas Note is payable pro-rata as previously described.

**E. Legal Fees**

52. Finally the Plaintiffs have failed to prove up their legal fees as they failed to provide detailed information showing the time spent on each task. *See Rohrmoos Venture v. UTSW DVA Healthcare, LL*P, 2019 WL 1873428 at 28 (Tex. 2019) and as further supported and described in the Unsworn Declaration of Marsh M. Halpern attached hereto as **Exhibit O**.

**F. Guaranties**

53. The ability for the Plaintiffs to prevail on their motion related to the guarantees is dependent upon them prevailing on the Notes. As stated, Plaintiffs have not carried their burden and thus cannot prevail on the guarantees.

54. The Guarantees are not enforceable as the Guarantor did not consent to the amendments that have been referenced above which were made after each of the Defendant guarantors executed their respective guarantees. A guarantor is discharged by a material alteration of the underlying contract that lacks the consent of the guarantor and harms the guarantor. Beal

Bank, SSB, 227 S.W.3d at 192; Austin Hardwoods Inc. v. Vanden Berghe, 917 S.W.2d 320, 325 (Tex. App.-El Paso 1995, writ denied); see also McKnight v. Va. Mirror Co., 463 S.W.2d 428, 430 (Tex. 1971).

55. Furthermore, performance of the Guaranty was impossible. Section 14 requires that a first priority lien be granted upon the unencumbered value of the properties that were listed on the exhibit attached thereto. The exhibit included the debt as well as the unencumbered value. However, it is impossible to grant a lien on "unencumbered value." Liens on real property are either priority or subordinate on the entire property. There is no way to bifurcate liens by value. Additionally, the guarantees contain no severance clause. As a result, it was impossible for Barton to perform on such guarantees.

## IV. CONCLUSION

56. The Court should deny the MSJ and/or allow Defendant to conduct discovery related to its affirmative defenses before considering the MSJ.

Dated: August 13, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*
Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*/s/ Robert F. Kemp*
Robert F. Kemp
Attorney at Law
2815 Valley View Lane, Suite 202
Dallas, TX 75234
Telephone: (214) 526- 9601
Cell: (214) 356-0624
Fax: (214) 526-2156

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that, on August 13, 2020, a true and correct copy of the above and foregoing document was served by electronic mail to:

Dee J. Kelly, Jr.
Joakim Soederbaum
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
dee.kelly@kellyhart.com
joakim.soederbaum@kellyhart.com

Robert F. Kemp
2815 VALLEY VEIW LANE, SUITE 202
DALLAS, TEXAS 75234
lawyerkemp@cs.com

*/s/ Elizabeth Brandon*
Elizabeth Brandon

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURES**

Subject to its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Plea to the Jurisdiction) and Special Exceptions, and Motion to Dissolve Temporary Restraining Order and Motion to Stay Case, and without waiver of arguments set forth therein, Defendant 2999 TC LP, LLP ("**Defendant**") files this Original Answer and Request for Disclosures in response to Plaintiffs' Original Petition as follows:

**GENERAL DENIAL**

1. In accordance with Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained in Plaintiffs' Original Petition, and demands strict proof thereof. Defendant further reserves the right to amend its Original Answer at a future date in accordance with the Texas Rules of Civil Procedure.

## SPECIFIC DENIAL

2. Defendant specifically denies Plaintiffs' allegations that all conditions precedent have been performed or have occurred.

## AFFIRMATIVE DEFENSES

3. Subject to and without waiving the foregoing general and specific denials, Defendant asserts the following affirmative defenses:

4. Plaintiffs fail to plead adequate facts to establish standing to assert claims against Defendant

5. Plaintiffs fail to state facts sufficient to constitute a claim upon which an relief may be granted.

6. Plaintiffs' claims are barred, in whole or in part, by waiver.

7. Plaintiffs' claims are barred, in whole or in part, by ratification.

8. Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, including equitable estoppel, promissory estoppel, and quasi-estoppel.

9. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' prior material breach of the contracts.

10. Plaintiffs' claims are barred, in whole or in part, by the doctrines of impossibility of performance and frustration of purpose.

11. Plaintiffs' claims are barred, in whole or in part, by illegality.

12. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate its alleged damages.

13. Plaintiffs' claims are barred, in whole or in part, because the money lent included usurious interest.

14. Any recovery against Defendant is barred or limited under the principles of assumption of the risk and informed consent.

15. Plaintiffs' claim for attorneys' fees is improper because, amount other reasons, Plaintiff is not entitled to recover attorneys' fees from Defendant under applicable law, including Chapter 38 of the Texas Civil Practice & Remedies Code.

**REQUEST FOR DISCLOSURES**

16. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs are requested to disclose, within 30 days of service of this request, the information described in Rule 194.2.

Dated: June 10, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant 2999 TC LP, LLP*

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on June 10, 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's FIRST SET OF REQUESTS FOR PRODUCTION TO I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR.**

TO: I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., by and through its attorney of record Joakim Soederbaum, 201 Main Street, Suite 2500, Fort Worth, Texas 76102, joakim.soederbaum@kellyhart.com

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, 2999TC LP, LLC ("***Defendant***") serves this, its First Set of Requests for Production to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***"). The responses and requested documents to such requests for production shall be served upon Defendant within thirty (30) days of the service of these requests.

Dated: August 7, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Managing Member*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above pleading was served on all counsel of record via electronic mail on this 7th day of August 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

## I.
## INSTRUCTIONS

1. For each document or other requested information that you assert is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other ground for exclusion. Also, for each document you claim is not discoverable, state the date of the document, the name, job title, and address of the person who prepared it; the name, job title, and address of the person to whom it was addressed, to whom it was circulated, or who saw it; the name, job title, and address of the person now in possession of the document; the description of the subject matter of the document; and the present location and custodian of the document.

2. For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located, and the reason(s) for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

3. These Requests are continuing in nature. If further information comes into your possession or is brought to your attention, or the attention of your agents, employees, officers, directors, representatives or attorneys in the court of trial or prior to trial, then supplementation of your responses is required pursuant to the Texas Rules of Civil Procedure.

4. To the extent any capitalized term used in these Requests is not specifically defined herein, such term shall have the same meaning as in Plaintiff's Original Petition.

5. Except as otherwise stated, the relevant time period with regard to these Requests is from January 1, 2019 through the present.

## II.
## DEFINITIONS

As used herein, the following terms shall have, in addition to the common usage of the word, the meanings indicated below:

A. "**Defendant**" shall mean 2999TC LP, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

B. "**Tejas Group**" shall mean Tejas Group, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

C. "**LAH**" shall mean LAH III Family Specific Interest, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

D. "**Blackfoot**" shall mean Blackfoot Interest Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

E. "**JMJ**" shall mean JMJ Development, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

F. "**Hodges**," "**you**," and "**your**" refers to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. and to each person who, with respect to the subject matter in the Requests below, was or is acting or was or is purporting to act on Hodges' behalf, including Hodges' agents, representatives, or other persons acting, or purporting to act, on Hodges' behalf.

G. "**Document**" or "**documents**" are used herein in their broadest sense, and mean all tangible items, and all writings, drawings, graphs, charts, photographs, sounds recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This definition includes originals, copies, or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

H. "**Statement(s)**" means any written statement signed, adopted or approved in writing by the person making it; any stenographic, mechanical, electrical, audio, video, or other

type of recording of an individual's oral statement; or any substantially verbatim transcription of such recording.

I. "**Communication**" means any transmission of thoughts, opinions, or information by speech, writing, or signs.

J. "**Relate to**" or "**relating to**" means, whether directly or indirectly: reflecting, referring to, pertaining to, constituting, containing, leading to, concerning, discussing, describing, commenting upon, mentioning, evidencing, showing, embodying, quoting, describing, bearing upon, supporting, corroborating, proving, refuting, disproving, contradicting, regarding, containing information regarding, made in connection with or by reason of, or deriving or arising from. These terms mean, without limitation, any reference or relationship that either (a) provides information with respect to the subject inquiry and necessarily includes information that is in opposition to as well as in support of any position(s) and claim(s) of Palisades, or (b) might lead to individuals who, or documents which, might possess or contain information with respect to the subject of inquiry.

K. The singular form of a word shall be construed to mean the plural, and the plural to mean the singular, when doing so would ensure the provision of additional information or more complete answers and would avoid questions from being considered ambiguous, inaccurate, or confusing.

L. "**And**" and "**or**" shall be construed as conjunctive or disjunctive to ensure the provision of additional information or more complete answers and to avoid the questions from being considered ambiguous, inaccurate, or confusing.

M. "**Person**" shall mean natural persons, individuals, proprietorships, partnerships, firms, corporations, institutions, bodies, joint ventures, estates, trusts, receivers, public

corporations, other forms of legal entity, municipal corporations, federal, state, and local governments, all departments and agencies thereof, and any other governmental agencies, political subdivisions, groups, associations, or organizations, or any other group or combination acting as an entity.

N. “**Date**” means the exact date, month, and year, if ascertainable; otherwise, the term “date” means the best available approximation, including by relationship to other events.

O. “**Including**” means “**including without limitation**.”

P. “**Any**” includes “**all**,” “**every**,” and “**each**,” and vice versa.

Q. The “**Project**” shall mean the 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas and any structures thereon.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All documents and communications relating to the $3 million Promissory Note between Tejas Group, LAH, and Blackfoot and Defendant.

**RESPONSE:**

**REQUEST NO. 2:** All documents and communications relating to the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 3:** All documents related to “Collateral Security” as described in paragraph 6(e) of the Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 4:** All documents related to any collateral securing the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 5:** All documents and communications between you and Timothy Barton regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 6:** All documents and communications between you and JMJ regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 7:** All documents and communications between you and Tejas Group regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 8:** All documents and communications between you and LAH regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 9:** All documents and communications between you and Blackfoot regarding the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 10:** All documents and communications between you and any real estate developer regarding the Project.

**RESPONSE:**

**REQUEST NO. 11:** Any documents or communications between you and any broker, real estate agent, or real estate marketing firm related to the Project.

**RESPONSE:**

**REQUEST NO. 12:** All documents and communications between you and any real estate investor related to the Project.

**RESPONSE:**

**REQUEST NO. 13:** All documents and communications relating to the $3 million Promissory Note between Tejas Group, LAH, and Blackfoot and Defendant.

**RESPONSE:**

**REQUEST NO. 14:** All documents and communications relating to the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 15:** All documents and communications related to the "first priority lien and or security interest" as described in paragraph 14 of the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 16:** All documents and communications related to any collateral securing the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 17:** All documents and communications between you and Timothy Barton regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 18:** All documents and communications between you and JMJ regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 19:** All documents and communications between you and Tejas Group regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 20:** All documents and communications between you and LAH regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 21:** All documents and communications between you and Blackfoot regarding the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 22:** All documents and communications between you and any real estate developer regarding the collateral securing the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 23:** Any documents or communications between you and any broker, real estate agent, or real estate marketing firm related to the collateral securing the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 24:** All documents and communications relating to the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 25:** All documents and communications between you and Timothy Barton regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 26:** All documents and communications between you and JMJ regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 27:** All documents and communications between you and Tejas Group regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 28:** All documents and communications between you and LAH regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 29:** All documents and communications between you and Blackfoot regarding the Guaranty between Hodges and JMJ.

**RESPONSE:**

**REQUEST NO. 30:** All documents and communications related to any Membership Interest Pledge Agreements related to the $3 million Promissory Note between Tejas Group, LAH, and Blackfoot and Defendant.

**RESPONSE:**

**REQUEST NO. 31:** All documents and communications related to any Membership Interest Pledge Agreements related to the $1 million Promissory Note between Hodges and Defendant.

**RESPONSE:**

**REQUEST NO. 32:** All documents and communications related to any Membership Interest Pledge Agreements related to the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**REQUEST NO. 33:** All documents and communications related to any Membership Interest Pledge Agreements related to the Guaranty between Tejas Group, LAH, and Blackfoot and Timothy Barton.

**RESPONSE:**

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| **v.** | § | **141st JUDICIAL DISTRICT** |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**DEFENDANT 2999TC LP, LLC's FIRST SET OF INTERROGATORIES TO I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR.**

TO: I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., by and through its attorney of record Joakim Soederbaum, 201 Main Street, Suite 2500, Fort Worth, Texas 76102, joakim.soederbaum@kellyhart.com

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, 2999TC LP, LLC ("***Defendant***") serves this, its First Set of Interrogatories to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***"). Each interrogatory shall be answered separately and fully in writing, under oath, and signed/verified by the person providing the answer(s). The answers to such interrogatories shall be served upon Defendant within thirty (30) days of service of these interrogatories.

Dated: August 7, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood St, Ste. 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Managing Member*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above pleading was served on all counsel of record via electronic mail on this 7th day of August 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

# I.
# INSTRUCTIONS

1. Each Interrogatory is to be answered separately and specifically. No answer is to be left blank. If the answer to an Interrogatory or subparagraph of an Interrogatory is "none" or "unknown," such statement must be written in the answer. If the answer to the entire question is not known, so state and answer the part known. If an exact date is not known, state the closest approximate date.

2. In responding to these Interrogatories, provide all information available to you, including information in the possession of your attorneys (if any), investigators or experts, and not merely information in your own personal possession. If you or any of your agents are aware of the existence of any information within the scope of these Interrogatories that is not within the custody, possession or control of you or your agents, please identify any such information in a written response and provide information about who has the information.

3. If you object to any part of any Interrogatory, you must answer all parts of that Interrogatory to which you do not object, and state the specific bases for your objection to any part to which you do object.

4. If you object to any part of any Interrogatory because of a privilege, provide the following information:

i. the nature of the documents, communications, or tangible things not produced or disclosed, which will enable Plaintiff to assess the claim of privilege, including: (1) the general subject of the privileged material; (2) the relevant dates of the privileged material; and (3) the identity of the persons who have knowledge of the privileged material; and

ii. the basis asserted for your claim of privilege.

5. Each of the following Interrogatories is continuing in nature. If subsequent to serving answers and documents, Palisades, or any other person on Palisades' behalf, obtains or becomes aware of additional information pertaining to these Interrogatories, Palisades is required to timely provide supplemental answers and documents that will augment or otherwise modify the previous answers.

6. In the event you produce documents in lieu of identifying them herein, must produce documents, as they are kept in the usual course of business or organize and label them to correspond to the categories in the Interrogatory.

7. Unless otherwise noted, the time-period covered by these Interrogatories is from January 1, 2019 through the present.

## II.
## DEFINITIONS

As used herein, the following terms shall have, in addition to the common usage of the word, the meanings indicated below:

A. "**Defendant**" shall mean 2999TC LP, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

B. "**Tejas Group**" shall mean Tejas Group, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

C. "**LAH**" shall mean LAH III Family Specific Interest, Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

D. "**Blackfoot**" shall mean Blackfoot Interest Ltd. and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

E. "**JMJ**" shall mean JMJ Development, LLC and any parents, subsidiaries, directors, officers, employees, past or present agents, representatives, or other persons acting, or purporting to act, on its behalf.

F. "**Hodges**," "**you**," and "**your**" refers to I. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges, Jr. and to each person who, with respect to the subject matter in the Requests below, was or is acting or was or is purporting to act on Hodges' behalf, including Hodges' agents, representatives, or other persons acting, or purporting to act, on Hodges' behalf.

G. "**Document**" or "**documents**" are used herein in their broadest sense, and mean all tangible items, and all writings, drawings, graphs, charts, photographs, sounds recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. This definition includes originals, copies, or any non-identical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

H. "**Statement(s)**" means any written statement signed, adopted or approved in writing by the person making it; any stenographic, mechanical, electrical, audio, video, or other type of recording of an individual's oral statement; or any substantially verbatim transcription of such recording.

I. "**Communication**" means any transmission of thoughts, opinions, or information by speech, writing, or signs.

J. "**Relate to**" or "**relating to**" means, whether directly or indirectly: reflecting, referring to, pertaining to, constituting, containing, leading to, concerning, discussing, describing, commenting upon, mentioning, evidencing, showing, embodying, quoting, describing, bearing upon, supporting, corroborating, proving, refuting, disproving, contradicting, regarding, containing information regarding, made in connection with or by reason of, or deriving or arising from. These terms mean, without limitation, any reference or relationship that either (a) provides information with respect to the subject inquiry and necessarily includes information that is in opposition to as well as in support of any position(s) and claim(s) of Palisades, or (b) might lead to individuals who, or documents which, might possess or contain information with respect to the subject of inquiry.

K. The singular form of a word shall be construed to mean the plural, and the plural to mean the singular, when doing so would ensure the provision of additional information or more complete answers and would avoid questions from being considered ambiguous, inaccurate, or confusing.

L. "**And**" and "**or**" shall be construed as conjunctive or disjunctive to ensure the provision of additional information or more complete answers and to avoid the questions from being considered ambiguous, inaccurate, or confusing.

M. "**Person**" shall mean natural persons, individuals, proprietorships, partnerships, firms, corporations, institutions, bodies, joint ventures, estates, trusts, receivers, public corporations, other forms of legal entity, municipal corporations, federal, state, and local governments, all departments and agencies thereof, and any other governmental agencies, political subdivisions, groups, associations, or organizations, or any other group or combination acting as an entity.

N. "**Identify**" or "**identification**" means, when used in reference to:

i. A natural person: (1) full name; (2) present or last known residence, business address (including street name and number, city or town, and state or country), and telephone number; and (3) position, business affiliation, and job description at the time in question, with respect to the inquiry involved.

ii. A document: (1) its description (e.g., letter, memorandum, report, etc.); (2) its title, date, and the number of pages thereof; (3) its subject matter; (4) its author's identity; (5) its addressee's identity; and (6) its present location and its custodian's identity (if such document was, but is no longer, in the possession of or subject to control of Palisades).

iii. An oral communication: (1) date and the place where it occurred; (2) substance of the communication; (3) the identity of each person to whom such communication was made; and (4) the identity of each person who was present when such communication was made.

O. "**Describe**" means describe fully by reference to underlying facts rather than to ultimate facts or conclusions of fact or law, including time, place, manner, and identification of persons involved or related thereto.

P. The "**Project**" shall mean the 2.47 acres of land located at 2999 Turtle Creek, Dallas, Texas and any structures thereon.

Q. "**Including**" means "**including without limitation**."

R. "**Any**" includes "**all**," "**every**," and "**each**," and vice versa.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and describe the facts and circumstances surrounding the $1 million Promissory Note between Hodges and Defendant, including all negotiations of the terms of the Promissory Note and any expectations of collateral allegedly securing the Promissory Note.

**RESPONSE:**

**INTERROGATORY NO. 2:** Identify and describe the facts and circumstances surrounding the Guaranty between Hodges and Timothy Barton, including all negotiations of the terms of the Guaranty and any expectations of collateral allegedly securing the Promissory Note.

**INTERROGATORY NO. 3:** Identify and describe any efforts to execute on any Membership Interest Pledge Agreements related to the Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**INTERROGATORY NO. 4:** Identify and describe any efforts to sell, transfer, dispose of, foreclose, or otherwise exercise control over any collateral allegedly securing the Promissory Note or Guaranty between Hodges and Timothy Barton.

**RESPONSE:**

**INTERROGATORY NO. 5:** If you believe that the world-wide COVID-19 pandemic is not a *force majeure* event under the $1 million Promissory Note between Hodges and Defendant, please describe why.

**RESPONSE:**

**INTERROGATORY NO. 6:** Identify and describe your understanding of the proposed use of the funds provided in the $1 million Promissory Note between Hodges and Defendant at the time the note was executed.

**RESPONSE:**

**INTERROGATORY NO. 7:** Identify and describe your understanding of the anticipated source of funds that would be used to repay the $1 million Promissory Note between Hodges and Defendant at the time the note was executed.

**RESPONSE:**

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiffs,* | § | **141st JUDICIAL DISTRICT** |
| v. | § | |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| *Defendants.* | § | **TARRANT COUNTY, TEXAS** |

**DECLARATION OF TIMOTHY BARTON**

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

I, Timothy Barton, declare under penalty of perjury as follows:

1. "My name is Timothy Barton. My business address is 1755 Wittington Place, Suite 340 Dallas, Texas 75234. I am over twenty-one (21) years of age, of sound mind, and competent to make this declaration. I am an authorized representative of Defendant JMJ Development, LLC ("***JMJ***") and 2999 TC LP, LLC ("***Borrower***") and I have personal knowledge of the facts stated herein, and they are true and correct.

2. Borrower filed its Answer and Request for Disclosures on June 10, 2020. Defendants JMJ and I filed our Original Answer and Request for Disclosure in this case on June 18, 2020.

3. Less than two (2) months later, on July 23, 2020, Defendants received Plaintiffs' Motion for Summary Judgment.

4. Each of the Defendants have asserted numerous affirmative defenses that they believe preclude summary judgment in Plaintiffs' favor. Indeed, Borrower included its affirmative defenses in its Response to Requests for Disclosures served on June 29, 2020.

5. On July 21, 2020, Borrower served its First Set of Requests for Production and First Set of Interrogatories and on July 27, 2020, JMJ served its First Set of Requests for Production and First Set of Interrogatories (collectively, the "***Discovery Requests***") to Plaintiff I. Allen Hodges, III, as Independent Executor of the Estate of Leland A. Hodges, Jr. ("***Hodges***"). true and correct copies of the Discovery Requests are attached hereto as **Exhibit A**.

6. Under the Texas Rules of Civil Procedure, Hodges' responses to the Discovery Requests are due on or before August 20, 2020 and August 26, 2020, respectively.

7. Hodges was involved, on behalf of Plaintiffs, with the execution of two promissory notes which are the subject of Plaintiffs' claims against defendant (collectively, the "***Notes***").

8. Discovery from Hodges related to, *inter alia*, (1) the facts and circumstances surrounding the negotiation of the Notes and the parties' assumptions at the time the Notes were executed and (2) the circumstances caused by the world-wide COVID-19 pandemic that effected Defendant's performance under the Notes is necessary to establish Defendant's defenses of impossibility and/or impracticability of performance, as well as frustration of purpose.

9. Defendants need additional discovery from Mark Adams and Brandon Hill as well. We recently discovered that the two promissory notes which at issue in this lawsuit had been modification and altered after they were signed but before the loans were funded. As signer of both notes and signer on all four guaranty agreements I should have been notified and authorized that

the notes were modified to prohibit prepayment especially when such revision was slip sheeted into the executed notes. The options agreement contained in those notes originally enabled the borrower to cancel the option when the notes were prepaid.

10. At the time these loans were procured Defendants had a number of interested lenders and investors. I was unaware of the alteration until it was recently brought to my attention via my lenders who wanted to be involved in the Mandarin Hotel and Luxury Condominiums project. The approximately 3 acre tract where the development was planned is the most valuable piece of commercial land per square foot in Dallas. The property is zoned and already plans approved for a 24 story hotel and luxury condominiums at 2999 Turtle Creek Blvd in Dallas.

11. Defendants gave the Hodges Family and their related entities what amounts to a right of first refusal on participating as equity owners with the understanding or expectation they could be amongst the first buyers to pick the premier condominiums units with Dallas Skyline views. However, Defendants needed them to make a relatively quick decisions so we could move on to other investors if they elected not to participate. What started out as good project rapidly changed after the Covid-19 Epidemic struck. The ability to refinance the project out of the planning stage to development stage went nowhere.

12. Efforts to refinance the Hodges notes were burdened with a huge prepayment penalty compounded by the right to convert to equity and the membership pledges. Our financial manager, longtime friend and trusted confidant, Mark Adams, told me at various time that the Hodges intended to and did exercise their conversion option. But he never produced a written proof of their intentions or exercising of the conversion option. After months of false promises it was discovered that Mark Adams had been planning leave his position and take a job with another lender for one of our other projects since the beginning of 2020, and as part of that, was negligent

in the performance of his job and breached his duties and obligations which ultimately resulted being sued which is still in litigation. Given that, we could not trust him to tell us the truth.

13. Defendants had long believed the paperwork issues with the notes and guaranties were the result of poor organization and execution by Mark Adams. Mark Adams handled all the contact with the Hodges group and it was only in the past few days when Defendants came across e-mails from Mark Adams to Brandon Hill. In that process it was discovered that the prepayment prohibitions were added by slip sheet after I had signed the two notes and the four guaranties. This was total surprise since I had never been consulted or apprised of these material alterations much less authorized such amendments..

14. Much of the discovery sought through the Discovery Requests, included but not limited to internal communications among Plaintiffs related to the Notes, cannot reasonably be obtained through other sources especially given that Mark Adams possessed or controlled such communications and documents which are no longer available to Defendants and which may even be unknown to Defendants.

15. As a result, Defendant will be prejudiced if forced to defend against Plaintiffs' Motion for Summary Judgment before it has received responses to the Discovery Requests and documents to be produced by Hodges in response to the same.

16. Further, Defendants anticipate that the deposition of Hodges, as well as other persons who may be revealed through Hodges' response to the Discovery Requests, are needed to establish Defendants' affirmative defenses.

17. Defendants are further in need of third-party discovery in connection with the right to disclose potential responsible third parties in connection with Defendants' affirmative defenses.

18. In particular Defendants need to take the depositions of Mark Adams and Brandon Hill because these men handle the signing of the two promissory notes and the guaranty agreements.

19. Defendants cannot reasonably prepare for and take the deposition of Hodges or other potential responsible third parties without receiving any information or documents in discovery. And at this juncture I am not even sure that the Hodges group even has the original notes since they were modified without my permission or consent.

20. Defendants have diligently pursued the necessary discovery to establish their affirmative defenses, but additional time is needed to obtain the necessary information to fully defend against Plaintiffs' Motion for Summary Judgment.

I declare under penalty of perjury that the foregoing is true and correct."

Executed in Dallas County, Texas on August 13, 2020.

Timothy Barton

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

# CONVERSION OPTION AGREEMENT

This CONVERSION OPTION AGREEMENT (this "**Agreement**") is entered into between 2999TC LP, LLC, a Delaware limited liability company, ( "**Company**" / "**Borrower**") and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., Blackfoot Interest, Ltd. (Collectively the "**Lender**") on this 16th day of September, 2019 (the "**Effective Date**").

## RECITALS

Lender has loaned Three Million and 00/100 Dollars ($3,000,000.00) ("**Loan Amount**") to Company pursuant to a Promissory Note ("**Note**") executed by the Company, which is secured by a Membership Interest Pledge Agreement pledging certain shares owned by Tim Barton in Company to Lender in the event of a default under the Note, and which is guaranteed by Tim Barton.

MO 2999TC, LLC, a Delaware limited liability company ("**Project Owner**") is using the Loan Amount towards the acquisition of certain property located at 2999 Turtle Creek Blvd, Dallas, Texas upon which the Project Owner plans to develop a mixed-use luxury hotel and residences project ("**Project**").

Company owns certain membership interests in Five Star GM, LLC. 2999TC LP, LLC and Five Star GM, LLC collectively own 99.9% of the total beneficial interests in the Project through Project Owner.

This Agreement evidences terms on which Lender may convert the Loan Amount and all interest owed under the Note ("Total Debt") into membership interests in the Company in lieu of Company paying the Total Debt.

NOW THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Lender agree as follows:

1. Option. Company grants Lender the option ("Option") to convert Total Debt into membership interests ("Interests") in the Company and being admitted as a member into the Company in exchange for cancellation of the Total Debt and all obligations owned by the Company under the Note including any exit fee or other costs and fees, and the return and cancellation of the Note to the Company. Subject to the Managing Member's interests and upon the Company exercising the Option granted herein, the Lender shall be granted the Interests in the Company with Five Star MM, LLC having a 0.1% managing membership interest in the Company. The percentage of the beneficial interests in the Project acquired by the Lender under the Option as compared to all third party investors shall be in proportion to the Total Debt as a percentage of all third party investments made in the Project.

2. Acceptance. Upon the Project Owner determining its future investment requirements related to the financing of the construction of the Project and prior to or in conjunction with the offering and solicitation of any further investments related to the financing of such construction, the Company shall send written notice to the Lender requesting that the

Lender elect in writing whether or not to exercise the Option ("Notice"). The Notice shall contain the terms by which the Lender may acquire the membership interests in the Company including the amount of all investments sought by the Project Owner. The Lender shall have no less than thirty (30) days ("Notice Period") to notify the Company whether or not it chooses to exercise the Option. The Company shall no less than five (5) business days after its election to close the transaction including agreeing to be bound by the Company's governing documents including any restrictions contained therein upon which any and all obligations of the Company under the Note, of any related entity to the Company under any other security agreement, and of any guarantor to the Note shall automatically terminate. In the event the Company fails to make an election during the Notice Period, the Company will be deemed to have elected not to exercise the Option and the Company will have no further obligation to honor the Option although the Lender shall continue to have the right to purchase such membership interests upon the prevailing terms so long as such interests remain available.

2. Termination of the Option. Notwithstanding the foregoing, the Option shall expire on:

(a) any default by the Lender under any agreement between the Lender and the Company including any of its related entities or parties;

(b) failure of the Lender to fund any portion of the Loan Amount as agreed to by the Lender; or

(c) full payment of the Total Debt to the Lender;

(d) the exercising of Lender's remedies under the Membership Interest Pledge Agreement between the Company and Lender which is related to the membership interests that are the subject of this Agreement.

3. Transfer of Subject Property to an Affiliate. This Option shall survive any permitted transfer or assignment of the Property to any related entity of the Project Owner.

4. Acquisition Contingency. The Company and Lender agree that this Agreement is contingent upon the acquisition of Property by the Project Owner and the funding of the Loan Amount to Company for such purpose.

5. Miscellaneous.

(a) With respect to the subject matter hereof, this Agreement constitutes the final and entire Agreement between the parties hereto and they shall not be bound by any terms, covenants, conditions, representations or warranties not expressly contained herein. This Agreement may not be amended except by written instrument executed by both parties hereto.

(b) Time is of the essence of this Agreement and the performance of the terms and conditions hereof.

(c) This Agreement, and any amendments to this Agreement, may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. A facsimile signature of a party shall be binding on such party to the same extent as an original signature, provided that the parties agree promptly to thereafter exchange original, executed counterparts thereof, but failure to do so shall not affect the validity, enforceability or binding effect thereof.

(d) Any and all references in this Agreement to time periods which are specified by reference to a certain number of days refer to calendar days, unless "business days" is otherwise expressly provided. Therefore, if any date by which a party is required to provide the other party with notice hereunder, or any other deadline for a party's performance of its obligations under this Agreement, occurs on a Saturday or a Sunday or a banking holiday in the jurisdiction where the Subject Property is located, then and in any of such events, such applicable dates shall be deemed to occur, for all purposes of this Agreement, on that calendar day which is the next, succeeding day, which is not a Saturday, Sunday or banking holiday.

(e) Nothing in this Agreement shall be deemed in any way to create between the parties any relationship of partnership, joint venture or association, and the parties disclaim the existence thereof.

(f) No party shall be deemed to have waived the exercise of any right which it holds hereunder unless such waiver is made expressly and in writing (and no delay or omission by any party hereto in exercising any such right shall be deemed a waiver of its future exercise). No such waiver made as to any instance involving the exercise of any such right shall be deemed a waiver as to any other such instance, or any other such right.

(g) This Agreement shall be given effect and construed by application of the laws of the state of Texas with exclusive jurisdiction and venue being in Dallas County, Texas.

(h) In the event of any legal action or arbitration proceeding between the parties regarding this Agreement, the prevailing party shall be entitled to payment by the non-prevailing party of its reasonable attorneys' fees and litigation or arbitration expenses as determined in the course of the proceeding.

[*Signature Page to Follow*]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**COMPANY**

2999TC LP, LLC

By: ______________________________
Name: Tim Barton
Its: President

**LENDER**
Tejas Group, Ltd.,
LAH III Family Specific Interest, Ltd.,
Blackfoot Interest, Ltd.

By: ______________________________
Name: L. Allen Hodges, III
Its:

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned consents the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interests Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**COMPANY**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# MEMBERSHIP INTEREST PLEDGE AGREEMENT

This is a **MEMBERSHIP INTEREST PLEDGE AGREEMENT** (this "**Agreement**") by and between Tim Barton ("**Pledgor**"), **The Estate of Leland A. Hodges Jr.** ("**Lender**"), and 2999TC LP, LLC, Delaware limited liability company, (the "**Company**"/"**Borrower**") effective as of September 16, 2019. Collectively, Pledgor, Lender, and Company are referred to herein as the "Parties."

## Recitals

Lender has loaned One Million and 00/100 Dollars ($1,000,000.00) ("**Loan Amount**") to Company pursuant to a Promissory Note ("**Note**") executed by the Company.

Company is a related entity to MO 2999TC, LLC, a Delaware limited liability company ("**Project Owner**") through common ownership and/or control which shall use the Loan Amount towards the acquisition of certain property located at 2999 Turtle Creek Blvd, Dallas, Texas ("Property") upon which the Project Owner will develop a mixed-use luxury hotel and residences project.

Five Star MM, LLC is the managing member of the Company and owns 0.1% of the membership interests.

Company along with Five Star GM, LLC own 99.9% of the beneficial interests in the Property through the Project Owner.

This Agreement evidences terms on which Pledgor grants to Lender a security interest in and to the Pledged Membership Interests as security for the Note on behalf of the Company for which Pledgor has received a benefit.

The Note, guaranty, along with any other related documents are collectively referred to as the "Transaction Documents."

## Agreement

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Recitals**. The Recitals are hereby incorporated into the terms of this Agreement.
2. **Grant of Security Interest**. To secure prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) and performance of Borrower's obligations under the Note and other Transaction Documents, Pledgor pledges and grants to Lender a security interest in all of Pledgor's right, title and interest in and to the Pledged Membership Interests, whether now owned by Pledgor or hereafter acquired and whether now existing or hereafter coming into existence ("**Pledged Collateral**"). "**Pledged Membership Interests**" means such membership interests owned by Pledgor in the Company equal to the Loan Amount as a percentage of the sum of the Loan Amount plus the total amount of

all capital contributions for all membership interests in the Company ("**Proportionate Interest**") and all related rights and benefits thereto following the funding of all investments and contributions as necessary for the Project.

3. **Representations and Warranties**. The Pledgor and the Company jointly and severally represent and warrant the following, both on execution of this Agreement and continuously during its term:

    a. **Ownership of Pledged Collateral**. Pledgor owns 99.9% of the membership interests in the Company and is the sole legal and equitable owner of and has good and marketable title to the Pledged Collateral.

    b. **Creation, Perfection, and Priority**. The parties' execution of this Agreement and Pledgor's delivery to Lender of any existing certificates evidencing the Pledged Membership Interests create in favor of Lender a perfected security interest in the Pledged Membership Interests. Except for this security interest, no person or entity has (or, in the case of after-acquired Pledged Collateral, at the time the Pledgor acquires rights therein, will have) any security interest in the Pledged Collateral.

    c. **Organization and Good Standing**. The Company is duly organized, validly existing and in good standing under the laws of the state of Texas and has all requisite corporate power and authority to consent to this Agreement.

    d. **Authorization**. All action necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations hereunder and consummation of the transactions contemplated hereby has been taken or will be taken prior to the Closing. This Agreement constitutes valid and legally binding obligation of the Pledgor as consented to by the Company.

    e. **No Conflict**. The execution and delivery by the Company and the Pledgor of this Agreement will not (i) violate or conflict with its respective governing documents, (ii) violate, conflict with, or give rise to any right of termination, cancellation, rescission or acceleration under any agreement, lease, security, license, permit, or instrument to which it is a party, or to which it or any of its assets is subject, (iii) result in the imposition of any encumbrance on any its assets (except for the security interest granted pursuant to this Agreement), (iv) violate or conflict with any laws, or (v) require any consent, approval or other action of, notice to, or filing with any person, except for those that have been obtained upon execution of this Agreement.

4. **Covenants and Agreements of Pledgor**.

    a. **Preserve Pledged Collateral**. Pledgor shall do all acts necessary to maintain, preserve, and protect the Pledged Collateral.

    b. **Use of Pledged Collateral**. Pledgor shall not use and shall not permit any Pledged Collateral to be used unlawfully or in violation of any provision of this Agreement, the Transaction Documents, any other agreement with Lender related to the Pledged Collateral, or any applicable statute, regulation, or ordinance or any policy of insurance covering the Pledged Collateral.

c. **Pay Taxes**. Pledgor shall pay promptly when due all taxes, assessments, charges, encumbrances and liens imposed upon or affecting any Pledged Collateral. The Company shall pay promptly when due all taxes, assessments, charges, encumbrances and liens imposed upon or affecting its assets.

d. **Defend Litigation**. Pledgor shall appear in and defend any action or proceeding that might affect the Pledgor's title to or Lender's interest in the Pledged Collateral.

e. **Possession of Pledged Collateral**. Pledgor shall not surrender or lose possession of (other than to Lender), sell, encumber, lease, rent, or otherwise dispose of or transfer any Pledged Collateral, and shall keep the Pledged Collateral free of all levies and security interests or other liens or charges (including, but not limited to junior liens), except those that Lender approves in writing.

f. **Comply with Law**. Pledgor shall comply with all laws, regulations, and ordinances relating to possession, maintenance, and control of the Pledged Collateral.

g. **Maintain Records; Notify of Changes**. Pledgor shall keep separate, accurate, and complete records of the Pledged Collateral at its principal place of business and provide to Lender the records, reports, and information relating to the Pledged Collateral that Lenders request from time to time. Pledgor shall give Lender thirty (30) days' prior written notice of any change in the Pledgor's principal place of business or legal name or trade name(s).

h. **Amend Governing Documents**. Pledgor shall not vote the Pledged Membership Interests to amend the Governing Documents or to dissolve the Company, except with Lender's prior consent.

5. **Term of Pledge; Release; Appointment as Agent for Pledged Collateral**.

a. Except as otherwise provided in this Agreement, equitable title to the Pledged Membership Interests remains vested in Pledgor. Lender holds the Pledged Membership Interests only as security for the repayment of the indebtedness under the Note. Lender shall not encumber or dispose of the Pledged Membership Interests, except in accordance with the provisions of this Agreement. The Pledged Collateral shall remain pledged to Lender until all sums due under the Note and the other Transaction Documents have been paid in full and all obligations of Borrower thereunder and hereunder have been performed or until Lender exercises any right of first refusal or option granted to Lender to acquire or convert the Loan into certain ownership interests in any direct or indirect ownership interests in the Project Owner.

b. Any release of the Pledged Collateral from this Agreement will not release Pledgors from continuing obligations under the Note or the other Transaction Documents. Upon the payment and performance in full of all of the obligations under the Note, the other Transaction Documents and this Agreement by Pledgor, Lender shall release the Pledged Membership Interests.

6. **Event of Default**. An "Event of Default" under this Agreement means an event of default under any of the Transaction Documents following a thirty (30) day cure period.

7. **Remedies Upon Default**. Upon the occurrence of an Event of Default, Lender shall have, and may exercise any one or more of, the following rights so long as such default is continuing and Lender has agreed to be bound by the applicable organizational documents of the Company:

    a. Lender may vote the Pledged Membership Interests on all Company matters and sign written consents in lieu of meeting as owner of the Pledged Membership Interests;

    b. Lender may take absolute title to the Pledged Membership Interests by completing the assignment with respect to the Pledged Membership Interests, and after this transfer Lender will solely own the Pledged Membership Interests;

    c. Lender may, at its option, exercise any and all rights, privileges, options or powers pertaining or relating to the Pledged Membership Interests.

8. **Application of Proceeds**. Lender shall apply the proceeds received from any distributions related to the Pledged Membership Interests to the payment of all amounts due and payable under the Note and all other liabilities of Borrower to Lender (collectively, "Total Debt"). Upon full payment of the Total Debt to Lender, all of Lender's right and title to the Pledged Membership Interests shall terminate and shall automatically transfer back to the Pledgor.

9. **Miscellaneous**.

    a. **Notices**. All demands, notices and other communications to Lender or Pledgor provided for under this Agreement shall be provided as set forth in the Transaction Documents. All demands, notices and other communications to the Company shall be sent to the same address as the Pledgor, as set forth in the Transaction Documents.

    b. **Governing Law**. The validity, construction, interpretation, and enforceability of this Agreement shall be governed by the laws of the State of Texas without giving effect to the choice of laws rules thereof.

    c. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which when so executed will be deemed to be an original and all of which when taken together will constitute one and the same agreement.

    d. **Successors and Assigns.** This Agreement nor any of the rights or obligations herein may be assignable by either party without the written consent of the other parties and any attempted assignment without such prior written consent shall be invalid and unenforceable. This Agreement is binding upon, and inures to the benefit of the authorized assignees and successors of the parties to it.

    e. **Headings, Captions and Pronouns**. The Section headings, captions or abbreviations are included solely for convenient reference and shall not control the meanings or interpretation of any of the provisions of this Agreement. As used herein, words in the singular include the plural and the words in the masculine include the feminine and neuter gender, and vice versa whenever the context so requires.

    f. **Waiver**. No waiver of any breach or default under this Agreement shall be deemed to be a waiver of any subsequent breach or default. Pledgor waives any right to

require Lender to proceed against any person or entity to exhaust any Pledged Collateral or to pursue any remedy in Lender's power.

g. **Entire Agreement; Severability**. This Agreement contains the entire pledge agreement between the Pledgor and Lender. This Agreement shall not be severable in any way, but if any provision shall be held to be invalid, the invalidity shall not affect the validity of the remainder of this Agreement and the remainder of this Agreement shall continue in full force and effect.

h. **Amendment**. This Agreement may not be amended or modified except in writing signed by each of the parties.

i. **Cumulative Rights**. Except as otherwise agreed, the rights, powers, and remedies of Lender under this Agreement shall be in addition to all rights, powers, and remedies given to Lender by virtue of any statute or rule of law, the Note or any Transaction Document, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's security interest in the Pledged Collateral.

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned executes the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interest Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**PLEDGOR**

________________________
Tim Barton

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned executes the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interests Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**LENDER**
**The Estate of Leland A. Hodges Jr.**

By: ________________________
Name: L. Allen Hodges III
Title: Executor

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned consents the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interests Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**COMPANY**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# MEMBERSHIP INTEREST PLEDGE AGREEMENT

This is a **MEMBERSHIP INTEREST PLEDGE AGREEMENT** (this "**Agreement**") by and between Tim Barton ("**Pledgor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., Blackfoot Interest, Ltd. (Collectively the "**Lender**"), and 2999TC LP, LLC, Delaware limited liability company, (the "**Company**"/"**Borrower**") effective as of September 16, 2019. Collectively, Pledgor, Lender, and Company are referred to herein as the "Parties."

## Recitals

Lender has loaned Three Million and 00/100 Dollars ($3,000,000.00) ("**Loan Amount**") to Company pursuant to a Promissory Note ("**Note**") executed by the Company.

Company is a related entity to MO 2999TC, LLC, a Delaware limited liability company ("**Project Owner**") through common ownership and/or control which shall use the Loan Amount towards the acquisition of certain property located at 2999 Turtle Creek Blvd, Dallas, Texas ("Property") upon which the Project Owner will develop a mixed-use luxury hotel and residences project.

Five Star MM, LLC is the managing member of the Company and owns 0.1% of the membership interests.

Company along with Five Star GM, LLC own 99.9% of the beneficial interests in the Property through the Project Owner.

This Agreement evidences terms on which Pledgor grants to Lender a security interest in and to the Pledged Membership Interests as security for the Note on behalf of the Company for which Pledgor has received a benefit.

The Note, guaranty, along with any other related documents are collectively referred to as the "Transaction Documents."

## Agreement

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Recitals**. The Recitals are hereby incorporated into the terms of this Agreement.
2. **Grant of Security Interest**. To secure prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) and performance of Borrower's obligations under the Note and other Transaction Documents, Pledgor pledges and grants to Lender a security interest in all of Pledgor's right, title and interest in and to the Pledged Membership Interests, whether now owned by Pledgor or hereafter acquired and whether now existing or hereafter coming into existence ("**Pledged Collateral**"). "**Pledged Membership Interests**" means such membership interests owned by Pledgor in the Company equal to the Loan Amount as a percentage of the sum of the Loan Amount plus the total amount of

all capital contributions for all membership interests in the Company ("**Proportionate Interest**") and all related rights and benefits thereto following the funding of all investments and contributions as necessary for the Project.

3. **Representations and Warranties**. The Pledgor and the Company jointly and severally represent and warrant the following, both on execution of this Agreement and continuously during its term:

   a. **Ownership of Pledged Collateral**. Pledgor owns 99.9% of the membership interests in the Company and is the sole legal and equitable owner of and has good and marketable title to the Pledged Collateral.

   b. **Creation, Perfection, and Priority**. The parties' execution of this Agreement and Pledgor's delivery to Lender of any existing certificates evidencing the Pledged Membership Interests create in favor of Lender a perfected security interest in the Pledged Membership Interests. Except for this security interest, no person or entity has (or, in the case of after-acquired Pledged Collateral, at the time the Pledgor acquires rights therein, will have) any security interest in the Pledged Collateral.

   c. **Organization and Good Standing**. The Company is duly organized, validly existing and in good standing under the laws of the state of Texas and has all requisite corporate power and authority to consent to this Agreement.

   d. **Authorization**. All action necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations hereunder and consummation of the transactions contemplated hereby has been taken or will be taken prior to the Closing. This Agreement constitutes valid and legally binding obligation of the Pledgor as consented to by the Company.

   e. **No Conflict**. The execution and delivery by the Company and the Pledgor of this Agreement will not (i) violate or conflict with its respective governing documents, (ii) violate, conflict with, or give rise to any right of termination, cancellation, rescission or acceleration under any agreement, lease, security, license, permit, or instrument to which it is a party, or to which it or any of its assets is subject, (iii) result in the imposition of any encumbrance on any its assets (except for the security interest granted pursuant to this Agreement), (iv) violate or conflict with any laws, or (v) require any consent, approval or other action of, notice to, or filing with any person, except for those that have been obtained upon execution of this Agreement.

4. **Covenants and Agreements of Pledgor**.

   a. **Preserve Pledged Collateral**. Pledgor shall do all acts necessary to maintain, preserve, and protect the Pledged Collateral.

   b. **Use of Pledged Collateral**. Pledgor shall not use and shall not permit any Pledged Collateral to be used unlawfully or in violation of any provision of this Agreement, the Transaction Documents, any other agreement with Lender related to the Pledged Collateral, or any applicable statute, regulation, or ordinance or any policy of insurance covering the Pledged Collateral.

c. **Pay Taxes**. Pledgor shall pay promptly when due all taxes, assessments, charges, encumbrances and liens imposed upon or affecting any Pledged Collateral. The Company shall pay promptly when due all taxes, assessments, charges, encumbrances and liens imposed upon or affecting its assets.

d. **Defend Litigation**. Pledgor shall appear in and defend any action or proceeding that might affect the Pledgor's title to or Lender's interest in the Pledged Collateral.

e. **Possession of Pledged Collateral**. Pledgor shall not surrender or lose possession of (other than to Lender), sell, encumber, lease, rent, or otherwise dispose of or transfer any Pledged Collateral, and shall keep the Pledged Collateral free of all levies and security interests or other liens or charges (including, but not limited to junior liens), except those that Lender approves in writing.

f. **Comply with Law**. Pledgor shall comply with all laws, regulations, and ordinances relating to possession, maintenance, and control of the Pledged Collateral.

g. **Maintain Records; Notify of Changes**. Pledgor shall keep separate, accurate, and complete records of the Pledged Collateral at its principal place of business and provide to Lender the records, reports, and information relating to the Pledged Collateral that Lenders request from time to time. Pledgor shall give Lender thirty (30) days' prior written notice of any change in the Pledgor's principal place of business or legal name or trade name(s).

h. **Amend Governing Documents**. Pledgor shall not vote the Pledged Membership Interests to amend the Governing Documents or to dissolve the Company, except with Lender's prior consent.

5. **Term of Pledge; Release; Appointment as Agent for Pledged Collateral**.

a. Except as otherwise provided in this Agreement, equitable title to the Pledged Membership Interests remains vested in Pledgor. Lender holds the Pledged Membership Interests only as security for the repayment of the indebtedness under the Note. Lender shall not encumber or dispose of the Pledged Membership Interests, except in accordance with the provisions of this Agreement. The Pledged Collateral shall remain pledged to Lender until all sums due under the Note and the other Transaction Documents have been paid in full and all obligations of Borrower thereunder and hereunder have been performed or until Lender exercises any right of first refusal or option granted to Lender to acquire or convert the Loan into certain ownership interests in any direct or indirect ownership interests in the Project Owner.

b. Any release of the Pledged Collateral from this Agreement will not release Pledgors from continuing obligations under the Note or the other Transaction Documents. Upon the payment and performance in full of all of the obligations under the Note, the other Transaction Documents and this Agreement by Pledgor, Lender shall release the Pledged Membership Interests.

6. **Event of Default**. An "Event of Default" under this Agreement means an event of default under any of the Transaction Documents following a thirty (30) day cure period.

7. **Remedies Upon Default**. Upon the occurrence of an Event of Default, Lender shall have, and may exercise any one or more of, the following rights so long as such default is continuing and Lender has agreed to be bound by the applicable organizational documents of the Company:

    a. Lender may vote the Pledged Membership Interests on all Company matters and sign written consents in lieu of meeting as owner of the Pledged Membership Interests;

    b. Lender may take absolute title to the Pledged Membership Interests by completing the assignment with respect to the Pledged Membership Interests, and after this transfer Lender will solely own the Pledged Membership Interests;

    c. Lender may, at its option, exercise any and all rights, privileges, options or powers pertaining or relating to the Pledged Membership Interests.

8. **Application of Proceeds**. Lender shall apply the proceeds received from any distributions related to the Pledged Membership Interests to the payment of all amounts due and payable under the Note and all other liabilities of Borrower to Lender (collectively, "Total Debt"). Upon full payment of the Total Debt to Lender, all of Lender's right and title to the Pledged Membership Interests shall terminate and shall automatically transfer back to the Pledgor.

9. **Miscellaneous**.

    a. **Notices**. All demands, notices and other communications to Lender or Pledgor provided for under this Agreement shall be provided as set forth in the Transaction Documents. All demands, notices and other communications to the Company shall be sent to the same address as the Pledgor, as set forth in the Transaction Documents.

    b. **Governing Law**. The validity, construction, interpretation, and enforceability of this Agreement shall be governed by the laws of the State of Texas without giving effect to the choice of laws rules thereof.

    c. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which when so executed will be deemed to be an original and all of which when taken together will constitute one and the same agreement.

    d. **Successors and Assigns.** This Agreement nor any of the rights or obligations herein may be assignable by either party without the written consent of the other parties and any attempted assignment without such prior written consent shall be invalid and unenforceable. This Agreement is binding upon, and inures to the benefit of the authorized assignees and successors of the parties to it.

    e. **Headings, Captions and Pronouns**. The Section headings, captions or abbreviations are included solely for convenient reference and shall not control the meanings or interpretation of any of the provisions of this Agreement. As used herein, words in the singular include the plural and the words in the masculine include the feminine and neuter gender, and vice versa whenever the context so requires.

    f. **Waiver**. No waiver of any breach or default under this Agreement shall be deemed to be a waiver of any subsequent breach or default. Pledgor waives any right to

require Lender to proceed against any person or entity to exhaust any Pledged Collateral or to pursue any remedy in Lender's power.

g. **Entire Agreement; Severability**. This Agreement contains the entire pledge agreement between the Pledgor and Lender. This Agreement shall not be severable in any way, but if any provision shall be held to be invalid, the invalidity shall not affect the validity of the remainder of this Agreement and the remainder of this Agreement shall continue in full force and effect.

h. **Amendment**. This Agreement may not be amended or modified except in writing signed by each of the parties.

i. **Cumulative Rights**. Except as otherwise agreed, the rights, powers, and remedies of Lender under this Agreement shall be in addition to all rights, powers, and remedies given to Lender by virtue of any statute or rule of law, the Note or any Transaction Document, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's security interest in the Pledged Collateral.

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned executes the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interest Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**PLEDGOR**

____________________________

Tim Barton

**MEMBERSHIP INTEREST PLEDGE AGREEMENT**
**SIGNATURE PAGE**

The undersigned executes the Membership Interest Pledge Agreement and authorizes this signature page to be attached to a counterpart of the Membership Interests Pledge Agreement executed by the other parties to the Membership Interest Pledge Agreement.
Executed as of the day and year first above written.

**LENDER**

Tejas Group, Ltd.,
LAH III Family Specific Interest, Ltd.,
Blackfoot Interest, Ltd.

____________________________

By: L. Allen Hodges, III
Its:

141-316567-20

**From:** Mark Adams
**To:** Brandon Hill; Judson Sturdivant
**Cc:** vance@mcmurrylegal.com; Jared Sturdivant; Konner Kelley; Allen Hodges; Tim Barton
**Subject:** Re: Hodges Loan to 2999TC LP, LLC: Document Request
**Date:** Sunday, September 15, 2019 11:08:00 PM
**Attachments:** image001.gif
image002.gif
MO 2999TC MZ, LLC Cert good standing 91219.pdf
2. MO 2999TC MZ LLC Certificate of Formation (DE).pdf
2999 TC LP LLC - Company Agreement.pdf
2999TC LP Promissory Note.pdf
Consent of 2999 TC LP - Admission into Five Star TC LLC -v2 16 SEPT 2019.pdf
Consent of 2999 TC LP - Hodges Note & Option - 16 SEPT 2019.pdf
Consent of Five Star TC LLC - Admitting 2999TC LP v2 - 16 SEPT 2019.pdf
Consent of JMJ Development - Hodges Guaranty - 16 SEPT 2019.pdf
Conversion Option 2999 TC LP - Hodges- 13 SEPT 2019.pdf
JMJ Guaranty 2999 TC LP Hodges.pdf
Pledge Agreement - 2999TC LP Hodges.pdf
FIVE STAR GM LLC (DE) - Company Agreement v1 07 SEPT 2019.pdf

---

Brandon, please see the requested docs and the signed docs as you have requested. I will forward you the wire information in the morning.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Sunday, September 15, 2019 at 4:59 PM
**To:** Mark Adams <MAdams@jmjdevelopment.com>, Judson Sturdivant <judson@fm158holdings.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>, "vance@mcmurrylegal.com" <vance@mcmurrylegal.com>, Jared Sturdivant <jared@platformgrouplp.com>, Konner Kelley <konner@fm158holdings.com>, Allen Hodges <ahodges@hodgesco.net>
**Subject:** RE: Hodges Loan to 2999TC LP, LLC: Document Request

Mark,
Attached are comments to the Note in clean and redline form. The only business term that has changed is that the lender will require for the note to be closed to prepayment for the first 6 months. I am still not sure which entity Allen will use as the lender but we will provide that as soon as it is available.
The other documents you have provided look fine (other than if the name of the lender changes).
Thanks for sending all these materials. I understand from your message below that the organizational documents for 2999TC LP, LLC are forthcoming. When you send them, could you please also send the following?

1. Organizational documents for Five Star GM, LLC
2. Organizational documents for MO 2999TC MZ, LLC
3. Structure Chart showing where 2999TC LP, LLC is in the ownership chain in relation to the property owner [If such a chart does not already exist, there is no need to create it for this request – but we would appreciate a copy if one already exists.]

What are the plans for closing? Are there wire instructions? We will need PDFs of all the signed loan documents (note, guaranties, pledge, option, consent resolutions) with originals to be sent to me following

closing.
I also understand from the LOI that the borrower will pay the lender's legal fees. Do you need an invoice for closing or do you plan to pay outside of closing? I do not have a preference in light of the timing constraints (i.e., no need to revise a settlement statement at this late juncture) – but wanted to ask the question so it is on the radar.
Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
brandon.hill@kellyhart.com
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Saturday, September 14, 2019 10:20 AM
**To:** Brandon Hill; Judson Sturdivant
**Cc:** Tim Barton; vance@mcmurrylegal.com; Jared Sturdivant; Konner Kelley
**Subject:** Re: Hodges Loan to 2999TC LP, LLC: Document Request

Brandon, Please see the requested documents. I will have a few other docs to you a little later in the day. Forth coming will be the 2999TC LP, LLC doc and Resolution. Also, I have added the Conversion Option Agreement which I believe was not sent in the initial loan docs. I also noticed I left out the III in the Hodges Lender name in the two guarantees which are corrected and attached.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Saturday, September 14, 2019 at 8:10 AM
**To:** Mark Adams <MAdams@jmjdevelopment.com>, Judson Sturdivant <judson@fm158holdings.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>, "vance@mcmurrylegal.com" <vance@mcmurrylegal.com>, Jared Sturdivant <jared@platformgrouplp.com>, Konner Kelley <konner@fm158holdings.com>
**Subject:** Re: Hodges Loan to 2999TC LP, LLC: Document Request

Thanks, Mark.

**Brandon M. Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TX 76102

DIRECT (817) 878-3544
DIRECT FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

On September 13, 2019 at 11:07:04 PM CDT, Mark Adams <MAdams@jmjdevelopment.com> wrote:

Brandon, please see the revised Note, Guarantee for both Tm Barton and JMJ and the Option to Purchase Agreement you have asked for. The additional docs will be forth coming.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Judson Sturdivant <judson@fm158holdings.com>
**Date:** Friday, September 13, 2019 at 9:06 PM
**To:** Tim Barton <tbarton@jmjdevelopment.com>, Mark Adams <MAdams@jmjdevelopment.com>, "vance@mcmurrylegal.com" <vance@mcmurrylegal.com>
**Cc:** Jared Sturdivant <jared@platformgrouplp.com>, Konner Kelley <konner@fm158holdings.com>
**Subject:** Hodges Loan to 2999TC LP, LLC: Document Request

Tim/Mark,

Please see below for a list of documents that Kelly Hart is requesting as well as some suggested changes. Vance, would you like me to introduce you to Brandon Hill at Kelly Hart so that you can communicate directly?

Thanks,

Jud

1. Certificate of Formation for **2999TC LP, LLC**, Delaware limited liability company
2. Company Agreement of **2999TC LP, LLC**, Delaware limited liability company
3. Certificate of Formation for **MO 2999TC, LLC**, a Delaware limited liability company
4. Company Agreement for **MO 2999TC, LLC**, a Delaware limited liability company
5. Certificate of Formation for **Five Star MM, LLC**, a Delaware limited liability company
6. Company Agreement for **Five Star MM, LLC**, a Delaware limited liability company
7. Organizational documents of **JMJ Development**

8. Authorizing resolutions that authorize **2999TC LP, LLC** to execute the Note and Pledge Agreement

9. Authorizing resolutions that authorize **JMJ Development** to execute a Guaranty Agreement.

A few big picture comments to the loan documents:

1. The guaranty is by Tim Barton. There should also be a guaranty from JMJ Development. Please provide it.

2. The note provides for an interest rate of 12%. This should be 18% per the LOI (or I suppose the exit fee could be raised to 6%). Also, interest is to be paid in cash quarterly per the LOI.

3. The describes a Membership Interest Option Purchase Agreement, but that document is not included. Please provide it.

I will review the documents more closely and provide additional comments, but the documents appear to be workable for the contemplated transaction.
Thanks,

**Brandon Hill**

---

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

<JMJ Guaranty 2999 TC LP Hodges.doc>

<TB Guaranty 2999 TC LP Hodges.doc>

<2999 TC LP Promissory Note Hodges 13 SEPT 2019.docx>

<Conversion Option 2999 TC LP - Hodges- 13 SEPT 2019.docx>

**From:** Brandon Hill
**To:** Mark Adams
**Subject:** FW: Signed docs as requested.
**Date:** Monday, September 16, 2019 4:19:54 PM
**Attachments:** image001.gif
Pledge Agreement- 2999TC LP Hodges- Signed 16 Sep 2019.pdf
Consent of JMJ Development- Hodges Note Option- Signed 16 Sept 2019[1].pdf
Consent of 2999TC LP- Hodges Note Option- SIgned 16 Sept 2019.pdf
Conversion Option 2999 TC LP- Hodges Signed 16 Sep 2019.pdf
TB Gauranty 2999TC LP Hodges $3M Signed 16 Sept 2019.pdf
Membership Interest Pledge Signed 16 Sep 2019.pdf
TB Gauranty 2999 TC LP Hodges $1M Signed 16 Sep 2019.pdf
JMJ Gauranty 2999 TC LP Hodges $1M Signed 16 Sep 2019.pdf

---

Mark,
I hope closing is proceeding smoothly. I wanted to note a couple of items that were missing from the email. I have discussed these with Allen and he is okay with closing proceeding and having these items sent as soon as you are able after closing.

1. There are 2 membership interest pledge agreements attached – but they are both the same document and secure the $3 million note. Please send us a signed pledge agreement to secure the $1 million note also.
2. The 2999TC LP, LLC Consent authorizes the $3 million loan. Please provide the same consent for the $1 million loan.
3. The JMJ Consent authorizes the guaranty in support of the $3 million loan. Please provide the same consent for the $1 million loan.

Allen is countersigning the documents to return to you. He needs the pledge for the $1 million note so that he has all the needed signature pages. Could you please provide these 3 items as soon as you are able?
Thanks for all your help on this under the tight timing.
Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Monday, September 16, 2019 2:06 PM
**To:** Brandon Hill
**Subject:** Signed docs as requested.

Brandon, attached are the signed docs as requested. Thanks

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill
**To:** Mark Adams
**Subject:** FW: Signed docs as requested.
**Date:** Monday, September 16, 2019 4:19:54 PM
**Attachments:** image001.gif
Pledge Agreement- 2999TC LP Hodges- Signed 16 Sep 2019.pdf
Consent of JMJ Development- Hodges Note Option- Signed 16 Sept 2019[1].pdf
Consent of 2999TC LP- Hodges Note Option- SIgned 16 Sept 2019.pdf
Conversion Option 2999 TC LP- Hodges Signed 16 Sep 2019.pdf
TB Gauranty 2999TC LP Hodges $3M Signed 16 Sept 2019.pdf
Membership Interest Pledge Signed 16 Sep 2019.pdf
TB Gauranty 2999 TC LP Hodges $1M Signed 16 Sep 2019.pdf
JMJ Gauranty 2999 TC LP Hodges $1M Signed 16 Sep 2019.pdf

---

Mark,
I hope closing is proceeding smoothly. I wanted to note a couple of items that were missing from the email. I have discussed these with Allen and he is okay with closing proceeding and having these items sent as soon as you are able after closing.

1. There are 2 membership interest pledge agreements attached – but they are both the same document and secure the $3 million note. Please send us a signed pledge agreement to secure the $1 million note also.
2. The 2999TC LP, LLC Consent authorizes the $3 million loan. Please provide the same consent for the $1 million loan.
3. The JMJ Consent authorizes the guaranty in support of the $3 million loan. Please provide the same consent for the $1 million loan.

Allen is countersigning the documents to return to you. He needs the pledge for the $1 million note so that he has all the needed signature pages. Could you please provide these 3 items as soon as you are able? Thanks for all your help on this under the tight timing.
Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*
CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Monday, September 16, 2019 2:06 PM
**To:** Brandon Hill
**Subject:** Signed docs as requested.

Brandon, attached are the signed docs as requested. Thanks

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net
*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Mark Adams
**To:** Brandon Hill
**Subject:** Re: Membership Interest Pledge & Conversion Option Agreements
**Date:** Tuesday, September 17, 2019 12:33:01 PM
**Attachments:** image001.gif
image002.png
image002.png

---

Ok thank you

Sent from my iPhone

On Sep 17, 2019, at 12:27 PM, Brandon Hill <brandon.hill@kellyhart.com> wrote:

> He has authorized the title company to fund. Let me know if anything more is needed for that.
>
> **Brandon M. Hill**
>
> 201 MAIN STREET, SUITE 2500
> FORT WORTH, TX 76102
> DIRECT (817) 878-3544
> DIRECT FAX (817) 878-9744
> *brandon.hill@kellyhart.com*
> *www.kellyhart.com*
>
> CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.
>
> On September 17, 2019 at 11:51:18 AM CDT, Mark Adams <MAdams@jmjdevelopment.com> wrote:
>
>> Great, Lender is wiring today so can you please let Allen know I will need his authorization to send his funds for closing. I will confirm with you once I get notice that lenders funds have hit.
>> **Mark Adams**
>> **JMJ Development, LLC**
>> 1755 Wittington Place, Suite 340
>> Dallas, Texas 75234
>> Office: 972-385-9934
>> madams@jmjdevelopment.net
>> www.jmjdevelopment.net
>> *The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*
>>
>> **From:** Brandon Hill <brandon.hill@kellyhart.com>
>> **Date:** Tuesday, September 17, 2019 at 11:48 AM
>> **To:** Mark Adams <MAdams@jmjdevelopment.com>

**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements

Mark,

Attached are countersigned copies of the documents from Allen for the borrower's records. I anticipate that the lenders will send a notice letter to you and Tim requesting the liens be put in place on the Additional Collateral that is described on the exhibit to the Guaranty by Tim – just wanted to give you a heads up.

Now that we are pretty well wrapped up, I will have our accounting group let me know what our firm's fee is for this matter and provide you with an invoice.

I hope the closing goes smoothly!

Thanks,

**Brandon Hill**

---

<image001.gif>
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Allen Hodges [mailto:ahodges@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:42 AM
**To:** Judy Smith
**Cc:** Brandon Hill
**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements

Remaining fully executed docs. Brandon, please send to Mark.

**From:** Tara Edland [mailto:tedland@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:19 AM
**To:** Allen Hodges
**Subject:** Membership Interest Pledge & Conversion Option Agreements

Allen,

Here are the agreements. Let me know if you have any problems with the attachments.

Thanks,

Tara L Edland
The Hodges Companies
306 W 7th Street, Suite 701
Fort Worth, TX 76102
817-877-4646, ext. 100
tedland@hodgesco.net

Virus-free. www.avg.com

<image001.gif>

<image002.png>

**From:** Brandon Hill
**To:** Mark Adams
**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements
**Date:** Tuesday, September 17, 2019 11:48:56 AM
**Attachments:** image001.gif
image002.png
Conversion Option Agreement_SPIF_Tejas_2999TC.pdf
Membership Interest Pledge Agrmt_SPIF_Tejas_2999TC.pdf
Membership Interest Pledge Agrmt_LAH Est_2999TC.pdf

---

Mark,

Attached are countersigned copies of the documents from Allen for the borrower's records. I anticipate that the lenders will send a notice letter to you and Tim requesting the liens be put in place on the Additional Collateral that is described on the exhibit to the Guaranty by Tim – just wanted to give you a heads up.

Now that we are pretty well wrapped up, I will have our accounting group let me know what our firm's fee is for this matter and provide you with an invoice.

I hope the closing goes smoothly!

Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Allen Hodges [mailto:ahodges@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:42 AM
**To:** Judy Smith
**Cc:** Brandon Hill
**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements

Remaining fully executed docs. Brandon, please send to Mark.

**From:** Tara Edland [mailto:tedland@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:19 AM
**To:** Allen Hodges
**Subject:** Membership Interest Pledge & Conversion Option Agreements

Allen,

Here are the agreements. Let me know if you have any problems with the attachments.

Thanks,

Tara L Edland

The Hodges Companies

306 W 7th Street, Suite 701

Fort Worth, TX 76102

817-877-4646, ext. 100

tedland@hodgesco.net

Virus-free. www.avg.com

**From:** Mark Adams
**To:** Brandon Hill
**Subject:** Re: Membership Interest Pledge & Conversion Option Agreements
**Date:** Tuesday, September 17, 2019 11:51:08 AM
**Attachments:** image001.gif
image002.png

---

Great, Lender is wiring today so can you please let Allen know I will need his authorization to send his funds for closing. I will confirm with you once I get notice that lenders funds have hit.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Tuesday, September 17, 2019 at 11:48 AM
**To:** Mark Adams <MAdams@jmjdevelopment.com>
**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements

Mark,

Attached are countersigned copies of the documents from Allen for the borrower's records. I anticipate that the lenders will send a notice letter to you and Tim requesting the liens be put in place on the Additional Collateral that is described on the exhibit to the Guaranty by Tim – just wanted to give you a heads up.

Now that we are pretty well wrapped up, I will have our accounting group let me know what our firm's fee is for this matter and provide you with an invoice.

I hope the closing goes smoothly!

Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Allen Hodges [mailto:ahodges@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:42 AM
**To:** Judy Smith
**Cc:** Brandon Hill
**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements

Remaining fully executed docs. Brandon, please send to Mark.

**From:** Tara Edland [mailto:tedland@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:19 AM

**To:** Allen Hodges
**Subject:** Membership Interest Pledge & Conversion Option Agreements

Allen,
Here are the agreements. Let me know if you have any problems with the attachments.
Thanks,

Tara L Edland

The Hodges Companies

306 W 7th Street, Suite 701

Fort Worth, TX 76102

817-877-4646, ext. 100

tedland@hodgesco.net

Virus-free. www.avg.com

**From:** Brandon Hill
**To:** Mark Adams
**Subject:** Re: Membership Interest Pledge & Conversion Option Agreements
**Date:** Tuesday, September 17, 2019 12:27:12 PM
**Attachments:** image001.gif
image002.png
image001.gif
image002.png

---

He has authorized the title company to fund. Let me know if anything more is needed for that.

**Brandon M. Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TX 76102
DIRECT (817) 878-3544
DIRECT FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

On September 17, 2019 at 11:51:18 AM CDT, Mark Adams <MAdams@jmjdevelopment.com> wrote:

> Great, Lender is wiring today so can you please let Allen know I will need his authorization to send his funds for closing. I will confirm with you once I get notice that lenders funds have hit.
>
> **Mark Adams**
> **JMJ Development, LLC**
> 1755 Wittington Place, Suite 340
> Dallas, Texas 75234
> Office: 972-385-9934
> madams@jmjdevelopment.net
> www.jmjdevelopment.net
>
> *The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*
>
> **From:** Brandon Hill <brandon.hill@kellyhart.com>
> **Date:** Tuesday, September 17, 2019 at 11:48 AM
> **To:** Mark Adams <MAdams@jmjdevelopment.com>
> **Subject:** FW: Membership Interest Pledge & Conversion Option Agreements
>
> Mark,
>
> Attached are countersigned copies of the documents from Allen for the borrower's records. I anticipate that the lenders will send a notice letter to you and Tim requesting the liens be put in place on the Additional Collateral that is described on the exhibit to the Guaranty by Tim – just wanted to give you a heads up.
>
> Now that we are pretty well wrapped up, I will have our accounting group let me know what our

firm's fee is for this matter and provide you with an invoice.
I hope the closing goes smoothly!
Thanks,
**Brandon Hill**

---

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
brandon.hill@kellyhart.com
www.kellyhart.com
CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Allen Hodges [mailto:ahodges@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:42 AM
**To:** Judy Smith
**Cc:** Brandon Hill
**Subject:** FW: Membership Interest Pledge & Conversion Option Agreements
Remaining fully executed docs. Brandon, please send to Mark.

---

**From:** Tara Edland [mailto:tedland@hodgesco.net]
**Sent:** Tuesday, September 17, 2019 11:19 AM
**To:** Allen Hodges
**Subject:** Membership Interest Pledge & Conversion Option Agreements
Allen,
Here are the agreements. Let me know if you have any problems with the attachments.
Thanks,

Tara L Edland
The Hodges Companies
306 W 7th Street, Suite 701
Fort Worth, TX 76102
817-877-4646, ext. 100
tedland@hodgesco.net

---

Virus-free. www.avg.com

**From:** Brandon Hill
**To:** Mark Adams
**Subject:** RE: Hodges / JMJ - Changed Pages to Notes
**Date:** Wednesday, September 18, 2019 6:48:13 AM
**Attachments:** image001.gif
Promissory Note Hodges $1M Signed 16 Sep 2019.PDF
Promissory Note Hodges $3M Signed 16 Sep 2019.PDF

---

Here are both executed notes. Let me know if this is what you are looking for.

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Wednesday, September 18, 2019 12:21 AM
**To:** Brandon Hill
**Subject:** Re: Hodges / JMJ - Changed Pages to Notes

Brandon, can you please send me the executed note for the $3M. I can not find Allen's executed one

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Tuesday, September 17, 2019 at 4:34 PM
**To:** Mark Adams <MAdams@jmjdevelopment.com>
**Cc:** "Jared Sturdivant (jared@platformgrouplp.com)" <jared@platformgrouplp.com>, Allen Hodges <ahodges@hodgesco.net>
**Subject:** Hodges / JMJ - Changed Pages to Notes

Mark,

As a follow up to our call, attached are revisions to each note to correct the fact that neither note may be prepaid.

I have attached a redline of each note to show the changes. A replacement first page for each note is also attached that can be slip-sheeted into the final notes. Alternatively, the Word version of each note is attached if you prefer to re-execute the notes.

If the slip-sheet method to correct each note is acceptable, please reply-all to this email to confirm the borrower's agreement to make the change – otherwise, please send us signed copies of the new notes.

Please send to me at the address below all originals of the loan documents that were executed for the lender's loan files.

Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by

anyone other than the named recipient is strictly prohibited.

141-316567-20

**From:** vance@mcmurrylegal.com
**To:** "Brandon Hill"
**Cc:** Tim Barton; vance@mcmurrylegal.com
**Subject:** RE: 2999TC 2nd Amendment
**Date:** Wednesday, March 25, 2020 7:22:59 PM
**Attachments:** image002.png
Second Amend-1M-PNote - 2999TC LP LLC - v1 - 25MAR2020.pdf
Second Amend-3M-PNote - 2999TC LP LLC - v1 - 25MAR2020.pdf

---

Brandon, after discussing the amendment with you and thereafter Mr. Barton, the second amendment was being provided to address Lender's desire to rescind the call notice in the future which the Borrower was agreeable even though Borrower received no benefit under that amendment. Given that, I've redrafted the amendment to simplify it and narrow the scope to the rescission of the call notice. Please let me know if this is acceptable. Thank you.

Vance McMurry
Attorney at Law
McMurry Law, PLLC
508 W. Lookout Dr., Ste. 14-74
Richardson, Texas 75080
972-746-9656
888-388-0561 Fax
vance@mcmurrylegal.com

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 972-746-9656 and return the message to us by email (vance@mcmurrylegal.com). Thank you.

---

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Sent:** Thursday, March 19, 2020 5:22 PM
**To:** vance@mcmurrylegal.com
**Subject:** RE: 2999TC 2nd Amendment

Revised as discussed.

---

**From:** Brandon Hill
**Sent:** Thursday, March 19, 2020 3:15 PM
**To:** 'vance@mcmurrylegal.com'
**Subject:** RE: 2999TC 2nd Amendment

Vance,

The revised notes are attached. The one issue we discussed that is not addressed is the rescinding of the call option. The lender does not yet plan to rescind the call option that has already been given. He just wants to have the option to rescind it in the future. Please have these versions signed and sent to us. Also, please see attached an email sent to Mark. We need the 2 additional Pledge Agreements signed up and we need the backup documentation to evidence the ownership chain. Please provide it as soon as you can.

Thanks,

**Brandon Hill**

KELLY HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
*brandon.hill@kellyhart.com*
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** vance@mcmurrylegal.com [mailto:vance@mcmurrylegal.com]
**Sent:** Thursday, March 19, 2020 12:25 PM
**To:** Brandon Hill
**Cc:** vance@mcmurrylegal.com
**Subject:** RE: 2999TC 2nd Amendment

Hi Brandon, are you available for a quick call this afternoon? If so, please let me know what time works for you and a good number to reach you at. Thanks.

Vance McMurry
Attorney at Law
McMurry Law, PLLC
508 W. Lookout Dr., Ste. 14-74
Richardson, Texas 75080
972-746-9656
888-388-0561 Fax
vance@mcmurrylegal.com

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 972-746-9656 and return the message to us by email (vance@mcmurrylegal.com). Thank you.

---

**From:** Tim Barton <tbarton@jmjdevelopment.com>
**Sent:** Wednesday, March 18, 2020 8:36 PM
**To:** Allen Hodges <ahodges@hodgesco.net>
**Cc:** 'Brandon Hill' <brandon.hill@kellyhart.com>; Mark Adams <MAdams@jmjdevelopment.com>; 'Vance McMurry' <vance@mcmurrylegal.com>; 'Judson' <judson@fm158holdings.com>
**Subject:** Re: 2999TC 2nd Amendment

Allen
I just got out of our meetings and be assured no one is refusing to sign
We do see some in consist points that Vance would like to talk to Brandon
No one needs a lawsuit now we need to keep everything moving and we will.
We had a good meeting with investor and more good results will come tomorrow
Please be patient with all the crisis around us and limited staff we are doing our best
We have good assets and we are all focused on your agreement will be honored
I will call you in the morning
Stay safe
Tim Barton

Sent from my BlackBerry 10 smartphone.

**From:** Allen Hodges
**Sent:** Wednesday, 18 March 2020 5:48 PM
**To:** Tim Barton
**Cc:** 'Brandon Hill'; Mark Adams; 'Vance McMurry'; 'Judson'
**Subject:** RE: 2999TC 2nd Amendment

Brandon, it seems that Tim has decided rather than signing the second amendment that we sent him that he would rather us file suit/foreclose. Please tell Dee Jr. I will be calling him in the morning to discuss the necessary legal action to be taken. Thx, AH

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Wednesday, March 18, 2020 2:33 PM
**To:** Allen Hodges
**Cc:** Brandon Hill; Mark Adams; Vance McMurry; Judson
**Subject:** Re: 2999TC 2nd Amendment

Allen

We are working with no staff and have a lot to deal with so we of course need the lawyer to read it.

I understand your position it not for negotiation but we still have to understand it

Will call you shortly

Tim

Sent from my BlackBerry 10 smartphone.

**From:** Allen Hodges
**Sent:** Tuesday, 17 March 2020 9:32 PM
**To:** Tim Barton
**Subject:** Re: 2999TC 2nd Amendment

I'm sorry , it's not negotiable. There is nothing in there that is unfair given that once again you are in default.

L. Allen Hodges III
306 W. 7th St. Ste. 701
Ft. Worth, TX 76102

On Mar 17, 2020, at 8:53 PM, Tim Barton <tbarton@jmjdevelopment.com> wrote:

> Allen
>
> I got out of our meetings and have sent this to our lawyer and will get on it tomorrow
>
> Thank you
>
> Tim
>
> Sent from my BlackBerry 10 smartphone.
>
> **From:** Allen Hodges
> **Sent:** Tuesday, 17 March 2020 1:53 PM
> **To:** Brandon Hill
> **Cc:** Mark Adams; Tim Barton
> **Subject:** FW: 2999TC 2nd Amendment
>
> Mark, see the fully executed docs and also please let Tim know that I called him and sent him an email that he needs to act on by 4:00 today.
> Thanks, AH

**From:** Tara Edland [mailto:tedland@hodgesco.net]
**Sent:** Tuesday, March 17, 2020 11:56 AM
**To:** Allen Hodges
**Subject:** 2999TC 2nd Amendment

Allen,
Here are the two documents you asked to scanned to you.
Please let me know if you have any issues with the attachments.

Thanks,

Tara L Edland
The Hodges Companies
306 W 7th Street, Suite 701
Fort Worth, TX 76102
817-877-4646, ext. 100
tedland@hodgesco.net

Virus-free. www.avg.com

# SECOND AMENDMENT TO PROMISSORY NOTE

THIS SECOND AMENDMENT TO PROMISSORY NOTE (this "Second Amendment"), entered into as of March 26, 2020 (the "Second Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **THE ESTATE OF LELAND A. HODGES JR.** ("Lender") which amends the Promissory Note dated September 16, 2019, which includes the First Amendment to Promissory Note dated February 21, 2020, issued by Maker payable to the order of Lender in the original principal amount of $1,000,000.00 (collectively, "Note").

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1 Amendment to Note. Section 4 of the Note is amended to replace the statement, "Beginning on December 15, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so." with "Beginning on December 15, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice ("Call Notice") of its election to do so. Payment resulting from a Call Notice shall exclude any prepayment premium. Following the delivery of any Call Notice, Lender may rescind the Call Notice in writing, at any time prior to the date upon which the Note is due and payable under the Call Notice."

2 Miscellaneous. This Second Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument. The Note shall remain in full force and effect as of the date thereof except as modified herein, and together with this Second Amendment is the entire agreement between the parties which is binding upon and inure to the benefit of the parties and their permitted successors and assigns. Texas law governs this Second Amendment.

Executed to be effective as of the Second Amendment Effective Date.

| MAKER: | LENDER: |
|---|---|
| **2999TC LP, LLC**,<br>a Delaware limited liability company | **THE ESTATE OF LELAND A. HODGES JR.** |
| By: ________________________<br>Name: Tim Barton<br>Its: President | By: ________________________<br>Name: L. Allen Hodges III<br>Title: Executor |

# SECOND AMENDMENT TO PROMISSORY NOTE

THIS SECOND AMENDMENT TO PROMISSORY NOTE (this "Second Amendment"), entered into as of March 26, 2020 (the "Second Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **TEJAS GROUP, LTD.; LAH III FAMILY SPECIFIC INTEREST, LTD.;** and **BLACKFOOT INTEREST, LTD.** (collectively "Lender") which amends the Promissory Note dated September 16, 2019, which includes the First Amendment to Promissory Note dated February 21, 2020, issued by Maker payable to the order of Lender in the original principal amount of $3,000,000.00 (collectively, "Note").

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1 Amendment to Note. Section 4 of the Note is amended to replace the statement, "Beginning on February 16, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so." with "Beginning on February 16, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice ("Call Notice") of its election to do so. Payment resulting from a Call Notice shall exclude any prepayment premium. Following the delivery of any Call Notice, Lender may rescind the Call Notice in writing, at any time prior to the date upon which the Note is due and payable under the Call Notice."

2 Miscellaneous. This Second Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument. The Note shall remain in full force and effect as of the date thereof except as modified herein, and together with this Second Amendment is the entire agreement between the parties which is binding upon and inure to the benefit of the parties and their permitted successors and assigns. Texas law governs this Second Amendment.

Executed to be effective as of the Second Amendment Effective Date.

**MAKER**:

**2999TC LP, LLC**,
a Delaware limited liability company

By: ________________________
Name: Tim Barton
Its: President

**LENDER**:

**TEJAS GROUP, LTD.**

By: North Texas Investments, L.L.C.
Its: ________________________

By: ________________________
Name: L. Allen Hodges III
Title: Manager

**LAH III FAMILY SPECIFIC INTEREST, LTD.**

By: North Texas Investments, L.L.C.
Its: ________________________

By: ________________________
Name: L. Allen Hodges III
Title: Manager

**BLACKFOOT INTEREST, LTD.**

By: North Texas Investments, L.L.C.
Its: ________________________

By: ________________________
Name: L. Allen Hodges III
Title: Manager

**PROMISSORY NOTE**

$3,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, **(**"**Maker**") promises to pay to L. Allen Hodges, III and/or affiliates ("**Lender**"), or order, the stated principal sum of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**").

3. Notwithstanding the foregoing, the Lender shall have the option to convert the outstanding principal balance and any accrued but unpaid interest into a capital contribution for the purchase of membership interests in the Maker, (the "**Option**") as further defined in the Membership Interest Option Purchase Agreement ("**Option Agreement**") executed by and between Maker and Lender related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**"). Upon the Lender exercising the Option, the Principal and all related interest, costs, fees, and any other amounts whether due or not yet due related to this Note shall be deemed paid in full and all current and remaining obligations of the Maker and any guarantor shall automatically terminate.

4. This Note shall not be prepayable during the first 6 months after the date of this Note. After the sixth month of the term of this Note, this Note may be prepaid in whole at any time without premium or penalty.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ____________________
Name: Tim Barton
Its: President

**PROMISSORY NOTE**

$3,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, ("**Maker**") promises to pay ratably to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.**, and **Blackfoot Interest, Ltd.** (collectively the "**Lender**"), or order, the stated principal sum of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**"), unless sooner called by Lender as set forth below.

3. Notwithstanding the foregoing, the Lender shall have the option to convert the outstanding principal balance and any accrued but unpaid interest into a capital contribution for the purchase of membership interests in the Maker, (the "**Option**") as further defined in the Membership Interest Option Purchase Agreement ("**Option Agreement**") executed by and between Maker and Lender related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**"). Upon the Lender exercising the Option, the Principal and all related interest, costs, fees, and any other amounts whether due or not yet due related to this Note shall be deemed paid in full and all current and remaining obligations of the Maker and any guarantor shall automatically terminate.

4. This Note may be prepaid at any time without premium or penalty. Beginning on February 16, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

KELLY HART

BRANDON HILL
*brandon..hill@kellyhart.com*

TELEPHONE: (817) 878-3544
FAX: (817) 878-9280

January 14, 2020

2999TC LP, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

JMJ Development, LLC
Attn: Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

*Via First Class Mail*
*& Via Certified Mail,*
*Return Receipt Requested*

Re: ***Notice of Default, Demand for Payment, and Notice of Intent to Accelerate*** — 2999TC LP, LLC's (the "**Borrower**") September 16, 2019, loan from The Estate of Leland A. Hodges, Jr. in the amount of $1,000,000.00 (the "**$1M Loan**") and September 16, 2019, loan from Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. in the amount of $3,000,000.00 (the "**$3M Loan**") (both loans collectively, the "**Loans**").

Dear Mr. Barton:

This law firm represents The Estate of Leland A. Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, the "**Lenders**") in connection with the Loans. This letter constitutes formal notice that Borrower is in default under the notes evidencing the Loans (the "**Notes**"). More specifically, the following "Events of Default" have occurred under the Notes:

1. An Event of Default has occurred under paragraph 6(a) of both Notes, as Borrower failed to make the first quarterly payment of accrued interest to Lenders by December 16, 2019, in accordance with paragraph 1 of the Notes, and failed to cure that failure within ten (10) days of such failure; and

2. An Event of Default has occurred under paragraph 6(c) of both Notes, as TRWF, LLC and Carnegie Development, LLC in the respective membership interest pledge agreements they executed for the benefit of Lenders, made a materially false representation that they are organized in the state of Texas.

In addition, Lenders hereby give formal notice that the following items, unless timely cured, will constitute additional Events of Default under both Notes:

1. You, individually, failed to comply with Lenders' request for copies of the organizational documents for the pledgors owning the assets referenced in, and described in Exhibit A to, the personal guaranties you executed in connection with the Loans. Pursuant to paragraph 6(c), your failure to timely comply with the Lenders' reasonable request for such documents will constitute an Event of Default under both Notes unless cured within thirty (30) days of this letter; and

2. Borrower failed to pay Lender's out-of-pocket costs and expenses incurred incidental to the Loans, as agreed in the September 13, 2019, Terms Sheet. Pursuant to paragraph 6(c), Borrower's failure to do so will constitute an additional Event of Default under both Notes unless cured within thirty (30) days of this letter.

Demand is hereby made for payment of the entire balance of the December 16, 2019, interest payment referenced above, in the amount of **$184,000.00**, in full to Lenders, which amount must be paid to the Lenders via cash, wire transfer, cashier's check, or money order.

**In the event that <u>on or before 10:00 a.m., Fort Worth, Texas, local time, on January 24, 2020</u>, delinquent amount, as specified above, is not paid to Lenders by cash, wire transfer, or other readily available funds acceptable to Lenders, then <u>the maturity date of both Loans may be accelerated and the entire unpaid principal balance of both Loans, along with all accrued and unpaid interest and other fees owing under the loan documents, will be immediately fully due and payable</u>.**

Demand is further made that (1) Borrower's failure to pay Lender's costs and expenses incurred incidental to the creation and execution of the Loans and necessary documentation in the amount of **$6,795.00**, and (2) your failure to comply with Lenders' request for copies of the organizational documents for the pledgors owning the assets referenced in, and described in Exhibit A to, the personal guaranties you executed in connection with the Loans. **<u>Unless cured within thirty (30) days of this letter, each of these failures will constitute an additional and separate Event of Default under both Notes.</u>** *See* Notes, ¶ 6(c).

Moreover, under paragraph 10 of the Notes, Lenders are also entitled to recover reasonable costs and expenses, including attorney's fees, which may be incurred in enforcing or protecting their rights or interests in this matter as permitted by law. As of the date of this letter, pursuant to paragraph 10 of the Notes Lenders' have incurred an additional **$6,000.00** in reasonable and necessary costs and expenses in connection with Borrower's failure to perform as agreed, which amount is immediately due and owing. **<u>Accordingly, demand is hereby made that, in addition to the $184,000.00 in past-due interest and $6,795.00 demanded above, payment of the additional sum of $6,000.00 for additional fees incurred within ten (10)</u>**

**days of this letter. Failure to timely make this additional payment will constitute an additional and separate Event of Default under both Notes**. *See* Notes, ¶ 6(a).

Accordingly, the total amount demanded in this letter is **$196,795.00**.

Please note that, pursuant to the guaranties executed by JMJ Development, LLC and by you individually (collectively, the "**Guarantors**") in connection with the Loan (the "**Guaranties**"), Lenders are under no obligation to exhaust their remedies against Borrower before enforcing the Guaranties. Accordingly, **the demands made in this letter are made both against Borrower and against the Guarantors**. In the event the demands set forth herein are not timely satisfied, then Lenders may choose to enforce their rights and exercise their remedies as provided under the agreements executed in connection with the Loans and applicable law. *See, e.g.*, the Notes, Security Agreement, Membership Interest Pledge Agreements, Guaranties, Tex. Civ. Prac. & Rem. Code §§ 38.001, *et seq*., & Tex. Bus. & Com. Code §§ 9.601, *et seq*. Any payments received for less than the full amount demanded (*i.e.*, a partial payment) may be applied to the delinquent amount but will not satisfy this demand. Despite any past or implied forbearance of any nature, if any, by Lenders in connection with the indebtedness owed under the Loans, time is hereby declared to be of the essence with respect to this Notice of Default, Demand for Payment, and Notice of Intent to Accelerate. Lenders' exercise of any particular right or remedy available to them shall not constitute a waiver of any other rights and remedies held by Lenders, which rights and remedies are expressly reserved.

The amount of **$184,000.00** owing to Lender in past-due interest may be paid to it by delivery to the following address:

c/o L. Allen Hodges, III
306 W. 7th Street, Suite 701
Fort Worth, Texas 76102

The total amount of **$12,795.00** owing to Lender by way of legal expenses may be paid to Lenders' legal representative, Kelly Hart & Hallman LLP by delivery to the following address:

Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102

To obtain an accounting of the amounts owing in connection with the indebtedness owed under the Loans, please contact me, Brandon Hill, at Kelly Hart & Hallman LLP by phone at (817) 878-3544.

This letter is being sent in an attempt by the undersigned to collect the amounts due and owing in connection with the Loans and any information obtained will be used for that purpose. If you have any questions, please do not hesitate to contact me. If you are represented by counsel, please have your counsel contact me.

Sincerely,

Brandon Hill

Brandon Hill

Cc Via Email:
L. Allen Hodges III

**JMJ Development LLC**
**CONFIDENTIAL TERM SHEET**
**FOR A**
**PROPOSED BRIDGE LOAN**

*This term sheet indicates the terms under which 2999 TC LP LLC or an affiliate ("2999" or "Borrower") will secure a Bridge Loan from a Lender ("Lender"). No information within this term sheet shall be used or considered as a full description or explanation of the loans contemplated hereby, the risks associated therewith or any other issues. This term sheet is intended solely as a basis for further discussion amongst 2999 and Lender.*

| | |
|---|---|
| **Borrower:** | 2999 TC LP LLC, Inc., a Delaware limited liability company with a business office located at 1755 Wittington Plaza, Suite 340, Dallas, TX 75234. |
| **Lender:** | L. Allen Hodges, III or one or more of his affiliates |
| **Anticipated Closing Date:** | As soon as practicable following the execution of customary definitive documentation and completion of business and legal due diligence by the Lender but in any event on or before September 16, 2019 (the "Closing"). |
| **Loan Amount (in aggregate):** | $3,000,000 with right to increase to $4,000,000 at Lender's option |
| **Interest Rate:** | 18.0% per annum calculated on the basis of the actual number of days elapsed accrual only until Maturity. |
| **Interest Frequency:** | Payable quarterly in cash and in cash on the Maturity Date. |
| **Maturity:** | Twelve Months, with option of Lender (but not Borrower) to convert loan principal to equity shares in 2999 TC LP, LLC. |
| **Guaranty:** | Tim Barton, JMJ Development & Related Parties |
| **Use of Proceeds:** | Acquisition of that real property at 2999 Turtle Creek, Dallas TX, corporate working capital needs, and other general corporate purposes. |
| **Prepayment:** | The Loan may be prepaid in whole or in part at any time and from time to time. |
| **Loan Documents:** | The Loan will be evidenced and secured by a promissory note, pledge agreement and all other documents reasonably required by the Lender in connection with the closing of the Loan (the "Loan Documents"), which Loan Documents will be in the form and content satisfactory to the Lender and its counsel, and will contain such representations and warranties, affirmative and negative covenants, events of default and other terms as are required by the Lender, and as are customary on loans of this nature. |
| **Costs:** | Borrower agrees it will pay Lender's respective out-of-pocket costs and expenses incurred incidental to the Loan, including without limitation, fees and expenses of the Lender's counsel in connection with the preparation of the |

| | |
|---|---|
| | Loan Documents and the closing of the Loan. |
| **Governing Law:** | The Loan Documents will be governed under the jurisdiction of the State of Texas. |
| **Non-Binding:** | Except for the provisions of this section and the provisions contained in the sections hereof entitled "Governing Law" this letter is not intended to be a contract. The parties hereto shall not be legally obligated by any of the terms hereof, other than as set forth in such aforementioned paragraphs, unless and until Loan Documents are executed and delivered by the parties hereto. If the Loan Documents are executed and delivered, any obligations of the parties hereto shall terminate except to the extent expressly reaffirmed in such Loan Documents. |
| **Confidentiality:** | Lender and Borrower will enter into a Confidentiality Agreement in the form of Addendum A attached hereto pursuant to which Borrower will make available additional information about the Borrower and its affiliates sufficient to enable the Lender to make an informed investment decision. |

If this proposal is satisfactory, please indicate your acceptance thereof by executing and returning a copy of this Term Sheet to JMJ Development at the address provided above.

Very truly yours,

JMJ Development LLC

By:________________________
Name: Timothy Barton
Title: CEO

**Agreed and accepted on the 13th day of September, 2019**

________________________
L. Allen Hodges, III

Addendum I

Confidentiality Agreement

1. Each party to this Agreement agrees that will maintain the confidentiality of the proposed loan financing transaction (the "Transaction"), and not use any Confidential Information it may learn about another party for any purpose other than to consummate the Transaction.

2. The term "Confidential Information" includes information or material that has actual or potential commercial value to the disclosing party, its affiliates and/or its clients, business partners or customers and is not generally known to and is not readily ascertainable by proper means to persons outside the disclosing party, its affiliates and/or its clients or customers. "Confidential Information" includes the following, whether or not expressed in a document or medium, regardless of the form in which it is communicated, and whether or not marked "trade secret" or "confidential" or any similar legend: (i) lists of and/or information concerning investors, prospective investors, customers, prospective customers, suppliers, employees, consultants, co-venturers and/or joint venture candidates of the disclosing party, its affiliates or its clients or customers; (ii) information submitted by customers, prospective customers, suppliers, employees, consultants and/or co-venturers of the disclosing party, its affiliates and/or its clients or customers; (iii) non-public information proprietary to the disclosing party, its affiliates and/or its clients or customers, including, without limitation, cost information, profits, sales information, prices, accounting, unpublished financial information, business plans or proposals, expansion plans (for current and proposed facilities), markets and marketing methods, advertising and marketing strategies, administrative procedures and manuals, the terms and conditions of the disclosing party's contracts and trademarks and patents under consideration, distribution channels, franchises, investors, sponsors and advertisers; (iv) proprietary technical information concerning products and services of the disclosing party, its affiliates and/or its clients, business partners or customers, including, without limitation, product data and specifications, diagrams, flow charts, know how, processes, designs, formulae, inventions and product development; (v) lists of and/or information concerning applicants, candidates or other prospects for employment, independent contractor or consultant positions at or with any actual or prospective customer or client of disclosing party and/or its affiliates, any and all confidential processes, inventions or methods of conducting business of the disclosing party, its affiliates and/or its clients, business partners or customers; (vi) acquisition or merger targets; (vii) business plans or strategies, data, records, financial information or other trade secrets concerning the actual or contemplated business, strategic alliances, policies or operations of the disclosing party or its affiliates; or (viii) any and all versions of proprietary computer software (including source and object code), hardware, firmware, code, discs, tapes, data listings and documentation of the Borrower; or (ix) any other confidential information disclosed to the receiving party by, or which the receiving party is obligated under a duty of confidence from, the disclosing party, its affiliates, and/or its clients, business partners or customers. The parties further acknowledge and agree that "Confidential Information" also includes any reports, notes, summaries, abstracts, or drafts of Confidential Information or of oral presentations, reports, or discussions referring to, describing, elaborating upon, or otherwise relating to Confidential Information. The Confidential Information shall not include information that (i) is or becomes generally available to the public other than as a result of any disclosure resulting from an act or omission by the recipient or (ii) is or becomes lawfully known to the recipient on a non-confidential basis from a source other than the disclosing party, provided that such source is not known to

the recipient, after due inquiry, to be subject to any contractual, legal, fiduciary or other obligation of confidentiality with respect to such information.

3. As used in this Agreement, the identity of any potential investor shall be deemed confidential information.

4. Each party hereto agrees: (i) to use commercially reasonable efforts to protect any and all Confidential Information from unauthorized use or disclosure; (ii) to use the Confidential Information only for the purpose(s) expressly set forth in, and in accordance with, the terms of this Agreement, including for evaluation of the Transaction; (iii) not to copy or reproduce any Confidential Information in any form, except to the extent contemplated by this Agreement; (iv) except to the extent contemplated by this Agreement, not to disclose to or otherwise permit any third person or entity access to any Confidential Information except with prior written consent of the party owning such Confidential Information; (v) to limit disclosure of Confidential Information to those employees, agents, or other representatives of a party who are necessary for and involved in that party's performance of its obligations in connection with the Transaction; (vi) to ensure that any of a party's employees, agents, or other representatives who receive or obtain Confidential Information are advised of the nature of the Confidential Information and of the obligations such party has undertaken with respect to such information under this Agreement and agree to comply with these obligations; and (vii) to take any and all other commercially reasonable steps necessary to safeguard Confidential Information against unauthorized access or disclosure. Each party further agrees that, to assist the other party in identifying any access, disclosure, or use of Confidential Information in a manner inconsistent with the provisions of this Agreement, each party shall, upon request, inform the other party of all individuals or entities to whom Confidential Information has been disclosed or who otherwise have been afforded access to Confidential Information.

5. The receiving party will not make any copies of the Confidential Information, except as necessary to assist the receiving party in its evaluation of the Transaction. Upon written request therefor, the receiving party shall promptly return to the disclosing party any and all original materials provided by the disclosing party and any and all documents, papers, memorandum, drawings, specifications, offering materials, data, film, tape, conceptual renderings, disks, and any other tangible materials of any description containing Confidential Information, (i) upon the completion of receiving party's evaluation of the Transaction or (ii) upon request by the disclosing party.

6. This Addendum I and the covenants and obligations hereunder shall survive the termination of this Agreement and any Transaction consummated hereunder.

7. It is further understood, acknowledged, and agreed that monetary damages alone would not be a sufficient remedy for any breach of the covenants and obligations of the receiving party with respect to any Confidential Information. Accordingly, in addition to any and all remedies at law, the disclosing party shall be entitled to any and all equitable remedies including but not limited to specific performance, injunctive and any other equitable relief as a partial remedy for any such breach, including but not limited to a professionally supervised search of the receiving party's computer systems and storage assets. The receiving party expressly waives any requirement for the securing or posting of any bond in connection with such remedy. Such relief shall not be deemed to be the exclusive remedy for any breach of this Addendum I, but shall be in addition to all other remedies available at law or in equity to the disclosing party.

Please confirm that the foregoing is in accordance with your understanding by signing and returning this letter to Adaptive Metadata Solutions, and keeping a duplicate for your files. This Agreement shall be effective after your acceptance below and its receipt by Adaptive Metadata Solutions at its address set forth on this letter.

Very truly yours,

JMJ DEVELOPMENT LLC

By:____________________________
Name: TIMOTHY BARTON
Title: CEO

**Agreed and accepted on the13th day of September, 2019**

__________________________
L. Allen Hodges, III

**From:** Mark Adams
**To:** Tim Barton
**Subject:** FW: 2999TC 2nd Amendment
**Date:** Tuesday, March 17, 2020 3:01:14 PM
**Attachments:** Second Amendment to Promissory Note_Tejas_Blkft_SPIF.pdf
Second Amendment to Promissory Note_LAH Estate.pdf

---

Not sure what he is talking about here so may want Vance to jump in on tis email.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

---

**From:** Allen Hodges <ahodges@hodgesco.net>
**Date:** Tuesday, March 17, 2020 at 1:53 PM
**To:** Brandon Hill <brandon.hill@kellyhart.com>
**Cc:** Mark Adams <MAdams@jmjdevelopment.com>, Tim Barton <tbarton@jmjdevelopment.com>
**Subject:** FW: 2999TC 2nd Amendment

Mark, see the fully executed docs and also please let Tim know that I called him and sent him an email that he needs to act on by 4:00 today. Thanks, AH

---

**From:** Tara Edland [mailto:tedland@hodgesco.net]
**Sent:** Tuesday, March 17, 2020 11:56 AM
**To:** Allen Hodges
**Subject:** 2999TC 2nd Amendment

Allen,
Here are the two documents you asked to scanned to you. Please let me know if you have any issues with the attachments.

Thanks,

Tara L Edland
The Hodges Companies
306 W 7th Street, Suite 701
Fort Worth, TX 76102
817-877-4646, ext. 100
tedland@hodgesco.net

---

Virus-free. www.avg.com

# SECOND AMENDMENT TO PROMISSORY NOTE

THIS SECOND AMENDMENT TO PROMISSORY NOTE (this "Second Amendment"), entered into as of March 16, 2020 (the "Second Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **THE ESTATE OF LELAND A. HODGES JR.** ("Lender").

## W I T N E S S E T H

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (as amended by that certain First Amendment to Promissory Note dated as of February 21, 2020, the "Note") payable to the order of Lender in the original principal amount of $1,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Section 4. The Note is hereby amended by deleting Section 4 of the Note and replacing it with the following:

> "4. This Note shall not be prepayable; provided, however, if the maturity of this Note is accelerated by Lender following an Event of Default, the principal amount due as a result of such acceleration shall be accompanied by the amount of (i) all interest accrued to the date of such prepayment plus (ii) a prepayment premium equal to the amount of interest Lender would have received if the principal amount of this Note remained outstanding from the date of such prepayment to the Maturity Date. Beginning on December 15, 2019, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option. Lender shall have the right to rescind any notice given to call the Note by written notice to Maker so long as such notice is given before the date on which this Note becomes due and payable as a result of such call election."

1.02 Addition of Section 18. The Note is hereby amended by adding the following Section 18 immediately following Section 17 of the Note:

> "18. Expenses of Lender. Maker shall pay to Lender on demand: (a) all costs and expenses incurred by Lender in connection with the preparation,

negotiation, execution and administration of this Note, such other documents, instruments and agreements evidencing, securing or pertaining to the loan evidenced by this Note (together with the Note, the "**Loan Documents**"), and any and all amendments, modifications, renewals, extensions, increases, and supplements thereof and thereto, including, without limitation, the fees and expenses of Lender's legal counsel and professionals, (b) all costs and expenses incurred by Lender in connection with the enforcement, workout or restructure of any Loan Document, including, without limitation, the fees and expenses of Lender's legal counsel and professionals, and (c) all other costs and expenses incurred by Lender in connection with any Loan Document, including, without limitation, all costs, expenses, taxes, assessments, filing fees, and other charges levied by a governmental authority or otherwise payable in respect of any Loan Document."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This Second Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This Second Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This Second Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS SECOND AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the Second Amendment Effective Date.

**MAKER**:

**2999TC LP, LLC,**
a Delaware limited liability company

By: ___________________________
Name: Tim Barton
Its: President

**LENDER**:

**THE ESTATE OF LELAND A. HODGES JR.**

By: ___________________________
Name: E. Allen Hodges III
Title: Executor

# SECOND AMENDMENT TO PROMISSORY NOTE

THIS SECOND AMENDMENT TO PROMISSORY NOTE (this "Second Amendment"), entered into as of March 16, 2020 (the "Second Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD.,** and **BLACKFOOT INTEREST, LTD.** (collectively "Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (as amended by that certain First Amendment to Promissory Note dated as of February 21, 2020, the "Note") payable to the order of Lender in the original principal amount of $3,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by deleting Section 4 of the Note and replacing it with the following:

> "4. This Note shall not be prepayable; provided, however, if the maturity of this Note is accelerated by Lender following an Event of Default, the principal amount due as a result of such acceleration shall be accompanied by the amount of (i) all interest accrued to the date of such prepayment plus (ii) a prepayment premium equal to the amount of interest Lender would have received if the principal amount of this Note remained outstanding from the date of such prepayment to the Maturity Date. Beginning on February 16, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option. Lender shall have the right to rescind any notice given to call the Note by written notice to Maker so long as such notice is given before the date on which this Note becomes due and payable as a result of such call election."

1.02 Addition of Section 18. The Note is hereby amended by adding the following Section 18 immediately following Section 17 of the Note:

"18. Expenses of Lender. Maker shall pay to Lender on demand: (a) all costs and expenses incurred by Lender in connection with the preparation, negotiation, execution and administration of this Note, such other documents, instruments and agreements evidencing, securing or pertaining to the loan evidenced by this Note (together with the Note, the "**Loan Documents**"), and any and all amendments, modifications, renewals, extensions, increases, and supplements thereof and thereto, including, without limitation, the fees and expenses of Lender's legal counsel and professionals, (b) all costs and expenses incurred by Lender in connection with the enforcement, workout or restructure of any Loan Document, including, without limitation, the fees and expenses of Lender's legal counsel and professionals, and (c) all other costs and expenses incurred by Lender in connection with any Loan Document, including, without limitation, all costs, expenses, taxes, assessments, filing fees, and other charges levied by a governmental authority or otherwise payable in respect of any Loan Document."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This Second Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This Second Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This Second Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS SECOND AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the Second Amendment Effective Date.

**MAKER**:

**2999TC LP, LLC,**
a Delaware limited liability company

By: ___________________________
Name: Tim Barton
Its: President

**LENDER**:

**TEJAS GROUP, LTD.**
By: North Texas Investments, L.L.C.

By: ___________________________
Name: L. Allen Hodges III
Title: Manager

**LAH III FAMILY SPECIFIC INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ___________________________
Name: L. Allen Hodges III
Title: Manager

**BLACKFOOT INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ___________________________
Name: L. Allen Hodges III
Title: Manager

KELLY HART

January 28, 2020

TAXPAYER ID # 20-3856550

2999TC LP, LLC
c/o JMJ Development, LLC
1755 Wittington Place, Suite 340
Dallas, Texas 75234

Client/Matter No. 04957.0102

---

Legal services rendered and expenses incurred in connection with loan to 2999TC LP, LLC

| | |
|---|---|
| Legal Fees and Expenses: | $12,795.00 |
| TOTAL AMOUNT DUE | **$12,795.00** |

---

---

Wire transfer instructions: **Fort Worth Operating Account**

Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Credit: Frost Bank
640 Taylor Street
Fort Worth, TX 76102
ABA #: 114000093
Swift Code #: FRSTUS44
Account Name: Kelly Hart & Hallman LLP
Account No. 650038164

Please confirm transfer with Shanon Frank, Accounting Department (817) 878-5429
Email: shanon.frank@kellyhart.com

Frost Bank – Fort Worth Office (817) 420-5529

**From:** Brandon Hill
**To:** Mark Adams
**Subject:** RE: Hodges Loan
**Date:** Tuesday, January 28, 2020 4:36:23 PM
**Attachments:** image001.gif
image002.gif

I think the discrepancy is based on counting of days. I did not prepare the calculation myself though. I think we counted the day the loan was made but would not count the maturity date, which front loads the interest by a day. I think $180,000 paid 4 times would get to the same total of $720,000 over the full year of the loan. If that is how you are calculating it, then I think that is fine.

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Tuesday, January 28, 2020 4:17 PM
**To:** Brandon Hill
**Subject:** Re: Hodges Loan

Brandon, There are 2 loans and I need a breakdown showing the amount of each loan payment. You have a total of $184,000 and mine is $135,000 for the $3M loan and $45,000 for the $1M for a total of $180,0000. Can you give me a breakdown of what need to go to each loan so it totals your $184,000.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Tuesday, January 28, 2020 at 3:20 PM
**To:** Mark Adams <MAdams@jmjdevelopment.com>
**Subject:** RE: Hodges Loan

I went ahead and made it into invoice form. Wire instructions are attached the second page.

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Tuesday, January 28, 2020 3:10 PM
**To:** Brandon Hill
**Subject:** Re: Hodges Loan

Brandon, can you please send me wire information so I can get the $12K sent to you today.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Wednesday, November 20, 2019 at 10:03 AM
**To:** Mark Adams <MAdams@jmjdevelopment.com>

**Cc:** Krista Vassallo <KVassallo@jmjdevelopment.com>
**Subject:** Hodges Loan

Mark,

Thank you for your help in getting all the loan documents in place. Attached is our invoice for legal services as counsel to the various lender parties. Please let me know if any additional information is needed to process this invoice. Payment may be remitted by wire or check. If a wire is preferred, let me know and I will provide wire instructions.

Please send me originals of the various loan documents to my address below.

Thanks,

**Brandon Hill**

---

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Brandon Hill
**Sent:** Thursday, October 24, 2019 3:40 PM
**To:** 'Mark Adams'
**Subject:** RE: Pledge Agreements

Great. I think that is the last piece of the puzzle. I will have an invoice ready as of the end of the month will send it over in the first week of November.

Thanks for your help.

**Brandon Hill**

---

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Thursday, October 24, 2019 3:14 PM
**To:** Brandon Hill
**Subject:** Re: Pledge Agreements

Brandon, please see the attached signed Security Agreement. I will have all originals forward to you at your office.

Thanks

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934

madams@jmjdevelopment.net
www.jmjdevelopment.net
*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

---

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Thursday, October 24, 2019 at 2:50 PM
**To:** Mark Adams <MAdams@jmjdevelopment.com>
**Subject:** RE: Pledge Agreements

Mark,

Here is a revised version that used the term Grantor instead of Debtor. Where the notes are described, I think it is clear that 2999TC LP, LLC is borrower and not JMJ.

If this works, please send me a signed copy.

Thanks,

**Brandon Hill**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*
CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Thursday, October 24, 2019 1:04 PM
**To:** Brandon Hill
**Subject:** Re: Pledge Agreements

Yes

Sent from my iPhone

On Oct 24, 2019, at 12:28 PM, Brandon Hill <brandon.hill@kellyhart.com> wrote:

> Did you have a chance to take a look? Could you send over the signed security agreement today?
>
> ---
>
> **From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
> **Sent:** Wednesday, October 23, 2019 4:23 PM
> **To:** Brandon Hill
> **Subject:** Re: Pledge Agreements
>
> Will review tonight and get it back to you with the other orignals you need.
>
> **Mark Adams**
> **JMJ Development, LLC**
> 1755 Wittington Place, Suite 340
> Dallas, Texas 75234
> Office: 972-385-9934
> madams@jmjdevelopment.net
> www.jmjdevelopment.net
> *The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you*

*received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>

**Date:** Wednesday, October 23, 2019 at 12:47 PM

**To:** Mark Adams <MAdams@jmjdevelopment.com>

**Subject:** RE: Pledge Agreements

Mark,

JMJ needs to be the grantor of the security interest since it owns the art. I made that change and a few other clean up changes in the attached.

If this draft is acceptable, please have it signed and return a PDF copy to me with the original to follow.

Thanks,

**Brandon Hill**

<image001.gif>

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
brandon.hill@kellyhart.com
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Wednesday, October 23, 2019 12:15 PM
**To:** Brandon Hill
**Subject:** Re: Pledge Agreements

JMJ Development is the owner of the art

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

**From:** Brandon Hill <brandon.hill@kellyhart.com>

**Date:** Wednesday, October 23, 2019 at 11:41 AM

**To:** Mark Adams <MAdams@jmjdevelopment.com>, Krista Vassallo <KVassallo@jmjdevelopment.com>

**Subject:** RE: Pledge Agreements

I will send you a few comments shortly. Who (which person or entity) is the owner of the statue?

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Wednesday, October 23, 2019 10:46 AM
**To:** Brandon Hill; Krista Vassallo
**Subject:** Re: Pledge Agreements

Brandon, the draft of the security agreement should have been sent to you Monday. I

have attached it in this email. I will also get the originals sent to your office.

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

---

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Wednesday, October 23, 2019 at 10:33 AM
**To:** Krista Vassallo <KVassallo@jmjdevelopment.com>, Mark Adams <MAdams@jmjdevelopment.com>
**Subject:** RE: Pledge Agreements

Krista and Mark,
I am checking in to see if a draft of the security agreement for the artwork is available. Please send it as soon as it is available.
We will also need to collect from you originals of all the loan documents signed by the borrower/pledgor parties. Please send those to me at the address below.
Thanks,

**Brandon Hill**

<image002.gif>
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Brandon Hill
**Sent:** Thursday, October 17, 2019 5:44 PM
**To:** 'Krista Vassallo'; 'Mark Adams'
**Subject:** RE: Pledge Agreements

Krista and Mark,
I am following up to see if the Security Agreement for the artwork is available?
Thanks,

**Brandon Hill**

<image002.gif>
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have

received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Brandon Hill
**Sent:** Wednesday, October 16, 2019 4:08 PM
**To:** Krista Vassallo
**Subject:** RE: Pledge Agreements

Any update on the Security Agreement?

---

**From:** Krista Vassallo [mailto:KVassallo@jmjdevelopment.com]
**Sent:** Tuesday, October 15, 2019 4:13 PM
**To:** Brandon Hill
**Subject:** RE: Pledge Agreements

Brandon,

Mark did complete that security agreement. He is currently on a flight but will be available to send you that agreement later this evening. I will forward you executed copies of the Agreements before end of day today.

Thank you,

Krista Vassallo
JMJ Development, LLC.
1755 Wittington Place
Suite 340
Dallas, TX 75243
P: 972-385-9934 Ext. 233
F: 972-241-4484
Email:kvassallo@jmjdevelopment.net

---

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Sent:** Tuesday, October 15, 2019 3:27 PM
**To:** Krista Vassallo <KVassallo@jmjdevelopment.com>
**Subject:** RE: Pledge Agreements

Krista,

These are all approved. Please proceed with having them signed.

Mark was also working on a Security Agreement for a work of art. Do you know the status of that agreement?

Thanks,

**Brandon Hill**

<image002.gif>
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Krista Vassallo [mailto:KVassallo@jmjdevelopment.com]
**Sent:** Tuesday, October 15, 2019 2:26 PM
**To:** Brandon Hill
**Subject:** FW: Pledge Agreements

Brandon,

Attached are the pledge agreements with the changes as you requested. Please let me know if this is acceptable or if any additional changes need to be made.

Thank you,

Krista Vassallo
JMJ Development, LLC.
1755 Wittington Place
Suite 340
Dallas, TX 75243
P: 972-385-9934 Ext. 233
F: 972-241-4484
Email:kvassallo@jmjdevelopment.net

---

**From:** Brandon Hill <brandon.hill@kellyhart.com>
**Date:** Monday, October 14, 2019 at 1:19 PM
**To:** Mark Adams <MAdams@jmjdevelopment.com>
**Subject:** RE: Pledge Agreements

Mark,

My comments are as follows (these pertain to all agreements as they all appear to be on the same form):

1. The following terms are not defined and need to be defined to give meaning to certain provisions in each pledge agreement:
   a. Property
   b. Project
   c. Project Owner
2. In Section 2, could the definition of Pledged Membership be revised as follows?

   "**Pledged Membership Interests**" means such membership interests owned by Pledgor in the Company ~~equal to the Loan Amount as a percentage of the sum of the Loan Amount plus the total amount of all capital contributions for all membership interests in the Company ("**Proportionate Interest**") and all related rights and benefits thereto following the funding of all investments and contributions as necessary for the Project~~ and all proceeds thereof.

   I don't think the concept of a Proportionate Interest is applicable here since the loan amount has no relationship to the investment made in the underlying company. The lender's understanding of the transaction is that these interests are being granted to over-collateralize the loans made and should not be limited by a proportionate interest concept. Take a look at Section 8. I think this would give the Pledgors comfort as to how proceeds would be applied and mitigates the need for a Proportionate Interest concept.
3. Do you have a chart or any other documentation that can help me tie the names of the pledged companies to the underlying properties? Perhaps a copy of the deed in each case? Just something so I can show the lender we made sure we were getting an interest in what we expected.

Thanks for putting these together.

**Brandon Hill**

---

<image003.gif>

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3544
FAX (817) 878-9744
*brandon.hill@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Mark Adams [mailto:MAdams@jmjdevelopment.com]
**Sent:** Monday, October 14, 2019 11:43 AM
**To:** Brandon Hill
**Subject:** Pledge Agreements

Brandon, I have attached the draft pledge agreements as we discussed for the two loans. Please review and we can get this all done by tomorrow. I will send the Security agreement later today.

Thanks

**Mark Adams**
**JMJ Development, LLC**
1755 Wittington Place, Suite 340
Dallas, Texas 75234
Office: 972-385-9934
madams@jmjdevelopment.net
www.jmjdevelopment.net

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.*

141-316567-20

**CAUSE NO. 141-316567-20** L

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

DER
ERK

## UNSWORN DECLARATION OF MARSHA M. HALPERN

"My name is Marsha M. Halpern. I am over the age of eighteen years and am a resident of Dallas County, Texas. I am fully competent to make this affidavit and testify herein. I have never been convicted of a felony or a crime involving moral turpitude. I have personal knowledge of the facts set forth in this affidavit and all facts are true and correct. The source of my knowledge is my review of the Plaintiff's Motion for Summary Judgment, and Plaintiff's counsel Dee J. Kelly, Jr.'s Affidavit in Support of Plaintiff's Motion for Summary Judgment and information provided by Plaintiff's attorney, Robert F. Kemp.

"I have been licensed to practice law in the State of Texas, since May 1979. I am a 1978 graduate of St. Mary's School of Law in San Antonio, Texas and hold a BA in History and English from University of Texas at El Paso (1974). I have a general practice, including litigation in family, estate, civil, and criminal cases. I have tried cases in other states on a *pro hac vice* basis, including Florida, Oklahoma, and New Mexico, as well as in several counties in Texas (including Dallas and contiguous counties) in both state and federal courts and courts of appeals.

"The Texas Supreme Court requires that the party moving for attorney's fees provide detailed information showing the time spent on each task. [*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 2019 WL 1873428 at 28 (Tex. 2019) – "Without detail about the work done, how much time was spent on the tasks, and how he arrived at the $800,000 sum, Howard's testimony lacks the substance required to uphold a fee award."]. There are no detailed time records attached to Mr. Kelly's affidavit or to the Plaintiff's Motion for Summary Judgment from which to determine whether the number of hours spent by the individuals listed in Mr. Kelly's affidavit were reasonable or necessary.

"Plaintiff did not provide a copy of the attorney/client contract to show the hourly rate(s) for attorney and legal assistants that Plaintiff agreed to pay, which, while not conclusive of the reasonableness or necessity of the work performed, could be a consideration, if it differs from the hourly rates claimed by

Plaintiff. Plaintiff did not provide any information or documentation to support the specific work provided by Plaintiff's attorneys and legal assistant or the time expended on each task and, therefore, no determination of whether the work was reasonable or necessary can be made.

"Although Mr. Kelly's affidavit recites a number of considerations that Texas Courts use to determine the reasonableness and necessity of attorney fees, it is completely deficient in the specificity to support several of the factors. For instance, there is no evidence to support the factors concerning the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly, the preclusion of other employment by the attorney due to the acceptance of the case, etc. Broad generalizations and a listing of hours worked at an hourly rate(s) is not sufficient. [*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 2019 WL 1873428 at 18 (Tex. 2019) - "that without evidence of the factors identified in Disciplinary Rule 1.04, the fact finder has no meaningful way to determine if the fees sought are in fact reasonable and necessary".].

"Therefore, considering Plaintiff's evidence, Plaintiff has not proved that Plaintiff's attorney's fees are reasonable or necessary. As such, according to Texas Disciplinary Rule of Professional Conduct 1.04(a), an attorney's "fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable."

"Further, Declarant sayeth nought."

August 13, 2020
Date

Marsha M. Halpern, Declarant

**JURAT**

My name is Marsha Marianne Halpern, my date of birth is July 19, 1950, and my address is 2815 Valley View Lane, Suite 202, Dallas, Texas, United States of America 75234. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on the 13th day of August, 2020.

Marsha M. Halpern, Declarant

141-316567-20

FILED
TARRANT COUNTY
8/14/2020 8:48 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT JMJ DEVELOPMENT, LLC AND TIM BARTON'S FIRST AMENDED MOTION FOR CONTINUANCE AND TO DEFENDANT 2999TC LP, LLC'S UNVERIFIED MOTION FOR CONTINUANCE**

TO THE HONORABLE JOHN P. CHUPP:

NOW COME Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "Plaintiffs") and file this Response (the "Response") in Opposition to the First Amended Motion for Continuance filed by Defendants JMJ Development, LLC ("JMJ") and Tim Barton ("Barton"), and to the unverified Motion to Continue Hearing on Plaintiffs' Motion for Summary Judgment filed by Defendant 2999TC LP, LLC ("2999TC") (Barton, JMJ, and 2999TC collectively, "Defendants"),[1] and would respectfully show the Court as follows:

[1] In this Response, unless otherwise clear for the context, Defendants Barton and JMJ's motion will be referred to as the "Barton Defendants' Motion", 2999TC's motion will be referred to as "2999TC's Motion', and both motion jointly will be referred to as the "Motions."

## SUMMARY

The Court should deny Defendants' Motions to continue the August 20, 2020 summary judgment hearing because:

- 2999TC's Motion is neither verified nor supported by affidavit as required under the Texas Rules of Civil Procedure;
- Defendants have not shown that the discovery sought is material to any summary judgment issue and Defendants have not explained how the discovery sought would aid their response to those issues;
- Defendants have not shown that they were diligent in obtaining the discovery now sought;
- Any discovery regarding the intent of the parties regarding the promissory notes or guaranties is irrelevant to the pending motion for summary judgment; and
- Texas law does not require a discovery control plan to be entered before the Court can grant Plaintiffs summary judgment.

## ARGUMENT & AUTHORITIES

Unlike a no-evidence motion for summary judgment, which a party may file only after an adequate time for discovery has passed, the Texas Rules of Civil Procedure expressly provide that a plaintiff may move for traditional summary judgment "***at any time*** after the adverse party has appeared on answered." Tex. R. Civ. P. 166a(a) (emphasis added); *see also Reynolds v. Murphy*, 188 S.W.3d 252, 258 n. 8 (Tex. App.—Fort Worth 2006, pet. denied) ("[A] traditional summary judgment is not subject to the same restrictions as a no-evidence summary judgment, which may not be granted until an adequate time for discovery has passed."). To seek a continuance, the responding party must provide ***sworn*** reasons why it cannot adequately respond to the motion. Tex. R. Civ. P. 166a(g). To that effect, "[a] motion for continuance seeking time for discovery ***must*** be supported by an affidavit that [(1)] describes the evidence sought, [(2)] explains its materiality, ***and*** [(3)] shows that the party requesting the continuance has used due diligence to timely obtain the evidence." *Aerobic Maint. & Serv., Inc. v. First United Bank & Trust Co.*, No. 2-08-232-CV, 2009 WL 1425179, at *4 (Tex. App.—Fort Worth May 21, 2019,

no pet.) (mem. op.); *see also* Tex. R. Civ. P. 251 ("No application for a continuance shall . . . granted except for sufficient cause ***supported by affidavit*** . . . ." (emphasis added));[2] Tex. R. Civ. P. 252 ("If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, ***showing the materiality thereof***, and that he has used due diligence to procure such testimony, ***stating such diligence***, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness . . . ***what he expects to prove*** by him; and ***also state that the continuance is not sought for delay only, but that justice may be done*** . . . ." (emphasis added)). Because, as further set forth below, Defendants' Motions fail to comply with these fundamental requirements, their Motions should be denied.

***1. 2999TC's Motion fails as a matter of law because it is neither verified nor states that it is not filed for purpose of delay.***

On August 12, 2020, defendant 2999TC filed its motion to continue Plaintiffs' summary judgment hearing. 2999TC's Motion, however, does not satisfy even the most fundamental requirements and therefore fails as a matter of law. As an initial matter, 2999TC's Motion should be denied because it is neither verified nor supported by affidavit. *See, e.g.*, Tex. R. Civ. P. 166a(g); Tex. R. Civ. P. 252; *see also* Tex. R. Civ. P. 251 ("No application for a continuance

[2] Texas courts have consistently denied motions for continuance that do not satisfy these requirements. *See, e.g.*, *White Lion Holdings, L.L.C. v. State*, No. 01-14-00104-CV, 2015 WL 5626564, at *5 (Tex. App.—Houston [1st Dist.] Sept. 24, 2015, pet. denied) (mem. op. on reh'g) (holding trial court did not abuse discretion in denying motion for continuance of summary-judgment hearing where evidence, if obtained, would not have pertained to claims on which summary judgment was sought); *Draker v. Schreiber*, 271 S.W.3d 318, 325 (Tex. App. —San Antonio 2008, no pet.) (holding trial court did not abuse discretion in denying motion for continuance of summary-judgment hearing where movant failed to show materiality of discovery sought to causes of action at issue); *KrisWilliam Builders, Inc. v. Tranquility Lakes Owners Association, Inc.*, No. 01-13-00934-CV, 2015 WL 5770019, at *2 (Tex. App.—Houston [1st Dist.] Sep. 29, 2015, no pet.) (mem. op.) ("In a first motion for continuance based on the ground that testimony is needed, the affidavit supporting the motion [] ***must*** state ***and*** show that the testimony is material, ***and*** (2) must state that due diligence has been used to procure the testimony and describe the diligence and why it failed, if known." (emphasis added)); *Ellen v. F.H., Partners, LLC*, No. 03-09-00310-CV, 2010 WL 4909973, at *3-4 (Tex. App.—Austin Dec. 1, 2010, no pet.) (mem. op.) (noting that party failed to meet the requirements to be entitled to a continuance when the sworn motion did not explain how or why purportedly necessary testimony would present any facts essential to opposing summary judgment that party could not otherwise present and did not explain how the testimony was essential to opposing the grounds upon which summary judgment was sought).

shall . . . granted except for sufficient cause ***supported by affidavit*** . . . ." (emphasis added)); *Aerobic Maintenance & Serv., Inc.*, 2009 WL 1425179, at *4 ("A motion for continuance seeking time for discovery ***must*** be supported by an affidavit . . . ."). The reason for 2999TC's failure to swear to the facts set forth in its Motion could be that the facts are not entirely accurate.[3] For example, 2999TC wants the Court to believe that they seek discovery regarding the COVID-19 pandemic as it relates to "the *force majeure* provision contained in the promissory note." *See* 2999TC's Mo., at ¶¶ 7, 16-18. The promissory notes, however, contain no *force majeure* provision. *See* Plfs.' Mo. Summ. J., Exs. A-1 through A-4.

Moreover, 2999TC characterizes Allen Hodges as a "key witness" for their defense and states that it needs additional time to obtain necessary testimony, its Motion lacks the required statement that "the continuance is not sought for delay only, but that justice may be done . . . ." Tex. R. Civ. P. 252. Because 2999TC's Motion does not meet even the threshold requirements, it should be promptly denied.[4]

***2. Defendants have failed to show that the discovery sought is material to any summary judgment issue and Defendants have not explained how the discovery sought would aid their response to those issues.***

The Barton Defendants' Motion falls woefully short of meeting the requirements to obtain a continuance. Putting aside the Barton Defendants' generic, conclusory, and self-serving references to discovery as "material," their ***only*** attempt to explain how ***any*** of the discovery sought is material states that the testimony of Mark Adams is material because:

---

[3] Another plausible explanation could be that it would have to be defendant Barton who verified 2999TC's Motion as well, and Defendants do not want to concede that while two of them are legal entities, they are all just really different versions of defendant Barton, and if Barton is available to speak on behalf of each of the Defendants, not additional discovery on the issues upon which Plaintiffs moved for summary judgment.

[4] In addition to these fatal failures, 2999TC's unverified Motion fails for additional reasons—some of which Plaintiffs' will address below solely out of an abundance of caution. Plaintiffs' decision to address some of the arguments raised in 2999TC's Motion should not be seen as a waiver of Plaintiffs' objections to 2999TC's facially inadequate Motion as discussed in this section.

> Adams was in charge of and handled all of the financing planning, procurement of the loans, negotiations, collateral pledges and representations with Plaintiff. Defendants JMJ Development, LLC and that Tim Barton had no dealings with, never met with or even spoke to Plaintiff until after the loan was closed. Movants do not even know if Plaintiff is even the true holder of the promissory note in and guaranties.

Motion, at ¶ 7.[5] This is the sole ground upon which the Barton Defendants' conclude that they "need the testimony of Mark Adams and answers to interrogatories and production to defend themselves." *Id.* at ¶ 8. Notably absent from the Barton Defendants' Motion, however, is any attempt to explain (1) how the discovery sought from Plaintiffs is material in any way, and (2) why Adams purported involvement in planning, procuring, negotiating, pledging, and representing has anything at all to do with the only matters at issue in connection with Plaintiffs' motion for summary judgment: whether the notes and guaranties exist and are valid and enforceable, whether Defendants defaulted under the same, and/or what amounts these parties owe to Plaintiffs. Importantly, the Barton Defendants' Motion does ***not*** assert that Adams had anything to do with the existence and validity of the notes and guaranties, Defendants' defaults, or the amounts owed. Nor do they assert that Barton would not be the best person to provide such testimony.

Defendants are simply unable to explain how Adams involvement in other matters, or Barton's purported lack of involvement in other matters, could possibly affect the outcome of Plaintiffs' motion for summary judgment. Importantly, it is undisputed that Barton signed all the promissory notes and guaranties upon which Plaintiffs have moved for judgment on behalf of the various entities at issue and therefore presumably have more relevant knowledge than Adams

[5] Plaintiffs note that the Barton Defendants try to mischaracterize the matters at issue in connection with Plaintiff's motion for summary judgment by representing the Court that those "issues involve guaranty agreements of a promissory note and collateral issues." Mo., at ¶ 1. The Court should not fall for the Barton Defendants' smoke and mirrors, as Plaintiffs' entitlement to summary judgment in no way turns on any issues relating to collateral.

concerning the only matters actually at issue.[6] As a matter of fact, Barton was perfectly able to authenticate of the guaranties when the Barton Defendants' tried to transfer the case but,[7] conveniently, no longer has relevant knowledge when facing an adverse judgment.

Further, in its unverified Motion, 2999TC relies on the fact that it (as opposed to Plaintiffs) identified Allen Hodges as a person with knowledge of "the request for forbearance made by Defendant and the worldwide COVID-19 pandemic has made performance of Defendant's obligations impossible and has otherwise frustrated performance" in an attempt to justify a delay based on the appearance of Hodges's testimony on these matters somehow being relevant. *See* 2999TC's Mo., at ¶ 16. The fact that 2999TC provides no support other than its own self-serving "description" of an opposing party representative's purported knowledge speaks for itself. However, Plaintiffs' point out that the very first person 2999TC identified in its Rule 194 Disclosures as having knowledge of relevant facts is defendant Barton:

> Mr. Barton is a named defendant, guarantor, and principal of the other named defendants. ***He has knowledge of the facts alleged in Plaintiffs' First Amended Petition and the facts related to <u>any</u> defenses***.

*See* 2999TC Mo. at Ex. B, p. 4 (emphasis added). In other words, Barton not only signed all documents at issue but by 2999TC's own admission, Barton is a principal of 2999TC and JMJ, has knowledge of the facts in the live petition as well as all defenses, and can speak on all matters before the Court. Simply put, no other testimony, including Adams on matters not before the Court, should be necessary for Defendants to respond to Plaintiffs' motion for summary judgment and the issues raised therein.

In short, because Defendants have not only failed to articulate a single, verified and specific reason as to why it is unable to respond to Plaintiff's motion for summary judgment

---

[6] *See, e.g.*, Plfs.' Mo. Summ. J., at Ex. A, ¶5. Plaintiffs respectfully request that the Court take judicial notice of all prior filings and orders in this case.

[7] *See* Barton Defs.' Mo. to Transfer, at p. 1 and Ex. 1.

absent certain unidentified discovery, but rather have expressly admitted that Barton has knowledge of all relevant facts and defenses, their Motions should be promptly denied. *See, e.g.*, Tex. R. Civ. P. 166a(g), 251, 252; *Wilson*, 2016 WL 768143, at *5; *White Lion Holdings, L.L.C.* 2015 WL 5626564, at *5; *Draker*, 271 S.W.3d at 325; *KrisWilliam Builders, Inc.*, 2015 WL 5770019, at *2; *Ellen*, 2010 WL 4909973, at *3-4; *see also Aerobic Maint. & Serv., Inc.*, 2009 WL 1425179, at *4 ("A motion for continuance seeking time for discovery ***must*** be supported by an affidavit that [(1)] ***describes the evidence sought***, [and (2)] ***explains its materiality*** . . . ." (emphasis added)).

### *3. Defendants have not shown that they were diligent in obtaining the discovery now sought.*

Plaintiffs filed the instant suit against Defendants on April 22, 2020—almost four months ago, and filed their motion for summary judgment on July 23, 2020. While Defendants have actively been participating in the litigation more or less since the onset (almost exclusively by way of filing dilatory motions in a coordinated attempt to cause delay and force Plaintiffs' to incur additional fees), they admit in their Motions that they did not bother to serve any discovery until August 7—more than two weeks after Plaintiffs filed their motion. *See* Barton Defs.' Mo., at ¶ 4; 2999TC's Mo., at ¶¶ 6, 12. Notably, Defendants expressed no need to conduct discovery on an expedited basis. Rather, the Barton Defendants' seek a continuance to an unspecified "later date"[8] because the responses to Defendants' eleventh-hour discovery requests are not due until after the hearing currently set for Plaintiffs' motion *See* Barton Defs.' Mo., at ¶¶ 4, 9. In other words, Defendants have single-handedly manufactured the apparent injustice of not having the benefit of purportedly important discovery available to defend themselves by simply delaying serving their discovery requests in a last, desperate effort intended solely to cause delay.

[8] 2999TC's unverified Motion asks for a continuance for at least 60 days—twice what its counsel asked Plaintiff to agree to shortly before filing 2999TC's Motion.

Because Defendants intentionally delayed serving discovery requests that seek discovery not relevant to the issues before the Court in an attempt to create the apparent need to delay the hearing on Plaintiffs' motion for summary judgment, and because Defendants have failed to explain the diligence they purportedly exercised in waiting almost 4 months from this suit being filed and more than two weeks after Plaintiffs filed their motion to even suggest that any discovery is necessary, their Motions fail. *See, e.g.*, Tex. R. Civ. P. 252; *see also Aerobic Maintenance & Service, Inc.*, 2009 WL 1425179, at *4 ("A motion for continuance seeking time for discovery ***must*** be supported by an affidavit that . . . shows that the party requesting the continuance has used due diligence to timely obtain the evidence.").

***4. Texas law does not require a discovery control plan to be entered before the Court can grant Plaintiffs summary judgment.***

In their Motion, the Barton Defendants—without providing any authority to support their misguided position—claim that Plaintiffs are not entitled to summary judgment because of alleged non-compliance with Rule 190.1, which provides that "[e]very case must be governed by a discovery control plan as provided by this Rule." *See* Mo., at ¶ 10. The Barton Defendants' argument, however, is without merit. While it is true that Plaintiffs plead that they intended to conduct discovery under Rule 190.4, that Rule makes clear that such a discovery control plan will be entered only upon either a party's motion or the Court's own initiative. Under Rule 190.3(a), "[u]nless a suit is governed by a discovery control plan under [Rule 190.4], discovery must be conducted in accordance with this subdivision." Tex. R. Civ. P. 190.3(a) & cmt. 1 ("A case remains in Level 1 or Level 2 . . . unless and until it is moved to Level 3. To be in Level 3, the court ***must order*** a specific plan for the case, either on a party's motion or on the court's own initiative. . . . ***The initial pleading required by Rule 190.1 is merely to notify the court and other parties of the plaintiff's intention; it does not determine the applicable discovery level or bind the court or other parties***. . . . . Likewise, ***a plaintiff's statement in the initial paragraph***

***of the petition that the case is to be governed by Level 3 does not make Level 3 applicable, as a case can be in Level 3 only by court order.*"** (emphasis added)).

## CONCLUSION

For almost four months, Defendants (all various extensions of defendant Barton) have engaged in a concerted effort with the sole goal to cause as much delay and expense for Plaintiff as possible. Defendants waited 15 days after Plaintiffs' filed their motion for summary judgment to indicate that they needed any form of discovery to respond to the straight-forward issues concerning the breach of the promissory notes and guaranties—only to then turn around and ask for a continuance because Plaintiffs' response deadline (which Defendants had unilaterally control over) now conveniently fall after the date the Plaintiffs' motion is set to be heard. That Defendants' Motions were filed solely for the purpose of delay is evident by the fact that 2999TC did not even bother to verify its Motion as required under the rules and the Defendants' failure to explain how the discovery sought is material to the issues before the Court and necessary for Defendants to defend themselves. This is a straight-forward case of breach of promissory notes and guaranties, and Defendants' should not be allowed more time to come up with their next play to cause further delay.

## PRAYER

Accordingly, Plaintiffs respectfully pray that the Court deny both defendants Barton and JMJ's motion for continuance and 2999TC's motion for continuance with respect to the summary judgment hearing scheduled for August 20, 2020, and for such other relief that the Court may deem reasonable and equitable.

Respectfully submitted,

*/s/ Joakim G. Soederbaum*
Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2020, a true and correct copy of the foregoing document was served electronically upon all counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT**
**2999TC LP, LLC**

Robert F. Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
lawyerkemp@cs.com
**ATTORNEY FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum

141-316567-20
FILED
TARRANT COUNTY
9/3/2020 6:40 PM
THOMAS A. WILDER
DISTRICT CLERK

FILED
TARRANT COUNTY
2020 SEP 15 AM 11:33
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

**ORDER GRANTING MOTION TO WITHDRAW**

CAME ON FOR CONSIDERATION, Elizabeth Brandon, Bradley J. Purcell, and the law firm of Reed Smith, LLP's ("***Movants***") Motion to Withdraw as counsel of record for 2999 TC LP, LLC ("***Defendant***").

The Court finds and concludes that the Motion should be GRANTED.

IT IS THEREFORE ORDERED:

That Elizabeth Brandon and Bradley Purcell and the law firm of Reed Smith, LLP are hereby withdrawn as Defendant's attorneys-of-record in this proceeding.

SO ORDERED this 15 day of September, 2020.

[signature]
JUDGE PRESIDING

E-MAILED
9-15-20 CH

**From:** Courtny K. Lampkin
**To:** dee.kelly@kellyhart.com; joakim.soederbaum@kellyhart.com; ebrandon@reedsmith.com; lawyerkemp@cs.com
**Subject:** 141-316567-20 Order to Withdraw
**Date:** Tuesday, September 15, 2020 3:04:00 PM
**Attachments:** 14131656720000115.pdf

---

Please find attached a signed order for cause number shown above.

Thank you,

*Courtny Lampkin*
141st Associate Court Clerk
Tarrant County District Clerk
100 N. Calhoun St., 2nd floor
Fort Worth, TX 76196
(817) 884-1198
cklampkin@tarrantcounty.com

141-316567-20

FILED
TARRANT COUNTY
10/9/2020 7:52 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD., | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | TARRANT COUNTY, TEXAS |
| VS. | § | |
| 2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON, | § | |
| Defendants. | § | 141ST JUDICIAL DISTRICT |

**DEFENDANTS' FIRST SUPPLEMENTAL RESPONSE**
**TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton (hereafter collectively referred to as the "Defendants") and file this their Defendants' First Supplemental Response to Plaintiffs' Motion for Summary Judgment, and the Defendants would respectfully show unto the Court the following:

## I.
## BRIEF SUMMARY OF SALIENT FACTS

1. Plaintiffs are seeking a Summary Judgment on two (2) separate and distinct Promissory Notes with 2999TC LP, LLC and two (2) Guaranties of this debt for each Guarantor, JMJ Development, LLC and Tim Barton, for a total of four (4) Guaranties. Each of the Promissory Notes is a different contract with different parties, *to-wit*:

(i) One Million Dollar ($1,000,000.00) Promissory Note with the sole payee being L. Allen Hodges as Independent Executor of the Estate of Leland A. Hodges, Jr., and

(ii) Three Million Dollar ($3,000,000.00) Promissory Note with three (3) different payees including Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd.

2. By virtue of there being six (6) different contracts forming the basis of Plaintiffs' Lawsuit against Defendants, *the damages for each of these contracts are independent as to each other*.

3. Defendants respectfully submit to this Court that it should deny Plaintiffs' Motion for Summary Judgment because they failed to meet the burden of proof by introducing competent summary judgment evidence on each element of the Promissory Note cause of action.

## II.
## THE FOURTH ELEMENT OF THE PROMISSORY NOTE CAUSE OF ACTION

4. The fourth element of a Promissory Note cause of action is, *to-wit*:

> **(4) A certain balance is *due and owing on the Note* (*see* cases cited by Plaintiffs in Paragraph V "Argument & Authorities" Subparagraph A on Page 7 of the Plaintiffs' Motion for Summary Judgment).**

Plaintiffs failed to both adequately plead and prove this element of their Promissory Note cause of action.

### A. Through Plaintiffs' Motion for Summary Judgment, Plaintiffs consolidated two (2) separate and distinct Promissory Notes.

5. Throughout Plaintiffs' Motion for Summary Judgment, Plaintiffs consistently aggregated and combined the unpaid principal amount of the two (2) separate and distinct Promissory Notes on which their Lawsuit against the Defendants is based. Specifically, in *nine*

*(9) different places* of their Motion for Summary Judgment, Plaintiffs refer to the total unpaid principal of $4,000,000.00 even though the two (2) Promissory Notes have different payees. Moreover, each of the Promissory Notes has a different principal amount which means the accrued interest owed on the indebtedness is going to be different for each Note.

**B. Plaintiffs failed to segregate and allocate the amount of accrued interest owing on each of the two (2) Promissory Notes.**

6. In the Affidavit of L. Allen Hodges III, the Affiant consistently aggregated the amount of the two (2) Promissory Notes for purposes of calculating the amount of the accrued interest notwithstanding the principal amounts of the Promissory Notes are different. (*See* Paragraphs 5 and 11 of the Affidavit.) Since the principal amounts of the Promissory Notes are not the same, the amount owed as accrued interest would be different for each. And, of course, the per diem owed on each Promissory Note would be different as well.

7. When calculating the accrued interest owed to the Plaintiffs on the two (2) different Promissory Notes, the Affiant took the stated interest rate on the Promissory Notes and multiplied it by the sum of the two (2) Promissory Notes. The Affiant testified that the total amount of accrued interest owed on the sum of the two (2) Notes was a certain amount. The Affiant, however, did not allocate the accrued interest as it relates to each of the separate and distinct Promissory Notes.

8. Since the Plaintiffs failed to allocate the accrued interest as between the two (2) Promissory Notes on which they are seeking a Summary Judgment, the Plaintiffs have failed to meet their burden of proof by establishing the "certain balance [which] is due and owing on [each] Note." (*See* fourth element of the Promissory Note cause of action on Page 2 of this Supplemental Response.) As an illustration of the problems created by Plaintiffs failing to introduce evidence on this fourth element, Defendants would ask the following rhetorical questions, *to-wit*:

(i) What is the "certain balance" that is due and owing on the $1,000,000.00 Note?

(ii) What is the "certain balance" that is due and owing on the $3,000,000.00 Note?

(iii) By looking at the summary judgment evidence introduced through the Affidavit in Support of Plaintiffs' MSJ, is it possible to determine and ascertain the amount of the accrued interest owed on each of the two (2) Notes?

The answer to these questions is obvious.

9. Since the Promissory Notes are separate and distinct contracts, coupled with the fact that the principal amount of each of the Notes is different, the accrued interest owing on each Note needs to be independently ascertained and determined. Since Plaintiffs' failed to make this calculation, Plaintiffs do not have competent summary judgment evidence on this fourth element of the Promissory Note cause of action. Accordingly, Defendants respectfully request this Court deny the Plaintiffs' Motion for Summary Judgment.

## III.
## PLAINTIFFS ARE NOT ENTITLED TO RECOVER ATTORNEYS' FEES

10. The Plaintiffs recovery of attorneys' fees is based on six (6) separate and distinct contracts. Moreover, there are four (4) different Plaintiffs seeking to recover attorneys' fees on these independent contracts.

11. In order to be entitled to recover attorneys' fees, the Plaintiffs had to ". . . present the claim . . ." to the opposing party (*see* Section 38.002(2) of the Texas Civil Practice and Remedies Code (the "Code"). The Plaintiffs failed, however, to make this formal presentment as it relates to the specific amount of attorneys' fees for the six (6) different contracts on which they are seeking a Summary Judgment. Indeed, the summary judgment evidence on attorneys' fees

simply states the total amount of attorneys' fees that Plaintiffs have incurred in the aggregate in this case.

12. What is the amount of attorneys' fees the Plaintiff is seeking on the One Million Dollar ($1,000,000.00) Promissory Note? What is the amount of the attorneys' fees the Plaintiffs are seeking on the Thee Million Dollar ($3,000,000.00) Promissory Note? Since the Plaintiffs fail to allocate the proportionate amount of attorneys' fees incurred for each of the two (2) different contracts, the Plaintiffs have failed to meet their burden of proof relative to the recovery of attorneys' fees as allowed under Texas law.

13. Accordingly, Defendants respectfully request this Court to deny the Plaintiffs recovery of attorneys' fees because they have failed to make an appropriate allocation of these fees as it relates to the different contracts on which the Plaintiffs are seeking a Summary Judgment.

## IV.
## PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT AGANST DEFENDANTS WHO GUARANTEED THE PROMISSORY NOTES

14. If Plaintiffs fail to establish their entitlement for a summary judgment on the Promissory Notes, they also fail to establish their entitlement on the Guaranties of that debt.

15. Pursuant to the Guaranties which form the basis of the Plaintiffs' claims against the Defendant Guarantors, the Defendant Guarantors agreed to repay the "Guaranteed Indebtedness" as defined in the Guaranties. However, if the "Guaranteed Indebtedness" is not determinable because the Plaintiffs failed to put on competent summary judgment evidence of this amount, Plaintiffs are precluded from obtaining a Summary Judgment against the Defendant Guarantors.

16. Accordingly, Defendants respectfully request this Court to deny Plaintiffs' Motion for Summary Judgment based on the Guaranties because the amount of the "Guaranteed Indebtedness" has not been determined.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Plaintiffs' Motion for Summary Judgment be denied, and for such other and further relief, both special and general, either in law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

By: *\/s/ Mark S. Dugan*
MARK S. DUGAN
State Bar No. 06172100
mdugan@deckerjones.com
**DECKER JONES, P.C.**
801 Cherry Street, Unit #46
Burnett Plaza, Suite 2000
Fort Worth, Texas 76102
Telephone: 817-336-2400
Facsimile: 817-332-3043
**ATTORNEY FOR DEFENDANT**
**2999TC LP, LLC**

*/s/ Robert F. Kemp*
Robert F. Kemp
State Bar No. 11256400
lawyerkemp@cs.com
**ATTORNEY AT LAW**
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
Telephone: 214-526-9601
Cell: 214-356-0624
Facsimile: 214-526-2156
**ATTORNEY FOR DEFENDANTS**
**JMJ DEVELOPMENT, LLC**
**AND TIM BARTON**

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 9th day of October, 2020, a true and correct copy of the above and foregoing was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/s/ Mark S. Dugan*
MARK S. DUGAN

141-316567-20

FILED
TARRANT COUNTY
10/9/2020 7:03 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD., | § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | TARRANT COUNTY, TEXAS |
| VS. | § | |
| 2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON, | § | |
| Defendants. | § | 141ST JUDICIAL DISTRICT |

**NOTICE OF APPEARANCE**
**AS COUNSEL FOR DEFENDANT 2999TC LP, LLC**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Mark S. Dugan of the law firm of Decker Jones, P.C. ("Dugan") and files this his Notice of Appearance as Counsel for Defendant 2999TC LP, LLC in the above-entitled and numbered cause. Dugan requests all parties to this case send him copies of all documents, discovery, and correspondence in this case particularly if it pertains or relates to this Defendant.

Respectfully submitted,

By: */s/ Mark S. Dugan*
MARK S. DUGAN
State Bar No. 06172100
mdugan@deckerjones.com
**DECKER JONES, P.C.**
801 Cherry Street, Unit #46
Burnett Plaza, Suite 2000
Fort Worth, Texas 76102
Telephone: 817-336-2400
Facsimile: 817-332-3043
**ATTORNEY FOR DEFENDANT 2999TC LP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of October, 2020, a true and correct copy of the above and foregoing was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/s/ Mark S. Dugan*
MARK S. DUGAN

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

# PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JOHN P. CHUPP:

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. (the "**Estate**"), Tejas Group, Ltd. ("**Tejas Group**"), LAH III Family Specific Interest, Ltd. ("**LAH**"), and Blackfoot Interest, Ltd. ("**Blackfoot**") (all collectively, "**Plaintiffs**") file this Reply Brief in Support of Their Motion for Summary Judgment against Defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**") and, in support thereof, would respectfully show the Court as follows:

## I. SUMMARY

This is a simple breach of promissory notes and corresponding guaranties case arising from Defendants' failure to pay Plaintiffs back as agreed after Plaintiffs loaned $4,000,000.00 to Defendant 2999TC. After unsuccessfully trying almost every play in the book to delay these

proceedings, Defendants—unsurprisingly—are unable to present a meritorious argument that would prevent Plaintiffs from obtaining summary judgment on their claims against Defendants. Defendants' Response consists of nonsensical, irrelevant, and both factually and legally unsupported arguments—based on incompetent summary judgment evidence—some of which have not even been plead or verified as required under Texas law. Moreover, Barton has contradicted himself in attempt to avoid a judgment.

This straight-forward case is ripe to be determined on the merits—as properly pleaded by the parties. Accordingly, Plaintiffs object to Defendants' attempt to rely on defenses not properly plead in Defendants' respective answers on file with the Court, as well as to Defendants' incompetent summary judgment evidence. Subject to and without waiving the foregoing objections, Defendants have failed to raise a fact issue with respect to Plaintiffs' claims or Defendants' affirmative defense(s) and have failed to provide a legal argument that would interfere with Plaintiffs' right to recover from Defendants as a matter of law. Accordingly, the Court should sustain Plaintiffs' objections, strike the affirmative defenses, exhibits and declarations to which to which Plaintiffs object, otherwise grant Plaintiffs' Motion in its entirety, and grant Plaintiffs judgment as a matter of law.

## II.
## OBJECTIONS TO DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

### A. Plaintiffs' Objections to Mr. Barton's Declaration.

In an attempt to raise an apparent fact issue regarding Plaintiffs' claims, Defendants have presented the Court with the Declaration of Timothy Barton. [*See* Resp. Ex. C]. However, large and crucial portions of the testimony cited by Defendants are not admissible for one or more reasons. With respect to motions for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166a(f). An affidavit "showing no basis for personal knowledge is legally insufficient." *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008). Of course, the affidavit must also otherwise conform with the Rules of Evidence. *See, e.g.*, *id.*; *State v. Speedway Grapevine I, L.L.C.*, 2017 WL 4683831, at *6 (Tex. App.—Fort Worth October 19, 2017, no pet.) ("Bare conclusions and speculative testimony are not probative evidence in any context . . .); *Kroger Co. v. Guinn*, No. 05-04-01464-CV, 2005 WL 1950887, at *3 (Tex. App.—Dallas Aug. 16, 2005, no pet.) ("Testimony based on speculation is considered 'incompetent evidence' and therefore cannot be used to support a judgment. Speculative testimony may not even support a jury finding when no objection has been made to its admittance. Exclusion of other possibilities as the only support for an otherwise "bare opinion" does not make the evidence admissible." (quoting *Gen. Motors v. Iracheta*, 161 S.W.3d 462, 470–71 (Tex. 2005))); *Health Care Serv. Corp. v. E. Tex. Med. Ctr.*, 495 S.W.3d 333, 339 (Tex. App.—Tyler 2016, no pet.) ("Speculative testimony has no probative value.").

As set forth below, several portions of Mr. Barton's declaration fail to comply with the Texas Rules of Civil Procedure and Texas Rules of Evidence, and should therefore be stricken:

| **TESTIMONY** | **PAGE (PARAGRAPH)** | **OBJECTION** |
|---|---|---|
| "We recently discovered that the two promissory notes which at [sic] issue in this lawsuit had been modification [sic] and altered after they were signed but before the loans were funded." | 2 (9) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); TEX. R. EVID. 1002 (Best evidence) |
| "As the signer on all four guaranty agreements I should have been notified and authorized that the notes were modified to prohibit prepayment especially when such revision was slip sheeted into the executed notes." | 2-3 (9) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); TEX. R. EVID. 1002 (Best evidence); conclusory and self-serving |

| TESTIMONY | PAGE (PARAGRAPH) | OBJECTION |
|---|---|---|
| "The options agreement contained in those notes originally enabled the borrower to cancel the option when the notes were prepaid." | 3 (9) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 1002 (Best evidence); conclusory and self-serving |
| "At the time these loans were procured Defendants had a number of interested lenders and investors. I was unaware of the alteration until it was recently brought to my attention via my lenders who wanted to be involved in the Mandarin Hotel and Luxury Condominiums project." | 3 (10) | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 1002 (Best evidence); conclusory, self-serving, and contradicting. |
| "The approximately 3 acre tract where the development was planned is the most valuable piece of commercial land per square foot in Dallas." | 3 (10) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); Tex. R. Evid. 801-802 (hearsay); speculative, conclusory, and self-serving,. |
| "Defendants gave the Hodges Family and their related entities what amounts to a right of first refusal on participating as equity owners with the understanding or expectation they could be amongst the first buyers to pick the premier condominiums units with Dallas Skyline views. However, Defendants needed them to make a relatively quick decisions [sic] so we could move on to other investors if they elected not to participate." | 3 (11) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); TEX. R. EVID. 1002 (Best evidence). |
| "What started out as a good project rapidly changed after the Covid-19 Epidemic struck. The ability to refinance the project out of the planning stage to development stage went nowhere." | 3 (11) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); TEX. R. EVID. 1002 (Best evidence); conclusory and self-serving |
| "Efforts to refinance the Hodges notes were burdened with a huge prepayment penalty compounded by the right to convert to equity and the | 3 (12) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); Tex. R. Evid. 801-802 |

| TESTIMONY | PAGE (PARAGRAPH) | OBJECTION |
|---|---|---|
| membership pledges." | | (hearsay); conclusory, self-serving, and contradicting. |
| "Our financial manager, longtime friend and trusted confidant, Mark Adams, told me at various time [sic] that the Hodges [sic] intended to and did exercise their conversion option. After months of false promises it was discovered that Mark Adams had been planning leave his position and take a job with another lender for one of our projects since the beginning of 2020, and as part of that, was negligent in the performance of his job and breached his duties and obligations which ultimately resulted being sued which is still in litigation. Given that, we could not trust him tell us the truth." | 3-4 (12) | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 1002 (Best evidence); conclusory and self-serving |
| "Defendants had long believed the paperwork issues with the notes and guaranties were the result of poor organization and execution by Mark Adams. . . . [I]t was only in the past few days when Defendants came across e-mails from Mark Adams to Brandon Hill. In that process it was discovered that the prepayment prohibition were added by slip sheet after I had signed the two notes and the four guaranties. This was total surprise since I had never been consulted or apprised of these material alterations much less authorized such amendments." | 4 (13) | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 1002 (Best evidence); Duplicative.; conclusory, self-serving, and contradictory |
| "[A]t this juncture I am not even sure that the Hodges group even has the original notes since they were modified without my permission or consent." | 5 (19) | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 1002 (Best evidence); speculative, conclusory, and self-serving |

Accordingly, Plaintiffs respectfully request that the Court to strike and disregard the above testimony of Mr. Barton.

**B. Plaintiffs' Objections to Ms. Halpern's Unsworn Declaration.**

In an attempt to defeat Plaintiffs' request for summary judgment on its claim for reasonable and necessary attorney's fees, Defendants relies entirely on the unsworn declaration of Marsha Halpern. [*See* Resp. Ex. O]. In a nutshell, Ms. Halpern's declaration simply recites various cherry-picked pieces of the opinion issued by the Texas Supreme Court in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (2019), and provides her opinion as to what burden that opinion purportedly places on Plaintiffs in this case. That opinion, is facially invalid, however, as, despite focusing her entire declaration on discussing how, in her "expert" opinion, *Rohrmoos* prevents Plaintiffs from recovering their attorney's fees, Ms. Halpern fails to acknowledge that ***Rohrmoos* does <u>not</u> apply to claims for attorney's fees under Chapter 38**—instead, there is a statutory presumption that such fees are reasonable. *See, e.g.*, *Rohrmoos*, 578 S.W.3d at 490, n. 9) ("We note that section 38.004 of the Civil Practice and Remedies Code authorizes a court, in certain proceedings involving fee-shifting under section 38.001, to take judicial notice of usual and customary attorney's fees. In such instances, there is a rebuttable presumption that the usual and customary fees are reasonable." (internal citations omitted); *Great Am. Lloyds Ins. Co. v. Vines-Herrin Custom Homes, L.L.C.*, 596 S.W.3d 370, 378 (Tex. App.—Dallas, 2020, pet. denied) ("In [*Rohrmoos*], fees were shifted under a contract provision, so Chapter 38 did not apply.") (citing *Rohrmoos*, 578 S.W.3d at 484-85); Tex. Civ. Prac. & Rem. Code § 38.004. ("The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in: (1) a proceeding before the court; or (2) a jury case in which the amount of attorney's fees is submitted to the court by agreement."), § 38.003 ("It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable."). In other words, Ms. Halpern's entire declaration is based on her incorrect belief that *Rohrmoos* applies to Plaintiffs' claim for

attorney's fees under Chapter 38.

Contrary to Ms. Halpern's unsupported opinion, in the absence of other evidence supporting an attorney's fee award, the reviewing court will presume that the trial court took judicial notice of the usual and customary fees and of the contents of the case file in determining the amount of attorney's fees awarded. *See Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 626 (Tex. App.—Dallas 1987, writ denied); *Nguyen v. Bui*, No. 01-14-00239-CV, 2015 WL 1825658, at *3 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no pet.) (mem. op.). Judicial notice of the usual and customary fees constitutes some evidence on which the trial court may base an award. *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 705 (Tex. App.—Dallas 2019, no pet.) (decided after, and expressly acknowledging, *Rohrmoos*). Ms. Halpern's failure to acknowledge both that *Rohrmoos* does not apply to Plaintiffs' request for fees under Chapter 38 and the statutory presumption that those fees are reasonable renders her declaration incompetent summary judgment evidence.

Further, Plaintiffs object to Ms. Halpern's unsworn declaration to the extent it discusses, quotes, interprets, attempts to apply, and/or characterizers the *Rohrmoos* opinion, and to the extent Ms. Halpern's conclusions are based on her reading, understanding, and characterization of that decision. Plaintiffs' further objects to Ms. Halpern's unsupported and conclusory opinion that Texas Disciplinary Rule of Professional Conduct 1.04(a) renders Plaintiffs' fees unconscionable as a matter of law because a competent lawyer could not form a reasonable belief that the fee is reasonable. Plaintiffs maintain that it is for the Court, not Defendants' witness, to analyze, comment on, and apply Texas law to the issues before it and to determine whether Plaintiffs have provided sufficient evidence to support their request for attorney's fees.

Moreover, other than Plaintiffs' Motion, the sole alleged basis for Ms. Halpern's purported personal knowledge is some unidentified "information provided by Plaintiff's [sic]

attorney, Robert F. Kemp. As such, Defendants have failed to establish the basis for Ms. Halpern's opinion as required for her declaration to constitute competent summary judgment evidence. *See* Tex. R. Civ. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Kerlin*, 274 S.W.3d at 668 (noting that an affidavit "showing no basis for personal knowledge is legally insufficient"). Plaintiffs' further objects to Ms. Halpern's unsworn declaration as conclusory and contradicted by the evidence in stating that "there is no evidence to support the factors concerning the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly, the preclusion of other employment by the attorney due to the acceptance of the case, , etc." Plaintiffs have provided evidence discussing in detail, among other things, the tasks performed, making clear that the fees and hours are customary in the area, and that the hours take into account the Defendants' dilatory tactics throughout this litigation. [*See* Mo., Ex. B].

Finally, notably absent from Ms. Halpern's unsworn declaration is any testimony giving rise to a fact issue as to the reasonableness of Plaintiffs' fees. As a matter of fact, she does not even assert that she is familiar with the customary fees usually charged in Tarrant County. In other words, in addition to revealing her lack of understanding of *Rohrmoos*, Ms. Halpern does not even claim to be qualified to express an opinion that would constitute evidence on the matter. Because Defendants, neither through Ms. Halper's declaration or otherwise, provided any evidence to rebut the statutory presumption of reasonableness or the evidence of reasonableness presented by Plaintiffs, Plaintiffs are entitled to recover its attorney's fees as a matter of law.

For these reasons, Plaintiffs object to Ms. Halpern's unsworn declaration and respectfully ask the Court to sustain Plaintiffs' objections and strike and/or disregard Ms. Halpern's

declaration, and grant Plaintiffs summary judgment on the issue of attorney's fees.

**C. Plaintiffs' Objections to Defendants' Documents.**

In addition to the testimony objections set forth above, Plaintiffs objects to, and moves to strike, the following exhibits submitted by Defendants:

| EXHIBIT | OBJECTION |
|---|---|
| D | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| E | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| F | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| G | TEX. R. EVID. 107 (Optional Completeness – document is incomplete, confusing and misleading without showing what purportedly was sent); TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity); TEX. R. EVID. 1002 (Best evidence). |
| H | TEX. R. EVID. 107 (Optional Completeness – document is incomplete, confusing and misleading without showing what purportedly was sent); TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity); TEX. R. EVID. 1002 (Best evidence). |
| I | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| K | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| L | TEX. R. EVID. 401-402 (Relevance); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| N | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 602 (Personal Knowledge); Tex. R. Evid. 801-802 (hearsay); TEX. R. EVID. 901-902 (Authenticity) |
| H | TEX. R. EVID. 401-402 (Relevance); TEX. R. EVID. 901-902 (Authenticity); Duplicative. |

## III.
## REPLY TO THE MERITS RAISED IN DEFENDANT'S RESPONSE[1]

In their Motion, Plaintiffs presented evidence and legal authority that, standing alone, would entitle Plaintiffs to judgment as a matter of law on all of their claims.[2] Thus, the burden shifted to Defendants' to either raise a material fact issue or provide legal authority showing that Plaintiffs' are not entitled to judgment as a matter of law. Importantly, an affirmative defense will prevent the granting of a summary judgment only if the defendant supports each element of the affirmative defense by summary judgment evidence. *See, e.g.*, *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) ("If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment.") (holding that an affidavit supporting affirmative defense was conclusory, and therefore, not sufficient summary judgment evidence); *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex. 1972) (noting that a party raising an affirmative defense in opposition to a motion for summary judgment must either: (1) present a disputed fact issue on the opposing party's failure to satisfy his or her own burden, or (2) establish at least the existence of a fact issue on each element of his or her own affirmative defense by summary judgment proof); *State v. $90,235*, 390 S.W.3d 289, 292 (Tex. 2013) (noting that once the movant has established its right to judgment as a matter of law, the non-movant must present evidence raising a genuine issue of material fact); *Game Sys., Inc. v. Forbes Hutton Leasing, Inc.*, No. 02-09-0051-CV, 2011 WL 2119672, at *24 (Tex. App.—Fort Worth May 26, 2011, no pet.) ("[A] defendant's mere

---

[1] Any substantive argument provided regarding any matter concerning the testimony and/or documents to which Plaintiffs have objected above is made expressly subject to, and without waiving, Plaintiffs' objections to and motion to strike Defendant's evidence, as well as any other objections set forth herein.

[2] Plaintiffs' Motion and all exhibits thereto are incorporated herein by reference.

pleading of an affirmative defense is not sufficient to defeat summary judgment; a defendant relying on an affirmative defense in opposing a summary judgment must come forward with summary judgment evidence sufficient to raise an issue of material fact on each element of the defense.") (citing *Bassett v. Am. Nat'l Bank*, 145 S.W.3d 692, 696 (Tex. App.—Fort Worth 2004, no pet.); *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996); *Gulf, Colo. & Santa Fe Ry. Co. v. McBride*, 322 S.W.2d 492, 500 (Tex. 1958)).

Subject to and without waiving their objections set forth herein, because Plaintiffs have conclusively proven all essential elements of their claims and shown that they are entitled to judgment as a matter of law and that there is no genuine issue of material fact, and because Defendants have failed to meet their burden to raise an issue of material fact with respect to any of these matters, the Court should grant Plaintiffs' Motion in its entirety.

**A. Plaintiffs Have Shown Themselves Entitled to Summary Judgment.**

Plaintiffs' Motion sets forth in detail—with supporting evidence—that (1) Plaintiffs loaned $4,000,000.00 to Defendant 2999TC, (2) the loan is reflected by two promissory notes, (3) Defendants Barton and JMJ guaranteed the loan, (4) 2999TC defaulted and the Defendants failed to pay as agreed; and (5) the balance owed in connection with the loan. Plaintiffs go through and prove each and every element of their claims against Defendants. Accordingly, Plaintiffs are entitled to summary judgment unless Defendants meet their burden to raise a material fact issue with respect to Plaintiffs' claims or one or more of their affirmative defenses.

**B. Defendants have Failed to Raise a Material Fact Issue or Show That Plaintiffs' are Otherwise Not Entitled to Judgment as a Matter of Law.**

In an attempt to confuse the issues before the Court and create the false impression that a material fact issue exists, Defendants' Response is full of legally inapplicable, factually

unsupported, and/or unplead defenses. Despite Defendants' efforts, however, their Response falls far short of precluding Plaintiffs' from obtaining summary judgment.

**1. Defendants are Improperly Relying on Unplead and/or Unverified Defenses.**

Defendants JMJ and Barton have plead the following affirmative defenses: (1) waiver, (2) ratification; (3) various estoppel theories, (4) Plaintiffs' prior material breach, (5) impossibility of performance and frustration of purpose, (6) illegality, (7) failure to mitigate, (8) assumption of the risk and informed consent, and (9) (for unspecified reasons) Plaintiffs are not entitled to attorney's fees. [*See* Barton/JMJ Ans., pp 3-4]. 2999TC plead the same affirmative defenses, adding (10) Plaintiffs lack standing to recover in the capacity in which they sue, (11) failure to state facts upon which relief can be granted, and (12) usury. [*See* 2999TC Ans., pp 2-3].

By comparison, the Defendants' joint Response asserts the following defenses: (1) impossibility of performance and frustration of purpose, (2) lack of consideration, (3) material alteration, (4) duress, (5) Plaintiffs lack standing to recover in the capacity in which they sue, (6) payment, and (7) Plaintiffs did not present their claim to Defendants. Thus, the only affirmative defenses relied upon by Defendants that they actually plead are (1) impossibility of performance and frustration of purpose and (2) Plaintiffs lack standing to recover in the capacity in which they sue. Plaintiffs object to Defendants' attempt to rely on unplead affirmative defenses to defeat Plaintiffs' Motion and moves to strike the same. *See* Tex. R. Civ. P. 94. Moreover, Plaintiffs object to Defendants' defense that the Plaintiffs lack standing to recover in the capacity in which

they sue, as Defendants have not verified that defense as required by Texas Rule of Civil Procedure 93(2).[3]

#### 2. Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue.[4]

While relying on a plethora of unplead, unverified, and/or legally and factually unsupported defenses and arguments, Defendants fall far short of raising a material fact issue or raising a legal ground that would preclude Plaintiffs from obtaining summary judgment.

##### (a) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense of Impossibility of performance and frustration of purpose.

The Defendants acknowledge, as they must, that the impossibility defense generally applies only in three instances: (1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance, and (3) prevention by governmental regulation. *See Key Energy Services, Inc. v. Eustace*, 290 S.W.3d 332, 340 (Tex. App.—Eastland 2009, no pet.); [Response, at pp. 5-6, ¶ 17]. Moreover, there are two categories of impossibility: objective and subjective. *See, e.g.*, *Johnson v. Johnson*, No. 02–10–00296–CV, 2011 WL 3426223, at *2 (Tex. App.—Fort Worth 2011, no pet.); *Ibarra v. City of Laredo*, No. 04-10-00665-CV, 2012 WL 2914216, at *3 (Tex. App.—San Antonio, 2012, no pet.); *Janak v. FDIC*, 586 S.W.2d 902, 906–07 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). Objective impossibility involves something that cannot be done, such as a promisor's inability to settle a claim by entering an agreed judgment in a lawsuit that was dismissed prior to the completion of the agreement. *Johnson*, 2011 WL 3426223, at *2; *Ibarra*, 2012 WL 2914216, at *3; *Janak*, 586

---

[3] Similarly, Plaintiffs further objects to Defendants' lack of consideration, unauthorized execution of instrument in writing, and no-presentment defenses, as Defendants have not verified these defenses as required by Rule 93(7), (9), (12).

[4] Any argument made by Plaintiffs in response to the merits of Defendants' affirmative defenses is made expressly subject to Plaintiffs' objections set forth above.

S.W.2d at 906–07. Subjective impossibility involves something the promisor cannot do, such as when a promisor's financial inability to pay makes it impossible for the promisor to perform. *Johnson*, 2011 WL 3426223, at *2; *Ibarra*, 2012 WL 2914216, at *3; *Janak*, 586 S.W.2d at 906–07. While objective impossibility can serve as a defense to a breach of contract suit, a party cannot escape contract liability by claiming subjective impossibility. *Johnson*, 2011 WL 3426223, at *3; *Ibarra*, 2012 WL 2914216, at *3; *Janak*, 586 S.W.2d at 906–07. Subjective impossibility neither prevents the formation of the contract nor discharges a duty created by a contract. *Johnson*, 2011 WL 3426223, at *3; *Ibarra*, 2012 WL 2914216, at *3; *Janak*, 586 S.W.2d at 906–07.

Here, not only do Defendants present no evidence of (1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance, or (3) prevention by governmental regulation, but Defendants do not even present any evidence that performance was impossible or frustrated for any reason. Even if they put on evidence regarding unanticipated difficulties developing their real estate or refinancing, such development and refinancing are not the performance contemplated by the Notes or Guaranties, and Defendants subjective financial ability does not excuse performance. *See Johnson*, 2011 WL 3426223, at *2-3; *Ibarra*, 2012 WL 2914216, at *3; *Janak*, 586 S.W.2d at 906–07. In short, Defendants' inapplicable and unsupported affirmative defense of impossibility/frustration of purpose does not preclude summary judgment.

**(b) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense of Lack of Consideration.**

Defendants' unplead and unverified affirmative defense lack of consideration is occurs when the contract, at its inception, does not impose obligations on both parties, in which event the contract is unenforceable. *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010,

no pet.). Nowhere in their Response do Defendants assert that the Notes or Guaranties are unenforceable because they lacked consideration. Rather, they assert—without any evidence or legal argument—that certain amendments not affecting the obligation to pay as originally agreed lack consideration. In other words, even if Defendants properly plead and verified this defense (they did not) and presented evidence and legal authority supporting the same (they did not), they would not raise a fact issue on Plaintiffs' right to recover as they cannot show how the allegedly unenforceable amendments are at all relevant to the issue before the Court.

**(c) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense of Material Alteration.**

To establish a material alteration, the following elements must be shown: (1) the existence of a material alteration to the underlying contract; (2) lack of consent to the alteration; and (3) harm resulting from the alteration. *See Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 588 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Here, while Defendants argue that the notes were materially altered by Mark Adams and Plaintiffs without Barton's and JMJ's knowledge or authorization and that they learned this by finding emails from Mark Adams "the day before [their] Response was filed," Defendants do not argue or present evidence that (1) the borrower, 2999TC, was unaware of or did not consent to the referenced revision, or (2) that Barton's approval or knowledge was necessary for Mark Adams to agree to the revision on 2999TC's behalf. [Response, at p. 7, ¶ 24]. On the contrary, Defendants expressly concede that (1) the revision was made prior to funding of the loan, and (2) "Mark Adams handled all the contact with the Hodges group." [*See* Response, Ex. C, ¶ 13]. ***Worse yet, Defendants' own Exhibit G makes clear that Barton was well aware before signing the Notes and Guaranties that no prepayment would be allowed for at least the first six months***. [*See* Response, Ex. G]. In direct

contradiction to Defendants' Response and Exhibit G, Barton declares under the penalty of perjury:

- **"I was unaware of the alteration until it was recently brought to my attention <u>via my lenders</u>** who wanted to be involved in the Mandarin Hotel and Luxury Condominium project.". [Response, Ex. C, ¶ 10 (emphasis added)].

- "Mark Adams handled all the contacts with the Hodges group and **it was only in the past few days when Defendants came across e-mails <u>from Mark Adams</u>** to Brandon Hill. **In that process it was discovered that the prepayment prohibition were added** by slip sheet after I signed the two notes and the four guaranties. **This was a total surprise since I had never been consulted or apprised of these material alterations**." [Response, Ex. C, ¶ 13 (emphasis added)]

Barton's inability to keep his statements consistent only underlines the lack of merit to Defendants' arguments. This explains why Defendants have provided no evidence that the allegedly materially altered prepayment prohibition (of which Barton was aware the entire time) in any way harmed Defendants.[5] Neither could it have because if Defendants only recently learned of the prohibition, it could not have thwarted any refinancing attempts prior to that, and after suit was filed, the issue became moot. Therefore, Defendants' argument that "[b]ecause of such a prepayment penalty, refinancing the Notes become too expensive even for certain hard money investors who Defendant intended to use to refinance the Notes until such penalties were discovered" makes no sense. [Response, at p. 9, ¶ 30]. In short, Defendants' unplead material alteration defense is disingenuous at best and does not preclude summary judgment.

**(d) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense of Duress.**

Duress is an affirmative defense that is not triggered by someone threatening to do something which he has a legal right to do. *See* Rule 94; *Windham v. Alexander, Weston & Poehner, P.C.*, 887 S.W.2d 182, 185 (Tex. App.—Texarkana 1994, writ denied) ("There is a

---

[5] Moreover, Defendants admits "[a]lthough dated September 16, 2019, the Notes were not executed in their final form until September 18, 2020 [sic] after they were revised." [Response, p. 4, ¶ 12].

long line of Texas cases in which the courts have held that a threat to do merely that which one has a legal right to do is insufficient as a foundation for duress. Furthermore, in the present case, if Windham had already agreed to pay the amount being demanded, she would have sustained no damage by signing a note to pay that same amount. Implicit in the term duress is that the threat is unlawful, improper, or unjust.”). Here, Defendants assert without pleading such defense, that Barton executed an amendment and a notice receipt under duress because Hodges insisted on meeting with Barton without his attorney present. Ignoring the fact that Defendants provide zero evidence to support this self-serving assertion, Hodges had no obligation to meet with Barton’s attorney. Moreover, Defendants do not dispute that they had already agreed to pay the money back to Plaintiffs, so even if an amendment not concerning the payment obligation is unenforceable, that is irrelevant to the issues before the Court. *See Windham,* , 887 S.W.2d at 185 (“Furthermore, in the present case, if Windham had already agreed to pay the amount being demanded, she would have sustained no damage by signing a note to pay that same amount. Implicit in the term duress is that the threat is unlawful, improper, or unjust.”). In short, Defendants’ unplead duress defense is factually and legally unsupported and does not preclude summary judgment.

**(e) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense That the Plaintiffs do not have standing to recover in the capacity in which they sue.**

Defendants, without any legal authority or factual support, nonsensically claim that Plaintiffs do not have standing to recover in the capacity in which they sue because the Estate is not a “persons” or “legal entity” and the other Plaintiffs have failed to establish holder status because there are three lenders but only one note. [Response, at pp. 11-12, ¶¶ 35-37]. The lack

of merit to Defendants' argument is only underlined by their complete misstatement of well-established Texas law:

> This issue is further exacerbated by the fact that there are two executors as stated by Mr. Hodges in section 2 of his Affidavit. Finally, the Hodges Plaintiff apparently does not even have the necessary authority to enter into any transaction (especially where the lender on the Note is just the estate) and resulting litigation on behalf the estate where there are 2 executors and which requires authorization by the Court including under sec. 351.051 of the Texas Estates Code.

[Response, at pp. 11-12, ¶ 36.]. Giving Defendants all benefit of the doubt, they are simply unaware of the sections of the Texas Estates Code that actually apply here:

> Unless this title specifically provides otherwise, ***any action that a personal representative subject to court supervision may take with or without a court order may be taken by an independent executor without a court order***. The other provisions of this subtitle are designed to provide additional guidance regarding independent administrations in specified situations, and are not designed to limit by omission or otherwise the application of the general principles set forth in this chapter.[6]
>
> *    *    *
>
> ***[I]f there is more than one executor or administrator of an estate at the same time, the acts of one of the executors or administrators in that capacity are valid as if all the executors or administrators had acted jointly***.[7]

In other words, Defendants' unverified and both legally and factually contradicted defense is without merit and does not preclude summary judgment.

**(f) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense Payment.**

Defendants claim that Plaintiffs are not entitled to recover the amount sought because of a payment of $12,795.00 Defendants made. [Response, at pp 12-14, . ¶¶ 39-44]. Putting aside Defendants' completely unsupported assertion that Plaintiffs "misrepresented certain defaults,"[8]

---

[6] Tex. Est. Code § 402.002 (emphasis added).

[7] Tex. Est. Code § 307.002 (a) (emphasis added).

[8] Notably, Defendants do not assert that they ever disputed their obligation to pay these $12,795 in legal fees until they now desperately attempt to create some straw man fact issue in an attempt to confuse the Court.

Defendants claim that they made a payment of $12,795.00 that was "to be treated as a payment towards the principal or interest on the Notes." [Response, at p. 14, ¶ 44]. Not only do Defendants fail to provide any evidence that the payment should have been applied to principal and/or interest, but the only evidence Defendants provide conclusively establishes that the payment was for such legal fees. [Response, Ex. M (invoice for $12,795.00 in legal fees), Ex. N (email chain discussing payment of legal fees)]. Defendants' desperate and disingenuous attempt to change the undisputed facts does not preclude summary judgment.

**(g) Defendants Have Failed to Meet Their Burden to Raise a Material Fact Issue on Their Affirmative Defense Payment.**

Defendants claim that Plaintiffs are not entitled to recover attorney's fees because they did not present their claim pursuant to Texas Civil Practice & Remedies Code Section 38.002(2). Section 38.002 provides in its entirety:

> To recover attorney's fees under this chapter:
>
> (1) the claimant must be represented by an attorney;
>
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
>
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Tex. Civ. Prac. & Rem. Code § 38.002. Defendants take issue only with one element: (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party. To that effect, they argue as follows:

> The Plaintiffs failed, however, to make this formal presentment as it relates to the specific amount of attorneys' fees for the six (6) different contracts on which they are seeking a Summary Judgment. Indeed, the summary judgment evidence on attorneys' fees simply states the total amount of attorneys' fees that Plaintiffs have incurred in the aggregate in this case.
>
> 12. What is the amount of attorneys' fees the Plaintiff is seeking on the One Million Dollar ($1,000,000.00) Promissory Note? What is the amount of the attorneys' fees the Plaintiffs are seeking on the Thee Million Dollar

> ($3,000,000.00) Promissory Note? Since the Plaintiffs fail to allocate the proportionate amount of attorneys' fees incurred for each of the two (2) different contracts, the Plaintiffs have failed to meet their burden of proof relative to the recovery of attorneys' fees as allowed under Texas law.

[Supp. Response, at pp. 4-5, ¶¶ 11-12]. Defendants, however, do not provide any authority that actually would require Plaintiffs to present the specific amount of attorney's fees they sought before filing suit—or to seek separate fees for each of the loan documents executed in connection with the same loan transaction. The "Texas law" Defendants generically reference simply does not exist, and their argument directly contradicts Section 38.002, which requires a claim to be presented to subsequently recover attorney's fees, but says nothing about presenting a claim for a specific amount of fees as a prerequisite. Finally, it is undisputed that Plaintiffs did in fact present their claim to Defendants before filing suit. [See Ex. A-9 & Ex. A-10 to Plfs.' Mo.]. As such, Defendants' misrepresentations and unsupported arguments to the contrary do not preclude summary judgment.

**(h) Defendants Other Arguments are Equally Unfounded.**

In addition to their affirmative defenses, Defendants raise a host of non-sensical and often contradictory arguments without providing any legal authority to support the same. For example:

1. They claim that the right to prepay was a material term based on the same term sheet that they claim is not binding. [Response, at p. 9, ¶ 30 & p. 13, ¶ 42].[9]

2. They attach several unauthenticated, purportedly different versions of the Notes but do not dispute that Plaintiffs' versions are true and correct copies of the final versions.[10] Rather, they admit the Notes were revised before they were finalized. [Response, at p. 4, ¶ 12 ("Although dated September 16, 2019 the Notes were not actually executed in their

---

[9] It is still unclear how the prepayment prohibition is at all relevant in light of the fact that Defendants have provided no evidence that they could have paid the loan back early.

[10] They also argue that the signatures "appear not to match that of Mr. Barton," yet Mr. Barton swears that he singed them and that the Notes were revised by slip-sheets. [Response, at p. 10, ¶ 31 & Ex. C, ¶ 13]. Even though Defendants' have the benefit of Mr. Barton's declaration, it is silent as to the legitimacy of his signatures that Defendants argue 'appear not to match."

final form until September 18, 2020 [sic] after they were revised.")]. Defendants' unverified and unplead assertions do not preclude summary judgment—especially since Defendants admit 2999TC executed promissory notes for the amounts claimed by Plaintiffs. [Response, p. 3, ¶ 9 ("On or about September 16, 2019, Defendant executed two documents each entitled 'Promissory Note' [] to pay (1) in the amount of $1,000,000 'to the Estate of Leland A. Hodges Jr.' [] and (2) $3,000,000 'ratably to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd.")].

3. They claim without support that the alleged "payment confusion" regarding the first default (which is not at issue in this suit and therefore not relevant to Plaintiffs' Motion) was never resolved. [Response, at p. 14, ¶ 46].

4. They fail to explain any purported significance of Mark Adams supposedly telling Defendants that Plaintiffs exercised their conversion option and admit to have no proof of the same. [Response, Ex. C, ¶ 12]. Instead, they improperly try to raise a fact issue by arguing that "Plaintiff has not asserted in its [sic] Affidavit or provided any evidence that the Conversion Option was not exercised. [Response, at p. 15, ¶ 47].[11]

5. They seek to create confusion about Plaintiffs' right to recover by arguing that they cannot determine what is owed on each Note and Guaranty or the ratio each Plaintiff is entitled to receive, and the pledge agreements provide for inconsistent remedies. [Response, at pp. 15-16, ¶¶ 49-50].[12] Defendants' argument that the remedies provided for in the event of default under agreements not at issue in this suit somehow prevents Plaintiffs from recovering the amounts owed under the Notes is absurd at best and Plaintiffs have no burden to show that they did not exercise any such remedies in order to recover, and Defendants are unable to provide any legal support for the novel idea that the fact that the face of the Notes do not state the ratio of the Loan advanced by each lender somehow affects Plaintiffs' right to recover. Finally, Defendants' argument that Plaintiffs have failed to establish the amount due and owing under each Note is completely nonsensical. [Supp. Response, at pp. 3-4, ¶¶ 8-9. There is one $4,000,000.00 Loan reflected by two Notes one for $1,000,000 and one for $3,000,000)—both accruing interest at the exact same rate. Plaintiffs provided copies of the Notes and a detailed calculation of the amounts due. Considering that one Note makes up 75% of the Loan and the other 25%, both Notes carry the same interest, and no payments have been made toward principal, Defendants would have to actively stick their heads in the sand to avoid understanding what is owed in connection with each Note (to the extent it is necessary to do so).

6. They assert—without any legal authority or evidence in support—that Plaintiffs are required to prove the elements of breach of contract because purportedly the Notes are

[11] Notably, Defendants have not plead that Plaintiffs exercised any such option.

[12] Defendants also argue that Plaintiffs' interest calculation is disputed because they take the position that Plaintiffs are not entitled to additional interest upon calling the Notes. [Response, at p. 15, ¶ 48]. Again, Defendants ignores the undisputed facts, as Plaintiffs have moved for summary judgment based on accelerating the Notes based on Defendants' default rather than on their election to call the Notes early. Accordingly, even assuming Defendants' argument would otherwise have merit (it does not), it is entirely irrelevant to the matters before the Court.

non-negotiable because "the 'balance is due and owing on the Notes' is contingent upon whether or not the Conversion Option is exercised, whether the Call Notices are exercised and when, and exercising of the remedies under the 299TC Pledge." [Response, at pp. 16-17, ¶ 51]. Of course, accepting this argument would mean that no Note would ever be negotiable since the balance due and owing would always be contingent upon whether any payment has been made on the note.

7. They claim that "performance of the Guaranties was impossible" because they require a first priority lien to be granted upon something upon which Barton could not possibly grant such liens because of pre-existing liens. [Response, at p. 18, ¶ 55]. In other words, Defendants actually argue that they are excused from paying Plaintiffs the $4,000,000 loan back solely by virtue of Barton's misrepresentation as to what he would to for Plaintiffs to induce them to make the loan.

8. They claim—again without any evidentiary support—that the loan funds were not released to Defendants until after September 16, 2019, making Plaintiffs' due dates and interest calculations inaccurate. That Defendants do not even suggest when they claim they in fact received the funds only underlines the lack of merit of their argument. [Response, at p. 14, ¶ 45].

In short, Defendants have wholly failed to raise a material fact issue or present a legal argument that would preclude Plaintiffs from obtaining summary judgment.

## IV.
## CONCLUSION & PRAYER

Plaintiffs are entitled to summary judgment against Defendants for the reasons asserted in its Motion and this Reply. Accordingly, Plaintiffs respectfully request that the Court sustain Plaintiffs' objections to Defendants' attempt to rely on unplead and unverified defenses and strike the same; consider the matters set forth in Defendants' Response only to the extent such matters are properly pleaded and verified in Defendants' respective live answer on file with the Court; sustain Plaintiffs' objections to, and strike the incompetent summary judgment evidence offered by Defendants; and enter judgment against Defendants, joint an severally, and in favor of Plaintiffs, as follows:

(a) Actual damages in the amount of $4,250,000.00 as of April 21, 2020;

(b) Prejudgment interest on the outstanding $4,000,000.00 principal balance at the contractually agreed-upon rate of 18% calculated on a 360-day-year basis

beginning on April 22, 2020 and continuing until the day before the final judgment is signed;

(c) Post-judgment interest on the above amounts at the contractually agreed-upon rate of 18% calculated on a 360-day-year basis from the date the final judgment is entered until such judgment is paid in full;

(d) Attorney's fees and expenses in the amount of $111,962.00, with post-judgment interest thereon at the annual rate of 5% from the date of the final judgment until such fees are paid in full;

(e) Conditional appellate attorney's fees as follows:

  (i) at least $20,000.00 to respond to an appeal to the Second Court of Appeals of Texas (or any transferee court assigned to hear the appeal by the Texas Supreme Court) and to prepare for and present oral argument;

  (ii) at least $10,000.00 to respond to or file a petition for review with the Texas Supreme Court;

  (iii) at least $20,000.00 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument; and

  (iv) post-judgment interest on the conditional appellate attorney's fees at the annual rate of 5% from the date of each such respective final appellate adjudication until such fees are paid in full;

(f) Costs of suit; and

(g) Such other and further relief to which Plaintiffs may be justly entitled, whether at law or in equity

Respectfully submitted,

*/s/ Joakim G. Soederbaum*

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2020, a true and correct copy of the foregoing document was served electronically upon all counsel of record as follows:

Mark S. Dugan
**DECKER JONES, P.C.**
801 Cherry Street, Unit #46
Burnett Plaza, Suite 2000
Fort Worth, Texas 76102
mdugan@deckerjones.com
**ATTORNEY FOR DEFENDANT**
**2999TC LP, LLC**

Robert F. Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
lawyerkemp@cs.com
**ATTORNEY FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>L. Allen Hodges, III, as Independent Executor of the Estate of Leland A. Hodges, Jr., et al. | **DEFENDANTS**<br>2999TC LP, LLC, et al. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Dee J. Kelly, Jr., Kelly, Hart & Hallman, 201 Main Street, Suite 2500, Fort Worth, TX 76102 | **ATTORNEYS** (If Known)<br>Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC, 1412 Main Street, Suite 500, Dallas, TX 75202 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Determination of Removed Proceeding pursuant to FRBP 7001(10)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☒ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>2999TC LP, LLC | BANKRUPTCY CASE NO.<br>20-43204-mxm | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Fort Worth | NAME OF JUDGE<br>Mullin |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>Joyce Lindauer | | |
| DATE<br>10-16-2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Joyce W. Lindauer | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**Tarrant County District Clerk Online**
**Thomas A. Wilder, District Clerk**

Civil Case and Transaction Information 10/15/2020 1:33 PM

**Court :** 141 **Case :** 316567 Search New Search ☐ **Show Service Documents ONLY**

**Cause Number : 141-316567-20** **Date Filed : 04-22-2020**

L. ALLEN HODGES III, ET AL **| VS |** 2999TC LP, LLC, ET AL

**Cause of Action :** OTHER CIVIL, OTHER

**Case Status :** PENDING

| File Mark | Description | | Assessed Fee | Credit/Paid Fee |
|---|---|---|---|---|
| 04-22-2020 | PLTFS' ORIG PET, REQ FOR DISCL, AND VERIFIED EX PARTE APPL FOR TRO, TEMP INJ, AND PERMANENT INJ | PDF N | $289.00 | |
| 04-22-2020 | COURT COST (PAID) trans #1 | Y | | $289.00 |
| 04-22-2020 | COPIES - SENT TO DP | N | $8.50 | |
| 04-22-2020 | COURT COST (PAID) trans #3 | Y | | $8.50 |
| 04-22-2020 | CIT-ISSUED ON JMJ DEVELOPMENT LLC-On 04/22/2020 | PDF N Svc | $8.00 | |
| 04-22-2020 | CIT-ISSUED ON TIM BARTON-On 04/22/2020 | PDF N Svc | $8.00 | |
| 04-22-2020 | COURT COST (PAID) trans #6 | Y | | $8.00 |
| 04-22-2020 | COURT COST (PAID) trans #5 | Y | | $8.00 |
| 04-22-2020 | CIT Cert Mail-ISSUED ON 2999TC LP LLC-On 04/22/2020 | PDF N Svc | $83.00 | |
| 04-22-2020 | COURT COST (PAID) trans #9 | Y | | $83.00 |

000689

| | | | | |
|---|---|---|---|---|
| 04-22-2020 | JURY FEE | N | $40.00 | |
| 04-22-2020 | COURT COST (PAID) trans #11 | Y | | $40.00 |
| 04-22-2020 | ***TRO (BOND $1000) HRG- 5/6/20 10:00AM | PDF M | | $0.00 |
| 04-22-2020 | T.R.O.-ISSUED ON JMJ DEVELOPMENT LLC. H/R 05/06/2020 - 10:00-On 04/22/2020 | PDF N Svc | $8.00 | |
| 04-22-2020 | T.R.O.-ISSUED ON TIM BARTON. H/R 05/06/2020 - 10:00-On 04/22/2020 | PDF N Svc | $8.00 | |
| 04-22-2020 | COURT COST (PAID) trans #15 | Y | | $8.00 |
| 04-22-2020 | COURT COST (PAID) trans #14 | Y | | $8.00 |
| 04-22-2020 | T.R.O. CERT MAIL-ISSUED ON 2999TC LP LLC. H/R 05/06/2020 - 10:00-On 04/22/2020 | PDF N Svc | $83.00 | |
| 04-22-2020 | COURT COST (PAID) trans #18 | Y | | $83.00 |
| 04-22-2020 | CASH BOND - | Y | | $1,000.00 |
| 04-23-2020 | Registry notification from #13 | | | $0.00 |
| 04-23-2020 | Registry Investment | Y | | -$1,000.00 |
| 04-29-2020 | PLTFS' EMERG MTN FOR SUB SVC & EX PARTE MTN TO EXTEND RESTRAINING ORD | PDF | | $0.00 |
| 04-29-2020 | (PROPOSED) ORD AUTHORIZING SUB SVC & TO EXTEND TRO | PDF | | $0.00 |
| 04-29-2020 | T.R.O.-ISSUED ON JMJ DEVELOPMENT LLC. H/R 05/12/2020 - 10:00-On 04/30/2020 | PDF N Svc | $8.00 | |
| 04-29-2020 | T.R.O.-ISSUED ON TIM BARTON. H/R 05/12/2020 - 10:00-On 04/30/2020 | PDF N Svc | $8.00 | |

| | | | | |
|---|---|---|---|---|
| 04-29-2020 | NOTICE, T.R.O. | V A Svc | $8.00 | |
| 04-29-2020 | COURT COST (PAID) trans #27 | Y | | $8.00 |
| 04-29-2020 | COURT COST (PAID) trans #26 | Y | | $8.00 |
| 04-29-2020 | COURT COST (PAID) trans #25 | Y | | $8.00 |
| 04-29-2020 | SERVICE FEE, SUBSEQUENT CERTIFIED MAIL | V A Svc | $75.00 | |
| 04-29-2020 | COURT COST (PAID) trans #31 | Y | | $75.00 |
| 04-30-2020 | *ORD FOR SUB SVC & EXTEND TRO TO 5/12/20 HRG 10AM* | PDF M | | $0.00 |
| 04-30-2020 | NOTICE, T.R.O. Tr# 27 | V A Svc | -$8.00 | |
| 04-30-2020 | SERVICE FEE, SUBSEQUENT CERTIFIED MAIL Tr# 31 | V A Svc | -$75.00 | |
| 04-30-2020 | T.R.O. CERT MAIL-ISSUED ON 2999TC LP LLC. H/R 05/12/2020 - 10:00-On 04/30/2020 | PDF N A Svc | $83.00 | |
| 05-01-2020 | CIT RETURN-TIM BARTON | PDF | | $0.00 |
| 05-01-2020 | TRO RETURN-ALLEN HODGES III | PDF | | $0.00 |
| 05-01-2020 | TRO RETURN-JMJ DEV LLC | PDF | | $0.00 |
| 05-01-2020 | CIT RETURN-JMJ DEV LLC | PDF | | $0.00 |
| 05-01-2020 | TRO RETURN-TIM BARTON | PDF | | $0.00 |
| 05-01-2020 | TRO RETURN-TIM BARTON | PDF | | $0.00 |

000691

| | | | | |
|---|---|---|---|---|
| 05-01-2020 | CIT Tr# 6 RET EXEC(TIM BARTON) On 04/30/2020 | | | $0.00 |
| 05-01-2020 | T.R.O. Tr# 25 RET EXEC(JMJ DEVELOPMENT LLC) On 04/30/2020 | | | $0.00 |
| 05-01-2020 | T.R.O. Tr# 14 RET EXEC(JMJ DEVELOPMENT LLC) On 04/30/2020 | | | $0.00 |
| 05-01-2020 | CIT Tr# 5 RET EXEC(JMJ DEVELOPMENT LLC) On 04/30/2020 | | | $0.00 |
| 05-01-2020 | T.R.O. Tr# 26 RET EXEC(TIM BARTON) On 04/30/2020 | | | $0.00 |
| 05-01-2020 | T.R.O. Tr# 15 RET EXEC(TIM BARTON) On 04/30/2020 | | | $0.00 |
| 05-04-2020 | ADDITIONAL CIT RETURNED BY DIFF PROCESS SERVER | | | $0.00 |
| 05-04-2020 | ADDITIONAL CIT RETURNED BY DIFF PROCESS SERVER | | | $0.00 |
| 05-04-2020 | ADDITIONAL CIT RETURNED BY DIFF PROCESS SERVER | | | $0.00 |
| 05-04-2020 | T.R.O. CERT MAIL Tr# 18 RET EXEC(2999TC LP LLC) On 04/28/2020 | | | $0.00 |
| 05-04-2020 | CIT Cert Mail Tr# 9 RET EXEC(2999TC LP LLC) On 04/28/2020 | | | $0.00 |
| 05-04-2020 | LTR FROM REG AGENT-DEFN IS NOT THEIR CLIENT | | | $0.00 |
| 05-11-2020 | UNOPPOSED MTN TO EXTEND TRO | | | $0.00 |
| 05-11-2020 | (PROPOSED) ORD EXTENDING TRO & RESETTING HRG ON APPL FOR TEMP INJUNCTION | | | $0.00 |
| 05-12-2020 | *ORD EXTEND TRO TO 5/26/20 HRG 5/26/20 9:30AM | M | | $0.00 |
| 05-12-2020 | NOT OF HRG 5/26/20 9:30AM-TEMP INJUNCTION | | | $0.00 |

000692

| | | | | |
|---|---|---|---|---|
| 05-13-2020 | LTR FROM SOS UNABLE TO SERVE DEFN | PDF | | $0.00 |
| 05-19-2020 | 2ND UNOPPOSED MTN TO EXTEND TRO | PDF | | $0.00 |
| 05-19-2020 | (PROPOSED) ORD EXTENDING TRO & RESETTING HRG | PDF | | $0.00 |
| 05-19-2020 | *ORD EXTENDING TRO & RESETTING HRG 6/6/20 9:30AM | PDF M | | $0.00 |
| 05-19-2020 | AMD NOT OF HRG - 6/16/20 9:30AM | PDF | | $0.00 |
| 06-01-2020 | MTN TO QUASH SERVICE | PDF | | $0.00 |
| 06-01-2020 | (PROPOSED) ORD GRANTING MTN TO QUASH SERVICE | PDF | | $0.00 |
| 06-01-2020 | MTN TO QUASH SERVICE | PDF | | $0.00 |
| 06-02-2020 | T.R.O. CERT MAIL Tr# 36 RET EXEC(2999TC LP LLC) On 05/29/2020 | PDF | | $0.00 |
| 06-05-2020 | PLTFS' MTN FOR FINAL DEFAULT JDG & RESP TO DEFNS MTN TO QUASH | PDF | | $0.00 |
| 06-05-2020 | DEFN 2999TC'S MTN TO DISM FOR LACK OF JURISDICTIONAND SPEC/EXEC | PDF | | $0.00 |
| 06-05-2020 | 2999TC'S MTN TO DISSOLVE TRO & MTN TO STAY CASE | PDF | | $0.00 |
| 06-08-2020 | NOT OF HRG 6/11/20 10:30AM-SEVERAL MTNS | PDF | | $0.00 |
| 06-08-2020 | NOT OF HRG 6/11/20 10:30AM-VARIOUS MTNS | PDF | | $0.00 |
| 06-10-2020 | AMD NOT OF HRG 6/11/20 9:30AM-SEVERAL MTNS | PDF | | $0.00 |
| 06-10-2020 | DEFN 2999TC LP LLC'S ORIG ANS & REQ FOR DISCL | PDF | | $0.00 |

| | | | | |
|---|---|---|---|---|
| 06-10-2020 | AMD NOT OF HRG 6/11/20 9:30AM-SEVERAL MTNS | PDF | | $0.00 |
| 06-11-2020 | (PROPOSED) ORD DENYING DEFN 2999TC'S MTN TO STAY | PDF | | $0.00 |
| 06-11-2020 | (PROPOSED) ORD DENYING DEFN 2999TC'S MTN TO DISM FOR LACK OF JURISDICTION & SPEC/EXEC | PDF | | $0.00 |
| 06-11-2020 | (PROPOSED) ORD DENYING DEFNS BARTON & JMJ DEV LLC MTN TO QUASH SVC | PDF | | $0.00 |
| 06-15-2020 | PLTF'S 1ST AMD PET | PDF | | $0.00 |
| 06-15-2020 | LTR RE: WITHDRAW OF HRG | PDF | | $0.00 |
| 06-18-2020 | DEFN'S MTV & ORIG ANS SUBJECT THERETO | PDF | | $0.00 |
| 06-23-2020 | NOT OF HRG 7/1/20 10AM-TRANSFER VENUE | PDF | | $0.00 |
| 06-29-2020 | DEFNS' OBJS TO HRG & MTN FOR CONT | PDF | | $0.00 |
| 06-29-2020 | (PROPOSED) ORD GRANTING LEAVE OF COURT | PDF | | $0.00 |
| 07-06-2020 | JMJ & BARTON'S REPLY IN SUPPORT OF MTN TO TRANSFERVENUE | PDF | | $0.00 |
| 07-10-2020 | *ORD GRANTING LEAVE OF COURT | PDF M | | $0.00 |
| 07-10-2020 | *ORD DENYING MTV | PDF M | | $0.00 |
| 07-23-2020 | PLTFS' MTN FOR SUM/JDG | PDF | | $0.00 |
| 07-24-2020 | NOT OF HRG 8/20/20 11AM-MTN FOR SUM/JDG | PDF | | $0.00 |

| | | | | |
|---|---|---|---|---|
| 08-10-2020 | JMJ DEV LLC & BARTON'S MTN FOR CONT | PDF | | $0.00 |
| 08-10-2020 | (PROPOSED) ORD FOR CONT | PDF | | $0.00 |
| 08-11-2020 | DEFNS' 1ST AMD MTN FOR CONT | PDF | | $0.00 |
| 08-11-2020 | (PROPOSED) ORD FOR 1ST AMD CONT | PDF | | $0.00 |
| 08-12-2020 | DEFN 2999'S MTN TO CONT HRG ON MTN FOR SUM/JDG | PDF | | $0.00 |
| 08-12-2020 | DEFN 2999 LLC'S NOT OF HRG 8/14/120 10:30AM- CONT MSJ | PDF | | $0.00 |
| 08-14-2020 | PLTFS RESP IN OPPOSITINO TO JMJ & BARTON'S 1ST AMDMTN FOR CONT & TO DEFN 2999'S UNVERIFIED MTN FOR CONT | PDF | | $0.00 |
| 08-14-2020 | DEFN 2999TC LP LLC'S RESP TO PLTFS MTN FOR SUM/JDG | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |

| | | | | |
|---|---|---|---|---|
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 08-14-2020 | (ATTACHED) EXHIB | PDF | | $0.00 |
| 09-03-2020 | MTN OT WITHDRAW AS COUNSEL FOR 2999TC LP LLC | PDF | | $0.00 |
| 09-03-2020 | (PROPOSED) ORD GRANTING MTN TO WITHDRAW | PDF | | $0.00 |
| 09-15-2020 | *ORD GRANTING MTN TO W/D AS COUNSEL* | PDF M | | $0.00 |
| 09-25-2020 | NOT OF HRG 10/16/20 @ 11AM | PDF | | $0.00 |
| 10-09-2020 | DEFNS 1SR SUPPL RESP TO PLTFS MTN FOR SUM JDG | PDF | | $0.00 |
| 10-09-2020 | NOT OF APPEARANCE FOR DEFN 2999TC LP LLC | PDF | | $0.00 |
| 10-14-2020 | PLTFS REPLY BRIEF IN SUPPORT OF THEIR MSJ | PDF | | $0.00 |

000696

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD. LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.** **Plaintiffs/Counter-Defendants,** | § | |
| **v.** | § | **ADVERSARY NO. 20-04078-mxm** |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON** **Defendants/Counter-Plaintiffs.** | § | |

**2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON DEFENDANTS' ORIGINAL COUNTER-CLAIMS**

COME NOW Defendants, JMJ Development, LLC ("JMJ") and Tim Barton ("Barton"), in the above-referenced case along with the Defendant 2999TC LP, LLC, the Debtor in the recently filed bankruptcy case of 2999TC LP, LLC ("2999TC") (collectively, "Defendants"/"Counter-Plaintiffs") and file this Defendants' Original Counter-Claims and would respectfully show this Court as follows:

## I.
## The Removed Proceeding

1. The underlying proceeding was filed in the 141ST Judicial District Court, Tarrant County, Texas, entitled, *L. Allen Hodges III, as Independent Executor of the Estate of Leland A.*

*Hodges, Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton.*

2. The underlying proceeding was removed to this Court on October 16, 2020 by 2999TC LP, LLC ("2999TC").

## II.
## Factual Background

3. On September 16, 2019, 299TC executed two documents each entitled "Promissory Note" (the "Notes") to pay (1) in the amount of $1,000,000 "to The Estate of Leland A. Hodges Jr." ("Estate") and (2) and $3,000,000 "ratably to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd." (collectively, "Tejas" and together with Hodges, "Plaintiffs"/"Counter-Defendants") (the "Notes"). At all times Plaintiffs were informed of the purpose of the Notes – to facilitate the acquisition of real estate in Dallas, Texas to be developed into a five star hotel and resort. Further, at all times Plaintiffs were informed that the Notes would be paid back from take-out financing acquired for the development of the Project.

4. Contemporaneously with the Notes, Defendant and Tejas executed the Conversion Option Agreement ("Conversion Option") as defined and as referenced in the Tejas Note which granted to Tejas an option to convert the amounts owed to Tejas to membership interests in the 2999TC entity in exchange for cancellation of the Tejas Note along with any related costs and fees.

5. Contemporaneously with the Notes and the Conversion Option, two Membership Interest Pledge Agreements were executed by (1) Tim Barton as the Pledgor, the Defendant, and Estate and (2) Tim Barton as Pledgor, Defendant, and Tejas (collectively, "2999TC Pledges").

6. Following the execution of the Notes on or about September 18, 2019, the first page of each Note was revised and modified including the removal of certain rights to prepay the principal on the Notes as had been agreed to by the parties and the modified first page was "slipped" into the Notes in place of the original first page without consent of Tim Barton as the President of 2999TC as the signor of the Notes or the guarantors. Such revisions were not discovered until months later.

7. On February 20, 2020 Plaintiffs sent a single written notice to 2999TC "to exercise its option to call all amounts due under each of the Notes."

8. On or about April 14, 2020, Plaintiffs sent a "demand to immediately cease and desist violations of Personal Guaranties" and subsequently asserted certain claims and defaults in the underlying proceedings related thereto even though such issues had been previously resolved.

9. Against this backdrop, the COVID-19 pandemic hit and Defendant began informing Plaintiffs that the pandemic was making performance under the Notes impossible and was otherwise preventing Defendant from operating or developing the Project as anticipated.

10. Despite Defendant's best efforts, the pandemic made performance under the Notes impossible including the catastrophic impact on the capital markets and ability to obtain loans for the funding of hospitality development projects, and otherwise prevented Defendant from operating or developing the Project as anticipated.

## III.
## Claim - Declaratory Judgment

11. Counter-Plaintiffs incorporate the foregoing provisions and pray that the Court enter a declaratory judgment under the Texas Declaratory Judgment Act (Chapter 37 of the Texas Civil Practice and Remedies Code) to determine the rights, status, and obligations of the parties

under the following documents and, as such, "all persons who have or claim any interest that would be affected by the declaration" are included as parties in this case as required by Tex. Rev. Civ. Stat. § 37.006(a):

(a) Declare the guaranties of Defendant Tim Barton ("Barton") to Plaintiffs either void, voidable, invalid or unenforceable by reason of the underlying promissory notes being modified without consent of 2999TC and/or without consent of Barton after execution and delivery of the guaranty documents to Plaintiffs.

(b) Declare the guaranties of Defendant Barton to Plaintiff L. Allen Hodges, as Independent Executor of the Estate of Leland A. Hodges Jr, ("Estate") either void, voidable, invalid, or unenforceable by reason of the obligation required by Plaintiffs as defined in section 14 of the guaranty documents, including Exhibit A as referenced in section 14, is impossible to be performed as applicable law does not permit placing multiple first liens on real property based on the unencumbered value of such property. Additionally, filing liens on such properties would result in the breach of the deeds of trust on the applicable properties.

(c) Declare the guaranties of Defendant JMJ Development, LLC ("JMJ") to Plaintiffs either void, voidable, or unenforceable by reason of the underlying promissory notes being modified without consent of 2999TC and/or without consent of JMJ after execution and delivery of the guaranty documents to Plaintiffs.

(d) Declare the promissory note to the Estate ("Estate Note") and the promissory note to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. ("Tejas Note" with the Estate Note and Tejas Note collectively defined as "Notes") void,

voidable, invalid, or unenforceable resulting from a material alternation that was made without consent of the Borrower including its authorized representative.

(e) To the extent the Notes are valid and enforceable, declare that the Notes are non-negotiable instruments including for the following reasons: (1) the Option contained in the Tejas Note including which requires the parties to look to rights and obligations of the parties as contained in the Option Agreement as referenced and defined in the Tejas Note, (2) the provisions under the Notes allegedly granting the right to enforce remedies under "any other instrument or agreement related hereto" (3) the call option as defined and contained in the Notes, (4) the reference and incorporation of each Note with other "note documents" being the "final agreement" between the parties.

(f) Declare the waivers contained in the Notes as applicable to "Other Obligated Parties" including the guarantors void, unenforceable, voidable, or invalid resulting from the above referenced modification of the Notes.

12. Further, Counter-Plaintiffs are entitled to and request the award of their reasonable and necessary attorneys' fees and costs of court as authorized by Tex. Civ. Prac. & Rem. Code §37.009.

**IV.**
**Conditions Precedent**

13. All conditions precedent to Counter-Plaintiffs' right to recover have been performed, have occurred, or have been waived.

**V.**
**Prayer**

WHEREFORE, PREMISES CONSIDERED, 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton respectfully requests this court grant the declarations requested in its claims above

and award Counter-Plaintiffs their reasonably and necessary attorney's fees and costs and any other relief they may be entitled to.

Dated: October 16, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
ATTORNEYS FOR 2999TC LP, LLC

/s/ Robert F. Kemp

Robert F. Kemp
SBN 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
Email: lawyerkemp@cs.com
ATTORNEY FOR DEFENDANTS JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been delivered via email to the below counsel of record, on this the 16th day of October, 2020.

Dee J. Kelly, Jr.
Kelly, Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Email: dee.kelly@kellyhart.com

Joakim G. Soederbaum
Kelly, Hart & Hallman
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Email: joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE 2999TC LP, LLC, | § | |
| | § | CASE NO. 20-43204-mxm11 |
| Debtor. | § | |
| | § | |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD., | §<br>§<br>§<br>§<br>§<br>§ | |
| | § | |
| Plaintiffs, | § | |
| v. | § | ADVERSARY NO. 20-04078 |
| | § | |
| 2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON, | §<br>§<br>§ | |
| | § | |
| Defendants. | | |

**SECOND AMENDED MOTION TO DISMISS DEFENDANT 2999TC LP, LLC ONLY AND ABSTAIN AND REMAND TO STATE COURT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... 2

I. RELEVANT FACTUAL BACKGROUND .......... 4

II. DISCUSSION .......... 7

A. Dismissal of the Plaintiffs' Claims Against the Debtor is Appropriate. .......... 7

B. Abstention and Remand of the State Court Lawsuit is Appropriate. .......... 10

III. CONCLUSION .......... 14

CERTIFICATE OF SERVICE .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Borne v. New Orleans Health Care, Inc.*,
116 B.R. 487 (E.D. La. 1990) .......... 14

*Davis v. Huskipower Outdoor Equip. Corp.*,
936 F.2d 193 (5th Cir. 1991) .......... 7, 8

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*,
130 B.R. 405 (S.D.N.Y. 1991) .......... 14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
511 F. Supp. 2d 742 (S.D. Tex. 2005) .......... 12

*In re Gober*,
100 F.3d 1195 (5th Cir. 1996) .......... 12

*In re MontCrest Energy, Inc.*,
No. 13-41129-DML-7, 2014 WL 6982643 (Bankr. N.D. Tex. Dec. 9, 2014) .......... 12

*In re Petroleum Prod. & Servs., Inc.*,
556 B.R. 296 (Bankr. S.D. Tex. 2016) .......... 7, 12

*In re Petroleum Prod. & Servs., Inc.*,
561 B.R. 662 (Bankr. S.D. Tex. 2016) .......... 12

*J.T. Thorpe Co. v. Am. Motorists*,
No. CIV.A. H-02-4598, 2003 WL 23323005 (S.D. Tex. June 9, 2003) .......... 12, 13

*Lone Star Industr., Inc. v. Liberty Mut. Ins.*,
131 B.R. 269 (D. Del. 1991) .......... 14

*Robles v. Atlantic Sounding Co., Inc.*,
77 Fed. Appx. 274 (5th Cir. 2003) .......... 7, 8

*Simridge Techs., Ltd. v. Wells Fargo Business Credit, Inc.*,
2004 WL 1055706 (W.D. Tex. 2004) .......... 7, 8, 9

*Stern v. Marshall*,
564 U.S. 462 (2011) .......... 11

*Wood v. Wood (In re Wood)*,
825 F.2d 90 (5th Cir. 1987) .......... 10, 11

**Rules**

Fed. R. Bankr. P. 7041(a)(2) .......... 8

Fed. R. Civ. P. 41(a)(2) .......... 7, 10

Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr. (the "Hodges Estate"), Tejas Group, Ltd. ("Tejas Group"), LAH III Family Specific Interest, Ltd. ("LAH"), and Blackfoot Interest, Ltd. ("Blackfoot" and collectively with the Hodges Estate, Tejas Group, and LAH, the "Plaintiffs") file this Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court (the "Motion"), and in support thereof respectfully show as follows:

## I. RELEVANT FACTUAL BACKGROUND

1. In connection with the closing of a real estate transaction, Plaintiffs loaned and delivered to 2999TC LP, LLC ("2999TC" or the "Debtor") the total sum of $4,000,000.00 (the "Loan") on or about September 16, 2019. The Loan is reflected by two promissory notes made and executed by Defendant Tim Barton ("Barton") on behalf of 2999TC: one to the Estate for $1,000,000.00 (the "Estate Note") and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (the "Company Note" and collectively with the Estate Note, the "Notes").

2. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18 percent annually calculated on a 360-day year, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020. Further, the Notes expressly give Plaintiffs the option to call the Notes, making all amounts owed under the Notes due in full sixty days after Plaintiffs giving notice they are exercising the option.

3. In addition, Barton and his related entity, JMJ Development, LLC ("JMJ") agreed to guarantee the Loan. In connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes—one for each of the Notes in his individual capacity and one for each of the Notes on behalf of JMJ (collectively, the "Guaranties"). Of particular relevance

here, the Guaranties are unconditional guaranties of payment and expressly provide that Plaintiffs may enforce the Guaranties against Barton and JMJ without first exhausting their remedies—or even filing suit—against 2999TC.

4. 2999TC failed to timely make the first interest-only payment when it was due on December 16, 2019. Ultimately, only after Plaintiffs made demand on 2999TC, Barton, and JMJ and threatened to accelerate the Loan did Plaintiffs receive the overdue interest payment on or about January 29, 2020.

5. On or about February 20, 2020, the Plaintiffs noticed 2999TC that they chose to exercise their option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later—on April 20, 2020 (the "Notice of Call Election"). The next day, on February 21, 2020, the Plaintiffs met with Barton. During that meeting, Plaintiffs hand delivered a copy of the Notice of Call Election to Barton, who acknowledged receipt of the notice in writing.

6. Subsequently, 2999TC failed to pay the second interest-only payment, which was due on March 16, 2020. On March 27, 2020, the Plaintiffs made a written demand on 2999TC, Barton, and JMJ that they make the overdue payment by April 6, 2020. After 2999TC, Barton, and JMJ failed to cure the payment defaults as demanded by Plaintiffs' March 27, 2020 demand, Plaintiffs accelerated the Loan and demanded payment in full from 2999TC, Barton, and JMJ of all amounts due and owing, on or about April 14, 2020.

7. As of the filing of this Motion, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed and Plaintiffs have received no payment in connection with the Loan since the past-due December 2019 payment was made in late January of 2020, the Notes remain unpaid, and the principal balance is currently due and owing in full.

8. On April 21, 2020, the Plaintiffs commenced a lawsuit styled as *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III*

*Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20, which was pending in the 141st Judicial District Court in Tarrant County, Texas (the "State Court Lawsuit"). The State Court Lawsuit asserted causes of action against 2999TC for breach of the Notes and against Barton and JMJ for breach of the Guaranties. Neither 2999TC, Barton, nor JMJ asserted any counterclaims against the Plaintiffs.

9. Subsequently, on July 23, 2020, the Plaintiffs filed a Motion for Summary Judgment (the "MSJ") against 2999TC, Barton, and JMJ (collectively, the "Defendants") on their claims for breach of the Notes and Guaranties as well as on their claim for attorneys' fees and costs of suit. The hearing on the MSJ was originally scheduled for August 20, 2020, but was continued until October 16, 2020 at 11:00 a.m. after Defendants represented to the court that they needed additional time to conduct discovery to defend against Plaintiffs' claims.

10. Notably, on October 16, 2020 at 9:18 a.m. (less than two hours before the MSJ hearing) (the "Petition Date"), and without having conducted any additional discovery, 2999TC filed for relief under chapter 11 of the Bankruptcy Code. Shortly thereafter, the Debtor filed its Notice of Removal effectuating a removal of the State Court Lawsuit to this Court, which is pending as the above-referenced adversary proceeding. As a result of the Debtor's bankruptcy filing, the hearing on the MSJ did not proceed, and Plaintiffs' counsel explained to the court and 2999TC's counsel that Plaintiffs intended to nonsuit their claims against 2999TC and return to the state court so that they promptly could proceed with the MSJ against JMJ and Barton.

11. Subsequently that same day, in an apparent attempt to prevent Plaintiffs from proceeding on the merits in state court, the Debtor and the other Defendants have for the first time since the commencement of the State Court Lawsuit filed counterclaims against the Plaintiffs as reflected in their Original Counterclaims (the "Counterclaims") [Docket No. 5]. Notably, Defendants' Counterclaims are simply some affirmative defenses plead in the form of a request for declaratory judgment.

12. Based upon the current factual circumstances and pending bankruptcy case, dismissal of the Debtor is appropriate at this time so that the Plaintiffs can proceed with their pending MSJ against Barton and JMJ in state court, and Plaintiffs' respectfully request that the Court dismiss their claims against the Debtor, without prejudice. Further, this Court should remand the State Court Lawsuit back to state court based on either: (1) mandatory abstention under 28 U.S.C. § 1334(c)(2); (2) permissive abstention under 28 U.S.C. § 1334(c)(1); or (3) equitable remand under 28 U.S.C. § 1452(b). *See, e.g.*, *In re Petroleum Prod. & Servs., Inc.*, 556 B.R. 296, 300-01 (Bankr. S.D. Tex. 2016) (internal citations omitted).

## II. <u>DISCUSSION</u>

**A. Dismissal of the Plaintiffs' Claims Against the Debtor is Appropriate.**

13. Federal Rule of Civil Procedure 41(a)(2), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7041, provides the standard for a plaintiff's motion for voluntary dismissal: "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." FED. R. CIV. P. 41(a)(2). In the Fifth Circuit, "motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Robles v. Atlantic Sounding Co., Inc.*, 77 Fed. Appx. 274, 275 (5th Cir. 2003).

14. In adjudicating a motion under Rule 41(a)(2), the court should first ask whether an unconditional dismissal will cause the non-movant to suffer plain legal prejudice. If not, the court should generally, absent some evidence of abuse by the movant, grant the dismissal motion. *Simridge Techs., Ltd. v. Wells Fargo Business Credit, Inc.*, 2004 WL 1055706, at *2 (W.D. Tex. 2004). When assessing plain legal prejudice, the Fifth Circuit has clarified that "the mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir.

1991). Similarly, "[i]t is no bar to dismissal that plaintiff may gain some tactical advantage thereby." *Simridge*, 2004 WL 1055706, at *2.

15. Here, there is no prejudice that will occur to the Debtor in the event the Court dismisses the Plaintiffs' claims against it. As evidenced by the Counterclaims, the Defendants now assert a declaratory judgment claim under Texas law against the Plaintiffs, essentially requesting that the Court hold that the Guaranties and Notes are void and/or invalid. *See* Docket No. 5. Significantly, if the Plaintiffs' claims against the Debtor are dismissed as proposed herein, the Debtor and the other Defendants can continue pursuit of their declaratory judgment counterclaim against the Plaintiffs. *See generally* Fed. R. Bankr. P. 7041(a)(2). The dismissal proposed herein in no way limits or prohibits the Defendants' ability to continue litigation against the Plaintiffs with respect to the Counterclaims. Moreover, the proposed dismissal of claims against the Debtor increases the potential recovery for other creditors of the bankruptcy estate. Although the Debtor opposes the dismissal, the Debtor's estate will actually benefit from the dismissal. Therefore, there is no prejudice suffered by the Debtor.

16. Case law also looks towards the timing of the filing of the motion for voluntary dismissal. While a motion for voluntary dismissal at a late stage in litigation can be grounds for denial of the motion, these "timing" cases are inapposite here as they involve situations where the movant suffered an adverse legal decision prior to moving for voluntary dismissal. *Robles*, 77 Fed. Appx. at 275; *Davis*, 936 F.2d at 199 (noting that prior to filing for voluntary dismissal, a magistrate judge made a comprehensive recommendation that was adverse to the moving party). In this case, the Plaintiffs have faced no adverse legal action prior to filing the Motion. Rather, the Plaintiffs believe that had the MSJ been heard last week, then the state court would have ruled in their favor on all claims against the Defendants. Even if the case law were factually on point, which the Plaintiffs dispute, the State Court Lawsuit is not at a late stage in the litigation. The State Court Lawsuit has been pending for about six months. The MSJ was filed three months into

the case. There has been little discovery conducted in the case as a result—and not a single deposition has been taken—despite the Debtor's representation to the state court that further discovery, including depositions, was necessary. As a matter of fact, in asking the state court to continue the MSJ hearing, the Debtor expressly conceded that "this case is in its infancy." Thus, the parties have not expended significant time and effort litigating the State Court Lawsuit.

17. Courts in the Fifth Circuit also examine whether dismissal of a case is an attempt to deprive a defendant of particular forum-specific defenses, such as expiration of the statute of limitations and forum non conveniens. *Simridge*, 2004 WL 1055706, at *3. Here, there is no evidence that the Debtor would absolutely lose any forum-specific defenses as a consequence of the Court's granting the dismissal without prejudice. *Id.* at *5.

18. Further, there is no abuse or evidence thereof in connection this Motion. Any abuse is present only on the Debtor's side. Specifically, there is no question that the Debtor filed its bankruptcy case in order to evade the MSJ hearing and any related decision. And now, in an attempt to obtain a potentially more favorable venue, and in order to further Barton's personal agenda, the Debtor removed the State Court Lawsuit to this Court. Similarly, immediately after learning that the Plaintiffs intended to nonsuit their claims against 2999TC to return the case to the state court and obtain a hearing on the MSJ against Barton and JMJ, Defendants promptly filed the Counterclaims, merely recasting some of their affirmative defenses into a request for declaratory judgment in an attempt to thwart Plaintiffs' efforts. In fact, and upon information and belief, Barton is the ultimate owner of and decision-maker for both 2999TC and JMJ. Further, he has control over additional entities that are subject to involuntary proceedings in this District. *See In re Wall007, LLC*, Case No. 20-31131 (the "Involuntary Proceedings"). Based upon Barton and his entities' actions in the State Court Lawsuit, the Involuntary Proceedings, and now 2999TC's bankruptcy case and related adversary proceeding, it is clear that Barton is attempting to use 2999TC and its bankruptcy case as an instrumentality to avoid personal liability. The filing of the

Debtor's bankruptcy case and removal of the State Court Lawsuit evidences the Debtor's (or actually, Barton's) litigation tactics and abuse of the bankruptcy process.

19. Moreover, upon information and belief, the Debtor is simply a shell-entity for Barton with zero operations, zero employees and little to no assets available for recovery. At this point, the Plaintiffs do not wish to continue litigation against the Debtor due to its lack of assets and potential for further complications as a result of its bankruptcy case. Therefore, the Plaintiffs seek to pursue only their claims against the non-debtor guarantors, Barton and JMJ, and request that this Court dismiss only the causes of action asserted against the Debtor.

20. In accordance with Federal Rule of Civil Procedure 41(a)(2), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7041, the Plaintiffs respectfully request that this Court dismiss its claims against 2999TC, without prejudice, from the above-referenced adversary proceeding.

**B. Abstention and Remand of the State Court Lawsuit is Appropriate.**

21. Further, the State Court Lawsuit should be remanded to the state court (the district court of Tarrant County, Texas) based on either mandatory abstention under 28 U.S.C. § 1334(c)(2), or permissive abstention / equitable remand under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b). In addition to meeting the statutory requirements of the foregoing, the Plaintiffs believe that abstention and remand are necessary due to jurisdictional and constitutional authority issues.

22. The Fifth Circuit has determined that § 1334(b) provides the district courts (and by extension, the bankruptcy courts) with subject matter jurisdiction over three distinct categories over proceedings: (i) "arising under" the Bankruptcy Code; (ii) "arising in" bankruptcy cases; and (iii) "related to" bankruptcy cases. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). Proceedings "arise under" the Bankruptcy Code where they "invoke a substantive right provided by title 11", proceedings "arise in" bankruptcy cases where they "could only arise in the context of

a bankruptcy case", and proceedings are "related to" bankruptcy case where "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 93-97.

23. Following dismissal of the Plaintiffs' claims against the Debtor, this adversary proceeding neither invokes a substantive right provided by title 11 (no "arising under" jurisdiction) nor does it only arise in the context of a bankruptcy case as this solely involves state law issues (no "arising in" jurisdiction). Further, there is no "related to" jurisdiction as the outcome of the State Court Lawsuit will no longer have an effect on the administration of the bankruptcy case as the Plaintiffs are not seeking liability against the Debtor, rather just against the non-debtor defendants. Therefore, there is no subject matter jurisdiction for the Court to consider the State Court Lawsuit and remand is necessary.

24. Even if jurisdiction somehow exists, which the Plaintiffs dispute, the post-dismissal claims are not core and, respectfully, this Court does not have constitutional authority to enter a final order on the Debtor's Counterclaims (as well as the Plaintiffs' claims against the non-debtor defendants). *See Stern v. Marshall*, 564 U.S. 462, 495 (2011) (holding that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim"). Again, as stated throughout this Motion, the Plaintiffs seek dismissal of their claims against the Debtor. Thus, the only claims that would remain post-dismissal are the Plaintiffs' claims against the non-debtor defendants and the Counterclaims against the Plaintiffs. All of these claims, including the Counterclaims (although they appear to be affirmative defenses), can be adjudicated post-dismissal independently from the Plaintiffs' prior claims against the Debtor (*albeit*, more appropriately in the state court). *See generally id.* Lack of constitutional authority, among other reasons, supports abstention and remand of the State Court Lawsuit pursuant to 28 U.S.C. §§ 1452(b), 1334(c)(2), and 1334(c)(1).

25. Under § 1334(c)(2), mandatory abstention is required in these circumstances. As set forth, upon a timely motion, a "district court must abstain from hearing state law claims when:

(1) the claims have no independent basis for federal jurisdiction other than § 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be timely adjudicated in state court." *See, e.g.*, *In re Petroleum Products & Services, Inc.*, 561 B.R. 662, 665 (Bankr. S.D. Tex. 2016) (internal citations omitted). Here, there is no other jurisdictional basis other than § 1334(b) (if that, in fact, exists) and the claims remaining post-dismissal are non-core. Further, as evidenced herein, the State Court Lawsuit was pending before the Petition Date and the state court was scheduled to hear these issues on the day of the bankruptcy filing (thus, timely adjudication will occur). Because all of the above factors are satisfied here, the Court must abstain from exercising subject matter jurisdiction and remand the State Court Lawsuit.

26. Even if the mandatory abstention statute did not require remand of this case, this Court should still decline to exercise jurisdiction and remand based on either permissive abstention under 28 U.S.C. § 1334(c)(1), or equitable remand under 28 U.S.C. § 1452(b). *See, e.g.*, *In re Petroleum Prod. & Servs.*, 556 B.R. at 300-01; *J.T. Thorpe Co. v. Am. Motorists*, No. CIV.A. H-02-4598, 2003 WL 23323005, at *6–7 (S.D. Tex. June 9, 2003). Under either statute, this Court has broad discretion to remand the case "in the interests of justice, comity, or respect for state law" or on any other equitable ground. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 764–65 (S.D. Tex. 2005) (citing *In re Gober,* 100 F.3d 1195, 1206-07 (5th Cir. 1996)). "Together, §§ 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court." *J.T. Thorpe*, 2003 WL 23323005, at *6.

27. Sections 1452(b) and 1334(c)(1) "are kindred statutes and the analysis under each have considerable overlap." *Id.*; *see also In re MontCrest Energy, Inc.*, No. 13-41129-DML-7, 2014 WL 6982643, at *7 (Bankr. N.D. Tex. Dec. 9, 2014) ("Because sections 1334(c)(1) and 1452

'are similar in purpose, the circumstances which weigh in favor of discretionary abstention … weigh in favor of … remand under § 1452(b).'" (internal quotations omitted). "The courts often examine the following fourteen factors when deciding whether to equitably remand a case removed under § 1334(b):

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention;
(2) extent to which state law issue predominate over bankruptcy issues;
(3) difficulty or unsettled nature of the applicable law;
(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
(5) jurisdictional basis, if any, other than § 1334;
(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of nondebtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action."

*J.T. Thorpe Co.*, 2003 WL 23323005, at *6 (internal citations omitted).

28. In this case, the factors above weigh strongly in favor of permissive abstention and equitable remand, and there is no "countervailing circumstance" to suggest that the Court should exercise jurisdiction. "To the contrary, the facts of this case counsel remand." *J.T. Thorpe*, 2003 WL 23323005, at *6. Specifically, the factors reflect as follows: (i) there will be no effect (certainly not an adverse effect) on the administration of the estate due to abstention; (ii) the only issues involved here are state law issues that are not complex and the state court deals with such issues on a regular basis; (iii) the State Court Lawsuit was pending prior to the Petition Date; (iv) no other jurisdictional basis exists, but for, arguably, § 1334; (v) the State Court Lawsuit, based upon dismissal of the claims, is only remotely related to the bankruptcy case, if at all; (vi) the substance of the State Court Lawsuit deals with only state law issues; (vii) there is no need to

sever as there are no core bankruptcy matters involved; (viii) there is obvious forum-shopping by the Debtor and non-debtor defendants by removing the State Court Lawsuit; (ix) the Plaintiffs have requested and have a right to a jury trial in the State Court Lawsuit; (x) three of the four parties are non-debtor parties; (xi) both comity and judicial economy favor the state forum as the case was previously pending in front of it and the state court is familiar with the issues; and (x) the Plaintiffs will be prejudiced if the case is not remanded as they are entitled to a jury trial and that itself is sufficient ground for an equitable remand. *See, e.g.*, *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co*., 130 B.R. 405, 409 (S.D.N.Y. 1991); *Lone Star Industr., Inc. v. Liberty Mut. Ins*., 131 B.R. 269, 275 (D. Del. 1991); *Borne v. New Orleans Health Care, Inc*., 116 B.R. 487, 495 (E.D. La. 1990). Therefore, the Plaintiffs respectfully request that the Court abstain and remand the State Court Lawsuit for further determination by the state court.

## III. CONCLUSION

Based on the foregoing reasons, the Plaintiffs respectfully request that the Court enter an order: (i) granting the Motion; (ii) dismissing their causes of action against the Debtor only, without prejudice; (iii) holding that the proposed Order does not affect or impact any of the remaining claims in the above-referenced adversary proceeding; (iv) finding that no actions taken by Plaintiffs or 2999TC with respect to the proposed Order shall be construed as an admission by any party on any question of liability; and (v) abstaining and remanding the State Court Lawsuit to state court for further determination.

Dated: October 23, 2020

Respectfully submitted,

*/s/ Katherine T. Hopkins*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document was served on October 23, 2020, on the below parties via ECF notification, where available, or via U.S. First Class Mail.

2999TC LP, LLC
Attn: Joyce Lindauer
1412 Main Street, Suite 500
Dallas, Texas 75202

JMJ Development, LLC and Timothy Barton
Attn: Robert Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234

*/s/ Katherine T. Hopkins*
Katherine T. Hopkins

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE 2999TC LP, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | CASE NO. 20-43204-mxm11 |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD. LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.<br>Plaintiffs,<br><br>v.<br><br>2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY NO. 20-04078 |

**ORDER GRANTING SECOND AMENDED MOTION TO**
**DISMISS DEFENDANT 2999TC LP, LLC ONLY**

ON THIS DATE, the Court considered the Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only (the "Motion"), filed by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd. (collectively, the "Plaintiffs"). The Court finds that good cause exists to grant the Motion. Accordingly, it is therefore

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Plaintiffs' claims against only Defendant 2999TC LP, LLC ("2999TC") are hereby **DISMISSED, WITHOUT PREJUDICE**, from the above-referenced adversary proceeding; it is further

ORDERED this Order does not affect or impair any of the remaining claims asserted in the above-referenced adversary proceeding; it is further

ORDERED that nothing contained in this Order and no actions taken by Plaintiffs or 2999TC with respect to this Order shall be construed as an admission by any party on any question of liability; it is further

ORDERED that the Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order; it is further

ORDERED that abstention in connection with the State Court Lawsuit[1] is appropriate; and it is further

ORDERED that the State Court Lawsuit is remanded to the 141st Judicial District Court, Tarrant County, Texas for further determination.

**### END OF ORDER ###**

[1] Any capitalized terms not defined herein shall have the same meanings ascribed to them in the Motion.

**SUBMITTED BY:**

*_/s/ Katherine T. Hopkins_*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE 2999TC LP, LLC,<br><br>Debtor. | §<br>§<br>§ | CASE NO. 20-43204-mxm11 |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,<br><br>Plaintiffs,<br>v.<br><br>2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY NO. 20-04078 |

**SECOND AMENDED MOTION TO DISMISS DEFENDANT 2999TC LP, LLC ONLY AND ABSTAIN AND REMAND TO STATE COURT AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... 2

I. RELEVANT FACTUAL BACKGROUND .......... 4

II. DISCUSSION .......... 7

A. Dismissal of the Plaintiffs' Claims Against the Debtor is Appropriate. .......... 7

B. Abstention and Remand of the State Court Lawsuit is Appropriate. .......... 10

III. CONCLUSION .......... 14

CERTIFICATE OF SERVICE .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Borne v. New Orleans Health Care, Inc.*,
116 B.R. 487 (E.D. La. 1990) .......... 14

*Davis v. Huskipower Outdoor Equip. Corp.*,
936 F.2d 193 (5th Cir. 1991) .......... 7, 8

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*,
130 B.R. 405 (S.D.N.Y. 1991) .......... 14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
511 F. Supp. 2d 742 (S.D. Tex. 2005) .......... 12

*In re Gober*,
100 F.3d 1195 (5th Cir. 1996) .......... 12

*In re MontCrest Energy, Inc.*,
No. 13-41129-DML-7, 2014 WL 6982643 (Bankr. N.D. Tex. Dec. 9, 2014) .......... 12

*In re Petroleum Prod. & Servs., Inc.*,
556 B.R. 296 (Bankr. S.D. Tex. 2016) .......... 7, 12

*In re Petroleum Prod. & Servs., Inc.*,
561 B.R. 662 (Bankr. S.D. Tex. 2016) .......... 12

*J.T. Thorpe Co. v. Am. Motorists*,
No. CIV.A. H-02-4598, 2003 WL 23323005 (S.D. Tex. June 9, 2003) .......... 12, 13

*Lone Star Industr., Inc. v. Liberty Mut. Ins.*,
131 B.R. 269 (D. Del. 1991) .......... 14

*Robles v. Atlantic Sounding Co., Inc.*,
77 Fed. Appx. 274 (5th Cir. 2003) .......... 7, 8

*Simridge Techs., Ltd. v. Wells Fargo Business Credit, Inc.*,
2004 WL 1055706 (W.D. Tex. 2004) .......... 7, 8, 9

*Stern v. Marshall*,
564 U.S. 462 (2011) .......... 11

*Wood v. Wood (In re Wood)*,
825 F.2d 90 (5th Cir. 1987) .......... 10, 11

**Rules**

Fed. R. Bankr. P. 7041(a)(2) .......... 8

Fed. R. Civ. P. 41(a)(2) .......... 7, 10

Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr. (the "Hodges Estate"), Tejas Group, Ltd. ("Tejas Group"), LAH III Family Specific Interest, Ltd. ("LAH"), and Blackfoot Interest, Ltd. ("Blackfoot" and collectively with the Hodges Estate, Tejas Group, and LAH, the "Plaintiffs") file this Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court (the "Motion"), and in support thereof respectfully show as follows:

## I. RELEVANT FACTUAL BACKGROUND

1. In connection with the closing of a real estate transaction, Plaintiffs loaned and delivered to 2999TC LP, LLC ("2999TC" or the "Debtor") the total sum of $4,000,000.00 (the "Loan") on or about September 16, 2019. The Loan is reflected by two promissory notes made and executed by Defendant Tim Barton ("Barton") on behalf of 2999TC: one to the Estate for $1,000,000.00 (the "Estate Note") and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (the "Company Note" and collectively with the Estate Note, the "Notes").

2. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18 percent annually calculated on a 360-day year, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020. Further, the Notes expressly give Plaintiffs the option to call the Notes, making all amounts owed under the Notes due in full sixty days after Plaintiffs giving notice they are exercising the option.

3. In addition, Barton and his related entity, JMJ Development, LLC ("JMJ") agreed to guarantee the Loan. In connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes—one for each of the Notes in his individual capacity and one for each of the Notes on behalf of JMJ (collectively, the "Guaranties"). Of particular relevance

here, the Guaranties are unconditional guaranties of payment and expressly provide that Plaintiffs may enforce the Guaranties against Barton and JMJ without first exhausting their remedies—or even filing suit—against 2999TC.

4. 2999TC failed to timely make the first interest-only payment when it was due on December 16, 2019. Ultimately, only after Plaintiffs made demand on 2999TC, Barton, and JMJ and threatened to accelerate the Loan did Plaintiffs receive the overdue interest payment on or about January 29, 2020.

5. On or about February 20, 2020, the Plaintiffs noticed 2999TC that they chose to exercise their option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later—on April 20, 2020 (the "Notice of Call Election"). The next day, on February 21, 2020, the Plaintiffs met with Barton. During that meeting, Plaintiffs hand delivered a copy of the Notice of Call Election to Barton, who acknowledged receipt of the notice in writing.

6. Subsequently, 2999TC failed to pay the second interest-only payment, which was due on March 16, 2020. On March 27, 2020, the Plaintiffs made a written demand on 2999TC, Barton, and JMJ that they make the overdue payment by April 6, 2020. After 2999TC, Barton, and JMJ failed to cure the payment defaults as demanded by Plaintiffs' March 27, 2020 demand, Plaintiffs accelerated the Loan and demanded payment in full from 2999TC, Barton, and JMJ of all amounts due and owing, on or about April 14, 2020.

7. As of the filing of this Motion, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed and Plaintiffs have received no payment in connection with the Loan since the past-due December 2019 payment was made in late January of 2020, the Notes remain unpaid, and the principal balance is currently due and owing in full.

8. On April 21, 2020, the Plaintiffs commenced a lawsuit styled as *L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III*

*Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. v. 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton*, Cause No. 141-316567-20, which was pending in the 141st Judicial District Court in Tarrant County, Texas (the "State Court Lawsuit"). The State Court Lawsuit asserted causes of action against 2999TC for breach of the Notes and against Barton and JMJ for breach of the Guaranties. Neither 2999TC, Barton, nor JMJ asserted any counterclaims against the Plaintiffs.

9. Subsequently, on July 23, 2020, the Plaintiffs filed a Motion for Summary Judgment (the "MSJ") against 2999TC, Barton, and JMJ (collectively, the "Defendants") on their claims for breach of the Notes and Guaranties as well as on their claim for attorneys' fees and costs of suit. The hearing on the MSJ was originally scheduled for August 20, 2020, but was continued until October 16, 2020 at 11:00 a.m. after Defendants represented to the court that they needed additional time to conduct discovery to defend against Plaintiffs' claims.

10. Notably, on October 16, 2020 at 9:18 a.m. (less than two hours before the MSJ hearing) (the "Petition Date"), and without having conducted any additional discovery, 2999TC filed for relief under chapter 11 of the Bankruptcy Code. Shortly thereafter, the Debtor filed its Notice of Removal effectuating a removal of the State Court Lawsuit to this Court, which is pending as the above-referenced adversary proceeding. As a result of the Debtor's bankruptcy filing, the hearing on the MSJ did not proceed, and Plaintiffs' counsel explained to the court and 2999TC's counsel that Plaintiffs intended to nonsuit their claims against 2999TC and return to the state court so that they promptly could proceed with the MSJ against JMJ and Barton.

11. Subsequently that same day, in an apparent attempt to prevent Plaintiffs from proceeding on the merits in state court, the Debtor and the other Defendants have for the first time since the commencement of the State Court Lawsuit filed counterclaims against the Plaintiffs as reflected in their Original Counterclaims (the "Counterclaims") [Docket No. 5]. Notably, Defendants' Counterclaims are simply some affirmative defenses plead in the form of a request for declaratory judgment.

12. Based upon the current factual circumstances and pending bankruptcy case, dismissal of the Debtor is appropriate at this time so that the Plaintiffs can proceed with their pending MSJ against Barton and JMJ in state court, and Plaintiffs' respectfully request that the Court dismiss their claims against the Debtor, without prejudice. Further, this Court should remand the State Court Lawsuit back to state court based on either: (1) mandatory abstention under 28 U.S.C. § 1334(c)(2); (2) permissive abstention under 28 U.S.C. § 1334(c)(1); or (3) equitable remand under 28 U.S.C. § 1452(b). *See, e.g.*, *In re Petroleum Prod. & Servs., Inc.*, 556 B.R. 296, 300-01 (Bankr. S.D. Tex. 2016) (internal citations omitted).

## II. DISCUSSION

### A. Dismissal of the Plaintiffs' Claims Against the Debtor is Appropriate.

13. Federal Rule of Civil Procedure 41(a)(2), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7041, provides the standard for a plaintiff's motion for voluntary dismissal: "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." FED. R. CIV. P. 41(a)(2). In the Fifth Circuit, "motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Robles v. Atlantic Sounding Co., Inc.*, 77 Fed. Appx. 274, 275 (5th Cir. 2003).

14. In adjudicating a motion under Rule 41(a)(2), the court should first ask whether an unconditional dismissal will cause the non-movant to suffer plain legal prejudice. If not, the court should generally, absent some evidence of abuse by the movant, grant the dismissal motion. *Simridge Techs., Ltd. v. Wells Fargo Business Credit, Inc.*, 2004 WL 1055706, at *2 (W.D. Tex. 2004). When assessing plain legal prejudice, the Fifth Circuit has clarified that "the mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir.

1991). Similarly, "[i]t is no bar to dismissal that plaintiff may gain some tactical advantage thereby." *Simridge*, 2004 WL 1055706, at *2.

15. Here, there is no prejudice that will occur to the Debtor in the event the Court dismisses the Plaintiffs' claims against it. As evidenced by the Counterclaims, the Defendants now assert a declaratory judgment claim under Texas law against the Plaintiffs, essentially requesting that the Court hold that the Guaranties and Notes are void and/or invalid. *See* Docket No. 5. Significantly, if the Plaintiffs' claims against the Debtor are dismissed as proposed herein, the Debtor and the other Defendants can continue pursuit of their declaratory judgment counterclaim against the Plaintiffs. *See generally* Fed. R. Bankr. P. 7041(a)(2). The dismissal proposed herein in no way limits or prohibits the Defendants' ability to continue litigation against the Plaintiffs with respect to the Counterclaims. Moreover, the proposed dismissal of claims against the Debtor increases the potential recovery for other creditors of the bankruptcy estate. Although the Debtor opposes the dismissal, the Debtor's estate will actually benefit from the dismissal. Therefore, there is no prejudice suffered by the Debtor.

16. Case law also looks towards the timing of the filing of the motion for voluntary dismissal. While a motion for voluntary dismissal at a late stage in litigation can be grounds for denial of the motion, these "timing" cases are inapposite here as they involve situations where the movant suffered an adverse legal decision prior to moving for voluntary dismissal. *Robles*, 77 Fed. Appx. at 275; *Davis*, 936 F.2d at 199 (noting that prior to filing for voluntary dismissal, a magistrate judge made a comprehensive recommendation that was adverse to the moving party). In this case, the Plaintiffs have faced no adverse legal action prior to filing the Motion. Rather, the Plaintiffs believe that had the MSJ been heard last week, then the state court would have ruled in their favor on all claims against the Defendants. Even if the case law were factually on point, which the Plaintiffs dispute, the State Court Lawsuit is not at a late stage in the litigation. The State Court Lawsuit has been pending for about six months. The MSJ was filed three months into

the case. There has been little discovery conducted in the case as a result—and not a single deposition has been taken—despite the Debtor's representation to the state court that further discovery, including depositions, was necessary. As a matter of fact, in asking the state court to continue the MSJ hearing, the Debtor expressly conceded that "this case is in its infancy." Thus, the parties have not expended significant time and effort litigating the State Court Lawsuit.

17. Courts in the Fifth Circuit also examine whether dismissal of a case is an attempt to deprive a defendant of particular forum-specific defenses, such as expiration of the statute of limitations and forum non conveniens. *Simridge*, 2004 WL 1055706, at *3. Here, there is no evidence that the Debtor would absolutely lose any forum-specific defenses as a consequence of the Court's granting the dismissal without prejudice. *Id.* at *5.

18. Further, there is no abuse or evidence thereof in connection this Motion. Any abuse is present only on the Debtor's side. Specifically, there is no question that the Debtor filed its bankruptcy case in order to evade the MSJ hearing and any related decision. And now, in an attempt to obtain a potentially more favorable venue, and in order to further Barton's personal agenda, the Debtor removed the State Court Lawsuit to this Court. Similarly, immediately after learning that the Plaintiffs intended to nonsuit their claims against 2999TC to return the case to the state court and obtain a hearing on the MSJ against Barton and JMJ, Defendants promptly filed the Counterclaims, merely recasting some of their affirmative defenses into a request for declaratory judgment in an attempt to thwart Plaintiffs' efforts. In fact, and upon information and belief, Barton is the ultimate owner of and decision-maker for both 2999TC and JMJ. Further, he has control over additional entities that are subject to involuntary proceedings in this District. *See In re Wall007, LLC*, Case No. 20-31131 (the "Involuntary Proceedings"). Based upon Barton and his entities' actions in the State Court Lawsuit, the Involuntary Proceedings, and now 2999TC's bankruptcy case and related adversary proceeding, it is clear that Barton is attempting to use 2999TC and its bankruptcy case as an instrumentality to avoid personal liability. The filing of the

Debtor's bankruptcy case and removal of the State Court Lawsuit evidences the Debtor's (or actually, Barton's) litigation tactics and abuse of the bankruptcy process.

19. Moreover, upon information and belief, the Debtor is simply a shell-entity for Barton with zero operations, zero employees and little to no assets available for recovery. At this point, the Plaintiffs do not wish to continue litigation against the Debtor due to its lack of assets and potential for further complications as a result of its bankruptcy case. Therefore, the Plaintiffs seek to pursue only their claims against the non-debtor guarantors, Barton and JMJ, and request that this Court dismiss only the causes of action asserted against the Debtor.

20. In accordance with Federal Rule of Civil Procedure 41(a)(2), which is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7041, the Plaintiffs respectfully request that this Court dismiss its claims against 2999TC, without prejudice, from the above-referenced adversary proceeding.

**B. Abstention and Remand of the State Court Lawsuit is Appropriate.**

21. Further, the State Court Lawsuit should be remanded to the state court (the district court of Tarrant County, Texas) based on either mandatory abstention under 28 U.S.C. § 1334(c)(2), or permissive abstention / equitable remand under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b). In addition to meeting the statutory requirements of the foregoing, the Plaintiffs believe that abstention and remand are necessary due to jurisdictional and constitutional authority issues.

22. The Fifth Circuit has determined that § 1334(b) provides the district courts (and by extension, the bankruptcy courts) with subject matter jurisdiction over three distinct categories over proceedings: (i) "arising under" the Bankruptcy Code; (ii) "arising in" bankruptcy cases; and (iii) "related to" bankruptcy cases. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). Proceedings "arise under" the Bankruptcy Code where they "invoke a substantive right provided by title 11", proceedings "arise in" bankruptcy cases where they "could only arise in the context of

a bankruptcy case", and proceedings are "related to" bankruptcy case where "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 93-97.

23. Following dismissal of the Plaintiffs' claims against the Debtor, this adversary proceeding neither invokes a substantive right provided by title 11 (no "arising under" jurisdiction) nor does it only arise in the context of a bankruptcy case as this solely involves state law issues (no "arising in" jurisdiction). Further, there is no "related to" jurisdiction as the outcome of the State Court Lawsuit will no longer have an effect on the administration of the bankruptcy case as the Plaintiffs are not seeking liability against the Debtor, rather just against the non-debtor defendants. Therefore, there is no subject matter jurisdiction for the Court to consider the State Court Lawsuit and remand is necessary.

24. Even if jurisdiction somehow exists, which the Plaintiffs dispute, the post-dismissal claims are not core and, respectfully, this Court does not have constitutional authority to enter a final order on the Debtor's Counterclaims (as well as the Plaintiffs' claims against the non-debtor defendants). *See Stern v. Marshall*, 564 U.S. 462, 495 (2011) (holding that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim"). Again, as stated throughout this Motion, the Plaintiffs seek dismissal of their claims against the Debtor. Thus, the only claims that would remain post-dismissal are the Plaintiffs' claims against the non-debtor defendants and the Counterclaims against the Plaintiffs. All of these claims, including the Counterclaims (although they appear to be affirmative defenses), can be adjudicated post-dismissal independently from the Plaintiffs' prior claims against the Debtor (*albeit*, more appropriately in the state court). *See generally id.* Lack of constitutional authority, among other reasons, supports abstention and remand of the State Court Lawsuit pursuant to 28 U.S.C. §§ 1452(b), 1334(c)(2), and 1334(c)(1).

25. Under § 1334(c)(2), mandatory abstention is required in these circumstances. As set forth, upon a timely motion, a "district court must abstain from hearing state law claims when:

(1) the claims have no independent basis for federal jurisdiction other than § 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be timely adjudicated in state court." *See, e.g.*, *In re Petroleum Products & Services, Inc.*, 561 B.R. 662, 665 (Bankr. S.D. Tex. 2016) (internal citations omitted). Here, there is no other jurisdictional basis other than § 1334(b) (if that, in fact, exists) and the claims remaining post-dismissal are non-core. Further, as evidenced herein, the State Court Lawsuit was pending before the Petition Date and the state court was scheduled to hear these issues on the day of the bankruptcy filing (thus, timely adjudication will occur). Because all of the above factors are satisfied here, the Court must abstain from exercising subject matter jurisdiction and remand the State Court Lawsuit.

26. Even if the mandatory abstention statute did not require remand of this case, this Court should still decline to exercise jurisdiction and remand based on either permissive abstention under 28 U.S.C. § 1334(c)(1), or equitable remand under 28 U.S.C. § 1452(b). *See, e.g.*, *In re Petroleum Prod. & Servs.*, 556 B.R. at 300-01; *J.T. Thorpe Co. v. Am. Motorists*, No. CIV.A. H-02-4598, 2003 WL 23323005, at *6–7 (S.D. Tex. June 9, 2003). Under either statute, this Court has broad discretion to remand the case "in the interests of justice, comity, or respect for state law" or on any other equitable ground. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 764–65 (S.D. Tex. 2005) (citing *In re Gober,* 100 F.3d 1195, 1206-07 (5th Cir. 1996)). "Together, §§ 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court." *J.T. Thorpe*, 2003 WL 23323005, at *6.

27. Sections 1452(b) and 1334(c)(1) "are kindred statutes and the analysis under each have considerable overlap." *Id.*; *see also In re MontCrest Energy, Inc.*, No. 13-41129-DML-7, 2014 WL 6982643, at *7 (Bankr. N.D. Tex. Dec. 9, 2014) ("Because sections 1334(c)(1) and 1452

'are similar in purpose, the circumstances which weigh in favor of discretionary abstention … weigh in favor of … remand under § 1452(b).'" (internal quotations omitted). "The courts often examine the following fourteen factors when deciding whether to equitably remand a case removed under § 1334(b):

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention;
> (2) extent to which state law issue predominate over bankruptcy issues;
> (3) difficulty or unsettled nature of the applicable law;
> (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
> (5) jurisdictional basis, if any, other than § 1334;
> (6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden of the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial;
> (12) the presence in the proceeding of nondebtor parties;
> (13) comity; and
> (14) the possibility of prejudice to other parties in the action."

*J.T. Thorpe Co.*, 2003 WL 23323005, at *6 (internal citations omitted).

28. In this case, the factors above weigh strongly in favor of permissive abstention and equitable remand, and there is no "countervailing circumstance" to suggest that the Court should exercise jurisdiction. "To the contrary, the facts of this case counsel remand." *J.T. Thorpe*, 2003 WL 23323005, at *6. Specifically, the factors reflect as follows: (i) there will be no effect (certainly not an adverse effect) on the administration of the estate due to abstention; (ii) the only issues involved here are state law issues that are not complex and the state court deals with such issues on a regular basis; (iii) the State Court Lawsuit was pending prior to the Petition Date; (iv) no other jurisdictional basis exists, but for, arguably, § 1334; (v) the State Court Lawsuit, based upon dismissal of the claims, is only remotely related to the bankruptcy case, if at all; (vi) the substance of the State Court Lawsuit deals with only state law issues; (vii) there is no need to

sever as there are no core bankruptcy matters involved; (viii) there is obvious forum-shopping by the Debtor and non-debtor defendants by removing the State Court Lawsuit; (ix) the Plaintiffs have requested and have a right to a jury trial in the State Court Lawsuit; (x) three of the four parties are non-debtor parties; (xi) both comity and judicial economy favor the state forum as the case was previously pending in front of it and the state court is familiar with the issues; and (x) the Plaintiffs will be prejudiced if the case is not remanded as they are entitled to a jury trial and that itself is sufficient ground for an equitable remand. *See, e.g.*, *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co*., 130 B.R. 405, 409 (S.D.N.Y. 1991); *Lone Star Industr., Inc. v. Liberty Mut. Ins*., 131 B.R. 269, 275 (D. Del. 1991); *Borne v. New Orleans Health Care, Inc*., 116 B.R. 487, 495 (E.D. La. 1990). Therefore, the Plaintiffs respectfully request that the Court abstain and remand the State Court Lawsuit for further determination by the state court.

## III. CONCLUSION

Based on the foregoing reasons, the Plaintiffs respectfully request that the Court enter an order: (i) granting the Motion; (ii) dismissing their causes of action against the Debtor only, without prejudice; (iii) holding that the proposed Order does not affect or impact any of the remaining claims in the above-referenced adversary proceeding; (iv) finding that no actions taken by Plaintiffs or 2999TC with respect to the proposed Order shall be construed as an admission by any party on any question of liability; and (v) abstaining and remanding the State Court Lawsuit to state court for further determination.

Dated: October 23, 2020

Respectfully submitted,

*/s/ Katherine T. Hopkins*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served on October 23, 2020, on the below parties via ECF notification, where available, or via U.S. First Class Mail.

2999TC LP, LLC
Attn: Joyce Lindauer
1412 Main Street, Suite 500
Dallas, Texas 75202

JMJ Development, LLC and Timothy Barton
Attn: Robert Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234

*/s/ Katherine T. Hopkins*
Katherine T. Hopkins

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR 2999TC LP, LLC

Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
Telephone: (214) 526-2156
Facsimile: (214) 526-2156
ATTORNEY FOR JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD. LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.** | § | |
| **Plaintiffs/Counter-Defendants,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078-mxm** |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON** | § | |
| **Defendants/Counter-Plaintiffs.** | § | |
| | § | |

## OBJECTION AND RESPONSE TO PLAINTIFFS' AMENDED MOTION TO DISMISS DEFENDANT 2999TC, LLC ONLY

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COME NOW 2999TC LP, LLC ("Debtor"), JMJ Development, LLC ("JMJ") and Tim Barton ("Barton"), (collectively "Defendants"), Defendants in the above-referenced case and file this *Objection and Response to Plaintiffs' Amended Motion to Dismiss Defendant 2999TC, LLC Only* (the "Motion") and would respectfully show this Court as follows:

1. Defendants admit the allegations in Paragraph 1 of the Motion to the extent that an aggregate loan in the amount of $4,000,000.00 was made (collectively "the Loan") subject to and to the extent not in conflict with the assertions and claims made in Defendants, 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton, Counterclaims and otherwise denies the allegations contained therein.

2. Defendants admit the allegations in Paragraph 2 of the Motion to the extent of the existence of two documents that are alleged to be promissory notes that contain such terms to the extent documents so provide subject to and to the extent not in conflict with the assertions and claims made in Defendants, 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton, Counter-Claims.

3. Subject to and to the extent not in conflict with the assertions and claims made in Defendants', 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton, Counterclaims, Defendants admit the allegation in Paragraph 3 of the Motion regarding the existence of four documents asserted to be guarantees, but asserts that each of the documents (two in the name of Barton in his individual capacity, and two in the name of JMJ Development) is either void, voidable, invalid, or unenforceable including by reason of material modification of the associated Notes subsequent to their execution without the consent of the Defendants and as further stated in Defendants' counterclaims. Defendants further assert that the Notes themselves are void, voidable,

invalid, or unenforceable similarly due to their material modification subsequent to execution with the consent of the Defendants and as further asserted in Defendants' counterclaims.

4. Defendants deny the allegation in Paragraph 4 of the Motion that it failed to make timely payment, and that it only tendered its first interest-only payment subsequent to a threat to accelerate the Loan.

5. Defendants admit that Barton attended a meeting with a representative of one or more Plaintiffs and otherwise deny the allegations in Paragraph 5 of the Motion.

6. Defendants admit the allegation in Paragraph 6 of the Motion that Plaintiffs presented a written demand requesting an overdue payment by April 6, 2020 and that no payment was made thereafter in response to such demand, and otherwise, Defendants deny the allegations in Paragraph 6. Defendants would note that Plaintiffs' representative refused to permit Defendants' counsel (who was present at such office where the meeting occurred) or any other person to attend such a meeting or review any document(s) presented at such meeting.

7. Defendants admit the allegation in Paragraph 7 of the Motion only to the extent that the last payment made was in January of 2020, and otherwise, Defendants deny the allegations in Paragraph 7.

8. Defendants admit the allegations in Paragraph 8 of the Motion as to the commencement of the referenced State Court Lawsuit, the causes of action asserted, and that the Defendants did not assert counterclaims against Plaintiffs in the State Court Lawsuit. Otherwise Defendants deny any other allegations.

9. Defendants admit the allegations in Paragraph 9 of the Motion that Plaintiffs did file a Motion for Summary Judgment on July 23, 2020 against Defendants on Plaintiffs' claims for breach of certain Notes and Guaranties; that the original hearing was scheduled for August 20,

2020 which was continued until October 16, 2020; and that Defendants requested time for discovery. Defendants deny the allegation that they are in breach or that they would owe attorney's fees requested in the original petition since applicable law, including Chapter 38 of the Texas Civil Practice and Remedies Code, does not provide for such entitlement.

10. Defendants admit the allegation in Paragraph 10 of the Motion regarding the timing of the Debtor's filing for bankruptcy protection under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) and the filing of the Notice of Removal of the State Court Action to this Bankruptcy Court. Defendants admit the allegations in Paragraph 10 of the Motion that due to the bankruptcy filing, the hearing on the Motion for Summary Judgment did not occur. Defendants admit that Plaintiffs' counsel indicated to the Court that Plaintiffs intended to non-suit their claims in this Court and return to State Court to proceed with the Motion for Summary Judgment against Defendants JMJ and Barton. However, Defendants deny that they did not conduct any additional discovery. Defendants served multiple sets of requests for interrogatories and production between July 28, 2020 and August 7, 2020. Although Plaintiffs filed certain responses to the interrogatories and production requests, they have still failed to produce any responsive documents much less by the date such documents were due despite stating in their production response they would produce the requested documents. Nonetheless, Defendants filed a substantive response to the motion for summary judgment which refuted every claim made by Plaintiffs and even every element that Plaintiffs needed to prove, and Defendants were confident they would prevail at the hearing. Obviously, Defendants will soon be filing motions to compel production of such documents. And until such documents have been produced, it would be premature for Defendants to conduct depositions. Furthermore, Defendants have produced hundreds of pages of documents responsive to Plaintiffs' production requests along with responses to their interrogatory requests. Thus, such

lack of discovery in this case as asserted by the Plaintiffs is solely the result of Plaintiffs' own conduct and bad faith. Otherwise, Defendants deny the allegations in paragraph 10.

11. Defendants admit the allegation in Paragraph 11 of the Motion that it first filed counterclaims against the Plaintiffs in the instant case in *2999TC LP, LLC, JMJ Development, LLC and Tim Barton Defendants' Original Counter-Claims* [Dkt. No. 5]. Defendants deny the other allegation in Paragraph 11 of the Motion including that such counterclaims were filed to prevent Plaintiffs from proceeding on the merits in State Court and that such counterclaims are "affirmative defenses plead [sic] in the form of a request for declaratory judgment."

12. Defendants deny the allegation in Paragraph 12 of the Motion that dismissal of the Debtor is appropriate. Defendants object to such dismissal because a determination that Debtor is in default of valid and enforceable Notes and has no defenses is necessary to give rise to any claims being asserted against the other Defendants and because the Defendants have asserted actionable counterclaims against the Plaintiffs that are applicable to this adversary action and the underlying bankruptcy case along with other reasons as stated herein.

13. Defendants admit the allegation in Paragraph 13 of the Motion regarding the standard for a plaintiff's motion for voluntary dismissal typically available in Federal court, but not as it would apply to this case including as related to proceedings in the Federal bankruptcy court. Debtor notes that the Court's discretion to order such dismissal is limited by additional statutory language not provided by the Movant that states that "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). Debtor asserts that its counterclaims along with those of the other Defendants are integrally linked to both the bankruptcy action and that the

associated adversary matter rendering independent adjudication of such counterclaims is impractical and prejudicial to the rights of the Debtor. Further, Movant states that the Fifth Circuit has held that "motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." Robles v. Atlantic Sounding Co., Inc., 77 Fed. Appx. 274, 275 (5th Cir. 2003). Here, dismissal of the Debtor from this suit would constitute a refusal to consider the merits of the Debtor's counterclaims against the Plaintiff and their relation to the underlying bankruptcy case, which would clearly be prejudicial to the Debtor, as well as to the other Defendants. It is important to note that "[t]he basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." *Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201 (N.D. Tex. 1988) (citing *LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604* (5th Cir. 1976)). Moreover, any claims asserted against Defendants Barton and JMJ are contingent upon a finding that the Notes are valid and enforceable promissory notes, that Debtor has, in fact, defaulted on its obligations thereunder, and that no applicable affirmative defenses proven by Debtor apply. Any claims related to the Notes asserted by Plaintiffs would have to include 2999TC as the maker as it is likely the only party that has any standing to assert claims or defenses related to the Note and certain other agreements, such as certain membership agreements and a conversion option agreement which it was a party to as part of the overall transaction. If the case proceeds in state court without the Debtor, then not only would the other Defendants be prejudiced because they would potentially have no standing to defend against such a default of the Notes, on which they are not a party to, but any determination of a default of the Notes would be prejudicial against the Debtor because it would have no opportunity to defend itself or prove up any affirmative defenses. Furthermore, the other Defendants would likely have

no standing to assert and prove up those affirmative defenses of the Debtor as related to the Notes which would materially affect the claims against the other Defendants as related to any alleged guaranteed obligations under the Notes. Obviously, dismissal of the Debtor would substantially prejudice all Defendants. "Plain legal prejudice often occurs where the grant of a motion for voluntary dismissal causes the non-movant to be stripped of an otherwise available defense." *Robles* at 275. Moreover, the counterclaims asserted by the Debtor are integrally linked to interests of the other Defendants including because seeking declaratory relief under section 37.006 of Texas Civil Practices and Remedies Code requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." Not only is dismissal of the Debtor prohibited by such state code but dismissal of the Debtor from this action will undoubtedly prejudice the remaining Defendants for the foregoing reasons. Finally, the overall transaction between the parties involved more than payment obligations under or breach of simple non-negotiable notes with personal guaranties but the entire transaction incorporated multiple other agreements and conditions involving the Plaintiffs and all Defendants including pledge agreements, call options, and conversion option agreements which collectively formed the basis of the collective transaction and which affect the rights and obligations of all parties thereunder. Thus, dismissal would not be appropriate. This is further illustrated by the likelihood, if the case proceeded in the state court without Debtor (or even if originally filed in state court without Debtor), Debtor would likely have to be joined anyway under Tex. R. Civ. P. 39 which requires a party to be joined if "(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or(ii) leave any of the persons already parties subject to a substantial risk of

incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." The Debtor would necessarily be joined if just one section of Tex. R. Civ. P. 39 applied, but in this case, the facts would require joinder of the Debtor under any section. Thus if Debtor's joinder would be required, then dismissing the Debtor and proceeding in the state case would serve no purpose and would not be appropriate.

14. Defendants admit the allegation in Paragraph 14 of the Motion to the extent that it is a faithful representation or interpretation of cited case law, but denies the allegation that such is applicable here because the Debtor (and the other Defendants) will certainly suffer plain legal prejudice as articulated *supra*. Furthermore, the facts and application of law under the cited case law are substantially distinguishable from those in this case to the extent the requested dismissal would not be appropriate.

15. For the reasons stated above, Defendants deny the allegation in Paragraph 15 of the Motion that the Debtor will not be prejudiced should this Court dismiss Plaintiff's claims. Defendants deny the allegation in Paragraph 15 of the Motion that "Defendants now assert a declaratory judgment claim" to the extent that such allegation infers only a single claim was made by Defendants' request for a declaratory judgment. Defendants admit that its counterclaims included a request to hold the "Guaranties and Notes are void and/or invalid" but deny that such a request is the limit of what Defendants seek in its counterclaims. Defendants further deny that "[t]he dismissal proposed [in the Motion] in no way limits or prohibits the Defendants' ability to continue litigation against the Plaintiffs with respect to the Counterclaims" and deny the assertion that the proposed dismissal of the Plaintiffs' claims against the Debtor (which would force the Defendants, including the Debtor to separately pursue such counterclaims in State Court) is appropriate for multiple reasons including as stated above and as follows:

a. As previously stated above, certain counterclaims asserted by the Defendants including related to any guaranties or other agreements are directly affected by a determination on whether the Notes are valid and enforceable and if so a determination of whether such were defaulted on by the Debtor or whether any affirmative defenses of the Debtor apply. However, only the Debtor is a party to the Notes and is thus the only party that could or would likely be permitted to assert such claims and defense under the Notes. Thus, the Defendants' ability to continue litigation against the Plaintiffs would be substantially impaired and the parties prejudiced if the state action only were to proceed against the Defendants Barton and JMJ.

b. The counterclaims are integral to the Debtor's interests in its bankruptcy proceedings. For instance having multiple courts consider such interests are not conducive to judicial economy because multiple Defendants are requesting identical relief, duplicative discovery and depositions would be needed, and because it would force the same issue relating to multiple defendants to be litigated in multiple venues resulting in the possibility of conflicting judicial outcomes. Furthermore, Debtor is a required party to the counterclaims and any action in the state court involving such causes of action necessarily must include 299TC, JMJ, and Barton. When a declaratory relief is sought, section 37.006 of Texas Civil Practices and Remedies Code requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." Obviously, Debtor would have an interest in the relief being sought including

because certain counterclaims have been asserted by all Defendants including Debtor.

Defendants deny the allegation that the proposed dismissal does not limit the ability to continue litigation against Plaintiffs with regard to the counterclaims since it forces the separate Defendants (including Debtor) to expend limited resources to litigate the same, related matter in multiple venues. Defendants deny the allegation in Paragraph 15 of the Motion that dismissing the claims against the Debtor "increases the potential recovery for other creditors of the bankruptcy estate." Any payment obligations found to be owed to Plaintiffs by JMJ and/or Barton as guarantors derive from any defaulted payment obligations that are found to be owed by Debtor under the Notes. In such event, JMJ and/or Barton is entitled to be made whole by Debtor. And just because the Plaintiffs dismiss the Debtor from the case does not mean that Plaintiffs are releasing Debtor from any obligations found to be owed under the Notes. Thus, such an argument that any other creditor recoveries would be increased by dismissing 2999TC is simply a fallacy.

16. Defendants deny the allegation in Paragraph 16 of the Motion that the cited cases are inapposite here because they deal with a movant who suffers an adverse legal decision prior to moving for voluntary dismissal. In fact, this case holds to the proposition that a motion for voluntary dismissal should *not* be granted if the non-moving party "will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Robles*, 77 Fed Appx. at 275. It is clear from the language of this case holding that it applies as to a non-movant and refers to *future* harm it would endure as a result of a present decision by a court. Any discussion of adverse legal action prior to filing the Motion, or the stage in litigation in which the State Court suit finds itself, is thus not relevant to the matter at hand. The Debtor is not required to admit or deny the allegation in Paragraph 16 of the Motion regarding the Plaintiff's conjecture that it might have prevailed in

a hearing on its Motion for Summary Judgment in the State Court suit. Defendants admit the allegations as to the age of the State Court suit, the timing of the filing of the Motion for Summary Judgment therein. Debtor denies that little discovery has been conducted except that Plaintiffs have produced little discovery despite being required to do so. Debtor is not required to admit or deny the allegation as to the Plaintiff's assessment that "significant time and effort" has not been spent to litigate the State Court suit, and further asserts that such is irrelevant.

17. Defendants deny the allegations in Paragraph 17 of the Motion that Plaintiffs are not attempting to deprive Debtor of particular forum-specific defenses, and further that Debtor would not lose any forum-specific defenses resulting from the Court's granting Debtor's dismissal without prejudice.

18. Defendants deny the allegations in Paragraph 18 of the Motion including that Debtor has abused the bankruptcy process by filing its petition to avoid hearing in the State Court action on the Motion for Summary Judgment filed therein, to obtain a more favorable venue, and to further Barton's "personal agenda," but asserts that the removal of the State Court suit to this Court was conducted because of the integral linkage of issues and questions of law in the State Court suit that have a significant and undeniable bearing on these bankruptcy proceedings. Defendants deny the allegations in Paragraph 18 of the Motion as to the impetus for development of its request for declaratory judgment. Defendants deny the allegation in Paragraph 18 of the Motion as to Barton's relationship to 2999TC and JMJ. Defendants further deny Plaintiffs' assertion that Barton is attempting to avoid personal liability by trying to marry the State Court Lawsuit and this case with a completely unrelated involuntary bankruptcy proceeding that was filed against completely separate entities that are entirely unrelated to this case and where this is no indication that such proceedings involve any personal liability of Barton. Thus Plaintiffs'

assertions have no basis in fact and are wholly without merit. Debtor further denies Plaintiffs' assertions and inference that the counterclaims were filed only as a response to learning of Plaintiffs' intent to nonsuit the Debtor considering that Debtor had been diligently working on the drafting and filing of such counterclaims prior thereto and such counterclaims were filed very shortly after such learning of such notice on the same day in less time than it would have taken to draft the counterclaims if such had begun upon receiving such notice, and thus, Defendants' counterclaims were not simply filed in response to the learning of the intended nonsuit.

19. Defendants deny the allegation in Paragraph 19 of the Motion that the Debtor is a "shell-entity" with no operations, employees, or assets. Debtor is not required to admit or deny the allegation as to the Plaintiffs' lack of desire to continue litigation against the Debtor, and assert that the Plaintiffs have no claim against the Debtor as stated in Defendants' counterclaims including as the result of their conduct and their material post-execution alteration of the Notes mentioned *supra* without notice to, or approval of, the Debtor or the guarantors of said notes, namely JMJ and Barton. Defendants deny the assertion that dismissal against the Debtor of this cause of action would be appropriate for the reasons stated in paragraphs 13, 15, and elsewhere above.

20. Defendants deny the allegation in Paragraph 20 of the Motion as to the applicability of either Fed. R. Civ. P. 41(a)(2) and Fed. R. Bankr. P. 7041 to this matter, and assert that dismissal of Plaintiff's claim as to the Debtor in these proceedings would be inapposite for the reasons mentioned heretofore.

WHEREFORE PREMISES CONSIDERED, Debtor and the other Defendants request the Court deny the relief requested by the Plaintiffs in the Motion in its entirety, and grant such other and further relief to the Debtor and Defendants as the Court may deem just and proper.

Dated: October 25, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYFOR 2999TC LP, LLC

/s/ Robert F. Kemp

Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
Telephone: (214) 526-2156
Facsimile: (214) 526-2156
Email: lawyerkemp@cs.com
ATTORNEY FOR JMJ DEVELOPMENT, LLC
AND TIMOTHY BARTON

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 25, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR 2999TC LP, LLC

Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
ATTORNEY FOR JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC LP, LLC,** | § | **CASE NO. 20-43204-mxm** |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD. LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD. Plaintiffs/Counter-Defendants,** | § | **ADVERSARY NO. 20-04078-mxm** |
| | § | |
| **v.** | § | |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON Defendants/Counter-Plaintiffs.** | § | |

**OBJECTION AND RESPONSE TO PLAINTIFFS' SECOND AMENDED MOTION TO DISMISS DEFENDANT 2999TC, LLC ONLY**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COME NOW 2999TC LP, LLC ("Debtor"), JMJ Development, LLC ("JMJ") and Tim Barton ("Barton"), (collectively "Defendants"), Defendants in the above-referenced case and file this *Objection and Response to Plaintiffs' Amended Motion to Dismiss Defendant 2999TC, LLC Only* (the "Motion") and would respectfully show this Court as follows:

**As an introductory matter, the Debtor and Defendants contend that this Second Amended Motion to Dismiss should not be heard on November 4, 2020. The Plaintiffs filed a Motion to Dismiss on October 19, 2020 [Doc. No. 7] and an Amended Motion to Dismiss on October 19, 2020 [Doc. No. 8] asking only to dismiss their claims against the Debtor in this pending lawsuit. The Court granted an expedited request to hear such motions on November 4, 2020. [Doc. No. 11]. Then after the Court granted such request as to the Motion and the Amended Motion, the Plaintiffs seized on the opportunity to file their Second Amended Motion to Dismiss [Doc. No. 12] for which no expedited request for hearing had been requested and then noticed this Second Amended Motion for hearing as though it was the same motion upon which the Court granted expedited consideration. The Court never granted an expedited hearing on the Second Amended Motion and did not set a hearing on same. This Second Amended Motion contains arguments and issues that are far more weighty than the original Amended Motion to Dismiss. It adds new claims and grounds for relief that were not part of the Motion and Amended Motion. As such the Court should not consider hearing the Second Amended Motion when it was not granted expedited consideration and has not been properly set for hearing.**

**RESPONSES TO MOTION TO DISMISS**

1. Defendants admit the allegations in Paragraph 1 of the Motion to the extent that an aggregate loan in the amount of $4,000,000.00 was made (collectively "the Loan") subject to and to the extent not in conflict with the assertions and claims made in Defendants, 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton, Counterclaims and otherwise denies the allegations contained therein.

2. Defendants deny the allegations in Paragraph 2 of the Motion to the extent of the existence of two documents that are alleged to be promissory notes that contain such terms to the extent documents so provide subject to and to the extent not in conflict with the assertions and claims made in Defendants, 2999TC LP, LLC's, JMJ Development, LLC's, and Tim Barton's, Counter-Claims.

3. Subject to and to the extent not in conflict with the assertions and claims made in Defendants 2999TC LP, LLC's, JMJ Development, LLC's, and Tim Barton's Counterclaims, Defendants admit the allegation in Paragraph 3 of the Motion regarding the existence of four documents asserted to be guarantees, but asserts that each of the documents (two in the name of Barton in his individual capacity, and two in the name of JMJ Development) is either void, voidable, invalid, or unenforceable including by reason of material modification of the associated Notes subsequent to their execution without the consent of the Defendants and as further stated in Defendants' counterclaims. Defendants further assert that the Notes themselves are void, voidable, invalid, or unenforceable similarly due to their material modification subsequent to execution with the consent of the Defendants and as further asserted in Defendants' counterclaims.

4. Defendants deny the allegation in Paragraph 4 of the Motion that it failed to make timely payment, and that it only tendered its first interest-only payment subsequent to a threat to accelerate the Loan.

5. Defendants admit that Barton attended a meeting with a representative of one or more Plaintiffs and otherwise deny the allegations in Paragraph 5 of the Motion.

6. Defendants admit the allegation in Paragraph 6 of the Motion that Plaintiffs presented a written demand requesting an overdue payment by April 6, 2020 and that no payment was made thereafter in response to such demand, and otherwise, Defendants deny the allegations in Paragraph 6. Defendants would note that Plaintiffs' representative refused to permit Defendants' counsel (who was present at such office where the meeting occurred) or any other person to attend such a meeting or review any document(s) presented at such meeting.

7. Defendants admit the allegation in Paragraph 7 of the Motion only to the extent that the last payment made was in January of 2020, and otherwise, Defendants deny the allegations in Paragraph 7.

8. Defendants admit the allegations in Paragraph 8 of the Motion as to the commencement of the referenced State Court Lawsuit, the causes of action asserted, and that the Defendants did not assert counterclaims against Plaintiffs in the State Court Lawsuit. Otherwise Defendants deny any other allegations.

9. Defendants admit the allegations in Paragraph 9 of the Motion that Plaintiffs did file a Motion for Summary Judgment on July 23, 2020 against Defendants on Plaintiffs' claims for breach of certain Notes and Guaranties; that the original hearing was scheduled for August 20, 2020 which was continued until October 16, 2020; and that Defendants requested time for discovery. Defendants deny the allegation that they are in breach or that they would owe attorney's

fees requested in the original petition since applicable law, including Chapter 38 of the Texas Civil Practice and Remedies Code, does not provide for such entitlement.

10. Defendants admit the allegation in Paragraph 10 of the Motion regarding the timing of the Debtor's filing for bankruptcy protection under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et seq.) and the filing of the Notice of Removal of the State Court Action to this Bankruptcy Court. Defendants admit the allegations in Paragraph 10 of the Motion that due to the bankruptcy filing, the hearing on the Motion for Summary Judgment did not occur. Defendants admit that Plaintiffs' counsel indicated to the Court that Plaintiffs intended to non-suit their claims in this Court and return to State Court to proceed with the Motion for Summary Judgment against Defendants JMJ and Barton. However, Defendants deny that they did not conduct any additional discovery. Defendants served multiple sets of requests for interrogatories and production between July 28, 2020 and August 7, 2020. *Although Plaintiffs filed certain responses to the interrogatories and production requests, they have still failed to produce any responsive documents much less by the date such documents were due despite stating in their production response they would produce the requested documents.* Nonetheless, Defendants filed a substantive response to the motion for summary judgment which refuted every claim made by Plaintiffs and even every element that Plaintiffs needed to prove, and Defendants were confident they would prevail at the hearing. Obviously, Defendants will soon be filing motions to compel production of such documents. And until such documents have been produced, it would be premature for Defendants to conduct depositions. Furthermore, Defendants have produced hundreds of pages of documents responsive to Plaintiffs' production requests along with responses to their interrogatory requests. Thus, such lack of discovery in this case as asserted by the Plaintiffs is solely the result of Plaintiffs' own conduct and bad faith. Otherwise, Defendants deny the allegations in paragraph 10.

11. Defendants admit the allegation in Paragraph 11 of the Motion that it first filed counterclaims against the Plaintiffs in the instant case in *2999TC LP, LLC, JMJ Development, LLC and Tim Barton Defendants' Original Counter-Claims* [Dkt. No. 5]. Defendants deny the other allegation in Paragraph 11 of the Motion including that such counterclaims were filed to prevent Plaintiffs from proceeding on the merits in State Court and that such counterclaims are "affirmative defenses plead [sic] in the form of a request for declaratory judgment." Even if they are viewed as Affirmative defenses they would still prevent the granting of a summary judgment based on the motion originally filed by Plaintiffs in state court.

12. Defendants deny the allegation in Paragraph 12 of the Motion that dismissal of the Debtor is appropriate. Defendants object to such dismissal because a determination that Debtor is in default of valid and enforceable Notes and has no defenses is necessary to give rise to any claims being asserted against the other Defendants and because the Defendants have asserted actionable counterclaims against the Plaintiffs that are applicable to this adversary action and the underlying bankruptcy case along with other reasons as stated herein. Defendants deny the allegation in Paragraph 12 regarding remand of the State Court case back to such court due to a lack of conditions permitting mandatory abstention under 28 U.S.C. § 1334(c)(2), and *since the counterclaims asserted by the Defendants in this adversary action are integrally linked to the bankruptcy action nullify both the conditions for permissive abstention under 28 U.S.C. § 1334(c)(1) and those for equitable remand under 28 U.S.C. § 1452(b).*

13. Defendants admit the allegation in Paragraph 13 of the Motion regarding the standard for a plaintiff's motion for voluntary dismissal typically available in Federal court, but not as it would apply to this case including as related to proceedings in the Federal bankruptcy court. Debtor notes that the Court's discretion to order such dismissal is limited by additional

statutory language not provided by the Movant that states that "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). Debtor asserts that its counterclaims along with those of the other Defendants are integrally linked to both the bankruptcy action and that the associated adversary matter rendering independent adjudication of such counterclaims is impractical and prejudicial to the rights of the Debtor. Further, Movant states that the Fifth Circuit has held that "motions for voluntary dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Robles v. Atlantic Sounding Co., Inc*., 77 Fed. Appx. 274, 275 (5th Cir. 2003). Here, dismissal of the Debtor from this suit would constitute a refusal to consider the merits of the Debtor's counterclaims against the Plaintiff and their relation to the underlying bankruptcy case, which would clearly be prejudicial to the Debtor, as well as to the other Defendants. It is important to note that "[t]he basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." *Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201 (N.D. Tex. 1988) (citing *LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604* (5th Cir. 1976)). Moreover, any claims asserted against Defendants Barton and JMJ are contingent upon a finding that the Notes are valid and enforceable promissory notes, that Debtor has, in fact, defaulted on its obligations thereunder, and that no applicable affirmative defenses proven by Debtor apply. Any claims related to the Notes asserted by Plaintiffs would have to include 2999TC as the maker as it is likely the only party that has any standing to assert claims or defenses related to the Note and certain other agreements, such as certain membership agreements and a conversion option agreement which it was a party to as part of the overall

transaction. If the case proceeds in state court without the Debtor, then not only would the other Defendants be prejudiced because they would potentially have no standing to defend against such a default of the Notes, on which they are not a party to, but any determination of a default of the Notes would be prejudicial against the Debtor because it would have no opportunity to defend itself or prove up any affirmative defenses. Furthermore, the other Defendants would likely have no standing to assert and prove up those affirmative defenses of the Debtor as related to the Notes which would materially affect the claims against the other Defendants as related to any alleged guaranteed obligations under the Notes. Obviously, dismissal of the Debtor would substantially prejudice all Defendants. "Plain legal prejudice often occurs where the grant of a motion for voluntary dismissal causes the non-movant to be stripped of an otherwise available defense." *Robles* at 275. Moreover, the counterclaims asserted by the Debtor are integrally linked to interests of the other Defendants including because seeking declaratory relief under section 37.006 of Texas Civil Practices and Remedies Code requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." Not only is dismissal of the Debtor prohibited by such state code but dismissal of the Debtor from this action will undoubtedly prejudice the remaining Defendants for the foregoing reasons. Finally, the overall transaction between the parties involved more than payment obligations under or breach of simple non-negotiable notes with personal guaranties but the entire transaction incorporated multiple other agreements and conditions involving the Plaintiffs and all Defendants including pledge agreements, call options, and conversion option agreements which collectively formed the basis of the collective transaction and which affect the rights and obligations of all parties thereunder. Thus, dismissal would not be appropriate. This is further illustrated by the likelihood, if the case proceeded in the state court without Debtor (or even if originally filed in state court without

Debtor), Debtor would likely have to be joined anyway under Tex. R. Civ. P. 39 which requires a party to be joined if "(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." The Debtor would necessarily be joined if just one section of Tex. R. Civ. P. 39 applied, but in this case, the facts would require joinder of the Debtor under any section. Thus, if Debtor's joinder would be required, then dismissing the Debtor and proceeding in the state case would serve no purpose and would not be appropriate.

14. Defendants admit the allegation in Paragraph 14 of the Motion to the extent that it is a faithful representation or interpretation of cited case law, but denies the allegation that such is applicable here because the Debtor (and the other Defendants) will certainly suffer plain legal prejudice as articulated *supra*. Furthermore, the facts and application of law under the cited case law are substantially distinguishable from those in this case to the extent the requested dismissal would not be appropriate.

15. For the reasons stated above, Defendants deny the allegation in Paragraph 15 of the Motion that the Debtor will not be prejudiced should this Court dismiss Plaintiff's claims. Defendants deny the allegation in Paragraph 15 of the Motion that "Defendants now assert a declaratory judgment claim" to the extent that such allegation infers only a single claim was made by Defendants' request for a declaratory judgment. Defendants admit that its counterclaims included a request to hold the "Guaranties and Notes are void and/or invalid" but deny that such a request is the limit of what Defendants seek in its counterclaims. Defendants further deny that

"[t]he dismissal proposed [in the Motion] in no way limits or prohibits the Defendants' ability to continue litigation against the Plaintiffs with respect to the Counterclaims" and deny the assertion that the proposed dismissal of the Plaintiffs' claims against the Debtor (which would force the Defendants, including the Debtor to separately pursue such counterclaims in State Court) is appropriate for multiple reasons including as stated above and as follows:

a. As previously stated above, certain counterclaims asserted by the Defendants including related to any guaranties or other agreements are directly affected by a determination on whether the Notes are valid and enforceable and if so a determination of whether such were defaulted on by the Debtor or whether any affirmative defenses of the Debtor apply. However, only the Debtor is a party to the Notes and is thus the only party that could or would likely be permitted to assert such claims and defense under the Notes. Thus, the Defendants' ability to continue litigation against the Plaintiffs would be substantially impaired and the parties prejudiced if the state action only were to proceed against the Defendants Barton and JMJ.

b. The counterclaims are integral to the Debtor's interests in its bankruptcy proceedings. For instance having multiple courts consider such interests are not conducive to judicial economy because multiple Defendants are requesting identical relief, duplicative discovery and depositions would be needed, and because it would force the same issue relating to multiple defendants to be litigated in multiple venues resulting in the possibility of conflicting judicial outcomes. Furthermore, Debtor is a required party to the counterclaims and any action in the state court involving such causes of action necessarily must include 299TC, JMJ,

and Barton. When a declaratory relief is sought, section 37.006 of Texas Civil Practices and Remedies Code requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." Obviously, Debtor would have an interest in the relief being sought including because certain counterclaims have been asserted by all Defendants, including Debtor. Defendants deny the allegation that the proposed dismissal does not limit the ability to continue litigation against Plaintiffs with regard to the counterclaims since it forces the separate Defendants (including Debtor) to expend limited resources to litigate the same, related matter in multiple venues.

Defendants deny the allegation in Paragraph 15 of the Motion that dismissing the claims against the Debtor "increases the potential recovery for other creditors of the bankruptcy estate." Any payment obligations found to be owed to Plaintiffs by JMJ and/or Barton as guarantors derive from any defaulted payment obligations that are found to be owed by Debtor under the Notes. In such event, JMJ and/or Barton is entitled to be made whole by Debtor. And just because the Plaintiffs dismiss the Debtor from the case does not mean that Plaintiffs are releasing Debtor from any obligations found to be owed under the Notes. Thus, such an argument that any other creditor recoveries would be increased by dismissing 2999TC is simply a fallacy.

16. Defendants deny the allegation in Paragraph 16 of the Motion that the cited cases are inapposite here because they deal with a movant who suffers an adverse legal decision prior to moving for voluntary dismissal. In fact, this case holds to the proposition that a motion for voluntary dismissal should *not* be granted if the non-moving party "will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Robles*, 77 Fed Appx. at 275. It is clear from the language of this case holding that it applies as to a non-movant and refers to *future*

harm it would endure as a result of a present decision by a court. Any discussion of adverse legal action prior to filing the Motion, or the stage in litigation in which the State Court suit finds itself, is thus not relevant to the matter at hand. The Debtor is not required to admit or deny the allegation in Paragraph 16 of the Motion regarding the Plaintiff's conjecture that it might have prevailed in a hearing on its Motion for Summary Judgment in the State Court suit. Defendants admit the allegations as to the age of the State Court suit, the timing of the filing of the Motion for Summary Judgment therein. Debtor denies that little discovery has been conducted except that Plaintiffs have produced little discovery despite being required to do so. Debtor is not required to admit or deny the allegation as to the Plaintiff's assessment that "significant time and effort" has not been spent to litigate the State Court suit, and further asserts that such is irrelevant. Debtor denies the allegation that this case is "in its infancy" since litigation has been ongoing for more than six months.

17. Defendants deny the allegations in Paragraph 17 of the Motion that Plaintiffs are not attempting to deprive Debtor of particular forum-specific defenses, and further that Debtor would not lose any forum-specific defenses resulting from the Court's granting Debtor's dismissal without prejudice.

18. Defendants deny the allegations in Paragraph 18 of the Motion including that Debtor has abused the bankruptcy process by filing its petition to avoid hearing in the State Court action on the Motion for Summary Judgment filed therein, to obtain a more favorable venue, and to further Barton's "personal agenda," but asserts that the removal of the State Court suit to this Court was conducted because of the integral linkage of issues and questions of law in the State Court suit that have a significant and undeniable bearing on these bankruptcy proceedings. Defendants deny the allegations in Paragraph 18 of the Motion as to the impetus for development

of its request for declaratory judgment. Defendants deny the allegation in Paragraph 18 of the Motion as to Barton's relationship to 2999TC and JMJ. Defendants further deny Plaintiffs' assertion that Barton is attempting to avoid personal liability by trying to marry the State Court Lawsuit and this case with a completely unrelated involuntary bankruptcy proceeding that was filed against completely separate entities that are entirely unrelated to this case and where this is no indication that such proceedings involve any personal liability of Barton. Thus, Plaintiffs' assertions have no basis in fact and are wholly without merit. Debtor further denies Plaintiffs' assertions and inference that the counterclaims were filed only as a response to learning of Plaintiffs' intent to nonsuit the Debtor considering that Debtor had been diligently working on the drafting and filing of such counterclaims prior thereto and such counterclaims were filed very shortly after such learning of such notice on the same day in less time than it would have taken to draft the counterclaims if such had begun upon receiving such notice, and thus, Defendants' counterclaims were not simply filed in response to the learning of the intended nonsuit.

19. Defendants deny the allegation in Paragraph 19 of the Motion that the Debtor is a "shell-entity" with no operations, employees, or assets. Defendants are not required to admit or deny the allegation as to the Plaintiffs' lack of desire to continue litigation against the Debtor, and assert that the Plaintiffs have no claim against the Debtor as stated in Defendants' counterclaims including as the result of their conduct and their material post-execution alteration of the Notes mentioned *supra* without notice to, or approval of, the Debtor or the guarantors of said notes, namely JMJ and Barton. Defendants deny the assertion that dismissal against the Debtor of this cause of action would be appropriate for the reasons stated in paragraphs 13, 15, and elsewhere above.

20. Defendants deny the allegation in Paragraph 20 of the Motion as to the applicability of either Fed. R. Civ. P. 41(a)(2) and Fed. R. Bankr. P. 7041 to this matter, and assert that dismissal of Plaintiff's claim as to the Debtor in these proceedings would be inapposite for the reasons mentioned heretofore.

21. Defendants deny the allegation in Paragraph 21 of the Motion regarding remand of the State Court case back to such court due to a lack of conditions permitting mandatory abstention under 28 U.S.C. § 1334(c)(2), and since the counterclaims asserted by the Defendants in this adversary action are integrally linked to the bankruptcy action nullify both the conditions for permissive abstention under 28 U.S.C. § 1334(c)(1) and those for remand for reasons of equity under 28 U.S.C. § 1452(b). Debtor denies the allegation that abstention and remand are necessary due to jurisdictional and constitutional authority concerns.

22. Defendants admit the allegation in Paragraph 22 of the Motion regarding the categories of proceedings and their definitions, but notes that the cited case law holds to the premise that since all the categories operate conjunctively, to determine the scope of the bankruptcy court's jurisdiction, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy," i.e. "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). Here, the Defendant's counterclaims against the Plaintiffs would have just such an effect on the administration of the estate in bankruptcy.

23. Defendants deny the allegation in Paragraph 23 of the Motion to the extent that the Plaintiffs' argument ignores the premise, stated in paragraph 22 *supra*, that the Court need only determine whether a matter is at least "related to" the bankruptcy for the Court to have jurisdiction. Since it has been established that the Defendants' counterclaims create just such a relation thereby

establishing this Court's jurisdiction, Defendants deny the allegation in Paragraph 23 of the Motion that no "related to" jurisdiction applies. Additionally, the Plaintiff's rationale as to whether jurisdiction of this Court exists *after* the Plaintiff's claims are dismissed (regardless of whether categorized as "arising under," "arising in" or "related to") is irrelevant since the Court's jurisdiction in this matter *currently* exists by virtue of the integrally related claims and counterclaims of the parties. Defendants deny the allegation in Paragraph 23 of the Motion that remand is necessary for lack of subject matter jurisdiction, for the reason that jurisdiction does indeed exist as previously stated.

24. Defendants deny the allegations in Paragraph 24 of the Motion that the "post-dismissal claims are not core" and that this Court has no constitutional authority to enter a final order on the Debtor's counterclaims because the promissory notes that underlie the bankruptcy are integrally linked to the prosecution of these bankruptcy proceedings, and since they include matters concerning administration of the estate and counterclaims by the estate against a party asserting a claim against the estate. 28 U.S.C. § 157(a) and (c). Defendants note that the cited case law only holds to the proposition that a bankruptcy court would lack constitutional authority to render a final judgment as to a counterclaim when such counterclaim is only remotely related to an initial claim, rendering any proceeding concerning it as a "non-core proceeding." *Stern v. Marshall*, 564 U.S. 462, 463, 498-99 (2011). Here, the counterclaims are closely and integrally related to the Plaintiffs' claims, thereby rendering this Court's consideration of such counterclaims a "core" proceeding. Debtor denies the allegation in Paragraph 24 of the Motion that the Plaintiffs' initial claim and the Defendants' associated counterclaims can be adjudicated post-dismissal in independent fashion due to the integral relationship between the two. Debtor denies the allegation

in Paragraph 24 that there is any lack of constitutional authority that would support Plaintiff's argument for abstention and remand for reasons expressed *supra*.

25. Defendants deny the allegation in Paragraph 25 of the Motion that mandatory abstention is required under the extant circumstances in this case. Defendants assert that this Court's jurisdiction exists due to the interrelated nature of the claims and counterclaims and the fact that the proceedings on such should be considered "core" matters. While Defendants admit the allegation that an action involving these parties was indeed commenced in State Court, the Plaintiffs have provided no evidence that "the action can be timely adjudicated in state court." Plaintiffs only presume that such is the case. Debtors deny the allegations in Paragraph 25 of the Motion that this Court lacks jurisdiction under 28 U.S.C. § 1334(b), and that claims and related counterclaims are non-core matters for reasons articulated *supra*. Defendants admit the allegation in Paragraph 25 of the Motion regarding the State Court's schedule regarding hearing on these claims and counterclaims, but denies that such indicates that the future adjudication of such matters would be any more timely than in this Court. Defendants deny the allegation in Paragraph 25 of the Motion that the conditions requiring abstention and remand of these matters to the State Court exist.

26. Defendants deny the allegation in Paragraph 26 of the Motion that this Court should decline to exercise jurisdiction and remand the case based on the principles of permissive abstention or equitable remand. Defendants admit the allegation in Paragraph 26 of the Motion that the cited case law is a faithful representation of the holdings in such, but deny the allegation that such is applicable here since it presumes that (1) equitable grounds exist that would permit (albeit not mandate) remand, and that (2) if this Court abstains from hearing these matters and remands such, the matter can be "timely adjudicated." As noted, both are merely presumptions

made by the Plaintiffs. In fact, since any decision as to the claims of the Plaintiffs and counterclaims of the Defendants have implications on the development of a Chapter 11 Plan of Reorganization, and the treatment of all of the Debtor's creditors (and equity holders) thereunder, the assertion, ( or more accurately presumption) that equity may be had by both parties without consideration of such implications in bankruptcy is a fallacy.

27. Defendants admit the allegation in the first sentence of Paragraph 27 of the Motion to the extent that it is a faithful quotation of the cited case law, but Debtors note that the context in which such citation is applicable only applies to situations where "there is no basis for federal jurisdiction independent of § 1334" coupled with the certainty that "litigation can be timely completed in state court." *J.T. Thorpe Co. v. Am. Motorists*, No. H-02-4598, 2003 U.S. Dist. LEXIS 26016 at *21 (S.D. Tex. 2003). While Plaintiffs may argue that the Court's jurisdiction here might not be independent of § 1334, they cannot argue with certainty that the litigation may be completed more timely in state court that in this Court. As such, circumstances here, do not weigh in favor of remand. Defendants admit the allegation in Paragraph 27 of the Motion as to the fourteen factors to be considered by a Court when deliberating whether to remand a case to the extent that such is a faithful representation of the cited case law.

28. Defendants deny the allegation in Paragraph 28 of the Motion that such factors weigh strongly in favor of abstention and remand.

a. Defendants deny the allegation in Paragraph 28 of the Motion as to the certainty that there will be no adverse effect of abstention and remand because to know that would require prescience of the State Court's decision concerning the Plaintiff's claims and the Defendants' counterclaims which could, at some point, return this case to the Bankruptcy Court.

b. The Defendants deny the allegation in Paragraph 28 of the Motion that "the only issues involved here are state law issues" since the claims of the Plaintiffs against the Defendants initiated the State Court matter, and that due to the integrally linked counterclaims of all the Defendants (including the Debtor), such issue has implications in these bankruptcy proceedings.

c. Defendants admit the allegation in Paragraph 28 of the Motion that the State Court matter was pending prior to the Petition Date.

d. Defendants admit the allegation in Paragraph 28 of the Motion that the basis of this Court's jurisdiction is rooted in 28 U.S.C. § 1334.

e. Defendants deny the allegation in Paragraph 28 of the Motion that the State Court suit has only a remote relation (or none at all) to the bankruptcy case by virtue of the aforementioned integral relation between the Plaintiff's claims and the Defendants' counterclaims.

f. Defendants admit the allegation in Paragraph 28 of the Motion that the substance of the State Court case deals with only state law issues, but Defendants note that such is a misstatement of the factor for consideration here which is the *substance of the asserted core proceeding*. Here such substance (i.e the Plaintiffs' claims and the Defendants' counterclaims) involves matters concerning administration of the estate and counterclaims by the estate against a party asserting a claim against the estate as envisioned by 28 U.S.C. § 157(a) and (c).

g. Defendants deny the allegation in Paragraph 28 of the Motion that the matter at hand involves no core bankruptcy matter is involved, but they admit the allegation that there is no need to sever this issue from these bankruptcy proceedings.

Determination of a claim in a bankruptcy case is a core matter. As here whether the Plaintiffs have valid claims against the Debtor is a core issue.

h. Defendants deny the allegation in Paragraph 28 of the Motion that their filing for bankruptcy protection is forum shopping by the Defendants (including the Debtor).

i. Defendants admit the allegation in Paragraph 28 of the Motion that Plaintiffs have requested and a right to a jury trial in the State Court suit. However, not every request for a jury trial actually obtains a jury trial. The Plaintiffs in state court claim they were proceeding on a motion for summary judgment not a jury trial. This Court can decide a motion for summary judgment.

j. Defendants deny the allegation in Paragraph 28 of the Motion as to the number of parties (and/or Defendants in the event that such were the actual subject of the Plaintiffs' accounting).

k. Defendants can neither admit nor deny the allegation in Paragraph 28 of the Motion as to the existence of any comity between this Court and the State Court, but denies the allegation as to the prevalence of judicial economy in State Court since this Court may decide both the issue of the claims and counterclaims, as well as the implications they may have in these bankruptcy proceedings which is not possible in State Court.

l. Defendants deny the allegation in Paragraph 28 of the Motion that any prejudice the Plaintiffs may experience for failure to receive a jury trial is grounds for an equitable remand of the case is a misstatement of the cited case law. Such is only true if a bankruptcy court refuses to remand a case permitting a jury trial in non-core proceedings. As argued *supra*, the proceedings that are the subject of this

Motion are, in fact, core proceedings, thereby making the cited case law inapplicable. Further the Plaintiffs were not proceeding towards a jury trial in state court they were asking for a summary judgment. This Court can adjudicate those claims.

Defendants deny the allegation in Paragraph 28 of the Motion that the Court should abstain and remand the State Court suit to the State Court for further determination for the reasons articulated *supra*.

WHEREFORE PREMISES CONSIDERED, Debtor and the Defendants request the Court deny the relief requested by the Plaintiffs in the Motion in its entirety, and grant such other and further relief to the Debtor and Defendants as the Court may deem just and proper.

Dated: October 30, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYS FOR 2999TC LP, LLC

/s/ Robert F. Kemp
Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
Telephone: (214) 526-2156
Facsimile: (214) 526-2156
Email: lawyerkemp@cs.com
ATTORNEY FOR JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 30, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR 2999TC LP, LLC

Robert F. Kemp
SBN 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
ATTORNEY FOR JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS** | § | |
| **INDEPENDENT EXECUTOR OF** | § | |
| **THE ESTATE OF LELAND A.** | § | |
| **HODGES JR., TEJAS GROUP, LTD.** | § | |
| **LAH III FAMILY SPECIFIC** | § | |
| **INTEREST, LTD., AND** | § | |
| **BLACKFOOT INTEREST, LTD.** | § | |
| **Plaintiffs/Counter-Defendants,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078-mxm** |
| | § | |
| **2999TC LP, LLC,** | § | |
| **JMJ DEVELOPMENT, LLC, AND** | § | |
| **TIM BARTON** | § | |
| **Defendants/Counter-Plaintiffs.** | § | |

**<u>BRIEF IN SUPPORT OF OBJECTION AND RESPONSE TO PLAINTIFFS' SECOND AMENDED MOTION TO DISMISS DEFENDANT 2999TC, LLC ONLY</u>**

**TABLE OF CONTENTS**

I. BRIEF IN SUPPORT OF REPONSE TO MOTION TO DISMISS ..... 4

a. Alleged Acts Voiding the Note and Guaranty ..... 4

II. BRIEF IN SUPPORT OF RESPONSE TO REMAND ..... 7

III. BRIEF IN SUPPORT OF RESPONSE TO ABSTENSION ..... 9

IV. PRAYER FOR RELIEF ..... 13

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976) .....10
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983) ....9, 10
*Stern v. Marshall*, 564 U.S. 462 (2011) ..........8

**Cases**

*Acosta v. Gustino*, 478 F. App'x 620 (11th Cir. 2012)..........11
*Brown v. Pacific Life. Ins. Co.*, 462 F.3d 384 n.7 (5th Cir. 2006) ..........10
*Clifford Paper Inc. v. Colonial Press Int'l Inc.*, No. 17-22396-CIV, 2017 U.S. Dist. LEXIS 121686, (S.D. Fla. 2017) ..........10, 11, 12
*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y. 1991)..........9
*Gibbens v. Champion Indus.*, 547 F. App'x 576 (5th Cir. 2013) ..........5
*Gump v. Trinity Christian Acad.*, Civil Action No. 3:05-CV-0148-BH (L) Consent 2005 U.S. Dist. LEXIS 15201 (N.D. Tex. 2005)..........10
*Jackson-Platts v. GE Capital Corp.*, 727 F.3d 1127 (11th Cir. 2013)..........12, 13
*LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976)..........5
*Metro. Nat. Bank v. Vanderpool*, 192 S.W. 589 (Tex. Civ. App.—Amarillo 1917) ..........5
*O'Cheskey v. King (In re Am. Hous. Found.)*, 2015 Bankr. LEXIS 1041 (Bankr. N.D. Tex. 2015) ..........5
*Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201 (N.D. Tex. 1988) ..........5
*RepublicBank Dall., Nat. Ass'n v. McIntosh*, 828 F.2d 1120 (5th Cir. 1987)..........10
*Robles v. Atlantic Sounding Co., Inc.*, 77 Fed. Appx. 274 (5th Cir. 2003)..........5, 6
*Tharpe v. Illinois Nat'l Ins. Co.*, 199 F.R.D. 213 (W.D. Ky. 2001)..........4
*Wash. Int'l Ins. Co. v. Keeney*, 2020 U.S. Dist. LEXIS 132913 (E.D. Tex. 2020)..........10
*Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987) ..........7

**Rules**

TEX. CIV. PRAC. & REM. CODE § 37.006..........6
TEX. R. CIV. P. 39 ..........7

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COME NOW 2999TC LP, LLC ("Debtor"), JMJ Development, LLC ("JMJ") and Tim Barton ("Barton"), (collectively "Defendants"), Defendants in the above-referenced case and file this *Brief in Support* of their *Objection and Response to Plaintiffs' Amended Motion to Dismiss Defendant 2999TC, LLC Only* (the "Motion") and would respectfully show this Court as follows:

## I. BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS

1. While dismissal of claims under FED. R. CIV. P. 41 is appropriate in certain instances, in this particular case a dismissal will not facilitate resolution of the underlying dispute and only serves to bifurcate the issues before this Court and another court. Further, there is nothing to prevent the Plaintiffs from refiling their claims in another Court after seeking relief from the stay. As such, dismissing Plaintiffs' claims here would require dismissal with prejudice to prevent the inevitable bifurcation of the controversy if Plaintiffs dismiss their claims solely against the Debtor.[1]

2. Plaintiff's proposed dismissal solely as to the Debtor runs the risk of bifurcating the controversy because the Debtor and the other Defendants (the "Guarantors") have pled counterclaims which if sustained, mean the underlying loan and guaranty upon which the Plaintiffs sue are void and unenforceable as to the Debtor and the guarantors.

### a. Alleged Acts Voiding the Note and Guaranty

3. Specifically, unbeknownst to the Defendants, after Defendants executed the loan documents the Plaintiffs altered the Note by removing a provision granting Debtor the right to prepayment the Note without penalty. Plaintiffs' unauthorized alteration of the Note rendered it

[1] Tharpe v. Illinois Nat'l Ins. Co., 199 F.R.D. 213, 214 (W.D. Ky. 2001)("Where overlapping issues are closely interwoven such that some of the same evidence may be presented twice, judicial economy is best served by a single trial.").

void, as there was no meeting of the minds concerning a material term of the contract.[2] Where there is no meeting of the minds, the contract is void for lack of consent.[3]

4. Debtor asserts that its counterclaims along with those of the other Defendants are integrally linked to the Debtor's reorganization, administration, and maximization of the bankruptcy estate; such that independent adjudication of the counterclaims is impractical and prejudicial to the rights of all the Defendants.

5. The Fifth Circuit discourages granting motions for voluntary dismissal when the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit.[4] Here, even if dismissal of the Plaintiffs' claims against Debtor were granted, this would not dismiss the Debtor's counterclaims in the Adversary. As such, this Court is the proper Court to determine the validity of the Note as to the Debtor and the validity of the guaranty as to the other Defendants, which necessarily relies on the validity of the Note.[5] It is important to note that "[t]he basic purpose of Rule 41(a)(2) is to permit the plaintiff, with court approval, to voluntarily dismiss an action **so long as no other party will be prejudiced**."[6]. Here, the Debtor would clearly be prejudiced by retention of the counter-claims in the bankruptcy court, while facing the likelihood of having to defend against the same claims in a state court forum, should the claims be dismissed without prejudice.

---

[2] Metro. Nat. Bank v. Vanderpool, 192 S.W. 589, 590 (Tex. Civ. App.—Amarillo 1917)("The general rule is that any alteration which is material and made without the consent of the party sought to be charged thereon at any time after its execution renders it void as to them, even in the hands of an innocent holder.")
[3] Gibbens v. Champion Indus., 547 F. App'x 576, 579 (5th Cir. 2013).
[4] Robles v. Atlantic Sounding Co., Inc., 77 Fed. Appx. 274, 275 (5th Cir. 2003).
[5] O'Cheskey v. King (In re Am. Hous. Found.), 2015 Bankr. LEXIS 1041, at *48 (Bankr. N.D. Tex. 2015) ("without a debt, there can be no valid guaranty.")
[6] Radiant Tech. Corp. v. Electrovert USA Corp., 122 F.R.D. 201, 202 (N.D. Tex. 1988) (citing LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976)).

6. The co-Defendants would likewise be prejudiced by potentially being denied standing to assert defenses that are exclusive to the Debtor.

7. "Plain legal prejudice often occurs where the grant of a motion for voluntary dismissal causes the non-movant to be stripped of an otherwise available defense."[7]

8. Moreover, the counterclaims asserted by the Debtor are integrally linked to interests of the other Defendants because seeking declaratory relief under TEX. CIV. PRAC. & REM. CODE § 37.006 requires that "all persons who have or claim any interest that would be affected by the declaration ***must*** be made parties."[8] (emphasis added). Not only is dismissal of the Debtor prohibited by such state code, but dismissal of the Debtor from this action will undoubtedly prejudice the remaining Defendants for the same reasons.

9. Finally, the overall transaction between the parties involved more than payment obligations under, or breach of, simple non-negotiable notes with personal guaranties, but the entire transaction incorporated multiple other agreements and conditions involving the Plaintiffs and all Defendants including pledge agreements, call options, and conversion option agreements which collectively formed the entirety of the transaction and which affect the rights and obligations of all parties thereunder.

10. Thus, dismissal would not be appropriate. This is further illustrated by the likelihood, if the case proceeded in the state court without Debtor (or even if originally filed in state court without Debtor), Debtor would likely have to be joined anyway under TEX. R. CIV. P. 39 which requires a party to be joined if "(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is

[7] Robles at 275.
[8] TEX. CIV. PRAC. & REM. CODE § 37.006.

so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."[9] Under the facts alleged, the Court should find that joinder of the Debtor would be necessary and proper. Thus, if Debtor's joinder would be required, then dismissing the Debtor to allow proceeding in the state case would serve no purpose and would not be appropriate.

11. The reality is there is nothing preventing the Plaintiffs from proceeding on their Motion for Summary Judgment in this Court with the inclusion of the Debtor as a defendant.

## II. BRIEF IN SUPPORT OF RESPONSE TO REMAND

12. Since the counterclaims asserted by the Defendants in this adversary action are integrally linked to the administration of the bankruptcy estate, they nullify both the conditions for permissive abstention under 28 U.S.C. § 1334(c)(1) and those for remand for reasons of equity under 28 U.S.C. § 1452(b). Debtor denies the allegation that abstention and remand are necessary due to jurisdictional and constitutional authority concerns.

13. To determine the scope of the bankruptcy court's jurisdiction, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy," i.e. "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[10] Here, the Defendants' counterclaims would have just such an effect on the administration of the estate in bankruptcy, particularly as it relates to allowability of claims.

14. The Plaintiff's rationale as to whether jurisdiction of this Court exists *after* the Plaintiff's claims are dismissed (regardless of whether categorized as "arising under," "arising in"

---

[9] TEX. R. CIV. P. 39.
[10] Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987).

or "related to") is irrelevant since the Court's jurisdiction in this matter *currently* exists by virtue of the integrally related claims and counterclaims of the parties.

15. Defendants note that Plaintiffs' cited case law only holds to the proposition that a bankruptcy court would lack constitutional authority to render a final judgment as to a counterclaim when such counterclaim is only remotely related to an initial claim, rendering any proceeding concerning it as a "non-core proceeding."[11] Here, the claims and counterclaims involve the administration of the bankruptcy estate, thereby rendering this Court's consideration of such matters a "core" proceeding. Based on the foregoing there is no reason to remand this proceeding to state court.

16. Also, while Defendants admit the allegation that an action involving these parties was indeed commenced in State Court, the Plaintiffs have provided no evidence that "the action can be timely adjudicated in state court.

17. While Plaintiffs may argue that the Court's jurisdiction here might not be independent of 28 U.S.C. § 1334, they cannot argue with certainty that the litigation may be completed more timely in state court than in this Court. As such, circumstances here, do not weigh in favor of remand. Consider:

a. There will be an adverse effect of abstention and remand because the Plaintiffs are trying to proceed without the Debtor which they cannot under the facts in this case.

b. While the issues involve State of Texas contract law, the overall matter effects the administration of the bankruptcy estate.

c. Defendants deny that their filing for bankruptcy protection is forum shopping by the Defendants.

[11] Stern v. Marshall, 564 U.S. 462, 463, 498-99 (2011).

d. Although Plaintiffs had requested a jury trial in the State Court suit, the Plaintiff's are only proceeding on a motion for summary judgment not a jury trial. This Court can determine a motion for summary judgment.

e. Defendants deny the allegation as to the prevalence of judicial economy in State Court since this Court may decide both the issue of the claims and counterclaims, as well as the implications these rulings may have on the administration of the bankruptcy estate, which is not possible in State Court.

f. Defendants deny any prejudice the Plaintiffs would suffer for failure to receive a jury trial is grounds for an equitable remand. Case law is clear-- such is only true if a bankruptcy court refuses to remand a case permitting a jury trial in a non-core proceeding.[12] As argued *supra*, the proceedings that are the subject of this Motion are, in fact, core proceedings, thereby making the cited case law inapplicable. Further the Plaintiffs were not proceeding towards a jury trial in state court, they were asking for a summary judgment. This Court can adjudicate those claims.

## III. BRIEF IN SUPPORT OF RESPONSE TO ABSTENSION

18. Admittedly, it is up to this Court's discretion to defer to the State Court, but to say that it has discretion "is not to say that its discretion is unreviewable; such discretion must be exercised under the relevant standard prescribed by this Court."[13]

19. The legal standard applied to such cases involves a two-pronged test. First, the Court "must first consider whether the state and federal claims are parallel,".i.e. that claims

[12] Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co., 130 B.R. 405, 409 (S.D.N.Y. 1991).
[13] Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983).

"involve the same parties and the same issues."[14] If the cases are indeed parallel, the Court must then determine if "exceptional circumstances" exist that would weigh in favor of abstention.[15] Six factors indicate whether such "exceptional circumstances" exist: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.[16]

20. In applying this *Colorado River* doctrine, "[t]he decision to abstain must be based on a careful balancing of important factors as they apply to a case, "with the balance heavily weighted in favor of the exercise of jurisdiction."[17] The Supreme Court in *Colorado River* made clear that "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."[18] The *Colorado River* factors are not to be treated as a "mechanical check list," but instead are to be carefully balanced and applied "with the balance heavily weighted in favor of the exercise of jurisdiction."[19] The particular circumstances of the case (which vary from one case to the next) determine the weight to give any one factor will vary from case to case.[20]

---

[14] Brown v. Pacific Life. Ins. Co., 462 F.3d 384, 395 n.7 (5th Cir. 2006) (citing RepublicBank Dall., Nat. Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987)). See also Clifford Paper Inc. v. Colonial Press Int'l Inc., 2017 U.S. Dist. LEXIS 121686, at *8 (S.D. Fla. 2017).
[15] Wash. Int'l Ins. Co. v. Keeney, 2020 U.S. Dist. LEXIS 132913, at *6-7 (E.D. Tex. 2020).
[16] Id. See also Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818-19 (1976).
[17] Wash. Int'l Ins. Co., 2020 U.S. Dist. LEXIS 132913, at *7.
[18] Gump v. Trinity Christian Acad., 2005 U.S. Dist. LEXIS 15201, at *5 (N.D. Tex. 2005).
[19] Moses H. Cone Mem'l Hosp., 460 U.S. at 16.
[20] Gump, 2005 U.S. Dist. LEXIS 15201, at *5-6.

21. Defendants argue that the cases, while involving integrally related matters, i.e. the claims of the Plaintiffs in opposition to the counterclaims of the Defendants, the cases themselves are not *parallel*, since the prosecution of a bankruptcy case involves matters far beyond those involving only adjudication of the aforementioned Notes and Guaranties (and the validity thereof), and involve parties that encompass more than just the two parties involved in the State Court litigation, namely all of the Debtor's creditors in bankruptcy. The Plaintiffs on the other hand would argue that the controversy between the Plaintiff and the Debtor is at issue is the only substantive issue here. This controversy, however, is substantive to the Court's adjudication of the Debtor's bankruptcy. The substantive nature of the Court's involvement in the bankruptcy is *the* metric for assessing the propriety of abstention since such abstention would mean that the bankruptcy Court would "have nothing further to do in resolving [such a] substantive part of the case….".[21] Here, it is apparent that circumstances weigh decidedly against finding that the cases are parallel (based on the nature of the questions before the Court and the parties involved, however, it is conceivable that the Court may see congruency between the issues and the parties, which may cause the Court to question its course of action. Should the Court have "any substantial doubt about whether two cases are parallel, the [C]ourt should not abstain."[22]

22. If the Court does deem the cases to be parallel in both issues and parties, it must then turn its attention to the *Colorado River* factors for consideration to determine if exceptional circumstances exist that would warrant abstention. In the instant case, the first factor, "assumption by either state or federal court over a res" weighs in favor of this Court's jurisdiction since this court has assumed authority over administration of the property of the bankruptcy

[21] Clifford Paper Inc., 2017 U.S. Dist. LEXIS 121686, at *8; (citing Moses H. Cone Mem'l Hosp.. 460 U.S. at 28).
[22] Acosta v. Gustino, 478 F. App'x 620, 622 (11th Cir. 2012).

estate, which includes the legal claims (or counterclaims) of the estate, which themselves are integrally tied to the claims of the Plaintiffs.

23. The second factor, the "relative inconvenience of the fora" may be determined by the proximity of the two courts in these related proceedings. The underlying State Court action was filed in the 141st Judicial District Court located at 100 North Calhoun Street, Fort Worth Texas 76196. This Court is located at 501 W. Tenth Street, Fort Worth, TX 76102. As such, the two are located less than one mile from one another. When in close geographic proximity, "the federal forum and the state forum are equally convenient" and the factor "cuts against abstention."[23]

24. The third factor, "avoidance of piecemeal litigation" must look to whether the two cases are "so inextricably intertwined in both their factual and legal issues that dual litigation would likely result in deleterious duplication of judicial resources.[24] When the cases do not duplicate fact and legal issues, abstention would be warranted.[25] Because facts and issues here are so integrally linked as mentioned supra, abstention would be inappropriate.

25. The fourth factor, the "order in which jurisdiction was obtained by the concurrent fora," is concerned not so much with the chronological order in which the parties commenced the concurrent proceedings, but rather it relates to the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier.[26] Here, while the State Court case was admittedly filed first, the progress of such case was curtailed, as mentioned above by the failure of Plaintiffs both to fully answer discovery and to produce any responsive documents requested in the state court proceeding. As such, the fourth factor weighs in favor of the Debtor.

---

[23] Clifford Paper Inc., 2017 U.S. Dist. LEXIS 121686, at *11 (citing Jackson-Platts v. GE Capital Corp., 727 F.3d 1127, 1141 (11th Cir. 2013)).
[24] Clifford Paper Inc., 2017 U.S. Dist. LEXIS 121686, at *12.
[25] Id.
[26] Id. at 13.

26. As for the fifth factor, the "extent federal law provides the rules of decision on the merits," Plaintiffs would assert that it weighs in favor of abstention because state law will govern all of the parties' claims against each other. "But this factor favors abstention only where the applicable state law is *particularly complex or best left for state courts to resolve*."[27] No such complexity exists that would make it impossible for this Court to decide such issues. The claims that the Plaintiffs raise invoking the Debtor's failure to pay its obligations pursuant to the terms of the Note and any related claims against the guarantors thereof are issues routinely addressed by the Court. Accordingly, the fifth factor therefore does not favor abstention.

27. The sixth and final factor, the "adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction" would be determined by the inability of this Court to protect the rights of one or the other party in the matter for consideration. Here, there is nothing to indicate that this Court is incapable of protecting the rights of either party. When both fora are adequate to safeguard the parties' rights, this factor is merely rendered neutral."[28]

## IV. PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Debtor and the Defendants request the Court deny the relief requested by the Plaintiffs in the Motion in its entirety, and grant such other and further relief to the Defendants as the Court may deem just and proper.

[27] Jackson-Platts, 727 F.3d at 1143.
[28] Id.

Dated: November 11, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYS FOR 2999TC LP, LLC

/s/ Robert F. Kemp
Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
Telephone: (214) 526-2156
Facsimile: (214) 526-2156
Email: lawyerkemp@cs.com
ATTORNEY FOR JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 11, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

BTXN 208 (rev. 07/09)

IN RE: Tejas Group, Ltd. et al v. JMJ Development, LLC et al
DEBTOR

Motion to dismiss (12) Notice of removal (1)

**TYPE OF HEARING**

Tejas Group, Ltd. et al
**PLAINTIFF / MOVANT**

***VS***

2999T
**DEFE**

Katherine Hopkins
**ATTORNEY**

Joyce
**ATTO**

**EXHIBITS**

A−J − See document 27 of the docket sheet

1−8 See document 20 of the docket shee

J. Calfee
REPORTED BY

11/16/2020
HEARING DATE

Mark X. N
JUDGE PRE

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 18, 2020**

Mark X. Mullin
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE 2999TC LP, LLC,<br><br>Debtor. | § | CASE NO. 20-43204-mxm11 |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.<br>Plaintiffs,<br><br>v.<br><br>2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON<br>Defendants. | § | ADVERSARY NO. 20-04078 |

**ORDER GRANTING SECOND AMENDED MOTION TO DISMISS DEFENDANT**
**<u>2999TC LP, LLC ONLY AND ABSTAIN AND REMAND TO STATE COURT</u>**

On November 16, 2020, the Court considered the Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court (the "Motion") [Docket No. 12], filed by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd. (collectively, the "Plaintiffs"). At the hearing to consider the Motion, the Court stated its findings of fact and conclusions of law orally on the record pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, and that good cause existed to grant the Motion. In accordance therewith, it is therefore

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Plaintiffs' claims against only Defendant 2999TC LP, LLC ("2999TC") are hereby **DISMISSED, WITHOUT PREJUDICE**; it is further

ORDERED this Order does not affect or impair any of the remaining claims asserted in the State Court Lawsuit[1]; it is further

ORDERED that nothing contained in this Order and no actions taken by Plaintiffs or 2999TC with respect to this Order shall be construed as an admission by any party on any question of liability; it is further

ORDERED that the Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order; it is further

ORDERED that in connection with the State Court Lawsuit, permissive abstention and equitable remand are appropriate; and it is further

ORDERED that the State Court Lawsuit is remanded to the 141st Judicial District Court, Tarrant County, Texas for further determination.

**### END OF ORDER ###**

[1] Any capitalized terms not defined herein shall have the same meanings ascribed to them in the Motion.

**SUBMITTED BY:**

*/s/ Katherine T. Hopkins*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
PROPOSED ATTORNEYS FOR 2999TC, LLC, DEBTOR

Robert F. Kemp
SBN 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
ATTORNEY FOR JMJ DEVELOPMENT, LLC
AND TIMOTHY BARTON

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC, LLC,** | § | |
| | § | **CASE NO. 20-43204-MXM11** |
| **Debtor.** | § | |
| | § | |
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD. AND BLACKFOOT INTEREST, LTD.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078** |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON** | § | |
| | § | |
| **Defendants.** | § | |

## NOTICE OF APPEAL

**TO THE UNITED STATES BANKRUPTCY COURT**:

NOTICE IS GIVEN that **2999TC, LLC**, **JMJ Development, LLC** and **Tim Barton** ("Defendants"), Defendants/Appellants herein, appeal to the United States District Court for the Northern District of Texas, this Court's **Order Granting Second Amended Motion to Dismiss Defendant 2999TC, LP, LLC Only and Abstain and Remand to State Court**, entered on November 18, 2020, in the above referenced adversary proceeding (the "**Order**"). The Order is entered at ECF Nos. 31 and 32 in the adversary proceeding.

The nature of the Order being appealed is final, with the United States District Court for the Northern District of Texas having jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1).

1. Names of Appellants:

a) 2999TC, LLC,
b) JMJ Development, LLC and
c) Tim Barton

2. Position of Appellants: The Appellant 2999TC, LLC is the Debtor in the above referenced bankruptcy proceeding. 2999TC, LLC, JMJ Development, LLC and Tim Barton are Defendants in the above referenced adversary proceeding.

3. Subject of this Appeal: The Order being appealed is the **Order Granting Second Amended Motion to Dismiss Defendant 2999TC, LP, LLC Only and Abstain and Remand to State Court**, entered on November 18, 2020, at ECF Docket Nos. 31 and 32 in the adversary proceeding No. 20-04078. (See "Exhibit 1")

4. Other Parties to the Appeal:

(a) L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr.,
(b) Tejas Group, Ltd.,
(c) LAH III Family Specific Interest, Ltd. and
(d) Blackfoot Interest, Ltd.

Counsel:
Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

Dated: November 18, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
ATTORNEYS FOR APPELLANT
2999TC, LLC

/s/ Robert F. Kemp
Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
Email: lawyerkemp@cs.com
ATTORNEY FOR APPELLANTS JMJ
DEVELOPMENT, LLC AND TIMOTHY
BARTON

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 18, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd
c/o Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 18, 2020**

Mark X. Mullin
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| | § | |
| | § | |
| IN RE 2999TC LP, LLC, | § | CASE NO. 20-43204-mxm11 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| L. ALLEN HODGES III, AS | § | |
| INDEPENDENT EXECUTOR OF THE | § | |
| ESTATE OF LELAND A. HODGES JR., | § | |
| TEJAS GROUP, LTD., LAH III FAMILY | § | |
| SPECIFIC INTEREST, LTD., AND | § | |
| BLACKFOOT INTEREST, LTD. | § | |
| Plaintiffs, | § | |
| | § | ADVERSARY NO. 20-04078 |
| v. | § | |
| | § | |
| 2999TC LP, LLC, | § | |
| JMJ DEVELOPMENT, LLC, AND | § | |
| TIM BARTON | § | |
| Defendants. | § | |
| | § | |

**ORDER GRANTING SECOND AMENDED MOTION TO DISMISS DEFENDANT <u>2999TC LP, LLC ONLY AND ABSTAIN AND REMAND TO STATE COURT</u>**

On November 16, 2020, the Court considered the Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court (the "Motion") [Docket No. 12], filed by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd. (collectively, the "Plaintiffs"). At the hearing to consider the Motion, the Court stated its findings of fact and conclusions of law orally on the record pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, and that good cause existed to grant the Motion. In accordance therewith, it is therefore

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Plaintiffs' claims against only Defendant 2999TC LP, LLC ("2999TC") are hereby **DISMISSED, WITHOUT PREJUDICE**; it is further

ORDERED this Order does not affect or impair any of the remaining claims asserted in the State Court Lawsuit[1]; it is further

ORDERED that nothing contained in this Order and no actions taken by Plaintiffs or 2999TC with respect to this Order shall be construed as an admission by any party on any question of liability; it is further

ORDERED that the Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order; it is further

ORDERED that in connection with the State Court Lawsuit, permissive abstention and equitable remand are appropriate; and it is further

ORDERED that the State Court Lawsuit is remanded to the 141st Judicial District Court, Tarrant County, Texas for further determination.

**### END OF ORDER ###**

[1] Any capitalized terms not defined herein shall have the same meanings ascribed to them in the Motion.

**SUBMITTED BY:**

*/s/ Katherine T. Hopkins*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Mark X. Mullin

**Signed November 18, 2020** **United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE 2999TC LP, LLC,<br><br>Debtor. | § | CASE NO. 20-43204-mxm11 |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.<br>Plaintiffs,<br><br>v.<br><br>2999TC LP, LLC,<br>JMJ DEVELOPMENT, LLC, AND<br>TIM BARTON<br>Defendants. | § | ADVERSARY NO. 20-04078 |

**ORDER GRANTING SECOND AMENDED MOTION TO DISMISS DEFENDANT**
**2999TC LP, LLC ONLY AND ABSTAIN AND REMAND TO STATE COURT**

On November 16, 2020, the Court considered the Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court (the "Motion") [Docket No. 12], filed by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd. (collectively, the "Plaintiffs"). At the hearing to consider the Motion, the Court stated its findings of fact and conclusions of law orally on the record pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, and that good cause existed to grant the Motion. In accordance therewith, it is therefore

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Plaintiffs' claims against only Defendant 2999TC LP, LLC ("2999TC") are hereby **DISMISSED, WITHOUT PREJUDICE**; it is further

ORDERED this Order does not affect or impair any of the remaining claims asserted in the State Court Lawsuit[1]; it is further

ORDERED that nothing contained in this Order and no actions taken by Plaintiffs or 2999TC with respect to this Order shall be construed as an admission by any party on any question of liability; it is further

ORDERED that the Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order; it is further

ORDERED that in connection with the State Court Lawsuit, permissive abstention and equitable remand are appropriate; and it is further

ORDERED that the State Court Lawsuit is remanded to the 141st Judicial District Court, Tarrant County, Texas for further determination.

**### END OF ORDER ###**

[1] Any capitalized terms not defined herein shall have the same meanings ascribed to them in the Motion.

**SUBMITTED BY:**

*/s/ Katherine T. Hopkins*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, TX 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
PROPOSED ATTORNEYS FOR 2999TC, LLC, DEBTOR

Robert F. Kemp
SBN 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
ATTORNEY FOR JMJ DEVELOPMENT, LLC
AND TIMOTHY BARTON

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **2999TC, LLC,** | § | |
| | § | **CASE NO. 20-43204-MXM11** |
| **Debtor.** | § | |
| | § | |
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD. AND BLACKFOOT INTEREST, LTD.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 20-04078** |
| | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON** | § | |
| | § | |
| **Defendants.** | § | |

## AMENDED NOTICE OF APPEAL

**TO THE UNITED STATES BANKRUPTCY COURT**:

NOTICE IS GIVEN that **2999TC, LLC**, **JMJ Development, LLC** and **Tim Barton** ("Defendants"), Defendants/Appellants herein, appeal to the United States District Court for the Northern District of Texas, this Court's **Order Granting Second Amended Motion to Dismiss Defendant 2999TC, LP, LLC Only and Abstain and Remand to State Court**, entered on November 18, 2020, in the above referenced adversary proceeding (the "**Order**").

The nature of the Order being appealed is final, with the United States District Court for the Northern District of Texas having jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1).

1. Names of Appellants:

   a) 2999TC, LLC,
   b) JMJ Development, LLC and
   c) Tim Barton

2. Position of Appellants: The Appellant 2999TC, LLC is the Debtor in the above referenced bankruptcy proceeding. 2999TC, LLC, JMJ Development, LLC and Tim Barton are Defendants in the above referenced adversary proceeding.

3. Subject of this Appeal: The Order being appealed is the **Order Granting Second Amended Motion to Dismiss Defendant 2999TC, LP, LLC Only and Abstain and Remand to State Court**, entered on November 18, 2020, in the adversary proceeding No. 20-04078. (See "Exhibit 1")

4. Other Parties to the Appeal:

   (a) L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr.,
   (b) Tejas Group, Ltd.,
   (c) LAH III Family Specific Interest, Ltd. and
   (d) Blackfoot Interest, Ltd.

Counsel:

Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum

Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

Dated: November 19, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
ATTORNEYS FOR APPELLANT
2999TC, LLC

/s/ Robert F. Kemp

Robert F. Kemp
State Bar No. 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
Email: lawyerkemp@cs.com
ATTORNEY FOR APPELLANTS JMJ
DEVELOPMENT, LLC AND TIMOTHY
BARTON

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 19, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

L. Allen Hodges III, As Independent Executor Of The Estate Of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd
c/o Dee J. Kelly, Jr., Katherine T. Hopkins & Joakim G. Soederbaum
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone (817) 332-2500
Facsimile (817) 878-9280
Dee.kelly@kellyhart.com
Katherine.hopkins@kellyhart.com
Joakim.soederbaum@kellyhart.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 18, 2020**

Mark X. Mullin
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE 2999TC LP, LLC,<br><br>Debtor. | § | CASE NO. 20-43204-mxm11 |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.<br>Plaintiffs,<br><br>v.<br><br>2999TC LP, LLC,<br>JMJ DEVELOPMENT, LLC, AND<br>TIM BARTON<br>Defendants. | § | ADVERSARY NO. 20-04078 |

**ORDER GRANTING SECOND AMENDED MOTION TO DISMISS DEFENDANT**
**2999TC LP, LLC ONLY AND ABSTAIN AND REMAND TO STATE COURT**



**EXHIBIT "1"**

000806

On November 16, 2020, the Court considered the Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court (the "Motion") [Docket No. 12], filed by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd. and Blackfoot Interest, Ltd. (collectively, the "Plaintiffs"). At the hearing to consider the Motion, the Court stated its findings of fact and conclusions of law orally on the record pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, and that good cause existed to grant the Motion. In accordance therewith, it is therefore

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Plaintiffs' claims against only Defendant 2999TC LP, LLC ("2999TC") are hereby **DISMISSED, WITHOUT PREJUDICE**; it is further

ORDERED this Order does not affect or impair any of the remaining claims asserted in the State Court Lawsuit[1]; it is further

ORDERED that nothing contained in this Order and no actions taken by Plaintiffs or 2999TC with respect to this Order shall be construed as an admission by any party on any question of liability; it is further

ORDERED that the Court shall retain jurisdiction to hear and consider all disputes arising out of the interpretation or implementation of this Order; it is further

ORDERED that in connection with the State Court Lawsuit, permissive abstention and equitable remand are appropriate; and it is further

ORDERED that the State Court Lawsuit is remanded to the 141st Judicial District Court, Tarrant County, Texas for further determination.

**### END OF ORDER ###**

[1] Any capitalized terms not defined herein shall have the same meanings ascribed to them in the Motion.

**SUBMITTED BY:**

*/s/ Katherine T. Hopkins*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | ) | **Case No. 20-43204-mxm11** |
| 2999TC LP, LLC, | ) | Fort Worth, Texas<br>November 16, 2020<br>1:30 p.m. Docket |
| Debtor. | ) | |
| TEJAS GROUP, LTD., et al., | ) | **Adversary Proceeding 20-4078-mxm** |
| Plaintiffs, | ) | |
| v. | ) | - SECOND AMENDED MOTION TO DISMISS (#12)<br>- STATUS CONFERENCE (#1) |
| 2999TC LP, LLC, et al., | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE.

WEBEX/TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | Katherine T. Hopkins<br>Joakim Soederbaum<br>KELLY HART & HALLMAN<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102<br>(817) 332-2500 |
| For Defendant 2999TC LP, LLC: | Joyce W. Lindauer<br>JOYCE W. LINDAUER ATTORNEY, PLLC<br>1412 Main Street, Suite 500<br>Dallas, TX 75202<br>(972) 503-4033 |
| For Defendants JMJ Development, LLC and Timothy Barton: | Robert F. Kemp<br>2815 Valley View Lane,<br>Suite 202<br>Dallas, TX 75234<br>(214) 526-9601 |

Court Recorder: Jennifer Calfee
UNITED STATES BANKRUPTCY COURT
501 W. 10th Street
Fort Worth, TX 76102
(817) 333-6000

Transcription Service: Kathy Rehling
311 Paradise Cove
Shady Shores, TX 76208
(972) 786-3063

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

FORT WORTH, TEXAS - NOVEMBER 16, 2020 - 3:23 P.M.

THE COURT: Good afternoon, everyone. Judge Mullin again. We're back on the record in the 1:30 docket, and that'll be Tejas Group, Ltd. versus 2999TC LP, LLC.

Ms. Lindauer, go ahead and state your name again and the party you represent for the record.

MS. LINDAUER: Your Honor, Joyce Lindauer for the Debtor, 2999TC LP.

THE COURT: All right.

MS. LINDAUER: And I have Mr. Kemp here also sitting next to me.

THE COURT: All right.

MR. KEMP: Good afternoon, Your Honor. Robert Kemp representing Timothy Barton and JMJ Development.

THE COURT: All right. Good afternoon to you, sir. And then do we have Ms. Hopkins, perhaps?

MS. HOPKINS: Yes, Your Honor. Good afternoon. Katherine Hopkins on behalf of the Plaintiffs. I also have my colleague, Joakim Soederbaum, on the videoconference as well.

THE COURT: All right. Good afternoon to each of you.

All right. Let me get my bearings back up here. Oh, there it is. All right. So, what we have is the Motion to Dismiss as well as the Motion to Remand, which are both set, again, and the status conference in the underlying adversary

proceeding, which, for the record, is 20-4078.

So, how would you like to proceed? Ms. Hopkins, I believe it's probably to you, since both motions are yours.

MS. HOPKINS: Yes, Your Honor. I think initially I'd like to go ahead and request that the Court admit Exhibits -- Plaintiffs' Exhibits A through J.

I think there was an issue at our last hearing with respect to some of the exhibits to Exhibit E, so we're okay with, you know, having the -- just having the Court take judicial notice of those exhibits specifically with respect to Exhibit E.

And then we'd also ask that the Court take judicial notice of all the documents filed in this adversary as well as the underlying bankruptcy case.

THE COURT: All right. I'm sorry. I didn't get all that written down. The Court will -- any objection to the Court taking judicial notice of the adversary proceeding and the documents filed in the underlying bankruptcy case, Ms. Lindauer?

MS. LINDAUER: No objection, Your Honor, --

THE COURT: All right.

MS. LINDAUER: -- to taking notice of those documents.

THE COURT: All right. The Court will take judicial notice of the documents filed in both the underlying

bankruptcy case, so 2999TC LP, as well as in this adversary proceeding.

And then, Ms. Hopkins, I didn't quite catch, on the exhibits, which exhibits did you wish to have admitted versus judicial notice?

MS. HOPKINS: Sure. I guess it would be Plaintiffs' Exhibits A through D would be exhibit -- would be admitted in full. And then also Exhibits F through J would be fully admitted.

And then for Exhibit E, I'd -- assuming that opposing counsel has an objection, which I anticipate is coming, with respect to the exhibits filed to that Exhibit E -- so, let me give you a little bit more -- let me preface this. Exhibit E is the Plaintiffs' Motion for Summary Judgment that was filed in the state court lawsuit. As Your Honor is aware, as is typical for motions for summary judgment, there's a number of exhibits that were filed as exhibits to that Motion for Summary Judgment. At our last hearing a couple weeks ago, opposing counsel objected to the admission for the truth of the matter asserted with respect to, I think, some notes that are exhibits to that Motion for Summary Judgment.

So, assuming that's still the case, which I have no reason to think otherwise, then we're fine with just having the Court take judicial notice of those exhibits. Sorry; it's a mouthful.

THE COURT: No, it's not. That's okay. So, for the record, Ms. Lindauer, any objection to Exhibits A through D and F through J, which each can be found at Docket 27?

MS. LINDAUER: Okay. So, I mean, so, Your Honor, with regard to pleadings, which most of those are pleadings, I think it's appropriate that the Court go ahead and admit those. But, again, anything stated in a pleading is not going to be for the truth of the matter asserted. It's simply those statements in pleadings. So I don't have any problem with those being admitted on that basis, Your Honor.

Actually, I don't have any problem with any of Ms. Hopkins' exhibits being admitted, so long as we're not admitting them for the truth of the matter asserted therein, more just for the fact that they have been filed and they do contain positions of the parties, both our position and their position.

So, Your Honor, on that basis, I really have no objection to any of her exhibits coming in.

THE COURT: All right. Ms. Hopkins, any objection to limiting the offer to that extent?

MS. HOPKINS: Your Honor, I think that's fine with respect to Exhibits A through I. When it comes to Exhibit J, we would request that that come in for the truth of the matter asserted. And we're happy to discuss that.

MS. LINDAUER: Your Honor, it's hearsay, but I'm not

going to raise that issue. I think it's just a notice from the Court that they obtained, and that's fine. So J can come in.

THE COURT: All right.

MS. LINDAUER: That's fine.

THE COURT: All right. So, Exhibits A through J are each admitted. With respect to A through I, it's for a limited purpose, that the assertions, the potential hearsay assertions within each of those pleadings, they're not being admitted for the truth of those. Parties are reserving their rights with respect to those assertions. Is that correct, Ms. Lindauer? And Ms. --

MS. LINDAUER: That is correct, Your Honor.

THE COURT: And Ms. Hopkins, is that fine?

MS. HOPKINS: Yes, Your Honor.

THE COURT: All right.

MS. HOPKINS: We're agreeable to that.

THE COURT: All right. So, based on that limited offer, A through I are each admitted. And J is admitted in full. And, again, those can be found at Docket No. 27. All right.

MS. HOPKINS: Thank you, Your Honor.

(Plaintiffs' Exhibit A through J are received into evidence as specified.)

MS. HOPKINS: And we believe that this argument today

will be primarily legal argument. If Your Honor would like me to just go ahead and dive into it, I'm happy to do so.

THE COURT: Yes, please do.

MS. HOPKINS: Okay. Your Honor, as the Court previously mentioned, we're here today on the Plaintiffs' Second Amended Motion to Dismiss the causes of action against the Debtor only, as well as to abstain and remand the state court lawsuit back to state court for further determination.

Your Honor, the underlying facts here are pretty simple. The Debtor obtained a loan from the Plaintiffs in the amount of $4 million. There are two different promissory notes reflecting this transaction. In connection with that loan, the Defendants Tim Barton and JMJ Development, LLC guaranteed that loan.

Subsequently, the Debtor, as well as the Nondebtor Defendant Guarantors, failed to pay the amounts owed under the loan, failed to pay the Plaintiffs. As a result, and as is pretty typical when you have a breach here as we're alleging, the Plaintiffs went ahead and commenced a state court lawsuit against all of the parties, the Debtor as well as the Nondebtor Guarantors.

As stated in our pleadings, the Plaintiffs filed a Motion for Summary Judgment, which was originally scheduled to be heard by the state court in August. The court certainly had time to hear it then. However, at that hearing, and based

upon the Defendants' request to conduct further discovery, the Motion for Summary Judgment hearing was actually rescheduled and pushed back to October 16th.

On the morning of October 16th, and less than two hours prior to the MSJ hearing, the Debtor commenced this bankruptcy case and then removed the lawsuit in front of this Court. As a result, then obviously the Motion for Summary Judgment did not substantively go forward.

Now, after this case has been filed and the Plaintiffs have further reflected on the Debtor's schedules as well as the potential issues relating to litigating bankruptcy issues, the Plaintiffs have decided to dismiss their causes of action that they originally asserted against the Debtor.

Your Honor, when you look at the limited pleadings and statutory forms that the Debtor has filed thus far in this case, you'll see that the Debtor here is not an operating entity. There's no employees. There's no operations at all. There's nothing so far to suggest how, if, and when the Debtor actually intends to reorganize here. But at this point, the Plaintiffs do not wish to incur the additional expense related to litigating bankruptcy-related issues.

Further, when you look at the Debtor's schedules that have been filed, it appears that the Debtor has very limited assets that would be available for recovery to creditors. Specifically, the Debtor's Schedules A and B reflect that the

Debtor has $100 in a bank account and then also owns equity interests in a related entity with an alleged value of $4 million, which is also the amount of the loan that was entered into between my clients and the Debtor.

You know, we're not sure the likelihood of whether or not the equity interests here would actually be able to be monetized, but we are sure that that endeavor would not only be expensive but it would also potentially be a futile exercise.

So, you know, that is -- those two things, the equity interests and the $100 in the bank account, that is the world of the Debtor's assets. As a result, the Plaintiffs, in its -- in their review, have determined that, you know what, there's going to be very little recovery to creditors here, and they don't want to continue the litigation in this forum, and as a result seek to dismiss the causes of action against the Debtor.

Your Honor, I'm going to try to share my screen. Hopefully this goes okay. Hold on with me real quick. Okay. Can you see my screen, Your Honor?

THE COURT: Yes.

MS. HOPKINS: Okay. I just want to kind of go through some of the issues involved with both parts of this motion, the Motion to Dismiss and some of the case law and factors, as well as the abstention and remand issues related

to those tests as well.

So, here, the reason we're in front of you on the Motion to Dismiss is because, yes, the Plaintiffs seek to dismiss the causes of action against the Debtor. However, the Debtor disputes that. The Debtor will not agree to allow the Plaintiffs to dismiss these causes of action, so we need to get Court permission to do so.

And in -- let's see. In the Court's analysis, the first thing it needs to look towards, since -- since we need a -- since the -- excuse me, since the Debtor is disputing our ability to dismiss these claims, the Court needs to look towards the statutory requirements as well as the case law. Specifically, in Rule 41(a)(2), the first thing the Court needs to ask is whether a dismissal will cause the non-movant party to suffer plain legal prejudice. If not, then the Court should grant the dismissal motion.

Here, there's no prejudice that would occur if the claims against the Debtor are dismissed. And there's been no evidence of prejudice that's been presented. Just recently, and for the first time, the Defendants, including the Debtor, have now asserted these counterclaims against the Plaintiffs. Specifically, they're asserting declaratory judgment claims against the Plaintiffs, basically asking the Court to find that the underlying notes and guaranties are somehow void or voidable.

While these essentially appear to be affirmative defenses, any dismissal of the Plaintiffs' causes of action against the Debtor will not impact the Debtor's counterclaims or the Nondebtor Defendants' against the Plaintiffs. There's nothing in the dismissal that would prohibit or limit the Defendants' rights with respect to the counterclaims, and regardless of the Debtor's objection here, the alleged counterclaims can proceed and be adjudicated alongside with the Plaintiffs' remaining counterclaims against the Nondebtor Defendants.

It's important to note that dismissal here will actually benefit the estate as well as the estate's creditors. If dismissal occurs, then that's going to decrease liabilities of the estate significantly.

In addition, there's no evidence that the Debtor, via dismissal, would somehow lose forum-specific defenses as a consequence of dismissal. Cases look towards, you know, would the non-movant party suffer because some available defense that is -- that exists in one forum would not exist in the event dismissal was granted. However, that's not present here. Whether the Court dismisses the Plaintiffs' causes of action against the Debtor, either way, the Defendant -- the Debtor still has the same defenses it can assert.

Notably, when you look at the guaranty that was signed and executed by the Nondebtor Defendants, we could have actually brought suit against the Guarantors only. In Paragraph 4 of

the guaranties, it states that, It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the guaranteed indebtedness.

Your Honor, I think this is important because it simply reiterates that the Plaintiffs were not required to even include the Debtor in the lawsuit in the first place. They could have gone solely after the Guarantors and sought recovery from the Guarantors in the first place, which is what the Plaintiffs are attempting to do now.

In addition, I think, you know, just when you think about practice generally, this is something that often comes up, and case law also reflects facts in which suits against solely guarantors are present. In fact, in -- out of this district last year, this was a case that was -- an opinion out of Judge Jernigan's court, the *Cedar Park Healthcare v. Harden Healthcare* case. It stemmed from the *Senior Care Centers* bankruptcy case in front of Judge Jernigan. And I think it's helpful because that case had similar facts, based on this adversary proceeding.

So, specifically in the *Cedar Park* case, the debtor tenant entered into a pre-petition lease with a landlord. Okay? And the indirect equity owner of the debtor tenant executed a guaranty of that lease. Subsequently, and as often happens, the debtor tenant defaulted under the lease and then filed for

bankruptcy. At that time, and following the bankruptcy filing, the landlord decided to only commence a lawsuit against the guarantor. After that lawsuit was commenced, the guarantor then removed the lawsuit to the bankruptcy court, and the landlord subsequently moved to abstain or remand.

So, in a moment, we're going to talk about some of the issues involved in the Court's analysis and case law related to that analysis with respect to remand and abstention issues. However, I think that this case is a good example of what happens in connection with tenant bankruptcies. Specifically, a landlord can easily bring a lawsuit against a guarantor without also suing the borrowers. It's pretty commonplace, and we see it a lot.

In addition, you have an alternative scenario in which, let's say, the creditor files suit -- or landlord -- creditor files suit against the primary obligor as well as the guarantors. In the event that the primary obligor files for bankruptcy post-filing of the lawsuit, it's very easy for practical purposes for the creditor to go ahead and sever out that debtor and proceed against the guarantors only, without the guarantors losing any defenses that they otherwise would have.

Ultimately, Your Honor, there's simply no evidence that the Debtor would be prejudiced in any way in the event the Plaintiffs' causes of action against the Debtor only were

dismissed. Therefore, the Plaintiffs request that the Court grant the requested relief with respect to the Plaintiffs' dismissal of the causes of action against the Debtor.

Now, turning to abstention and remand, upon dismissal, the only claims that will remain are the Plaintiffs' claims against the Nondebtor Defendants and the Defendants' counterclaims against the Plaintiffs. So, because of this, we do believe that those issues in regards to the jurisdiction of this Court as well as this Court's ability to -- and constitutional authority to enter final judgments or orders in this adversary proceeding, specifically upon dismissal of the claims, there will not be any arising-under jurisdiction because the claims here do not involve a substantive right provided under the Bankruptcy Code, nor will there be any arising-in jurisdiction because the action involves solely state law issues and is not one that could arise solely in the context of a bankruptcy case. Furthermore, we believe that there's no related-to jurisdiction, as the state law lawsuit will have no effect on the administration of the bankruptcy estate here.

However, Your Honor, even if jurisdiction does exist, the post-dismissal claims are not here -- not core here. The Plaintiff does not consent to the adjudication of these claims here, and as a result, case law does establish that this Court, respectfully, cannot enter a final order on the

Debtor's counterclaims and the Plaintiffs' claims against the Nondebtor Defendants.

Your Honor, kind of moving along with that same thread, in the event Your Honor finds that this Court does have jurisdiction, we do believe that mandatory abstention is applicable and requires the Court to remand this lawsuit back to state court.

So, under Section 1334(c)(2), a court must abstain from hearing the state law claims when the claims have no independent basis for federal jurisdiction other than Section 1334(b), the claims are non-core, and action has been commenced in state court, and the action can be timely adjudicated in state court. We believe that all four of these factors are present here.

Specifically, jurisdiction only exists under Section 1334. And, actually, in the response, in the objection of the Defendants, they specifically state and admit that the basis of this Court's jurisdiction is rooted in 1334, Section 1334. I don't think we have any issue or dispute on that. Where we do have a dispute is whether the claims are core or not. And Your Honor, at best, the claims here are related to the bankruptcy case, which would make them non-core.

In the *Cedar Park* case which we were discussing a minute ago -- as a reminder, this is the case where the landlord filed a lawsuit against the guarantor solely; so, not the

tenant, but the guarantor -- for breach of the guaranty. In that case, Judge Jernigan stated that, Here, the claim is for a breach of guaranty by one nondebtor against another nondebtor. There is little doubt that these claims are non-core.

This case is right on point with what we're dealing with here. Upon dismissal, all of these claims, the remaining claims, at best will be related -- will have related-to jurisdiction. So they will also equate to a non-core proceeding.

In addition, there's a state court lawsuit here. I don't think that anyone disputes the existence of that lawsuit.

Lastly, the lawsuit can be timely adjudicated in state court. As we discussed a minute ago, and as indicated on the state court docket, originally there was a hearing set for August 20th to consider the Plaintiffs' Motion for Summary Judgment. That hearing was -- the court entered that setting on July 24th, so it would have been a few weeks later. That's when the hearing was going to be held. This wasn't months later. I mean, there's nothing to evidence that there was any issue with the court setting the hearing. It seems like the court had plenty of time and was making time to hear this matter.

Furthermore, when it was continued, the court entered it on September 25th and stated that this hearing would occur on

the Motion for Summary Judgment on October 16th. Again, that's just a few weeks following the entry of the setting. We have no reason to believe that the state court cannot hear the Motion for Summary Judgment on a timely manner here.

And as I -- as indicated by Exhibit -- Plaintiffs' Exhibit J, which is a communication between Mr. Soederbaum, myself, and the court coordinator for the 141st District Court, which is the court that originally heard this state court lawsuit, and following, in the event the court -- this Court decides to remand or abstain this matter, the lawsuit will go back to the 141st District Court there.

And as indicated by that exhibit, we specifically requested the court's availability to hear this on the week of December 13th. We requested that week specifically because we wanted to make sure that the parties received at least 21 days' notice of the hearing. And the court coordinator responded, you know, not stating an issue that, yeah, this -- we're so busy, this is going to have to be put off for six months. No, the court just simply -- the court coordinator simply stated that they could hear it either December 16th or December 17th.

We have not -- obviously, we -- that is not in front of the state court at this time, so we will not notice it until the Court rules in our favor, if that occurs. However, we have no reason to think that, you know, later on this week, if

the Court does rule in our favor, we have no reason to believe that that would change, that any of the availability would change. And, rather, the state court would, in fact, be able to hear this matter on December 16th or the 17th.

Therefore, we believe that all of the factors for mandatory abstention have been satisfied.

However, even if one of those factors -- or, the Court believes one of those factors has not been satisfied, permissive abstention and equitable remand both strongly weigh in favor of this Court sending the state court lawsuit back to state court for further adjudication.

As set forth in our motion, there's a number of factors that courts here in the Fifth Circuit consider in deciding whether to abstain and remand back to state court. In their objection, the Defendants have actually admitted to a few of these factors. Specifically, the Defendants had admitted yes, the state court lawsuit was pending prior to the petition date. Yes, the jurisdictional basis here for the court, this Court, is Section 1334. Yes, there's no need for severance here. And yes, the Plaintiffs have requested and have a right to a jury trial.

It's the remaining factors that are in dispute here, and I think a simple examination, if we go through those, will refute the position that this should actually stay in front of Your Honor.

So, with the first factor, when you look at the remaining claims once the Plaintiffs' claims against the Debtor are dismissed, there's nothing to suggest that abstention nor remand would have any adverse effect, or any effect at all, on the administration of the estate. We don't believe that -- you know, I mean, there's no causes of action that would be pursued by the Plaintiffs against the estate. We have no evidence or no reason to believe that there would be an effect on the estate administration.

Further, the causes of action here are for breach of the promissory notes, breach of guaranties, and now we have some asserted declaratory judgment claims under Texas state law. All of these causes of action involve state law and would be interpreted and decided pursuant to state law.

Further, Your Honor, these issues are not difficult. They're not complex. They're not based on unsettled law. And while we certainly think Your Honor has the ability to decide breach of contract issues, we think it would be better suited for the state court to decide this matter since the state court deals with these types of issues on a daily basis and for all of the reasons that we're setting forth today. For example, the fact that all of these factors certainly weigh in favor of abstention and remand.

There's little to no degree of relatedness of the remaining causes of action to the main bankruptcy case. As we

stated a minute ago, there's only state law claims involved here. Thus, the substance of this asserted core proceeding, it's not actually a core proceeding at all, right? I mean, this is a sole -- solely a non-core proceeding with a substance relating only to state law.

As to the burden on this Court's docket, I think that, you know, as the current climate worsens, as we're seeing increased COVID-19 cases, and also, really, no certainty as to when a vaccine will be readily available for the public, I think that that will affect the marketplace and the economy and will increase the amount of bankruptcy cases, both consumer and business cases that are filed in front of Your Honor and in other bankruptcy courts.

I think that remand would certainly alleviate the Court's burden from having to hear this matter, which we believe is better suited to be heard in state court.

Your Honor, here, as I stated a minute ago, this bankruptcy case was filed and the lawsuit was removed within hours, less than two hours, of the scheduled Motion for Summary Judgment hearing. This timing is not coincidental. It was rather -- it was calculated. And it evidences the Plaintiffs' [sic] exacting attempt to forum-shop. The Defendants were not happy with how the case was going in front of the state court. The Defendants -- rather, they sought and wanted to find and receive a clean slate, which is why this

case was filed and why the lawsuit was removed to this Court. However, it doesn't mean that the Defendants can stay here based on their blatant forum shopping.

There are a total -- even after dismissal of the Plaintiffs' claims against the Debtor, there are a total of seven parties involved here, and six of which are nondebtors. This certainly advocates for remand and abstention as well.

Both comity and judicial economy favor the state court hearing this matter. Despite all of the Defendants' dilatory efforts here, this suit has actually progressed fairly quickly. At this point, there really are limited issues to be litigated, and the state court has intimate familiarity with the facts, the parties, the cases, the whole background here.

Lastly, there will be prejudice that occurs with respect to Plaintiffs if remand doesn't occur. Specifically, the Plaintiffs have requested and they are entitled to a jury trial in the state court lawsuit. To the extent the matter is not resolved with the Motion for Summary Judgment, because I believe it is the Defendants' position that, well, you know, the Plaintiffs are going to have a hearing on this MSJ, so it doesn't matter whether or not they're entitled to a jury trial.

However, Your Honor, the factor is whether or not there's going to be -- whether the plaintiff, the party, is entitled

to a jury trial. Here, we've requested a jury trial. We're entitled to a jury trial. And if the matter is not resolved via the MSJ hearing, then there needs to be a jury trial, and my client is entitled to one. And should they not get one, they will be prejudiced as a result.

Further, the costs associated with litigating in a new forum are certainly prejudicial to the Plaintiffs as well.

Your Honor, all of these factors weigh in favor of the Court exercising permissive abstention and equitable remand of the lawsuit, and as a result, based on all of this argument, we ask that the Court abstain, either under mandatory abstention and/or permissive abstention, and remand back to the state court for further determination.

And I can stop sharing my screen.

(Pause.)

MS. HOPKINS: Apologies. There we go.

THE COURT: Very good.

MS. HOPKINS: And I'm happy to address any questions that the Court may have.

THE COURT: All right. None at this time. We'll turn to Ms. Lindauer.

First, Ms. Lindauer, do you have any evidence you'd like to present in response to either the Motion to Dismiss or the Motion to Abstain and Remand?

MS. LINDAUER: Let me see what we've got here, Your

Honor. We did file an exhibit and witness list. Oh, let's see. So, Your Honor, Exhibit 1 is just the docket sheet for the adversary proceeding. Exhibit 2 is the notice of removal, which includes all of the -- I think the same things that Ms. Hopkins has already put in. I don't know if she included the original counterclaim. If she didn't, that's Exhibit 3. I'd like to go ahead and include that. That's Docket 20, Attachment 6.

MS. HOPKINS: We did conclude that, Your Honor, as Plaintiffs' Exhibit I. However, I don't oppose any of Ms. Lindauer's exhibits.

MS. LINDAUER: Okay. Well, then, Your Honor, that will make it easy. Let's just go ahead and admit Exhibits 1 through 8. That'll just include the entire record that we already have.

THE COURT: All right. Any objection to Debtor's Exhibits 1 through 8, which can be found at Docket No. 20?

MS. HOPKINS: No, Your Honor.

THE COURT: All right. Then Debtors' and Defendants' Exhibits 1 through 8 are each admitted.

(Defendants' Exhibits 1 through 8 are received into evidence.)

MS. LINDAUER: All right. Your Honor, I'm going to go through each of her issues. We've briefed this, as the Court knows, as well as filing an opposition. But the first

one I want to turn to is the question about dismissing the Debtor from the adversary proceeding.

So, the problem, Your Honor, with a voluntary dismissal of the Debtor from the adversary proceeding is that the Debtor has asserted, as you know, counterclaims. So, dismissal of the actual complaint does not dismiss the counterclaims that the Debtor may hold. And the problem that we have, and that's why this is a little bit more complicated than some of these cases that Ms. Hopkins has cited you to, is, in this particular instance, the Debtor is disputing the terms of the actual note that the Plaintiff is relying on.

I don't think there's going to be any real dispute that the pages, or at least one page of the note was changed after the note was signed. That issue has been raised, and it's the basis of the counterclaim that's been asserted. That would mean that basically there was no meeting of the minds as it relates to the actual terms of repayment of the note as between the Debtor and the Plaintiffs.

Again, remember, the Debtor is the one that signed the note, not these Guarantors.

So the problem that we have is as -- even if you dismiss the claims that Ms. Hopkins may have against the Debtor, the Debtor still has its claims against the Plaintiffs for questions regarding the validity of the note, the meeting of the minds, all of those related issues, and those just don't

go away.

Now, if she dismisses her claims against us with prejudice, maybe you get into a different issue there. But still, I don't think they've asked for that. But, again, the problem that we have is because the guaranties, along with the note itself, the guaranties rely on the language of the note. If you look at the actual language of the guaranties that have been admitted, they say that the guaranties guarantee the obligations under the note. And if the note is under attack, then these are secondary rights that they have against the Guarantors, so now what we're going to have is we're going to have two courts potentially deciding the same issue, because you're going to have to decide the counterclaims brought by the Debtor at some point and then you have a state court that's going to have to decide the validity of the guaranties that rely on the same notes.

Your Honor, what we pointed the Court to was, under Texas Civil Practice and Remedies Code 37.006, all persons who have a claim or interest that would be affected by the declaration must be parties. So you can't just split out one party and say, okay, the Debtor is going to stay in bankruptcy court and resolve its issues, the Guarantors are going to go to state court and resolve these issues, because you're going to have two courts basically deciding the same thing, which is why we objected to dismissal, because you can't really do what

they're asking you to do, that it doesn't create a multiplicity of issues between two different courts.

This is not a simple situation where you have a guaranty on a note where the note is not being challenged. What you have here is a note that's actually being challenged as to its validity, and whether it's void, voidable, invalid, or unenforceable are the questions that the Court has to decide. If the underlying note is not valid, then it raises a question about whether the underlying guaranties are also -- are not valid. And Mr. Kemp can address those.

But that's the reason we objected to the dismissal under Rule 41, was because it would create these -- this split, if you will, between what goes on in the bankruptcy court and what -- and so, in effect, you don't get rid of the adversary proceeding. What you would have is you would have an adversary proceeding that's proceeding on our counterclaims against the Plaintiffs to determine the validity of the underlying documents, and you have a similar issue in state court. So this is a little bit more complicated than just a note and a guaranty, where there's no challenge to the note itself.

And what was challenged was whether -- I'm sorry; I'm losing my voice a little bit -- whether that note is -- and I'm looking at Plaintiffs' Motion for Summary Judgment, Page 11 of 19. And in particular, Subparagraph B. And it says, A

guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of the primary obligor if the primary obligor fails to perform.

So what you see is you've got -- and remember, their summary judgment included the Debtor originally. It was the Debtor and the Guarantor. So now we're going to bifurcate that and it's just going to be a summary judgment on the Guarantors, which means that they're going to have to rewrite their summary judgment.

But, again, I think you bump up to this issue about whether you can decide the guaranteed debt, guaranteed indebtedness, when the guaranty says all indebtedness now or hereafter evidenced by or arising under the note. And we've clearly challenged the question regarding the validity of the note and whether, in fact, there is a valid debt obligation there.

So, Your Honor, in the first instance, we didn't think the Court should dismiss the Debtor, even though they've asked to dismiss the Debtor, because of the pending counterclaim, and also the problems I think you're going to run into in state court. And of course, you could say, well, that's for the state court judge to sort out. But in the first instance, it's for -- it's in front of you to resolve that.

So, here's the other thing on the dismissal issue, is they said, well, we want to go back to state court to hear our

Motion for Summary Judgment. And then they say, but we have a jury trial request. Well, that may well be, but they're not proceeding on a jury trial right now; they're proceeding on a Motion for Summary Judgment, which is clearly something you can decide. And you could decide it as to all parties. You could decide it as to the Debtor. You could decide it as to the Guarantors. So we have one court ruling on those issues. That would make a lot more sense than having some issues here and some issues there. But that's the main reason we objected to dismissal of the Debtor.

Now turning to other issues that they've raised, and I don't know how they get around a 37.006 requirement that all persons are supposed to be brought in the same action. So, again, it's to avoid this possible action here and action there. And they don't really address what happens to the Debtor and its counterclaim other than they're left pending in the bankruptcy court, --

THE COURT: Why wouldn't those, if --

MS. LINDAUER: -- which --

THE COURT: If the Court were to remand it back to state court, why wouldn't the counterclaims go back, go to state court? Although I realize they were filed initially --

MS. LINDAUER: Right.

THE COURT: -- here in the adversary proceeding, but if the Court were to remand the action back to state court,

why wouldn't it all go back to the state court?

MS. LINDAUER: Because that's not what they asked for. They asked to remand just the nondebtors back to state court.

What they want you to do is they want you to dismiss the Debtor out of the adversary as to their claims, leave the Debtor in the adversary as to its claims, and remand the Nondebtor Guarantors back to the state court to move forward with their summary judgment. And the problem is, I just don't see how you can do that. That's what Ms. Hopkins just argued to you.

All of the abstention issues, all of the remand issues she's arguing are premised on the fact that the Debtor is no longer a party to a lawsuit in state court. So what she's saying is, well, we want to go back to state court against these nondebtors, and as to the nondebtors you have a Nondebtor Plaintiff versus a Nondebtor Defendant, and therefore you should abstain and/or remand.

THE COURT: Where in the pleadings --

MS. LINDAUER: Unfortunately, --

THE COURT: Where in the pleadings does she ask only to remand claims against the Guarantors? The way I read the motion is remand the whole state court lawsuit back, so you remand --

MS. LINDAUER: No. I think she just put up on your

-- I think she just put up on her PowerPoint --

THE COURT: Well, that's a PowerPoint.

MS. LINDAUER: Let me look at --

THE COURT: I'm looking at the pleading. I'm looking at the pleading.

MS. LINDAUER: Well, I'll look at the pleading itself. Hang on.

(Pause.)

MS. LINDAUER: Yeah, it's -- no, it's the Second Amended. Let's go to the Second Amended. Let's see. Second Amended Motion. Hang on.

THE COURT: It's pretty clear to the Court that we abstain and remand the state court lawsuit.

MS. LINDAUER: Yeah, but after you've dismissed the Debtor out of the lawsuit, is the way I think she presented it to the Court, is that you would dismiss the Debtor out and then you would remand or abstain.

THE COURT: Okay. And --

MS. LINDAUER: Right?

THE COURT: Why can't the --

MS. LINDAUER: So the Debtor --

THE COURT: Why can't the Court do that? And even though the Debtor and the other Defendants have filed counterclaims, why don't they just go back to the state court, and the Debtor, it's a -- at that point, the Debtor is

asserting a direct --

MS. LINDAUER: Counterclaim.

THE COURT: -- declaratory judgment claim, to the best as I can understand it. The stay wouldn't apply to prevent that from proceeding. So the Debtor can pursue its declaratory judgment claim in the state court.

MS. LINDAUER: So, if I'm reading -- well, I hear you, but I'm just reading her pleadings. If I go to Page 11: Following dismissal of the Plaintiffs' claims against the Debtor -- this is Paragraph 23 -- this adversary proceeding neither invokes a substantive right provided by Title 11 nor does it only arise in the context of a bankruptcy case. Further, there is no related-to jurisdiction as to the outcome of the state court lawsuit (garbled) no longer have an effect on the administration of the bankruptcy case, as the Plaintiffs are not seeking liability against the Debtor; rather, just against the Nondebtor Defendants. Therefore, there's no subject matter jurisdiction for the Court to consider the state court lawsuit and remand as necessary.

So, her whole argument -- and look at Paragraph 24: Even if jurisdiction somehow exists, which the Plaintiffs dispute, the post-dismissal claims are not core, et cetera, et cetera.

So, her whole theory is premised on dismissing out the Debtor and then moving back to state court to go against the Guarantors. And so, Your Honor, obviously, we would argue --

THE COURT: All these -- but it says in Paragraph 21: All these claims, including the counterclaims, can be adjudicated post-dismissal independently from the Plaintiffs' prior claims against the Debtor.

MS. LINDAUER: Those would be counterclaims -- unless I'm wrong, Your Honor, I believe those are counterclaims in your court.

THE COURT: Well, right now, it's all in my court.

MS. LINDAUER: I don't see --

THE COURT: Right now, it's all in my court.

MS. LINDAUER: Right.

THE COURT: There's one lawsuit.

MS. LINDAUER: Yeah.

THE COURT: It's pending in this court. And --

MS. LINDAUER: Right.

THE COURT: -- once it arrived here, the Defendants filed counterclaims. But the Motion for Remand --

MS. LINDAUER: Correct.

THE COURT: -- has been filed. Why can't the -- why would I have to keep part of the adversary proceeding and why can't I just remand the entirety back to the state court? Why do I have to keep any of it?

MS. LINDAUER: Well, --

THE COURT: Because --

MS. LINDAUER: Well, first of all, that's not what

they asked for, but I hear you. But second of all, as between the Debtor and these parties, this would be a core proceeding, correct? I mean, you're determining the rights of --

THE COURT: Not necessarily. It's --

MS. LINDAUER: -- a creditor.

THE COURT: It's the Debtor's declaratory judgment action against the Plaintiffs. That's not a core proceeding.

MS. LINDAUER: Right, but where's -- wait a minute. So, you're saying dismiss their claims against the Debtor; the Debtor goes forward with its counterclaims in state court?

THE COURT: Why not?

MS. LINDAUER: Without their -- and then they have no right to assert any claims back? So it would be just our counterclaims going forward in state court?

THE COURT: They can't --

MS. LINDAUER: Because the stay's not lifted, so I just -- yeah.

THE COURT: Well, that's right. I mean, there's nothing to prevent the Debtor from arguing its declaratory judgment action. The stay doesn't apply to that since there are no claims against the Debtor.

If the Plaintiffs seek to again assert claims against the Debtor, they can't do so unless they get the stay lifted. Or --

MS. LINDAUER: Right.

THE COURT: -- file a claim in this court and then prosecute the claim in this court. But the argument that Ms. Hopkins made was the Plaintiffs have made a business decision; there's no reason to waste time and attorneys' fees in chasing an entity that doesn't have the ability to pay. Which kind of makes sense.

MS. LINDAUER: Well, yeah, except -- yeah. We would disagree that it has the ability to pay, but I understand what she said on that.

But Your Honor, you know, obviously, the Debtor does not desire to go back to state court, I hear that, on our counterclaims. I mean, we filed them in your court. I believe that they are core proceedings in your court. And therefore we don't --

THE COURT: How would they be core proceedings?

MS. LINDAUER: -- think they should go back.

THE COURT: How would they be core proceedings? It's a declaratory judgment action against the Plaintiffs.

MS. LINDAUER: To determine what the -- because to determine the validity and extent of a debt is a core proceeding. And that's exactly what we're looking at, is the validity and extent of a debt. Like I said, if she dismisses the Debtor with prejudice, that's maybe a different issue. But if she dismisses us without prejudice, then we go back and we have a state court determining the validity and the extent

of our debt, whereas --

THE COURT: And --

MS. LINDAUER: -- that's something that you would routinely would do.

THE COURT: But if -- then what if --

MS. LINDAUER: So, again, I --

THE COURT: But what if the Plaintiff hasn't filed a proof of claim or submitted itself to the jurisdiction of this Court?

MS. LINDAUER: I think by filing its Motion for Remand and Request for Abstention and Second Amended Motion to Dismiss, it's really put itself before this Court. I don't think, I mean, those are all going to be subject to informal claim arguments, but they clearly have put themselves before this Court on their motions and so you have them in front of you.

And at the end of the day, the Debtor does not desire to go back to state court, and whether you send the Guarantors back or not is a different story. But I just don't see how you can bifurcate this case into multiple pieces like that. I think what should happen is this Court could decide the summary judgment issues as to all parties, the Debtor and the nondebtor entities, and then, if in fact you don't grant a summary judgment, then you have a question about their right to a jury trial.

I mean, even based on their own letter from the court, they're not asking for a jury trial. They're asking for a setting on a summary judgment. You can decide a summary judgment.

Our only concern, Your Honor, is that all the parties need to be together in one place. They should not be split up in various places. And I think that to send the Debtor back to state court is problematic for a lot of reasons. But irrespective, we don't need to have all these entities split up. I don't think that works. So, and just dismissing the Debtor out of their lawsuit doesn't work. So there's got to be something different to be done here than what's been done.

And that was the main reason the Debtor removed the case to the bankruptcy court, was, if you go back, this isn't a new concept that they raised. If you look at their pleadings in state court, clearly, it was raised by JMJ and Mr. Barton in their response to the summary judgment that the notes were revised. It appears on the response to Plaintiffs' Motion for Summary Judgment. It appears at Page 9 of 122 that the notes were slip-sheeted. And it's in the actual response to the Motion for Summary Judgment.

So it's not something that was just made up at the eleventh hour to create a counterclaim. It was an argument that was being put forward in the state court and it's in -- now in the form of a counterclaim that's been asserted. And

so that's why, Your Honor, we think that you can't just dismiss the Debtor out. All the parties have to stay together. And we don't think that the Debtor should have to deal with a state court case. It should be able to deal with a bankruptcy court case.

So I think there are ways to have done this. I don't think that the way these Plaintiffs have asked you to do it works. And so the motion you have in front of you is a motion to dismiss the Debtor, and then, the way I read it, is to abstain or remand as to the nondebtors. And I just don't think you can get there.

Now, if they want to remand or abstain as to the Debtor, then I think we would have serious issues about that that I'm going to let Mr. Kemp address because he represents the Guarantors.

THE COURT: All right. Thank you. Mr. Kemp?

MR. KEMP: Thank you, Your Honor. Your Honor, Robert Kemp appearing for Mr. Barton and JMJ.

Our major problem here, Your Honor, is that if the case gets remanded and only the Guarantor is in the case, we won't have standing to assert the alteration of the note. There's a lot of Texas cases on that where the guarantors don't have the right to assert defenses of the -- of the maker of the note.

In addition to that, Your Honor, that would be a major penalty for us under Rule -- it's Federal Rule 41 -- Federal

Rule 41(a)(2). The basic purpose of that rule is to permit the plaintiff, with court approval, to voluntarily dismiss an action, so long as no other party will be prejudiced. Well, clearly, the Guarantor would be highly prejudiced if they're not able to assert that defense or if the maker of the note is not down there asserting that defense.

THE COURT: Well, that was -- Mr. Kemp, --

MR. KEMP: If the note is void, --

THE COURT: Mr. Kemp, I know you were sitting right next to Ms. Lindauer when I was asking her the question. The Debtor has filed a counterclaim. The Motion to Remand does seek to remand the litigation. So if the Court were to grant the motion, then your statement is not correct because the Debtor would, in fact, be a party to that litigation. It's filed a counterclaim.

MR. KEMP: And you're absolutely correct, Your Honor, if that were the motion before the Court, but I join Ms. Lindauer: That's not the motion before the Court. They only asked that the Debtor be dismissed and that the rest of the case be sent back, which, as I read it, would be the case against the Guarantors.

There's been a lot of discussion about forum shopping here, Your Honor. The fact is, in this case, this case originally started off, should have been in Dallas County. The Plaintiffs got Mr. Barton, under duress, to sign a

modification to the note moving it to Tarrant County. And we believe, if anybody has been forum shopping, it's been them.

Secondly, Your Honor, even though we've done some written discovery, they've never produced even a single document in response to our discovery requests, so we're left empty-handed here, which was one of the reasons we had to come down and file bankruptcy, because the Plaintiffs had not lived up to their obligations under the discovery rules.

So we're left empty-handed on some of this stuff, and really no explanation of how this note got slip-sheeted here without Mr. Barton or JMJ's knowledge or consent. So we kind of feel like we've been ambushed, and we're just looking for a fair forum to decide these issues.

We'd ask the Court to deny their request simply because the request that they've asked for is different than -- different than what Your Honor is considering. So, we don't think we've had, really, adequate time to even discuss that issue, Your Honor.

THE COURT: All right. Thank you, Mr. Kemp.

MR. KEMP: Yes, sir.

THE COURT: All right. Do you want to go to the -- do you want to -- arguments on the Motion to Remand and Abstain, or is that all above?

MR. KEMP: I'd rely upon what Ms. Lindauer said, Your Honor.

MS. LINDAUER: Yeah, I think -- I think it's -- I think you have all of it, Your Honor, --

THE COURT: Okay. All right.

MS. LINDAUER: -- in front of you.

THE COURT: All right. Let me --

MS. LINDAUER: I think it's just the Court's --

THE COURT: Let me --

MS. LINDAUER: How you want to proceed.

THE COURT: All right. Thank you very much. Let me -- and I appreciate the argument from all sides. Let me take about a five- to ten-minute recess. I want to consider all the arguments that have been made, look up a couple things. Then I'll come back hopefully with a ruling in about --

MS. HOPKINS: Your --

THE COURT: -- ten minutes. All right. The Court will be in recess.

MS. HOPKINS: Your Honor, respectfully, --

THE COURT: Yes?

MS. HOPKINS: -- would it be possible for me just to briefly clarify --

THE COURT: Oh, of course.

MS. HOPKINS: -- and point out --

THE COURT: Of course.

MS. HOPKINS: -- for the Court the specific relief that's requested?

I'm not exactly sure where counsel is -- where the misinterpretation is happening. But yes, we're certainly requesting that, you know, if the Debtor wants to pursue whatever counterclaims against the Plaintiffs, that's fine. That would follow -- any remand or abstention, those counterclaims would go to state court. I mean, they would follow. There's no -- there's no core matter here, as this is not -- you're not determining allowance or disallowance of claims filed against the estate. These aren't counterclaims with respect to claims that have been filed against the estate. Rather, we're seeking to dismiss the claims, only the causes of action, the Plaintiffs' causes of action, against the Debtor only.

And even if you look at our -- in our Second Amended Motion on Page 15, in the conclusion, we specify that we are asking that the Court enter an order granting the motion, dismissing their causes of action against the Debtor only, without prejudice, holding that the proposed order does not affect or impact any of the remaining claims in the above-referenced adversary proceeding, finding that no actions taken by Plaintiffs or 2999TC with respect to the proposed order shall be construed as an admission by any party, and abstaining and remanding the state court lawsuit to state court for further determination.

The state court lawsuit is defined as, yes, the lawsuit

that was filed pre-petition between the parties. However, anything that happens in this case -- for example, when the Debtor filed counterclaims -- those are now part of that definition of state court lawsuit, and any remand or abstention, we're specifically requesting that the whole lawsuit be remanded back to state court but for the Plaintiffs' causes of action against the Debtor. I just want to make sure that's clear.

Otherwise, if the Court has any questions. I mean, we would just simply ask that the Court dismiss the Plaintiffs' causes of action only against the Debtor only and remand and abstain this back to state court, the full entirety of the action but for the Plaintiffs' claims against the Debtor.

THE COURT: All right. Thank you very much.

MS. HOPKINS: Thank you.

THE COURT: The Court will be in recess for about five to ten minutes.

(A recess ensued from 4:19 p.m. until 4:27 p.m.)

THE COURT: All right. Good afternoon. Judge Mullin again. We are back on the record in the In re 2999TC LP, LLC bankruptcy case and Adversary Proceeding 20-4078, Tejas Group Ltd. versus 2999TC LP, LLC, et al.

All right. This will be the Court's ruling. The Court has reviewed and considered the Plaintiffs' Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain

and Remand to State Court and Brief in Support, which can be found at Adversary No. 12, which I'll refer to as both the Motion to Dismiss and the Motion to Abstain and Remand -- two separate motions, two separate rulings -- filed by the Plaintiffs, which are collectively referred to as the Plaintiffs.

The objection -- the Court has also reviewed the objection and response to Plaintiffs' Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only, which is the response filed by each of the Defendants, which include the Debtor, 2999TC LP, LLC, as well as two other Nondebtor Defendants, which I'll collectively call all of them the Defendants.

The Court has also reviewed and considered the Brief in Support of Objection and Response to Plaintiffs' Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only, which is the brief filed by each of the three Defendants, and that can be found at Docket No. 26.

The Court has also reviewed and considered the docket and filings in the Debtor's main bankruptcy case at Case No. 20-43204.

The Court has also considered the docket and filings in this adversary proceeding, which, again, are Adversary No. 20-4078, which I'll refer to this adversary as a whole as the "State Court Lawsuit."

The Court has also considered the documents which have

been admitted into evidence, subject, of course, to the limited offer of Movant's Exhibits A through I, and the Court has also considered the arguments of counsel made during the hearing.

The Court finds that it has jurisdiction to consider both the Motion to Dismiss and the Motion to Abstain and Remand pursuant to 28 U.S.C. Sections 157 and 1334.

First, I will address the Plaintiffs' Motion to Dismiss, which is seeking authority to dismiss without prejudice the Debtor Defendant from the State Court Lawsuit.

On April 21st, 2020, the Plaintiffs commenced the State Court Lawsuit against each of the Defendants in the Texas State Court. The State Court Lawsuit asserts causes of action against the Debtor Defendant for breach of certain notes and against the remaining Defendants for breach of certain guaranties.

On July 23rd, 2020, the Plaintiff filed a Motion for Summary Judgment against each of the Defendants. The hearing on the Motion for Summary Judgment was set for hearing on October 16th, 2020. Approximately two hours prior to the start of the hearing, the Debtor filed its voluntary petition initiating this Chapter 11 bankruptcy case. Shortly thereafter, the Debtor removed the State Court Lawsuit to this Court under Adversary Proceeding 20-4078.

Shortly after removing the State Court Lawsuit to this

Court, the Defendants then filed their 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton, Defendants', original counterclaims, which I'll refer to as the Defendants' Counterclaims. And that can be found at Adversary Proceeding No. 5.

Plaintiffs seek to dismiss the Debtor without prejudice pursuant to the Federal Rules of Civil Procedure 41(a)(2), which are made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7041.

In the Fifth Circuit, motions for voluntary dismissal should be freely granted unless the nonmoving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. I'll refer the parties to *Robles* -- R-O-B-L-E-S -- *v. Atlantic Sounding Company, Inc.* at 77 F.App'x 274, 275 (5th Cir. 2003).

When assessing legal prejudice, the Fifth Circuit has stated that, "The mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." That's in the *Davis v. Huskipower Outdoor Equipment Corp.* case, 936 F.2d 193, 199 (5th Cir. 1991).

Here, neither the Debtor nor any of the other Defendants have established harm or any viable or credible legal prejudice should the Debtor Defendant be dismissed from the State Court Lawsuit. There is no evidence that the Debtor

will lose any forum-specific defenses resulting from being dismissed from the State Court Lawsuit.

In addition, there is no evidence of abuse by the Plaintiffs.

Finally, if the Debtor Defendant is dismissed from the State Court Lawsuit, there is nothing to prevent the Debtor and the remaining Defendants from continuing to prosecute their declaratory judgment counterclaims against the Plaintiff, as such counterclaims are not stayed by the Section 362 automatic stay in the Debtor's bankruptcy case.

Therefore, the Court finds and concludes that the Plaintiffs have established good cause under Federal Rule of Civil Procedure 41(a)(2), made applicable to Federal Bankruptcy Rule 7041, to dismiss the Debtor from the State Court Lawsuit, and the Plaintiffs' Motion to Dismiss is hereby granted, without prejudice, over the Defendants' objection, because the Debtors and the other Defendants' counterclaims remain in the State Court Lawsuit for independent adjudication.

Next, the Court will address the Plaintiffs' Motion to Abstain and Remand. The Plaintiffs are requesting the Court to remand the State Court Lawsuit to the 141st Judicial District Court, Tarrant County, Texas, which, again, I'll refer to as the Texas State Court, from which it was removed, based on either mandatory abstention under 28 U.S.C. Section

1334(c)(2) or permissive abstention/equitable remand under 28 U.S.C. Section 1334(c)(1) and 28 U.S.C. Section 1452(b).

The Plaintiffs further assert that abstention and remand are necessary due to jurisdictional and constitutional authority issues.

For the reasons I'm about to explain, the Court will grant the Plaintiffs' Motion for Permissive Abstention and Equitable Remand.

First, in determining whether to abstain under Section 1334(c)(1), courts have developed a nonexclusive list of factors to be considered. These factors have been adopted in the Northern District of Texas. *See In re Lorax Corp.*, 295 B.R. 83, 95 (Bankr. N.D. Tex. 2003).

Second, under Section 1452(b), "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." Again, that's 28 U.S.C. Section 1452(b).

Permissive abstention and equitable remand are very similar, and courts often examine the following 14 factors when deciding to equitably remand a case removed under Section 1334(b). And, again, I'll refer the parties to *In re Ramirez*, 413 B.R. 621, 632 (Bankr. S.D. Tex. 2009).

The Court will now analyze those factors in turn.

Number one, the effect or lack thereof on the efficient administration of the estate if a court recommends abstention.

Here, there will be little if any effect on the efficient administration of the bankruptcy estate if the Court abstains or remands. This factor weighs in favor of permissive abstention and equitable remand.

Number two, the extent to which state law issues predominate over bankruptcy issues. Here, the only issues involved are state law issues. This factor favors permissive abstention and equitable remand.

Number three, the difficulty or unsettled nature of the applicable state law. Here, the issues do not appear to be unsettled or complex, and the Texas State Court deals with such issues on a regular basis. This factor also favors permissive abstention and equitable remand.

Number four, the presence of a related proceeding commenced in state court or other non-core bankruptcy. Here, the State Court Lawsuit was pending in the Texas State Court before the Debtor's bankruptcy case was filed and before the lawsuit was removed here. This factor slightly favors permissive abstention and equitable remand.

Number five, the jurisdictional basis, if any, other than 28 U.S.C. Section 1334. No other jurisdictional basis exists but for, arguably, Section 1334. This factor also favors permissive abstention and equitable remand.

Number six, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. The litigation

between the parties involves entirely state law issues and does not have a strong relationship to the Debtor's main bankruptcy case. This factor favors permissive abstention and equitable remand.

Number seven, the substance rather than the form of an asserted "core" proceeding. The substance of the pending claims are state law matters and issues. This factor favors permissive abstention and equitable remand.

Factor Number 8, the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court, with enforcement left to the bankruptcy court. The substance of the dispute here involves entirely state law matters, and there is no need to sever as there is no core bankruptcy matters involved. The factors favor permissive abstention and equitable remand.

Factor Number 9, the burden on the bankruptcy court's docket. This Court, of course, is willing and able to resolve the parties' disputes, but the evidence also suggests that the state court is also willing and able. The Court finds this factor is neutral.

Factor Number 10, the likelihood that the commencement of the proceeding in bankruptcy involves forum shopping by one of the parties. Arguably, both parties appear to be involved in forum shopping, so this factor is also neutral.

The existence of a right to jury trial. Plaintiffs have

requested and appear to have a right to a jury trial in the Texas State Court Lawsuit, at least with respect to their claims against the Nondebtor Defendants. This factor favors permissive abstention and equitable remand.

Factor Number 12, the presence in the proceeding of nondebtor parties. Five of the six parties are nondebtor parties. This factor slightly favors permissive abstention and equitable remand.

Factor Number 13, comity. Both comity and judicial economy favor the state forum, as the lawsuit was previously pending in front of it and the state court is familiar with the issues. This factor favors permissive abstention and equitable remand.

And finally, Factor Number 14, the possibility of prejudice to other parties in the action. The Plaintiff, on the one hand, and the Debtor and the Defendants allege possible -- the possibility of prejudice. So the Court finds this factor is neutral.

After weighing the relevant factors, the Court finds and concludes that permissive abstention and equitable remand are appropriate in this case.

Next, mandatory abstention. Because the Court has already determined that permissive abstention and equitable remand are appropriate in this case, the Court need not decide whether mandatory abstention even applies.

Therefore, the Plaintiffs' Motion to Abstain and for Equitable Remand is granted. The objection filed by the Defendants is overruled.

Ms. Hopkins, would you please prepare the proposed form of orders?

And if it's easier, you can simply recite that the Court stated orally and in open court its findings of fact and conclusions of law pursuant to Rule 52, which is incorporated by Bankruptcy Rule 7052, so you don't have to write them all down in the order. Just incorporate them by reference into each of the orders.

MS. HOPKINS: Yes, Your Honor. We can do that.

THE COURT: All right. And because the Court has, number one, granted the Motion to Dismiss the Debtor, that occurs first. The Court now is remanding the entirety of the state court litigation back to the state court. It appears that the status conference which is set in the underlying bankruptcy case is now moot.

Anything else for today?

MS. LINDAUER: No, Your Honor.

THE COURT: All right.

MR. KEMP: No, Your Honor.

MS. LINDAUER: Thank you.

THE COURT: Thank you very much.

MS. HOPKINS: No, Your Honor. Thank you.

THE COURT: With that, Court is adjourned. Thank you all very much.

(Conclusion of proceedings at 4:40 p.m.)

--oOo--

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

**/s/ Kathy Rehling** **12/15/2020**

______________________________________ ________________

Kathy Rehling, CETD-444 Date
Certified Electronic Court Transcriber

INDEX

PROCEEDINGS 3

WITNESSES

-none-

EXHIBITS

| | | |
|---|---|---|
| Judicial Notice to be Taken | | 4 |
| Plaintiffs' Exhibits A through J | Received | 7 |
| Defendants' Exhibits 1 through 8 | Received | 24 |

RULINGS

Second Amended Motion to Dismiss Defendant 2999TC LP, LLC Only and Abstain and Remand to State Court filed by Plaintiffs Blackfoot Interest, Ltd., L. Allen Hodges III, LAH III Family Specific Interest, Ltd., Tejas Group, Ltd. (#12) - *Granted* 43

Status Conference - *Mooted* 52

END OF PROCEEDINGS 53

INDEX 54