Civil Case No. 4:20-cv-1256-P

Adv Case No. 20-4078
Bankruptcy Case No. 20-43204-mxm11

Appellant – 2999TC, LLC, et

Appellees – L. Allen Hodges III, et al

Volume 6 – Appellee Record

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| IN RE:<br><br>2999TC, LLC,<br><br>*Debtor.* | Case No. 20-43204-MXM11 |
| L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GRP., LTD., LAH III FAMILY SPECIFIC INTEREST, LTD. AND BLACKFOOT INTEREST, LTD.,<br><br>*Plaintiffs-Appellees,*<br><br>VS.<br><br>2999TC LP, LLC, JMJ DEVELOPMENT, LLC AND TIM BARTON,<br><br>*Defendants-Appellants.* | ADVERSARY NO. 20-04078<br><br>CIVIL CASE NO: 4:20-CV-01256-P |

# INDEX

## APPELLEES' DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED IN THE APPELLATE RECORD

COME NOW L. Allen Hodges III, as independent executor of the Estate of Leland A. Hodges Jr., Tejas Grp., Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. ("Appellees") and file this Designation of Additional Items to be Included in the Appellate Record pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(2).

**I.**

Appellees hereby designate the following items for inclusion in the record on appeal from Adversary Cause No. 20-04078:

| | Docket No. | File Date | Description |
|---|---|---|---|
| Vol 5 Page 863 | 20 | 10/30/2020 | Witness and Exhibit List filed by Defendant 2999TC LP, LLC and Attachments 1-11 |
| Vol 8 Pg 1605 | 27 | 11/13/2020 | Amended Witness and Exhibit List … filed by Plaintiffs and Attachments 1-10 |
| Pg 1897 | 32 | 11/18/2020 | Order granting motion for remand |
| Pg 1900 | 34 | 11/19/2020 | Clerk's correspondence requesting Amend notice of appeal or file another notice of appeal |

Dated: December 15, 2020

Respectfully submitted,

*/s/ Katherine T. Hopkins*

Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com

ATTORNEYS FOR PLAINTIFFS-APPELLEES

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served via ECF notification on December 15, 2020, on all parties receiving electronic notification.

*/s/ Katherine T. Hopkins*
Katherine T. Hopkins

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

# EXHIBIT A-5

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

______________________________
Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT A-6

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and The Estate of Leland A. Hodges Jr. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

_______________________________
Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



_______________
Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT B

Cause Number 141-316567-20

L. ALLEN HODGES III, ET AL

VS

2999TC LP, LLC, ET AL

# OFFICER'S RETURN

Received this Citation By Certified Mail on the 23rd day of April, 2020 at 8:04 AM ; and executed at B/S MEMBER-TIM BARTON 1755 WITTINGTON PL STE 340 DALLAS TX 75234

within the county of ______ State of TX on the 28th day of April, 2020 by mailing to the within named 2999TC LP LLC a true copy of this Citation By Certified Mail together with the accompanying copy of:

PLAINTIFF'S ORIGINAL PETITION

Authorized Person/Constable/Sheriff: Thomas A. Wilder
100 N CALHOUN
FORT WORTH TX 76196-0402

County of Tarrant, State of Texas

By Yolanda E. Garza Deputy

Fees $ 75.00 YOLANDA GARZA

(Must be verified if served outside the State of Texas)

State of ______ County of ______

Signed and sworn to by the said ______ before me this ______

to certify which witness my hand and seal of office

(Seal) ESTABLISHED — DISTRICT COURT OF TARRANT COUNTY, TEXAS

Victoria [signature]

County of Tarrant, State of Texas

*14131656720000009*

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

ORIGINAL

*CITATION* *Cause No. 141-316567-20*

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: 2999TC LP LLC

B/S REG AGENT-INCORP SERVICES INC 919 N MARKET ST STE 950 WILMINGTON, DE 198

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

FILED TARRANT COUNTY 2020 MAY -4 PM 4:00 THOMAS A. WILDER DISTRICT CLERK

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino Deputy
TAMARA COLACINO

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000009*

Received this Citation on the ______ day of ________________, ______ at ______ o'clock ___M; and executed at ________________ within the county of ____________, State of ________ at ______ o'clock ___M on the ______ day of ____________, ______ by mailing to the within named ____________________

a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION having first endorsed on same the date of delivery.

Deputy/Constable/Sheriff: ____________________

County of ____________ State of __________ By ____________________ Deputy

Fees $______

State of ____________ County of ____________________ (Must be verified if served outside the State of Texas)

Signed and sworn to by the said ____________________ before me this ____ day of ________, ____

to certify which witness my hand and seal of office

(Seal)

County of ______________, State of ____________

7019 0160 0001 0222 0779

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

DOCUMENT PRODUCTION

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage
$
Total Postage and Fees
$7.35

Postmark Here: APR 23 2020 DALLAS TX 75220

Sent To: B/S REG AGENT-INCORP SERVICES INC
Street and Apt. No.: 919 N MARKET ST STE 950
City, State, ZIP+4®: WILMINGTON, DE 19801

141-316567-20 DP/TJC/CM

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7019 0160 0001 0222 0779

FILED
TARRANT COUNTY
2020 MAY -4 PM 4:00
THOMAS A. WILDER
DISTRICT CLERK

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

2999TC LP LLC
B/S REG AGENT-INCORP SERVICES INC
919 N MARKET ST STE 950
WILMINGTON, DE 19801

141-316567-20 DP/TJC/CM

9590 9402 4878 9032 3450 65

2. Article Number (Transfer from service label)
7019 0160 0001 0222 0779

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
x C119 ☒ Agent ☐ Addressee

B. Received by (Printed Name): AA
C. Date of Delivery: 4-28-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- Mail
- Mail Restricted Delivery
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

*CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000009*

ORIGINAL

001138

# EXHIBIT C

# Delaware

The First State



***I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "2999TC LP, LLC" AS RECEIVED AND FILED IN THIS OFFICE.***

***THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:***

***CERTIFICATE OF FORMATION, FILED THE TENTH DAY OF SEPTEMBER, A.D. 2019, AT 2:45 O`CLOCK P.M.***

***AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "2999TC LP, LLC".***

Jeffrey W. Bullock, Secretary of State

7602115 8100H
SR# 20205435314

Authentication: 203030110
Date: 06-02-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

# STATE OF DELAWARE
# CERTIFICATE OF FORMATION
# OF LIMITED LIABILITY COMPANY

The undersigned authorized person, desiring to form a limited liability company pursuant to the Limited Liability Company Act of the State of Delaware, hereby certifies as follows:

1. The name of the limited liability company is 2999TC LP, LLC.

2. The Registered Office of the limited liability company in the State of Delaware is located at 919 North Market Street, Suite 950 (street), in the City of Wilmington, Zip Code 19801. The name of the Registered Agent at such address upon whom process against this limited liability company may be served is Incorp Services, Inc..

By: [signature]
Authorized Person

Name: Vance McMurry
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:45 PM 09/10/2019
FILED 02:45 PM 09/10/2019
SR 20196961406 - File Number 7602115

# EXHIBIT D

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**CERTIFICATE OF LAST KNOWN ADDRESSES**

TO THE CLERK OF THE COURT:

Plaintiff certifies to the Clerk of this Court that the last known addresses of Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton in the above-entitled and numbered cause against whom a default judgment is requested to be rendered, are as follows:

1. 2999TC LP, LLC
   c/o Elizabeth Brandon
   **REED SMITH LLP**
   2501 N. Harwood St, Ste. 1700
   Dallas, TX 75201

2. JMJ Development, LLC
   Attn: Tim Barton, CEO
   1755 Wittington Place, Suite 340
   Dallas, Texas 75234

3. Tim Barton
   3525 Arrowhead Drive.
   Dallas, Texas 75204

Respectfully submitted,

***/s/ Joakim G. Soederbaum***

Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

# EXHIBIT E

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 141-316567-20*

FILED
TARRANT COUNTY
5/1/2020 1:09 PM
THOMAS A. WILDER
DISTRICT CLERK

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: JMJ DEVELOPMENT LLC

B/S REG AGENT-ONE AGENT TEXAS LLC 13901 MIDWAY RD STE 102 DALLAS, TX 75244-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino
TAMARA COLACINO

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000005*

Received this Citation on the 23rd day of April, 2020 at 5:00 o'clock P M; and executed at 1755 Wittington Pl. Ste 340 Dallas, TX 75234 within the county of Dallas, State of Texas at 3:00 o'clock P M on the 30th day of April, 2020 by delivering to the within named (Def.): JMJ Development LLC defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION, having first endorsed on same the date of delivery. by taping to the door of the office pursuant to Rule 106(b), with order for Substitute Service attached.

Authorized Person/Constable/Sheriff: Christopher LaFountain PSC: 16473 (3-31-21)
County of Tarrant State of Texas By [signature] Deputy

Fees $____
State of TX County of Tarrant (Must be verified if served outside the State of Texas)
Signed and sworn to by the said C. LaFountain before me this 1st day of May, 2020
to certify which witness my hand and seal of office
(Seal) CHRISTOPHER J. FIORE ID #11826697 My Commission Expires December 22, 2023

[signature]
County of Tarrant, State of TX

# *CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

141-316567-20
FILED
TARRANT COUNTY
9/4/2020 12:27 PM
THOMAS A. WILDER
DISTRICT CLERK

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

# CITATION

*Cause No. 141-316567-20*

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: JMJ DEVELOPMENT LLC

B/S REG AGENT-ONE AGENT TEXAS LLC 13901 MIDWAY RD STE 102 DALLAS, TX 75244-

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino
TAMARA COLACINO

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000005*

Received this Citation on the 24th day of April, 2020 at 1 o'clock P M; and executed at 7311 Wittington Place (#340) Dallas, TX 75254 within the county of Dallas, State of TX at 2:00 o'clock P M on the 1st day of May 2020 by delivering to the within named (Def.) JMJ Development LLC defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION, having first endorsed on same the date of delivery. *VIA CERTIFIED MAIL, FIRST CLASS MAIL AND EMAIL TO TBARTON@JMJDEVELOPMENT.COM PER RULE 106 ORDER (WITH ORDER ATTACHED) TO EACH TO BOARD CHAIRMAN AND CEO TIM BARTON

Authorized Person/Constable/Sheriff: C.O. Fiore PSC#488 (7-31-20)
County of Tarrant State of TX By ______ Deputy

Fees $______

State of TX County of Tarrant (Must be verified if served outside the State of Texas)
Signed and sworn to by the said C.O. Fiore before me this 4th day of May, 2020 to certify which witness my hand and seal of office

(Seal)
TAMMY JO BERRYMAN
Notary Public, State of Texas
Comm. Expires 05-23-2023
Notary ID 11905245

Tammy Berryman
County of Tarrant, State of TX

001148

# *CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000005*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

DISTRICT COURT OF TARRANT COUNTY, TEXAS
A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

# EXHIBIT F

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Ruth R. Hughs
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

JMJ DEVELOPMENT, LLC
Filing Number: 801578251

Change of Registered Agent/Office — March 05, 2020

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on June 02, 2020.

Ruth R. Hughs
Secretary of State

**Form 401**

Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

**Filing Fee: See Instructions**

## Statement of Change of Registered Office/Agent

**Filed in the Office of the Secretary of State of Texas**
**Filing #: 801578251 03/05/2020**
**Document #: 953095000003**
**Image Generated Electronically for Web Filing**

### Entity Information

The name of the entity is :

**JMJ DEVELOPMENT, LLC**

The file number issued to the entity by the secretary of state is: **801578251**

The registered agent and registered office of the entity as currently shown on the records of the secretary of state are:

**Tim Barton**

**13901 Midway Rd, Ste 102, LB 243, Dallas, TX, USA 75244**

### Change to Registered Agent/Registered Office

The following changes are made to the registered agent and/or office information of the named entity:

Registered Agent Change

☑ A. The new registered agent is an organization by the name of:

**ONE Agent Texas, LLC**

OR

☐ B. The new registered agent is an individual resident of the state whose name is:

Registered Office Change

☑ C. The business address of the registered agent and the registered office address is changed to:

**13901 Midway Rd, Ste 102, Dallas, TX, USA 75244**

The street address of the registered office as stated in this instrument is the same as the registered agent's business address.

Consent of Registered Agent

☐ A. A copy of the consent of registered agent is attached.

☑ B. The consent of the registered agent is maintained by the entity.

### Statement of Approval

The change specified in this statement has been authorized by the entity in the manner required by the BOC or in the manner required by the law governing the filing entity, as applicable.

### Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: **March 5, 2020** **Saskya Bedoya**

Signature of authorized person(s)

**FILING OFFICE COPY**

# EXHIBIT G

FILED
TARRANT COUNTY
5/1/2020 1:09 PM
THOMAS A. WILDER
DISTRICT CLERK

THE STATE OF TEXAS
DISTRICT COURT, TARRANT COUNTY

*CITATION* *Cause No. 141-316567-20*

L. ALLEN HODGES III, ET AL
VS.
2999TC LP, LLC, ET AL

TO: TIM BARTON

1755 WITTINGTON PL STE 340 DALLAS, TX 75234-
OR WHEREVER HE IS FOUND

You said DEFENDANTS are hereby commanded to appear by filing a written answer to the PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION at or before 10 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service hereof before the 141st District Court,100 N CALHOUN, in and for Tarrant County, Texas, at the Courthouse in the City of Fort Worth, Tarrant County, Texas said PLAINTIFFS being

L ALLEN HODGES, III, TEJAS GROUP LTD, LAH III FAMILY SPECIFIC INTEREST LTD, BLACKFOOT INTEREST LTD

Filed in said Court on April 22nd, 2020 Against
2999TC LP LLC, JMJ DEVELOPMENT LLC, TIM BARTON

For suit, said suit being numbered 141-316567-20 the nature of which demand is as shown on said PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION a copy of which accompanies this citation.

DEE J KELLY, JR
Attorney for L ALLEN HODGES, III Phone No. (817)332-2500
Address 201 MAIN ST STE 2500 FORT WORTH, TX 76102

Thomas A. Wilder, Clerk of the District Court of Tarrant County, Texas. Given under my hand and the seal of said Court, at office in the City of Fort Worth, this the 22nd day of April, 2020.

By Tamara Colacino
TAMARA COLACINO

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

NOTICE: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 AM. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Thomas A. Wilder, Tarrant County District Clerk, 100 N CALHOUN, FORT WORTH TX 76196-0402

## OFFICER'S RETURN *14131656720000006*

Received this Citation on the 23rd day of April, 2020 at 5:00 o'clock P M; and executed at 3525 Arrowhead Dr. Dallas, Tx 75204 within the county of Dallas, State of Texas at 3:50 o'clock P M on the 30th day of April, 2020 by delivering to the within named (Def.): Tim Barton defendant(s), a true copy of this Citation together with the accompanying copy of PLAINTIFFS' ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION, having first endorsed on same the date of delivery. by delivering to Jeremy, who is at least 16 years of Age, pursuant to Rule 106(b) with Order for Substitute Service attached.

Authorized Person/Constable/Sheriff: Christopher LaFountain PSC:16473
County of Tarrant State of Texas By Christopher LaFountain Deputy (3-31-21)

Fees $
State of TX County of Tarrant (Must be verified if served outside the State of Texas)
Signed and sworn to by the said C LaFountain before me this 1st day of May, 2020
to certify which witness my hand and seal of office
(Seal)

CHRISTOPHER J. FIORE
ID #11826697
My Commission Expires
December 22, 2023

County of Tarrant, State of TX

*CITATION*

Cause No. 141-316567-20

L. ALLEN HODGES III, ET AL

VS.

2999TC LP, LLC, ET AL

ISSUED

This 22nd day of April, 2020

Thomas A. Wilder
Tarrant County District Clerk
100 N CALHOUN
FORT WORTH TX 76196-0402

By TAMARA COLACINO Deputy

DEE J KELLY, JR
Attorney for: L ALLEN HODGES, III
Phone No. (817)332-2500
ADDRESS: 201 MAIN ST STE 2500

FORT WORTH, TX 76102

*CIVIL LAW*

*14131656720000006*
SERVICE FEES NOT COLLECTED
BY TARRANT COUNTY DISTRICT CLERK
ORIGINAL

DISTRICT COURT OF TARRANT COUNTY, TEXAS

A CERTIFIED COPY
ATTEST: 04/22/2020
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: /s/ Tamara Colacino

# EXHIBIT H

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**SERVICE MEMBERS' AFFIDAVIT OF JOAKIM G. SOEDERBAUM**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned authority, on this day appeared Joakim G. Soederbaum, who is personally known by me, and after first being duly sworn according to law, upon his oath deposed and said:

1. "My name is Joakim G. Soederbaum. I am over eighteen years of age, of sound mind, and am legally competent to make this Affidavit. I have personal knowledge of the facts stated within this Affidavit, and each fact is true and correct.

2. "I am an attorney licensed to practice law in the state of Texas, and am an associated with the firm of Kelly Hart & Hallman LLP, which was retained by Plaintiffs L. Allen Hodges III, as Independent Executor of the Estate of Leland A. Hodges Jr., Tejas Group, Ltd.,

LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd., to provide legal representation in the above-referenced matter.

3. "Defendant, Tim Barton, is not in military service as defined in the Service Members Civil Relief Act (formerly known as the Soldier's and Sailor's Civil Relief Act of 1940). Attached as **Exhibit H-1** to this Affidavit are the original verifications that I obtained from the Defense Manpower Data Center website confirming such fact.

4. "Defendant, JMJ Development, LLC, is not in military service as defined in the Service Members Civil Relief Act (formerly known as the Soldier's and Sailor's Civil Relief Act of 1940).

5. "Defendant, 2999TC LP, LLC, is not in military service as defined in the Service Members Civil Relief Act (formerly known as the Soldier's and Sailor's Civil Relief Act of 1940).

"FURTHER, AFFIANT SAYETH NOT."

Joakim G. Soederbaum

SUBSCRIBED AND SWORN TO BEFORE ME on the 5th day of June, 2020 to certify which witness my hand and official seal.

Notary Public in and for the State of Texas

JOHN R. LEWIS
Notary Public
STATE OF TEXAS
Notary ID # 124717271
My Comm. Exp. March 29, 2024

Department of Defense Manpower Data Center

Results as of : Jun-03-2020 03:40:39 PM

SCRA 5.4

# Status Report
# Pursuant to Servicemembers Civil Relief Act

SSN:
Birth Date: Aug-XX-1963
Last Name: BARTON
First Name: TIM
Middle Name: L
Status As Of: Jun-03-2020
Certificate ID: 4HGVXM9YMFJPV9G

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Jun-03-2020 03:46:40 PM

SCRA 5.4

# Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:
Birth Date: Aug-XX-1963
Last Name: BARTON
First Name: TIMOTHY
Middle Name: L
Status As Of: Jun-03-2020
Certificate ID: GWGKJ6G44TT4X7G

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

Michael V. Sorrento

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

# EXHIBIT I

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| v. | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT OF JOAKIM SOEDERBAUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Joakim Soederbaum, a person known to me who after being duly sworn, deposed as follows:

1. "My name is Joakim Soederbaum. I am over twenty-one (21) years of age, have never been convicted of a felony, and am fully competent to testify to, and have personal knowledge of the matters stated in this Affidavit. Every statement of fact contained herein is within my personal knowledge and true and correct. I am a licensed attorney in the State of Texas and currently work at the law firm of Kelly Hart & Hallman LLP ('KHH'). My personal knowledge of the facts stated herein has been derived from the performance of my duties as one of the attorneys for L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, 'Plaintiffs'), and my review of the file, pleadings, motions, fee statements, and other papers associated with this cause.

2. "Plaintiffs employed KHH's services in connection with their efforts to protect their rights and interests in connection with a loan they made to 2999TC LP, LLC ('2999TC') in or around September of 2019, including but not limited to the litigation of the claims asserted in

the above-styled cause against 2999TC, JMJ Development, LLC ('JMJ'), and Tim Barton ('Barton') (all collectively, 'Defendants'). I have reviewed the file, pleadings, motions, fee statements, and other papers associated with this matter, including but not limited to Plaintiffs' Motion for Default Judgment and the exhibits attached thereto (the 'Motion'). The 204.5 hours which were expended for the purpose of protecting Plaintiffs' rights and interests in this matter as of June 4, 2020 included, but were not limited to, the following procedures

i) Fact gathering;

ii) Preparation and review of loan documents;

iii) Documentation of loan collateral;

iv) Preparation of several notices to Defendants concerning their various defaults in connection with the loan;

v) Drafting of pleadings;

vi) Legal research;

vii) Review of relevant documents;

viii) Applying for and obtaining a temporary restraining order against Defendants;

ix) Prepare and file a motion for substitute service and extension of the temporary restraining order;

x) Preparing for the hearing on Plaintiffs' application for a temporary injunction;

xi) Communications with Defendants' transactional counsel;

xii) Communications with counsel for 2999TC;

xiii) Communications with Barton and JMJ;

xiv) Prepare and file two unopposed motions to extend the temporary restraining order;

xv) Conferring with the client;

xvi) Reviewing time records and fee statements;

xvii) Preparing Plaintiffs' Motion and supporting documents; and

xviii) Pursuing settlement efforts and negotiations.

3. "The aforementioned 204.5 hours were expended by the following attorneys at their specified billing rates, as follows:

| Name | Hours Billed | Hourly Billing Rate | Total Fees |
|---|---|---|---|
| Dee Kelly | 7.8 | $595.00 | $4,641.00 |
| Brandon Hill | 41.6 | $450.00 | $18,720.00 |
| Joakim G. Soederbaum | 130.7 | $325.00 | $42,477.50 |
| Judy Collins | 24.4 | $210.00 | $5,124.00 |
| TOTAL | 204.5 | *** | $70,962.50 |

4. "Defendants previously submitted payment of $12,795.00 toward the fees incurred by Plaintiffs. Crediting that payment toward the fees incurred by Plaintiffs through June 4, 2020, leaves an outstanding balance of $58,167.50. Defendants have made no further payments toward these fees and are entitled to no other offsets or credits.

5. "In the event of an appeal by one or more of the Defendants of a judgment rendered in Plaintiffs' favor, Plaintiffs will incur reasonable and necessary attorney's fees as follows: (1) at least $20,000 to respond to an appeal to the Second Court of Appeals of Texas and to prepare for and present oral argument; (2) at least $10,000 to respond to or file a petition for review with the Texas Supreme Court; and (3) at least $20,000 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument.

6. "Dee Kelly is a partner at KHH. He graduated from The University of Texas Law School in 1985 and has been a licensed attorney in the State of Texas since that time. Mr. Kelly has experience representing corporate and individual clients in a wide variety of business litigation in state and federal courts, including throughout Texas.

7. "Brandon Hill is a partner at KHH. He graduated from the Texas Tech University School of Law in 2006 and has been a licensed attorney in the State of Texas since that time. Mr. Hill has experience representing corporate and individual clients in a wide variety of transactional matters, including different forms of both secured and unsecured transactions and real estate developments.

8. "Judy Collins has an Associate's Degree in paralegal studies from an ABA approved college and has been performing substantive legal work as a litigation legal assistant with Kelly Hart & Hallman LLP for more than 11 years. Her education and 20 years of experience as a legal assistant qualify her to perform substantive legal work. The aforementioned hours that Ms. Collins spent on this case were spent performing substantive legal work under the direction and supervision of an attorney, including research and preparation of court documents.

9. "I am an associate attorney with KHH. I have been licensed to practice in Texas since 2014 and have been practicing law in Texas, including in and around Travis County and

Tarrant County, Texas, since 2014, primarily in the area of complex commercial litigation. Prior to joining KHH, I spent one year clerking for the Honorable Justice Debra Lehrmann at the Supreme Court of Texas, working on a broad variety of complex legal issues. In my practice, I have become personally familiar with the reasonable and customary rates of fees charged in the Tarrant County legal market, particularly the fees charged in litigation. The fees that have been charged in this case are customarily charged in this area for the same or similar services for attorneys that have worked on this case considering their experience, reputation, and ability, as well as the type of controversy, the time limitations imposed, and the nature and length of the firm's relationship with Plaintiffs.

10. "The fees set forth in Paragraphs 2 through 5 above are reasonable and necessary in protecting Plaintiffs' rights and interests in this matter, including prosecuting Plaintiffs' claims against Defendants. In reaching my conclusions and opinions, I have considered each of the factors set out in TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, (STATE BAR RULES, art. X, § 9). Specifically, I have considered the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

I have also considered the decisions of the Texas Supreme Court in *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (dealing with segregation in multi-claim cases); *Arthur Anderson & Co. v. Perry Equipment*, 925 S.W.2d 812 (1997) (relating to fee shifting in general); and *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991), modified on other grounds, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). My conclusions and opinions regarding the reasonableness and necessity of the attorney's fees incurred by Plaintiffs in connection with the prosecution of their claims against Defendants take into account Plaintiffs' obligation to segregate the fees incurred to the extent required by law and allowed by the circumstances. It is my opinion that all legal services provided to Plaintiffs in connection with these matters as summarized above have been incurred for the purpose of protecting Plaintiffs' rights and interests in this matter, including but not limited to Plaintiffs' claims against

Defendants for breach of the promissory notes and guaranties. Because the notes and guaranties at issue expressly provide for Plaintiffs' recovery of such fees, Plaintiffs are under no obligation to segregate their fees and are seeking 100% of the attorney's and paralegal's fees identified above. Even assuming Plaintiffs would otherwise have an obligation to segregate the fees incurred against 2999TC from those incurred against Barton and JMJ, the guaranties at issue make expressly clear that Barton and JMJ are liable for all amounts owed by 2999TC under the notes, and the factual circumstances giving rise to the claims against JMJ and Barton are so intertwined with the factual circumstances giving rise to the claims against 2999TC that segregation would be impossible. Despite my opinions on these matters, the hours and fees set forth in paragraphs 2-4 above reflect a discount of $3,598.00 worth of additional work on this matter.

11. "Attached as Exhibit I-1 to Plaintiffs' Motion is a true and correct copy of a printout from website for the Texas Secretary of State obtained by KHH on June 5, 2020. Attached as Exhibits I-2 through I-4 to Plaintiffs' Motion are true and correct copies of emails I sent and received in connection with this matter. Finally, attached as Exhibit I-5 to Plaintiffs' Motion is a true and correct copy of a screen shot from website for the Delaware Secretary of State obtained by KHH on June 2, 2020.

"FURTHER AFFIANT SAYETH NOT."

JOAKIM SOEDERBAUM

SWORN TO and SUBSCRIBED before me by Joakim Soederbaum on the 5th day of June, 2020, to certify which witness my hand and official seal.

Notary Public in and for the State of Texas

JOHN R. LEWIS
Notary Public
STATE OF TEXAS
Notary ID # 124717271
My Comm. Exp. March 29, 2024

# EXHIBIT I-1

# TEXAS SECRETARY of STATE
## RUTH R. HUGHS

**FIND ENTITY NAME SEARCH**

This search was performed with the following search parameter:
**ENTITY NAME :** 2999TC LP

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|---|---|---|---|---|---|---|
| | 803327854 | 2999TC JMJ LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |
| | 803387209 | 2999TC Acquisitions, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | In use |
| | 803387231 | 2999TC Acquisitions MZ, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | In use |
| | 803387209 | MO 2999TC, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | Prior |
| | 803387231 | MO 2999TC MZ, LLC | Foreign Limited Liability Company (LLC) | In existence | Legal | Prior |

Return to Order | New Search

---

Instructions:

- To view additional information pertaining to a particular filing select the number associated with the name.
- To place an order for additional information about a filing select the radial button listed under 'Mark' that is associated with the entity and press the 'Order' button.

001171

# EXHIBIT I-2

**Judy Collins**

**From:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Sent:** Wednesday, May 27, 2020 6:03 PM
**To:** Joakim Soederbaum; Tim Barton
**Cc:** Purcell, Bradley
**Subject:** RE: Re:

Thanks, Joakim. For the company, we construe the Supreme Court's Emergency order to modify the service and related answer deadlines. We intend to file an answer on June 1.

**Elizabeth C. Brandon**
Partner
email@reedsmith.com
Direct: +1 469 680 4212

**Reed Smith LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: +1 469 680 4200
F: +1 469 680 4299
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Wednesday, May 27, 2020 5:49 PM
**To:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>; Tim Barton <tbarton@jmjdevelopment.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>
**Subject:** RE: Re:

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

Elizabeth,

Here is what I have:

2999TC LP, LLC was mailed out via CMRRR by the clerk on 4/23/20. Adding three additional days to the 20 makes it 5/16/20 and the first following Monday 5/18/20.

JMJ Development was sub served via posting on the door on 4/30/20 and going out in the mail on 5/1/20. Adding 20 days, the first following Monday was 5/25/20.

Mr. Barton was served via hand delivery to someone over 16 years of age on 4/30/20. Adding 20 days, the first following Monday was 5/25/20 (which was Memorial Day).

If I am missing something, please let me know.

Joakim

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Wednesday, May 27, 2020 4:29 PM
**To:** Joakim Soederbaum; Tim Barton
**Cc:** Purcell, Bradley
**Subject:** RE: Re:

Joakim,

We have the answer deadline to be June 1, not last week. How are you calculating?

**Elizabeth C. Brandon**
Partner
email@reedsmith.com
Direct: +1 469 680 4212

**Reed Smith LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: +1 469 680 4200
F: +1 469 680 4299
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Wednesday, May 27, 2020 4:26 PM
**To:** Tim Barton <tbarton@jmjdevelopment.com>; Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Subject:** RE: Re:

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

Good afternoon,

Our records indicate that the deadline for 2999TC to file an answer was last Monday, May 18, and the deadline for Mr. Barton and JMJ was yesterday, May 26. Please advise as to whether the various defendants will be filing their answers this week.

Thank you,

Joakim

**Joakim Soederbaum**
*Attorney*

KELLY HART
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
*joakim.soederbaum@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Tuesday, May 19, 2020 8:59 AM
**To:** Joakim Soederbaum; Brandon, Elizabeth C.
**Subject:** Re:

I affirmative state that myself on my own behalf and on behalf of JMJ Development, LLC agree to the request as set forth in the attached motion (1) for the extension of the existing temporary restraining order, and (2) that the hearing on the request for a temporary injunction be moved to 9:30 a.m. on June 16, 2020

Agreed
Tim Barton
Sent from my BlackBerry 10 smartphone.

**From:** Joakim Soederbaum
**Sent:** Tuesday, 19 May 2020 8:33 AM
**To:** Tim Barton; Brandon, Elizabeth C.
**Subject:** RE: Re:

Thank you both. I will get this finalized and presented to the Court. Mr. Barton, I am assuming that the question mark at the end of your affirmation was inadvertently included from copying the below language, but just to be clear, can you please confirm real quick that's the case?

Thank you,

Joakim

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Monday, May 18, 2020 10:34 PM
**To:** Joakim Soederbaum; Brandon, Elizabeth C.; Tim Barton
**Subject:** Re:

I affirmative state that myself on my own behalf and on behalf of JMJ Development, LLC agree to the request as set forth in the attached motion (1) for the extension of the existing temporary restraining order, and (2) that the hearing on the request for a temporary injunction be moved to 9:30 a.m. on June 16, 2020?

Sent from my BlackBerry 10 smartphone.

**From:** Joakim Soederbaum
**Sent:** Monday, 18 May 2020 11:07 PM
**To:** Brandon, Elizabeth C.; Tim Barton
**Subject:** RE: Re:

Thank you both for your prompt responses.

I see no reason to change things up from our previous extension and have attached a substantially similar motion and proposed order. Can you both please review and let me know if you have any changes?

Ms. Brandon, would you please also let me know if I have you permission to add your electronic signature?

Mr. Barton, if everything is acceptable to you, would you please respond to this email and affirmatively state that you on your own behalf and on behalf of JMJ Development, LLC agree to the request as set forth in the attached motion (1) for the extension of the existing temporary restraining order, and (2) that the hearing on the request for a temporary injunction be moved to 9:30 a.m. on June 16, 2020?

As soon as I have everyone's express agreement, I will get this filed and bring it to the Court's attention.

Thank you,

Joakim

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Monday, May 18, 2020 2:22 PM
**To:** Tim Barton; Joakim Soederbaum
**Subject:** RE: Re:

Thanks, Joakim. The company agrees as well. Please circulate a draft of the revised paperwork.

Best,

Elizabeth

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Tim Barton <tbarton@jmjdevelopment.com>
**Sent:** Monday, May 18, 2020 1:34 PM
**To:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>; Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Subject:** Re:

EXTERNAL E-MAIL - From tbarton@jmjdevelopment.com

I agree

Tim Barton

Sent from my BlackBerry 10 smartphone.

**From:** Joakim Soederbaum
**Sent:** Monday, 18 May 2020 2:21 PM
**To:** Tim Barton; Brandon, Elizabeth C.
**Subject:** RE:

Good afternoon,

It is my understanding that nothing has yet been resolved on the transactional side and that Mr. Barton may still be out of state. In light of Memorial Day Weekend coming up it is highly unlikely that everything would be sorted out before Tuesday's hearing. Accordingly, to save the parties time and expense in preparing for that hearing, I am reaching out to see whether 2999TC, JMJ, and Mr. Barton would all agree to another extension of the current temporary restraining order and to further push the temporary injunction hearing. Please respond to this email at your earliest convenience and let me know if you agree to extend the TRO and push the TI hearing until June 16. If so, I'll prepare the necessary paperwork and circulate for approval.

Thank you,

Joakim

**Joakim Soederbaum**
*Attorney*

KELLY HART
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
*joakim.soederbaum@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Tim Barton [mailto:tbarton@jmjdevelopment.com]
**Sent:** Monday, May 11, 2020 3:58 PM
**To:** Joakim Soederbaum
**Cc:** Brandon, Elizabeth C.
**Subject:**

Joakim

Hope this does it for you

Tim

Sent from my BlackBerry 10 smartphone.

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this

message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# EXHIBIT I-3

**Judy Collins**

**From:** Joakim Soederbaum
**Sent:** Thursday, April 30, 2020 7:50 PM
**To:** Brandon, Elizabeth C.
**Cc:** Purcell, Bradley; Judy Collins
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20
**Attachments:** Original Petition and Request for Injunctive Relief.pdf; 316567 TRO.PDF; 14131656720000005 Citation.pdf; 14131656720000006 Citation.pdf; 14131656720000015 TRO.PDF; 14131656720000014 TRO.PDF; 316567 Order Authorizing Sub Service & Extending TRO.PDF

Elizabeth and Brad,

Pleasure talking to you both today. As a quick follow up to our conversation, it turns out that service on JMJ Development and Mr. Barton was completed before we spoke. While I know that you currently represent only 2999TC and will get back with me tomorrow regarding whether you will represent Mr. Barton and/or JMJ Development as well, I have gone ahead and attached copies of the petition, TRO, citations for JMJ and Barton (just in case you end up representing them as well), and order authorizing substitute service and extending the TRO for your records. If you need any additional documents for purposes of getting caught up to speed, please do not hesitate to let me know.

I look forward to working with both of you in connection with this matter.

Best,

Joakim

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Thursday, April 30, 2020 4:05 PM
**To:** Joakim Soederbaum
**Cc:** Purcell, Bradley; Judy Collins
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

Thank you.

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Thursday, April 30, 2020 4:00 PM
**To:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>; Judy Collins <judy.collins@kellyhart.com>
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

That shouldn't be a problem. Got somewhat held up myself, so no worries.

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Thursday, April 30, 2020 3:30 PM
**To:** Joakim Soederbaum
**Cc:** Purcell, Bradley; Judy Collins
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

Joakim, I'm on a call that is running long. Will you be available after 5 or 5:30 today?

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Brandon, Elizabeth C.
**Sent:** Thursday, April 30, 2020 1:57 PM
**To:** 'Joakim Soederbaum' <Joakim.Soederbaum@kellyhart.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>; Judy Collins <judy.collins@kellyhart.com>
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

Thanks, Joakim. We can give you a call around 3:30.

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

---

**From:** Joakim Soederbaum <Joakim.Soederbaum@kellyhart.com>
**Sent:** Thursday, April 30, 2020 12:18 PM
**To:** Brandon, Elizabeth C. <EBrandon@reedsmith.com>
**Cc:** Purcell, Bradley <BPurcell@reedsmith.com>; Judy Collins <judy.collins@kellyhart.com>
**Subject:** RE: Hodges v 2999TC, Cause No. 141-316567-20

EXTERNAL E-MAIL - From Joakim.Soederbaum@kellyhart.com

Elizabeth,

Thank you for reaching out. To put your mind somewhat at ease while you get up to speed, I can let you know that this morning the Court signed the attached order authorizing substitute service on the other two defendants, JMJ Development, LLC and Mr. Barton, and extending the TRO until May 20 (and pushing the TI hearing as well). That said, I'd still be more than happy to get on a call with you this afternoon. I am working from home since childcare is closed, so please feel free to try my cell at any time that is convenient for you: (903) 257-8195.

Also, can you please let me know if your involvement in this matter is strictly limited to 2999TC or if you represent JMJ Development and Mr. Barton as well and, if so, if you will accept service on their behalf?

And just to let you know: we filed our motion yesterday (at which time we were unaware that any defendant had legal representation) and it is my understanding that the court has issued service directly to your client of the attached order by mail – so your client may still receive formal receive through those channels.

Thank you. I look forward to visiting with you this afternoon.

Best,

Joakim

**Joakim Soederbaum**
*Attorney*

KELLY HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-9369
FAX (817) 878-9876
*joakim.soederbaum@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Brandon, Elizabeth C. [mailto:EBrandon@reedsmith.com]
**Sent:** Thursday, April 30, 2020 9:03 AM
**To:** Joakim Soederbaum
**Cc:** Purcell, Bradley
**Subject:** Hodges v 2999TC, Cause No. 141-316567-20

Good morning, Joakim. Our firm has just been retained to represent 2999TC in this matter and in connection with the TRO and upcoming TI hearing. We understand there has been some communications with the company directly, but we are still trying to get up to speed on background. In light of the upcoming TI hearing, we would appreciate a chance to discuss the issues and, at the very least, push out the hearing date. Are you available this afternoon to discuss?

Best,

Elizabeth Brandon

**Elizabeth C. Brandon**
**Partner**
Office +1 469-680-4212
ebrandon@reedsmith.com

ReedSmith LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX 75201
**www.reedsmith.com**

* * *
This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# EXHIBIT I-4

**Judy Collins**

**From:** Tim Barton <tbarton@jmjdevelopment.com>
**Sent:** Monday, May 11, 2020 3:58 PM
**To:** Joakim Soederbaum
**Cc:** Brandon, Elizabeth C.
**Attachments:** IMG_20200511_165718.jpg

Joakim

Hope this does it for you

Tim

Sent from my BlackBerry 10 smartphone.

# EXHIBIT I-5

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies




Department of State: Division of Corporations

Allowable Characters

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

SERVICES
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

Loading...

Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 7602115 | Incorporation Date / Formation Date: | 9/10/2019 (mm/dd/yyyy) |
| Entity Name: | 2999TC LP, LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | INCORP SERVICES, INC. | | |
| Address: | 919 NORTH MARKET STREET, SUITE 950 | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19801 |
| Phone: | 800-246-2677 | | |

100%

Desktop 3:24 PM 6/2/2020

141-316567-20

FILED
TARRANT COUNTY
6/10/2020 3:55 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **I. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999 TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| ***Defendants.*** | § | **TARRANT COUNTY, TEXAS** |

## DEFENDANT 2999TC LP, LLC'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURES

Subject to its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Plea to the Jurisdiction) and Special Exceptions, and Motion to Dissolve Temporary Restraining Order and Motion to Stay Case, and without waiver of arguments set forth therein, Defendant 2999 TC LP, LLP ("**Defendant**") files this Original Answer and Request for Disclosures in response to Plaintiffs' Original Petition as follows:

## GENERAL DENIAL

1. In accordance with Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained in Plaintiffs' Original Petition, and demands strict proof thereof. Defendant further reserves the right to amend its Original Answer at a future date in accordance with the Texas Rules of Civil Procedure.

## SPECIFIC DENIAL

2. Defendant specifically denies Plaintiffs' allegations that all conditions precedent have been performed or have occurred.

## AFFIRMATIVE DEFENSES

3. Subject to and without waiving the foregoing general and specific denials, Defendant asserts the following affirmative defenses:

4. Plaintiffs fail to plead adequate facts to establish standing to assert claims against Defendant

5. Plaintiffs fail to state facts sufficient to constitute a claim upon which an relief may be granted.

6. Plaintiffs' claims are barred, in whole or in part, by waiver.

7. Plaintiffs' claims are barred, in whole or in part, by ratification.

8. Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, including equitable estoppel, promissory estoppel, and quasi-estoppel.

9. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' prior material breach of the contracts.

10. Plaintiffs' claims are barred, in whole or in part, by the doctrines of impossibility of performance and frustration of purpose.

11. Plaintiffs' claims are barred, in whole or in part, by illegality.

12. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate its alleged damages.

13. Plaintiffs' claims are barred, in whole or in part, because the money lent included usurious interest.

14. Any recovery against Defendant is barred or limited under the principles of assumption of the risk and informed consent.

15. Plaintiffs' claim for attorneys' fees is improper because, amount other reasons, Plaintiff is not entitled to recover attorneys' fees from Defendant under applicable law, including Chapter 38 of the Texas Civil Practice & Remedies Code.

**REQUEST FOR DISCLOSURES**

16. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs are requested to disclose, within 30 days of service of this request, the information described in Rule 194.2.

Dated: June 10, 2020.

Respectfully submitted,

By: */s/ Elizabeth Brandon*

Elizabeth Brandon (State Bar No. 24049580)
Bradley J. Purcell (State Bar No. 24063965)
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: 469.680.4200
F: 469.680.4299
ebrandon@reedsmith.com
bpurcell@reedsmith.com

*Attorneys for Defendant 2999 TC LP, LLP*

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on June 10, 2020.

*/s/ Elizabeth Brandon*
Elizabeth Brandon

FILED
TARRANT COUNTY
6/15/2020 6:04 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' FIRST AMENDED PETITION**

Plaintiffs L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. ("**Executor**"), Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, "**Plaintiffs**") file their *First Amended Petition* against Defendants 2999TC LP, LLC, JMJ Development, LLC, and Tim Barton (all collectively, "**Defendants**") and would respectfully show the Court as follows:

**I.**
**NATURE OF THE ACTION**

1. In September of 2019 defendant 2999TC LP, LLC ("**2999TC**") borrowed $4,000,000.00 from Plaintiffs (the "**Loan**")—which Loan is evidenced by two promissory notes executed by 2999TC (the "**Notes**") and guaranteed by both JMJ Development, LLC ("**JMJ**") and Tim Barton ("**Barton**"). 2999TC soon defaulted on its obligations under the Note, Barton failed to perform as agreed in his guaranties, and the Loan was accelerated on or about April 14, 2020. To date, however, Defendants have failed to make *any* payments towards the more than

$4,000,000 due and owing since Plaintiffs received the December 2019 interest-only payment on January 29, 2020—a month and a half late. Accordingly, Plaintiffs brought this suit to recover the more than $4,000,000.00 owed by Defendants in connection with the Loan.

## II.
## DISCOVERY CONTROL PLAN

2. Discovery in this case is intended to be conducted under level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## III.
## PARTIES

3. Executor, who resides in Tarrant County, Texas, is one of two duly qualified and acting independent executors under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1.

4. Plaintiff Tejas Group, Ltd. is a Texas limited partnership.

5. Plaintiff LAH III Family Specific Interest, Ltd. is a Texas limited partnership.

6. Plaintiff Blackfoot Interest, Ltd is a Texas limited partnership.

7. Defendant 2999TC is a Delaware limited liability company. 2999TC has appeared and filed an answer in this suit and may be served with this Petition pursuant to Texas Rule of Civil Procedure 21a.

8. Defendant JMJ is a Texas limited liability company. JMJ has appeared in this suit but not yet filed an answer, and may be served with this Petition pursuant to Texas Rule of Civil Procedure 21a.

9. Defendant Barton is an individual residing in the State of Texas. Barton has appeared in this suit but not yet filed an answer, and may be served with this Petition pursuant to Texas Rule of Civil Procedure 21a.[1]

**IV.**
**<u>JURISDICTION AND VENUE</u>**

10. This Court has subject-matter jurisdiction over this case because the amount in controversy is within the jurisdictional limits of this Court. Pursuant to Texas Rule of Civil Procedure 47, Plaintiffs state that they seek monetary relief over $1,000,000.00 but less than $5,000,000.00, plus attorney's fees, costs, and pre- and post-judgment interest.

11. This Court has personal jurisdiction over 2999TC and JMJ because they systematically conduct business in Texas, maintain a regular place of business in Texas, and entered into contracts with Texas residents to be performed in whole or in part in this state. *See* Tex. Civ. Prac. & Rem. Code § 17.042. This Court has personal jurisdiction over Barton because he resides in Texas and entered into contracts with Texas residents to be performed in whole or in part in this state. *See id.* This Court further have personal jurisdiction over 2999TC, JMJ, and Barton because they have appeared in this matter.

12. Venue in this matter is proper in this County because a substantial part of the activities, events, and damages giving rise to this lawsuit occurred in this County. *See* Tex. Civ. Prac. & Rem. Code § 15.002. Venue is further proper in this County because the Notes provide that venue for any dispute involving the Notes or any other instruments executed in connection with the Notes shall lie exclusively in Tarrant County, Texas. *See* Notes as amended.

[1] Plaintiffs note that Defendants Barton and JMJ did not provide any contact information on their motion to quash (although they appear to have served themselves a copy of that motion via tbarton@jmjdevelopment.com). Accordingly, until these two Defendants instruct the Court and the parties otherwise, in line with their previous filings and notices and out of an abundance of caution, Plaintiffs will serve a copy of all their filings on Barton and JMJ (1) via tbarton@jmjdevelopment.com, and (2) through the attorney filing these Defendants' motion to quash, Vance McMurry, at vance@mcmurrylegal.com.

## V.
## FACTS

13. On or around September 16, 2019, defendant 2999TC borrowed from Plaintiffs, and Plaintiffs loaned to 2999TC, the total amount of $4,000,000.00 (the "**Loan**") in connection with a project involving the acquisition of property located at 2999 Turtle Creek Boulevard, Dallas, Texas (the "**Property**"), for the purpose of development of a luxury hotel and residences. The Loan is evidenced by two promissory notes executed by defendant Barton on behalf of 2999TC (the "**Notes**").[2]

14. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020 (the "**Maturity Date**").[3]

15. Defendants Barton, individually, and JMJ guaranteed the Loan and 2999TC's performance under the Notes (the "**Guaranties**").[4] In addition, in connection with his personal Guaranties (the "**Barton Guaranties**"), Barton personally agreed within thirty (30) days of Plaintiffs' request to grant or cause to be granted a first-priority security interest in certain assets. More specifically, Barton agreed to grant Plaintiffs a first-priority lien in the unencumbered value of certain real estate (hereinafter collectively referred to as the "**Guaranty Collateral**"):

[2] Each Plaintiff advanced ¼ of the Loan, or $1,000,000.00. One Note, in the amount of $1,000,000.00, was made out to the Estate of Leland Allen Hodges, Jr., while the other Note, in the total amount of $3,000,000.00, was made out to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd, collectively.

[3] The accrued interest is calculated on a 360-day-year basis, making each quarter 90 days and each full quarterly interest-only payment $180,000.00 (360 / 90 = 90; $4,000,000.00 x .18 / 360 x 90 = $180,000.00).

[4] More specifically, Barton and JMJ each executed one Guaranty for each of the $1,000,000 Note and the $3,000,000 Note, respectively, for a total of 4 Guaranties.

| Collateral | Acres | Lots |
|---|---|---|
| Real Property Development known as North Star | 63.75 | 302 |
| Real Property Development known as Griffin | 201 | 870 |
| Real Property Development known as Rogers Ranch | 100 | 40 |
| Real Property Development known as Killeen | 16.2 | 1 |
| Real Property Development known as Ridgeview | 15 | 54 |

16. Pursuant to the terms of the Barton Guaranties, on or about September 17, 2019, Plaintiffs requested that Barton provide the documentation necessary to establish the agreed-upon security interests within thirty days—by October 17, 2019—so that Plaintiffs could promptly perfect their security interests in the Guaranty Collateral.

17. Barton, however, failed to comply with Plaintiffs' September 17, 2019 request. Instead, he—directly or through other non-party entities owned by him—provided Plaintiffs with pledges of membership interests in entities holding title to the real estate at issue. In other words, Plaintiffs have not received liens directly on the real estate referenced in the Barton Guaranties and do not have an ownership interest in the holding companies; rather, Plaintiffs merely holds a security interest in certain holding companies.[5]

[5] Barton ultimately caused membership interest in the following entities to be pledged as security of the Loan: Wall009, LLC, Ridgeview Addition, LLC, LDG001, LLC, JMR100, LLC, D4KL, LLC, BM318, LLC, and 2999TC LP, LLC. With respect to the pledge of interest in Ridgeview Addition LLC, the entity through which Barton pledged that interest, Carnegie Development, LLC, falsely represented to Plaintiffs that Ridgeview Addition, LLC owns the Guaranty Collateral identified as Ridgeview. To be clear, Plaintiffs do not assert any claim, and do not seek any relief from this Court, arising from and/or based on (i) their security interest in the membership interest of these entities or (ii) their attenuated interest in the real estate owned by these entities and/or identified in the Barton Guaranties. Rather, the only relief Plaintiffs seek herein is directly against Defendants based on their respective breaches of the Notes and Guaranties: actual damages, pre- and post-judgment interest, attorney's fees, and costs.

By way of specific example, with respect to the pledge of membership interest in Wall009 LLC, this entity is an alleged debtor subject to an involuntary chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 20-31131. Plaintiffs are not seeking any relief as to Wall009 LLC or the membership interests in Wall009 LLC, and will not seek any such relief without prior Bankruptcy Court approval.

18. In addition, among other things, 2999TC failed to pay (i) the first interest-only payment in the amount of $180,000.00 when due on December 16, 2019; and (ii) Plaintiffs' out-of-pocket expenses incurred incidental to the Loan as agreed. Ultimately, only after Plaintiffs threatened to accelerate the Loan, on or about January 29, 2020, did 2999TC pay the overdue December 16, 2019, interest-only payment and Plaintiffs' out-of-pocket expenses incurred incidental to the Loan creation. Barton, however, failed to provide Plaintiffs' first-priority liens on the Guaranty Collateral as agreed, leaving Plaintiffs with the various membership pledges.

19. When the second interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. In addition to 2999TC failing to make the $180,000.00 interest-only payment, among other things, Plaintiffs learned that Barton purportedly had allowed the granting of a first-priority lien on some of the real estate supposed to serve as Guaranty Collateral. By doing so, Barton potentially diluted the unencumbered value in which he agreed to grant Plaintiffs a first-priority lien as set forth in the Barton Guaranties. Accordingly, on March 27, 2020, Plaintiffs sent a second notice of default demanding that Defendants cure the defaults by April 6, 2020.

20. When Defendants failed to cure its defaults as demanded in Plaintiffs' March 27, 2020, notice, Plaintiffs accelerated the Loan and demanded payment in full from Defendants of all amounts due and owing. To date, however, Defendants have failed to pay as agreed, the Notes remain unpaid, and the principal is currently due and owing in full. As of April 21, 2020, a total of approximately $4,250,000.00 was immediately due and owing in the form of outstanding principal balance and accrued but unpaid interest.[6] Interest and attorney's fees

[6] This amount takes into account and credits the fact that Plaintiffs, albeit late, ultimately received the first $180,000.00 interest-only payment.

continue to accrue. Accordingly, Plaintiffs have filed the instant lawsuit to recover the amounts owed by Defendants.

## VI.
## CAUSES OF ACTION

### BREACH OF PROMISSORY NOTES

21. Plaintiffs incorporate herein by reference the foregoing allegations.

22. As set forth above, 2999TC is the maker of two enforceable Notes, which it executed and delivered to Plaintiffs. Plaintiffs are the beneficiaries and legal holders and owners of the Notes.

23. Plaintiffs performed their obligations under the Notes and loaned the total amount of $4,000,000.00 to 2999TC. 2999TC, in contrast, breached the Notes, among other things, through its failure to make the March 2020 interest-only payment as agreed and to make payment in full upon acceleration of the Loan. The entire principal balances of $1,000,000.00 and $3,000,000.00 remains due and owing under each Note, respectively and, as of April 21, 2020, a total of approximately $250,000.00 in accrued but unpaid interest was due and owing between the two Notes,[7] and remains unpaid to date.

24. As a proximate and foreseeable result of 2999TC's breach of the Notes, Plaintiffs have been damaged in a sum in excess of the minimum jurisdictional limits of the Court, for which sums Plaintiffs hereby sue, together with cost, attorney's fees, and pre-judgment and post-judgment interest at the contractually agreed rate of 18% to the greatest extent allowed by applicable law.

[7] The interest, while referred to collectively because it accrues on identical terms for each Note, accrues separately for the two Notes, with ¾ of the referenced interest accruing in connection with the $3,000,000.00 Note and ¼ of the interest accruing in connection with the $1,000,000.00 Note (based on the amount of each Note in proportion to the Loan). Plaintiffs refer to the interest as of April 21, 2020, the date before this suit was filed, as pre-judgment interest begins to accrue on April 22, 2020.

25. All conditions precedent to Plaintiffs' right to recover under the Notes have been performed, have occurred, or have been excused.

## BREACH OF GUARANTIES

26. Plaintiffs incorporate herein by reference the foregoing allegations.

27. As set forth above, as consideration for Plaintiffs making the Loan to 2999TC, Barton and JMJ executed and delivered to Plaintiffs enforceable Guaranties for the benefit of Plaintiffs, securing 2999TC's performance under the Notes. Plaintiffs are the legal owners and holders of the Guaranties.

28. Pursuant to the Guaranties, Barton and JMJ must make any payments that become due and owing under the Notes. Plaintiffs performed their obligations by making the $4,000,000.00 Loan as contemplated by the Notes and the Guaranties. Thus, the Notes obligated 2999TC to pay Plaintiffs as amounts became due and owing. 2999TC defaulted under the Notes, among other things, by failing to make the March 2020 interest-only payment as agreed and to make payment in full upon acceleration of the Loan, thereby triggering Barton and JMJ's obligation to pay these amounts to Plaintiffs. Barton and JMJ, however, breached their respective Guaranties by failing to pay the amounts due to Plaintiffs under the Notes upon demand when 2999TC failed to pay as agreed and required. Barton further breached the Barton Guaranties by virtue of his failure to deliver the agreed-upon first-priority liens on the Guaranty Collateral.

29. As a proximate and foreseeable result of Barton's and JMJ's breach of their respective Guaranties, Plaintiffs have been damaged in a sum in excess of the minimum jurisdictional limits of the Court, for which sums Plaintiffs hereby sue, together with costs, attorney's fees, and pre-judgment and post-judgment interest at the contractually agreed rate of 18% to the greatest extent allowed by applicable law.

30. All conditions precedent to Plaintiffs' right to recover under the Guaranties have been performed, have occurred, or have been excused.

**VII.**
**ATTORNEY'S FEES**

31. Plaintiffs have been required to retain the undersigned legal counsel to institute and prosecute this action. In accordance with the loan documents (including the Notes and the Guaranties), and Tex. Civ. Prac. & Rem. Code § 38.001, Plaintiffs are entitled to recover their reasonable and necessary attorney's fees in bringing and prosecuting this action, and for any and all appeals enforcing the requested judgment.

**VIII.**
**JURY DEMAND**

32. Plaintiffs demand a jury trial and have previously tendered the appropriate fee along with the filing of their Original Petition.

**IX.**
**REQUEST FOR DISCLOSURE**

33. Pursuant to Texas Rule of Civil Procedure 194, Defendants are requested to disclose, within the time required by Rule 194.3 and based on the service of Plaintiffs' Original Petition,[8] the information or material described in Rule 194.2.

**X.**
**PRAYER**

For the reasons set forth above, the Plaintiffs respectfully request that the Court render judgment against Defendants, jointly and severally, and in favor of Plaintiffs, awarding Plaintiffs the following relief:

[8] Plaintiffs are including its request for disclosure to avoid creating the appearance that they have withdrawn their original request for disclosure. Plaintiffs' inclusion of the request for disclosure should not be interpreted as an extension of Defendants' deadline to respond to the same based on Plaintiffs' original request.

(a) any and all actual damages suffered in an amount within the jurisdictional limits of the Court;

(b) pre-judgment interest at the contractually-agreed upon rate of 18%;

(c) post-judgment interest at the contractually-agreed upon rate of 18%;

(d) attorney's fees;

(e) costs of suit; and

(f) such other and further relief to which Plaintiffs show themselves to be justly entitled whether at law or in equity.

Respectfully submitted,

***/s/ Dee J. Kelly, Jr.***
Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June, 2020, a true and correct copy of the foregoing document was served electronically upon all pro se Parties and counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT**
**2999TC LP, LLC**

Tim Barton, Individually
tbarton@jmjdevelopment.com
**PRO SE**

JMJ Development, LLC
By: Tim Barton
Its: Chief Executive Officer
tbarton@jmjdevelopment.com
**PRO SE**

Vance McMurry
508 W. Lookout #14-74
Richardson, Texas 75080
vance@mcmurrylegal.com
**AS FILING ATTORNEY FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT OF** |
| ***Plaintiffs,*** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| | § | **TARRANT COUNTY, TEXAS** |
| ***Defendants.*** | § | |

**JMJ DEVELOPMENT, LLC AND TIMOTHY BARTON'S MOTION TO TRANSFER VENUE AND ORIGINAL ANSWER SUBJECT THERETO**

Defendants JMJ Development, LLC ("***JMJ***") and Timothy Barton ("***Barton***" together with JMJ, "***Defendants***") file this *Motion to Transfer Venue and Original Answer Subject Thereto*. In support hereof, Defendants respectfully state as follows:

**MOTION TO TRANSFER VENUE**

1. Pursuant to Chapter 15 of the Texas Civil Practice and Remedies Code and Rules 86, 87, 88, and 89 of the Texas Rules of Civil Procedure, Defendants hereby objects to venue in Tarrant County, Texas, and specifically deny the allegation by Plaintiffs L. Allen Hodges III, as independent executor of the Estate of Leland A. Hodges Jr. ("***Hodges***") and Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. ("***Tejas***" and together with Hodges, "***Plaintiffs***") that venue is proper in Tarrant County, Texas. This is so because all events giving rise to the claims against Defendants occurred in Dallas County (Tex. Civ. Prac. & Rem. Code § 15.002(1)), it is the county of Barton's residence (Tex. Civ. Prac. & Rem. Code § 15.002(2)), and it is the county of JMJ's principal office (Tex. Civ. Prac. & Rem. Code §

15.002(3)). *See* Declaration of Timothy Barton attached hereto as **Exhibit 1** and incorporated herein by reference.

2. All of Plaintiffs claims against Defendants arise from four (4) Guaranty agreements (the "***Guaranties***") in which Defendants guaranteed the repayment of certain loans between Plaintiffs and 2999 TC LP, LLC. Attached hereto as **Exhibits 2-5** are true and correct copies of the Guaranties that are incorporated herein by reference. The Guaranties do not contain a venue clause. However, they expressly state that they are "executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas." *See* Guaranties ¶ 8. Thus, the contracts on which Plaintiffs have sued Defendants relate only to Dallas County.

3. Moreover, both Defendants are based entirely in Dallas County. Timothy Barton is a resident of Dallas County and JMJ has its principal place of business at 1755 Wittington Place, Suite 340, Dallas, Texas 75234. *See* Declaration of Timothy Barton.

4. Here, a mandatory venue provision governs the proper venue of this lawsuit. Section 15.002 of the Texas Civil Practice and Remedies Code provides as follows.

> (a) Except as otherwise provided by this subchapter or Subchapter B or C, all lawsuits **shall be brought**:
>
> (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
>
> (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
>
> (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

Tex. Civ. Prac. & Rem. Code § 15.002 (emphasis added).

5. Here, venue is only proper in one county, Dallas County. Dallas County is the place where **all** events giving rise to Plaintiffs' claims against Defendants arise. As provided expressly in the Guaranties, the Guaranties were "executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas." *See* Guaranties ¶ 8.

6. Likewise, Dallas County is the only county in which Defendants reside (for natural person Timothy Barton) and have their principal place of business (entity JMJ). *See* Barton Declaration). As such, Dallas County is the only venue in which claims against Defendants arising from the Guaranties is appropriate.

7. Accordingly, venue in this Court is improper. Defendants file this Motion to Transfer Venue concurrently with or prior to the filing of Defendants' first responsive pleading or appearance in this case. Defendants respectfully request that the Court grant the Motion to Transfer Venue and sign an order transferring venue in the above-numbered and styled cause to a court of proper venue in Dallas County.

## GENERAL DENIAL[1]

1. Subject to and without waiving the foregoing, Defendants deny each and every allegation in Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction and First Amended Petition (and any amendments thereto, as well as in any other petitions and/or interventions filed by any parties) and enters this, their general denial, in accordance with Rule 92 of the Texas Rules of Civil Procedure. Defendants demand strict proof of all allegations made by Plaintiffs as required by law and reserves the right to amend or supplement this answer in accordance with the applicable procedural rules.

## AFFIRMATIVE DEFENSES[2]

To the extent required, Defendants hereby asserts the following additional and affirmative defenses:

1. Plaintiffs' claims are barred, in whole or in part, by waiver.

2. Plaintiffs' claims are barred, in whole or in part, by ratification.

3. Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel, including equitable estoppel, promissory estoppel, and quasi-estoppel.

---

[1] This General Denial is subject to the Motion to Transfer Venue.
[2] These Affirmative Defenses are subject to the Motion to Transfer Venue.

4. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' prior material breach of the contract.

5. Plaintiffs' claims are barred, in whole or in part, by the doctrines of impossibility of performance and frustration of purpose

6. Plaintiffs' claims are barred, in whole or in part, by illegality.

7. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate its alleged damages.

8. Any recovery against Defendants are barred or limited under the principles of assumption of the risk and informed consent.

9. Plaintiffs' claim for attorneys' fees is improper because, amount other reasons, Plaintiffs are not entitled to recover attorneys' fees from Defendants under applicable law, including Chapter 38 of the Texas Civil Practice & Remedies Code.

10. Defendants reserve the right to assert additional defenses.

**REQUEST FOR DISCLOSURES**

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs are requested to disclose, within 30 days of service of this request, the information described in Rule 194.2.

Dated: June 18, 2020.

Respectfully submitted,

/s/ Robert F. Kemp

Robert F. Kemp
SBN 11256400
2815 Valley View Lane, Ste. 202
Dallas, Texas 75234
(214) 526-2156
(214) 526-2156 Fax
lawyerkemp@cs.com
**ATTORNEY FOR PLAINTIFF**

*Attorneys for Defendants JMJ Development, LLC and Timothy Barton*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above pleading was served on all counsel of record via electronic mail on this 18th day of June 2020.

*/s/ Robert Kemp*
Robert Kemp

# EXHIBIT 1

**<u>Unsworn Declaration§ 132.001 Tex. Civ. Prac. & Rem. Code</u>**

"My name is Timothy Barton. My date of birth is August 17,1963 and my business address is 1755 Wittington Place, Suite 340 Dallas, Texas 75234 and my personal address is 3926 Vista Woods Carrollton, TX 75007. I am an authorized representative for JMJ Development, LLC ("***JMJ***"). I declare under the penalty of perjury that in my capacity as authorized representative for JMJ and on my own behalf, I have personal knowledge that facts stated in paragraphs 2, 3, 5, and 6 of JMJ Development, LLC and Timothy Barton's Motion to Transfer Venue and Original Answer Subject Thereto and that those facts are true and correct and are within my personal knowledge.

Executed in Dallas County, State of Texas, on this 16th day of June, 2020.

____________________________
Timothy Barton

# EXHIBIT 2

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

# EXHIBIT 3

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, JMJ Development, LLC ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

JMJ Development, LLC

______________________________
Tim Barton, President
1755 Wittington Place, Suite 340
Dallas, Texas 75234



______________
Initials

# EXHIBIT 4

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16, 2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.



Initials

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

14. Within thirty (30) days of request by Creditor, Guarantor shall grant, or cause to be granted, to Creditor and The Estate of Leland A. Hodges Jr. (on a collective basis) a first priority lien and or security interest on each of the assets (the "Additional Collateral") described on Exhibit A attached hereto. In furtherance of the foregoing, Guarantor shall execute such other documents in connection with the creation of liens or security interests on the Additional Collateral as the Creditor may reasonably request, all in form and substance reasonably satisfactory to the Creditor. In addition, at any time and from time to time, upon the written request of the Creditor, Guarantor shall, for the purpose of the Creditor obtaining or preserving the full benefits of this guaranty and of the rights and powers herein granted, take such further action as the Creditor may reasonably request.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of **September 16, 2019.**

GUARANTOR

_______________________________

Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234



_______________
Initials

**Exhibit A**

| Collateral | Acres | Lots | # Lots Under LOI | Appraiser | Valuation | Debt | Net Unencumbered Valuation | Ownership |
|---|---|---|---|---|---|---|---|---|
| Art Bacchus | — | — | — | National Institute of Appraisers | $14,000,000 | $0 | $14,000,000 | Tim Barton |
| North Star | 63.75 | 302 | 212 | Valbridge Property Advisors; The Gerald A. Teel Company | $3,592,800 | $850,000 | $2,742,800 | Tim Barton |
| Griffin | 201 | 870 | 0 | Betenbough & Associates | $5,792,000 | $1,400,000 | $4,392,000 | Tim Barton |
| Roger Ranch | 100 | 40 | 40 | Betenbough & Associates | $2,900,000 | $1,829,188 | $1,070,813 | Tim Barton |
| Killeen | 16.2 | 1 | — | Valbridge Property Advisors; The Gerald A. Teel Company | $1,570,395 | $0 | $1,570,395 | Tim Barton |
| Ridgeview | 15 | 54 | 54 | Betenbough & Associates | $2,673,000 | $535,000 | $2,138,000 | Tim Barton |
| **Totals:** | **396** | **1267** | **306** | --- | **$30,528,195** | **$4,614,188** | **$25,914,008** | --- |



Initials

# EXHIBIT 5

# GUARANTY

WHEREAS , **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., Blackfoot Interest, Ltd. (Collectively the "Creditor") in principal amount of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,

whether now existing or hereafter occurring; (d) any renewal, extension and/or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of Guarantor, or any adjustment, indulgence, forbearance or compromise that may be granted or given by Creditor to Borrower, Guarantor or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (e) any neglect, delay, omission, failure or refusal of Creditor to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or for the enforcement of any agreement evidencing or securing all or any part of the Guaranteed Indebtedness (including, without limitation, the Note and any of the other Note Papers); (f) any failure of Creditor to notify Guarantor of any renewal, extension or assignment of the Guaranteed Indebtedness or any part thereof, or the release of any security or of any other action taken or refrained from being taken by Creditor against Borrower or any new agreement between Creditor and Borrower, it being understood that Creditor shall not be required to give Guarantor any notice of any kind under any circumstances whatsoever with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability for any reason of all or any part of the Guaranteed Indebtedness against Borrower or any other person now or at any time hereafter liable for the payment of any or all of the Guaranteed Indebtedness; (h) any payment by Borrower to Creditor is held to constitute a preference under any and all debtor relief laws, or if for any other reason Creditor is required to refund such payment or pay the amount thereof to someone else.

6. Guarantor represents and warrants that the value of the consideration received and to be received by Guarantor as a result of the execution of this guaranty is fair and adequate and is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and such liability and obligation may reasonably be expected to benefit Guarantor directly or indirectly.

7. This guaranty is for the benefit of Creditor and Creditor's successors and assigns, and in the event of a permitted assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Indebtedness so assigned, may be transferred with such Guaranteed Indebtedness. This guaranty is binding not only on Guarantor, but on Guarantor's successors and assigns.

8. This guaranty is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Dallas, Texas, and its validity, interpretation and performance are governed by the laws of Texas.

9. Should Guarantor become insolvent, or fail to pay Guarantor's debts generally as they become due, or voluntarily seek, consent to, or acquiesce in the benefit or benefits of any and all debtor relief laws, or become a party to (or be made the subject of) any proceeding provided for by any and all debtor relief laws, other than as a creditor or claimant, that could suspend or otherwise adversely affect the rights of Creditor granted hereunder, and in the case of any such proceeding to which Guarantor involuntarily becomes a party to, or the subject of, the continuation of such proceeding for a period of thirty (30) days, then, in any such event, the Guaranteed Indebtedness shall be, as between Guarantor and Creditor, a fully matured, due and payable obligation of Guarantor to Creditor (without regard to whether Borrower is then in default under the Note or any of the other Note Papers or whether the Guaranteed Indebtedness, or any part thereof, is then due and owing by the Borrower to Creditor), payable in full by Guarantor to Creditor upon demand, which, for purposes of section 502(c) of the Bankruptcy Code of the United States, as amended, shall be the estimated amount owing in respect of the contingent claim created hereunder.

10. Guarantor acknowledges that this guaranty is subject to the offset provisions in favor of Creditor in the Note.

11. This guaranty may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute, collectively, one guaranty, but in making proof of this guaranty, it shall not be necessary to produce or account for more than one such counterpart. The express written release of this guaranty or any counterpart hereof shall constitute the release of all counterparts hereof.

12. In the event Guarantor should fail to pay or perform his obligations hereunder as and when such payment or performance is due, and in the event that thereafter this guaranty is placed in the hands of an attorney for collection, or in the event such payment and performance is enforced through legal proceedings of any nature, then and in any such case Guarantor promises to pay all reasonable costs of such enforcement, including but not limited to attorneys' fees incurred by the holder hereof on account of such enforcement, whether or not suit is filed.

13. Without in any way limiting the generality of the definition thereof in paragraph 2 hereof, the term "Note Papers" includes the Note and any security instrument securing the Note.

**THE WRITTEN LOAN DOCUMENTS TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

EXECUTED effective as of September 16, 2019.

GUARANTOR

____________________________
Tim Barton
1755 Wittington Place, Suite 340
Dallas, Texas 75234

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **v.** | § | **141ST DISTRICT COURT** |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | **TARRANT COUNTY, TEXAS** |

**ORDER DENYING MOTION TO TRANSFER VENUE**

On July 10, 2020, this Court heard JMJ Development, LLC and Tim Barton's Motion to Transfer Venue. After reviewing the documents on file and hearing arguments of counsel, this Court finds that the motion should be DENIED.

IT IS THEREFORE ORDERED that JMJ Development, LLC and Tim Barton's Motion to Transfer Venue is DENIED.

**SIGNED on July 10, 2020.**

**JUDGE PRESIDING**

FILED
TARRANT COUNTY
2020 JUL 10 AM 11:30
THOMAS A. WILDER
DISTRICT CLERK

E-MAILED
7-10-20 VO

EXHIBIT "B-11"

**From:** Victoria G. Olivo
**To:** dee.kelly@kellyhart.com; joakim.soederbaum@kellyhart.com; ebrandon@reedsmith.com; lawyerkemp@cs.com
**Subject:** 141-316567-20 Order Denying Motion to Transfer Venue & Order Granting Leave of Court
**Date:** Friday, July 10, 2020 2:41:00 PM
**Attachments:** 316567 Order Denying Mtn to Transfer Venue.pdf
316567 Order Granting Leave of Court.pdf
image001.png

---

Good Afternoon,

Please see the attached order signed by the court and call or email with any questions.

Thank you,

*Victoria Olivo*
141st Associate Clerk
100 N. Calhoun St
Fort Worth, Texas 76196
817-884-1198
vgolivo@tarrantcounty.com

TARRANT COUNTY
**THOMAS A. WILDER**
DISTRICT CLERK - CIVIL
100 N. CALHOUN ST., 2ND FLOOR
FORT WORTH, TEXAS 76196-0402

141ST

BANK OF AMERICA NA
B/S REG AGENT-C T CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS TX 75201-3136

FILED
TARRANT COUNTY
6/29/2020 1:58 PM
THOMAS A. WILDER
DISTRICT CLERK

141-316567-20

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

FILED
TARRANT COUNTY
2020 JUL 10 AM 11:30
THOMAS A. WILDER
DISTRICT CLERK

**ORDER GRANTING LEAVE OF COURT**

During the hearing on June 29, 2020 attended by all parties to this case, the Court considered Plaintiffs' request for leave of Court under Texas Rule of Civil Procedure 87 to hear Defendant Tim Barton and JMJ Development, LLC's Motion to Transfer Venue (the "Motion") on less than 45 days notice. Based on the pleadings, papers, and arguments of counsel, the Court finds that good cause exists to grant Plaintiffs' request for leave and it therefore has scheduled the Motion to be heard on July 10, 2020 at 10:00 a.m.

It is therefore ORDERED, ADJUDGED, and DECREED that Plaintiffs' request for leave is hereby GRANTED; and

It is further ORDERED that good cause exists to hear the Defendants' Motion to Transfer Venue at 10:00 a.m. on July 10, 2020.

SIGNED this 10 day of July, 2020.

[signature]

The Honorable John P. Chupp, Judge Presiding

E-MAILED
7-10-20 VG

TARRANT COUNTY
**THOMAS A. WILDER**
DISTRICT CLERK - CIVIL
100 N. CALHOUN ST., 2ND FLOOR
FORT WORTH, TEXAS 76196-0402

141ST

BANK OF AMERICA NA
B/S REG AGENT-C T CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS TX 75201-3136

141-316567-20

FILED
TARRANT COUNTY
7/23/2020 4:51 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

COME NOW, L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. (the "**Estate**"), Tejas Group, Ltd. ("**Tejas Group**"), LAH III Family Specific Interest, Ltd. ("**LAH**"), and Blackfoot Interest, Ltd. ("**Blackfoot**") (all collectively, "**Plaintiffs**"), Plaintiffs in the above-entitled and numbered cause, and file this their *Motion for Summary Judgment* ("**Motion**") against Defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**") and respectfully show the Court as follows:

## I.
## INTRODUCTION

This lawsuit arises from Defendants' failure to honor their contractual commitments to Plaintiffs. The relevant facts are simple and undisputed. In September 2019, Plaintiffs advanced a loan totaling $4,000,000.00 to Defendant 2999TC as evidenced by two promissory notes. Defendants Barton and JMJ guaranteed payment under the notes. The undisputed summary judgment evidence demonstrates that (i) 2999TC breached the promissory notes by failing to

make the required interest-only payment due on March 16, 2020; (ii) the notes have been accelerated, making the entire $4,000,000.00 plus the accrued and unpaid interest immediately due and owing in full; and (iii) Barton and JMJ have breached their guaranties by failing to pay the amounts due and owing under the notes despite Plaintiffs' requests for payment.

Accordingly, Plaintiffs are entitled to summary judgment against Defendants on their claims for breach of the promissory notes and the guaranties, as well as on their claim for attorney's fees and costs of suit.

## II.
## SUMMARY JUDGMENT EVIDENCE

In support of its Motion, Plaintiffs rely upon the pleadings and papers on file with the Court and the following evidence:

**Exhibit A:** Affidavit of L. Allen Hodges III

**Exhibit A-1:** Estate Note

**Exhibit A-2:** Company Note

**Exhibit A-3:** Barton Guaranty of Estate Note

**Exhibit A-4:** Barton Guaranty of Company Note

**Exhibit A-5:** JMJ Guaranty of Estate Note

**Exhibit A-6:** JMJ Guaranty of Company Note

**Exhibit A-7:** February 20, 2020, Notice of Call Election

**Exhibit A-8:** Barton Notice of Call Election Receipt

**Exhibit A-9:** March 27, 2020, Demand

**Exhibit A-10:** Notice of Acceleration

**Exhibit A-11:** June 24-25, 2020, Email String

**Exhibit B:** Affidavit of Dee J. Kelly, Jr.

## III.
## THE UNDISPUTED FACTS

### A. On or about September 16, 2019, Plaintiffs funded a $4,000,000.00 bridge loan to 2999TC with quarterly interest-only payments and a one-year maturity.

In September of 2019, Plaintiffs were contacted by a deal broker who was looking for investors on behalf of Barton to provide a bridge loan to close a real estate transaction.[1] Within about a week of Plaintiffs being approached about the bridge loan, on or about September 16, 2019, the loan closed and Plaintiffs loaned and delivered to 2999TC the total sum of $4,000,000.00 (the "**Loan**").[2]

The Loan is reflected by two promissory notes made and executed by Barton on behalf of 2999TC: one to the Estate for $1,000,000.00 (the "**Estate Note**") and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (the "**Company Note**") (the Estate Note and Company Note collectively, the "**Notes**").[3] Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually calculated on a 360-day year, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020.[4] Moreover, the Notes expressly give Plaintiffs the option to call the Notes, making all amounts owed under the Notes due in full sixty days after Plaintiffs giving notice they are exercising this option.[5]

---

[1] **Ex. A-1** (Hodges Aff.), at ¶ 4.

[2] ***Id.*** at ¶ 5.

[3] ***Id.***; **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note). Each Plaintiff advanced ¼ of the total Loan amount, or $1,000,000.00. *See* **Ex. A-1** (Hodges Aff.), at ¶ 5.

[4] **Ex. A-1** (Hodges Aff.), at ¶ 5; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

[5] **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

### B. Barton and JMJ unconditionally guaranteed all payments due under the notes made in connection with the loan.

Barton, individually, and JMJ agreed to guarantee the Loan.[6] Barton and JMJ guaranteeing the Loan was a material condition to Plaintiffs agreeing to fund the Loan.[7] Accordingly, in connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes—one for each of the Notes in his individual capacity and one for each of the Notes on behalf of JMJ (the "**Guaranties**").[8]

### C. Plaintiffs exercised their right to call the loan due and owing in full.

2999TC failed to timely make the first interest-only payment when it was due on December 16, 2019.[9] Ultimately, only after Plaintiffs made demand on 2999TC, Barton, and JMJ and threatened to accelerate the Loan did Plaintiffs receive the overdue interest payment on or about January 29, 2020.[10]

On or about February 20, 2020, the Plaintiffs notified 2999TC that they chose to exercise their option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later—on April 20, 2020 ("**Notice of Call Election**").[11] The very next day, on February 21, 2020, Plaintiffs met with

---

[6] **Ex. A-1** (Hodges Aff.), at ¶ 6; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

[7] **Ex. A-1** (Hodges Aff.), at ¶ 6.

[8] ***Id.***; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

[9] **Ex. A-1** (Hodges Aff.), at ¶ 7.

[10] ***Id.*** Notably, the late payment was not made by 2999TC, Barton, or JMJ; rather it was made by a separate entity named JMJ CMGR, LLC. *See id.*

[11] **Ex. A-1** (Hodges Aff.), at ¶ 8; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1; **Ex. A-7** (Notice of Call Election).

Barton.[12] During that meeting, Plaintiffs hand delivered a copy of the Notice of Call Election to Barton, who acknowledged receipt of the notice in writing.[13]

**D. After 2999TC failed to make the second interest-only payment and Defendants failed to cure the default upon Plaintiffs' written demand, Plaintiffs accelerated the notes effective on or about April 14, 2020.**

When the second interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed.[14] Accordingly, on March 27, 2020, Plaintiffs made a written demand on 2999TC, Barton, and JMJ that they make the overdue payment by April 6, 2020.[15] After 2999TC, Barton, and JMJ failed to cure the payment defaults as demanded in Plaintiffs' March 27, 2020, demand, on or about April 14, 2020, Plaintiffs accelerated the Loan and demanded payment in full from 2999TC, Barton, and JMJ of all amounts due and owing.[16]

**E. Defendants have not made any payments under the Loan since January of 2020.**

To date, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed and Plaintiffs have received no payment in connection with the Loan since the past-due December 2019 payment was made in late January of 2020, the Notes remain unpaid, and the principal balance is currently due and owing in full.[17] As further set forth in the Notes, interest accrues on the outstanding principal balance of the Loan at the rate of 18% per year (calculated on a 360-day year basis).[18] As of the date before this lawsuit was filed, April 21, 2020, the total amount owed under the Loan was $4,250,000.00, consisting of the original Loan balance of $4,000,000.00 and

[12] **Ex. A-1** (Hodges Aff.), at ¶ 8.

[13] ***Id.***; **Ex. A-8** (Barton Notice of Call Election Receipt).

[14] **Ex. A-1** (Hodges Aff.), at ¶ 9.

[15] ***Id.***; **Ex. A-9** (March 27, 2020, Demand).

[16] **Ex. A-1** (Hodges Aff.), at ¶ 10; **Ex. A-10** (Notice of Acceleration).

[17] **Ex. A-1** (Hodges Aff.), at ¶ 11.

[18] ***Id.*** at ¶ 12; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

$250,000.00 in accrued interest.[19] Interest continues to accrue at the annual rate of 18% calculated on a 360-day basis on the outstanding principal balance of the Loan.[20]

Plaintiffs are the sole owners and holders of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.[21] Plaintiffs are presently in possession of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.[22] Accordingly, Plaintiffs filed this lawsuit asserting claims against 2999TC for breach of the Notes and against Barton and JMJ for breach of the Guaranties. Because Barton has expressly admitted that the money is due and owing and the undisputed facts set forth herein establish Plaintiffs' claims against Defendants as a matter of law, Plaintiffs are entitled to summary judgment on their claims against Defendants.[23]

## IV.
## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the evidence establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of a claimant's cause of action. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 443 (Tex. 1982). A movant who conclusively establishes all essential elements of his claim is entitled to a summary judgment. *MMP, Ltd. v. Jones*, 701 S.W.2d 59, 60 (Tex. 1986) (citing *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)).

---

[19] **Ex. A-1** (Hodges Aff.), at ¶ 13.

[20] ***Id.*** at ¶ 14.

[21] ***Id.*** at ¶ 15.

[22] ***Id.*** at ¶ 16.

[23] *See* **Ex. A-11** (June 24-25, 2020, Email String).

## V.
## ARGUMENT & AUTHORITIES

### A. Plaintiffs are entitled to summary judgment on their claim for breach of the promissory notes against 2999TC.

To be entitled to summary judgment on their claim against 2999TC for breach of the Notes, Plaintiffs do not need to prove all the elements for breach of contract. *See, e.g.*, *Rey v. Lara*, No. 02-11-00002-CV, 2011 WL 6260871, at *2-4 (Tex. App.—Fort Worth Dec. 15, 2011, no pet.) (mem. op.) (citing *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 505 (Tex. App.—El Paso 2010, no pet.). Rather, Plaintiffs must establish only that: (1) the Notes exist; (2) Plaintiffs are the legal owners and holders of the Notes; (3) 2999TC is the maker of the Notes; and (4) a certain balance is due and owing on the Notes. *See, e.g.*, *Commercial Servs. of Perry v. Wooldridge*, 968 S.W.2d 560, 564 (Tex. App.—Fort Worth 1998, no pet.); *Rey*, 2011 WL 6260871, at *2-4; *Energico Prod., Inc. v. Frost Nat'l Bank*, No. 02-11-148-CV, 2012 WL 254093, *5 (Tex. App.—Fort Worth Jan. 26, 2012, pet. denied) (mem. op.); *Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 520 (Tex. App.—Dallas 2011, pet. denied); *Rockwall Commons Assocs.*, 331 S.W.3d at 505. Because the summary judgment evidence conclusively establishes each of these elements, Plaintiffs are entitled to summary judgment on their claim against 2999TC for breach of the Notes.

#### 1. The summary judgment evidence conclusively establishes the existence of the Notes.

"A photocopy of a promissory note, attached to an affidavit in which the affiant swears that the photocopy is a true and correct copy of the original note, is proper summary judgment proof which establishes the existence of the note." *Wheeler v. Sec. State Bank, N.A.*, 159 S.W.3d 754, 757 (Tex. App.—Texarkana 2005, no pet.); *see also Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 216 (Tex. App.—Dallas 2015, no pet.).

Plaintiffs have attached true and correct photocopies of the original Notes.[24] Accordingly, Plaintiffs have satisfied the first element of its claim for breach of the Notes as a matter of law. *See Wheeler*, 159 S.W.3d at 757; *Compass Bank*, 460 S.W.3d at 216.

**2. The summary judgment evidence conclusively establishes that Plaintiffs are the legal owners and holders of the Notes.**

A movant may satisfy the second element by attaching a sworn affidavit to its motion for summary judgment stating that it is the owner and holder of the note. *See Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983) (holding that photocopy of note, together with affidavit stating that copy was "true and correct" copy of original, was sufficient to show status as owner and holder of note in summary judgment); *Compass Bank*, 460 S.W.3d at 214 (same); *see also Ecurie Cerveza Racing Team, Inc. v. Texas Commerce Bank-Se.*, 633 S.W.2d 574, 575 (Tex. App.—Houston [14th Dist.] 1982, no writ) (holding that a sworn affidavit stating that movant was "owner and holder of each of the promissory notes" and was "presently in possession of the notes" was sufficient to establish that ownership and possession). Likewise, a movant may establish ownership and possession of a note through sworn testimony that the defendant executed and delivered the promissory note to the movant. *See Wheeler*, 159 S.W.3d at 757.

The Notes themselves clearly identify Plaintiffs as the lenders of the $3,000,000.00 and $1,000,000.00 loans, respectively.[25] Moreover, Plaintiffs' status as the sole owners and holders of the Notes for these loans is confirmed by the following undisputed evidence: (a) 2999TC "executed and delivered" the Notes to Plaintiffs; (b) Plaintiffs are the sole owners and holders of the Notes; and (c) Plaintiffs are presently in possession of the Notes.[26] Accordingly, Plaintiffs have satisfied the second element of their claim against 2999TC for breach of the Notes as a

[24] *See* **Ex. A** (Hodges Aff.), at ¶ 5; **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note).

[25] **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note).

[26] *See* **Ex. A** (Hodges Aff.), at ¶¶ 5, 15-16.

matter of law. *See Zarges*, 652 S.W.2d at 369; *Compass Bank*, 460 S.W.3d at 214; *Texas Commerce Bank-Se*., 633 S.W.2d at 575; *Wheeler*, 159 S.W.3d at 757.

### 3. The summary judgment evidence conclusively establishes that 2999TC is the maker of the Notes.

"[T]o prove that the defendant is the maker of the note, the plaintiff must present summary judgment evidence indicating that the defendant's signature appears on the note or that a representative of the defendant signed the note on the defendant's behalf." *Wheeler*, 159 S.W.3d at 757–58. Further, if the defendant did not deny the authenticity of the signature by verified answer, it is deemed fully proven that the defendant signed the notes. *See id.* (citing Tex. R. Civ. P. 93(7)).

It is undisputed that Barton signed the Notes dated September 16, 2019, for $3,000,000.00 and $1,000,000.00, respectively, on behalf of 2999TC.[27] 2999TC signed the Notes, promising timely payment to Plaintiffs of the principal balance plus interest accrued thereon and Plaintiffs reasonable costs and expenses, including attorney's fees, which may be incurred in enforcing or protecting Plaintiffs' rights or interests.[28] Accordingly, the third element of Plaintiffs' claim for breach of the Notes has been proven as a matter of law. *See Wheeler*, 159 S.W.3d at 757–58 (citing Tex. R. Civ. P. 93(7)).

### 4. The summary judgment evidence conclusively establishes that an unpaid balance is due and owing on the Notes.

Unambiguous language is construed as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). "[A]n affidavit, based on personal knowledge, which identifies an attached copy of the actual note as being true and correct, the amount of the principal and interest owing on the date of default, and the interest rate accruing from the date of default is considered

---

[27] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A** (Hodges Aff.), at ¶ 8.

[28] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A** (Hodges Aff.), at ¶¶ 5, 8.

sufficient proof of the amount owing on the note." *Gooden v. First Nat'l Bank*, No. 04-10-00023-CV, 2010 WL 3582391, at *1 (Tex. App.—San Antonio Sept. 15, 2010, no pet.); *see also Wheeler*, 159 S.W.3d at 758 (holding summary judgment proof sufficient where affidavit stated outstanding balance due and per diem amount at which interest continued to accrue); *Loomis v. Rep. Nat'l Bank of Dall.*, 653 S.W.2d 75, 78 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (same).

Pursuant to the unambiguous terms of the Notes, 2999TC promised to pay to Plaintiffs four quarterly interest-only payments at 18% (calculated on a 360-day year) and the principal balance of $4,000,000.00 on the anniversary of the Notes.[29] In the event of default, the Notes stipulate that Plaintiffs may accelerate the Loan and make the entire outstanding principal immediately due and owing in full.[30] Plaintiffs accelerated the Notes on or about April 14, 2020.[31]

The evidence conclusively establishes that 2999TC defaulted under the Notes by failing to make the March 16, 2020, payment.[32] Since January 29, 2020, Plaintiffs have received no payments whatsoever in connection with the Loan despite Plaintiffs' written demands.[33] As of April 21, 2020, the total amount owed under the Notes, including interest at the agreed-upon rate of 18% annual rate of 18% based on a 360-day year (but excluding costs and expenses, including attorney's fees, incurred by Plaintiffs in connection with their efforts to protect their rights and interests in connection with the Loan), totaled $4,250,000.00, with interest continuing to accrue

---

[29] *See* **Ex. A** (Hodges Aff.), at ¶ 5; **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

[30] **Ex. A-1** (Estate Note), at p. 1; **Ex. A-2** (Company Note), at p. 1.

[31] **Ex. A** (Hodges Aff.), at ¶ 10; **Ex. A-10** (Notice of Acceleration). Moreover, already on or about February 20, 2020, Plaintiffs exercised their right to call the Notes in full effective April 20, 2020. *See* **Ex. A-1** (Hodges Aff.), at ¶ 8; **Ex. A-8** (Notice of Call Election).

[32] **Ex. A** (Hodges Aff.), at ¶ 10.

[33] **Ex. A** (Hodges Aff.), at ¶ 11; **Ex. A-9** (March 27, 2020, Demand); **Ex. A-10** (Notice of Acceleration).

at the agreed-upon rate.[34] In addition, Barton has admitted that the money is owed to Plaintiffs.[35] In other words, the incontrovertible evidence demonstrates as a matter of law that an unpaid balance of $4,250,000.00 (plus pre- and post-judgment interest, costs, and fees) is due and owing on the Notes.[36] *See*, *e.g.*, *Gooden*, at *1; *Wheeler*, 159 S.W.3d at 758; *Loomis*, 653 S.W.2d at 78.

Accordingly, also the fourth and final element of Plaintiffs' claim for breach of the Notes has been proven as a matter of law and Plaintiffs, therefore, are entitled to summary judgment on their claim for 2999TC's breach of the Notes.

### B. Plaintiffs are entitled to summary judgment on their claim for breach of the guaranties against JMJ and Barton.

A guaranty agreement is a person's promise to perform the same act that another person is contractually bound to perform. *Shin v. Sharif*, No. 2-08-347-CV, 2009 WL 1565028, at *2 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.). A guaranty creates a secondary obligation under which the guarantor promises to answer for the debt of the primary obligor if the primary obligor fails to perform. *Id.* To be entitled to summary judgment on their claim against JMJ and Barton for breach of the Guaranties, Plaintiffs must establish only: (1) the existence and ownership of the Guaranties; (2) the terms of the underlying contract; (3) the occurrence of the conditions upon which liability is based; and (4) JMJ's and Barton's failure to perform the obligations required by their Guaranties. *See*, *e.g.*, *Shin*, 2009 WL 1565028, at *2; *Marshall v. Ford Motor Co*., 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ); *Escalante v. Luckie*, 77 S.W.3d 410, 416 (Tex. App.—Eastland 2002, pet. denied). Because the summary judgment evidence conclusively establishes each of these elements, Plaintiffs are entitled to summary judgment on their claim against JMJ and Barton for breach of the Guaranties.

---

[34] **Ex. A** (Hodges Aff.), at ¶ 13.

[35] *See* **Ex. A-11** (June 24-25, 2020, Email String).

[36] See **Ex. A** (Hodges Aff.), at ¶¶ 11, 13; **Ex. A-11** (June 24-25, 2020, Email String).

### 1. The summary judgment evidence conclusively establishes the existence and Plaintiffs' ownership of the Guaranties.

The existence and ownership of a guaranty may be established by proof that the plaintiff is the named obligee, that plaintiff had possession of the note and produced it in court, and that the court admitted it into evidence. *See, e.g.*, *Corley v. Am. Well Ctrl., Inc.*, No. 09–11–00147–CV, 2012 WL 4466361, at *6 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.) *Escalante v. Luckie*, 77 S.W.3d 410, 416 (Tex. App.—Eastland 2002, pet. denied); *see also Just Fondue It, L.L.C. v. Comerica Bank*, No. 03-18-00066-CV, 2019 WL 1372018, at *2 (Tex. App.—Austin Mar. 27, 2019, no pet.) (mem. op.) (noting that a plaintiff can establish that it is owner and holder of a guaranty by providing true and correct copies and testimony) (citing *Garza v. Evans*, No. 01-11-00666-CV, 2012 WL 1893731, at *8 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op.) ("Evans testified that he received the original of the guaranty, he was the owner and holder of the guaranty, and the copy he produced at trial was a true and accurate copy of the original. This testimony was sufficient to prove his status as the legal owner and holder of the guaranty.")).

It is undisputed that Plaintiffs are the owners and holders of the Guaranties that JMJ and Barton executed as a material condition precedent to Plaintiffs extending the Loan to 2999TC.[37] Plaintiffs have attached true and correct photocopies of the original Guaranties, of which Plaintiffs are the owners and holders and in possession.[38] Accordingly, Plaintiffs have conclusively established the first element of its claim for breach of the Guaranties as a matter of law. *See, e.g.*, *Corley*, 2012 WL 4466361, at *6; *Escalante*, 77 S.W.3d at 416; *Just Fondue It*, WL 1372018, at *2; *Garza*, 2012 WL 1893731, at *8.

[37] **Ex. A** (Hodges Aff.), at ¶¶ 6. 15-16; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

[38] **Ex. A** (Hodges Aff.), at ¶¶ 6. 15-16; **Ex. A-3** (Barton Guaranty of Estate Note); **Ex. A-4** (Barton Guaranty of Company Note); **Ex. A-5** (JMJ Guaranty of Estate Note); **Ex. A-6** (JMJ Guaranty of Company Note).

**2. The unambiguous terms of the Guaranties state that JMJ and Barton are absolute and unconditional guarantors and are jointly and severally liable for all payments due and owing under the Notes.**

There are two types of guaranties: payment (or unconditional) guaranties and collection (or conditional) guaranties. *423 Colony, Ltd. v. Independent Executors of Estate of Kern*, No. 02-18-00032-CV, 2019 WL 2223579, at *2 (Tex. App.—Fort Worth May 23, 2019, pet. denied) (mem. op.). The primary difference is whether the guaranty requires the creditor to pursue the principal debtor before it pursues the guarantor for collection of the debt. *Id.* A guaranty of payment does not require the creditor to pursue the principal debtor before pursuing the guarantor. *Id.* The interpretation of guaranties, like other written contracts, is a question of law. *See, e.g.*, *Jamshed v. McLane Exp. Inc.*, 449 S.W.3d 871, 877 (Tex. App.—El Paso 2014, no pet.) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000)).

Here, the Guaranties make clear that JMJ and Barton "guarantee to [Plaintiffs] the prompt payment when due, and at all times thereafter, of [all amounts owing by 2999TC under the Notes."[39] The Guaranties further state: "Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to [Plaintiffs]. It shall not be necessary for [Plaintiffs], in order to enforce such payment by Guarantor, first to institute suit or exhaust [their] remedies against [2999TC] or any other person liable of the Guaranteed Indebtedness . . . ."[40] Moreover, the Notes outline 2999TC's (and by extension, Barton's and JMJ's) payment obligations under the Notes.[41] In other words, it is undisputed that Barton and JMJ unconditionally guaranteed payment of all amounts due and owing under the Notes. *See 423 Colony*, *Ltd. v.*, 2019 WL 2223579, at *2; *Jamshed*, 449 S.W.3d

---

[39] **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[40] **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[41] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note).

at 877. Accordingly, Plaintiffs have conclusively established the second element of its claim for breach of the Guaranties as a matter of law.

**3. 2999TC's failure to pay as agreed under the Notes triggered JMJ's and Barton's liability.**

It is undisputed that Plaintiffs performed under the Notes and the Guaranties by advancing the $4,000,000.00 to 2999TC.[42] It is further undisputed that 2999TC defaulted under the Notes by failing to make the March 16, 2020, interest-only payment to Plaintiffs as agreed.[43] It is also undisputed that the Notes were accelerated, making the entire $4,000,000.00 principal balance plus accrued interest immediately due and owing to Plaintiffs, thereby triggering Barton's and JMJ's liability to pay to Plaintiffs all outstanding principal and accrued interest.[44] *See 423 Colony, Ltd. v.*, 2019 WL 2223579, at *2; *Jamshed*, 449 S.W.3d at 877. In other words, Plaintiffs have conclusively established the third element of its claim for breach of the Guaranties as a matter of law.

**4. The summary judgment evidence conclusively establishes that JMJ and Barton have failed and/or refused to perform their obligations under the Guaranties.**

It is undisputed that Barton and JMJ have failed and/or refused to perform their obligations under the Guaranties.[45] Specifically, Plaintiffs have not received any payment in connection with the Loan from 2999TC, Barton, JMJ, or any other person or entity except for the late December 2019 interest-only payment made in January of 2020, leaving the entire principal balance of $4,000,000.00 plus all interest accrued on or after December 17, 2019 immediately

---

[42] *See* **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A** (Hodges Aff.), at ¶ 5; **Ex. A-11** (June 24-25, 2020, Email String).

[43] *See, e.g.*, **Ex. A** (Hodges Aff.), at ¶¶ 9-12.

[44] ***Id.*** at ¶¶ 10-11; **Ex. A-1** (Estate Note); **Ex. A-2** (Company Note); **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[45] **Ex. A** (Hodges Aff.), at ¶¶ 9-12; **Ex. A-11** (June 24-25, 2020, Email String).

due and owing despite Barton's and JMJ's obligations under the Guaranties to pay such amounts to Plaintiffs.[46] Further, Barton recently expressly admitted that he owes the money to Plaintiffs.[47] In other words, Plaintiffs have conclusively established the fourth element of its claim for breach of the Guaranties as a matter of law. *See Shin*, 2009 WL 1565028, at *3 (holding plaintiff entitled to summary judgment on claim for breach of guaranty based on affidavit testimony that he had not received a single payment under the notes or guaranty, and that he has suffered damages in the amount of $200,000 under the first promissory note and of $1.7 million under the second promissory note).

**C. Plaintiffs are entitled to an award of their reasonable and necessary attorney's fees and their costs.**

Texas Civil Practice and Remedies Code Section 38.001 allows a party to recover its reasonable attorney's fees when the party prevails on a breach of a contract claim. TEX. CIV. PRAC. & REM. CODE § 38.001(8); *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 2 (Tex. 2000). Moreover, the Notes require that 2999TC pay all of Plaintiffs' costs and expenses, including attorney's fees and legal expenses, incurred in enforcing and/or protecting Plaintiffs' rights or interests.[48] Similarly, in addition to the Guaranties requiring Barton and JMJ to pay all amounts that become due and owing under the Notes (without exception for legal fees), the Guaranties require that, in the event they fail to perform their obligations under the Guaranties, Barton and JMJ pay all of Plaintiffs' reasonable costs of enforcement, including but

---

[46] **Ex. A** (Hodges Aff.), at ¶¶ 7, 11-14; **Ex. A-3** (Barton Guaranty of Estate Note), at p. 1; **Ex. A-4** (Barton Guaranty of Company Note), at p. 1; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 1; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 1.

[47] *See* **Ex. A-11** (June 24-25, 2020, Email String).

[48] **Ex. A-1** (Estate Note), at p. 2; **Ex. A-2** (Company Note), at p. 2.

not limited to attorney's fees.[49] In fact, Barton recently expressly acknowledged he is obligated to pay Plaintiffs' fees.[50]

It is undisputed that, through July 20, 2020, Motion, Plaintiffs have incurred $124,757.00 in reasonable and necessary attorney's fees and expenses in connection with the protection of their rights and interests relating to the Loan, including the litigation of their claims against Defendants in this lawsuit.[51] In addition, Plaintiffs will incur additional attorney's fees in the event of an appeal.[52] Crediting a payment of $12,795.00 by Defendants toward Plaintiffs' fees, Plaintiffs are therefore entitled to recover its remaining reasonable and necessary attorney's fees and expenses in the amount of $111,962.00, plus its reasonable and necessary attorney's fees in the event of an appeal, as follows: (a) at least $20,000.00 to respond to an appeal to the Second Court of Appeals of Texas and to prepare for and present oral argument; (b) at least $10,000.00 to respond to or file a petition for review with the Texas Supreme Court; and (c) at least $20,000.00 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument.[53]

## VI.
## PRAYER

For the foregoing reasons, Plaintiffs pray that the Court grant Plaintiffs' Motion for Summary Judgment in its entirety and enter a final judgment disposing of all claims and parties, awarding Plaintiffs the following relief against Defendants, jointly and severally:

(a) Actual damages in the amount of $4,250,000.00 as of April 21, 2020;

---

[49] **Ex. A-3** (Barton Guaranty of Estate Note), at p. 3; **Ex. A-4** (Barton Guaranty of Company Note), at p. 3; **Ex. A-5** (JMJ Guaranty of Estate Note), at p. 3; **Ex. A-6** (JMJ Guaranty of Company Note), at p. 3.

[50] *See* **Ex. A-11** (June 24-25, 2020, Email String).

[51] **Ex. B** (Kelly Aff.), ¶¶ 2–4, 10-12.

[52] **Ex. B** (Kelly Aff.), ¶¶ 5, 11.

[53] ***Id.*** at ¶¶ 2–5, 10-12

(b) Prejudgment interest on the outstanding $4,000,000.00 principal balance at the contractually agreed-upon rate of 18% calculated on a 360-day-year basis beginning on April 22, 2020 and continuing until the day before the final judgment is signed;

(c) Post-judgment interest on the above amounts at the contractually agreed-upon rate of 18% calculated on a 360-day-year basis from the date the final judgment is entered until such judgment is paid in full;

(d) Attorney's fees and expenses in the amount of $111,962.00, with post-judgment interest thereon at the annual rate of 5% from the date of the final judgment until such fees are paid in full;

(e) Conditional appellate attorney's fees as follows:

i. at least $20,000.00 to respond to an appeal to the Second Court of Appeals of Texas (or any transferee court assigned to hear the appeal by the Texas Supreme Court) and to prepare for and present oral argument;

ii. at least $10,000.00 to respond to or file a petition for review with the Texas Supreme Court;

iii. at least $20,000.00 to provide full briefing, if required by the Texas Supreme Court and to prepare for and present oral argument; and

iv. post-judgment interest on the conditional appellate attorney's fees at the annual rate of 5% from the date of each such respective final appellate adjudication until such fees are paid in full;

(f) Costs of suit; and

(g) Such other and further relief to which Plaintiffs may be justly entitled, whether at law or in equity.

Respectfully submitted,

***_/s/ Joakim G. Soederbaum______***
Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2020, a true and correct copy of the foregoing document was served electronically upon all counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT**
**2999TC LP, LLC**

Robert F. Kemp
2815 Valley View Lane, Suite 202
Dallas, Texas 75234
lawyerkemp@cs.com
**ATTORNEY FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum

# EXHIBIT A

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT OF L. ALLEN HODGES III**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned authority, personally appeared L. Allen Hodges III who, being by me duly sworn, deposed as follows:

1. "My name is L. Allen Hodges III. I am over twenty-one (21) years of age, of sound mind, and have never been convicted of a felony. I am fully competent to testify to, and have personal knowledge of, the facts stated within this affidavit, and every statement of fact contained herein is true and correct.

2. "I am one of two duly qualified and acting independent executors for the Estate of Leland A. Hodges Jr. (the '**Estate**'), appointed under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1. I am also the managing member of North Texas Investments,

LLC ('**NTI**'), which is the general partner of Tejas Group, Ltd. ('**Tejas Group'**), a Texas limited partnership; LAH III Family Specific Interest, Ltd. ('**LAH'**), a Texas limited partnership; and Blackfoot Interest, Ltd. ('**Blackfoot'**), a Texas limited partnership (the Estate, Tejas Group, LAH, and Blackfoot collectively, the '**Plaintiffs**').

3. "I obtained personal knowledge of the facts stated herein by and through, among other things, my duties as an independent executor for the Estate and as the managing member of NTI, including but not limited to managing the Plaintiffs' financial affairs and investments on a continuing basis; my personal involvement with the loan Plaintiffs made to 2999TC LP, LLC ('**2999TC**'), and my review of the documents executed in connection with that loan. I have reviewed Plaintiffs' Motion for Summary Judgment (the '**Motion**'), and the exhibits attached thereto.

4. "Tejas Group, LAH, and Blackfoot are investment holding companies. In September of 2019, I was contacted by a deal broker named Jared Sturdivant ('**Sturdivant'**), who informed me he was looking for investors on behalf of Tim Barton ('**Barton**') to provide a bridge loan to close a real estate transaction.

5. "Within about a week of me first being approached about the bridge loan, on or about September 16, 2019, the loan closed and Plaintiffs loaned and delivered to 2999TC the total sum of $4,000,000.00 (the '**Loan**'). The Loan is reflected by two promissory notes made, executed, and delivered by Barton on behalf of 2999TC: one to the Estate for $1,000,000.00 (the '**Estate Note**') and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (the '**Company Note**') (the Estate Note and Company Note collectively, the '**Notes**'). True and correct copies of the Notes along with their corresponding subsequent amendments are attached as **Exhibit A-1** and **Exhibit A-2**, respectively, to the Motion and incorporated herein fully by reference. Each of the Plaintiffs advanced one fourth of the total Loan amount. Pursuant to the

terms of the Notes, the Loan accrues interest at the rate of 18% annually calculated on a 360-day year, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020.

6. "Barton, individually, and JMJ Development, LLC ('**JMJ**') agreed to guarantee the Loan. These guaranties were a material condition to Plaintiffs agreeing to fund the Loan. In connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes (the '**Guaranties**'). True and correct copies of the Guaranties are attached as **Exhibits A-3** through **Exhibit A-6**, respectively, to the Motion and incorporated herein fully by reference.

7. "2999TC failed to pay the first interest-only payment in the amount of $180,000.00 when due on December 16, 2019. Ultimately, only after Plaintiffs made demand on 2999TC, Barton, and JMJ and threatened to accelerate the Loan did Plaintiffs receive the overdue interest-only payment on or about January 29, 2020. The payment was made by an entity named JMJ CMGR, LLC.

8. "On or about February 20, 2020, the Plaintiffs notified 2999TC that they chose to exercise their option under the Notes to call all amounts due, making the full principal balance and all interest accrued until the time of payment due and payable sixty days later—on April 20, 2020 ('**Notice of Call Election**'). A true and correct copy of the February 20, 2020, Notice of Call Election is attached as **Exhibit A-7** to the Motion and incorporated herein fully by reference. The very next day, on February 21, 2020, I met with Barton, Andrew Crum, and Judson Sturdivant, Jared Sturdivant's brother who also was involved in the transaction as a broker, in Dallas. During that meeting, I hand delivered a copy of the Notice of Call Election to Barton, who acknowledged receiving the notice by signing a receipt. I witnessed Barton sign the

receipt, and his signature on the receipt matches the signature on the Notes and the Guaranties. A true and correct copy of Barton's signed confirmation of his receipt of the Notice of Call Election is attached as **Exhibit A-8** to the Motion and incorporated herein fully by reference.

9. "When the second quarterly interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. Accordingly, on March 27, 2020, Plaintiffs made a written demand on 2999TC, Barton, and JMJ that they make the overdue payment by April 6, 2020. A true and correct copy of Plaintiffs' March 27, 2020, demand is attached as **Exhibit A-9** to the Motion and incorporated herein fully by reference.

10. "After 2999TC, Barton, and JMJ failed to cure the payment defaults as demanded in Plaintiffs' March 27, 2020, demand, on or about April 14, 2020, Plaintiffs accelerated the Loan and demanded payment in full from 2999TC, Barton, and JMJ of all amounts due and owing. A true and correct copy of the Notice of Acceleration is attached as **Exhibit A-10** to the Motion and incorporated herein fully by reference.

11. "To date, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed; Plaintiffs have received no payment in connection with the Loan since the December 2019 payment was made in late January of 2020; the Notes remain unpaid; the Loan remains accelerated; and the $4,000,000.00 principal balance is currently due and owing in full along with all interest accrued after December 16, 2019.

12. "As set forth in the Notes, interest accrues on the outstanding principal balance of the Loan at the rate of 18% per year calculated on a 360-day-year basis. I have calculated the amounts due and owing under the Loan as of April 21, 2020. In doing so, I reviewed and relied upon the language of the Notes and any payments received by Plaintiffs in connection with the Loan. My interest calculations include both the first and last day of the indicated time period.

13. "Applying the 18% annual interest rate calculated on a 360-day-year basis, interest accrues at the rate of $2,000.00 per day: ($4,000,000.00 x 0.18) / 360 = $2,000.00. Based on the currently outstanding principal balance and a 360-day year, each quarter consists of 90 days and each quarterly interest payment due amounts to $180,000.00: $2,000.00 x 90 = $180,000.00. As of April 21, 2020, the total amount owed under the Loan was $4,250,000.00, consisting of the original Loan balance of $4,000,000.00 and $250,000.00 in interest accrued for the period beginning on December 17, 2019, and ending on April 21, 2020. The $250,000.00 in interest accrued as of April 21, 2020, consists of the $180,000.00 second quarterly payment due on March 16, 2020, and $70,000.00 for the period March 17, 2020, through April 21, 2020. The $70,000.00 partial third quarterly payment was calculated by taking the number of days from March 17, 2020, through March 30, 2020 (14), add the number of days from April 1 through April 21, 2020 (21), which adds up to a total of 35, and multiplying that number of days (35) by the daily interest rate ($2,000.00): 35 days x $2,000.00 = $70,000.00. These calculations intentionally omit the day of March 31, as including March 31 would make the quarter exceed 90 days (and thereby, the year would exceed 360 days). These calculations take into account and fully credit the fact that Plaintiffs ultimately received payment of the interest accrued for the first quarterly period beginning on September 17, 2019, and ending on December 16, 2019.

14. "Pursuant to the terms of the Notes, interest continues to accrue on the outstanding principal balance of the Loan after April 21, 2020, at the 18% annual interest rate calculated on a 360-day-yearly and 90-day-quarterly basis for as long as a principal balance remains outstanding and owing in connection with the Loan.

15. "Plaintiffs are the sole owners and holders of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

16. "Plaintiffs are presently in possession of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

17. "On or about June 24 and June 25, 2020, Barton initiated, and he and I exchanged, a string of emails regarding the money owed to Plaintiffs. A true and correct copy of that email string is attached as **Exhibit A-11** to the Motion and incorporated herein fully by reference.

18. "The records kept by Plaintiffs relating to the Notes were made and kept in the ordinary course of Plaintiffs' business; it is the regular practice of Plaintiffs to make and keep such records; such records were made on or about the time of the recorded transactions; such records were made by a person with knowledge of the information recorded who was acting in the regular course of Plaintiffs' business; and I am presently the custodian of such records, which include Exhibits 'A-1' through 'A-11' to Plaintiffs' Motion. Such exhibits are true and correct copies of the instruments and documents that are in Plaintiffs' files and are incorporated herein by reference.

"FURTHER AFFIANT SAYETH NOT."

[signature]

L. Allen Hodges III

SUBSCRIBED AND SWORN to before me, the undersigned notary, on the 21 day of July, 2020.

TARA LEE EDLAND
NOTARY PUBLIC
STATE OF TEXAS
ID# 128204469
EXPIRES 3-11-2022

Tara Lee Edland

Notary in and for the State of Texas

# EXHIBIT A-1

# PROMISSORY NOTE

$1,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, ("**Maker**") promises to pay to **The Estate of Leland A. Hodges Jr.** ("**Lender**"), or order, the stated principal sum of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**"), unless sooner called by Lender as set forth below.

3. This note is related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**").

4. This Note shall not be prepayable. Beginning on December 15, 2019, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive,

collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **THE ESTATE OF LELAND A. HODGES JR.** ("Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $1,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS FIRST AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the First Amendment Effective Date.

**MAKER:**

**2999TC LP, LLC,**
a Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

**LENDER:**

**THE ESTATE OF LELAND A. HODGES JR.**

By: ______________________
Name: L. Allen Hodges III
Title: Executor

# EXHIBIT A-2

# PROMISSORY NOTE

$3,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, ("**Maker**") promises to pay ratably to **Tejas Group, Ltd., LAH III Family Specific Interest, Ltd.,** and **Blackfoot Interest, Ltd.** (collectively the "**Lender**"), or order, the stated principal sum of Three Million Dollars and 00/100 Dollars ($3,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**"), unless sooner called by Lender as set forth below.

3. Notwithstanding the foregoing, the Lender shall have the option to convert the outstanding principal balance and any accrued but unpaid interest into a capital contribution for the purchase of membership interests in the Maker, (the "**Option**") as further defined in the Membership Interest Option Purchase Agreement ("**Option Agreement**") executed by and between Maker and Lender related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**"). Upon the Lender exercising the Option, the Principal and all related interest, costs, fees, and any other amounts whether due or not yet due related to this Note shall be deemed paid in full and all current and remaining obligations of the Maker and any guarantor shall automatically terminate.

4. This Note shall not be prepayable. Beginning on February 16, 2020, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; provided, however, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ____________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD.**, and **BLACKFOOT INTEREST, LTD.** (collectively "Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $3,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

2.04 No Other Changes. Except as modified herein, all other terms, conditions and provisions of the Note shall remain in full force and effect as of the date thereof and Maker acknowledges and reaffirms its liability to Lender thereunder.

**THIS FIRST AMENDMENT, TOGETHER WITH THE NOTE, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES HERETO.**

Executed to be effective as of the First Amendment Effective Date.

**MAKER:**

**2999TC LP, LLC,**
a Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

**LENDER:**

**TEJAS GROUP, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

**LAH III FAMILY SPECIFIC INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

**BLACKFOOT INTEREST, LTD.**
By: North Texas Investments, L.L.C.

By: ______________________
Name: L. Allen Hodges III
Title: Manager

# EXHIBIT A-3

# GUARANTY

WHEREAS, **2999TC LP, LLC**, Delaware limited liability company, ("Borrower"), is or may become indebted to **The Estate of Leland A. Hodges Jr.** ("Creditor") in principal amount of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("Principal Amount") in exchange for a promissory note issued to Creditor by Borrower ("Note") as further described herein;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned, Tim Barton ("Guarantor", whether one or more), hereby guarantees to Creditor the prompt payment when due, and at all times thereafter, of the Guaranteed Indebtedness (hereinafter defined), this guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness," as used herein, includes: (a) all indebtedness now or hereafter evidenced by or arising under the Note, as the same may hereafter be renewed, extended, amended, increased, modified, supplemented and/or restated from time to time and at any time, with or without notice to Guarantor (herein collectively called the "Note"), dated September 16,2019, in the Principal Amount, executed by Borrower, payable to the order of Creditor; (b) all indebtedness now or hereafter arising under any document or instrument executed in connection with or as security for the Note (such documents and instruments and the Note are hereinafter collectively sometimes referred to as the "Note Papers"); (c) any and all post-default interest, costs, attorneys' fees and expenses incurred by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness or by reason of Borrower's default in performance of any covenant or agreement contained in any of the Note Papers; and (d) any renewal or extension of the indebtedness, costs, fees, or expenses described in (a) through (c) preceding, or any part thereof. Unless otherwise defined herein or the context hereof otherwise requires, each term used herein with its initial letter capitalized has the meaning given such term in the Note.

2. This instrument shall be an absolute and continuing guaranty, and the circumstance that at any time or from time to time the Guaranteed Indebtedness may be paid in full shall not affect the obligation of Guarantor with respect to Guaranteed Indebtedness thereafter incurred by Borrower to Creditor.

3. If Guarantor becomes liable for any indebtedness owing by Borrower to Creditor, by endorsement or otherwise, other than under this guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of Creditor hereunder shall be cumulative of any and all other rights that Creditor may ever have against Guarantor. The exercise by Creditor of any right hereunder or under any other instrument, at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right. Guarantor covenants and agrees that Guarantor will not assert any rights arising from payment or other performance hereunder until all of the Guaranteed Indebtedness shall have been paid and performed in full and Creditor shall have no contingent or non-contingent obligation to loan or advance any more Guaranteed Indebtedness to Borrower.

4. Upon the occurrence of a default under any of the Note Papers, Guarantor shall, on demand and without further notice of dishonor, pay the amount due thereon to Creditor. It shall not be necessary for Creditor, in order to enforce such payment by Guarantor, first to institute suit or exhaust its remedies against Borrower or any other person liable on the Guaranteed Indebtedness, or to enforce its rights against any security which shall ever have been given to secure the Guaranteed Indebtedness.

5. Guarantor hereby agrees that Guarantor's obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the death, insolvency, bankruptcy, disability or incapacity of Borrower, any of the undersigned, or any person at any time liable for the payment of any or all of the Guaranteed Indebtedness,



Initials ________